Marc E. Elias*
Elisabeth C. Frost*
John M. Geise*
Mollie DiBrell*
Alexander F. Atkins*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, DC 20002
Phone: (202) 968-4513
Facsimile: (202) 968-4498
melias@elias.law
efrost@elias.law
jgeise@elias.law
mdibrell@elias.law
aatkins@elias.law

Roy Herrera (Bar No. 032901)
Daniel A. Arellano (Bar No. 032304)
Jillian L. Andrews (Bar No. 034611)
**HERRERA ARELLANO LLP**
530 East McDowell Road, Suite 107-150
Phoenix, Arizona 85004-1500
Telephone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com
jillian@ha-firm.com

*Attorneys for Plaintiff*
*Applications for admission pro hac vice*
*forthcoming*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, | Case No. |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| v. | |
| Katie Hobbs, in her official capacity as Arizona Secretary of State; Mark Brnovich, in his official capacity as Arizona Attorney General; and the County Recorder Defendants, Apache County Recorder | |

Larry Noble; Cochise County Recorder
David W. Stevens; Coconino County
Recorder Patty Hansen; Gila County
Recorder Sadie Jo Bingham; Graham
County Recorder Wendy John; Greenlee
County Recorder Sharie Milheiro; Le Paz
County Recorder Richard Garcia; Maricopa
County Recorder Stephen Richer; Mohave
County Recorder Kristi Blair; Navajo
County Recorder Michael Sample; Pima
County Recorder Gabriella Cázares-Kelly;
Pinal County Recorder Virginia Ross;
Santa Cruz County Recorder Suzanne
Sainz; Yavapai County Recorder Leslie M.
Hoffman; and Yuma County Recorder
Robyn S. Pouquette, in their official
capacities,

                    Defendants.

Plaintiff Mi Familia Vota, by and through its undersigned attorneys, files this Complaint for Injunctive and Declaratory Relief against Defendants Katie Hobbs, in her official capacity as the Secretary of State of Arizona, Mark Brnovich, in his official capacity as the Attorney General of Arizona, and the above-captioned County Recorder Defendants, each named in their official capacities. In support, Plaintiff alleges the following:

## NATURE OF THE CASE

1.     This is an action brought under the U.S. Constitution to safeguard the fundamental rights of hundreds of thousands of Arizonans, including the right to vote and the state-protected right to vote early by mail, which are subject to due process protections. "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). In this action, Plaintiff challenges Arizona's latest effort to undermine that most precious right: the recently enacted H.B. 2492, which severely burdens the right to vote and, in many cases, will deny that right entirely, disenfranchising eligible, lawful voters in violation of the First and Fourteenth Amendments.

2.     Arizona has a long and complex history of applying different registration and voting requirements to different voters, which has caused portions of its law to be held in violation of federal law and has required the State to enter into an ongoing consent decree. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013); Consent Decree at 7-16, *LULAC v. Reagan*, No. 2:17-cv-04102-DGC (June 18, 2018), ECF No. 37 ("Consent Decree"). The result is a byzantine system in which Arizona has three classes of voters: (1) those who registered pre-2005 and did not have to show documentary proof of citizenship (because Arizona did not yet require it), who can vote in all elections; (2) those who registered post-2005 using the federal form required by the National Voter Registration Act ("NVRA") (the "Federal Form") and did not show documentary proof of citizenship, who can vote only in federal elections; and (3) those who registered post-2005 and showed adequate proof of citizenship, who can vote in all elections. All of these voters are entitled to vote in elections for which they are qualified by mail, a right which Arizona

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

has provided to all voters for any reason since 1991. *See* A.R.S. § 16-541. Further, under the ongoing consent decree, the state must (1) treat all registrants the same regardless of whether they use the state form or Federal Form, registering all voters for federal elections regardless of provided evidence of citizenship; and (2) check the motor vehicles database for citizenship documentation before limiting voters to federal-only elections. *See* Consent Decree at 7-16.

3.       H.B. 2492 (the "Proof of Citizenship Restriction"), which was signed into law on March 30, 2022, adds another confusing, discriminatory, and unconstitutional impediment to this morass. Among other things, the Restriction will require new registrants using the Federal Form to provide additional documentation if they want to vote in presidential elections or vote early by mail for *any* office, prohibit those currently registered using the Federal Form who registered without proof of citizenship from voting by mail or in presidential elections, and require long-registered Arizonans who never had to provide proof of citizenship—estimated to be close to 200,000 voters[1]—to locate and present additional documentation to vote in presidential elections. The law provides no details concerning how long-registered voters will be notified that they must provide new documents, or how they will be given an opportunity to do so, and also requires the Attorney General to investigate and potentially prosecute voters who registered without providing proof of citizenship.

4.       The Proof of Citizenship Restriction continues a baseless assault on Arizona's election system based on a conspiracy theory that non-citizens are voting, despite a persistent lack of credible evidence to support such claims. The Restriction is the newest in a series of cynical and bad faith attempts to use these politically motivated and false allegations to limit access to voting by eligible, lawful citizens. And the new law's limitations on early voting are particularly pernicious given the prevalence of early voting by mail in Arizona. In 2020, a record-setting 88 percent of voters used Arizona's early

---

[1] *See* Laurie Roberts, *Republicans want HOW MANY Arizonans to prove they have a right to vote?*, The Ariz. Republic (March 28, 2022, 9:12 AM), https://www.azcentral.com/story/opinion/op-ed/laurieroberts/2022/03/28/arizona-voters-may-soon-prove-right-vote-citizenship/7192260001/.

voting by mail system to cast their ballots. But, even before the pandemic, early voting was the most common form of voting in the state. In 2016, over 2 million Arizona voters—or about 75 percent of those who participated in the election—used early voting. Even in 2008, more than a million voters—or close to half of those participating—used early voting. And, as more voters have turned to early voting by mail, Arizona's election administrators have responded by diverting their resources to support mail-in voting, anticipating that the overwhelming majority of Arizona voters will exercise their right to vote by mail. As a result, in-person voting facilities and opportunities have dramatically decreased.

5.      In other words, for decades Arizona's voting system has been oriented toward supporting and facilitating early mail voters. It was well-tested and well-established. There is no evidence that it was undermined or even vulnerable to abuse or fraud. Quite to the contrary, both Governor Doug Ducey and Secretary Hobbs have repeatedly assured the public and the nation that false claims about the legitimacy of Arizona's 2020 election are to be rejected, that the election was secure and fraud-free, and that the results should be trusted. As Governor Ducey emphasized in response to attacks on the integrity of the 2020 election: "We've been doing early voting since 1992," and claims about problems with the system or the election are unfounded.[2] Despite these assurances, multiple lawsuits and contests brought by the Republican Party, former President Donald Trump's campaign, and their supporters have sought to cast doubt on the outcome of the 2020 election. Arizona's state and federal courts responded by rejecting those suits and repudiated their champions for their striking lack of evidence. For example, in a case brought by the Arizona Republican Party to challenge the legitimacy of Maricopa County's audit, the Superior Court ordered the party to pay attorney's fees to the Secretary of State under A.R.S. § 12-349 because the lawsuit was "groundless," brought in "bad faith," and served only to "cast false shadows on the election's legitimacy." Order at 9-10, *Ariz. Republican Party v. Fontes*, No. CV 2020-014553, (Mar. 12, 2021).

6.      The same false narratives sowed the groundwork for the Proof of Citizenship

---

[2] @DougDucey, Twitter (Nov. 30, 2020, 9:48 PM)
https://twitter.com/dougducey/status/1333603891863191552? ref_src=twsrc%5Etfw.

Restriction, and now, as a result, tens of thousands of Arizonans will be forced to jump through unnecessary hoops to access the mail voting system upon which they have come to rely, and to vote in presidential elections whether by mail or in person. Some of those lawful, eligible Arizona voters will be unable to clear the Restriction's hurdles. As manifested by state officials' full-throated defense of Arizona's election system in the immediate aftermath of the November 2020 election, as well as multiple court decisions related to the same, there are no state interests, much less compelling ones, to justify the new imposition of these unjustifiable and disparate burdens. There is no evidence that any of Arizona's voting methods are beset by fraud, and no credible evidence that non-citizens are attempting to overcome (much less actually overcoming) the numerous safeguards Arizona has put in place to limit voting in Arizona to United States citizens. The Proof of Citizenship Restriction is an entirely illegitimate and unconstitutional roadblock erected in the path of lawful, eligible voters. For these reasons and those detailed below, Plaintiff respectfully requests a declaration that the Proof of Citizenship Restriction is unconstitutional and an order enjoining its enforcement.

## JURISDICTION AND VENUE

7.    Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under the color of state law, of their rights under the First and Fourteenth Amendments to the U.S. Constitution.

8.    This Court has subject matter jurisdiction to hear Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343, and 1357.

9.    This Court has jurisdiction over the Secretary of State, as she is sued in her official capacity as an elected official in Arizona. Further, the Secretary works and resides in the State of Arizona.

10.    This Court has jurisdiction over the Attorney General, as he is sued in his official capacity as an elected official in Arizona. Further, the Attorney General works and resides in the State of Arizona.

11.    This Court has jurisdiction over the County Recorder Defendants, as they are sued in their official capacities as elected officials in Arizona, and they work or reside in the State of Arizona.

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

12.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and in this division.

13.     This Court has the authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202. Further, this Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure.

**PARTIES**

14.     Plaintiff Mi Familia Vota ("MFV") is a national, non-profit civic engagement organization with a mission of uniting Latino, immigrant, and allied communities to promote social and economic justice through increased civic participation by encouraging leadership development, citizenship, and issue organizing. MFV encourages non-partisan voter registration and voter participation and has challenged voter suppression around the nation. *See, e.g.*, *Mi Familia Vota v. Hobbs*, No: 2:21-cv-01423-DWL (D. Ariz. filed Aug. 17, 2021); *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195 (W.D. Tex. 2020). It has operations in six states, including Arizona, where it is headquartered. More than 14,000 Arizonans follow and engage with MFV via email and/or MFV's social media platforms.

15.     In advance of the 2020 election, MFV organized voter registration drives and conducted get-out-the-vote activities. MFV helped countless Arizonans register to vote using a Federal Form and helped countless Arizonans register to vote by mail. MFV also conducted voter education campaigns and provided other voter assistance, including driving voters to polling locations.

16.     MFV plans to organize the same activities for future elections. As a result of the Proof of Citizenship Restriction, however, MFV must divert money, personnel, time, and resources away from other programming in order to dedicate more resources toward efforts to ensure that voters can navigate the restrictions imposed by the Proof of Citizenship Restriction. Additionally, MFV plans to hire additional staff to help educate voters about the Proof of Citizenship Restriction and is considering developing public service announcements in Spanish-language media concerning the changes. MFV will also expend resources confirming that voters who previously registered to vote either (1) pre-

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

2005 or (2) post-2005 using the Federal Form, are not prohibited from voting early by mail or in presidential elections due to the Proof of Citizenship Restriction.

17.    Defendant Katie Hobbs is the Secretary of State of Arizona and is the Chief Elections Officer for Arizona. Ariz. Const. art. V, § 9; A.R.S. § 16-142. As Arizona's Chief Elections Officer, the Secretary is responsible for carrying out the state's election laws and overseeing the voting process—and is empowered with broad authority to carry out that responsibility. As such, the Secretary has the authority to promulgate rules and procedures for elections, including rules and regulations pertaining to voter registration. A.R.S. §§ 16-452, 16-168(J). Moreover, the Secretary is charged with enforcing the new statutory provisions at issue here. A.R.S. § 16-143. The Secretary is sued in her official capacity for actions taken under color of state law.

18.    Defendant Mark Brnovich is the Attorney General of Arizona and the State's chief legal officer. A.R.S. § 41-192. The Attorney General is authorized to enforce Arizona's election laws in "any election for state office, members of the legislature, justices of the supreme court, judges of the court of appeals or statewide initiative or referendum . . . through civil and criminal actions." A.R.S. § 16-1021. Moreover, the Attorney General is charged with enforcing the new statutory provisions at issue here. A.R.S. § 16-143. The Attorney General is sued in his official capacity for actions taken under color of state law.

19.    The Proof of Citizenship Restriction makes county recorders responsible for implementing and enforcing the statutory provisions at issue here. Amongst other responsibilities, county recorders are charged with verifying a voter's citizenship status, rejecting voter registration applications if the county recorder cannot confirm an applicant's citizenship status, forwarding applications to the Attorney General for investigation, and canceling a voter's registration based on citizenship. *See generally* H.B. 2492. The County Recorder Defendants listed below are sued in their official capacities for actions taken under color of state law.

20.    Defendant Larry Noble is the Apache County Recorder.

21.    Defendant David W. Stevens is the Cochise County.

22.    Defendant Patty Hansen is the Coconino County Recorder.

23.    Defendant Sadie Jo Bingham is the Gila County Recorder.

24.    Defendant Wendy John is the Graham County Recorder.

25.    Defendant Sharie Milheiro is the Greenlee County.

26.    Defendant Richard Garcia is the La Paz County Recorder.

27.    Defendant Stephen Richer is the Maricopa County Recorder.

28.    Defendant Kristi Blair is the Mohave County Recorder.

29.    Defendant Michael Sample is the Navajo County Recorder.

30.    Defendant Gabriella Cázares-Kelly is the Pima County Recorder.

31.    Defendant Virginia Ross is the Pinal County Recorder.

32.    Defendant Suzanne Sainz is the Santa Cruz County Recorder.

33.    Defendant Leslie M. Hoffman is the Yavapai County Recorder.

34.    Defendant Robyn S. Pouquette is the Yuma County Recorder.

## STATEMENT OF FACTS

**A. Arizona has a long and tortured history of changing voter registration systems.**

35.    Despite the lack of any credible fraud allegations, there has been a decades-long effort in Arizona—as the state's electorate has become more diverse—to restrict the franchise and impose unjustifiable impediments to the right to vote. These changes have led to disenfranchisement, multiple conflicting systems, and repeated litigation.

36.    As is particularly relevant here, in 2004 Arizona voters adopted Proposition 200, a ballot initiative purportedly designed "to combat voter fraud by requiring voters to present proof of citizenship when they register to vote and to present identification when they vote on election day." *Purcell v. Gonzalez*, 549 U.S. 1, 2 (2006) (*per curiam*). Proposition 200 amended the state's election code to require county recorders to "reject any application for registration that is not accompanied by satisfactory evidence of United States citizenship." A.R.S. § 16–166(F). This requirement was seemingly in direct conflict with the NVRA, which requires states to "accept and use" a standard federal registration form for voter registration (the "Federal Form") that does not require applicants to provide documentary proof of citizenship. 52 U.S.C. § 20505. And, in fact, the Supreme Court held in 2013 that the NVRA precluded Arizona from requiring applicants who used the NVRA's Federal Form to submit information beyond that required by the form itself. *Inter Tribal*

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*Council of Ariz.*, 570 U.S. at 15 ("We conclude that . . . a state-imposed requirement of evidence of citizenship not required by the Federal Form is 'inconsistent with' the NVRA's mandate that States 'accept and use' the Federal Form." (quoting *Ex parte Siebold*, 100 U.S. 371, 397 (1880))).

37.     Nonetheless, the Supreme Court's ruling in *Inter Tribal Council* left open the possibility of imposing different requirements for voters in state and local elections than federal elections. Then-Attorney General Thomas Horne issued an Opinion on October 7, 2013 stating that such a system was required to comply with both state law and the NVRA, *see* Ariz. Att'y Gen. Op. No. I13-011 (Oct. 7, 2013), available at https://www.azag.gov/sites/default/files/2018-06/I13-011.pdf (last visited Mar. 30, 2022), and then-Secretary of State Ken Bennett subsequently implemented Arizona's bifurcated voter registration system, which has been in place ever since.

38.     Under this bifurcated system, Arizona has three classes of voters: (1) those who registered pre-2005 and did not have to show proof of citizenship, who have been permitted to vote in all elections; (2) those who registered post-2005 using the Federal Form and did not show evidence of citizenship, who have been permitted to vote only in federal elections; and (3) those who registered post-2005 and showed adequate proof of citizenship, who have been permitted to vote in all elections. All of these voters were entitled to vote in elections for which they were qualified by mail, a right which Arizona has provided to all voters for any reason since 1991. *See* A.R.S. § 16-541.

39.     This bifurcated system has already led to disenfranchisement and confusion, resulting in further litigation. For example, prior to 2018, voters who used Arizona's state registration form and provided no evidence of citizenship were not registered to vote in *any* elections, while voters who undertook the same process but used the Federal Form to register were registered to vote in federal elections. *See generally* Consent Decree. What's more, because Arizona has documentary proof of citizenship for some citizens from their driver's license application, some citizens who register to vote with the Federal Form have already provided proof of citizenship in a means that is easily verifiable, and the state can easily search for such voters' documentation and allow them to vote in all elections. *Id.*

40.     Due to these issues, in 2017, the League of United Latin American Citizens

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Arizona and the Arizona Students' Association sued then-Secretary of State Michele Reagan and then-Maricopa County Recorder Adrian Fontes, alleging that the state's dual voter registration policies constituted an undue burden on the right to vote and that the state's failure to register voters who used the state form without providing proof of citizenship in federal elections had disenfranchised "at least 26,000 otherwise eligible voters . . . in Maricopa County alone." Compl. ¶¶ 39, 77-88, *LULAC v. Reagan*, No. 2:17-cv-04102-DGC (Nov. 7, 2017), ECF No. 1. The parties entered into a consent decree to end the litigation, which required (1) Arizona to treat all registrants the same regardless of whether they use the state form or Federal Form, registering all voters for federal elections; and (2) state and county officials to check the motor vehicles database for citizenship documentation before limiting voters to federal-only elections. *See* Consent Decree at 7-16.

41.     As it presently stands, hundreds of thousands of Arizonans are registered to vote without having provided documentary proof of citizenship to the state. This includes 31,000 voters in Arizona who are registered using only the Federal Form.[3] Additionally, Arizona did not require proof of citizenship to get a driver's license until 1996, and the Motor Vehicle Division has reported that at least 192,000 Arizonans who have one of those pre-1996 licenses have not re-registered or provided proof of citizenship.[4] Accordingly, there are at least 192,000 voters who are seemingly entitled to vote in *all* elections in Arizona despite never providing proof of citizenship.

**B. Arizona voters rely on the state's early voting system.**

42.     Early mail voting is immensely popular in Arizona, and for years, the vast majority of voters have relied on it to cast their ballot. Since 1991, all eligible voters in Arizona have been able to vote early by mail without a reason or "excuse" for doing so. *See* A.R.S. § 16-541. Reliance on early mail voting has steadily grown ever since. In 2008, over one million Arizonans, or around half of the voters who participated in the election,

---

[3] *See* Howard Fischer, *Some Arizona voters could face citizenship check*, Ariz. Daily Star (March 27, 2022), https://tucson.com/news/local/subscriber/some-arizona-voters-could-face-citizenship-check/article_72ec0350-ac76-11ec-a0d72fbe0dcb9094.html.
[4] *Id.*

used early mail voting. In 2016, over 2 million voters, or about 75 percent of voters who participated in the election, used early mail voting. And in 2020, nearly three million voters, or about 88 percent of those voters who participated in the election, used early mail voting.

43.     The ever-increasing reliance on early voting by mail in Arizona has led to an election-administration system heavily oriented toward mail voting, with a corresponding decrease in the availability of in-person voting options. In fact, one study found that the state has had the "most widespread reduction" in polling places of any state over the last decade—the state now has 320 fewer polling places than it did in 2012.[5] While Arizona's inducement of voters to use early voting by mail has helped to make voting generally more accessible in the state and has helped counties preserve resources, fewer polling places translates to more difficulties for those who must vote in person. This is especially true in rural places and on the state's tribal lands, where voters must travel long distances to their polling place and where public transportation is not available.

**C.  The 2020 election in Arizona was secure and accurate.**

44.     Despite the significant challenges presented by the COVID-19 pandemic, Arizona voters turned out in record-setting numbers in 2020. More than 3.4 million of the state's 4.3 million voters, or 79.9 percent, cast a ballot. This compares to 74 percent in 2016, 74.2 percent in 2012, 74.3 percent in 2008, 77.7 percent in 2004, and 71.8 percent in 2000.[6]

45.     The security and accuracy of the 2020 election results have been confirmed and re-confirmed by county and state election officials, as well as the courts.

46.     County election officials have confirmed and scrutinized the results. For example, after the election, pursuant to A.R.S. § 16-602, ten of the state's fifteen counties performed a hand count of sample ballots to test the equipment, each confirming the

---

[5] *See* The Leadership Conference Education Fund, *Democracy Diverted: Polling Place Closures and the Right to Vote* 17 (Sept. 2019), http://civilrightsdocs.info/pdf/reports/Democracy-Diverted.pdf.

[6] Voter Registration and Historical Election Data, Ariz. Sec'y of State, https://azsos.gov/elections/voter-registration-historical-election-data (last visited Sept. 13, 2021).

election's initial results.

47.     In Arizona's largest county, Clint Hickman, the chair of the Maricopa County Board of Supervisors, confirmed that "there is no evidence of fraud or misconduct or malfunction" in a letter that was sent to all Maricopa County voters.[7]

48.     In February 2021, the Maricopa County Elections Department further confirmed its results, hiring two auditing firms to conduct audits of the county's tabulation system and equipment, which found no evidence of inaccuracies or improprieties.[8]

49.     State officials have likewise confirmed the results and have publicly and definitively declared their accuracy. Arizona law requires the Secretary, in the Governor's presence, to certify the statewide canvass. *See* A.R.S. § 16-648. On November 30, 2020, Secretary of State Katie Hobbs, in the presence of Governor Ducey, did so. The Governor himself further confirmed and defended the accuracy of the results through his social media accounts and in a meeting at the White House with former President Trump.

50.     Additionally, multiple lawsuits seeking to overturn the results of the election only served to further confirm that the election was secure. For example, in *Bowyer v. Ducey*, various Republican officials filed a lawsuit seeking decertification of the election based on, among other things, allegations of improprieties in signature matching. The court dismissed the suit on multiple grounds, including a lack of any evidence. 506 F. Supp. 3d 699, 722 (D. Ariz. Dec. 9, 2020).

51.     Similarly, in *Ward v. Jackson*, the Arizona Supreme Court concluded that the Republican challenger failed to "establish any degree of fraud or a sufficient error rate that would undermine the certainty of the election results." No. CV-20-0343-AP/EL, 2020 WL 8617817, at *2 (Ariz. Dec. 8, 2020), *cert. denied*, No. 20-809, 2021 WL 666437 (U.S. Feb. 22, 2021).

---

[7] Letter from Clint Hickman to Maricopa County Voters, Maricopa Cnty. Bd. of Supervisors (Nov. 17, 2020), https://www.maricopa.gov/DocumentCenter/View/64676/PR69-11-17-20-Letter-to-Voters (last visited Mar. 30, 2022).

[8] Auditing Elections Equipment in Maricopa County, Maricopa County Government (Feb. 23, 2021), https://maricopacountyaz.medium.com/auditing-elections-equipment-in-maricopa-county-3955445c1712 (last visited Mar. 30, 2022).

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

52.     Nevertheless, fact-free conspiracy theories and efforts to undermine confidence in the elections process have continued to percolate. In particular, these same baseless and repeatedly disproven "concerns" have continued to animate claims of fraud pushed by many Republican officials in the state.

**D. H.B. 2492 is merely the latest in a string of baseless allegations of fraud that have led to a host of pernicious efforts in Arizona to target early voting by mail.**

53.     When the 2021 legislative session began, Republicans in the Legislature moved quickly to introduce several bills to severely restrict access to the franchise in Arizona, relying on continuing evidence-free allegations of fraud in Arizona elections. This resulted in the passage of two bills in the 2021 legislative session that restrict the franchise: (1) S.B. 1003, which prohibits voters whose early voting by mail ballots are flagged for rejection based on a missing signature from curing that deficiency after 7 p.m. on Election Day; and (2) S.B. 1485, which fundamentally alters the state's immensely popular Permanent Early Voting List—which the new legislation rebrands as the Active Early Voting List—by requiring election officials to purge from the list any voter who has not voted an early ballot "for two consecutive election cycles." Both bills are aimed squarely at suppressing voter participation using Arizona's early voting regime.

54.     Legislation is not the only means of this ongoing assault on early voting by mail. The Arizona Republican Party recently initiated litigation in the Arizona Supreme Court seeking an order declaring that *all* no-excuse early voting by mail in Arizona, as well as the use of drop boxes to return ballots, violate the Arizona Constitution. *See* Compl., *Ariz. Republican Party v. Hobbs*, No. CV-22-0048-SA (Ariz. Feb. 25, 2022).

55.     The Proof of Citizenship Restriction continues this anti-voter trend, marrying it to Arizona's nearly twenty-year effort to introduce roadblocks into its voter registration regime. The result is a law which has a host of problematic provisions, including:

- prohibiting any registered voter (other than voters protected by the Uniformed and Overseas Citizens Absentee Voting Act) who has not provided adequate proof of citizenship—including potentially all voters registered before 2005 and all federal-only voters—from voting in

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

presidential elections until they provide adequate proof of citizenship, with no provisions for how such voters should or will receive notice of any such prohibition (Section 5);

- prohibiting all voters in Arizona who can currently vote only in federal elections from voting early by mail in any elections (Section 5);

- prohibiting Arizonans who seek to register without adequate proof of citizenship from registering to vote in presidential elections or from voting early by mail (Section 4);

- requiring county recorders to reject the application of any voter who submits a state registration form without proof of citizenship (Section 4);

- requiring county recorders to research the citizenship of any voter who submits a Federal Form, prohibit any such voter from voting in *any* election if the county recorder cannot determine they are a United States citizen, and refer any such voter's registration to the county attorney and Attorney General for investigation if the county recorder determines they are not a United States citizen (Section 4);

- requiring the Secretary of State and county recorders to provide a list to the Attorney General of any voters who are registered without proof of citizenship, and requiring the Attorney General to investigate the citizenship of these individuals and report to the Secretary of State, the President of the Senate, and the Speaker of the House regarding the results of his investigation (Section 7); and

- requiring the Attorney General to prosecute any individuals his investigation uncovers are not United States citizens (Section 7).

**E.  The burdens imposed by the Proof of Citizenship Restriction on the right to vote are substantial.**

56.    The Proof of Citizenship Restriction burdens Arizona voters' ability to vote by mail and in presidential elections in at least four different ways.

57.    *First*, registered voters who properly registered to vote without providing proof of citizenship—either due to state requirements at the time they registered or because

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

they submitted the Federal Form—may be prohibited from voting in presidential elections *without any notice or opportunity to challenge* the State's determination. H.B. 2492 § 5, 55th Leg., 2d Reg. Sess. (Ariz. 2022). This includes nearly 200,000 Arizonans who registered to vote before October 1, 1996,[9] and 31,000 Arizonans who registered using the Federal Form.[10]

58.     Furthermore, those 31,000 Arizonans who registered to vote using the Federal Form would be prohibited from voting early by mail, again *without any notice or opportunity to challenge* the State's determination. H.B. 2492 § 5, 55th Leg., 2d Reg. Sess. (Ariz. 2022). As discussed above, Arizona has allowed voters to vote by mail for any reason since 1991. *See* A.R.S. § 16-541. To now suddenly strip these registered voters of their ability to vote by mail without any notice substantially burdens their fundamental right to vote.

59.     It bears repeating that despite depriving these voters of their right to vote in presidential elections or early by mail, the statute does not include any procedural safeguards. There is no notice requirement. There is no opportunity for the voter to provide documentary proof of citizenship. The statute does not even outline a time frame during which this removal of rights should occur. This lack of process will result in registered voters being left in the dark about whether and how they can vote.

60.     *Second*, the State has once again added another wrinkle to what was already a confusing, bifurcated voter registration system that frustrates Arizonans' right to vote. This system has already resulted in allegations of disenfranchisement resulting in an ongoing consent decree, whose requirements seem potentially in conflict with the Proof of Citizenship Restriction. *See* Compl. ¶¶ 39, 77-88, *LULAC v. Reagan*, No. 2:17-cv-04102-DGC (Nov. 7, 2017), ECF No. 1; Consent Decree at 7-16. The law will likely undo any

---

[9] *See* Laurie Roberts, *Republicans want HOW MANY Arizonans to prove they have a right to vote?*, The Ariz. Republic (March 28, 2022, 9:12 AM), https://www.azcentral.com/story/opinion/op-ed/laurieroberts/2022/03/28/arizona-voters-may-soon-prove-right-vote-citizenship/7192260001/.

[10] *See* Howard Fischer, *Some Arizona voters could face citizenship check*, Ariz. Daily Star (Mar. 27, 2022), https://tucson.com/news/local/subscriber/some-arizona-voters-could-face-citizenship-check/article_72ec0350-ac76-11ec-a0d7-2fbe0dcb9094.html.

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

harm the consent decree has averted, again resulting in the disenfranchisement of eligible voters who cannot navigate Arizona's needlessly confusing, byzantine, and ever-changing voter registration system.

61.     *Third*, the law will require hundreds of thousands of voters who never had to provide further documentation to do so if they wish to continue to vote in presidential elections or (for Federal Form voters) to continue voting early by mail for any election. For many voters who lack such documentation, the costs in time and effort to obtain it are substantial, and result in many voters simply giving up and being disenfranchised. Other courts considering challenges to similar laws have found these consequences to constitute a substantial burden on the right to vote. *See, e.g.*, *Fish v. Schwab*, 957 F.3d 1105, 1131 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 965 (2020) (explaining that "extensive testimony about individual voters like Mr. Fish and Ms. Bucci who lacked [proof of citizenship] or faced significant costs to obtain it" permitted "the district court [to] properly conclude here that the [citizenship documentation] requirement imposed a significant burden on the right to vote"); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016) ("It does not matter whether that is because they lack access to the requisite documentary proof or simply because the process of obtaining that proof is so onerous that they give up. The outcome is the same—the abridgment of the right to vote.").

62.     *Fourth*, the law subjects potential voters to investigation by the Attorney General based solely on a county recorder's inability to locate them in certain enumerated databases. Such inability could result from something as simple as a typographical or transcription error, and fear of wrongful investigation may chill otherwise eligible voters from seeking to register to vote or exercising the franchise.

63.     Taken together, this host of harms constitutes a substantial burden on the right to vote.

**F.  The Proof of Citizenship Restriction serves no justifiable state interest.**

64.     As with so many pernicious voting restrictions, proponents of the Proof of Citizenship Restriction justify it by invoking the boogeyman of voter fraud without any proof to support their claims. During the Legislature's consideration of the Bill, no legislator identified a single instance of voter fraud or impropriety in Arizona related to

mail-in early voting ballots that would precipitate the need for the changes at issue. Instead, evidence-free assertions were offered such as that by Bill Sponsor Rep. Jake Hoffman, who stated that the Bill was needed because Arizona "cannot allow potentially tens of thousands of noncitizens to vote in our elections."[11] This unsupported fearmongering is plainly insufficient to justify the Proof of Citizenship Restriction's widespread burdens.

65.    Meanwhile, the Legislature's own lawyers advised that the Proof of Citizenship Restriction violates federal law and invites litigation.[12] Indeed, Speaker Pro Tempore of the Arizona House Travis Grantham acknowledged that a motivation behind the law is to broadly challenge the constitutionality of the NVRA, stating that the law was important to "fight for local control of our elections" and that challenging related federal rulings was "a fight worth having."[13] But disagreement with and open defiance of federal law does not provide adequate justification for the Proof of Citizenship Restriction's significant burdens on Arizonans' voting rights.

66.    Other courts have rightfully found similar laws to be unconstitutional. For example, in 2011 Kansas adopted a similar law, which required state and county election officials to reject voter registration applications unless the applicant submitted "satisfactory evidence of United States citizenship." *Fish*, 957 F.3d at 1111 (quoting Secure and Fair Elections ("SAFE") Act, ch. 56, § 8(l), 2011 Kan. Sess. Laws 795, 806, 809–11 (codified at Kan. Stat. Ann. § 25–2309(l))). The United States Court of Appeals for the Tenth Circuit ultimately held that the Kansas law violated the Fourteenth Amendment's Equal Protection

---

[11] *See* Katya Schwenk, *'Extreme' Arizona Elections Bill Inching Closer to Law*, Phoenix New Times (March 30, 2022, 6:00 AM), https://www.phoenixnewtimes.com/news/extreme-arizona-elections-bills-inching-closer-to-law-13323436.

[12] *See* Trevor Potter, *This Arizona bill could keep you from voting early, by mail or for president*, AZ Central (March 27, 2022, 6:00 AM), https://www.azcentral.com/story/opinion/op-ed/2022/03/27/arizona-bill-could-keep-you-voting-early-president/7158739001/; Howard Fischer, *GOP lawmakers seek to reopen legal voting issue*, Daily Independent (March 26, 2022, 9:00 AM), https://www.yourvalley.net/stories/gop-lawmakers-seek-to-reopen-legal-voting-issue,293949.

[13] *See* Howard Fischer, *GOP lawmakers seek to reopen legal voting issue*, Daily Independent (March 26, 2022, 9:00 AM), https://www.yourvalley.net/stories/gop-lawmakers-seek-to-reopen-legal-voting-issue,293949.

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Clause because it was an unconstitutional burden on the right to vote and that it was also preempted by Section 5 of the NVRA. *Id.* at 1121. The Court found particularly relevant the fact that the Kansas law impacted 31,089 applicants who were prevented from registering to vote distinguished this from other voting restrictions where the burden was less clear. *See id.* at 1129.

67.     As noted above, the Proof of Citizenship Restriction imposes significant new restrictions and burdens on a minimum of approximately 200,000 Arizonans, an impact over six times greater than that which gave the Tenth Circuit such pause in *Fish*. As in *Fish*, there can be little doubt that the Proof of Citizenship Restriction imposes an unconstitutional burden on the right to vote.

## CLAIMS FOR RELIEF

### COUNT I

**Unjustifiable Burden on the Right to Vote**
**U.S. Const. Amend. I, XIV, 42 U.S.C. § 1983**
**(As to all Defendants)**

68.     Plaintiff realleges and incorporates by reference paragraphs 1 through 67 as if fully set forth herein.

69.     A court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the Plaintiff seeks to vindicate against the justifications put forward by the state for the burdens imposed by the rule. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

70.     "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotations marks omitted).

71.     The Proof of Citizenship Restriction imposes a disparate and unjustifiable burden on the right to vote. As detailed above, it strips voters of the right to vote in presidential elections or by mail without notice, adds further confusion to what was already a convoluted registration process that has led to disenfranchisement, imposes substantial

new costs on hundreds of thousands of Arizonans to exercise the franchise, and exposes voters to the threat of baseless investigation by the Attorney General. Both individually and in combination these harms impose a significant—and in many cases severe—burden on the right to vote.

72.    These burdens are not justified by any sufficient state interest.

## COUNT II

### Denial of Procedural Due Process
### U.S. Const. Amend. XIV, 42 U.S.C. § 1983
### (As to all Defendants)

73.    Plaintiff realleges and reincorporates by reference paragraphs 1 through 72 as though fully set forth herein.

74.    To determine whether a plaintiff has been denied procedural due process in violation of the Due Process Clause of the Fourteenth Amendment, a court first asks whether a constitutionally protected liberty interest is at stake. If so, the court determines whether the procedural protections provided are sufficient by applying the *Anderson-Burdick* test as described above. *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1195 (9th Cir. 2021) (holding that "the *Anderson/Burdick* approach is better suited to the context of election laws than is the more general *Eldridge* test" (quoting *Richardson v. Tex. Sec'y of State,* 978 F.3d 220, 234 (5th Cir. 2020))).

75.    The right to vote is a fundamental constitutional right. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry*, 376 U.S. at 17. Because Arizona allows all registered voters to exercise their fundamental right to vote early by mail, there is a constitutionally protected liberty interest involved in the process of casting a ballot by mail and in having that ballot counted. *See, e.g.*, *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp 3d 158, 227 (M.D.N.C. 2020) (holding that "North Carolina, having 'authorized the use of absentee ballots,' must afford appropriate due process protections to the use of the absentee ballots"); *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1338 (N.D. Ga. 2018) ("Courts around the country have recognized that '[w]hile it is true that absentee voting is a privilege and a convenience to voters, this does not grant the state the latitude

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

to deprive citizens of due process with respect to the exercise of this privilege.'") (quoting *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1358 (D. Ariz. 1990)); *Zessar v. Helander*, No. 05 C 1917, 2006 WL 642646, at *5 (N.D. Ill. Mar. 13, 2006) ("The right to vote by absentee ballot is not, in and of itself, a fundamental right. But once the State permits voters to vote absentee, it must afford appropriate due process protections, including notice and a hearing, before rejecting an absentee ballot."). As a result, Defendants may not deprive voters of the right to vote early by mail without providing adequate procedures.

76.     Arizona's Proof of Citizenship Restriction will deprive hundreds of thousands of currently registered voters of their ability to vote by mail in future elections. It does so while giving no details about any notice these voters will be provided, or how or when they may cure this defect.

77.     As detailed above, there is no state interest which justifies stripping registered voters of the state-protected right to vote early by mail with no notice or opportunity to cure.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter the following judgment:

A. Declare that the Proof of Citizenship Restriction (H.B. 2492) violates the First and Fourteenth Amendments;

B. Enjoin Defendants, along with their respective agents, officers, employees, and successors from enforcing the Proof of Citizenship Restriction;

C. Award Plaintiff its costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law;

D. Grant such other and further relief as the Court deems just and proper.

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1  Dated: March 30, 2022                    Respectfully Submitted,

2

3                                           */s/ Daniel A. Arellano*
                                            Roy Herrera (Bar No. 032901)
4                                           Daniel A. Arellano (Bar. No. 032304)
                                            Jillian L. Andrews (Bar No. 034611)
5                                           **HERRERA ARELLANO LLP**
6                                           530 East McDowell Road
                                            Suite 107-150
7                                           Phoenix, Arizona 85004-1500
8                                           Telephone: (602) 567-4820
                                            roy@ha-firm.com
9                                           daniel@ha-firm.com
                                            jillian@ha-firm.com
10

11                                          Marc E. Elias*
12                                          Elisabeth C. Frost*
                                            John M. Geise*
13                                          Mollie DiBrell*
                                            Alexander F. Atkins*
14                                          **ELIAS LAW GROUP LLP**
15                                          10 G Street NE, Suite 600
                                            Washington, DC 20002
16                                          Phone: (202) 968-4513
17                                          Facsimile: (202) 968-4498
                                            melias@elias.law
18                                          efrost@elias.law
19                                          jgeise@elias.law
                                            mdibrell@elias.law
20                                          aatkins@elias.law

21                                          *Attorneys for Plaintiff*
22                                          *Application for Admission Pro Hac Vice
                                              Forthcoming*
23

24

25

26

27

28

PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF