# EXHIBIT A

Daniel J. Adelman (011368)
Arizona Center for Law
  In the Public Interest
352 E. Camelback Rd., #200
Phoenix, AZ  85012
(602) 258-8850
danny@aclpi.org

Jon Sherman (DC Bar No. 998271)*
Michelle Kanter Cohen (DC Bar No. 989164)*
Cecilia Aguilera (DC Bar No. 1617884)*
Fair Elections Center
1825 K St. NW, Ste. 450
Washington, D.C. 20006
(202) 331-0114
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
caguilera@fairelectionscenter.org

John A. Freedman*
Jeremy Karpatkin*
Erica McCabe*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C.  20001
(202) 942-5000
John.Freedman@arnoldporter.com
Jeremy.Karpatkin@arnoldporter.com
Erica.McCabe@arnoldporter.com

Steven L. Mayer*
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111
(415) 471-3100
Steve.Mayer@arnoldporter.com

Leah R. Novak*
Arnold & Porter Kay Scholer LLP
250 W. 55th Street
New York, NY 10019
(212) 836-8000
Leah.Novak@arnoldporter.com

*Counsel for Plaintiff Poder Latinx*
*Application for Pro Hac Vice Admission Forthcoming*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>Katie Hobbs, et al.,<br><br>       Defendants.<br><br>Living United for Change in Arizona, et al., | Case No. 2:22-cv-00509-SRB (Lead Case)<br><br>Case No. 2:22-cv-01003-MTL (Consolidated)<br><br>**FIRST AMENDED COMPLAINT**<br><br>(Honorable Susan R. Bolton) |

|  |  |  |
|---|---|---|
| Plaintiffs, | | |
| v. | | |
| Katie Hobbs, | | |
| Defendant, | | |
| and | | |
| State of Arizona, et al., | | |
| Intervenor-Defendants. | | |

| | | |
|---|---|---|
| Poder Latinx, Chicanos Por La Causa, and Chicanos Por La Causa Action Fund, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No.: |
| Plaintiff, | | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. | | |
| Katie Hobbs, in her official capacity as | | |
| Secretary of State of Arizona, Mark Brnovich, | | |
|  in his official  capacity as Attorney General of Arizona, Stephen Richer, in his official | | |
| capacity as Maricopa County Recorder, Gabriella Cazares-Kelly, in her official capacity as Pima County Recorder, and Richard Colwell, in his official capacity as Yuma County Recorder, | | |
| Defendants. | | |

| | | |
|---|---|---|
| United States of America, | | |
| Plaintiff, | | |
| v. | | |
| State of Arizona, et al., | | |
| Defendants. | | |

Democratic National Committee, et al.,

Plaintiffs,

v.

State of Arizona, et al.,

Defendants,

and

Republican National Committee,

Intervenor-Defendant.

~~Plaintiff~~Plaintiffs Poder Latinx ~~("Plaintiff" or "Poder Latinx~~, Chicanos Por La Causa, Inc. and Chicanos Por La Causa Action Fund (together, "CPLC") (collectively, "Plaintiffs") ~~seeks~~seek declaratory and injunctive relief as follows:

## NATURE OF ACTION

1.     This suit challenges ~~new statutory~~ provisions recently enacted as part of Arizona House Bill 2492 ("HB 2492") ~~that limit~~and Arizona House Bill 2243 ("HB 2243") that overhaul Arizona's already highly restrictive and needlessly complex voter registration system. ~~Plaintiff seeks~~Once implemented in 2023, the statutes' new citizenship investigation procedures for both registration applicants and existing registered voters, removal mechanisms, and proof of residence requirement will operate in tandem to target Arizona's naturalized citizen voters, who are predominantly racial and ethnic minority voters,[*] and in particular, the Latinx communities that Plaintiffs serve. These provisions—many of which are found nowhere else in the country—violate the U.S. Constitution's prohibitions on discriminatory and arbitrary treatment of voters and its guarantees of equal protection and due process, the National Voter Registration Act ("NVRA"), and the Civil Rights Act of 1964.

2.     When HB 2492 and HB 2243 take effect next year,[†] these new mandates will immediately result in the inaccurate, arbitrary, discriminatory, and ultimately unlawful

---

[*] United States Census Bureau, Table S0501, "Selected Characteristics of the Native and Foreign-Born                    Populations,"              *available               at* https://data.census.gov/cedsci/table?q=S0501%3A%20SELECTED%20CHARACTERIST ICS%20OF%20THE%20NATIVE%20AND%20FOREIGN-BORN%20POPULATIONS &g=0400000US04&tid=ACSST5Y2020.S0501.

[†] A separate bill, Senate Bill 1638 ("SB 1638"), delays the effective date of HB 2492 until January 1, 2023. *See* SB 1638, Section 4(A).  On information and belief, the Arizona

1

treatment of naturalized voters throughout Arizona—all of whom are United States citizens who may be erroneously flagged as non-citizens based on old and inaccurate data or the personal beliefs of local officials, subjected to unwarranted extra scrutiny, unlawfully removed from the rolls, and even prosecuted. HB 2492 and HB 2243's pernicious effects will be felt disproportionately by Arizona's racial and ethnic minority voters, including Latinx voters. Consequently, the challenged laws will do severe harm to the voter registration operations and civic engagement mission of community organizations like Plaintiffs, which are engaged in securing the trust of Latinx voters and assisting them in registering to vote. The challenged laws will also directly harm the communities and constituencies served by Plaintiffs.

3.      To prevent the harm to the community of voters Plaintiffs Poder Latinx and CPLC serve and the undermining of its voter registration and civic engagement operations, Plaintiffs seek to enjoin the enforcement of HB 2492 and HB 2243's vague, arbitrary, and unconstitutional procedures for investigating the U.S. citizenship of both registration applicants usingwho apply with the National Voter Registration Act ("NVRA")NVRA mail-in registration form (the "Federal Registration Form" or "Federal Form") and currently registered voters, and taking actionacting on the results of those investigations. The specific challenged provisions within HB 2492 and HB 2243 include the following:

---

Secretary of State takes the position that HB 2243's implementation is also effectively delayed until January 1, 2023 because HB 2243 alters a statutory provision newly created by

2

**The Citizenship Investigation Provisions:**

- Ariz. Rev. Stat. §§ 16-121.01(D), 16-121.01(E), and 16-121.01(F), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4;

- Ariz. Rev. Stat. § 16-143, *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 7; ~~and~~

- Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8 ~~(collectively, "the~~, *as further amended by* 2022 Ariz. Sess. Laws, ch. 370 § 2; and

- Ariz. Rev. Stat. §§ 16-165(F), 16-165(G), 16-165(H), 16-165(I), 16-165(J), *as enacted by* 2022 Ariz. Sess. Laws, ch. 370 § 2.

**The Documentary Proof of Residence ("DPOR") Requirement**

- Ariz. Rev. Stat. § 16-123, *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 5.

- Ariz. Rev. Stat. § 16-121.01(A), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4.

4.    The Citizenship Investigation ~~Procedures" or~~Provisions and the DPOR requirement are referred to herein collectively as "the Challenged Provisions~~")~~."

5.    ~~2.~~ HB 2492 ~~requires~~and HB 2243 require Defendant Secretary of State Katie Hobbs ("Defendant Hobbs"), Defendant Attorney General Mark Brnovich ("Defendant Brnovich"), Defendant Maricopa County Recorder Stephen Richer, Defendant Pima County Recorder Gabriella Cázares-Kelly, Defendant Yuma County Recorder Richard Colwell (collectively, "Defendants"), and the county recorders in Arizona's other counties to

HB 2492. On information and belief, the county recorders are not in a position to implement the changes made by HB 2492 and HB 2243 without the Arizona Secretary of State's office.

implement the ~~citizenship investigation procedures. In particular, HB 2492 requires~~Citizenship Investigation Provisions. These provisions require Arizona election and law enforcement officials, including each of the Defendants ~~Brnovich and Richer~~, to ~~conduct open-ended comparisons of~~compare voter registration data to *all* available federal, state, and local databases in search of ~~evidence~~"information" that registration applicants and registered voters lack U.S. citizenship. HB 2492 ~~also requires the county recorders to reject registration forms and cancel voter registrations based on~~and 2243 authorize county recorders and Defendant Brnovich to use "information" that the applicant or registered voter "is not a United States citizen~~." Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4; Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8. Because the statute requires cancellation based on *any* "information" that the individual is not a citizen, regardless of whether the information is accurate, the law requires removing an individual from the list of registered voters even if the information is years old, not recorded or corroborated in a more recent government database, or is only an unsworn statement verbally communicated to a county recorder's office. Indeed, HB 2492 authorizes the county recorders and Defendant Brnovich to use such unspecified types of "information~~" to reject registration forms, cancel existing registered voters' records, and subject these erroneously flagged individuals to investigation and prosecution. These statutes require the rejection or cancellation of a voter's registration based on *any* citizenship "information" the county recorder obtains and "confirms," regardless of whether that information is current, accurate, and validated, and even if that information is superseded by the individual's subsequent naturalization.

3.      In recently vetoing a similar piece of legislation, House Bill 2617, Governor Doug Ducey made the following statement:

6.      Governor Doug Ducey himself identified serious legal problems with this new process. When the legislature passed House Bill 2617 ("HB 2617") earlier this past session, a bill that contained many of the same provisions later included in HB 2243, he vetoed it.[‡] Governor Ducey issued a veto statement that argued the following:

> It is equally important that our laws include safeguards to protect the vote of any Arizonan who is eligible and lawfully registered. . . .
>
> H.B. 2617 requires a county recorder to cancel the voter registration of a voter if the recorder receives information that provides the basis for determining that the person is not a qualified elector. The implementation of this provision is vague and lacks any guidance for how a county recorder would confirm such a determination. Our lawfully registered voters deserve to know that their right to vote will not be disturbed without sufficient due process. This provision leaves our election system vulnerable to bad actors who could seek to falsely allege a voter is not a qualified elector.
>
> . . . . The subjectivity of this provision, as well as a lack of guardrails against false claims, included in H.B. 2617 leaves voter registration susceptible to being canceled based on fiction rather than fact.

*See* Letter from Governor Ducey ~~Veto Statement on House Bill 2492~~to Rusty Bowers, Speaker of the Arizona State House of Representatives, (May 27, 2022), *available at* https://www.azleg.gov/govlettr/55leg/2r/hb2617.pdf. ~~As a nearly identical registration cancellation provision appears in HB 2492, Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8, Governor Ducey's veto statement articulates much of what is wrong with the law challenged here. If~~Just as the phrase "information that the person . . . is not a United States citizen" ~~is vague, prone to arbitrary implementation, and susceptible to third-party abuse as used in HB 2617~~was, in Governor Ducey's words,

---

[‡] A revised version of HB 2617 was added into HB 2243 late in Arizona's 2022 legislative session. Governor Ducey signed HB 2243 into law on July 6, 2022. As described *infra*, some provisions from HB 2617 were amended in HB 2243, but others remained unchanged.

"vague" and left the system "vulnerable to bad actors," HB 2492's ~~repeated~~ use of the same disqualification standard suffers from the same fatal ~~constitutional~~ defects. Similarly, HB 2243's further amendments to Ariz. Rev. Stat. § 16-165 ultimately perpetuate many of the same legal problems that caused the Governor to veto this legislation the first time around, including but not limited to the law's vulnerability to third-party false accusations.

      7.     A clear example of this problem is newly created Ariz. Rev. Stat. § 16-165(H), which runs afoul of clear precedents under the Fourteenth and Fifteenth Amendments, which ban racial and/or national origin discrimination in voting. This provision authorizes county recorders to act on mere suspicions and any other subjective "reason to believe [that registered voters] are not United States citizens":

> To the extent practicable, each month the county recorder shall compare persons who are registered to vote in that county and ***who the county recorder has reason to believe are not United States citizens*** and persons who are registered to vote without satisfactory evidence of citizenship as prescribed by Section 16-166 with the Systematic Alien Verification for Entitlements program maintained by the United States Citizenship and Immigration Services to verify the citizenship status of the persons registered.

Ariz. Rev. Stat. § 16-165(H), *as enacted by* 2022 Ariz. Sess. Laws, ch. 370 § 2 (emphasis added). This provision is an open invitation for discriminatory, unequal, and arbitrary treatment of registered voters, particularly naturalized racial and ethnic minority voters. As with similarly vague, undefined provisions in HB 2492 (and vetoed HB 2617), any kind of "information"—including a false third-party accusation or "information" county recorders learn by interacting with or observing the registered voter including their perceived race or ethnicity—can give a county recorder "reason to believe" that a registered voter is not a United States citizen. Receipt of such "information" triggers Defendants' obligation to subject those voters to extra investigation and potential removal from the statewide voter

registration database. Under this provision, a county recorder is licensed to act on mere suspicion or rumor, or a prejudiced view of the registered voter's race, ethnicity, national origin, English proficiency, or dress. Far from eliminating the threat of third-party false accusations Governor Ducey identified, HB 2243 merely shifted it to another vague, open-ended provision.

8.   4. Even prior to HB 2492's the enactment of HB 2492 and HB 2243, Arizona's documentary proof of citizenship ("DPOC") requirement, which was first adopted in 2004 as part of Proposition 200, was the only such law enforced in the nation. Now HB 2492 the Challenged Provisions will impose additional restrictions on Arizona's already uniquely burdensome and byzantine voter registration system. No other state in the country has adopted is enforcing such draconian measures. The experience of the other 49 states that do are not impose imposing these unique burdens on citizens attempting to vote demonstrates that the restrictions imposed by HB 2492 and HB 2243 are unnecessary to further any lawful governmental purpose assess voter registration applicants' or registered voters' qualifications.

5.   When HB 2492 takes effect in 2023,¹ these new mandates will immediately result in the inaccurate, arbitrary, discriminatory, and ultimately unlawful treatment of naturalized voters throughout Arizona: all United States citizens who may be erroneously flagged as non-citizens based on old and inaccurate data, subjected to unwarranted extra scrutiny, unlawfully removed from the rolls, and even prosecuted. HB 2492's pernicious effects will be felt by Arizona's racial and ethnic minority voters, who comprise a large

majority of naturalized citizens.² Consequently, the challenged laws will do severe harm to the voter registration operations and civic engagement mission of community organizations like Plaintiff Poder Latinx, which is engaged every week in registering and securing the trust of Latinx voters in Arizona and assisting them in registering to vote.

9.    6.    HB 2492's citizenship investigation proceduresThe Citizenship Investigation Provisions in HB 2492 and HB 2243 violate the U.S. Constitution and federal law in several ways.

- ▪ *First*, the challenged provisionsChallenged Provisions contained in HB 2492 violate Section 8(b) of the National Voter Registration Act, which requires uniform and non-discriminatory voter registration processes. Naturalized citizens are treated in a non-uniform manner under HB 2492, and Arizona voters will face discriminatory treatment based on their race, ethnicity, and national origin.§

- ▪ *Second*, HB 2243's creation of 16-165(H) violates Title I of the 1964 Civil Rights Act, specifically 52 U.S.C. § 10101(a)(2)(A), because it subjects different groups of eligible voters to different "standard[s], practice[s], or procedure[s]" for verifying voting eligibility, based on nothing more than a county recorder's

---

¹ A separate bill, Senate Bill 1638 ("SB 1638"), delays the effective date of HB 2492 until January 1, 2023.

² United States Census Bureau, Table S0501, "Selected Characteristics of the Native and Foreign Born Populations," available at https://data.census.gov/cedsci/table?q=S0501%3A%20SELECTED%20CHARACTERISTICS%20OF%20THE%20NATIVE%20AND%20FOREIGN-BORN%20POPULATIONS&g=0400000US04&tid=ACSST5Y2020.S0501.

§ Plaintiffs have submitted a second NVRA notice letter to Defendant Secretary of State Hobbs, identifying NVRA violations in HB 2243, which was enacted at the end of this

perception that there is "reason to believe [that registered voters] are not United States citizens." Ariz. Rev. Stat. § 16-165(H).

- **Third,** Ariz. Rev. Stat. § 16-165(H) will result in the discriminatory and arbitrary treatment of naturalized voters and, by extension, Latinx voters. This new provision vests county recorders with the explicit authority to act on mere suspicions of non-citizenship, and to subject voters to discriminatory and unequal treatment based on any perception that the county recorder's staff deems to be indicative of non-citizenship. It violates the Fourteenth and Fifteenth Amendments' prohibitions on the discriminatory treatment of voters on the basis of race and/or national origin.

- **Fourth**, the Citizenship Investigation Provisions are bereft of any rules or criteria for Defendants to apply in deciding who is and who is not a U.S. citizen. Whereas the preexisting DPOC requirement contains an objective list of the specific forms of documentation that prove a registration applicant's U.S. citizenship, Ariz. Rev. Stat. § 16-166(F), HB 2492 ~~does~~and HB 2243 do not articulate what "information" will prove that a registration applicant or registered voter "is not a United States citizen." In particular, HB 2492 ~~fails~~and HB 2243 fail to inform Arizona state and local officials as to how they should review and evaluate outdated citizenship status information contained in government databases. Without ~~such standards,~~specific instructions, the statutes invite Defendants ~~will~~to make inconsistent and irreconcilable determinations as to applicants' and voters'

---

legislative session. Based on an effective date of January for HB 2243, these NVRA claims

*current* citizenship status. ~~This creates a significant risk that different~~Different county recorders and different staff members within a county recorder's office will necessarily apply varying rules, standards, and methods in comparing voter registration applicants and registered voters to the government and voter registration databases that they are required to search pursuant to HB 2492~~.~~ ~~Ascertaining what information suffices to determine a voter registration applicant or registered voter is not a U.S. citizen will be left to the subjective analysis, discretion, and guesswork of Defendants and their staff. Some~~ and HB 2243. Ariz. Rev. Stat. § 16-165(H) especially gives county recorders ~~and individual staff members will treat stale government data showing an individual was not a U.S. citizen at some time in the past as evidence~~unlimited discretion to subject registered voters they suspect ~~are still non-~~not U.S. citizens~~; others will keep digging and find that similarly situated voters were naturalized prior to registering~~ to extra, unwarranted investigation, and to deny them their right to vote. ~~This~~Such arbitrary and disparate treatment of ~~both~~ voter registration applicants and currently registered voters violates the Equal Protection Clause of the Fourteenth Amendment ~~to the U.S. Constitution~~.

- ~~7. Second~~***Fifth***, the failure to provide naturalized-citizen registration applicants or existing voters who are erroneously flagged as non-citizens with an opportunity to contest these citizenship status determinations violates the Fourteenth Amendment's protections for procedural due process. While registration

cannot be added to this complaint until late October.

applicants who do not include DPOC with the federal form must be notified when county recorders locate "information that the applicant is not a United States citizen," Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4, HB 2492 does not afford these applicants ~~are not afforded~~ an opportunity to be heard and ~~prove~~attest to or even provide documentary proof of their U.S. citizenship before their voter registration application is rejected. Combined with the ~~inherent~~ arbitrariness of these open-ended and vague investigation directives, HB 2492 violates the Due Process Clause.

~~8.   Finally, HB 2492's documentary proof of residence ("DPOR") requirement also does not afford due process to voter registration applicants who fail to provide DPOR. The new DPOR requirement does not require county recorders to provide notice to voter registration applicants that they failed to provide DPOR, let alone give them an opportunity to cure the deficiency. Ariz. Rev. Stat. § 16-123, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 5. At a minimum, Arizona law fails to provide due process to registration applicants using the federal form. Ariz. Rev. Stat. § 16-134; Ariz. Rev. Stat. § 16-121.01(A), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4.~~

10.    Finally, Plaintiffs also challenge HB 2492's documentary proof of residence ("DPOR") requirement as a violation of the National Voter Registration Act, which preempts contrary state laws under the U.S. Supreme Court's decision in *Arizona v. Inter Tribal Council of Arizona. (ITCA)*, 570 U.S. 1 (2013).

11.   ~~9.~~ ~~Plaintiff challenges~~Plaintiffs challenge these provisions of HB 2492 and HB 2243 under the Fourteenth Amendment's Equal Protection and Due Process Clauses, as enforced by 42 U.S.C. § 1983, the National Voter Registration Act, 52 U.S.C. §§ 20505, 20507, and the 1964 Civil Rights Act, 52 U.S.C. § 10101(a)(2)(A). Poder Latinx ~~seeks~~and CPLC respectfully seek a declaratory judgment and preliminary and permanent injunctive relief.

## JURISDICTION AND VENUE

12.   ~~10.~~This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 over this suit because it arises under the Constitution and laws of the United States.

13.   ~~11.~~This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

14.   Plaintiffs' claims under the NVRA are proper because Arizona is covered by the NVRA. 52 U.S.C. § 20502(4).

15.   ~~12.~~This Court has jurisdiction to award attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

16.   ~~13.~~This Court has personal jurisdiction over Defendant Hobbs, Defendant Brnovich, Defendant Richer, Defendant Cázares-Kelly, and Defendant ~~Richer~~Colwell, who are sued in their official capacities. Defendants Hobbs and Brnovich are state officials, and Defendant Richer is a county official, each of whom reside in Arizona and work in Phoenix, Arizona. Defendants Cázares-Kelly and Colwell are county officials, each of whom reside in Arizona.

17.   14. Venue is appropriate in the District of Arizona, under 28 U.S.C. § 1391(b)(1), because Defendants Hobbs and Brnovich are state officials and Defendant Richer is a county official, each of whom work in Phoenix, Arizona. Aa substantial part of the events giving rise to these claims occurred and continues to occur in this district, making venue also proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

18.   15. Plaintiff Poder Latinx is a non-partisan civic and social justice organization with a vision to build political power for the Latinx community to become decision-makers in this democracy and winadvocate on economic, immigrant, and environmental issues. Its mission is to build a sustained voting bloc of LatinxsLatinx voters in battleground states. It operates in Arizona, Florida, and Georgia.³** Poder Latinx works locally to expand the electorate by conducting year-round civic engagement activities, community empowerment, leadership development, and issue-based organizing. Poder Latinx carries out its mission to expand the electorate by encouraging citizens to register to vote through in-person voter registration drives, digital campaigns, and telephone banking. Poder Latinx's civic engagement work is focused on educating voters on how to register and exercise their right to vote, the accepted types of identification necessary to vote in Arizona, how to request vote-by-mail ballots, and how to return a ballot.

19.   Plaintiff Chicanos Por La Causa, Inc. is a 501(c)(3) nonprofit and community development organization formed in 1969 to fight discrimination against the Mexican-American community. CPLC's mission is to drive the political and economic

empowerment of Latinos. For 53 years, CPLC has advocated for equity in education, politics, and labor conditions. With offices in Arizona, Nevada, New Mexico, and Texas, it impacts more than 2 million lives every year through its work on civic engagement and voter mobilization, health and human services, housing, education, economic development, and advocacy.

20.   Chicanos Por La Causa Action Fund is a 501(c)(4) non-profit advocacy organization overseen by an unpaid volunteer board. Chicanos Por La Causa Action Fund is operated independently from Chicanos Por La Causa, a nonprofit service provider. Chicanos Por La Causa Action Fund was created to further the Chicanos Por La Causa mission to advance Latino success through advocacy on key impact areas, including education, housing, health and human services, and economic empowerment. Chicanos Por La Causa Action Fund's advocacy efforts include community-based activism, events focusing on social justice and equity issues, and lobbying and leverage of elected officials and leaders. Chicanos Por La Causa Action Fund also works to engage Latino voters through voter registration, voter education, and Get Out The Vote efforts.

21.   16. Defendant Katie Hobbs is the Secretary of State for the State of Arizona. She is sued in her official capacity. The Secretary of State serves as the Chief Election Officer for Arizona. Ariz. Rev. Stat. § 16-142. Secretary Hobbs is responsible for coordinating state responsibilities under the NVRA. Ariz. Rev. Stat. § 16-142(A)(1). The Secretary of State is the public officer responsible for supervising voter registration throughout the state and providing binding regulations and guidelines for voter registration.

---

3** Plaintiff Poder Latinx is a fiscally sponsored project of Tides Advocacy, a California

14

*Id.*; *see also Arizona Democratic Party v. Reagan*, No. CV-16-03618-PHX-SPL, 2016 WL 6523427 at *6 (D. Ariz. Nov. 3, 2016) ("The Secretary has the authority to promulgate rules and procedures for elections, such as voter registration, which encompasses determining voter registration deadlines. . . . Any person who does not abide by the Secretary's rules is subject to criminal penalties."). As the state's chief election official, the Arizona Secretary of State has power to compel the county recorders to comply with state and federal election laws, as well as court rulings. *See* Ariz. Rev. Stat. § 16-142 ("The secretary of state or the secretary's designee is . . . [t]he chief state election officer"); *id.* § 16-452(A) ("After consultation with each county board of supervisors or other officer in charge of elections, the secretary of state shall prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of producing, distributing, collecting, counting, tabulating and storing ballots. . . .").

22.    ~~17.~~ Defendant Mark Brnovich is the Attorney General for the State of Arizona. He is sued in his official capacity. Under HB 2492, the Secretary of State and 15 county recorders are required to provide <u>to the Attorney General</u> a list and the applications of all registered federal-only voters who have not provided DPOC ~~to the Attorney General~~. Ariz. Rev. Stat. § 16-143(A), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7. The Attorney General is required to search any federal, state, or local government database to which the office has access and any other voter registration database. Ariz. Rev. Stat. § 16-143(B), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7. Finally, the Attorney General is *required* "to

---

nonprofit public benefit corporation.

prosecute individuals who are found to not be United States citizens" for registration fraud under Ariz. Rev. Stat. § 16-182, and to submit a report to the legislature before March 31, 2023, detailing any findings. Ariz. Rev. Stat. §§ 16-143(D)-(E), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7.

23.    ~~18.~~ At the local level, Arizona election law is administered by ~~15~~fifteen county recorders. They are responsible for administering federal, state, and local elections in their counties, processing all voter registration forms, and adding and removing voters from the rolls. *See* Ariz. Rev. Stat. § 16-168 (describing county recorders' procedures for preparing list of qualified electors for precinct registers).

24.    ~~19.~~ Defendant Stephen Richer is the Maricopa County Recorder. He is sued in his official capacity.

25.    Defendant Gabriella Cázares-Kelly is the Pima County Recorder. She is sued in her official capacity.

26.    Defendant Richard Colwell is the Yuma County Recorder. He is sued in his official capacity.

**BACKGROUND**

**A.   Arizona's Documentary Proof of Citizenship Requirement**

27.    ~~20.~~ Since 2005, Arizona election law has contained a documentary proof of citizenship ("DPOC") requirement for voter registration applicants. When a person registers

to vote, they must provide one of the following forms of "evidence of citizenship" from the statutory list:

> 1. 1. The number of the applicant's driver license or nonoperating identification license issued after October 1, 1996 by the department of transportation or the equivalent governmental agency of another state within the United States if the agency indicates on the applicant's driver license or nonoperating identification license that the person has provided satisfactory proof of United States citizenship.

> 2. 2. A legible photocopy of the applicant's birth certificate that verifies citizenship to the satisfaction of the county recorder.

> 3. 3. A legible photocopy of pertinent pages of the applicant's United States passport identifying the applicant and the applicant's passport number or presentation to the county recorder of the applicant's United States passport.

> 4. 4. A presentation to the county recorder of the applicant's United States naturalization documents or the number of the certificate of naturalization. If only the number of the certificate of naturalization is provided, the applicant shall not be included in the registration rolls until the number of the certificate of naturalization is verified with the United States immigration and naturalization service by the county recorder.

> 5. 5. Other documents or methods of proof that are established pursuant to the immigration reform and control act of 1986.

> 6. 6. The applicant's bureau of Indian affairs card number, tribal treaty card number or tribal enrollment number.

Ariz. Rev. Stat. § 16-166(F).

28. 21. The DPOC requirement permits applicants to put down provide certain identification numbers in lieu of the presentation of a physical document, subject to the requirement that these must be verified by the county recorders' offices prior to adding voters to the rolls. For instance, the number on an Arizona driver's license or state identification card issued after October 1, 1996 fully satisfies the DPOC requirement if the county recorder's office verifies that the license or card holder has **not** been issued an

"F-type" license. 2019 Arizona Election Procedures Manual ("2019 EPM") at 3.[4][1] The Arizona Department of Transportation ("AZDOT") Motor Vehicles Division ("MVD") issues F-type licenses to individuals who are legally present in the United States but who are not U.S. citizens at the time of application. *Id*. at 3-4; *see also Foreign Applicants,* Arizona Department of Transportation, https://azdot.gov/motor-vehicles/driver-services/driver-license-information/foreign-applicants (last visited June 7, 2022) (detailing how foreign applicants can obtain a driver's license in Arizona). If.[‡‡] When such an individual later naturalizes as a U.S. citizen and still possesses an F-type license, old AZDOT data will still reflect that the cardholder is a non-citizen, and another form of "evidence of citizenship" must be supplied before the applicant will be registered to vote a full ballot. *Id*. at 3 ("[T]he verification must not return a result that indicates non-citizenship (i.e., an 'F-type' license)." It takes money —including funds to obtain underlying documentation—and time to trade in an F-type license and obtain a license (and along with it, a database record) that reflects the voter registration applicant's U.S. citizenship.

29.   22. Nine years ago, the U.S. Supreme Court decided *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ("*ITCA*"), a challenge to the application of Arizona's proof of citizenship requirement to the federal registration form. In an opinion

---

[4][1]   2019 Arizona Election Procedures Manual, *available at* https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf.

[‡‡] *See also Foreign Applicants,* Arizona Department of Transportation, *available at* https://azdot.gov/motor-vehicles/driver-services/driver-license-information/foreign-applicants (last visited Sept. 5 7, 2022) (detailing how foreign applicants can obtain a driver's license in Arizona).

written by Justice Scalia, the Supreme Court concluded that the NVRA prohibits states from applying different or additional requirements, such as Arizona's DPOC requirement, to the federal registration form. The Court expressly held "that [52 U.S.C. § 20505] precludes Arizona from requiring a Federal Form applicant to submit information beyond that required by the form itself." *ITCA*, 570 U.S. at 20. Arizona's DPOC requirement is not part of the Arizona-specific instructions for the federal registration form.

30. 23. Since the *ITCA* decision, Arizona has administered the nation's only continuing dual-track voter registration and voting process. Under this system, registered Arizona voters who have provided DPOC may vote in all elections, including federal, state, and local elections. They are known as "full-ballot" voters. Registered Arizona voters who have *not* provided DPOC—and for whom none has been located by county recorders, *see infra*—are only permitted to vote in federal elections. They are known as "federal-only" voters.[§§] HB 2492 arbitrarily prohibits such "federal-only" voters from voting in presidential elections; under the new law, once effective, they may therefore only vote in congressional elections. Ariz. Rev. Stat. § 16-127(A)(1), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 5.

31. 24. Prior to HB 2492's enactment, Arizona law required county recorders to search the MVD database for DPOC whenever any registration applicant submitted any registration form without DPOC. 2019 EPM at 6. This requirement was imposed to force county recorders to locate DPOC so that voters voter registration applicants could be registered for all elections, and not only as federal-only voters. It was not imposed as part of

---

[§§] Arizona Secretary of State, *Proof of Citizenship Requirements*, https://azsos.gov/elections/voting-election/proof-citizenship-requirements (last visited Sept. 19

an effort to investigate the voter's current citizenship status. Per the 2019 Election Procedures Manual, a county recorder was required to register an applicant as a "full-ballot" voter for the next election if:

> a. • The registrant provides provide[d] DPOC with or after submission of the registrant's voter registration application; or
> b. • The County Recorder acquires acquire[d] DPOC on the registrant's behalf, including from AZMVD MVD records or the statewide voter registration database.

2019 EPM at 6 (citing Ariz. Rev. Stat. § 16-166(F)). The requirement to conduct such a DPOC search for registration applicants using *Arizona's* registration form was part of a consent decree entered in *League of United American Citizens of Arizona (LULAC) v. Reagan*, 2:17-cv-04102-DGC, Doc Dkt. No. 37 (D. Ariz. June 18, 2018) (the "LULAC Consent Decree").

32.  25. HB 2492 seeks to override that preexisting federal consent decree. When the new law takes effect in 2023, an Arizona voter registration form[5]*** that is submitted without DPOC must be rejected by the county recorder's office, without exception or prior database searches, and without a requirement to search databases for already-existing evidence of citizenship. Failing A registrar's failure to reject the form has been made a Class 6 felony. Ariz. Rev. Stat. § 16-121.01(C), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4. The registration applicant must be notified and afforded an opportunity to provide DPOC, pursuant to Ariz. Rev. Stat. § 16-134(B). That statute provides that:

---

5, 2022); *League of United American Citizens of Arizona (LULAC) v. Reagan*, 2:17-cv-04102-DGC, Dkt. No. 37 (D. Ariz. June 18, 2018) ("the *LULAC* Consent Decree").

[5]*** This is the state voter registration form in Arizona: https://azsos.gov/sites/default/files/voter_registration_form.pdf.

> [i]f the information on the registration form is incomplete or illegible and the county recorder is not able to process the registration form, the county recorder shall notify the applicant within ten business days of receipt of the registration form, shall specify the missing or illegible information and, if the missing or illegible information includes any of the information prescribed by § 16-121.01, subsection A or C, shall state that the registration cannot be completed until the information is supplied. If the missing or illegible information is supplied before 7:00 p.m. on election day, that person is deemed to have been registered on the date the registration was first received.

Ariz. Rev. Stat. § 16-134(B) (as amended by 2022 Ariz. Sess. Laws, ch. 99 § 6).

## B.   The New Citizenship Investigation ~~Procedures~~Provisions Under HB 2492 and HB 2243

33.   ~~26.~~ HB 2492 imposes a set of new citizenship documentation and investigation procedures. First, HB 2492 mandates that county recorders investigate the citizenship status of new registration applicants using the federal registration form if the submitted form is not accompanied by DPOC. Ultimately, Ariz. Rev. Stat. § 16-121.01(D), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4, in conjunction with HB 2243, will constitute an end run around the federal voter registration form.

34.   ~~27.~~ HB 2492 ~~instructs~~imposes an unqualified, unrestrained, and backward-looking investigative mandate on country recorders, by instructing county recorders to "use all available resources to verify the citizenship status of the applicant and at a minimum ~~shall~~[to] compare the information available on the application for registration with the following, provided the county has access": (1) AZDOT databases of Arizona driver licenses and state identification cards; (2) Social Security Administration databases; (3) U.S. Citizenship and Immigration Services Systematic Alien Verification for Entitlements ("SAVE") Program system, "if practicable"; (4) a National Association for

Public Health Statistics and Information Systems Electronic Verification of Vital Events System; and (5) "~~any~~[a]ny *other state, city, town, county or federal database and any other database relating to voter registration* to which the county recorder or office in charge of elections has access, including an Electronic Registration Information Center [ERIC] database." Ariz. Rev. Stat. § 16-121.01(D), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4 (emphasis added). Effectively, this means county recorders must consult every government database at their disposal, including but not limited to the above government and voter registration databases, and any non-governmental database concerning voter registration including but not limited to ERIC databases. No criteria or standards govern such non-governmental databases. Anyone could create a database with unreliable or selective data; the statutory command to rely on such databases contains no limiting principle.

35.   ~~28.~~ After all government databases are searched for the applicant's citizenship status, the applicant is treated in one of three ways, depending on the outcomes of these searches:

> a. In Scenario 1, if the county recorder "matches the applicant with information that verifies the applicant is a United States citizen, is otherwise qualified as prescribed by Section 16-101 and has met the other requirements of this section, the applicant shall be properly registered." Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4. Such applicants are registered as "full-ballot" voters.
>
> b. In Scenario 2, if the county recorder's office "matches the ~~application~~applicant with *information that the applicant is not a United*

*States citizen*," then the county recorder must "reject the application, notify the applicant that the application was rejected *because the applicant is not a United States citizen* and forward the application to the county attorney and Attorney General for investigation." *Id*. (emphasis added). This provision does not enumerate or otherwise specify what "information" establishes that a registration applicant "is not a United States citizen." Nor does it reference the notice and curing procedure outlined in Ariz. Rev. Stat. § 16-134(B).  While requiring notice to the applicant of the rejection, by its terms, HB 2492 does not afford the registrant an opportunity to cure by attesting to their citizenship or even providing proof of citizenship before being automatically referred to the county attorney and Attorney General for investigation.

c. In Scenario 3, if the county recorder "is unable to match the applicant with *appropriate citizenship information*"—a vague and undefined phrase not used anywhere else in Arizona's election laws—the county recorder must "notify the applicant that the county recorder . . . could not verify that the applicant is a United States citizen and that the applicant will not be qualified to vote in a presidential election or by mail with an early ballot in any election until satisfactory evidence of citizenship is provided." *Id*. (emphasis added). Such voters will only be permitted to vote in congressional elections.

Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4. This last provision narrows access to voting based on the absence of affirmative information of citizenship.

36. 29. HB 2492 also requires county recorders to "record the efforts made to verify an applicant's citizenship status." Ariz. Rev. Stat. § 16-121.01(F), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4. Additionally, if the county recorder "fails to attempt to verify the citizenship status of an applicant" according to these procedures and "knowingly causes the applicant to be registered and it is later determined that the applicant was not a United States citizen at the time of registration," the county recorder has committed a Class 6 felony. *Id.*

37. 30. HB 2492 requires a similar process to investigate currently registered Arizona voters who have not previously provided DPOC and can only vote in congressional elections. For such congressional-only voters, the challenged law requires Defendant Brnovich to engage in the same wide-ranging database reviews to identify voters who are purportedly not U.S. citizens and "prosecute individuals who are found to not be United States citizens." Ariz. Rev. Stat. 16-143(D), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 7. To initiate this process, the Secretary of State and 15 Arizona's fifteen county recorders are required to provide to the Attorney General a list and the applications of all registered congressional-only voters who have not provided satisfied the DPOC requirement. Ariz. Rev. Stat. § 16-143(A), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7. The Attorney General is then required to search any federal, state, or local government database and any other voter registration database, *i.e.*, the same citizenship investigation procedures that

county recorders are required to use when a federal registration form is submitted without DPOC. Ariz. Rev. Stat. § 16-143(B), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7. Finally, the Attorney General is *required* "to prosecute individuals who are found to not be United States citizens" for registration fraud under Ariz. Rev. Stat. § 16-182, and to submit a report before March 31, 2023, detailing any findings. Ariz. Rev. Stat. §§ 16-143(D)-(E), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99, § 7.

38.    One plausible reading of Section 16-143 is that it requires a one-time-only investigation of currently registered congressional-only voters via database verification, but it may well be interpreted to authorize the Attorney General to investigate currently registered voters' citizenship status on an ongoing basis. Either way, this suit seeks injunctive relief against these provisions, as they suffer from the same constitutional defects as the ~~citizenship investigation procedures~~Citizenship Investigation Provisions directed at new voter registration applicants using the federal registration form.

39.    HB 2243 supplements HB 2492 by imposing a variety of vague, restrictive, and arbitrary voter list maintenance procedures. Under HB 2243, "when the county recorder obtains information pursuant to this section and confirms that the person registered is not a United States citizen," HB 2243 requires the removal of voters from the statewide voter registration database. Ariz. Rev. Stat. §§ 16-165(A)(10), *modified* 2022 Ariz. Sess. Laws ch. 370, § 2.[†††]

---

[†††] HB 2492 contained a prior version of this provision. *See* H.B. 2492 § 8 (adding a new paragraph 10 to § 16-165(A) requiring county recorders to cancel a registration "When the county recorder receives and confirms information that the person registered is not a United States citizen."). HB 2243's version of Section 16-165(A)(10) fully replaces the prior version in HB 2492.

40.    Newly created Ariz. Rev. Stat. §§ 16-165(F), 16-165(G), 16-165(H), 16-165(I), 16-165(J) compel the Secretary of State and the county recorders to match voter registration data against every federal, state, and local database to which they have access. The Secretary of State is required to perform monthly comparisons against the Arizona driver license database maintained by Arizona DOT. Ariz. Rev. Stat. § 16-165(F), *as enacted by* 2022 Ariz. Sess. Laws ch. 370, § 2. The county recorders are required to perform monthly comparisons against the Social Security Administration database. Ariz. Rev. Stat. § 16-165(G), *as enacted by* 2022 Ariz. Sess. Laws ch. 370, § 2.

41.    Section 16-165(H) creates a regime virtually guaranteed to result in discriminatory and unequal treatment in the guise of voter eligibility verification. That provision reads as follows:

> To the extent practicable, each month the county recorder shall compare persons who are registered to vote in that county and ***who the county recorder has reason to believe are not United States citizens*** and persons who are registered to vote without satisfactory evidence of citizenship as prescribed by Section 16-166 with the Systematic Alien Verification for Entitlements program maintained by the United States Citizenship and Immigration Services to verify the citizenship status of the persons registered.

Ariz. Rev. Stat. § 16-165(H), *as enacted by* 2022 Ariz. Sess. Laws ch. 370, § 2 (emphasis added). This provision divides registered voters into two groups: voters whom a county recorder "has reason to believe" lack U.S. citizenship and voters who—for whatever reason—do not arouse the suspicion of a county recorder. This new law subjects "suspect" voters to extra, unwarranted scrutiny and comparison against the SAVE system, based on nothing more than a county recorder's suspicions or biases. The law includes no list of indicia or criteria that would provide a predicate for the county recorder's "reason to believe." Section 16-165(H) thus invites county recorders to treat registered voters in a

non-uniform and/or discriminatory manner based on the voter's race, ethnicity, national origin, dress, English proficiency, or any other constitutionally impermissible criteria. It has been many decades since election officials in any state have been given official sanction to act on their subjective suspicions and prejudices.

42.    Further, county recorders must compare registered voters' data against the Electronic Verification of Vital Events System maintained by a National Association for Public Health Statistics and Information Systems, for any registered voters who have not supplied proof of citizenship. Ariz. Rev. Stat. § 16-165(I), *as enacted by* 2022 Ariz. Sess. Laws ch. 370, § 2.

43.    Finally, county recorders must also utilize any other municipal, county, state or federal database to which they have access "to confirm information obtained that requires cancellation of registrations." Ariz. Rev. Stat. § 16-165(J), *as enacted by* 2022 Ariz. Sess. Laws ch. 370, § 2.

44.    ~~31. HB 2492 also requires county recorders to cancel the voter registration records of individuals when they "receive[ ] and confirm[ ] information that the person registered is not a United States citizen." Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8.[6] Once again,~~ HB 2492 ~~does~~and HB 2243 alike do not specify what type, set, or combination of "information" establishes that a registered voter "is not a United States citizen"; nor do they address what combination of "information" allows

_____

~~[6] HB 2617's language was identical: "when the county recorder receives and confirms information that the person registered is not a United States citizen." Senate Engrossed House Bill 2617, 55th Leg., 2nd Reg. Sess. (Ariz. 2022), *available at* https://www.azleg.gov/legtext/55leg/2R/bills/HB2617S.pdf. It differed only in that it listed juror questionnaires as one source of such information. *Id.*~~

the conclusions that an individual in a database is the same individual as a particular person on the voter list. Nor do these provisions acknowledge, let alone address, these flagged registered voters' likely naturalization subsequent to the government record's creation but before their registration as a~~a~~n Arizona voter attesting to their citizenship under penalty of perjury. These vague instructions will inevitably cause arbitrary and disparate treatment of registered voters and thereby ~~arbitrary allocation of~~arbitrarily allocate the right to vote. Some, but not all, county recorders and their staff members will rely on such unreliable information. ~~Some but not all~~Other county recorders and their staff members will investigate more thoroughly to discover subsequent naturalizations. The result will be the arbitrary and disparate treatment of naturalized registered voters.

45.    ~~32.~~ A nearly identical registration cancellation provision appeared in HB 2617, which was ~~recently~~ vetoed this past session by Governor Doug Ducey. Governor Ducey's veto statement cited the law's "subjectivity," "vague[ness]," the "~~lack~~lacks [ of] any guidance for how a county recorder would confirm such a determination," and "a lack of guardrails against false claims."[‡‡‡] All of those same fatal constitutional defects that made HB 2617 vague and vulnerable to arbitrary and disparate application, as well as abuse by third parties making false or unfounded accusations, are found ~~here~~ in HB 2492 ~~as well~~and have not been eliminated from HB 2243 by the amended language.

46.    ~~33.~~ HB 2492 and HB 2243's use of the phrase "information that the person . . . is not a United States citizen" ~~standard~~ renders ~~the statute~~these statutes unconstitutional. While Arizona's preexisting DPOC law enumerates the specific forms of proof that a voter

registration applicant can provide to establish U.S. citizenship, Ariz. Rev. Stat. § 16-166(F), HB 2492 does not enumerate what specific "information" ~~proves~~establishes that a voter registration applicant using the federal form or a registered voter "is not a U.S. citizen." Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4; Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8. The former law creates an objective requirement with specificity; ~~the latter contains~~HB 2492 and HB 2243 contain only a vague ~~instruction~~standard that leaves ~~the~~ registration ~~applicant's~~applicants' and registered voters' citizenship status to the discretion and subjective, arbitrary determinations of Defendant Hobbs, Defendant Brnovich, the county recorders, and their ~~staff. This~~respective staffs. As used in HB 2492, this open-ended phrase appears to embrace *any* "information~~;~~" —whether it is current or years old, recorded in a government database or merely verbally communicated to a county recorder's office, corroborated by other sources or not, provided in a sworn statement or not.~~ The legal void created by~~ —researched by anyone or any entity regardless of motivation, reliability, or objectivity. HB 2243's similar reliance on unspecified "information" to disenfranchise voters is little better. While the removal provision, Section 16-165(A)(10), formally requires confirmation, the statute does not define what constitutes confirmation. Similarly, written or verbal third-party accusations are sufficient to trigger a discriminatory database comparison under Section 16-165(H). Both challenged laws remain vague, arbitrary, and susceptible to abuse. HB 2492 and HB 2243's vague standards will inevitably result in inconsistent and irreconcilable determinations on voter registration applicants and registered voters' citizenship status.

---

‡‡‡ Letter from Governor Ducey to Rusty Bowers, Speaker of the Arizona State House of
29

47.   34. Naturalized voters will inexorably be harmed by HB 2492 and HB 2243's vesting of unfettered discretion in county recorders to determine what types or combinations of "information" establish that a voter registration applicant or registered voter "is not a U.S. citizen." Some county recorders and their staff members will seize upon any information or data that a voter registration applicant or registered voter lacked U.S. citizenship at some point in the past and use that information to reject the application and refer that individual to law enforcement or to remove the voter from the rolls. Such officials and their staff may —under the statutes—even rely upon unverified and unsubstantiated "information" from private individuals or political organizations as to individual applicants' or registered voters' citizenship and subject these voters to extra scrutiny under Section 16-165(H).

48.   HB 2492 does and HB 2243 were enacted, according to statements by the bill sponsors, to override the *LULAC* consent decree, to require proof of citizenship from federal-only voters "to ensure that non-citizens are not voting in Arizona elections," "ensure that only qualified applicants are properly registered and voting in our elections"[§§§] and, as to the provisions imported from HB 2617 into HB 2243, "require[ ] on the front end that only qualified applicants are properly registered to vote, and then require[ ] regular maintenance to ensure individuals no longer qualified . . . are regularly removed."[****] But the Citizenship

---

Representatives, (May 27, 2022), https://www.azleg.gov/govlettr/55leg/2r/hb2617.pdf.

[§§§] *See, e.g.*, Statement of Representative Jake Hoffman, House Committee of the Whole, (February 24, 2022), *available at* https://www.azleg.gov/videoplayer/?eventID=2022021134&startStreamAt=6188; Statements of Representative Jake Hoffman and Greg Blackie, Arizona Free Enterprise Club, House Committee on Government and Elections (Feb. 16, 2022), *available at* https://www.azleg.gov/videoplayer/?eventID=2022021083&startStreamAt=25948.

[****] Statements of Representative Joseph Chaplik and Greg Blackie, of the Arizona Free Enterprise Club, as to HB 2617, Senate Government Committee (March 14, 2022),

Investigation Provisions do not require county recorders to assess whether the applicant has in fact naturalized subsequent to their AZDOT or public assistance office transaction prior to registering to vote. Nor was there any basis presented to the legislature to indicate that the tens of thousands of federal-only voters who attested to their citizenship were not in fact U.S. citizens. Thus, the Challenged Provisions are not consistent with these laws' purported objectives.

49.   ~~35.~~ Other county recorders statewide or other staff members within the same county recorder office will interpret the same government databases and other information differently, remaining skeptical of any reliance on stale, outdated government data or unverified and unsubstantiated accounts of registration applicants' and registered voters' citizenship. These officials and their staff would be well-justified in refusing to credit any such information of alleged non-citizenship, given the inherent failure to account for the possibility of subsequent naturalization.

50.   Absent a comprehensive and up-to-date list of all naturalized U.S. citizens, completely accurate verification of current U.S. citizenship status is not possible. There is no database that has current, up-to-date citizenship status information for all residents of the United States or Arizona. ~~All databases or systems~~Databases that allegedly contain ~~U.S.~~some citizenship status information are based on transactions or events that took place at some point in the past~~, often in~~ (and potentially the distant past~~. A~~), e.g., an original application for a driver's license. Even assuming the accuracy of database information at the time the record was created as to the person in fact on the record, that information is but a

available                                                                                                          at

snapshot frozen in time, and has no reasonable relationship to a registered voter's current citizenship status. Further, such databases are not comprehensive, making their use necessarily selective and nonuniform. The law does not specify safeguards to ensure an accurate match.

51.   Further, a number of the databases listed in HB 2492 and HB 2243 are known to contain outdated and inaccurate information on citizenship status.

52.   ~~36.~~ For example, SAVE is designed to verify immigration status in order to determine one's eligibility for various public benefits. SAVE is a massive compilation of records from numerous databases about individuals who have interacted with the immigration system over the years, such as immigrants who have obtained green cards or visas, and those who have become naturalized citizens.[7] It is not a definitive or accurate list of U.S. citizens.[8] SAVE is not a universal citizen database and does not purport to be complete or to include many individuals.[9]

53.   ~~37.~~ On information and belief, SAVE does not contain information on citizens born in the United States and thus can only provide information on voters who are naturalized citizens (and some derived citizens,[10] see ~~below~~*infra*) and whose

---

https://www.azleg.gov/videoplayer/?eventID=2022031059&startStreamAt=4502.

[7] *See* Corrected Declaration and Expert Report of Daniel A. Smith ¶ 42 n.19, *Arcia v. Detzner*, No. 13-CV-4095-EFM-TJJ, Dkt. No. 76-1 (S.D. Fla. Sept. 24, 2012).

[8] *See id.*; U.S. ~~Dept.~~Dep't of Homeland Security, Privacy Impact Assessment for the Systematic Alien Verification for Entitlements (SAVE) Program, ~~at 3,~~ (Aug. 26, 2011) at 3, *available at* http://www.dhs.gov/xlibrary/assets/privacy/privacy_pia_uscis_save.pdf.

[9] *See id.*

[10] Derived citizenship refers to citizenship conveyed to children through the naturalization of parents or, under certain circumstances, to foreign-born children adopted

information may be collected in SAVE. As a result, under ~~HB 2492~~the new scheme, only Arizona's naturalized and derived U.S. citizens would be at risk of rejection, removal, or prosecution based on the information contained in SAVE.

54.   ~~38.~~ On information and belief, another source of inaccuracy is that SAVE cannot verify derived citizens, individuals who acquired U.S. citizenship by virtue of their parents' naturalization while they were minors, unless they applied for Certificates of Citizenship. However, a Certificate of Citizenship is an optional form: a person who automatically obtains citizenship is not required to file an Application for Certificate of Citizenship.~~11~~†††††

55.   ~~39.~~ Indeed, ~~the~~ Department of Homeland Security ("DHS"), which administers SAVE, itself acknowledges that the SAVE system is a non-definitive source for determining citizenship. On information and belief, the memoranda of agreement between SAVE and jurisdictions ~~which~~that use its information for voter registration purposes, including Arizona, acknowledge that the inability to verify a person's citizenship in SAVE does not necessarily mean that the person is not a citizen, and that the information in SAVE may need to be corrected. On information and belief, those memoranda require users to provide registrants who do not verify as a citizen with adequate written notice that their citizenship could not be verified and the information necessary to contact DHS-USCIS so that they can correct their records if necessary. By requiring the opportunity to correct their

---

by U.S. citizen parents, provided certain conditions are met. *See* https://www.uscis.gov/policy-manual/volume-12-part-h-chapter-3#3#4

~~11~~††††† U.S. Citizenship ~~and Immig.~~& Immigration Servs. Policy Manual, vol. 12, pt. H, ch. 4 (E.) *available at* https://www.uscis.gov/policy-manual/volume-12-part-h-chapter-4.

records, DHS-USCIS acknowledges that errors exist in the information SAVE provides. SAVE should not be used to deprive a person of the right to vote or to initiate prosecution for alleged unlawful voting or registration as a non-citizen.

56.  40. Because HB 2492 is and HB 2243 are devoid of any rules or criteria on how to evaluate the databases against which it mandates comparison of voter registration applicants' data, and fails fail to take account of the possibility of the applicant's likely naturalization as a U.S. citizen subsequent to that outdated government transaction record but *prior to* registering as an Arizona voter, the citizenship investigation procedures contained therein Citizenship Investigation Provisions will result in the arbitrary and disparate treatment of naturalized U.S. citizens applying to register to vote using the federal registration form and naturalized, registered voters, the majority of which are members of racial and/or ethnic minority groups. Such arbitrary and disparate treatment concerning the allocation of the right to vote is HB 2492's will be the inevitable consequence of HB 2492 and HB 2243.

57.  41. In sum, HB 2492's provisions the Citizenship Investigation Provisions will result in arbitrary and disparate treatment of naturalized voter registration applicants and naturalized registered voters, both within counties and statewide, in violation of the Equal Protection and Due Process Clauses.

### C.  Arizona's Proof of Residence Requirement Under HB 2492

58.  42. HB 2492 also imposes a new documentary proof of residence ("DPOR") requirement on all voter registration applicants, except those registering pursuant to Ariz. Rev. Stat. § 16-103 because they are temporarily absent from Arizona, or are voters those

covered under the Uniformed and Overseas Citizens Absentee Voting Act of 1986. Ariz. Rev. Stat. § 16-123.

59. 43. Under HB 2492, "a person who registers to vote shall provide an identifying document that establishes proof of location or residence." Ariz. Rev. Stat. § 16-123, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 5. HB 2492 also makes DPOR one of the required elements for valid registration. Ariz. Rev. Stat. § 16-121.01(A), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4. The list of identifying documents is anything listed in the voter ID statutes at Ariz. Rev. Stat. § 16-579(A)(1) that contains the voter's name and current address. That list includes the following:

1. The elector shall present any of the following:

(a) A valid form of identification that bears the photograph, name and address of the elector that reasonably appear to be the same as the name and address in the precinct register, including an Arizona driver license, an Arizona nonoperating identification license, a tribal enrollment card or other form of tribal identification or a United States federal, state or local government issued identification. Identification is deemed valid unless it can be determined on its face that it has expired.

(b) Two different items that contain the name and address of the elector that reasonably appear to be the same as the name and address in the precinct register, including a utility bill, a bank or credit union statement that is dated within ninety days of the date of the election, a valid Arizona vehicle registration, an Arizona vehicle insurance card, an Indian census card, tribal enrollment card or other form of tribal identification, a property tax statement, a recorder's certificate, a voter registration card, a valid United States federal, state or local government issued identification or any mailing that is labeled as "official election material". Identification is deemed valid unless it can be determined on its face that it has expired.

(c) A valid form of identification that bears the photograph, name and address of the elector except that if the address on the identification does not reasonably appear to be the same as the address in the precinct register or the identification is a valid United States military identification card or a valid

United States passport and does not bear an address, the identification must be accompanied by one of the items listed in subdivision (b) of this paragraph.

Ariz. Rev. Stat. § 16-579(A)(1). ~~All~~Even prior to the enactment of this new DPOR requirement, all in-person voters in Arizona already ~~present~~presented at least one form of identification that shows their current address.

60. ~~44.~~ This new requirement also permits the use of "a valid and unexpired Arizona driver license or nonoperating identification number" in lieu of DPOR, but it must be "properly verified" before it satisfies the requirement. Ariz. Rev. Stat. § 16-123, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 5. ~~What is meant by "properly verified" is not specified by the statute.~~

~~45.     This new requirement does not contain any provision requiring that notice be sent to the voter registration applicant that they failed to include DPOR and will not be registered until DPOR is provided. HB 2492 makes DPOR a mandatory requirement "to be properly registered to vote." Ariz. Rev. Stat. § 16-121.01(A), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4. HB 2492 authorizes county officials to reject a submitted registration form that is unaccompanied by DPOR, without any opportunity for the voter registration applicant to cure the deficiency.~~

~~46.     The notice provisions in Ariz. Rev. Stat. § 16-134 and Ariz. Rev. Stat. § 16-121.01(A), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4, refer to missing or incomplete "information *on* the registration form" or "information required to be *on* the registration form." (Emphasis added). With one exception – the~~

61.   By contrast, the federal voter registration form required by the NVRA and promulgated by the Election Assistance Commission does not require documentary proof of residence for Arizona voters.‡‡‡‡‡

62.      Arizona ~~driver~~'s ~~license or ID number that can satisfy the DPOR requirement—all other forms of~~ documentary proof of residence ~~are presented separately and not **on** a registration form. Under these statutory provisions, notice of missing DPOR might be provided~~requirement, as applied to federal voter registration form applicants ~~using the Arizona~~, fails to accord with the NVRA as interpreted by Justice Scalia's 7-2 majority opinion in *ITCA*. That opinion held that Arizona must accept and use—as is and without additional requirements—the federal voter registration form~~. However, they have no application to applicants who submit~~ promulgated by the ~~federal~~EAC for registration ~~form, so at a minimum, Arizona law fails to provide due process to~~in federal elections. Because the EAC's form does not require documentary proof of residence for Arizona voters to register, it cannot be required of Arizona federal form registrants for registration ~~applicants using the~~in federal ~~registration form~~elections.

**~~PLAINTIFF'S INJURY~~**
**PLAINTIFFS' INJURIES**

63.      ~~47.~~Founded in July 2019, Plaintiff Poder Latinx is a non-partisan, non-profit organization. Poder Latinx employs five staff members and seven canvassers in Arizona and is hiring additional staff. The organization's voter registration program in Arizona has set a

---

‡‡‡‡‡ 52 U.S.C. § 20505; Election Assistance Commission, National Mail Voter Registration Form, *available at* https://www.eac.gov/sites/default/files/eac_assets/1/6/Federal_Voter_Registration_ENG.pdf.

goal of collecting and submitting an estimated 11,063 completed voter registration forms in 2022. The projected timeline is February 28, 2022 through the voter registration deadline for the November 2022 general election. As of this filing, they have collected 1,912 voter registration forms.

64.   48.  Poder Latinx has also planned Get Out the Vote ("GOTV") voter mobilization work for 2022 elections in Arizona. Its goal is to canvass an estimated 41,262 total households from July 10, 2022 through Election Day, November 8, 2022. Plaintiff's canvassers will do about 2 to 3 rounds of door-knocking and a final round for GOTV. By Election Day, they will have knocked on approximately 96,550 doors.

65.   49.  Poder Latinx plans to continue its voter registration and civic engagement operations into the future beyond the 2022 election.

66.   50.  Poder Latinx currently uses Arizona's state voter registration paper form exclusively, but once HB 2492 takes effect, it will be compelled to use the federal registration form as well to serve Latinx communities in Arizona. Currently, under the LULAC Consent Decree, voter registration applicants submitting the Arizona voter registration form can still be registered to vote, notwithstanding the lack of DPOC. Once HB 2492 takes effect, that will no longer be true; Arizona registration forms submitted without DPOC will be rejected without any opportunity for voters to provide, or for county recorders to locate, DPOC for the voter. This legal change will force a shift in Poder Latinx's operations, diverting money, resources, and staff time to print off federal voter registration forms, educate and train staff and volunteers on how to use the federal form, create new public-facing educational materials and flyers to guide voter registration applicants using

the federal form, and create new public-facing, bilingual materials to educate registration applicants it assists. Poder Latinx will need to educate the naturalized and/or limited English proficient applicants it serves on the effects HB 2492 and HB 2243 will have on their ability to register to vote in Arizona with either the state or federal form, with or without DPOC, and their ability to *stay* registered to vote.

67.    51. Poder Latinx will need to hire an additional Quality Control Agent to reach out to voters who may be erroneously flagged as non-citizens. This staff member will need to keep track of voters PlaintiffPoder Latinx has helped register to vote and then check if those voters ultimately made it onto the rolls. The additional cost of hiring this person will be approximately $44,000. Due to the nature of this issue, PlaintiffPoder Latinx foresees that this agent will need to continue working even after the voter registration program has ended to keep track of voter registrations and to try to ensure that these voters' registrations are not erroneously cancelled.

68.    52. HB 2492 and HB 2243's citizenship investigation proceduresCitizenship Investigation Provisions will upend Poder Latinx's voter registration activities in Arizona and stymie the organization's ability to fulfill its core mission to help register and engage eligible Latinx voters and keep them registered and engaged. Because HB 2492 imposesand HB 2243 impose a new citizenship investigation protocol for each voter who submits a federal form without DPOC and that protocol relies on old government transaction data, the challenged law will necessarily result in countless naturalized voters being erroneously flagged as non-citizens, the rejection of their registration forms, and their referral to law enforcement. Federal voter registration forms will be treated in an arbitrary and disparate

manner and without affording the applicants an opportunity to provide DPOC, and registration forms submitted by duly naturalized U.S. citizens will be rejected in error. This unlawful procedure will force Poder Latinx to divert money and resources, as well as staff and paid canvasser time, to *re-register* eligible voters whose applications were unlawfully rejected. This wastes Poder Latinx's time, money, and other resources and undermines its core mission to expand the electorate, register and engage more eligible Latinx voters, keep those voters registered and engaged, and encourage the Latinx community to participate fully in their democracy.

69.   53. Further, some portion of the registration applicants whom Poder Latinx assists through its voter registration drives will clear the front-end citizenship investigation procedures only to be later erroneously flagged as non-citizens in the Attorney General's back-end citizenship investigation, erroneously identified as a non-citizen and removed from the rolls by the county recorders, and/or subjected to law enforcement investigation and prosecution. Therefore, the back-end citizenship investigations conducted by the Attorney General and the county recorder's removal of voters based upon "information that the person registered is not a United States citizen" will also result in the arbitrary and disparate treatment of registered voters. These procedures for investigating citizenship status, cancelling voters based upon outdated or unverified "information," and referring them for prosecution will force Poder Latinx to divert money, resources, and staff and paid canvasser time to *re-register* individuals who have been unlawfully removed from the rolls. This wastes Poder Latinx's time, money, and other resources and undermines its core mission to expand the electorate, register and engage more eligible Latinx voters, keep those

voters registered and engaged, and encourage these communities to participate fully in their democracy.

70.   54.  As a consequence of all of the challenged provisionsChallenged Provisions, Poder Latinx will need to devote more resources, staff time, and money to training its canvassers so they can be prepared to answer questions about Arizona's singular dual-track registration system under the HB 2492 and HB 2243 regime, the risks HB 2492 posesthe Challenged Provisions pose to their continued registration, and the threat of being identified as a non-citizen and referred for investigation and prosecution, especially for naturalized registration applicants. HB 2492 and HB 2243 will vastly increase the complexity of canvasser training and voter education. Accordingly, it will deter potential canvassers and make it harder for PlaintiffPoder Latinx to meet its recruitment and hiring goals. PlaintiffPoder Latinx will also need to divert resources, staff time, and money to make and print more educational materials, including flyers and other resources it would not have generated otherwise, and to increase its staff capacity to field the numerous questions and concerns they will receive from Latinx community members who attempted to register to vote through a Poder Latinx voter registration drive. And to communicate effectively with the Latinx community about the new requirements imposed by HB 2492 and HB 2243, Poder Latinx will need to use translation services at substantial cost to the organization that it would not have utilized otherwise. These resources will be diverted from Poder Latinx's other core mission activities.

71.   55.  Further, as HB 2492 impactsand HB 2243 ensnare naturalized U.S. citizens who registered through Plaintiff's voter registration drives, PlaintiffPoder Latinx

will suffer severe reputational harm in the communities where it has worked and continues to work to secure trust. HB 2492 and HB 2243's arbitrary and error-ridden processes will result in registration form rejections, the mandatory cancellation of registrations, referrals to law enforcement for investigation, and mandatory prosecution. Because these voters have placed their trust in Poder Latinx's knowledge as to the proper and lawful way to register and stay registered to vote, such consequences will badly undermine voters' trust in ~~Plaintiff~~Poder Latinx as a reliable and knowledgeable organization. Not knowing the details and effects of HB 2492 and HB 2243, community members will distrust Poder Latinx, thinking that its canvassers did not register them correctly. These negative outcomes will also severely undermine voters' faith and trust in the electoral system, thereby undermining Plaintiff's mission to promote and foster sustained civic engagement in Latinx communities throughout Arizona. Some voters registered by ~~Plaintiff~~Poder Latinx will refuse to engage in the voter registration process again, even if they are not ultimately investigated and prosecuted. Others who are persuaded to go through the registration process again will nevertheless have less trust in Plaintiff and the election system going forward.

72.     ~~56. Plaintiff~~Poder Latinx will also be injured by the new DPOR requirement. HB 2492 will force ~~Plaintiff~~Poder Latinx to divert money, resources, and staff and paid canvasser time to comply with the new DPOR requirement. To fulfill its core mission, ~~Plaintiff~~Poder Latinx will need to inform new voter registration applicants about the DPOR requirement and assist them with compliance, particularly if they lack an Arizona driver's license or state ID number, which if "properly verified," will fully satisfy the POR requirement. To that end, ~~Plaintiff~~Poder Latinx will be compelled to modify its training of

canvassers and update all of its training resources and materials. ~~Plaintiff~~Poder Latinx will also need to update its handouts for voters and create and print a new handout listing the acceptable forms of DPOR. These resources will be diverted from Poder Latinx's core mission civic engagement activities.

73. ~~57. Because~~ HB 2492 authorizes the county recorders to reject forms ~~outright~~ if they are submitted without DPOR ~~— without any opportunity for the applicant to cure the deficiency— HB 2492~~. DPOR will effectively eliminate ~~Plaintiff~~Poder Latinx's ability to collect completed voter registration forms. ~~This will effectively end~~, where the ~~third-party~~ voter registration ~~drive as it has been known in~~applicant does not have an Arizona driver's license or state ID number. It is not viable for Poder Latinx to scan or photocopy DPOR. Community members, even if they have valid DPOR on them at the time, do not trust others with their documents. Community skepticism and discomfort with handing over DPOR makes it impossible to facilitate this part of the process. Accordingly, the best that Poder Latinx registration drive canvassers will be able to do under these circumstances is to help applicants complete the form and the process themselves. Instead of collecting a completed form that can be submitted to the county recorder's office, for any voter that lacks an Arizona driver's license or state ID number, ~~Plaintiff~~Poder Latinx's canvassers will need to provide applicants with a bilingual flyer listing the forms of acceptable DPOR and send them on their way with instructions on how to complete the form and submit it with a photocopied form of DPOR. ~~Plaintiff~~Poder Latinx does contact applicants who have incomplete voter registration forms within 24 hours of collection to help them with missing information or documentation to complete the registration process. Because more forms will

be incomplete due to a lack of DPOR, ~~Plaintiff~~Poder Latinx will need to increase its quality control efforts compared to before HB 2492 was enacted. Accordingly, this new DPOR requirement will seriously undermine and curtail third-party voter registration drive activity.

74.   ~~58.~~ In ~~Plaintiff~~Poder Latinx's experience, community voter registration in which canvassers assist applicants with completing and submitting forms is far more effective in getting people registered to vote and prepared to participate in elections than simply giving out voter registration forms and relying on individuals to submit them themselves.

75.   ~~59.~~ This reduction is all the more harmful in communities with a substantial number of individuals who lack Arizona driver's licenses and state IDs and, therefore, must supply a physical photocopy of DPOR. In conducting its voter registration drives, Poder Latinx often encounters voter registration applicants who do not have an Arizona driver's license or state identification number and therefore will not have a readily accessible means to fulfill the DPOR requirement. Some of these registration applicants Plaintiff encounters do not have ready access to their DPOR, and other applicants do not possess any DPOR whatsoever.

76.   ~~60.~~ All of the above will thwart and impede ~~Plaintiff~~ Poder Latinx's voter registration and civic engagement goals and harm its core mission.

77.   ~~61.~~ All of the Challenged Provisions will impact naturalized citizens who are part of the community and constituency Poder Latinx serves through its voter education and voter mobilization programs.  Poder Latinx works closely with naturalized citizens to help them register to vote and to mobilize them to vote, relying in part on a network of key

community activists who help shape Poder Latinx's agenda and who play a critical role in implementing Poder Latinx's programs. Thus, all of the Challenged Provisions will impact and harm Poder Latinx's constituents.

78.     CPLC§§§§§ will suffer direct and immediate injuries if the Citizenship Investigation Provisions in HB 2492 and HB 2243 are permitted to go into effect. CPLC has made significant investments in its Get Out The Vote campaign for Latinos in Arizona. It has invested $10 million to date in this voter registration and mobilization effort, which has been branded as Latino Loud. To engage and activate eligible Latino voters throughout Arizona, the Latino Loud campaign uses a variety of methods: voter registration, canvassing, mailers, billboard ads, digital ads, radio and TV ads, and special events. It has a particular focus on low-propensity Latino voters, who are typically harder to contact and harder to turn out to the polls. Mobilizing low-propensity voters demands more resources, staff and volunteer time, and money than mobilizing high-propensity voters.

79.     CPLC funds third-party groups to conduct voter registration in Maricopa, Pima, and Yuma counties. These canvassers and voter registration drive staff members for the Latino Loud campaign exclusively use the Arizona voter registration form. They also use a specialized URL provided to CPLC by the Arizona Secretary of State's office to register voters online. The canvassers are making approximately 800,000 attempted contacts at Latino households, targeting Latino-heavy legislative districts within Maricopa, Pima, and Yuma counties. Canvassers inform eligible voters about the importance of voting and, if there are eligible but unregistered members of the household, the canvasser will proceed to

register them to vote. That process of course takes time and effort to walk the individual through the voter registration form. Canvassers are paid by the hour. The Latino Loud campaign also conducts site-specific voter registration drives periodically in Maricopa, Pima, and Yuma counties. Additionally, all of the Latino Loud campaign ads, direct mail, websites, and social media accounts are part of a comprehensive statewide campaign to register eligible Latino voters and to provide links to do so online.

80.     The Citizenship Investigation Provisions in HB 2492 and HB 2243 will cause the unlawful denial of voter registration applications and the unlawful removal of duly registered, eligible voters from the rolls. By forcing the CPLC-financed Latino Loud campaign to register and re-register eligible Arizona voters who are unlawfully denied registration or unlawfully removed from the rolls because of the Citizenship Investigation Provisions, this wastes CPLC's money, causing a direct financial injury. But for these Challenged Provisions which violate federal statutes and the U.S. Constitution, CPLC would not be forced to divert or waste money and other resources to counteract or correct the unlawful denial of registration and unlawful voter purging caused by HB 2492 and HB 2243.

81.     In addition to the diversion or waste of money and resources caused by these two new laws, CPLC will also suffer reputational harm in the Latino communities in which the Latino Loud campaign is active. Latino Loud is clearly branded as a CPLC campaign on volunteer t-shirts, all materials used by canvassers, and all its campaign ads and billboards. Voters in these communities associate the Latino Loud campaign with CPLC because volunteers wear CPLC-branded t-shirts, and all ads and materials display CPLC's name.

---

§§§§§ This First Amended Complaint has defined "CPLC" to include both Chicanos Por La

CPLC has a 53-year-old trusted brand in these marginalized communities, good will that has been hard-earned over decades. That trust will be damaged if the eligible voters registered through the CPLC-branded Latino Loud campaign are unlawfully denied registration or unlawfully removed from the voter rolls. Such eligible voters, in particular the low-propensity voters that the Latino Loud campaign is specifically targeting, will be more inclined to distrust CPLC, the Latino Loud campaign, the voter registration process, and the electoral process as a whole, if they are unlawfully denied registration or unlawfully removed from the voter rolls. If these laws go into effect, CPLC foresees a loss of trust and a chilling effect on voter participation in the communities it serves.

82.    In addition to the harm from the wasted and/or diverted financial investment and resources expended on the Latino Loud campaign's voter registration and re-registration of unlawfully denied or unlawfully removed voters, CPLC will also be injured by HB 2492 and HB 2243's enforcement because its immigration division works continuously on registering recently naturalized U.S. citizens. If those individuals attempt to register to vote through other means and then are unlawfully denied registration or unlawfully removed from the rolls because of HB 2492 and HB 2243, CPLC's immigration team that works with recently naturalized U.S. citizens will unnecessarily divert or waste time, resources, money, and effort registering those individuals, when that time, money, and effort could have been expended advancing other components of CPLC's core mission.

83.    CPLC does this voter registration work using its own funds but also has a recent grant from UnidosUS to conduct outreach to newly naturalized citizens to make sure

Causa, Inc. and Chicanos Por La Causa Action Fund.

those individual clients are registered to vote. Over the pandemic, CPLC worked with an average of approximately 200 naturalization applicants per year, but it expects that annual number to increase to between 300 and 400 naturalization applicants in the coming years. CPLC's mission is focused on making a continual effort to ensure these newly naturalized citizens with whom it works are registered to vote. CPLC continues to try to ascertain how many of its successfully naturalized clients remain unregistered to vote and then will work to register those eligible, unregistered individuals on an ongoing basis.

84.   CPLC staff working with naturalization applicants and recently naturalized citizens operate out of its Yuma County office, which serves Nogales as well, and its Pima County office. CPLC intends to open a Phoenix office in the near future.

85.   The Citizenship Investigation Provisions will impact naturalized citizens who are part of the community and constituency CPLC serves through its voter education and mobilization campaign.  CPLC works closely with naturalized citizens to help them register to vote and to mobilize them to vote. Thus, all of the Citizenship Investigation Provisions will impact and harm CPLC's constituents.

## CLAIMS

### COUNT ONE
**(All Plaintiffs)**
**(Violation of Section 8(b) of the National Voter Registration Act (NVRA), 52 U.S.C. § 20507(b) and 42 U.S.C. § 1983**
**HB 2492 Secs. 4, 7, and 8 (Ariz. Rev. Stat. §§ 16-121.01(D), 16-121.01(E), and 16-121.01(F); Ariz. Rev. Stat. § 16-143; Ariz. Rev. Stat. § 16-165(A)(10))[§§§§§]**

---

[§§§§§] Plaintiffs have submitted a second NVRA notice letter to Defendant Secretary of State Hobbs, identifying NVRA violations, including another Section 8(b) violation, in HB 2243, which was enacted at the end of this legislative session. Based on an effective date of January for these provisions, these NVRA claims cannot be added to this complaint until late October. 52 U.S.C. § 20510(b)(2).

86.     The factual allegations contained in paragraphs 1 through 85 are incorporated into Count One, as though fully set forth herein.

87.     Section 8(b) of the NVRA, 52 U.S.C. § 20507(b), mandates that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office . . . be uniform [and] nondiscriminatory." 52 U.S.C. § 20507(b)(1).

88.     A State law violates the uniformity requirement in this section when its voter registration processing has the effect of treating a group of voters differently, whether in their initial addition to the voter list or their removal from it. *See Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 703 (N.D. Ohio 2006). Similarly, a state voter registration law violates the nondiscrimination requirement where the voter registration process discriminates against particular classes of voters. *See id.*

89.     The system HB 2492 creates does not comply with the uniformity requirement under Section 8(b) as it will cause the arbitrary and disparate treatment of naturalized voter registration applicants and naturalized registered voters, including Latinx voter registration applicants and Latinx registered voters. The means and standards by which voters are added to the rolls and/or removed will depend on the voter's county. Further, because the challenged provisions of HB 2492 will inevitably treat voters in a differential manner based on the county they live in and based on their race, ethnicity, and/or national origin—in part, by targeting naturalized citizens for registration denial and removal from the rolls—these provisions also violate the NVRA's nondiscrimination requirement.

90.     Combined with a vague standard for county recorders to apply— "information that [the individual] is not a United States citizen"—this is a recipe for non-uniform treatment and the disenfranchisement of eligible persons from registering to vote or staying on the rolls. The Citizen Investigation Provisions are bereft of any rules or criteria to apply in deciding who is and who is not a U.S. citizen. Whereas the preexisting DPOC requirement contains an objective list of the specific forms of documentation that prove a registration applicant's U.S. citizenship, Ariz. Rev. Stat. § 16-166(F), the Citizenship Investigation Provisions in HB 2492 do not articulate what "information" will prove that a registration applicant or registered voter "is not a United States citizen." Nor does it address ensuring that such information is accurately connected to a voter record.

91.     Because no database of any kind would indicate a native-born voter previously lacked U.S. citizenship, naturalized citizens are subject to differential treatment under the Citizen Investigation Provisions in HB 2492. This is exacerbated by the statute's command that county recorders rely on "every . . . available" database to verify U.S. citizenship status, suggesting that some may be "available" to some officials and not others, making uniformity unlikely. Further, the Citizenship Investigation Provisions also permit county recorders to credit uncorroborated "information" supplied by private individuals either in writing or verbally. Information from private individuals in different counties would raises a high likelihood of lacking uniformity. The laws provide no safeguards or guidance to help assure county recorders that the individual of allegedly questionable citizenship status is in fact the same person as the individual on the voter roll. Without such

safeguards, implementation will be inherently not be uniform within counties or across the state. Further, it credits stale "information" over the more recent attestation of the applicant.

92.     In particular, the Citizenship Investigation Provisions fail to inform Arizona state and local officials as to how they should review and evaluate outdated citizenship status information contained in government databases. Different county recorders and different staff members within a county recorder's office will inevitably apply varying rules, standards, and procedures in comparing voter registration applicants and registered voters to the enumerated databases in HB 2492 and in analyzing the search results. Ascertaining what information suffices to determine a voter registration applicant or registered voter is not a U.S. citizen will be left to the subjective analysis, discretion, and guesswork of the Secretary of State, county recorders, the Attorney General, and their staffs. Inevitably, they will make inconsistent and irreconcilable determinations as to voters' current citizenship status. Some county recorders and individual staff members will use stale government data showing an individual was not a U.S. citizen at some time in the past as evidence they are still non-citizens; others will keep digging and find that similarly situated voters naturalized prior to registering to vote.

93.     The Citizenship Investigation Provisions require county recorders to cancel the voter registration records of individuals when they "receive[ ] and confirm[ ] information that the person registered is not a United States citizen." Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8.

94.     Defendant Hobbs was notified of these violations of Section 8(b) of the NVRA on June 3, 2022. *See* Exhibit A, NVRA Notice Letter regarding HB 2492. As HB 2492 is still set to go into effect on January 1, 2023, these violations have not been corrected.

95.     The Citizenship Investigation Provisions contained in HB 2492 are non-uniform and discriminatory with respect to naturalized citizens in violation of Section 8(b), 52 U.S.C. § 20507(b).

96.     The Citizenship Investigation Provisions contained in HB 2492 will also result in discrimination based on race, ethnicity, and/or national origin in violation of Section 8(b), 52 U.S.C. § 20507(b). These discriminatory effects will fall on Latinx voter registration applicants and Latinx registered voters.

97.     At all relevant times, Defendants have acted under color of state law.

98.     Accordingly, the Citizenship Investigation Provisions in HB 2492, specifically Ariz. Rev. Stat. §§ 16-121.01(D), 16-121.01(E), and 16-121.01(F), Ariz. Rev. Stat. § 16-143, and Ariz. Rev. Stat. § 16-165(A)(10), violate Section 8(b) of the NVRA, 52 U.S.C. § 20507(b).

**COUNT TWO**
**(All Plaintiffs)**
**(Discriminatory Practices and Procedures for Voter Qualification Determinations, 52 U.S.C. § 10101(a)(2)(A) and 42 U.S.C. § 1983)**
**HB 2243 Section 2 (Ariz. Rev. Stat. § 16-165(H))**

99.     The factual allegations contained in paragraphs 1 through 98 are incorporated into Count Two, as though fully set forth herein.

100.    Title I of the 1964 Civil Rights Act, which was enacted specifically to combat discriminatory and arbitrary registration practices in the Jim Crow South, provides that

No person acting under color of law shall-- (A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote[.]

52 U.S.C. § 10101(a)(2)(A).

101.    HB 2243 will require county recorders each month to use the notoriously outdated and unreliable Systematic Alien Verification for Entitlements ("SAVE") Program maintained by U.S. Citizenship and Immigration Services ("USCIS") "to verify the citizenship status" of any "persons who are registered to vote in that county and who the county recorder *has reason to believe are not United States citizens*." Ariz. Rev. Stat. § 16-165(H), *as enacted by* 2022 Ariz. Sess. Laws, ch. 370 § 2 (emphasis added). The county recorders will then remove those registered Arizona voters whose citizenship status cannot be verified or even those voters for whom there is information they previously lacked U.S. citizenship.

102.    This discriminatory use of the notoriously unreliable SAVE system in a purported attempt to verify the citizenship status of individual voter registration applicants whom the county recorders have "reason to believe are not United States citizens" violates 52 U.S.C. § 10101(a)(2)(A). This federal statute prohibits county recorders from "apply[ing] any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county . . . who have been found by State officials to be qualified to vote[.]" *Id.* And that is exactly what Section 16-165(H) requires county recorders to do whenever they have "reason to believe" a registered voter is not a U.S. citizen.

103.   Under the boundless authority granted by Section 16-165(H), county recorders divide registered voters into two camps—those they suspect are non-citizens and those they do not. County recorders then are instructed to apply a different "standard, practice, or procedure", *see* 52 U.S.C. § 10101(a)(2)(A), for verifying the eligibility of voters in the former camp and ultimately to remove a voter from the rolls if a flawed database returns "information . . . that the person registered is not a United States citizen." Ariz. Rev. Stat. § 16-165(A)(10), *modified* 2022 Ariz. Sess. Laws ch. 370, § 2.

104.   Other registered voters within any county who are ***not*** suspected of lacking U.S. citizenship will never be subjected to this faulty SAVE system comparison to "determin[e] whether [they are] qualified under State law or laws to vote in any election" (52 U.S.C. § 10101(a)(2)(A)); nor will they face cancellation of their registration as a result of this discriminatory citizenship investigation.

105.   Upon information and belief, SAVE cannot be queried for a natural-born citizen.

106.   At all relevant times, Defendants have acted under color of state law.

107.   Accordingly, Ariz. Rev. Stat. § 16-165(H) violates Title I of the 1964 Civil Rights Act, 52 U.S.C. § 10101(a)(2)(A).

**COUNT THREE**
**(All Plaintiffs)**
**(Racial and National Origin Discrimination, Equal Protection Clause of Fourteenth Amendment to the U.S. Constitution and Fifteenth Amendment, and 42 U.S.C. § 1983)**
**HB 2243 Section 2 (Ariz. Rev. Stat. § 16-165(H))**

108.   The factual allegations contained in paragraphs 1 through 107 are incorporated into Count Three, as though fully set forth herein.

109. The Fourteenth Amendment's Equal Protection Clause prohibits racial and national origin discrimination. *Davis v. Schnell*, 81 F. Supp. 872, 878 (S.D. Ala. 1949), *aff'd* 336 U.S. 933 (1949) (holding that local registrars' "arbitrary power" and "unlimited discretion" in determining whether applicants seeking to register to vote could "understand and explain" any article of the U.S. Constitution amounted to a denial of equal protection of the law within the meaning of the Fourteenth Amendment); *Hernandez v. State of Tex.*, 347 U.S. 475, 479 (1954) (discrimination on basis of national origin violates Fourteenth Amendment).

110. The Fifteenth Amendment prohibits racial discrimination concerning "the right of citizens of the United States to vote." U.S. Const. amend. XV.

111. In 1965, the U.S. Supreme Court struck down Louisiana's constitutional understanding test for the arbitrary power it gave registrars, thereby enabling racial discrimination in violation of the Fifteenth Amendment. The Court explained that:

> The applicant facing a registrar in Louisiana thus has been compelled to leave his voting fate to that official's uncontrolled power to determine whether the applicant's understanding of the Federal or State Constitution is satisfactory. . . The cherished right of people in a country like ours to vote cannot be obliterated by the use of laws like this, which leave the voting fate of a citizen to the passing whim or impulse of an individual registrar. Many of our cases have pointed out the invalidity of laws so completely devoid of standards and restraints. . . We likewise affirm here the District Court's holding that the provisions of the Louisiana Constitution and statutes which require voters to satisfy registrars of their ability to 'understand and give a reasonable interpretation of any section' of the Federal or Louisiana Constitution violate the Constitution. And we agree with the District Court that it specifically conflicts with the prohibitions against discrimination in voting because of race found both in the Fifteenth Amendment and 42 U.S.C. s 1971(a) to subject citizens to such an arbitrary power as Louisiana has given its registrars under these laws.

*Louisiana v. United States*, 380 U.S. 145, 152–53 (1965) (citations omitted).

112.    Once it takes effect, each month, HB 2243 will require county recorders to use the notoriously outdated and unreliable SAVE Program system maintained by USCIS "to verify the citizenship status" of any "persons who are registered to vote in that county and who the county recorder *has reason to believe are not United States citizens*." Ariz. Rev. Stat. § 16-165(H), *as enacted by* 2022 Ariz. Sess. Laws, ch. 370 § 2 (emphasis added). In this way, HB 2243 vests local election officials in Arizona with "an arbitrary power" akin to that struck down in *Louisiana v. United States*, 380 U.S. at 153.

113.    HB 2243 requires county recorders to use SAVE "to verify the citizenship status" of any "persons who are registered to vote in that county and who the county recorder has reason to believe are not United States citizens." Ariz. Rev. Stat. § 16-165(H), *as enacted by* 2022 Ariz. Sess. Laws, ch. 370 § 2.

114.    This new provision openly invites and licenses the discriminatory treatment of voters on the basis of their actual or perceived race, national origin, English proficiency, dress, and/or any other personal characteristic which a county recorder or their staff subjectively perceives to be indicative of a lack of U.S. citizenship.

115.    HB 2243 could have explicitly provided that such characteristics are not "reason[s] to believe" voters "are not United States citizens," but it does not. HB 2243 could have explicitly forbidden local election officials from crediting unsworn third-party verbal accusations or written reports as "reason[s] to believe" voters "are not United States citizens," but it does not. Those legislative omissions send a clear message to county election officials that they may act on the basis of prejudice and suspicion and need not wait for facts or evidence of non-citizenship.

116.   The inexorable impact of this deliberately open-ended and official authorization for local election officials to act on mere suspicion of lack of U.S. citizenship will be the arbitrary, discriminatory treatment of voters on the basis of their race and national origin.

117.   Section 16-165(H) violates U.S. Supreme Court precedents that struck down arbitrary and discriminatory Jim Crow tests and devices. These discriminatory laws and practices enabled registrars to act on their prejudices and use their discretion in subjecting African American voters to extra scrutiny that most often resulted in the rejection of a Black applicant's registration. Section 16-165(H) is, in essence, a redeployment of such unconstitutional registration practices involving the unfettered discretion of officials to revoke voting rights and arbitrarily allocate the right to vote, with particular harm falling on naturalized voters and, in particular, Latinx voters throughout Arizona.

118.   At all relevant times, Defendants have acted under color of state law.

119.   Defendants have violated and will continue to violate the Equal Protection Clause of the Fourteenth Amendment, the Fifteenth Amendment, and 42 U.S.C. § 1983.

**COUNT FOUR**
**(All Plaintiffs)**
**(Arbitrary and Disparate Treatment of Voter Registration Applicants Using the Federal Form and Currently Registered Voters, Equal Protection Clause of Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983)**
**The Citizenship Investigation Provisions (Both HB 2492 and HB 2243)**

120.   62. The factual allegations contained in paragraphs 1 through 61119 are incorporated into Count OneFour, as though fully set forth herein.

121.   63. The U.S. Supreme Court has long forbidden arbitrary allocation of the right to vote and arbitrary registration practices. Supreme Court precedent prohibits

"arbitrary and disparate treatment" in either the "allocation of the franchise" or "the manner of its exercise." *Bush v. Gore*, 531 U.S. 98, 104 (2000); *id*. at 104–09 (concluding that "absence of specific standards" to implement vague "intent of the voter" standard caused "arbitrary and disparate treatment" in manual recount in violation of the Equal Protection Clause); *see also Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 235, 239–42 (6th Cir. 2011) (applying *Bush v. Gore* to conclude "lack of specific standards for reviewing provisional ballots" had resulted in unconstitutionally "arbitrary and uneven exercise of discretion").

122. 64. Arbitrarily allocating the right to vote has long been held unconstitutional. *See Louisiana v. United States*, 380 U.S. 145, at 150–53 (1965) ("The cherished right of people in a country like ours to vote cannot be obliterated by the use of laws like this, which leave the voting fate of a citizen to the passing whim or impulse of an individual registrar."). Indeed, any "arbitrary impairment" of the right to vote violates equal protection. *Baker v. Carr*, 369 U.S. 186, 208 (1962) ("A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution . . .").

123. 65. Arizona's previously enacted DPOC law enumerates the specific forms of proof that a voter registration applicant can provide to establish U.S. citizenship. Ariz. Rev. Stat. § 16-166(F). HB 2492, by contrast, does not enumerate what specific "information" proves that a voter registration applicant using the federal form or a registered voter "is not a U.S. citizen." *See Ariz. Rev. Stat. §§ 16-121.01(D) & (E).* The latter contains only a vague instruction that leaves the registration applicant or registered voter's citizenship status to the

discretion and subjective, arbitrary determinations of Defendant Hobbs, Defendant Brnovich, and county recorder offices' staff.

124. ~~66.~~ On the front end of the voter registration process, county recorders who receive a federal registration form that is not accompanied by DPOC must attempt to "verify the citizenship status of the applicant" and must compare the registration applicant's information to every federal, state, and local government database and every "other database relating to voter registration" to which the county recorder has access.

125. ~~67.~~ HB 2492 specifies that

> [i]f the county recorder or other officer in charge of elections matches the [federal form] applicant with information that the applicant is not a United States citizen, the county recorder or other officer in charge of elections shall reject the application, notify the applicant that the application was rejected because the applicant is not a United States citizen and forward the application to the county attorney and Attorney General for investigation.

Ariz. Rev. Stat. § 16-121.01(E), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4. What constitutes "information that the applicant is not a United States citizen" is left unspecified and for the discretion and subjective, arbitrary determinations of Arizona's 15 county recorders' offices and their staff members. How county recorders and their staff must evaluate and interpret stale information that a person lacked U.S. citizenship at some time in the past, during for instance a government transaction for driver licensing or public assistance, is also left unspecified. The flagged individual's likely naturalization as a U.S. citizen subsequent to that outdated government transaction record but *prior to* registering as an Arizona voter is left unaddressed. The legal void created by these vague instructions will be filled with the judgment calls and discretion of county recorders and their staff who will inevitably make inconsistent and irreconcilable determinations on voter registration

applicants' citizenship status. Such arbitrary and disparate treatment concerning the allocation of the right to vote is HB 2492's inevitable consequence.

126. 68. A similar process is required on the back end of the voter registration process. For registered Arizona voters who have not provided DPOC and can only vote in congressional elections, HB 2492 requires Defendant Brnovich to engage in the same wide-ranging database review to identify voters who are purportedly not U.S. citizens and "prosecute individuals who are found to not be United States citizens." Ariz. Rev. Stat. § 16-143, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 7.

127. 69. HB 2492 also 2243 requires county recorders to cancel the removal of voters from the statewide voter registration records of individuals when they database "receive[ w] and confirm[ ]hen the county recorder obtains information pursuant to this section and confirms that the person registered is not a United States citizen." Ariz. Rev. Stat. §§§ 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99370, § 82. Once again, HB 24922243 does not specify what type, set, or combination of "information" establishes that a registered voter "is not a United States citizen" currently; nor do these provisions acknowledge, let alone address, these flagged registered voters' likely naturalization subsequent to the government record's creation but before their registration as a voter. Nor does the statute specify what it means to "confirm" a person is not a U.S. citizen. These vague instructions will inevitably lead to arbitrary and disparate treatment of registered voters and arbitrary allocation of the right to vote. HB 24922243 therefore authorizes county recorders and their staff to rely on outdated government data or unverified, unsubstantiated statements regarding a registered voter's citizenship status and to remove that voter from the

rolls. WhileEven if not all county recorders, and not all staff members will rely on such unreliable information though, the result will be the arbitrary and disparate treatment of naturalized registered Arizona voters.

128. 70. There is no database that has current, up-to-date citizenship status information for all residents of the United States or Arizona. All databases that contain citizenship status information are based on transactions or events that took place at some point in the past. Relying on stale, old government data as if it were evidence of a registration applicant's or registered voter's present-day citizenship status is illogical and irrational and will inevitably lead to arbitrary and disparate treatment and arbitrary allocation of the right to vote.

129. Ariz. Rev. Stat. § 16-165(H) especially gives county recorders unlimited discretion to subject registered voters to subject registered U.S. citizens to extra, unwarranted investigation and potentially registration cancellation when they merely have "reason to believe [certain voters] are not United States citizens." This will inevitably lead to arbitrary and inconsistent treatment of voters statewide and within counties.

130. 71. HB 2492 and HB 2243's citizenship investigation proceduresCitizenship Investigation Provisions, including the registration cancellation provision, subject naturalized voter registration applicants and naturalized registered voters to arbitrary and disparate treatment within counties and statewide, in violation of the Equal Protection Clause.

131. 72. At all relevant times, Defendants have acted under color of state law.

132. ~~73.~~ Defendants have violated and will continue to violate the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT ~~TWO~~FIVE**
**(All Plaintiffs)**
**(Violation of Procedural Due Process as to Voter Registration Applicants Using the Federal Voter Registration Form Who Do Not Provide Documentary Proof of Citizenship, Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983) HB 2492 Section 5 (Ariz. Rev. Stat. § 16-121.01(E))**

133. ~~74.~~ The factual allegations contained in paragraphs 1 through ~~61~~132 are incorporated into Count ~~Two~~Five, as though fully set forth herein.

134. ~~75.~~ The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The Due Process Clause 'forbids the governmental deprivation of substantive rights without constitutionally adequate procedure.'" *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1090–91 (9th Cir. 2008)). "The touchstone of procedural due process is notice and an opportunity to be heard." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1225 (9th Cir. 2021).

135. ~~76.~~ Courts assessing procedural due process claims must weigh "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

136. ~~77.~~ "A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'" *Power ~~Road~~Rd.-Williams Field, LLC*

*v. Gilbert*, 14 F. Supp. 3d 1304, 1311 (D. Ariz. 2014) (quoting *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir. 1994)). "The Ninth Circuit has long held that applicants have a property interest protectible under the Due Process Clause where the regulations establishing entitlement to the benefit are . . . mandatory in nature." *Foss v. NMFS*, 161 F.3d 584, 588 (9th Cir. 1998); *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." (quotation omitted)). The same is true with respect to the creation of a liberty interest. *See Mendoza v. Blodgett,* 960 F.2d 1425, 1428–29 (9th Cir. 1992) ("A state creates a protected liberty interest when it places substantive limitations on official discretion. . . . The regulations also must contain 'explicitly mandatory language,' *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest." (quoting ~~Ky~~*Kentucky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989))).

137. ~~78.~~ Under the U.S. Constitution, the right to vote is "precious" and "fundamental." *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 670 (1966). The right to vote is "of the most fundamental significance under our constitutional structure." *Burdick v. Takushi,* 504 U.S. 428, 433 (1992) (quoting *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of a representative ~~democracy~~government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964). Accordingly, procedural due process protections apply to the right to vote as a constitutionally protected liberty interest.

138. ~~79.~~ Arizona law creates a protectible interest in voter registration by guaranteeing the right to register to every U.S. citizen who is at least 18 years old, who has been a resident of the state for at least 29 days before Election Day, who has not been convicted of a disqualifying felony, and who timely registers to vote in accordance with the rules and procedures established under state law and regulations. Ariz. Const. § 2(A); *see* Ariz. Rev. Stat. §§ 16-101, 16-121. It does not give the county recorders discretion to deny the applications of individuals who satisfy these criteria, rules, and procedures. *See* Ariz. Rev. Stat. § 16-163(A) ("The county recorder, on receipt of a registration in proper form, *shall* assign the registration record to its proper precinct and alphabetical arrangement in the general county register." (emphasis added)).

139. ~~80.~~ HB 2492 amended Arizona's voter qualification statutes such that a registrant must "provide[ ] satisfactory evidence of citizenship" to qualify to register. Ariz. Rev. Stat. §§ 16-101(A)(1), 16-121(A), *as amended by* 2022 Ariz. Sess. Laws ch. 99, §§ 1, 3. However, even if a federal form applicant does not submit DPOC, the requirement is fully satisfied if county recorders' staff can independently verify a federal form applicant's U.S. citizenship. *Id.* § 16-121.01(D), *as amended by* 2022 Ariz. Sess. Laws, ch. 99, § 4.

140. ~~81.~~ When a governing statute is sufficiently mandatory to grant an applicant a vested interest in an entitlement or benefit, applicants "who claim to meet the eligibility requirements" have a right to due process in the evaluation of their applications, including in the methods used to assess their eligibility. *Griffeth v. Detrich*, 603 F.2d 118, 121 (9th Cir. 1979); *Holohan v. Massanari*, 246 F.3d 1195, 1209 (9th Cir. 2001) (recognizing that "applicants for social security disability benefits are entitled to due process in the

determination of their claims" because they have property interest in benefits); *Stivers v. Pierce*, 71 F.3d 732, 740–41 (9th Cir. 1995) ("It is well-settled that the Due Process Clause prevents the state from depriving a plaintiff of a protected property interest without 'a fair trial in a fair tribunal.' . . . This requirement applies not only to courts, but also to state administrative agencies charged with applying eligibility criteria for licenses." (internal citation omitted)); *see also Ressler v. Pierce*, 692 F.2d 1212, 1216 (9th Cir. 1982) (holding that plaintiff "should have been given some means of ensuring that her application for Section 8 benefits was received and given meaningful review"). Federal form applicants who submit their forms without DPOC therefore have a right to due process in how their U.S. citizenship is investigated or assessed in the course of decisions as to whether they are permitted to register to vote.

141. 82. The citizenship investigation proceduresCitizenship Investigation Provisions established by HB 2492, particularly the vague standard "information that the applicant is not a United States citizen," create a high risk of erroneous deprivation, first, for the reasons described above in Count One. Additionally, while and second, because accurately matching two or more sets of data across different databases, particularly those not designed to interact, is a difficult enterprise. Jurisdictions that have attempted such matching schemes have struggled not only with stale data but also to ensure that the person who is assertedly the voter found on a database is in fact the individual on the voter list and not another individual who shares some personal information with the voter.

142. While notice is given to registration applicants who are "matched" to information indicating they are not U.S. citizens, HB 2492 fails to give these individuals an

opportunity to affirm their citizenship or even to submit DPOC prior to the rejection and reflexively refers the applicant to law enforcement for investigation. Ariz. Rev. Stat. § 16-121.01(E), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4 ("If the county recorder or other officer in charge of elections matches the applicant with information that the applicant is not a United States citizen, the county recorder or other officer in charge of elections shall reject the application, notify the applicant that the application was rejected because the applicant is not a United States citizen and forward the application to the county attorney and Attorney General for investigation.").

143.   83.  In order to be meaningful, the right to be heard must be afforded prior to the deprivation. *See Fuentes v. Shevin,* 407 U.S. 67, 82 81-82 (1972) ("[I]f If the right to notice and a hearing is to serve its full purpose, then it is clear that it must be granted at a time when the deprivation can still be prevented . . . the Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes effect."). HB 2492 fails to provide an opportunity to be heard prior to the denial of a registration application, and thus does not comport with requirements of procedural due process.

144.   84.   No government interest exists that outweighs the risk of disenfranchisement faced by federal form applicants who are matched to non-citizenship information.

145.   85.  At all relevant times, Defendants have acted under color of state law. For the foregoing reasons, Defendants have violated and will continue to violate procedural due

process, as guaranteed by the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

**COUNT ~~THREE~~SIX**

**(Poder Latinx)**
**(Violation of ~~Procedural Due Process as to Voter Registration Applicants Who Fail to Provide Documentary Proof of Residence, Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983~~NVRA Requirement That States Accept and Use Timely-Submitted Federal Registration Forms to Register Voters, 52 U.S.C. §§ 20505, 20507(a))**
**HB 2492 Section 5 (Ariz. Rev. Stat. §§ 16-123, 16-121.01(A))**

146. ~~86.~~ The factual allegations contained in paragraphs 1 through ~~61~~145 are incorporated into Count ~~Three~~Six, as though fully set forth herein.

~~87. The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. "The Due Process Clause 'forbids the governmental deprivation of substantive rights without constitutionally adequate procedure.'" *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008)). Plaintiffs alleging procedural due process violations must prove "two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *United States v. 101 Houseco, LLC*, 22 F.4th 843, 851 (9th Cir. 2021) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998)). "The touchstone of procedural due process is notice and an opportunity to be heard." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1225 (9th Cir. 2021).~~

~~88. Courts assessing procedural due process claims must weigh "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).~~

89.

147.   Section 6 of the NVRA requires covered States, including Arizona, to accept and use the federal voter registration form for registration to vote in elections for federal office. 52 U.S.C. § 20505; *Arizona v. Inter Tribal Council of Arizona, Inc. (ITCA)*, 570 U.S. 1 (2013).

148.   The new DPORdocumentary proof of residence requirement does not require county recorders to provide notice toin HB 2492 as applied to the federal voter registration applicants that they failed to provide DPOR, let alone give them an opportunity to cure the deficiency.

90.   The notice provisions in Ariz. Rev. Stat. § 16-134 and Ariz. Rev. Stat. § 16-121.01(A), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 4, refer to missing or incomplete "information *on* the registration form" or "information required to be *on* the registration form." (Emphasis added). With one exception—the Arizona driver's license or ID number that can satisfy the DPOR requirement—all other forms of *documentary* proof of residence are presented separately and not *on* a registration form. Under these statutory provisions, notice of missing DPOR might be provided to voter registration applicants using the Arizona voter registration form. However, they have no application to applicants who submit the federal registration form, so at a minimum, Arizona law fails to provide due process to registration applicants using the federal registration form.

91.   A liberty or property interest that is governed by due process can be created by the Constitution or "may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In this case, qualifying voter registration applicants have a protected interest in registering to vote.

92.    Eligible, registered voters enjoy an "individual and personal" right to vote. *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561 (1964)). Indeed, the Supreme Court has recognized their "strong interest in exercising the 'fundamental political right' to vote." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("It is beyond cavil that 'voting is of the most fundamental significance under our constitutional structure.'") (quoting *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)); *Reynolds v. Sims*, 377 U.S. 533, 561–62 (1964) (holding that the right to vote "is a fundamental matter in a free and democratic society"); *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) ("The . . . political franchise of voting . . . . is regarded as a fundamental political right, because [it is] preservative of all rights."). "The [Due Process] Clause provides heightened protection against government interference with certain fundamental rights and liberty interests." *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997).

93.    Voter registration applicants who meet the eligibility requirements and submit a federal or state registration form are entitled to be registered to vote. Having established such an entitlement, the state may not deprive an individual of it without complying with the Due Process Clause. Under HB 2492, they must provide DPOR, but if they fail to do so, due process requires that they be notified and given an opportunity to cure that deficiency before they are deprived of their statutory entitlement or liberty interest in voter registration.

94.    Arizona law creates a protectible interest in voter registration by guaranteeing the right to register to every U.S. citizen who is at least 18 years old, who has been a resident of the state for at least 29 days before Election Day, who has not been convicted of a disqualifying felony, and who timely registers to vote in accordance with the rules and procedures established under state law and regulations. Ariz. Const. § 2(A); Ariz. Rev. Stat. §§ 16-101, 16-121; *see also* Ariz. Rev. Stat. § 16-163(A) ("The county recorder, on receipt of a registration in proper form, shall assign the registration record to its proper precinct and alphabetical arrangement in the general county register."). Additionally, a registered voter is

entitled by law to their continued registration. Under Arizona law, "[a] person continues to be a qualified elector until that person's registration is canceled pursuant to § 16-165 or until that person does not qualify as a resident . . ." Ariz. Rev. Stat. § 16-121(A).

95. The fundamental liberty interest in exercising one's right to vote is extremely strong and clearly outweighs the government's weak interest in denying otherwise valid registration applications without giving these applicants notice and an opportunity to prove their residence. Defendants have a weighty interest in meeting federal constitutional requirements, and they lack any legitimate interest in rejecting registration forms or canceling registration records without affording the registration applicant both notice and an opportunity to be heard. form violates the NVRA under the U.S. Supreme Court's decision in *ITCA.*

149. Specifically, the Supreme Court concluded that the NVRA prohibits states from applying different or additional requirements, such as the State of Arizona's proof of citizenship requirement, to the federal voter registration form as promulgated by the Election Assistance Commission. *ITCA*, 570 U.S. at 20 ("We hold that [52 U.S.C. § 20505] precludes Arizona from requiring a Federal Form applicant to submit information beyond that required by the form itself.").

150. Because the federal form does not require documentary proof of residence, HB 2492's attempt to require such proof of individuals registering to vote in elections for federal office with the federal registration form violates the NVRA.

151. Defendant Hobbs was notified of this violation of Section 6 of the NVRA on June 3, 2022. *See* Exhibit A. As HB 2492 is still set to go into effect on January 1, 2023, this violation has not been corrected.

152. 96. At all relevant times, Defendants have acted under color of state law.

153. 97. For the foregoing reasons, Defendants have violated and will continue to violate procedural due process with respect to registration applicants who fail to provide DPOR, as guaranteed by the Fourteenth Amendment to the U.S. Constitution Sections 6 and 8 of the NVRA and 42 U.S.C. § 1983.

I.      PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

(a)  Assume jurisdiction over this matter;

(b) Declare that the Citizenship Investigation Provisions of HB 2492 violate Section 8(b) of the National Voter Registration Act, 52 U.S.C. § 20507(b), facially and as applied;

(c) Declare that Ariz. Rev. Stat. § 16-165(H) in HB 2243 violates 52 U.S.C. § 10101(a)(2)(A) and the Fourteenth and Fifteenth Amendments' prohibition on racial and national origin discrimination;

 (bd)  Declare that the citizenship investigation procedures Citizenship Investigation Provisions of HB 2492 and HB 2243, specifically Ariz. Rev. Stat. §§ 16-121.01(D), 16-121.01(E), and 16-121.01(F), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4, Ariz. Rev. Stat. § 16-143, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 7, and Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8, *as further amended by* 2022 Ariz. Sess. Laws, ch. 370 § 2, and Ariz. Rev. Stat. §§ 16-165(F), 16-165(G), 16-165(H), 16-165(I), 16-165(J), *as enacted by* 2022 Ariz. Sess. Laws, ch. 370 § 2, violate the Fourteenth Amendment's Equal Protection and Due Process Clauses, facially and as applied;

(ec)  Issue preliminary and permanent injunctions barring Defendants, their agents, and successors from enforcing or acting under the authority granted in the Citizenship Provisions of HB 2492 and HB 2243, specifically Ariz. Rev. Stat. §§ 16-121.01(D), 16-121.01(E), 16-121.01(F), *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 4, Ariz. Rev. Stat. § 16-143, *as amended by* 2022 Ariz. Sess. Laws, ch. 99 § 7, and Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* 2022 Ariz. Sess. Laws, ch. 99 § 8, *as further amended by* 2022 Ariz. Sess. Laws, ch. 370 § 2, and Ariz. Rev. Stat. §§ 16-165(F), 16-165(G), 16-165(H), 16-165(I), 16-165(J), *as enacted by* 2022 Ariz. Sess. Laws, ch. 370 § 2;

(df)  Declare that the documentary proof of residence ("DPOR") requirement violates the Due Process Clause of the Fourteenth Amendment on its face contained in HB 2492, specifically Ariz. Rev. Stat. §§ 16-123, 16-121.01(A), violates the National Voter Registration Act, 52 U.S.C. §§ 20505 & 20507(a);

(eg)  Issue preliminary and permanent injunctions requiring barring Defendants to provide all registration applicants who fail to provide DPOR with notice and an opportunity to cure the deficiency, their agents, and successors from enforcing or acting under the authority granted by the DPOR requirement in Ariz. Rev. Stat. §§ 16-123, 16-121.01(A);

(fh)  Grant Plaintiff its Plaintiffs their reasonable costs and attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1920, and as otherwise permitted by law; and

(gi)  Grant such other relief as this Court deems just and proper.

RESPECTFULLY SUBMITTED DATED this 96th day of June September, 2022.

/s/ Daniel J. Adelman

Daniel J. Adelman——— (011368)
Arizona Center for Law
   in the Public   Interest
352 E. Camelback Rd., Suite 200
Phoenix, AZ  85012
danny@aclpi.org
(602) 258-8850

Jon Sherman*
D.C. Bar No. 998271
Michelle Kanter Cohen*
D.C. Bar No. 989164
Cecilia Aguilera*
D.C. Bar No. 1617884
Fair Elections Center
1825 K St. NW, Ste. 450
Washington, D.C. 20006
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
caguilera@fairelectionscenter.org
(202) 331-0114

John A. Freedman*
Jeremy Karpatkin*
Erica McCabe*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C.  20001
John.Freedman@arnoldporter.com
Jeremy.Karpatkin@arnoldporter.com
Erica.McCabe@arnoldporter.com
(202) 942-5000

Steven L. Mayer*
Arnold & Porter Kaye Scholer LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Steve.Mayer@arnoldporter.com
(415) 471-3100

Leah R. Novak*

Arnold & Porter Kaye Scholer LLP 250 West 55th Street
New York, NY 10019
Leah.Novak@arnoldporter.com
(212) 836-8000

*Counsel for Plaintiff Poder Latinx*
*\*Application for Pro Hac Vice Admission Forthcoming*