MICHAEL RYAN WILLIAMS, ESQ.
3636 North Central Avenue
Phoenix, Arizona 85012
State Bar No. 029703
m.ryan.williams@gmail.com
(602) 740-0321
*Lead Counsel for Advocates for Victims of Illegal Alien Crime*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Mi Familia Vota, *et al.*,

        Plaintiffs,

v.

Katie Hobbs, *et al.*,

        Defendants.

—————————————————

Living United for Change in Arizona, *et al.*,

        Plaintiffs.

v.

Katie Hobbs,

        Defendant,

and

State of Arizona, *et al.*,

        Intervenor-Defendants.

—————————————————

**Case No.: 2:22-cv-00509-PHX-SRB**

Poder Latinex, Chicanos Por La Causa, and Chicanos Por La Causa Action Fund,

Plaintiff,

v.

Katie Hobbs, in her official capacity as Secretary of State of Arizona, Mark Brnovich, in his official capacity as Attorney General of Arizona, Stephen Richer, in his official capacity as Maricopa County Recorder, Gabriella Cazares-Kelly, in her official capacity as Pima County Recorder, and Richard Colwell, in his official capacity as Yuma County Recorder,

Defendants.

_____

United States of America,

Plaintiff,

v.

State of Arizona, *et al.*,

Defendants,

and

Republican National Committee,

Intervenor-Defendant.

_____

2

**MEMORANDUM OF LAW AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FROM ADVOCATES FOR VICTIMS OF ILLEGAL ALIEN CRIME**

Lorraine G. Woodwark
By */s/ Lorraine G. Woodwark, Esq.*
Attorneys United for a Secure America
25 Massachusetts Avenue NW, Ste 335
Washington, D.C. 20001
(202) 591-0962
(202) 464-3590
LWoodwark@IRLI.org


By */s/ Carson J. Tucker, Esq.*
Lex Fori PLLC
DPT #3020
1250 W. 14 Mile Rd.
Troy, MI 48083-1030
Direct +17348879261
Main +17348879260
Fax +17348879255
www.lexforipllc.com
cjtucker@lexfori.org

Michael Ryan Williams
By */s/ M. Ryan Williams, Esq.*
Attorney at Law
3636 North Central Avenue
Phoenix, AZ 85014
(602) 740-0321
M.Ryan.Williams@gmail.com

Counsel for *Amicus Curiae*
Advocates for Victims of Illegal Alien Crime

The case number for this *amicus curiae* brief is No. **2:22-cv-00509-PHX-SRB**, *Mi Familia vota et al v. Katie Hobbs, et al.*

*Amicus Curiae* Advocates for Victims of Illegal Alien Crime is a non-profit corporation which has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

Pursuant to the Federal Rule of Procedure, the undersigned counsel of record certifies that the parties' list of persons and entities having an interest in the outcome of this case is complete, to the best of the undersigned counsel's knowledge, with the following additions:

Advocates for Victims of Illegal Alien Crime, *Amicus Curiae*

M. Ryan Williams, Esq., counsel for *Amicus Curiae*

Carson Tucker, Esq., counsel for *Amicus Curiae*

Lorraine G. Woodwark, Esq., counsel for *Amicus Curiae*

These representations are made in order that the judge of this court may evaluate possible disqualification or recusal.

Respectfully submitted, this 23rd day of September, 2022.

*/s/ M. Ryan Williams*
Michael Ryan Williams, Esq.
*Counsel for Advocates for Victims of Illegal Alien Crime*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................................. i

TABLE OF AUTHORITIES ........................................................................................ iii

IDENTITY, INTEREST AND AUTHORITY TO FILE ..................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 2

ARGUMENT ............................................................................................................. 3

I.   ARIZONA'S PROOF OF CITIZENSHIP REQUIREMENT IS CONSTITUTIONAL AND DOES NOT VIOLATE THE NVRA ............................................................. 3

II.  STATES HAVE A COMPELLING INTEREST IN PROTECTING VOTER INTEGRITY AND PREVENTING DILUTION OF CITIZEN VOTES ................... 9

CONCLUSION ......................................................................................................... 11

CERTIFICATE OF COMPLIANCE ............................................................................. 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Constitutional Provisions**

Ariz. Const, art. VII, § 12 ........................................................................... 3

Ariz. Const., Art. VII, § 2 ............................................................................ 3

U.S. Const. Amend. 14 ................................................................................. 3

U.S. Const. Amend. 15 ................................................................................. 3

U.S. Const. Amend. 19 ................................................................................. 3

U.S. Const. Amend. 24 ................................................................................. 3

U.S. Const. Amend. 26 ................................................................................. 3

U.S. Const. Amend. 9 ................................................................................... 6

U.S. Const. Art. I, § 4, cl. 1 ........................................................................ 10

**Statutes**

26 U.S.C. § 501(c)(3) .................................................................................. 1

52 U.S.C. § 20505 ...................................................................................... 10

52 U.S.C. § 20508(b)(2) ............................................................................... 4

**Cases**

*Ahrens v. Kerby*,
44 Ariz. 269; 37 P.2d 375 (1934) .................................................................. 3

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1; 133 S. Ct. 2247; 186 L.Ed.2d 239 (2013) ............................... 4, 8, 10

*Baker v. Carr*,
369 U.S. 186; 82 S. Ct. 691; 7 L.Ed.2d 663 (1962) ....................................... 6, 8

iii

*Brnovich v. Democratic Nat'l Comm.*,
210 L. Ed. 2d 753, 141 S. Ct. 2321 (2021) ........................................................ 8

*California Democratic Party v. Jones*,
530 U.S. 567; 120 S. Ct. 2402; 147 L. Ed. 2d 502 (2000) .................................. 9

*Dunn v. Blumstein*,
405 U.S. 330; 92 S. Ct. 995; 31 L. Ed. 2d 274 (1972) ...................................... 2

*Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214; 109 S.Ct. 1013;
103 L.Ed.2d 271 (1989) ...................................................................................... 7

*Ex parte Siebold*,
100 U.S. 371; 25 L.Ed. 717 (1879) .................................................................... 6

*Ex parte Yarbrough*,
110 U.S. 651; 4 S. Ct. 152; 28 L. Ed. 274 (1884) ............................................ 5

*Foley v. Connelie*,
435 U.S. 291; 98 S. Ct. 1067; 55 L.Ed.2d 287 (1978) ...................................... 6

*Gonzalez v. Arizona*,
677 F.3d 383 (9th Cir. 2012) .............................................................................. 8

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ............................................................................. 7

*Mathews v. Diaz*,
426 U.S. 67; 96 S. Ct. 1883 (1976) ................................................................. 2, 3

*Myers v. United States*,
272 U.S. 52; 47 S. Ct. 21, 63 (1926) ................................................................. 7

*Oregon v. Mitchell*,
400 U.S. 112; 91 S.Ct. 260; 27 L.Ed.2d 272 (1970) ......................................... 4

*Plyler v Doe*,
457 U.S. 202; 102 S. Ct. 2382; 72 L. Ed. 2d 786, 810 (1982) ......................... 2

*Purcell v. Gonzalez*,
549 U.S. 1; 127 S. Ct. 5; 166 L. Ed. 2d 1 (2006) ........................................... 7, 8

*Reynolds v. Sims*,
  377 U.S. 533; 84 S.Ct. 1362; 12 L.Ed.2d 506 (1964) ............................ 2, 5, 7, 8

*Sugarman v. Dougall*,
413 U.S. 634; 93 S. Ct. 2842; 37 L.Ed.2d 853 (1973) ................................. 6

*Tashjian v. Republican Party of Conn.*,
479 U. S. 208; 107 S. Ct. 544; 93 L.Ed. 2d 514 (1986) ............................. 4

*U.S. Term Limits v. Thornton*,
514 U. S. 779; 115 S. Ct. 1842; 131 L. Ed. 2d 881 (1995) ......................... 4

*United Pub. Workers v. Mitchell*,
330 U.S. 75; 67 S. Ct. 556 (1947) .......................................................... 7

*United States v. Classic*,
313 U.S. 299; 61 S. Ct. 1031; 85 L.Ed. 1368 (1941) ................................. 6

*United States v. Mosley*, 2
38 U.S. 383, 386-88; 35 S. Ct. 904; 59 L.Ed. 1355 (1915)..................... 6, 8

*United States v. Saylor*,
322 U.S. 385; 64 S. Ct. 1101; 88 L.Ed. 1341 (1944) ................................. 6

*Wiley v. Sinkler*, 179 U.S. 58; 21 S. Ct. 17; 45 L.Ed. 84, 88 (1900) ................. 5

*Yick Wo v. Hopkins*,
118 U.S. 356; 6 S. Ct. 1064; 30 L.Ed. 220 (1886) ............................... 5

**Court Rules**

Fed. R. App. P. 29(a)(4)(E)................................................................... 1

**Other Authorities**

I Annals of Congress 439 (Gales and Seaton ed. 1834)............................ 7

II Story, Commentaries on the Constitution of the United States (5th ed. 1891) .............. 7

# IDENTITY, INTEREST AND AUTHORITY TO FILE[1]

*Amicus curiae* Advocates for Victims of Illegal Alien Crime ("AVIAC") is a 26 U.S.C. § 501(c)(3) non-profit organization that was founded in 2017. AVIAC is led by individuals who have lost family members because of crimes committed by undocumented immigrants.[2] AVIAC's mission includes being a source of support for such victims across the country and a resource for policies that will enforce the nation's immigration laws and prevent governmental incentives for illegal immigration.

AVIAC objects to providing non-citizens with the right to vote in any election, whether local, state, or federal as it dilutes the votes of eligible U.S. citizens. Proof of citizenship is fundamental to ensuring that only U.S. citizens vote to protect America's representative democracy. This case concerns the attempt by several Plaintiffs to override the United States Constitution's requirements that only U.S. citizens vote in elections, the Constitution of the State of Arizona and House Bill 2492, which requires proof of U.S. citizenship to vote in elections. AVIAC supports the State of Arizona's Consolidated Motion to Dismiss based on Plaintiffs' failure to state a viable claim, including but not limited to, violations of the National Voter Registration Act of 1993.

Given its interest in strong borders and the protection of national sovereignty, AVIAC has an interest in the continuation of the United States as a democracy in which

---

[1] All parties with the exception Plaintiff and Plaintiff-Intervenors Mi Familia Vota, Poder Latinex, Chicanos Por La Causa and Chicanos Por La Causa Action Fund have consented to the filing of this brief by *Amicus*. Pursuant to F.R.CIV.P. 7 and FED. R. APP. P. 29(a)(4)(E), undersigned counsel certifies that: counsel for the *Amicus* authored this brief in whole; no counsel for a party authored this brief in any respect; and no person or entity – other than *Amicus*, its members, and its counsel – contributed monetarily to this brief's preparation or submission.

[2] https://www.aviac.us/ (viewed Aug. 21, 2022).

1

the people of the United States—that is, U.S. citizens—are the sovereign's representatives. AVIAC is concerned about incursions on the sovereignty of American citizens by non-citizens voting in local, state and federal elections. Accordingly, AVIAC seeks to ensure that only American citizens are permitted to vote in Arizona's municipal, county, statewide and federal elections.

## SUMMARY OF ARGUMENT

Every state has the right to prevent non-citizens from voting in local, state, and national elections. In fact, the United States Constitution excludes non-citizens from the privilege, and with good reason. "Regulation of the electoral process receives unusual scrutiny because 'the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights.'" *Mathews v. Diaz*, 426 U.S. 67, 78-79, 96 S. Ct. 1883, 1890-91 (1976), quoting *Reynolds v. Sims*, 377 U.S. 533, 562; 84 S.Ct. 1362; 12 L.Ed.2d 506 (1964). See also, *Dunn v. Blumstein*, 405 U.S. 330, 336; 92 S. Ct. 995; 31 L. Ed. 2d 274 (1972). In other words, the right to vote is accorded extraordinary treatment because it is, in equal protection terms, an extraordinary right: a citizen cannot hope to achieve any meaningful degree of individual political equality if granted an inferior right of participation in the political process." *Plyler v Doe*, 457 U.S. 202, 233; 102 S. Ct. 2382; 72 L. Ed. 2d 786, 810 (1982). The Court has further stated that "[t]he fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship…. [A] host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for

2

one class not accorded to the other, [e.g.,] [t]he Constitution protects the privileges and immunities only of citizens, Amdt. 14, § 1; see Art. IV, § 2, cl. 1, and the right to vote only of citizens. Amdts. 15, 19, 24, 26. *Mathews*, *supra* at 78-79, n. 12.

Not only does the Constitution protect citizens' right to vote, but nothing in that document could ever authorize the executive, legislative or judicial branch of the federal government to force the states to allow non-citizens to exercise the same privileges accorded citizens of the United States and of the several states. Moreover, the States have a compelling right (and interest) in preserving the integrity of their election processes by ensuring that it protects against fraud and assures citizens of its integrity so that they will exercise their right to vote with vigor and confidence.

**ARGUMENT**

## I.    ARIZONA'S PROOF OF CITIZENSHIP REQUIREMENT IS CONSTITUTIONAL AND DOES NOT VIOLATE THE NVRA

Arizona has had a citizenship requirement for voting since it became a State in 1912. Ariz. Const., Art. VII, § 2. While the Arizona Constitution itself does not prescribe the qualifications of voters, it does provide that, "[n]o person shall be entitled to vote at any general election,…, or upon any question which may be submitted to a vote of the people, *unless such person be a citizen of the United States*…" *Id*. See also *Ahrens v. Kerby*, 44 Ariz. 269, 340, 37 P.2d 375, 377 (1934) (*emphasis added*).

The Arizona Constitution further requires that "[t]here shall be enacted registration and other laws to secure the purity of elections and guard against abuses of the elective franchise." Ariz. Const, art. VII, § 12. This requirement places an affirmative duty upon

3

the Arizona Legislature to ensure the integrity of elections. *Ahrens* at 44 Ariz. 269, 341, 37 P.2d 375, 377 ("In fact, in section 12 of this article 7, it places upon the law-making branch of the government the duty of enacting 'registration and other laws to secure the purity of elections and guard against abuses of the elective franchise.').

In fulfilling Arizona's constitutional requirements, the Arizona legislature passed an amendment that requires voter registrants to submit proof of citizenship - Arizona HB 2492. The Plaintiffs and Plaintiff-Interveners object to this law for several reasons, among them, the United States, which incorrectly alleges that because the National Voter Registration Act requires merely an attestation but does not require proof of citizenship, the State of Arizona may not require the latter. See *U.S.A. v. State of Arizona*, 2:22-cv-01124-SRB. (The Federal Form specifies that an applicant must be a *United States citizen* to vote in federal elections, requires the applicant to attest to the applicant's citizenship… 52 U.S.C. § 20508(b)(2)).

This is nonsense. Under the existing Constitution of the United States, the federal government, acting through the Executive, Legislative, or Judicial branch, cannot force a state to allow people who are not citizens of the United States to cast votes in federal elections. States are not required to accept applicants for voter registration who cannot prove United States Citizenship. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15; 133 S. Ct. 2247; 186 L.Ed.2d 239 (2013). And indeed, as to Time, Place, and Manner, the requirement that an eligible voter prove United States citizenship is constitutional and unassailable by the federal government. *Id*.

4

The Elections Clause empowers Congress to regulate how federal elections are held, but not who may vote in them. Nothing in the Constitution provides that "voting qualifications in federal elections are to be set by Congress." *Id*. at 16, citing *Oregon v. Mitchell*, 400 U.S. 112, 210; 91 S.Ct. 260; 27 L.Ed.2d 272 (1970) (Harlan, J., concurring in part and dissenting in part); see also *U.S. Term Limits v. Thornton*, 514 U. S. 779, 833-834; 115 S. Ct. 1842; 131 L. Ed. 2d 881 (1995); *Tashjian v. Republican Party of Conn.*, 479 U. S. 208, 231-232; 107 S. Ct. 544; 93 L.Ed. 2d 514 (1986) (Stevens, J., dissenting). If an applicant is unable to prove citizenship, the state can reject that applicant's registration. *Id*.

The requirement of national citizenship to vote in national elections was never in doubt among the framers of the Constitution. The Supreme Court has consistently shored up the notion that non-citizens are not, and should not be, entitled to vote in federal elections.[3] There is an unwritten, but just as fundamental, right and privilege of national citizenship to vote in national elections. *Ex parte Yarbrough*, 110 U.S. 651, 665; 4 S. Ct. 152; 28 L. Ed. 274 (1884); *Wiley v. Sinkler*, 179 U.S. 58; 21 S. Ct. 17; 45 L.Ed. 84, 88 (1900). In *Yarbrough*, in ruling that Congress had the power to enact the Fifteenth Amendment to prohibit the states from denying the right to vote to citizens on the basis of race, the Court noted it was merely affirmation of a guarantee "as necessary to the right of

---

[3] Congress has also reaffirmed this principle in various statutory provisions. *See e.g.,* 18 U.S.C. § 611 (it is a crime punishable by a fine and up to one year in prison for an alien to vote in a federal election); 8 U.S.C. § 1227 (any alien who has voted in violation of any Federal, State, or local constitutional provision, statute, ordinance, or regulation is deportable); 42 U.S.C. § 1973gg-10(2) (any false statement concerning an applicant's citizenship status that is made on a registration form submitted to election authorities is a crime); 18 U.S.C. § 911 (knowing and willful false assertions of United States citizenship in order to vote are punishable by up to three years in prison) 18 U.S.C. § 1015(f) (it is a criminal offense for an individual to make a false statement or claim that he or she is a citizen of the United States in order to register or to vote).

other citizens to vote…and to the right to vote in general as to the right to be protected against discrimination." *Id.* at 665. In both instances, the Court concluded, the exercise of the right was protected by the Constitution. *Id.*

*Wiley*, *supra*, instructs that the states must ensure that the qualifications they impose for voting in national elections mirrors the requisite qualifications implicitly, if not explicitly, required by the National Constitution. *Wiley*, 179 U.S. at 64. Thus, the right to vote in national elections is fundamentally based on the Constitution, and the Constitution requires that the states guarantee those privileges and defend those rights that obtain uniquely from national citizenship. *Id.*

More specifically, the Court described the privilege as a fundamental constitutional right preservative of all others. *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S. Ct. 1064, 1071, 30 L.Ed. 220, 226 (1886). As the Court later confirmed, an infringement upon this right occurs where a legal citizen's vote is diluted or nullified. This nullification of an individual choice occurs whenever *any illegitimate vote is cast*, whether it be by a non-citizen, a non-registered, or a non-existent "voter". *Reynolds v. Sims*, 377 U.S. 533, 565; 84 S. Ct. 1362, 1383; 12 L.Ed.2d 506 (1964) ("each citizen [has] an equally effective voice in the election … and the Constitution demands, no less.").

Thus, a citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution, when such impairment resulted from dilution by a false tally, cf. *United States v. Classic*, 313 U.S. 299, 314-15; 61 S. Ct. 1031; 85 L.Ed. 1368 (1941); or by a refusal to count votes from arbitrarily selected precincts, cf. *United States v. Mosley*, 238 U.S. 383, 386-88; 35 S. Ct. 904; 59 L.Ed. 1355

6

(1915); or by a stuffing of the ballot box, cf. *Ex parte Siebold*, 100 U.S. 371, 388; 25 L.Ed. 717 (1879); *United States v. Saylor*, 322 U.S. 385, 389; 64 S. Ct. 1101; 88 L.Ed. 1341 (1944). See also, *Baker v. Carr*, 369 U.S. 186, 208; 82 S. Ct. 691; 7 L.Ed.2d 663 (1962)

As the Court has stated when discussing the privileges of citizenship, a new citizen's right to vote and to participate in the democratic decision-making process "is the honorable prerogative which no alien has a constitutional right to enjoy." *Foley v. Connelie*, 435 U.S. 291, 311; 98 S. Ct. 1067; 55 L.Ed.2d 287 (1978). Therefore, "it is clear that a State may deny aliens the right to vote;" and "the right to participate in the making of policy…." *Id*. at 291, 296-97. These principles "lie at the heart of our political institutions." *Id*. at 291, citing *Sugarman v. Dougall*, 413 U.S. 634, 647; 93 S. Ct. 2842; 37 L.Ed.2d 853 (1973).

Thus, the affirmative protections that the state may afford by way of statutes requiring proof of citizenship to vote must be considered in light of the implied protections afforded by the Constitution to all citizens by virtue of their status as such. It is no more an affront to the fundamental constitutional rights of citizens that their vote is cancelled or nullified by the casting of a fraudulent vote, than by a vote that is cast by someone who does not possess the privilege. *Baker*, *supra* (recognizing that an important "badge of citizenship is the right to vote."). Obviously, if a non-citizen exercises this right, it removes this privilege from citizens and dilutes their choice. Thus, States may define and regulate the qualifications of its voters, and there is nothing in the Constitution that would prohibit the State from affirming by positive law that which is implicitly acknowledged in the Constitution.

For an added measure of assurance, it is declared that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amend. 9. It was universally agreed by the Framers that there are additional fundamental rights, protected from governmental infringement, which exist alongside those specifically mentioned in the first eight amendments. I Annals of Congress 439 (Gales and Seaton ed. 1834). See also II Story, Commentaries on the Constitution of the United States (5th ed. 1891), pp. 626-627. "The [Ninth] Amendment…was proffered to quiet expressed fears that a bill of specifically enumerated rights could not be sufficiently broad to cover all essential rights and that the specific mention of certain rights would be interpreted as a denial that others were protected." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 174 (1803). See also *Myers v. United States*, 272 U.S. 52, 229; 47 S. Ct. 21, 63 (1926).

As "it cannot be presumed that any clause in the constitution is intended to be without effect…effect should be given to all the words it uses." *United Pub. Workers v. Mitchell*, 330 U.S. 75, 94-96; 67 S. Ct. 556 (1947). And, indeed, a right to political affiliation and political choice has been addressed as protected, at least in part, by this amendment. This includes, of course, the fundamental right to vote. *Id*. See also *Reynolds*, 377 U.S. at 560.

That the latter is the fundamental and primary right among all other fundamental rights, enumerated or not, is evident in the fact it is self-executing. Infringement upon it cannot occur under the Constitution if the government is, in fact, one that is duly and legally chosen by the People. Any government that asserts a federal mandate to rule on the basis

of fraud or illegality effectuates an instant infringement on the sovereign's will, and, of necessity, has no legitimacy.

## II. STATES HAVE A COMPELLING INTEREST IN PROTECTING VOTER INTEGRITY AND PREVENTING DILUTION OF CITIZEN VOTES

"A State indisputably has a compelling interest in preserving the integrity of its election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4; 127 S. Ct. 5; 166 L. Ed. 2d 1 (2006), citing *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 231; 109 S.Ct. 1013; 103 L.Ed.2d 271 (1989). "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised. '[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.' *Reynolds*, 377 U.S. at 555. Countering the State's compelling interest in preventing voter fraud is the plaintiffs' strong interest in exercising the 'fundamental political right' to vote. *Dunn v. Blumstein*, 405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (internal quotation marks omitted). *Id.*

In *Reynolds*, 377 U.S. at 554-55, the Court held that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Purcell*, *supra*. Indeed, "the right to have one's vote counted is as open to protection . . . as the right to put a ballot in a box." *Mosley*, 238 U.S. at 386. *See also Baker*, 369 U.S. at 208 (explaining that voters have a

"plain, direct and adequate interest in maintaining the effectiveness of their votes.")
(*internal quotation marks omitted*); *Reynolds*, *supra* at 567 (explaining that vote dilution
occurs when "[a]n individual's right to vote . . . is unconstitutionally impaired [because]
its weight is in a substantial fashion diluted [] compared with the votes of citizens in other
parts of the State.").

"One strong and entirely legitimate state interest is the prevention of fraud. Fraud
can affect the outcome of a close election, and fraudulent votes dilute the right of citizens
to cast ballots that carry appropriate weight. Fraud can also undermine public confidence
in the fairness of elections and the perceived legitimacy of the announced outcome."
*Brnovich v. Democratic Nat'l Comm.*, 210 L. Ed. 2d 753, 141 S. Ct. 2321, 2340 (2021);
*Gonzalez v. Arizona*, 677 F.3d 383, 403 (9th Cir. 2012), *aff'd sub nom.  Arizona v. Inter
Tribal Council of Arizona, Inc.*, 570 U.S. 1, 133 S. Ct. 2247, 186 L. Ed. 2d 239 (2013)
(" We recognize Arizona's concern about fraudulent voter registration.").

A democratic country permits only its citizens of that country with the right to vote.
"Representative democracy in any populous unit of governance is unimaginable without
the ability of *citizens* to band together in promoting among the electorate candidates who
espouse their political views."  *California Democratic Party v. Jones*, 530 U.S. 567, 574,
120 S. Ct. 2402, 2408, 147 L. Ed. 2d 502 (2000) (*emphasis added*).  Allowing non-citizen
participation in Arizona's electoral process significantly undermines voters' confidence in
the integrity of our elections and discourages voters from participating because of
legitimate fears of vote dilution.  Both of these problems raise compelling state interests
that the State of Arizona has the absolute and unrestrained right to protect.

Indeed, the problem of non-citizen participation in the democratic electoral and legal processes reserved for citizens is not an abstract one: A 2005 Report from the Government Accountability Office found that up to three (3%) percent of the 30,000 individuals chosen for jury duty from voter registration rolls in just one U.S. district court over a two-year period were not U.S. citizens. Government Accountability Office, Elections: Additional Data Could Help State and Local Election Officials Maintain Accurate Voter Registration Lists 42 (2005), available at www.gao.gov/assets/250/246628.pdf. According to a separate study released in 2014 by several professors at Old Dominion University and George Mason University, approximately 6.4% of noncitizens voted in 2008 and 2.2% of noncitizens voted in 2010. Jesse T. Richman, Gulshan A. Chattha, and David C. Earnest, Do noncitizens vote in U.S. elections? Electoral Studies 36 (2014) 149-157. The Arizona Legislature therefore acted well within its constitutional role and consistent with its affirmative to duty to 'secure the purity of elections and guard against abuses of the elective franchise' in enacting HB 2243 and HB 2492 which will further strengthen the longstanding prohibition of non-citizen participation in Arizona's electoral process.

**CONCLUSION**

Article I, Section 4, of the U.S. Constitution is clear that election law is delegated to the States. Both the U.S. Constitution and the Constitution of Arizona clearly state that only U.S. citizens are permitted to vote in elections. Further, the State of Arizona's Legislature properly enacted HB 2243 and HB 2492 that requires proof of U.S. citizenship in order to register to vote, regardless of whether a prospective voter used the federal form

or Arizona's voter registration form. By requiring proof of citizenship, HB 2243 and HB 2492 do not violate Section 6 of the National Voter Registration Act of 1993, section 7 ("NVRA" or the "Act"), 52 U.S.C. § 20505.  As the late Justice Scalia noted in *Inter Tribal Council, supra* at 17, that while the Elections Clause of the Constitution, Art. I, § 4, cl. 1, empowers Congress to regulate *how* federal elections are held, it does not regulate *who* may vote in them - the latter is left to the sole province of the States.  Justice Thomas, in his dissent, agreed, noting that, "The Framers did not intend to leave voter qualifications to Congress […] Congressional legislation of voter qualifications was not part of the Framers' design." *Id*. at 26. Justice Alito, in his dissent, concluded that, "Indeed, even if neither the presumption against pre-emption nor the canon of constitutional avoidance applied, the better reading of the Act would be that Arizona is free to require those who use the federal form to supplement their applications with proof of citizenship." *Id*. at 44.

The NVRA is nothing more than an optional form narrowly tailored so that is does not violate the United States Constitution for each State's legislature to determine their own election laws. See U.S. Const. Art. I, §4. ("each State by the Legislature thereof…") Therefore, the States have full authority to enact election laws to protect voter integrity. Nowhere does the NVRA expressly prohibit the States from requiring voter proof of citizenship, and in fact it could not do. See *Inter Tribal Council, supra.*


For the forgoing reasons, and those stated in Defendants' Consolidated Motion to Dismiss, the Motion to Dismiss should be granted.

Respectfully submitted, this 23rd day of September, 2022.

/s/ Michael Ryan Williams
MICHAEL RYAN WILLIAMS, ESQ.
3636 North Central Avenue
Phoenix, Arizona 85012
State Bar No. 029703
m.ryan.williams@gmail.com
(602) 740-0321

CARSON J. TUCKER, ESQ.
Lex Fori, PLLC
DPT #3020
1250 West 14 Mile Road
Troy, Michigan 48083-1030
cjtucker@lexfori.org

LORRAINE G. WOODWARK, ESQ.
Attorneys United for a Secure America
(AUSA)
25 Massachusetts Avenue NW, Ste 335
Washington, D.C. 20001
LWoodwark@IRLI.org
(202) 591-0962

*Counsel for Amicus Curiae*
*Advocates for Victims of Illegal Alien*
*Crime (AVIAC)*

**CERTIFICATE OF COMPLIANCE**

1. This brief has been prepared using 14-point, proportionately spaced, serif typeface, in Microsoft Word.

2. This brief complies with FED. R. APP. P. 29(a)(5) and 32(a)(7)(B) because it contains a total of 4619 words, excluding material not counted under Rule 32(f).

Respectfully submitted, this 23rd day of September, 2022.

*/s/ Michael Ryan Williams*
MICHAEL RYAN WILLIAMS, ESQ.
3636 North Central Avenue
Phoenix, Arizona 85012
State Bar No. 029703
m.ryan.williams@gmail.com
(602) 740-0321

*Lead Counsel for Movant AVIAC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of September, 2022, I electronically filed the foregoing motion—together with the accompanying Corporate Disclosure Statement, Proposed Order, and Memorandum of Law—with the Clerk using the CM/ECF system, which I understand to have served the parties' counsel who are registered in as CM/ECF users.

*/s/ Michael Ryan Williams*
MICHAEL RYAN WILLIAMS, ESQ.
3636 North Central Avenue
Phoenix, Arizona 85012
State Bar No. 029703
m.ryan.williams@gmail.com
(602) 740-0321

*Lead Counsel for Movant*