Marc E. Elias*
Elisabeth C. Frost*
John M. Geise*
Mollie DiBrell*
Alexander F. Atkins*
Daniela Lorenzo*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, DC 20002
Phone: (202) 968-4513
Facsimile: (202) 968-4498
melias@elias.law
efrost@elias.law
jgeise@elias.law
mdibrell@elias.law
aatkins@elias.law
dlorenzo@elias.law

Roy Herrera (Bar No. 032901)
Daniel A. Arellano (Bar No. 032304)
Jillian L. Andrews (Bar No. 034611)
**HERRERA ARELLANO LLP**
530 East McDowell Road
Suite 107-150
Phoenix, Arizona 85004-1500
Phone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com
jillian@ha-firm.com

*Attorneys for Plaintiffs Mi Familia Vota and Voto Latino*
*Admitted Pro Hac Vice

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al.,<br>　　　Plaintiffs,<br>　　v.<br>Katie Hobbs, et al.,<br>　　　Defendants.<br>Living United for Change in Arizona, et al.,<br>　　　Plaintiffs,<br>　　v.<br>Katie Hobbs,<br>　　　Defendant,<br>　　and<br>State of Arizona, et al.,<br>　　　Intervenor-Defendants. | Case No. 2:22-cv-00509-SRB<br><br>**MFV PLAINTIFFS' OPPOSITION TO STATE'S CONSOLIDATED MOTION TO DISMISS** |

Poder Latinx,

    Plaintiff,

  v.

Katie Hobbs, et al.,

    Defendants.

United States of America,

    Plaintiff,

  v.

State of Arizona, et al.,

    Defendants.

Democratic National Committee, et al.,

    Plaintiffs,

  v.

State of Arizona, et al.,

    Defendants,

    and

Republican National Committee,

    Intervenor-Defendant.

**Table of Contents**

I. MFV/VL have standing and their claims are ripe. ................................................... 1

II. Counts I, II, and III allege cognizable constitutional claims.................................... 2

    A. Legal standard. ................................................................................................... 2

    B. MFV/VL sufficiently allege burdens to sustain each claim. .............................. 3

    C. The State's interests cannot justify the burdens on the rights alleged. .............. 6

III. Count IV alleges a cognizable claim under the NVRA. ........................................... 7

IV. Count V alleges a cognizable claim under the Civil Rights Act............................... 7

    A. Private plaintiffs may enforce the Materiality Provision. .................................. 8

    B. MFV/VL sufficiently plead a Materiality Provision claim. ............................. 10

The State contends Mi Familia Vota and Voto Latino ("MFV/VL") lack standing and fail to state cognizable claims, moving to dismiss their Second Amended Complaint ("SAC") (ECF No. 65). MFV/VL are nonprofits with the mission of engaging Latinx communities politically, including through voter registration and mobilization in Arizona. SAC ¶¶ 16–21. They allege H.B. 2492: (1) imposes unjustifiable burdens on the right to vote; (2) strips current voters of the right to vote without sufficient due process; (3) violates equal protection by treating voters differently based on the form they use to register; (4) violates the NVRA; and (5) violates the Civil Rights Act. *See generally id*. These are viable claims and MFV/VL have standing to pursue them. The Motion should be denied.[1]

## I. MFV/VL have standing and their claims are ripe.

MFV/VL have standing because they allege injuries in fact, traceable to Defendants, and redressable by this Court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The State challenges only their injury, as insufficient or not ripe.[2] It is wrong on both counts.

MFV/VL allege that H.B. 2492 threatens their missions by disenfranchising the communities they exist to educate, register, and mobilize, requiring them to divert resources to education about H.B. 2492 and to identify and re-register impacted voters. *See* SAC ¶¶ 18, 21; Decl. of Carolina Rodriguez-Greer ("MFV Decl.") ¶¶ 5, 12, 14, 15, 19; Decl. of Ameer Patel ("VL Decl.") ¶¶ 7, 11, 12, 19, 20, 23. MFV/VL's allegations are more than sufficient. *See, e.g.*, *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 879–80 (9th Cir. 2022); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1036 (9th Cir. 2015); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341–42 (11th Cir. 2014). This is not like *La Asociación de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083 (9th Cir. 2010), where the plaintiff "failed to assert any [facts] . . . that it was forced to divert resources . . . because of the defendants' actions." *Id.* at 1088. "Given that as part of their

---

[1] MFV/VL incorporate the oppositions filed by the other Plaintiffs.
[2] MFV/VL do not argue associational standing and filed suit against the Secretary, Attorney General, and all county election recorders. The State's arguments regarding associational standing, traceability, or redressability do not apply.

- 1 -

MFV PLAINTIFFS' OPPOSITION TO STATE'S CONSOLIDATED MTD

missions" MFV/VL work to enfranchise voters, "it cannot be said" they "are spending money to fix a problem that otherwise would not affect them." *We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cnty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1099–1100 (D. Ariz. 2011) (distinguishing *City of Lake Forest*).³

Second, the matter is ripe for the reasons detailed in Poder Latinx's opposition. The statutory text *requires* voters to be removed from the rolls and threatened with investigation or prosecution, and the State has not said it will not enforce it. Accordingly, "the statute will be enforced against some" voters MFV/VL helped or will help register. *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1164 (11th Cir. 2008); MFV Decl. ¶ 13; VL Decl. ¶¶ 9, 13. MFV/VL must divert resources away from mission-critical efforts to prevent these threats. MFV Decl. ¶¶ 5, 12, 14, 15, 19; VL Decl. ¶¶ 7, 11, 12, 19, 20, 23.

**II.  Counts I, II, and III allege cognizable constitutional claims.**

MFV/VL allege facts that, taken as true, allege claims that H.B. 2492 violates the right to vote, due process, and equal protection under any applicable framework. *See Boquist v. Courtney*, 32 F.4th 764, 773–74 (9th Cir. 2022). The Motion should be denied.

**A.  Legal standard.**

In this Circuit, challenges to state election laws imposing burdens on the right to vote have generally been evaluated using the *Anderson-Burdick* test. This is no "litmus-paper test" neatly separating "valid from invalid restrictions"; in each case, the Court must carefully examine the facts to weigh "the character and magnitude of [plaintiffs'] asserted injury to the rights protected," against "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson v. Celebrezze*, 460 U.S. 780,

---

³ The stage of this action also distinguishes *Friends of the Earth v. Sanderson Farms, Inc.*, 992 F.3d 939, 942–43 (9th Cir. 2021) (finding no standing after years of litigation and extended discovery); *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020) (post-trial); and *NAACP v. City of Kyle*, 626 F.3d 233, 238–39 (5th Cir. 2010) (post-trial). Standing "must be supported with the manner and degree of evidence required at" relevant stage; on a motion to dismiss, general factual allegations of injury traceable to defendants' conduct are sufficient. *Mecinas v. Hobbs*, 30 F.4th 890, 896–97 (9th Cir. 2022).

MFV PLAINTIFFS' OPPOSITION TO STATE'S CONSOLIDATED MTD

789 (1983). It "also must consider the extent to which those interests make it necessary to burden the plaintiff's rights." *Id*. In other words, *Anderson-Burdick* applies a "means-end fit framework." *Pub. Integrity All. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016).

Because this analysis is highly fact-intensive, *Anderson-Burdick* claims are generally not amenable to pre-discovery dismissal unless the burdens are truly *de minimis*. *See, e.g.*, *Soltysik v. Padilla*, 910 F.3d 438, 447, 450 (9th Cir. 2018) (reversing order granting dismissal as "premature": "without any factual record . . . we cannot say" the state's "justifications outweigh the constitutional burdens . . . as a matter of law"); *Mecinas*, 30 F.4th at 905 ("[T]he magnitude of the asserted injury . . . cannot be resolved on a motion to dismiss."). Where, as here, plaintiffs allege infringement on multiple rights, the burden is exacerbated. *See, e.g.*, *Yang v. Kosinski*, 960 F.3d 119, 130–34 (2d Cir. 2020) (holding burden substantial where law implicated rights to vote, due process, and association); *McLaughlin v. N.C. Bd. of Elections*, 65 F.3d 1215, 1221 (4th Cir. 1995) (finding law imposed severe burden because it "implicate[d] substantial voting, associational and expressive rights protected by the First and Fourteenth Amendments").[4]

**B.   MFV/VL sufficiently allege burdens to sustain each claim.**

*First*, MFV/VL allege that H.B. 2492 severely burdens the right to vote by denying impacted Arizonans that right entirely in presidential elections and by mail, threatening them with criminal investigation, imposing unjustified costs on new voters, and complicating an already convoluted registration process. *See* SAC ¶¶ 3, 62–69, 79; *see also Pub. Integrity All.*, 836 F.3d at 1024 n.2 (holding when evaluating severity of burdens, courts may consider "its impact on subgroups, for whom the burden, when considered in context, may be more severe"). The State's reliance on *Short v. Brown*, 893 F.3d 671 (9th

---

[4] In *Arizona Democratic Party v. Hobbs*, 18 F.4th 1179, 1195 (9th Cir. 2021), the Ninth Circuit considered a procedural due process claim under *Anderson-Burdick* that plaintiffs "d[id] not argue . . . differ[ed] in some material way from their [right to vote] claim," thus not addressing a case, like here, with distinct due process allegations, as Poder Latinx's opposition explains. Under either test, MFV/VL survive a motion to dismiss.

- 3 -

Cir. 2018), is thoroughly misplaced. *Short* involved a pilot program to send ballots to all California voters, offered first in a subset of counties. *Id*. at 674. The plaintiffs sought an injunction, arguing the program "dilute[d]" votes in the "disfavored" counties. *Id*. at 677. In rejecting the challenge, the Ninth Circuit emphasized the law did "not burden anyone's right to vote," and "access to the ballot" for voters outside the test counties was "exactly the same" as before. *Id*. The plaintiffs had "not even alleged . . . that the [law] w[ould] prevent anyone from voting," nor did they cite "any authority explaining how a law that makes it easier to vote" could be unconstitutional. *Id.* at 677–78. H.B. 2492 does not make it easier to vote, and MFV Plaintiffs plausibly allege it will prevent voters who could have previously voted by mail or in presidential elections from doing so *at all*.[5]

*Second*, distinct from their right to vote claim, MFV/VL allege the law violates due process by stripping current federal-form voters of the right to vote by mail without notice and an opportunity to cure. SAC ¶¶ 3, 63–65, 84–85. *See, e.g.*, *Greene v. Lindsey*, 456 U.S. 444, 449 (1982) (noting due process at a minimum requires notice and an opportunity to cure). That the Ninth Circuit has evaluated election law challenges based on different rights using *Anderson-Burdick* does not collapse those rights into one indistinguishable, amorphous right, nor does it insulate the voting context from having to comply with procedural due process, a right explicitly guaranteed by the Fourteenth Amendment. *See* U.S. const., amend. 14 ("No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."); *cf. Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) (holding if a "claim can be analyzed under an explicit textual source of rights in the Constitution, a court should not resort to" a more subjective standard). For each claim, the balancing of the injury's character and magnitude may differ, based on the *right at issue*.

---

[5] The State also cites *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), and *Gonzales v. Arizona*, 677 F.3d 383 (9th Cir. 2012), but both evaluated burdens *after* the record was developed. *See Crawford*, 553 U.S. at 187; *Gonzales*, 667 F.3d at 389. They provide no basis to find these plaintiffs will be unable to prove that H.B. 2492's burdens outweigh the State's proffered justifications for imposing them in this case or at this stage.

- 4 -

MFV PLAINTIFFS' OPPOSITION TO STATE'S CONSOLIDATED MTD

*See, e.g.*, *Democracy N.C. v. N.C. State Bd. of Elections*, 476 F. Supp. 3d 158, 225–29 (M.D.N.C. 2020) (separately evaluating procedural due process and right to vote claims); *Self Advoc. Sols. N.D. v. Jaeger*, 464 F. Supp. 3d 1039, 1051–53 (D.N.D. 2020) (same).

A protected liberty interest protected by procedural due process "may arise from an expectation or interest created by state laws or policies." *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012). Arizona has long conferred the right to vote by mail, A.R.S. § 16-541, creating precisely such an expectation. In fact, Arizona has conferred on its voters the right to vote by mail for so long that more than 30 years ago a federal district court found Arizona voters were entitled to procedural due process protections before their absentee ballots were disqualified. *Raetzel v. Parks/Bellemont Absentee Election Bd.*, 762 F. Supp. 1354, 1356–58 (D. Ariz. 1990). Other courts have similarly found due process protects the right to vote absentee in states that have conferred that right. *See, e.g.*, *Democracy N.C.*, 476 F. Supp. 3d at 227 ("[H]aving 'authorized the use of absentee ballots,' [the state] must afford appropriate due process protections . . . ."); *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1338 (N.D. Ga. 2018) (similar). The State argues that this liberty interest is constrained by the "mandatory language" that a voter provide DPOC, Mot. at 17, but this is a misstatement of the applicable precedent.[6] Moreover, it is only true prospectively; previously, voters did not need DPOC to vote by mail. "Once a state creates a liberty interest, it can't take it away without due process." *Marsh*, 680 F.3d at 1155.

*Third*, H.B. 2492 denies equal protection by unjustifiably treating similarly situated voters differently. SAC ¶¶ 89–90; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (holding equal protection requires "all persons similarly situated . . . be treated alike"); *Hobbs*, 18 F.4th at 1190 (noting burden may be heightened where allegations assert burden "falls disproportionately on a discrete group of voters"). Federal-form voters registering without DPOC will be permitted to vote in congressional elections, but state-

---

[6] Specifically, the "mandatory language" test for the creation of a liberty interest is a feature principally of prisoners' rights cases and has been abandoned by the Supreme Court in those circumstances. *See Sandin v. Conner*, 515 U.S. 472, 483–84 (1995).

- 5 -

MFV PLAINTIFFS' OPPOSITION TO STATE'S CONSOLIDATED MTD

form voters presenting the same documents will have their registration rejected entirely. H.B. 2492 also arbitrarily discriminates against federal-form voters on the Federal Only Voters List by prohibiting them from voting by mail or in presidential elections. Similarly situated eligible voters not on the List retain these rights. The State's only rationale—requiring more of state-form voters gives it more confidence they are citizens, Mot. at 18–19—neither explains the first distinction nor justifies the burdens of the second.

### C. The State's interests cannot justify the burdens on the rights alleged.

Separately and together, the burdens alleged are severe. But at a minimum, dismissal is inappropriate because Plaintiffs plausibly allege H.B. 2492 imposes burdens that are more than *de minimis*, and the State fails to show that even lesser burdens are justified by its purported interests in the law, or that it is necessary to advance those interests.

The State's conclusory assertion that its generalized interest in "securing its elections and maintaining voter confidence easily sustains" Plaintiffs' burdens cannot sustain dismissal. Mot. at 16. *Anderson-Burdick* requires the Court to carefully consider whether (1) the State's proffered interests are sufficiently weighty to justify H.B. 2492's burdens, *and* (2) there is a means-end fit between the State's proffered interests and H.B. 2492. *See supra* at Sec. II(A). The State makes *no effort* to explain how its asserted interests outweigh Plaintiffs' specific burdens, much less show a means-end fit. Instead, it claims this case is like *Crawford*. Mot. at 16. But courts routinely reject attempts to broadly analogize to *Crawford* at this stage. *See, e.g.*, *Mecinas*, 30 F.4th at 905; *Soltysik*, 910 F.3d at 447; *Veasey v. Perry*, 29 F. Supp. 3d 896, 915 (S.D. Tex. 2014). This is because, as *Crawford* emphasizes, *Anderson-Burdick* does not "neatly separate valid from invalid restrictions"; in each case, courts must "make the 'hard judgment' that our adversary system demands," based on specific facts. 553 U.S. at 190 (citing *Anderson*, 460 U.S. at 789–90). And, in *Crawford*, the Court found the state's interests sufficient *after* petitioners failed to produce evidence of their burdens *at summary judgment*. *Id.* at 187.

Neither of the out-of-circuit cases the State cites relieves it of the responsibility to

advance sufficiently weighty justifications for the burdens alleged, or to satisfy the means-fit test. *Frank v. Walker*, 768 F.3d 744 (7th Cir. 2014), did not hold that "*Anderson/Burdick* treats the State's interests as a 'legislative fact.'" Mot. at 16. It found only that "*whether a photo ID requirement promotes public confidence in the electoral system* [wa]s a 'legislative fact.'" *Frank*, 768 F.3d at 750 (emphasis added). And the holding in *Mays v. LaRose*, 951 F.3d 775, 789 (6th Cir. 2020), that "[n]o opinion from this court or the Supreme Court has ever limited the record that the State can build," is not relevant here, where the State moves to dismiss before any record-building. The State's failure to show a means-fit between H.B. 2492 and the interests it invokes, or explain how those interests justify the law's alleged burdens, is enough to deny its Motion. This is particularly true when Defendant Hobbs, who oversees the State's voter registration system, has admitted that "Arizona's early voting system is well tested and well established" and "there is no evidence of widespread fraud in Arizona's elections." Secretary Hobbs' Answer to MFV Plaintiffs' SAC ¶ 5, ECF No. 123 [hereinafter SOS].

### III. Count IV alleges a cognizable claim under the NVRA.

As set forth by the United States and DNC, MFV/VL properly allege NVRA claims. The State fails to address the NVRA violations alleged by MFV/VL, SAC ¶¶ 96, 97, and the Secretary admits the law's relevant provisions conflict with the NVRA. SOS ¶¶ 96, 97.

### IV. Count V alleges a cognizable claim under the Civil Rights Act.

The Civil Rights Act's Materiality Provision, 52 U.S.C. § 10101(a)(2)(B) ("MP"), prohibits "acting under color of law" to deny the right to vote because of an error or omission on a registration form that is immaterial to qualifications to vote. Plaintiffs allege H.B. 2492 violates this by forbidding voters from registering if they provide DPOC but fail to check a box indicating they are citizens or fail to list their birthplace on the state form, and prohibiting federal-form voters from voting in presidential elections or by mail absent DPOC. *See* SAC ¶¶ 102–05. The State first contends the MP has no private right of action; second, it argues the claim does not apply here. Both lack merit.

### A. Private plaintiffs may enforce the Materiality Provision.

The statutory text, legislative history, and Supreme Court precedent all support finding there is a private right of action to enforce the MP. The Ninth Circuit has not considered the question, but the Eleventh Circuit thoroughly rejected the arguments that the State makes here in *Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003).

The Court first asks "whether Congress intended to create a federal right." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). Section 10101(a)(2)(B)'s rights-creating language—"no person" "shall" deny an individual's right to vote—evinces clear congressional intent to create a private right of action: it directly parallels language in Title VI, 42 U.S.C. § 2000d, and Title IX, 20 U.S.C. § 1681, which the Supreme Court has held creates private rights of action. *Gonzaga*, 536 U.S. at 284 n.3 (pointing to the "right- or duty-creating language" of Titles VI and IX of "no person" and "shall"); *see also Schwier*, 340 F.3d at 1296; *La Unión del Pueblo Entero v. Abbott*, No. 5:21-cv-0844-XR, 2022 WL 3045657 at *29–30 (W.D. Tex. Aug. 2, 2022). Section 10101(a)(1) includes further rights-creating language, which unambiguously confers a personal right, stating: "*[a]ll citizens . . . who are otherwise qualified by law to vote . . . shall be entitled and allowed to vote at all such elections*." (emphasis added); *see also Planned Parenthood Ariz. Inc. v. Betlach*, 727 F.3d 960, 966 (9th Cir. 2013) ("While express use of the term individuals (or persons or similar terms) is not essential to finding a right for § 1983 purposes, usually such use is sufficient for that purpose." (quotations omitted)); *Watson v. Weeks*, 436 F.3d 1152, 1160–61 (9th Cir. 2006) (holding right existed to enforce statute due to mandatory language conferring benefits for "all individuals").

When a statute includes clear rights-conferring language, § 1983 private enforcement is presumed unless "Congress specifically foreclosed a remedy." *Gonzaga*, 536 U.S. at 284 n.4 (quotations omitted). The Court "should 'not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for deprivation of a federally secured right." *Watson*, 436 F.3d at 1161 (quoting *Golden State Transit Corp. v.*

*Los Angeles*, 493 U.S. 103, 107 (1989)). To overcome the presumption of a private right of action, the State must point to "express[]" statutory evidence or "a comprehensive enforcement scheme" incompatible with § 1983 enforcement. *Id.* at 1158–59. Whether Congress established a "more restrictive private remedy" "has been the dividing line" if a § 1983 action lies. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009) (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005)).

No "more restrictive private" enforcement scheme exists here. *Id.* The State points to the Attorney General's enforcement power, Mot. at 25–26, but that is compatible with private enforcement. *See Gonzaga*, 536 U.S. at 284 n.4. Here, as in *Fitzgerald*—which held Title IX enforceable through § 1983—aggrieved parties can "file directly in court" without preconditions or exhaustion requirements. *Id.* at 255; 52 U.S.C. § 10101(d). The Attorney General's enforcement is not mandatory, 52 U.S.C. § 10101(c), and the legislative history shows Congress did not intend to preclude private enforcement. *See* H.R. Rep. No. 85-291 (1957) (The bill's purpose was "to provide means of *further* securing and protecting [individuals'] civil rights.") (emphasis added). The Attorney General's contemporaneous testimony shows this: "Under the laws amended [here], private people will retain the right they have now to sue." *Civil Rights Act of 1957: Hearings on S. 83*, 85th Cong. 73, 203, 1; 60–61, 67–73 (1957).[7]

To support its contrary position, the State relies primarily on *Hayden v. Pataki*, No. 00 Civ. 8586 (LMM), 2004 WL 1335921 (S.D.N.Y. June 14, 2004), which relies on *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000), amongst other conclusory cases. But *McKay* is flatly incorrect: it is entirely based on a 1978 Kansas case whose analysis runs

---

[7] Beyond § 1983, the Materiality Provision itself also demonstrates "an intent to create not just a private right but also a private remedy," *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), as evidenced by section 10101(d). *See, e.g.*, *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 644 (2002) (provision allowing "any party aggrieved" to "bring an action" "reads like the conferral of a private right of action"); *see also* Brief for the U.S. as Amicus Curiae, *Migliori v. Lehigh Cnty. Bd. of Elections*, 36 F.4th 153 (3rd Cir. 2022) (No. 45), 2022 WL 1045078 at 7–21.

- 9 -

MFV PLAINTIFFS' OPPOSITION TO STATE'S CONSOLIDATED MTD

afoul of statutory language and Supreme Court precedent. *Schwier*, 340 F.3d at 1294–95. The State also cites *Northeast Ohio Coalition for Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016), ignoring it was bound to follow *McKay* and conducted no independent analysis. *See id.* Otherwise, the State cites one other unpublished district court case, Mot. at 26, which contains little analysis. None of these cases rebut the Eleventh Circuits' well-supported approach.

### B. MFV/VL sufficiently plead a Materiality Provision claim.

For the reasons set forth by Poder Latinx and the United States, the State's argument that the MP only applies to executive action beyond state law must be rejected. Next, the State claims that, because H.B. 2492 includes notice and cure provisions, it cannot violate the MP. Mot. at 27–28. Courts have properly rejected the argument that cure opportunities solve MP violations. *See, e.g.*, *Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1271 (W.D. Wash. Aug. 1, 2006); *La Unión*, 2022 WL 1651215 at *21 (May 24, 2022).[8] Lastly, the State claims the information demanded *is* material. Mot. at 28–29. Not so. H.B. 2492 disenfranchises Arizonans who fail to check a box regarding citizenship or state their birthplace. Birthplace is never material to a voter's qualifications. And applicants *already* provide citizenship information (DPOC for state-form, citizenship attestation for federal-form); the new requirements are duplicative and immaterial. SOS ¶ 102 (admitting same regarding checkbox); *League of Women Voters of Ark. v. Thurston*, No. 5:20-CV-05174, 2021 WL 5312640 at *4 (W.D. Ark. Nov. 15, 2021).[9] The same is true for registered voters now required to provide DPOC: their citizenship was *previously* otherwise verified. *See, e.g.*, *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1309 (N.D. Ga. 2018).

---

[8] The cure opportunities the State references here deal solely with new registrants. This is separate from the provision of H.B. 2492 discussed earlier, which strips current federal form registrants of rights without notice or an opportunity to cure.

[9] *Diaz v. Cobb*, 435 F. Supp. 2d 1206 (S.D. Fla. 2006), is not analogous. There the court found checkboxes pertaining to specific qualifications were material because the voter oath there was a "general affirmation of eligibility." *Id.* at 1212–13. Here, the duplicative questions ask for the *same information*—i.e., information pertaining to citizenship.

| | |
|---|---|
| Dated: October 17, 2022 | Respectfully submitted, |
| | *s/ Daniel A. Arellano* |
| | Roy Herrera (Bar No. 032901) |
| | Daniel A. Arellano (Bar. No. 032304) |
| | Jillian L. Andrews (Bar No. 034611) |
| | **HERRERA ARELLANO LLP** |
| | 530 East McDowell Road |
| | Suite 107-150 |
| | Phoenix, Arizona 85004-1500 |
| | Phone: (602) 567-4820 |
| | roy@ha-firm.com |
| | daniel@ha-firm.com |
| | jillian@ha-firm.com |
| | |
| | Marc E. Elias* |
| | Elisabeth C. Frost* |
| | John M. Geise* |
| | Mollie DiBrell* |
| | Alexander F. Atkins* |
| | Daniela Lorenzo* |
| | **ELIAS LAW GROUP LLP** |
| | 10 G Street NE, Suite 600 |
| | Washington, DC 20002 |
| | Phone: (202) 968-4513 |
| | Facsimile: (202) 968-4498 |
| | melias@elias.law |
| | efrost@elias.law |
| | jgeise@elias.law |
| | mdibrell@elias.law |
| | aatkins@elias.law |
| | dlorenzo@elias.law |
| | |
| | *Attorneys for Plaintiffs Mi Familia Vota and Voto Latino* |
| | * Admitted Pro Hac Vice |

MFV PLAINTIFFS' OPPOSITION TO STATE'S CONSOLIDATED MTD