David B. Rosenbaum, 009819
Joshua J. Messer, 035101
OSBORN MALEDON, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
jmesser@omlaw.com

*Additional Counsel Listed on Signature Page*

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al.,<br><br>    Plaintiffs,<br>v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State, et al.,<br><br>    Defendants.<br>Living United for Change in Arizona, et al.,<br><br>    Plaintiffs<br>v.<br><br>Adrian Fontes,<br><br>    Defendant, and<br><br>State of Arizona, et al.,<br><br>    Intervenor-Defendants.<br>Poder Latinx, et al.<br><br>    Plaintiffs,<br>v.<br><br>Adrian Fontes, et al.,<br><br>    Defendants.<br>United States of America,<br><br>    Plaintiff, | No. 2:22-cv-00509-PHX-SRB<br>(Consolidated)<br><br>**RESPONSE BY PLAINTIFFS TOHONO O'ODHAM NATION, GILA RIVER INDIAN COMMUNITY, KEANU STEVENS, ALANNA SIQUIEROS, AND LADONNA JACKET TO DEFENDANTS ATTORNEY GENERAL MARK BRNOVICH AND STATE OF ARIZONA'S MOTION TO DISMISS UNDER RULES 12(B)(1) AND (B)(6)** |

| | |
|---|---|
| v. | |
| State of Arizona, et al., | |
| Defendants. | |
| Democratic National Committee, et al., | |
| Plaintiffs, | |
| v. | |
| Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., | |
| Defendants, and | |
| Republican National Committee, | |
| Intervenor-Defendant. | |
| Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition, | |
| Plaintiff, | |
| v. | |
| Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., | |
| Defendants. | |
| Promise Arizona, et al., | |
| Plaintiffs, | |
| v. | |
| Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., | |
| Defendants. | |
| Tohono O'odham Nation, Gila River Indian Community, Keanu Stevens, Alanna Siquieros, and LaDonna Jacket, | |
| Plaintiffs, | |
| v. | |
| Mark Brnovich in his official capacity as Attorney General of Arizona; Adrian Fontes, in his official capacity as Arizona Secretary of State; Dana Lewis in her | |

official capacity as Pinal County Recorder;
Gabriella Cázares-Kelly in her official
capacity as Pima County Recorder;
Stephen Richer in his official capacity as
Maricopa County Recorder;
Michael Sample in his official capacity as
Navajo County Recorder,

Defendants.

Throughout Arizona, and disproportionately on Native American reservations, there are homes with no residential addresses. The widespread lack of residential addressing of Native homes results in the denial of basic services such as home mail delivery and reliable emergency services. Now, under H.R. 2492, 55th Leg. 2d Reg. Sess. (Ariz. 2022) ("HB 2492"), Native Americans living on reservations in Arizona will also be denied their fundamental right to vote. This is because HB 2492 requires proof of a residential address even though the legislators that passed the bill knew that Native Americans – American citizens who are otherwise eligible to vote – do not possess these addresses.

"Tribal Plaintiffs," as referred to collectively herein, are the Tohono O'odham Nation and the Gila River Indian Community ("Tribal Nation Plaintiffs") and Hopi Tribal Member LaDonna Jacket and Tohono O'odham Tribal Members Keanu Stevens and Alanna Siquieros ("Tribal Member Plaintiffs"). Tribal Nation Plaintiffs are challenging HB 2492 to protect the health and welfare of their members and their own political power, which is imperiled by voting barriers that disproportionately disenfranchise their members. Tribal Member Plaintiffs are challenging HB 2492 on their own behalf, as individuals who live in homes that do not have residential addresses and therefore are unable to produce the documentary proof of residence that HB 2492 requires of them to register to vote.

Tribal Plaintiffs allege HB 2492's proof of residence requirement violates the National Voter Registration Act ("NVRA") by requiring registrants for federal elections to provide documentation over and above that required by the federal voter registration form. In addition, Tribal Member Plaintiffs LaDonna Jacket, Keanu Steven, Alanna Siquieros, and Plaintiff Tohono O'odham Nation allege that, because the homes in their communities do not have addresses, the proof of residence requirement places a severe and unjustifiable burden on their and their members' fundamental right to vote guaranteed by the First and Fourteenth Amendments to the United States Constitution.

1

In the portion of their brief directed specifically at Tribal Plaintiffs' case, Defendants raise a single argument: that Tribal Plaintiffs lack statutory standing to bring their NVRA claim because they did not provide the state with prior notice. However, Tribal Nation Plaintiffs first filed their complaint within the 30-day period prior to a federal election, when prior notice is not required under the NVRA. Furthermore, Defendants had already received – and ignored – notice of the NVRA violation alleged by Tribal Nation Plaintiffs through plaintiffs in the consolidated cases, demonstrating that further notice would have been futile and was therefore unnecessary.

Defendants adopt wholesale their motion to dismiss in the other consolidated cases, without explaining how that motion's arguments might apply to Tribal Plaintiffs' allegations. Tribal Plaintiffs will address those aspects of Defendants other motion that have some relationship – however tangential – to Tribal Plaintiffs' claims.[1] First, although Defendants' object to standing and ripeness on grounds wholly inapplicable to the Amended Complaint,[2] Tribal Plaintiffs will demonstrate the basis for both. Second, Tribal Plaintiffs will demonstrate that Defendants' effort to resolve the fact-specific *Anderson-Burdick* inquiry on a motion to dismiss is improper and, in any case, that Tribal Plaintiffs defeat Defendants' motion because they plausibly alleged 1) that the documentary proof of residence requirement presents a severe burden – in effect a complete barrier – to exercising their fundamental right to vote and 2) that Defendants have offered no explanation for how this requirement

---

[1] Defendants object, in their other motion, to equal protection, due process, and Civil Rights Act claims included in the consolidated case. As these claims are not included in Plaintiff's case, they are not addressed here.

[2] Defendants' arguments as to lack of representational standing and failure to join county recorders are not applicable to Tribal Plaintiffs case, as Tribal Plaintiffs do not rely on representational standing and have named the county recorders as defendants. Likewise, Defendants' arguments as to lack of ripeness are irrelevant to Plaintiffs' Amended Complaint, as Plaintiffs do not make any claims addressed in the ripeness section of Defendants' brief.

2

advances HB 2492's asserted objective of preventing non-citizens from voting. Finally, as to Defendants' argument directed at the merits of the NVRA claim, Tribal Plaintiffs demonstrate that Defendants are simply wrong that HB 2492 applies only to Presidential elections. In violation of the NVRA, the state law requires everyone who registers to vote in Arizona – including those who are registering for congressional elections – to meet the proof of residence requirement.

Defendants have failed to carry their burden and their motion to dismiss should be denied.

## ARGUMENT

**I.        Legal Standard.**

Defendants move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion to dismiss challenges the court's subject matter jurisdiction to hear the claims at issue. Fed. R. Civ. P. 12(b)(1). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197 (1975)). "As a general matter, federal courts have subject matter jurisdiction over civil actions 'arising under the Constitution, laws, or treaties of the United States.'" *U.S. v. Alisal Water Corp.*, 431 F.3d 643, 650 (9th Cir. 2005) (quoting 28 U.S.C. § 1331).

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" When analyzing a complaint under Rule 12(b)(6), the Court must "assume all factual allegations are true and construe them in the light most favorable to the plaintiff[s]." *Frudden v. Pilling*, 742 F.3d 1199, 1202 (9th Cir. 2014) (citation omitted). Courts also presume that the general allegations in the complaint embrace those specific facts necessary to support

3

the claims. *See Syed v. M-I, LLC*, 853 F.3d 492, 499, n.4 (9th Cir. 2017). If the complaint pleads "enough facts to state a claim to relief that is plausible on its face," it will survive a motion to dismiss. *Williams v. Alhambra Sch. Dist. No. 68*, 234 F. Supp. 3d 971, 977 (D. Ariz. 2017) (citation and internal quotations omitted). If the Court finds that a claim is deficiently pled, plaintiffs should be granted leave to amend their complaint "unless it is clear the complaint cannot be saved by any amendment." *Steadfast Ins. Co. v. Nat'l Fire & Marine Ins. Co.*, No. CIV. 13-00724-PHX-PG, 2013 WL 6709956, at *5 (D. Ariz. Dec. 19, 2013); *see also* Fed. R. Civ. P.15(a)(2) (leave to amend should be "freely" given "when justice so requires").

**II.     Additional Notice Was Not Required for Tribal Plaintiffs to Have Standing to Bring their NVRA Claim.**

The NVRA creates a private right of action for "[a] person who is aggrieved" by a state's violation of the Act. 52 U.S.C. § 20510(b)(1). This right of action generally is subject to a requirement that aggrieved parties provide defendants with notice of the violation prior to filing suit. However, "[i]f the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice . . . before bringing a civil action . . . ." 52 U.S.C. § 20510(b)(3). Thus, "[a] plaintiff can satisfy the NVRA's notice provision by plausibly alleging that an ongoing, systematic violation is occurring at the time the notice is sent or, if no notice is sent, when the complaint is filed within 30 days of a federal election." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1044 (9th Cir. 2015).

Tribal Nation Plaintiffs first filed their complaint on November 7, 2022— within 30 days of the federal congressional elections held on November 8, 2022— alleging that HB 2492's documentary proof of residence requirement violates the NVRA's mandate that states "accept and use" the federal voter registration form promulgated by the United States Election Assistance Commission. 52 U.S.C. § 20505(a)(1). In support of their NVRA claim, Tribal Nation Plaintiffs alleged that the

4

federal voter registration form does not require proof of residence, Complaint, ¶ 42; that HB 2492 requires voter registrants to provide proof of residence when registering using the federal form, *id.* ¶ 48; and that HB 2492 therefore violates the NVRA's "accept and use" mandate by requiring documentation over and above what is required by the federal form, *id.* ¶ 52.

Defendants argue that these violations were not "ongoing" because HB 2492 was not in effect at the time the complaint was filed. But this interpretation of "ongoing" would effectively render voter registration laws immune from pre-enforcement challenge under the NVRA and would contradict long-held Supreme Court precedent recognizing plaintiffs' ability to bring pre-enforcement challenges to laws where they allege a "credible threat" that a law will be enforced. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159-60 (2014) (quoting *Babbitt v. Farm Workers*, 442 U. S. 289, 298, 99 S.Ct. 2301 (1979)).

Even if the violation is not found to have been "ongoing" at the time the complaint was filed, providing Defendants additional pre-suit notice would have been futile given that they had already ignored prior notice of the same alleged violation. Defendants received notice of HB 2492's violations of the NVRA multiple times through the consolidated cases. Most notably, Defendants were notified of the specific violation alleged by Tribal Plaintiffs at least as early as April 6, 2022, with the notice letter sent on behalf of Living United for Change (LUCHA), League of United Latin American Citizens (LULAC), Arizona Students' Association (ASA), and ARDC Action (collectively the "LUCHA Plaintiffs"). EXHIBIT A. This letter notified Defendants that "under the NVRA, all states must 'accept and use' the Federal [voter registration] Form, which only requires attestation of . . . residence and does not require documentary proof of [residence]" and that "HB 2492 violates . . . the NVRA by requiring that all eligible Arizona voters provide documentary proof of residence[.]" *Id*. at 1-2. Defendants were likewise notified of the violation when the

LUCHA Plaintiffs filed their Complaint and First Amended Complaint on March 31 and July 18, 2022, respectively. See Complaint for Declaratory and Injunctive Relief, 2:22-cv-00519 (Doc. 1); see also First Amended Complaint for Declaratory and Injunctive Relief, 2:22-cv-00509 (Doc. 67).

Dismissing Tribal Plaintiffs' NVRA claim now for failure to provide additional pro forma notice would subvert the purpose of the notice provision, which is to give an offending state "an opportunity to attempt compliance [with the NVRA's mandates] before facing litigation." *Scott v. Schedler*, 771 F.3d 831, 836 (5th Cir. 2014); *see also Ass'n of Cmty. Orgs. for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997) (same). Recognizing that purpose, courts have held NVRA plaintiffs are not required to provide notice where the offending state had already ignored prior notice. *See Miller*, 129 F. 3d. at 838.

In *Miller*, after ACORN and individual plaintiffs had filed suit against the State of Michigan, another organization, Project Vote, intervened as plaintiffs in the lawsuit. Separate suits were also filed by the United States and other plaintiffs and the separate suits were then consolidated with the original action. There, as here, state defendants sought to dismiss Project Vote and the other plaintiffs in the consolidated cases because they did not separately notify the state of the NVRA violations that formed the basis for ACORN's original suit. The Sixth Circuit affirmed the district court's ruling denying Michigan's motion to dismiss stating that "requiring these plaintiffs to file individual notice where Michigan had already ignored ACORN's actual notice amounts to requiring performance of futile acts." *Miller,* 129 F. 3d at 838.

Despite being on notice of the violation for over nine months now, Defendants have not taken nor even attempted to take any steps to comply with the NVRA's prohibition against the proof of residence requirement in HB 2492. To the contrary, Defendants have focused on defending the requirement, filing a motion to dismiss all

of the consolidated cases, including the claim that the proof of residence requirement violates the NVRA. Requiring Tribal Plaintiffs in the instant case to provide further pro forma "notice" would amount to requiring the performance of futile acts.

**III.     Tribal Member Plaintiffs have Article III Standing to Bring their Constitutional Claim.**

While Defendants' only cursorily challenge Article III standing, Tribal Member Plaintiffs' Article III standing is sufficiently alleged under controlling precedent. To establish Article III standing plaintiffs must plausibly allege that: "[they] (1) ha[ve] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant[s]; and (3) [it] is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Hall v. Norton*, 266 F.3d 969, 975 (9th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)).

Each of the Tribal Member Plaintiffs has alleged concrete and particularized injuries that are traceable to Defendants and redressable by this Court. Because of the systemic lack of standard addressing on reservations, Tribal Member Plaintiffs cannot comply with the proof of residence requirement. Doc. 21 at ¶¶ 40, 45, 51, 52 ("Amended Complaint"). Indeed, Tribal Members Plaintiffs Alanna Siquieros, Keanu Stevens, and LaDonna Jacket each noted that they do not "have identification or any other documents that contain an address" for their home and "it would be impossible" for each of them to obtain the needed documentation. Amended Complaint at ¶¶ 15, 18, 21, 41, 52, 53. Unable to meet the proof of residence requirement, Tribal Member Plaintiffs will face complete denial of their ability to register to vote.

Defendants' arguments on Article III standing do not apply to Tribal Member Plaintiffs' and Plaintiff Tohono O'odham Nation's constitutional claim. Defendants

7

incorporate their earlier contention that none of the private plaintiffs in the consolidated cases attempted to name individual affected members and that they failed to adequately allege representational standing. State's Consolidated Motion to Dismiss, 2:22-cv-00509 (Doc. 127), 9. Defendants further rely on their previous assertion that plaintiffs in the consolidated cases failed to establish traceability and redressability where they failed to name as Defendants the county recorders responsible for administering the challenged voter registration requirements. *Id*. at 11. Defendants' arguments are inapplicable to Tribal Plaintiffs' Amended Complaint, however, which names three affected individuals as plaintiffs as well as two sovereign Tribes, and which includes as Defendants the four County Recorders responsible for administering voter registration in the counties where Plaintiff Tribal Members and members of the Tohono O'odham Nation reside. *See generally* Amended Complaint.

**IV. Tribal Nation Plaintiffs Have Standing to Bring their NVRA and Constitutional Claims.**

Tribal Nation Plaintiffs have standing because there will be direct harm to Tribal Nation Plaintiffs, who "like states, are afforded 'special solicitude in our standing analysis.'" *Mashantucket Pequot Tribe v. Town of Ledyard*, 722 F.3d 457, 463 (2d Cir. 2013) (citation omitted). The Tohono O'odham Nation covers 2.8 million acres of rural desert territory and a large majority of Tribal members that live on the reservation live in homes without a standard residential address. Amended Complaint at ¶ 36. Gila River likewise has a very large land base, and a majority of the members who live on the reservation do not have identifying documents that include a physical address. Amended Complaint at ¶ 44. Under the proof of residence requirement – a state government requirement that is not and has never been necessary to accurately administer voter registration – Tribal Nation Plaintiffs will be forced to divert government revenue and resources from other essential functions to help their members meet the proof of residence requirement or allow their members to be

disenfranchised. Not only is this an affront to Tribal sovereignty, but it forces Tribal Plaintiffs with limited budgets to make decisions on what programs to cut. These are direct harms to the Tribal Nation Plaintiffs' sovereignty and revenue as a result of HB 2492. *Mashantucket Pequot Tribe*, 722 F.3d at 463 (finding direct injury to Tribe where state regulation interfered with sovereign right to self-government); *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1231 (11th Cir. 2000) (same); *c.f. Wyoming v. Oklahoma*, 502 U.S. 437, 448, (1992) (finding direct injury to sovereign in the form of loss of revenue).

The Tribal Nation Plaintiffs also have standing as *parens patriae*. "'Parens patriae' standing allows a sovereign to bring suit on behalf of its citizens when the sovereign 'allege[s] injury to a sufficiently substantial segment of its population,' 'articulate[s] an interest apart from the interests of particular private parties,' and 'express[es] a quasi-sovereign interest.'" *Table Bluff Rsrv. (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez ("Snapp")*, 458 U.S. 592, 607, 102, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982)). Quasi-sovereign interests generally fall into two categories: 1) an "interest in the health and well-being – both physical and economic – of its residents in general[;]" and 2) an "interest in not being discriminatorily denied its rightful status within the federal system." *Snapp*, 458 U.S. at 607.

Both quasi-sovereign interests are injured by HB 2492. First, the harm to Tribal Nation Plaintiffs' members' voting rights constitutes harm to their general well-being. Through voting, members of Tribal Nation Plaintiffs can advocate for health needs, improved infrastructure, and representation that can respond to a whole host of issues. Indeed, voting rights are central to physical and economic well-being of all citizens. *See Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (finding that the right to vote is "a fundamental political right, because [it is] preservative of all rights."). Additionally, Tribal Nation Plaintiffs own interest in the federal system is

9

endangered when a substantial portion of their population is discriminatorily denied the right to vote and disenfranchised. Amended Complaint at ¶¶ 10, 13. Only through the voting strength of its members can the Tribal Nation Plaintiffs advance policies in their interest and gain representation responsive and respectful to tribal sovereignty and their needs. Reflecting this, courts routinely find Tribes have standing when they seek to vindicate their tribal members' voting rights as Tohono O'odham and Gila River do here. *See Rosebud Sioux Tribe v. Barnett*, 603 F. Supp. 3d 783, 790 (D.S.D. May 17, 2022) (declaring, in an NVRA case, "the Tribes seek to vindicate the voting rights of their members. It is their prerogative to do so."); *Spirit Lake Tribe v. Jaeger*, No. 1:18-cv-222, 2020 WL 625279, at *4 (D.N.D. Feb. 10, 2020) (finding Tribe had standing to challenge North Dakota voter ID law requiring a residential street address); *Montana Democratic Party, et. al v. Jacobsen*, D.V. 21-0451 Order Granting Plaintiffs' Motions for Preliminary Injunctions (Montana 13th Judicial District Court April 6, 2022) (finding, in vote denial case, "Tribal Plaintiffs have alleged injury to a sufficient quasi-sovereign interest, specifically that of protecting the constitutional rights of their members which relates to their health and well-being.").

In any event, only one plaintiff need establish standing to maintain an action, which has amply been demonstrated here. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019).

**V.    Tribal Plaintiffs' unconstitutional burden claim is plausible.**

Tribal Plaintiffs adequately allege that that the proof of residence requirement imposes an unconstitutional burden on the voting rights of Tribal Member Plaintiffs and members of Plaintiff Tohono O'odham Nation under the *Anderson-Burdick* framework—a fact-specific inquiry that "cannot be resolved" on a motion to dismiss. *Mecinas v. Hobbs*, 30 F. 4th 890, 905 (9th Cir. 2022). To resolve the inquiry, the Court must make a fact-specific determination of where on the sliding-scale

1  delineated by *Anderson-Burdick* and its progeny, the severity of the burden on voters
2  falls and whether Defendants' justification of the need for the burden is sufficient
3  given that severity. "[R]egulations imposing *severe burdens* on plaintiffs' rights must
4  be narrowly tailored and advance a compelling state interest." *Angle v. Miller*, 673
5  F.3d 1122, 1132 (9th Cir. 2012) (emphasis in original) (citation omitted). Even lesser
6  burdens on the right to vote "require an assessment of whether alternative methods
7  would advance the proffered governmental interests." *Dudum v. Arntz*, 640 F.3d 1098,
8  1114 n.27 (9th Cir. 2011); *see also Soltysik v. Padilla*, 910 F.3d 438, 445 (9th Cir.
9  2018) (quoting same).

10      Assuming all of the factual allegations in the Amended Complaint as true and
11  construing them in the light most favorable to Tribal Plaintiffs, *Frudden*, 742 F.3d at
12  1202, the Tribal Plaintiffs' claim is clearly plausible. The Amended Complaint shows
13  that tribal members, including the Tribal Member Plaintiffs, reside in homes that do
14  not have a traditional residential address and thus will be wholly unable to satisfy the
15  proof of residence requirement and register to vote and cast their ballot. Amended
16  Complaint at ¶ 57. Indeed, homes on Native American reservations in Arizona are
17  significantly more likely to lack a physical address than homes located on non-Tribal
18  land. *Id.* at ¶ 27. Tribal Member Plaintiffs Alanna Siquieros, Keanu Stevens, and
19  LaDonna Jacket each allege that they do not "have identification or any other
20  documents that contain an address" for their home, and "it would be impossible" for
21  each of them to obtain the needed documentation. *Id.* at ¶¶ 15, 18, 21, 41, 52, 53.
22  Unable to meet HB 2492's proof of residence requirement, Tribal Plaintiffs face
23  complete denial of the right to vote.

24      To prevail on this part of their motion, Defendants must demonstrate how
25  Tribal Plaintiffs Amended Complaint, generously read toward Tribal Plaintiffs,
26  supports the notion that they can justify the burden placed on voting rights. Falling
27  short of their burden, Defendants have failed to offer any argument for how requiring
28

documentary proof of location of residence from voter registrants is justified by any legitimate state interest, let alone is the least restrictive means of achieving one.

*Mecinas* cautions against engaging in the fact-specific inquiry implicit in Defendants' consolidated motion to dismiss, without the benefit of discovery. *See* 30 F. 4th at 905. Instead, courts are to presume that the general allegations in the complaint embrace those specific facts necessary to support the claims asserted. *See Syed*, 853 F.3d at 499, n.4. Accordingly, Defendants' effort to dismiss Tribal Plaintiffs' constitutional claim should therefore be rejected.

**VI.     Tribal Plaintiffs' NVRA Claim is Plausible.**

Defendants argue that the NVRA cannot constitutionally apply to Presidential elections, and that this Court therefore should read the law to apply only to congressional elections. Even if their novel argument had merit (it does not for the reasons articulated by the Department of Justice and the other plaintiffs in the consolidated cases, *see* United States' Response to Motion to Dismiss, (Doc. 152)), HB 2492 would still be preempted under the NVRA as to congressional elections. The proof of residence requirement plainly applies to all voter registration applicants, including those using the federal voter registration form. Specifically, HB 2492 provides that "a person who registers to vote shall provide an identifying document that establishes proof of location of residence," without specifying whether the person registers using the state or federal form. HB 2492, § 5. By requiring a registrant to provide more than is required by the federal form to become registered to vote in federal elections, HB 2492 directly violates and is preempted by the NVRA.

**VII.    Tribal Plaintiffs' Claims are Ripe for Adjudication by this Court.**

Finally, Defendants' arguments on ripeness do not apply to Tribal Plaintiffs' claims. In the consolidated motion's section on ripeness, Defendants argue that the following claims alleged by plaintiffs in the consolidated cases are unripe:

- Claims against the "Citizenship Question," as defined by Defendants;

12

- Claims against the "Birthplace Requirement," as defined by Defendants;
- Claims encompassing the "Database Allegations," as defined by Defendants; and
- A claim alleging racial discrimination under section 2 of the Voting Rights Act.

Tribal Plaintiffs' Amended Complaint does not include these claims.

Moreover, Tribal Plaintiffs' claims are demonstrably ripe under well-established precedent. Ripeness has two components: constitutional and prudential ripeness. *In re Colman*, 560 F.3d 1000, 1004-05 (9th Cir. 2009) (citing *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc)). The constitutional component of the inquiry is similar in scope to the injury-in-fact analysis of Article III standing. It requires that the injury be "definite and concrete, not hypothetical or abstract," and that the plaintiff face "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement[.]" *Thomas*, 220 F.3d at 1138 (citation omitted). "In evaluating the prudential aspects of ripeness, our analysis is guided by two overarching considerations: the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. at 1141 (citation omitted). "The Supreme Court has long since held that where the enforcement of a statute is certain, a preenforcement challenge will not be rejected on ripeness grounds." *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1164 (11th Cir. 2008) (citing *Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974)).

The injuries to Tribal Plaintiffs' voting rights are concrete, definite, and fit for judicial review. The operation and enforcement of the proof of residence requirement injures Tribal Plaintiffs' right to register to vote using the Federal Form as provided by the NVRA, without additional barriers imposed by the state. It also injures the constitutional right of Tribal Plaintiffs to participate in elections free from severe and

13

undue burdens. The hardship to the Tribal Plaintiffs if the Court declines to address the matter is that they will be denied their right to vote, which courts have long recognized as fundamental. *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) ("There is no right more basic in our democracy than the right to participate in electing our political leaders."); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("voting is of the most fundamental significance under our constitutional structure.") (citation omitted); *Reynold v. Sims*, 377 U.S. 533, 562 (1964) ("Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."). Defendants have not objected specifically to the ripeness of Tribal Plaintiffs' claims, and any ripeness challenge would fail.

**VIII. Conclusion**

Defendants have failed to carry their burden on a motion to dismiss. Tribal Plaintiffs' standing and the ripeness of their claims are plainly established under the law and their Amended Complaint plausibly alleges claims under the NVRA and the First and Fourteenth Amendments to the United States Constitution. For the foregoing reasons, Tribal Plaintiffs respectfully request this Court deny Defendants' motion (Doc. 197). If the Court finds any of Tribal Plaintiffs' claims to be inadequately pled, Tribal Plaintiffs request the opportunity to amend their First Amended Complaint to cure any deficiencies. *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1167 (9th Cir. 2022) (noting that a court should grant leave to amend even if a request is not made).

DATED this 9th day of February, 2023.

OSBORN MALEDON, P.A.

By   s/David B. Rosenbaum
David B. Rosenbaum
AZ No. 009819
Joshua J. Messer
AZ No. 035101

14

2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
jmesser@omlaw.com

GILA RIVER INDIAN COMMUNITY
Thomas L. Murphy
AZ No. 022953
Javier G. Ramos
AZ No. 017442
Post Office Box 97
Sacaton, Arizona 85147
(520) 562-9760
thomas.murphy@gric.nsn.us
javier.ramos@gric.nsn.us
*Representing Gila River Indian Community Only*

NATIVE AMERICAN RIGHTS FUND
Allison A. Neswood*
CO No. 49846
neswood@narf.org
Michael S. Carter
AZ No. 028704, OK No. 31961
carter@narf.org
Matthew Campbell*
NM No. 138207, CO No. 40808
mcampbell@narf.org
Jacqueline D. DeLeon*
CA No. 288192
jdeleon@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80301
(303) 447-8760 (main)

Samantha B. Kelty
AZ No. 024110, TX No. 24085074
kelty@narf.org
NATIVE AMERICAN RIGHTS FUND
950 F Street NW, Suite 1050,
Washington, D.C. 20004
(202) 785-4166 (direct)

Ezra Rosenberg*
DC No. 360927, NJ No. 012671974
Jim Tucker**
AZ No. 019341
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900

15

Washington, DC 20005
(202) 662-8600 (main)
erosenberg@lawyerscommittee.org
jtucker@lawyerscommittee.org

TOHONO O'ODHAM NATION
Howard M. Shanker (AZ Bar 015547)
Attorney General, Tohono O'odham Nation
Marissa L. Sites (AZ Bar 027390)
Assistant Attorney General, Tohono O'odham Nation
P.O. Box 830
Sells, Arizona 85634
(520) 383-3410
Howard.Shanker@tonation-nsn.gov
Marissa.Sites@tonation-nsn.gov
*Representing Tohono O'odham Nation Only*

*Pro Hac Vice Forthcoming*
*\*\*Admitted in Arizona and Nevada only. Practice limited to matters before federal courts.*

Attorneys for Plaintiffs