Kevin E. O'Malley (Bar No. 006420)
Hannah H. Porter (Bar No. 029842)
Ashley E. Fitzgibbons (Bar No. 036295)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
kevin.omalley@gknet.com
hannah.porter@gknet.com
ashley.fitzgibbons@gknet.com
*Attorneys for Proposed Intervenor-Defendants Speaker Toma and President Petersen*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota,<br><br>    Plaintiff,<br><br>v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State, et al.,<br><br>    Defendant.<br><br>AND CONSOLIDATED CASES | No. 2:22-cv-00509-SRB (Lead)<br><br>**SPEAKER OF THE HOUSE BEN TOMA AND SENATE PRESIDENT WARREN PETERSEN'S MOTION TO INTERVENE AS DEFENDANTS** |

Pursuant to Fed. R. Civ. P. 24, Proposed Intervenor-Defendants Ben Toma, Speaker of the Arizona House of Representatives, and Warren Petersen, President of the Arizona Senate (the "Speaker" and "President," respectively) move to intervene as defendants in this consolidated action.

Counsel for Defendants Attorney General Kris Mayes and the State of Arizona and counsel for Intervenor-Defendant Republican National Committee ("RNC") have indicated that they do not oppose the filing of this motion and consent to the Speaker and President's participation in this action as Intervenor-Defendants.

Arizona law recognizes that the Speaker and President have a unique interest in defending the constitutionality of laws duly enacted by the Arizona Legislature and gives them authority to intervene and file briefs in any case challenging the constitutionality of state laws. *See* A.R.S. § 12-1841. Because it appears that Attorney General Mayes may not fully defend the constitutionality of the two state statutes at issue in this case and thus will not adequately represent the Speaker and President's interests, the Speaker and President should be allowed to intervene.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

This is a consolidated case which involves eight matters brought by the United States of America as well as numerous private entities, such as Mi Familia Vota, Promise Arizona, and the Democratic National Committee (the "Plaintiffs"). Though the Plaintiffs filed eight different lawsuits, the core allegations of each lawsuit challenge the constitutionality of two Arizona laws regarding voting regulations, H.B. 2492 and H.B. 2243 (the "Voting Laws"). The Court granted orders to consolidate all eight cases. [*See* Doc. 193.] *Mi Familia Vota v. Adrian Fontes et al.*, 2:22-CV-00509, became the lead case.

### A. The Challenged Laws

The Voting Laws became effective on January 1, 2023. They require certain proof of citizenship and proof of residence from Arizonans seeking to register to vote and implement certain consequences if a registrant fails to provide this proof of citizenship. These laws also implement additional authority for election officials to regulate Arizona voter rolls.

More specifically, under H.B. 2492, when registering to vote in Arizona, registrants are required to provide proof of citizenship and proof of residence in the State of Arizona. H.B. 2492 §§ 4(A),5. For proof of residence, registrants are required to provide one of the acceptable forms of documents enumerated by A.R.S. § 16-579(A)(1). If an election official is unable to match the appropriate citizenship information, the election official will notify

the registrant that they will not be qualified to vote. H.B. 2492 § 4(E). Further, election officials will provide the Attorney General with a list of all those who did not provide satisfactory evidence of citizenship. *Id.* § 7(B).

H.B. 2243 requires the County Recorder provide notice to registrants who have not provided satisfactory proof of citizenship. H.B. 2243 § 2(A)(10). If the County Recorder does not receive satisfactory proof of citizenship from the registrant within thirty-five days of the notice, the County Recorder must notify the County Attorney and Attorney General for possible investigation. *Id.* H.B. 2243 also requires the County Recorder to review the voter rolls each month and purge persons who the County Recorder believes are not citizens. *Id.* § 2(H). The County Recorder is to conduct checks among other databases, like the Social Security Administration, Verification of Vital Events System, and other state and federal databases the County Recorder has access to. *Id.* § 2(G), (I)-(J).

### B. The Consolidated Lawsuit

On September 16, 2022, the State filed a motion to dismiss, alleging lack of standing, ripeness, and failure to state viable claims. [Doc. 127.] The motion was briefed and the Court held oral argument on December 15, 2022. [Doc. 187.] On February 16, 2023, the Court denied Defendants' Motion to Dismiss, finding the Plaintiffs have proper standing to bring their claims and stated plausible claims for relief. [Doc. 304.] The State and the RNC filed answers to most of the complaints on or about March 17, 2023. [Doc. 317-329.]

On March 23, 2023, the Court held a Rule 16 Scheduling Conference. At the Conference, the Court informed the parties this case would be on a fast track for discovery. The Court ordered dispositive motions due by May 1, 2023 and discovery be due by July 14, 2023. [Doc. 338.]

### C. Proposed Intervenors

Ben Toma is the Speaker of the Arizona House of Representatives and Warren Petersen is the President of the Arizona Senate. The Speaker and the President seek to intervene in their official capacities, and on behalf of their respective legislative chambers, which together comprise the Fifty-Sixth Legislature of Arizona. Each chamber has passed rules authorizing its presiding officer to raise and defend "any claim or right arising out of any injury to the [chamber]'s powers or duties under the constitution or laws of this state."[1] Arizona House of Representatives Rule 4(K), *available at* https://www.azhouse.gov/alispdfs/AdoptedRulesofthe56thLegislature.pdf; Arizona State Senate Rule 2(N), available at https://www.azsenate.gov/alispdfs/SenateRules2023-2024.pdf. Speaker Toma was a Co-Sponsor of H.B. 2492, and both Speaker Toma and President Petersen voted for H.B. 2492 and H.B. 2243.

## II. THE PRESIDENT AND SPEAKER ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Pursuant to Fed. R. Civ. P. 24 (a)(2), intervention as a matter of right is available to a party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

The Ninth Circuit employs a four-factor test to analyze intervention of right: (1) the motion must be timely; (2) the applicant must claim a significantly protectable interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be

---

[1] *See* Ariz. Const. art. 4, pt. 2 § 8 (authorizing each house of the Legislature to "determine its own rules of procedure").

1  inadequately represented by the parties to the action." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (internal quotation omitted).

Courts broadly construe these requirements because "a liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Id.* Furthermore, the Court's intervention analysis is "'guided primarily by practical considerations,' not technical distinctions." *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001). "Courts are to take all well-pleaded, nonconclusory allegations in the motion to intervene . . . and declarations supporting the motion as true absent sham, frivolity or other objections." *Id.* at 820.

### A.     The Motion Is Timely.

Whether a motion to intervene is timely is based on three primary considerations: "(1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of delay." *See U.S. ex rel. McGough v. Covington Techs. Co.,* 967 F.2d 1391, 1394 (9th Cir. 1992). "[T]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interest would not be adequately protected by the existing parties." *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016) (quotation omitted). However, "hasty intervention" is not required. *Kalbers v. United States Dep't of Justice*, 22 F.4th 816, 823 (9th Cir. 2021).

Here, the Speaker and President first learned that Kris Mayes would become the Attorney General of Arizona on December 29, 2022, when the results of the recount were released.[2] But this change in the administration did not necessarily mean that the State would take different positions with respect to the bills at issue in the lawsuit, especially given that the State's motion to dismiss had been fully briefed and argued

---

[2] *See* Democrat wins Arizona attorney general race after recount, Politico, https://www.politico.com/news/2022/12/29/kris-mayes-arizona-attorney-general-recount-00075815..

5

by that point. It is the Speaker and President's understanding that within the last few weeks, however, outside counsel for the State indicated to the other parties that the State would soon issue a letter to all counsel addressing what positions the Attorney General's Office would take going forward. That letter has not yet been sent, and thus we do not know the exact parameters of the State's position. But as a logical matter, if the State simply intended to continue all the positions taken by the previous Attorney General, there would be no need for such a letter.

In that correspondence, outside counsel for the State also offered to stipulate to a stay of the enforcement of the Voting Laws pending a combined preliminary injunction hearing and trial on the merits on all claims that could be decided as a matter of law. The State reaffirmed this position to the Court at the March 23 Rule 16 Scheduling Conference. The Speaker and President would not agree to such an injunction, and therefore move to intervene in order to protect their interests.

Based on these considerations, this motion satisfies the timeliness requirement.

### 1. Stage of the Proceedings.

First, the case is still in its early stages. The Court issued its orders on the State's motions to dismiss on February 16, 2023 and March 17, 2023. [Doc. 304 and 316.] The State and the RNC filed answers to many of the various complaints on or about March 17, 2023. The Court held its Rule 16 Scheduling Conference approximately one week ago, on March 23, and issued its order setting discovery and dispositive motion deadlines the following day. [Doc. 338.]

Undersigned counsel attended the Rule 16 Scheduling Conference via Zoom and is aware of the deadlines, including the upcoming deadline for motions for summary judgment on May 1. The Speaker and President will certainly abide by the scheduling deadlines imposed in the Court's March 24 order.

Accordingly, this consideration supports intervention. *See, e.g.*, *Safari Club Int'l v. Jewell,* No. CV-16-00094-TUC-JGZ, 2016 WL 7786478, at *1 (D. Ariz. May 13, 2016) (holding motion to intervene filed after issuance of a scheduling order and within three months of scheduled merits briefing was timely).

### 2. Prejudice to the Other Parties.

Second, the existing parties will not suffer any prejudice from the Speaker and President's intervention. To be clear, the only relevant "prejudice" in an intervention analysis is that which arises from the intervenor's failure to timely intervene after he should have known that his interests were not adequately represented. *Kalbers*, 22 F.4th at 825. The mere fact that adding another party might make resolution of the case "more difficult does not constitute prejudice." *Id.*

Again, this case is still in its early stages and summary judgment briefing has not yet started. The Speaker and President are willing to comply with the existing case deadlines set by the court, which militates against a finding of prejudice. *See id.* at 826 (finding that there was no prejudice where intervenor "offered to comply with this existing summary judgment briefing schedule).

### 3. Reason for and Length of Delay

Lastly, there was no delay. The Speaker and the President contacted counsel and began work to intervene upon learning that the State had offered to stipulate to an injunction enjoining the enforcement of the Voting Laws pending a preliminary injunction hearing and final trial on the merits. In these circumstances, the motion is timely. *See Kalbers*, 22 F.4th at 825 (intervention motion filed "just a few weeks" after notice of inadequate representation was timely); *Smith*, 830 F.3d at 853, 856 (intervention motions filed more than two months after learning of inadequate representation were timely).

**B.  The President and Speaker Have Protectable Interests in the Litigation.**

The second Rule 24 factor concerns whether the intervenor has a significantly protectable interest in the action. The Ninth Circuit has held that "Rule 24(a)(2) does not require a specific legal or equitable interest." *Wilderness Soc.*, 630 F.3d at 1179. Rather, the "'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (citation omitted). "[I]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quotation omitted). In sum, an intervenor has a sufficient interest "if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* (quotation omitted). Here, the Speaker and President easily meet this standard.

Pursuant to A.R.S. 12-1841(A), the Speaker and the President "shall be entitled to be heard" "[i]n any proceeding in which a state statute . . . is alleged to be unconstitutional." Section 12-1841(D) further authorizes the Speaker and the President to "intervene as a party" and file briefs in any such case. To that end, Section 12-1841 requires notice to be served upon the Speaker and President when constitutional challenges are made. In addition, the Arizona State Senate and the Arizona House of Representatives have authorized the Speaker and President to bring claims on behalf of their respective bodies as a whole. Arizona House of Representatives Rule 4(K); Arizona State Senate Rule 2(N). In short, Arizona law and the rules of the House and Senate expressly empower the Speaker and the President to defend duly enacted Arizona laws against constitutional claims.

In *Berger v. N.C. State Conference of the NAACP*, 142 S. Ct. 2191, 2197 (2022), the U.S. Supreme Court recently reaffirmed that legislative leaders may be empowered under state law to "participate in litigation on the State's behalf . . . with counsel of their own choosing." Although some states have chosen to organize themselves to allow for a defense through the attorney general alone, others have "chosen to authorize multiple officials to

defend their practical interest in cases like these." *Id.* at 2197. In short, a State must be allowed to designate its agents and may authorize its legislature to litigate on the State's behalf; the choice belongs to the State. *Id.* at 2202 (citing *Va. House of Delegates v. Bethune-Hill,* 139 S. Ct. 1945, 1951–52 (2019); *Cameron v. EMW Women's Surgical Ctr.*, 142 S. Ct. 1002, 1011 (2022); *Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013); *Karcher v. May*, 484 U.S. 72, 75, 81–82 (1987)). This makes sense as a practical approach given that, as here, an attorney general may "oppose[] laws enacted by the [state legislature] and decline[d] to defend them fully in federal litigation." *Id.* at 2197.

Judge Rayes recently granted a motion to intervene filed by the President and Speaker involving similar circumstances. *Isaacson v. Mayes*, No. CV-21-01417-PHX-DLR, 2023 WL 2403519 (D. Ariz. Mar. 8, 2023). In *Isaacson*, the President and Speaker sought to intervene to defend a challenge to the constitutionality of two state statutes regarding abortions. *Id.* The plaintiffs opposed the intervention and argued that the President and Speaker did not have a significantly protectable interest in the case. *Id.*

The court disagreed, holding that A.R.S. § 12-1841 "demonstrates Arizona has made a policy decision to vest in its legislative leaders an interest in defending the constitutionality of the legislature's enactments." *Id.* The court also rejected the plaintiffs' contention that A.R.S. § 12-1841 applied only to actions in state court: "[N]othing in the language of § 12-1841 imposes such a limitation. To the contrary, § 12-1841(A) says it applies 'in *any* proceeding in which a state statute, ordinance, franchise or rule is alleged to be unconstitutional[.]' (Emphasis added.) Any means any." *Id.* at *2. Accordingly, the court held that the President and Speaker met all of the requirements for intervention as of right under Rule 24. *Id.*

The same result is warranted here. A State "clearly has a legitimate interest in the continued enforceability of its own statutes…." *Cameron,* 142 S. Ct. at 1011. (internal quotation marks omitted). This means "that a State's opportunity to defend its laws in

9

federal court should not be lightly cut off." *Id.* This applies with special force to a state's election laws, since Art. I, § 4, cl. 1 of the Constitution commits to state legislatures the right to determine the "Times, Places and Manner" of holding congressional elections. Here, Arizona has authorized the Speaker and President "to defend the State's practical interests in litigation" involving constitutional challenges to state statutes. *See Berger*, 142 S. Ct. at 2202. Thus, the Speaker and President should be allowed to exercise their statutory authority under A.R.S. § 12-1841 to intervene and defend the laws at issue in this case.

**C.    The Speaker and President's Interests May Be Practically Impaired Without Their Participation**.

Once the other Rule 24 factors are met, courts often "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" an intervenor's interests. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

Furthermore, because different officials may have "different interests and perspectives, all important to the administration of state government," the Supreme Court in *Berger* cautioned that "federal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law." 142 S. Ct. at 2201.

> To hold otherwise would not only evince disrespect for a State's chosen means of diffusing its sovereign powers among various branches and officials. It would not only risk turning a deaf federal ear to voices the State has deemed crucial to understanding the full range of its interests. It would encourage plaintiffs to make strategic choices to control which state agents they will face across the aisle in federal court. It would tempt litigants to select as their defendants those individual officials they consider most sympathetic to their cause or most inclined to settle favorably and quickly. All of which would risk a hobbled litigation rather than a full and fair adversarial testing of the State's interests and arguments.

*Id.*

As discussed above, the Speaker and President have been authorized to intervene and file briefs in cases challenging the constitutionality of an Arizona statute. The Speaker

and President, on behalf of their chambers, represent a unique perspective that is important to a full understanding of the State's interests.

### D. The Existing Parties Will Not Adequately Represent the Proposed Intervenors' Interests.

Under the general standard articulated by the Supreme Court and adopted by the Ninth Circuit, the burden of showing inadequate representation by an existing party "is 'minimal' and satisfied if the applicant can demonstrate that representation of its interests 'may be inadequate." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003)). Courts consider three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Perry v. Proposition 8 Official Proponents,* 587 F.3d 947, 952 (9th Cir. 2009).

Here, the Speaker and President have a significant protectable interest in defending the constitutionality of Arizona statutes regarding voting and elections, and that interest may be impaired if they are not allowed to intervene. For example, at the Rule 16 Scheduling Conference, the State was in favor of a stay of the enforcement of the bills pending a combined preliminary injunction hearing and final trial on the merits. The Speaker and President would not stipulate to such an injunction and seek to fully defend the laws passed by the legislature.

For these reasons, the Speaker and President are entitled to intervene as a matter of right.

### III. ALTERNATIVELY, PERMISSIVE INTERVENTION IS MERITED.

Even if this Court were to find that the Speaker and President are not entitled to intervene in this action as a matter of right, it should still permit the Speaker and President

to intervene because they satisfy the requirements for permissive intervention under Fed. R. Civ. P. 24(b).

The Court may grant permissive intervention under Fed. R. Civ. P. 24(b)(1)(B) to anyone who "has a claim or defense that shares with the main action a common question of law or fact." "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted). "The district court is given broad discretion to make this determination." *Perry v. Schwarzenegger*, 630 F.3d 898, 905 (9th Cir. 2011).

When determining whether to grant permissive intervention, courts examine many factors similar to those for intervention as a matter of right, including: "[T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case, . . . whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

The Court should permit the Speaker and President to intervene in this action. As discussed above, this motion is timely. The jurisdictional prong of the Rule 24(b) test is met because the Speaker and President seek to defend federal constitutional challenges to the Voting Laws. *See, e.g., Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989). Finally, common questions of law and fact abound, given that the Speaker and President are interested in defending the constitutionality of the Voting Laws.

Accordingly, this Court should allow the Speaker and President to intervene here, if not as of right, then by permission.

## IV.    CONCLUSION.

For the foregoing reasons, the Speaker and President respectfully request the Court grant this Motion to Intervene and allow them to participate as Defendants to protect their unique interests in defending the challenged state statutes.

Pursuant to Fed. R. Civ. P. 24(c), the Speaker and President have attached their joint Answers to the eight complaints that are part of this consolidated action as Exhibit A, which set out the claims and defenses for which intervention is sought.

RESPECTFULLY SUBMITTED this 4th day of April 2023.

GALLAGHER & KENNEDY, P.A.

By: */s/Hannah H. Porter*
Kevin E. O'Malley
Hannah H. Porter
Ashley E. Fitzgibbons
2575 East Camelback Road
Phoenix, Arizona 85016-9225
*Attorneys for Proposed Intervenor-Defendants Speaker Toma and President Petersen*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of April 2023, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing.

*/s/ D. Ochoa*