**Volume III**
**Index of Exhibits to Declaration of Nicole Hansen in Support of Non-U.S.**
**Plaintiffs' Combined Motions for Partial Summary Judgement and Response to**
**Defendants' Motion for Partial Summary Judgment**

| Exhibit Number | Document Description | Citation or Bates Number (if applicable) |
|---|---|---|
| 1 | March 30, 2022, Letter from Governor Ducey to Secretary of State Hobbs re: HB2492 | |
| 2 | AZ Senate Bill 2492 (2022) (Chaptered Version) | |
| 3 | AZ House Bill 1638 (2022) (Chaptered Version) | |
| 4 | AZ House Bill 2243 (2022) (Chaptered Version) | |
| 5 | State of Arizona Official Canvass, 2022 General Election | |
| 6 | 2019 Arizona Elections Procedures Manual | |
| 7 | Oct. 21, 2021, Letter from Secretary Hobbs to Governor Ducey and Attorney General Brnovich re: 2021 Elections Procedures Manual Draft | |
| 8 | Dec. 22, 2021, Letter from Attorney General Brnovich to Secretary Hobbs re: 2021 Elections Procedures Manual Draft | |
| 9 | Arizona Voter Registration Form (State Form) | |
| 10 | National Mail Voter Registration Form (Federal Form) | |
| 11 | 2014 Arizona Elections Procedures Manual | |
| 12 | *LULAC v. Reagan*, Signed Order Entering Consent Decree | No. 2:17-cv-4102-DGC, ECF No. 37 |

| 13 | 2019 Addendum to 2014 Arizona Elections Procedures Manual | |
| 14 | *Gonzalez v. Arizona*, Joint Stipulation to Dismiss Pending Approval of Changes to Procedures | No. 2:06-cv-1268-ROS, ECF No. 749 |
| 15 | Dec. 30, 2022, Email from K. Lorick to County Recorders re: 2492/2243 Reminders | AZSOS-000001 to AZSOS-000002 |
| 16 | Attachments to Dec. 30, 2022, Email from K. Lorick to County Recorders and Elections Offices re: 2492/2243 Reminders | AZSOS-000003 to AZSOS-000023 |
| 17 | March 24, 2022, Letter from Arizona Association of Counties to Governor Ducey re: HB2492 Voter Registration; Verification; Citizenship | SCCR000104 to SCCR000106 |
| 18 | March 24, 2022, Letter from J. Marson to County Recorders and Elections Offices re: IMPORTANT – Send Veto Request to Gov Ducey re: HB2492 | SCCR000111 to SCCR000112 |
| 19 | March 24, 2022, Email from Pima County Recorder Cázares-Kelly re: Letter to Gov. Ducey | Pima County 0822 to Pima County 0823 |
| 20 | Defendant Cochise County Recorder David Stevens' Response to Plaintiff's First Set of Interrogatories | |
| 21 | *Arizona Asian American Native Hawaiian and Pacific Islanders for Equity Coalition v. Hobbs*, Answer to Complaint by Defendant Secretary of State Hobbs | No. 2:22-cv-1381-SRB, ECF No. 63 |
| 22 | July 22, 2022, NVRA Notice Letter from AZ AANHPI Equity Coalition to Secretary of State Hobbs | |
| 23 | August 15, 2022, NVRA Notice Letter from Promise Arizona and Southwest Voter Registration Education Project to Secretary of State Hobbs | |

| 24 | *Arizona Asian American Native Hawaiian and Pacific Islanders for Equity Coalition v. Hobbs*, Declaration of John H. Steinbach in Support of Plaintiff's Motion for Preliminary Injunction | No. 2:22-cv-1381-SRB, ECF No. 35 |
|---|---|---|
| 25 | *Arizona Asian American Native Hawaiian and Pacific Islanders for Equity Coalition v. Hobbs*, Exhibit 23 to Declaration of John H. Steinbach in Support of Plaintiff's Motion for Preliminary Injunction | No. 2:22-cv-1381-SRB, ECF No. 35-2 |
| 26 | *Arizona Asian American Native Hawaiian and Pacific Islanders for Equity Coalition v. Hobbs*, Motion for Preliminary Injunction | No. 2:22-cv-1381-SRB, ECF No. 32 |
| 27 | *Arizona Asian American Native Hawaiian and Pacific Islanders for Equity Coalition v. Hobbs*, Stipulated Order Regarding Motion for Preliminary Injunction | No. 2:22-cv-1381-SRB, ECF No. 53 |
| 28 | *Promise Arizona v. Hobbs*, Answer to Complaint by Secretary of State Hobbs | No. 2:22-cv-1602-SRB, ECF No. 46 |
| 29 | *Promise Arizona v. Hobbs*, Complaint | No. 2:22-cv-1602-SRB, ECF No. 1 |
| 30 | Arizona Citizens Clean Elections Commission, "Ballot by Mail" webpage | |

# Exhibit 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| League of United Latin American Citizens of Arizona; Arizona Students' Association, | No. CV17-4102-PHX DGC |
| Plaintiffs, | |
| v. | **CONSENT DECREE** |
| Michele Reagan, in her official capacity as Secretary of State of Arizona; Adrian Fontes, in his official capacity as Maricopa County Recorder, | |
| Defendants. | |

Before the Court is the Joint Motion Requesting Entry of Consent Decree, filed by Plaintiff League of United Latin American Citizens of Arizona ("LULAC-Arizona"), Plaintiff Arizona Students' Association ("ASA"), Defendant Michele Reagan, in her official capacity as Secretary of State of Arizona (the "Secretary"), and Defendant Adrian Fontes, in his official capacity as Maricopa County Recorder ("Recorder Fontes"). Doc. 36. All Plaintiffs and Defendants shall hereafter be referred to as the "Parties."

On November 7, 2017, LULAC-Arizona and ASA initiated this action against the Secretary and Recorder Fontes. The complaint alleged that Arizona's dual voter registration policies violate the First and Fourteenth Amendments to the United States Constitution. Specifically, LULAC-Arizona and ASA alleged that Arizona treats voter

registration applicants differently depending on whether they use Arizona's state registration form (the "State Form") or the national registration form (the "Federal Form"). At the time the lawsuit was filed, fourteen of Arizona's County Recorders rejected State Form applications submitted without valid documentary proof of citizenship ("DPOC"). Federal law required the County Recorders to accept Federal Form applications, even when they are submitted without DPOC. The Motor Vehicles Department ("MVD") Proxy Table was then electronically checked through an automated process to determine whether the Federal Form applicants had a valid driver's license, which indicates that DPOC is supposed to be on file with the MVD. Those with DPOC on file are eligible to vote in both state and federal elections ("Full Ballot Voter"). Those who did not have DPOC on file with the MVD were only able to vote in federal elections ("Fed Only Voter").

As a result, whether one who does not present valid DPOC is registered to vote in federal elections is entirely dependent on which form the applicant uses to register. Those using the Federal Form but not providing DPOC, are registered to vote in federal elections; and, depending on the results of the Secretary's automated review of the MVD database, may be registered to vote in state elections as well. But those using the State Form, and not providing valid DPOC, are not registered to vote in any elections because the application is rejected in its entirety. LULAC-Arizona and ASA alleged that this dual voter registration process violated the First and Fourteenth Amendments.

The Secretary denies that Arizona's voter registration policies violate the First and Fourteenth Amendments or are otherwise illegal under state or federal law. The Secretary asserts that Federal and State Form applicants are not similarly situated for equal protection purposes. The Secretary asserts that Arizona is constitutionally permitted to require those applying to register to vote using the State Form to personally provide DPOC at the time that they submit their State Form. The Secretary further asserts that there is no constitutional or statutory requirement that Arizona election officials register applicants for federal elections when they have chosen to use the State Form to register to vote rather than the Federal Form.

Nevertheless, the Secretary and Recorder Fontes desire to make it as easy possible for Arizona's citizens to register to vote, while remaining consistent with Arizona and federal law and also providing necessary safeguards to deter those who would commit voter registration fraud. Having reviewed the applicable law, the Secretary and Recorder Fontes have concluded that current technology allows the Secretary, Recorder Fontes, and the other Arizona County Recorders to treat State Form applications exactly as they treat Federal Form applications, and that because of current technology such treatment is consistent with the provisions of Arizona law, including the requirements of Proposition 200, codified at A.R.S. §§ 16-166(F) and 16-152(A)(23). The Secretary and Recorder Fontes agree that treating Federal Form and State Form applications the same will make it easier for Arizona's citizens to register to vote, while also providing important safeguards to prevent unlawful voter registration. Accordingly, on February 8, 2018, the Secretary and Recorder Fontes through their counsel notified counsel for LULAC-Arizona and ASA of their desire to enter into an agreement that will resolve the underlying litigation and also benefit Arizona's citizens.

The Parties have negotiated in good faith and agree to the entry of this Consent Decree as an appropriate resolution. Accordingly, the Parties stipulate and agree as follows:

## **PRELIMINARY RECITALS**

1.　　LULAC-Arizona is the Arizona-based branch of the oldest and largest national Latino civil rights organization. LULAC is a non-profit membership organization with a presence in most of the fifty states. Founded in 1929, it works to advance the economic condition, educational attainment, political influence, health and civil rights, including voting rights, of the Hispanic population of the United States.

2.　　ASA is a student-led, non-partisan membership organization created to represent the collective interest of the over 140,000 university students and over 400,000 community college students in Arizona. ASA advocates at the local, state, and national levels for the interests of students. As a part of its mission, ASA encourages students throughout Arizona to register to vote through voter registration activity.

3.     Michele Reagan is the Arizona Secretary of State. The Secretary of State is responsible for supervising voter registration throughout the state and providing binding regulations and guidelines for voter registration. A.R.S. § 16-142. Secretary Reagan was sued in her official capacity only.

4.     Adrian Fontes is the Maricopa County Recorder, an elected countywide officer. Recorder Fontes is responsible for conducting voter registration in Maricopa County. A.R.S. §§ 16-131, -134. Recorder Fontes was sued in his official capacity only.

5.     This action was brought by LULAC-Arizona and ASA to vindicate First and Fourteenth Amendment rights relating to voter registration.

6.     Arizona's practice of treating Federal Form and State Form applications differently, described above, arose from past Arizona election officials' understanding of the effect of Proposition 200, which was passed by Arizona's voters in 2004 and codified at A.R.S. §§ 16-166(F), 16-152(A)(23), in conjunction with the technology available at the time. Since the passage of Prop. 200 in 2004, a new statewide voter registration database has been implemented and provides additional tools to election officials.

7.     Arizona's voter registration technology, including its voter registration database, now allows DPOC already on file with the MVD database to be associated near-instantaneously with voter registration applications submitted without DPOC, irrespective of whether the applications are State Forms or Federal Forms.

8.     The Secretary denies that prior practices, challenged in this lawsuit, were unlawful.  By agreeing to this Consent Decree, the Secretary and Recorder Fontes seek to serve Arizona's citizens by (1) continuing to comply with Arizona law while (2) making the voter registration process using the State Form easier.

**DEFINITIONS**

1.     "ADOT" means the Arizona Department of Transportation, which is established pursuant to A.R.S. § 28-331. It has the responsibility to "provide for an integrated and balanced state transportation system." The Arizona Motor Vehicles Division is a division of ADOT. A.R.S. § 28-332(C).

2.     "AHCCCS" means the Arizona Health Care Cost Containment System,

4

which is established pursuant to A.R.S. § 36-2902. AHCCCS is Arizona's Medicaid agency that offers health care programs to serve Arizona residents.

3.      "Applicant" means an individual who has submitted an application to register to vote in the State of Arizona.

4.      "AVID Database" means the voter registration database, currently being developed for the state of Arizona and intended to replace the current Database. The AVID Database is projected to be operational sometime in 2019 or early 2020, but shall be operational no later than July 1, 2020 except as provided in subparagraph (a), below.

(a) The date of July 1, 2020, contemplated for the operational function of the AVID Database, is contingent on the vendor with whom the Secretary has contracted to develop AVID fulfilling its obligations to have AVID operational in 2019 or early 2020 at the latest. Should the vendor be unable to meet this contingency, or should the implementation of the AVID Database otherwise be delayed, the Secretary shall notify the Court and the Parties to this Consent Decree, in writing, and shall indicate in writing the date by which the vendor believes that AVID will be operational. Plaintiffs retain the right to seek a remedy from the Court to enforce this agreement if the implementation of the AVID database is unduly delayed.

(b) The provisions in this consent decree that apply to the AVID database will also apply to any future voter registration system adopted by the Secretary of State's office.

5.      "County Recorder" means the County Recorder of each of Arizona's fifteen counties, and includes all county election officials working in or in conjunction with their offices.

6.      "Database" means the existing electronic storage system developed and administered by the Secretary that contains the official voter registration record for every voter in the state. *See* A.R.S. § 16-168(J).

7.      "DES" means the Arizona Department of Economic Security, which is established pursuant to A.R.S. § 41-1952.

8.      "Designated voter registration agencies" are agencies that are required to

5

provide voter registration services pursuant to the National Voter Registration Act.

9. "<u>DHS</u>" means the Arizona Department of Health Services, which is established pursuant to A.R.S. § 36-102.

10. "<u>DPOC</u>" means documentary proof of citizenship, and is limited to the forms of satisfactory evidence of citizenship listed in A.R.S. § 16-166(F).

11. "<u>F-type License</u>" means the designation that the MVD uses in its database to distinguish Arizona driver's license holders who, at the time that their driver's licenses were issued, were presumed by MVD to not be United States citizens.

12. "<u>Fed Only Voter</u>" means an individual who is registered to vote solely in Arizona elections for federal office.

13. "<u>Federal Form</u>" means the National Mail Voter Registration Form, provided by the U.S. Elections Assistance Commission and used to register to vote in elections for federal office, as well as the Federal Write-in Absentee Ballot and Federal Post Card Application as those terms are used in 52 U.S.C. §§ 20302 and 20303.

14. "<u>Federal Office</u>" means the office of President or Vice President; or of Senator or Representative in, or Delegate or Resident Commissioner to, the United States Congress. 52 U.S.C. § 20502(2).

15. "<u>Full Ballot Voter</u>" means an individual who is registered to vote in Arizona elections for federal, state, and local office.

16. "<u>Guidance</u>" means formal guidance on voter registration procedures that the Secretary of State will provide to the County Recorders pursuant to her role as chief election official responsible for prescribing uniform procedures for voting. *See* A.R.S. § 16-142. The Secretary will provide Plaintiffs' counsel with copies of her Guidance before it is sent to the County Recorders.

17. "<u>MVD</u>" means the Arizona Motor Vehicles Division.

18. "<u>MVD database</u>" means the electronic storage system developed and administered by the Arizona Motor Vehicle Department.

19. "<u>MVD Proxy Table</u>" means the MVD data provided to the Secretary of State that includes the nightly updates of MVD transactions that occurred in the past

6

twenty-four hours that MVD sends to the Secretary in batch form.

20. "<u>Procedures Manual</u>" means the State of Arizona Elections Procedures Manual, which provides the rules related to voting and the conduct of elections. A.R.S. § 16-452. The Secretary is required to develop the Procedures Manual in conjunction with the fifteen County Recorders. *Id*. The Procedures Manual has the force of law. A.R.S. § 16-452(C). The Procedures Manual, 2018 Edition, has been drafted by the Secretary and submitted to the Governor and Attorney General as required by law for their review. *Id*.

21. "<u>Protected Voter Registration</u>" means the program to ensure anonymity to survivors of stalking, domestic violence, and sexual assault through the Address Confidentiality Program provided by A.R.S. § 41-161, et seq., and certain other individuals pursuant to A.R.S. § 16-153.

22. "<u>Secretary</u>" means the Arizona Secretary of State and her office, as well as successors in office.

23. "<u>State Form</u>" means the options for voter registration created and provided by the State of Arizona and its agencies, including but not limited to the online registration available through Service Arizona, the paper application available on the Secretary of State's website, the paper application available at all County Recorder offices, and the Protected Voter Registration process.

24. "<u>State Office</u>" means any elected statewide, county-wide, or municipal public office, other than a Federal Office, for which a voter registered in the State of Arizona is eligible to vote.

## **<u>ORDER</u>**

Accordingly, the Parties having freely given their consent, and the terms of the Consent Decree being fair, reasonable, and consistent with the requirements of state and federal law,

**IT IS ORDERED** as follows:

1. The Joint Motion for Approval of Consent Judgment (Doc. 36) is **granted.**

2. **The Procedures Manual.** The Parties are aware that the draft Procedures Manual, 2018 Edition has been submitted by the Secretary to Arizona's Governor

7

and Attorney General for their review as required by statute. *See* A.R.S. § 16-452(B). Within thirty days after entry of this Consent Decree, the Secretary shall revise the Procedures Manual to incorporate the terms of this Consent Decree ("Procedures Manual Revisions") and send the Procedures Manual Revisions, together with the Secretary's recommendation of approval, to the Governor and Attorney General for their review, *see* A.R.S. § 16-452(B), and also to Plaintiffs' counsel. If Plaintiffs determine that the Procedures Manual Revisions do not comply with this Consent Decree, Plaintiffs may seek review by this Court through the Court's procedures for motions. If the Governor and Attorney General do not approve the Procedures Manual Revisions or request modifications, the Secretary will send the Attorney General and/or Governor's rejections or proposed modifications to Plaintiffs' counsel. If those rejections or proposed modifications are in any respect inconsistent with this Consent Decree, Plaintiffs may use any available legal remedies to secure compliance with this Consent Decree.

2.      **State Form Applications Submitted Without DPOC.** Within thirty days after entry of this Consent Decree, the Secretary shall, in writing:

a.      provide guidance to the County Recorders to accept State Form applications submitted without DPOC;

b.      provide guidance to the County Recorders to enter all such applications in the Database (or, in the case of Maricopa County and Pima County, to enter all such applications in their county voter registration databases and transmit such entries to the Database);

c.      provide guidance to the County Recorders to immediately register the applicants for federal elections, provided the applicant is otherwise qualified and the voter registration form is sufficiently complete; and

d.      check all State Form applications submitted without DPOC against the MVD database Proxy Table, via the automated processes in the

8

Database, to determine whether the MVD has DPOC on file for the applicants. If DPOC is located, the Secretary shall promptly notify the applicable County Recorder via the automated processes in the Database that the State Form applicant has DPOC on file with the MVD and so must be made a Full Ballot Voter via the automated process in the Database.

i.      if the Secretary's check performed by the automated processes in the Database against the MVD database Proxy Table indicates that a State Form applicant holds an F-Type License, the Secretary shall promptly notify the applicable County Recorder of that fact via the automated processes of the Database. The automated processes of the Database will also flag this issue so that the County Recorder will know to change that applicant's voter registration status to "not eligible." The Secretary shall provide guidance to the County Recorders that the County Recorders shall notify the applicant by U.S. Mail within ten business days after receiving notice via the automated process in the database, according to information on file with the MVD database, that the applicant holds an F-Type License indicating non-citizenship and so will not be registered to vote. The notification from the County Recorder shall also inform the applicant that the applicant can provide valid DPOC to the County Recorder in order to become a Full Ballot Voter. The notification will be accompanied by the form described in Paragraph 3 (the "DPOC Submission Form"). The applicant may submit DPOC to the County Recorder through the process described in Paragraph 3 to become a Full Ballot Voter.

9

ii.    if the Secretary's check via the automated features of the Database determines that a State Form applicant does not hold an F-Type License, but also does not have DPOC on file with the MVD, the Secretary shall promptly notify the applicable County Recorder of that result via the automated processes of the Database. The County Recorder shall notify these applicants by U.S. Mail within ten business days after receiving notice from the Secretary that (1) the County Recorder does not have the requisite DPOC to process their application; (2) they must submit DPOC if they wish to be a Full Ballot Voter; and, (3) until such time as they submit DPOC, they will be a Fed Only Voter and so will only be eligible to vote in Federal elections. The notification shall be accompanied by the form described in Paragraph 3 (the "DPOC Submission Form"). The applicant may submit DPOC to the County Recorder through the process described in Paragraph 3 to become a Full Ballot Voter. Until and unless the applicant submits valid DPOC, the County Recorders shall cause those voter registration applicants to be made Fed Only Voters.

3.    **Provision of DPOC After the Submission of a State Form Application.** Applicants who do not submit DPOC with their State Form application and do not have DPOC on file with MVD, and are notified by the applicable County Recorder that they will be Fed Only Voters unless and until they submit DPOC, may submit valid DPOC to become a Full Ballot Voter. To do so, they shall submit their DPOC to the County Recorder with a form provided to them by that official. This form (the "DPOC Submission Form"), which shall be developed by the Secretary and the County Recorders within thirty days after entry of this Consent Decree, shall contain sufficient information to allow the County Recorder to link the voter registration applicant's DPOC

with his or her State Form application already on file in the Database.

A.     Applicants who submit their State Form application at least twenty-nine days before an election as required by statute, A.R.S. §§ 16-120(A), -134(C), and whose valid DPOC with the DPOC Submission Form is received by their County Recorder by 5 p.m. local time on the Thursday before the election, will be made Full Ballot Voters by the County Recorder and may vote in the upcoming election as a Full Ballot Voter. The registrations of such applicants shall be deemed to have occurred on the date that they originally submitted their State Form application. If the County Recorder has already transmitted a Fed Only early ballot to that voter, the voter will have the option to vote either that Fed Only early ballot or else vote a provisional Full Ballot at the polling place or vote center and comply with the rules regarding provisional ballots.

B.     Applicants who submit their State Form application at least twenty-nine days before an election, and whose valid DPOC is received by 5 p.m. local time on the Thursday before the election, but who do not submit the DPOC Submission Form, may be made Full Ballot Voters by the County Recorder if the County Recorder has sufficient information to link the voter registration applicant's DPOC with the applicant's State Form application already on file in the Database. If the County Recorder makes such an applicant a Full Ballot Voter, and if the County Recorder has already transmitted a Fed Only early ballot to that voter, the voter will have the option to vote either that Fed Only early ballot or else vote a provisional Full Ballot at the polling place or vote center and comply with the rules regarding provisional ballots.

C.     Applicants who do not submit their State Form application at least twenty-nine days before an election as provided by statute, or whose valid DPOC is received by their County Recorder after 5 p.m. local time on the Thursday before the election, will not be made Full Ballot Voters for the upcoming election. The County Recorder shall make such applicants Full Ballot Voters within five business days after processing provisional ballots, and they shall be Full Ballot Voters for subsequent elections.

D.     For all applicants who submit State Form applications without valid DPOC, but subsequently submit valid DPOC and do not submit the DPOC Submission

11

Form, the County Recorder may make the applicant a Full Ballot Voter if the County Recorder has sufficient information to link the voter registration applicant's DPOC with the applicant's State Form application already on file in the Database. If the County Recorder lacks sufficient information to link the DPOC to the voter's application in order to make the applicant a Full Ballot Voter, the County Recorder may follow up with the applicant to seek the missing information if the County Recorder has sufficient information to do so. Applicants who subsequently provide the missing information necessary to link their DPOC to their applications shall be made Full Ballot Voters by the County Recorder within ten business days.

4.  **State Form Applications Submitted On or After January 1, 2017.** This Consent Decree will govern all voter registration applications submitted after entry of this Consent Decree, including applications submitted within thirty days after entry of this Consent Decree. However, within thirty days after entry of this Consent Decree, the Secretary shall also provide written guidance to all County Recorders except the Maricopa County Recorder that, pursuant to the Consent Decree, they may, at their discretion, implement the new procedures outlined in Paragraphs 2–3 of this Consent Decree for State Form applications dating back to January 1, 2017, provided that they have the capability to ensure that such applicants have not moved, become deceased, or otherwise subsequently already registered to vote. Any applicants whose applications were filed before entry of this Consent Decree who are newly registered as Fed Only or Full Ballot Voters as a result of that process will be given the proper notice of their new registration status by U.S. Mail.

Within ninety days of entry of this Consent Decree, the Maricopa County Recorder shall implement the new procedures outlined in Paragraphs 2–3 of this Consent Decree for State Form applications dating back to January 1, 2017. This process shall include: (1) entering all State Forms submitted without DPOC into the database and immediately registering those applicants for federal elections, (2) checking the applicants' status against the MVD database, and (3) sending the applicants notification of their new registration status.

5. **Federal Form Applications.** Within thirty days after entry of this Consent Decree, the Secretary shall provide written guidance to the County Recorders to promptly register all applicants who submit their Federal Form application with valid DPOC as Full Ballot Voters and promptly register all applicants who submit their Federal Form application without valid DPOC as Fed Only Voters. From the date of the entry of the Consent Decree, the Secretary shall also cause all new Federal Form applications submitted without DPOC to be checked against the MVD Proxy Table promptly upon entry into the Database, via the automated processes in the Database, to determine whether the MVD has DPOC on file for such Federal Form applicants, and take the following steps:

a. If this check determines that the MVD Proxy Table has DPOC on file for any Federal Form applicant, the Secretary shall promptly notify the applicable County Recorder via the automated process in the Database that the applicant has DPOC on file with MVD and so must be made a Full Ballot Voter via the automated process in the Database.

b. If this check determines that the MVD Proxy Table has information indicating that any Federal Form applicant holds an F-Type License, the Secretary shall promptly notify the applicable County Recorder of that fact via the automated processes of the Database and flag this record for the County Recorder to change that applicant's voter registration status to "not eligible." The County Recorder shall notify the applicant by U.S. Mail within ten business days after receiving notice from the Secretary that, according to information on file with the MVD database, the applicant holds an F-Type License indicating non-citizenship and so will not be registered to vote. The County Recorder's notice shall also inform the applicant that, if this information is not correct, the applicant may provide valid DPOC in order to become a Full Ballot Voter. The notification will be accompanied by the DPOC Submission Form described in Paragraph 3. The applicant may submit valid DPOC to the County Recorder through the process described in Paragraph 3 to become a Full Ballot Voter.

c. If this check determines for any applicant that the MVD database does not

13

have DPOC on file and also that the applicant does not hold an F-Type License, the Secretary shall promptly notify the applicable County Recorder of that result via the automated processes of the Database. The County Recorder shall notify these applicants by U.S. Mail within ten business days after receiving notice from the Secretary that (1) the County Recorder does not have the requisite DPOC to process their application; (2) they must submit valid DPOC if they wish to be a Full Ballot Voter; and, (3) until such time as they submit valid DPOC, they will be a Fed Only Voter and so will only be eligible to vote in Federal elections. The notification will be accompanied by the DPOC Submission Form described in Paragraph 3. The applicant may submit valid DPOC to the County Recorder through the process described in Paragraph 3 to become a Full Ballot Voter. Until and unless the applicant submits valid DPOC, the County Recorders shall cause those voter registration applicants to be made Fed Only Voters.

d. Federal Form applicants who subsequently submit valid DPOC shall be made Full Ballot Voters according to and in conformity with the process described in Paragraph 3.

6. **Registered Voters Who Move From One Arizona County to Another.** The AVID Database or another voter registration database similar to the AVID Database shall be operational as described, and according to the terms set forth, in the Definitions section of this consent decree. When the AVID Database is operational, the Secretary and County Recorders will be able to verify DPOC and append that information to applicants' voting records when those applicants change voter registration from one Arizona county to another. Consequently, once the AVID Database is operational and in use by the Secretary and the County Recorders, registered Full Ballot Voters will not be required to independently submit DPOC to their new County Recorder, so long as their DPOC is in the AVID Database.

7. **Application to Other Forms of Registration.** The procedures outlined above for processing voter registration applications submitted without valid DPOC will apply equally to all forms of voter registration, including voter registration through designated voter registration agencies, the Federal Post Card Application (FPCA), the

14

Federal Write-In Absentee Ballot, and the In-Person EZ Voter Registration system.

8. **Education of the Public.** The Secretary shall continue to make reasonable efforts to better educate the citizens of Arizona concerning their opportunities to register to vote, including opportunities presented by the Federal Form. The Secretary will provide Plaintiffs' counsel with a copy of the planned notice that she intends to place on her website. Within thirty days after the entry of this Consent Decree, the Secretary shall:

    a.    Update her website to explain that:

        i. the State Form requires valid DPOC for state elections only;

        ii. submission of a sufficiently complete State Form with valid DPOC will make the applicant a Full Ballot Voter;

        iii. submission of a sufficiently complete State Form without DPOC will make the applicant a Fed Only Voter;

        iv. the Federal Form does not require DPOC;

        v. submission of the Federal Form without valid DPOC will make the applicant a Fed Only Voter; and

        vi. submission of the Federal Form with valid DPOC will make the applicant a Full Ballot Voter.

    b.    Provide guidance to the County Recorders that they should provide the information required in this Section 8 on their websites;

    c.    Notify ADOT, DHS, AHCCCS, and DES of the changes in voter registration procedures outlined in this Consent Decree;

    d.    Within four months after the entry of this Consent Decree, the Secretary shall create a new State Form that explains that citizens who do not submit DPOC with their registration forms will be registered only for federal elections until the appropriate proof of citizenship is provided or acquired. The Secretary will provide notice to Plaintiffs' counsel regarding the form of the explanation described in the previous sentence. The Secretary will create the new State Form within three months if the Secretary determines that it is possible to do so. The Secretary shall provide guidance to the County Recorders and all State Offices that disseminate voter registration forms,

15

including designated voter registration agencies, that they should utilize the new State Form as soon as practicable. *See* A.R.S. § 16-352(C). Within thirty days after entry of the Consent Decree, the Secretary will provide written notice to the County Recorders that there will be changes made to the State Form within four months after the date the Consent Decree was entered.

10.     **Continuing Jurisdiction**. The Court shall retain jurisdiction over this action until December 31, 2020 to enter such further relief as may be necessary for the effectuation of the terms of this Consent Decree.

11.     **Attorneys' Fees and Costs.** The Parties will continue to confer regarding what amount, if any, the State Defendants should pay to Plaintiffs for their attorneys' fees and costs. If the Parties are unable to agree privately upon payment of fees and costs, Plaintiffs will file a motion for attorneys' fees and costs pursuant to 42 U.S.C. § 1988 within forty-five days after entry of this consent decree.

The Clerk of Court is directed to terminate this action.

Dated this 18th day of June, 2018.

_____
David G. Campbell
United States District Judge

16

# Exhibit 13



**KATIE HOBBS**
SECRETARY OF STATE
*State of Arizona*

## 2019 Addendum
## to the Arizona Elections Procedures Manual (Revised 2014)

### Arizona Secretary of State's Office
### July 2019

Pursuant to A.R.S. § 16-452 and in accordance with § 2 of the Consent Decree entered in *League of United Latin American Citizens of Arizona (LULAC) v. Reagan*, 2:17-cv-04102-DGC, Doc. 37 (D. Ariz. June 18, 2018) (the "LULAC Consent Decree"), the Secretary of State's Office, in consultation with County Recorders and Election Officials, developed the procedures in the enclosed 2019 Addendum to the 2014 Elections Procedures Manual in order to correctly, impartially, uniformly, and efficiently implement the requirements of the LULAC Consent Decree throughout the State. Pursuant to A.R.S. § 16-452(B), the 2019 Addendum was approved by the Attorney General's Office on June 13, 2019 and approved by the Governor's Office on July 5, 2019 and is now in effect.

### Contact Us:

**Office of the Secretary of State**
1700 W. Washington Street, 7th Floor
Phoenix, AZ 85007
Telephone: 602-542-4285
Toll-Free: 1-800-458-5842
TDD: 602-255-8683
Website: www.azsos.gov

**Elections Services Division**
Telephone: 602-542-8683
Fax: 602-542-6172
Email: elections@azsos.gov
Website: www.azsos.gov/elections

The Office of the Secretary of State is an equal opportunity employer. Requests for alternate formats or accommodations can be made by contacting the Secretary of State ADA Coordinator at 602-542-4285.

*The Elections Services Division strives for accuracy in its publications. If the user finds a misprint or error, please contact our office at (602) 542-8683 or* elections@azsos.gov.



**STATE OF ARIZONA**
**OFFICE OF THE GOVERNOR**

DOUGLAS A. DUCEY
GOVERNOR

EXECUTIVE OFFICE

July 5, 2019

The Honorable Katie Hobbs
Arizona Secretary of State
Capitol Executive Tower, 7th Floor
1700 West Washington Street
Phoenix, AZ  85007-2888

Re: Approval of 2019 Addendum to Election Procedures Manual

Dear Secretary Hobbs:

I have reviewed the May 2019 revisions to the Arizona Secretary of State Election Procedures Manual necessitated in accordance with the Consent Decree entered on June 18, 2018 in League of United Latin American Citizens of Arizona ("LULAC") v. Michele Reagan, CVl 7-4102-PHX-DGC. I have also reviewed the June 2019 letter submitted by Attorney General's Office stating the revisions comply with Arizona election laws.

I hereby approve it in accordance with A.R.S.§ 16-452(B).

Sincerely,

Douglas A. Ducey
Governor
State of Arizona



**MARK BRNOVICH**
ATTORNEY GENERAL

OFFICE OF THE ATTORNEY GENERAL
STATE OF ARIZONA

June 13, 2019

*Via Email and U.S. Mail*

The Honorable Katie Hobbs
Arizona Secretary of State
1700 West Washington Street, Floor 7
Phoenix, AZ 85007

      Re:  Elections Procedures Manual

Dear Secretary Hobbs:

    As you know, the Attorney General has a statutory duty to review each version of the Elections Procedures Manual before it is issued by the Secretary of State.  A.R.S. § 16-452(B).  This duty is shared with the Governor, and both the Attorney General and Governor must give approval before an Elections Procedures Manual may be finally issued.  *Id.*

    On March 22, 2019, your office transmitted to the Attorney General a Supplement to the Elections Procedures Manual in accordance with the Consent Decree entered on June 18, 2018 in League of United Latin American Citizens of Arizona ("LULAC") v. Michele Reagan, CV17-4102-PHX-DGC. On June 7, 2019, your office submitted an amended approval request to your March 22, 2019 transmittal ("Amended Supplement to the Elections Procedure Manual").

    This letter is to notify you that the Attorney General has approved the June 7, 2019 Amended Supplement to the Elections Procedure Manual, which is attached to this letter.

                  Sincerely,

                  Joseph A. Kanefield
                  Acting Attorney General

Attachment

## APPENDIX A    SUPPLEMENTAL VOTER REGISTRATION PROCEDURES

The procedures outlined in this Appendix supersede any conflicting procedures outlined in the Elections Procedures Manual currently in effect.

The consent decree entered in *League of United Latin American Citizens of Arizona (LULAC) v. Reagan*, 2:17-cv-04102-DGC, Doc. 37 (D. Ariz. June 18, 2018) (the "LULAC Consent Decree") is incorporated into this Appendix in full.

## 1.1   PROOF OF CITIZENSHIP AND FULL-BALLOT VOTER STATUS

A County Recorder must make a registrant a "full-ballot" voter[1] for the next election if the County Recorder receives accompanying documentary proof of citizenship for the registrant.[2] A County Recorder may receive proof of citizenship for a registrant in the following ways:

- The registrant may provide documentary proof of citizenship with or after submission of the registrant's voter registration form; or
- The County Recorder may acquire proof of citizenship on the registrant's behalf, including through the automated check of the Arizona Motor Vehicle Department ("MVD") records as described in section 1.1.1.

### 1.1.1   ACQUISITION OF PROOF OF CITIZENSHIP VIA MVD RECORDS

The Secretary of State must program or enable the statewide voter registration database to attempt to acquire proof of citizenship for new registrants from Arizona MVD records. This attempt to acquire proof of citizenship must be completed in all cases where a new registrant fails to provide documentary proof of citizenship with the voter registration form. The Secretary shall promptly notify the applicable County Recorder of the results of the check against MVD records. If proof of citizenship is acquired, the Secretary shall promptly notify the applicable County Recorder, via the automated process in the database, to make the applicant a "full-ballot" voter.  However, in no event shall an acquired "F-Type" Arizona driver's license number qualify as valid proof of citizenship.

A County Recorder may also acquire proof of citizenship for prior registrants who attempted to register to vote anytime after January 1, 2017 using a State Form but whose State Forms were previously rejected due to lack of documentary proof of citizenship.[3] In that case, the County Recorder must:

---

[1] A "full-ballot" voter is entitled to vote in all federal, statewide, or local elections for which the registrant is qualified to vote.

[2] A.R.S. § 16-166(F).

[3] Pursuant to the LULAC Consent Decree, Maricopa County is required to attempt to acquire documentary proof of citizenship for all registrants dating back to January 1, 2017 if the registrant was rejected for failure to provide documentary proof of citizenship. Retrospective acquisition of proof of citizenship for previously rejected applicants is optional for counties other than Maricopa County.

- Ensure the registrant has not moved, become deceased, or already registered before registering the voter based on information supplied on the prior registration form; and

- Timely send the registrant a voter identification card that identifies the registrant's status.

## 1.1.2  FAILURE TO ACQUIRE PROOF OF CITIZENSHIP VIA MVD RECORDS

If a registrant does not provide documentary proof of citizenship with his or her voter registration form and valid proof of citizenship cannot be electronically acquired via MVD records or the statewide voter registration database, a County Recorder must perform the following actions.

If the registrant is shown to have an "F-Type" Arizona driver's license and the registrant has not provided proof of citizenship (other than an Arizona driver's license or non-operating license number), a County Recorder must:

- Enter the registrant's information into the voter registration database with a status of "Not Eligible" and a reason code of "Invalid Citizenship Proof";

- Send a letter to the registrant (including a proof of citizenship submission form) within 10 business days, informing the registrant that:

  - According to MVD records, the registrant holds an F-type license indicating noncitizenship and has not been registered to vote for that reason; and

  - The registrant may be registered and become a "full-ballot" voter if the registrant submits valid documentary proof of citizenship to the County Recorder. The registrant must provide such proof of citizenship by 5:00 p.m. on the Thursday before any given election in order to vote a full ballot in that election.

- Maintain the registrant's information in the voter registration database with a status of "Not Eligible" and a reason code of "Invalid Citizenship Proof" for four years if the registrant has not provided valid documentary proof of citizenship. If, after four years the next regular general election, the registrant still has not provided valid documentary proof of citizenship, the registrant's record may be canceled changed to "Not Registered." The registrant would then be required to complete a new registration form in order to become eligible to vote in future elections.

If valid proof of citizenship otherwise cannot be electronically acquired via MVD records or the statewide voter registration database, and the registrant is not shown to have an F-type license, a County Recorder must:

- Designate the registrant as a "federal-only" voter;[4] and

- Send a letter to the registrant (including a proof of citizenship submission form) within 10 business days, informing the registrant that:

---

[4] A "federal-only" or "Fed-Only" voter is an individual who is registered to vote solely in elections for federal office in Arizona.

- The registrant has not satisfied the proof of citizenship requirements;
- The registrant must submit documentary proof of citizenship to become a "full-ballot" voter. The registrant must provide documentary proof of citizenship by 5:00 p.m. on the Thursday before any given election in order to vote a full ballot in that election; and
- The registrant will remain a "federal-only" voter unless and until the registant submits valid documentary proof of citizenship to become a "full-ballot" voter.

## 1.1.3   DELAYED RECEIPT OF PROOF OF CITIZENSHIP

Even if a registrant does not provide documentary proof of citizenship at the time of submitting the registrant's voter registration application or by the voter registration deadline, the registrant is nonetheless entitled to vote a full ballot at the next election if:

- The registrant submitted a voter registration application by the voter registration deadline; and
- The registrant separately provides documentatary proof of citizenship to the County Recorder by 5:00 p.m. on the Thursday before the election.

A registrant may provide separate proof of citizenship by using the proof of citizenship submission form promulagated by the Secretary of State and County Recorders. A registrant who provides proof of citizenship using a method other than the official proof of citizenship submission form may be made a "full-ballot" voter if the County Recorder has sufficient information to link the registrant's proof of citizenship with the registrant's form on file. If the County Recorder lacks sufficient information to link the proof of citizenship to a registration form, the County Recorder may follow up with the registrant to seek the missing information necessary. Registrants who subsequently provide the missing information necessary to link their submitted proof of citizenship to their registration form shall be made "full-ballot" voters within ten business days.

If the registration is received after the voter registration deadline, or the registrant provides documentary proof of citizenship to the County Recorder *after* 5:00 p.m. on the Thursday before the next election, the County Recorder must make the registrant a "full-ballot" voter for future elections within five business days after the completion of processing provisional ballots.

## 1.1.4   MOVING BETWEEN COUNTIES

A voter who registered to vote before December 8, 2004, and was therefore exempted from the requirement of providing evidence of citizenship, must submit valid documentary proof of citizenship if the voter is changing voter registration from one county to another in order to be registered as a "full-ballot" voter in the new county.[5]

---

[5] A.R.S. § 16-166(G).

Registered voters who submitted valid documentary proof of citizenship to the County Recorder in their county of residence need not resubmit evidence of citizenship upon moving and registering to vote in a new county in Arizona so long as a record of their previously-submitted proof of citizenship is accessible by the new County Recorder (e.g. via MVD records or the statewide voter registration database) and can be made part of their voter registration file in the new county. While proof of voter *registration* from another state or county is not satisfactory evidence of citizenship,[6] valid documentary proof of *citizenship* presented in one Arizona county and documented in the statewide voter registration database constitutes valid proof of citizenship if the voter registers in another county in Arizona.

## 1.2   USE OF STATE OR FEDERAL FORM TO REGISTER FOR FEDERAL ELECTIONS

A registrant who submits an otherwise valid voter registration form to the County Recorder, but without accompanying documentary proof of citizenship, is entitled to be registered as a "federal-only" voter based on the registrant's sworn statement on the voter registration form that he or she is a U.S. citizen. A registrant may become a "federal-only" voter regardless of the type of voter registration submitted, including but not limited to a State Form, Federal Form, Federal Post Card Application (FPCA), Federal Write-In Absentee Ballot (FWAB), or the In-Person MVD voter registration process. A registrant who submits an otherwise valid voter registration form to the County Recorder, but without providing accompanying documentary proof of citizenship, shall be accepted, entered into the database, and registered for federal elections (i.e. made a "federal-only" voter unless and until proof of citizenship is received or acquired), so long as the registrant is not shown to have an F-type license.

A "federal-only" voter shall be upgraded to a "full-ballot" voter if:

- The registrant provides documentary proof of citizenship to the County Recorder by 5:00 p.m. on the Thursday before an election; or
- The County Recorder acquires documentary proof of citizenship on the registrant's behalf.

## 1.3   ISSUANCE OF EARLY BALLOTS

If a "federal-only" voter has been issued an early ballot, but becomes a "full-ballot" voter prior to 5:00 p.m. on the Thursday before the election, the voter may:

- Vote the early *federal-only* ballot; *or*
- Vote a regular or provisional *full* ballot during early voting or on Election Day, depending on the procedures implemented by the officer in charge of elections.

---

[6] A.R.S. § 16-166(H).

# Exhibit 14

Judith M. Dworkin (No. 010849)
Marvin S. Cohen (No. 00923)
Patricia Ferguson-Bohnee (No. 020996)
Javier G. Ramos (No. 017442)
SACKS TIERNEY P.A. (No. 00182000)
4250 N. Drinkwater Blvd., Fourth Floor
Scottsdale, AZ 85251-3693
Telephone:  (480) 425-2600
Marvin.Cohen@sackstierney.com
Judith.Dworkin@sackstierney.com
Patty.Ferguson@sackstierney.com
Javier.Ramos@sackstierney.com

Louis Denetsosie
The Navajo Nation, Dept. of Justice
P.O. Drawer 2010
Window Rock, Arizona 86515
Telephone:  (928) 871-6275
Facsimile:  (928) 871-6177
louisdenetsosie@navajo.org

Attorneys for Plaintiffs Navajo Nation and
Agnes Laughter

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

|  |  |
|---|---|
| MARIA M. GONZALEZ, et al., | No.  CV 06-1268-PHX-ROS (LEAD)<br>CV 06-1362-PHX-ROS<br>CV 06-1575-PHX-ROS |
| Plaintiffs, |  |
| v. | **JOINT STIPULATION TO DISMISS PENDING APPROVAL OF CHANGES TO PROCEDURES** |
| STATE OF ARIZONA; et al., |  |
| Defendants. | (Assigned to the Honorable Roslyn O. Silver) |
|  | **(Consolidated)** |

The Navajo Nation and Agnes Laughter ("Navajo Plaintiffs"), Arizona Secretary of

State and Janice Brewer ("State Defendants") and Patty Hansen, the Election Administrator

for Coconino County, Arizona; Penny Pew, the Elections Director for Apache County,

Arizona; Lisa McKee, the Elections Director for Navajo County, Arizona; Candace Owens,

the Coconino County Recorder; LeNora Johnson, the Apache County Recorder; and Laurette Justman, the Navajo County Recorder (the "County Defendants"), (collectively, the "Stipulating Parties"), by and through undersigned counsel, hereby stipulate to the following:

1.      The Navajo Plaintiffs filed a complaint on June 20, 2006, Case No. CV 06-1575, seeking mandamus, declaratory judgment, and injunctive relief to prevent the enforcement of the proof of identification requirement for voting at the polls enacted pursuant to Proposition 200, A.R.S. § 16-579 and the "Procedure for Proof of Identification at the Polls" ("Procedures") prescribed by the State Defendants and the County Defendants.

2.      The Arizona Secretary of State believes revision to the Procedures, as described herein, would benefit Arizona's Native American electors, to whom the procedures described herein apply.

3.      Adoption by the State Defendant of the following revised Procedures ("Revised Procedures"):

An elector who identifies himself or herself as a member of a federally recognized Native American tribe and who does not provide one form of identification that bears the name, address, and photograph of the elector or two different forms of identification that bear the name and address of the elector shall be issued a regular provisional ballot upon presenting one form of tribal identification that bears the name of the elector. <u>Acceptable forms of tribal identification include (but are not limited to): a tribal identification or enrollment card issued under the authority of a federally recognized Indian tribe, nation, community, or band ("tribe"), a tribal subdivision or the Bureau of Indian Affairs; or a Certificate of Indian Blood issued to a tribal member under the authority of a tribe or by the Bureau of Indian Affairs; or a voter registration card for tribal elections issued under the authority of a tribe; or a home site assignment lease, permit or allotment issued under the authority of a tribe, tribal subdivision, or by the Bureau of Indian Affairs; or a grazing permit or allotment issued to a tribal member under the authority of a tribe, tribal subdivision, or by the Bureau of Indian Affairs.</u>

4.      Prompt initiation by the Secretary of State of the actions required for preclearance by the United States Department of Justice of the Revised Procedures set forth in Paragraph 2.

683363

2

5. In anticipation of preclearance of the Revised Procedures by the Department of Justice, the modification, as follows, of certain dates in the Final Amended Scheduling Order dated March 27, 2008, in order to avoid additional litigation expense:

    a. Paragraph E, rebuttal testimony of Navajo Plaintiffs' expert extended from March 21, 2008 to May 23, 2008.

    b. Paragraph F, completion of discovery extended from March 28, 2008 to June 4, 2008.

6. Upon preclearance of the Revised Procedures by the United States Department of Justice, the dismissal of all claims in Case No. CV 06-1575-PHX-ROS without prejudice, subject to the provisions of Paragraph 7 below, and in conformity with Rule 41(a)(2).

7. The entry by the Court of the accompanying form of Order dismissing all claims in Case No. CV 06-1575-PHX-ROS upon notification to the Court that the United States Department of Justice has precleared the Revised Procedures.

8. So long as the Revised Procedures remain in effect and are effectively implemented, the Navajo Plaintiffs will not bring any action against any of the Defendant parties that challenges Proposition 200, A.R.S. § 16-579, or the Revised Procedures on their face or as applied and any action brought by the Navajo Plaintiffs in violation of this stipulation shall be subject to dismissal.

9. In the event that the Department of Justice has not precleared the Revised Procedures as of May 19, 2008, this Stipulation shall become null and void unless extended in writing by the parties.

10. The parties agree that upon dismissal, each party shall bear its own attorney fees and costs incurred in this action.

* * *

* * *

683363

3

DATED this 18th day of April, 2008.

SACKS TIERNEY P.A.


By:  s/ Judith M. Dworkin
    Judith M. Dworkin
    Marvin S. Cohen
    Patricia Ferguson-Bohnee

    Attorneys for Plaintiffs Navajo Nation and
    Agnes Laughter


DATED this 18th day of April, 2008.

STATE OF ARIZONA


By:  s/Mary O'Grady
    Mary O'Grady
    Barbara A. Bailey
    Carrie J. Brennan

    Attorneys for Defendant Secretary of State


DATED this 18th day of April, 2008.

NAVAJO COUNTY


By:  s/ Lance B. Payette
    Melvin R. Bowers, Jr.
    Lance B. Payette

    Attorneys for Defendant Lisa McKee, Navajo
    County Elections Director and Laurette
    Justman, Navajo County Recorder

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

DATED this 18th day of April, 2008.

COCONINO COUNTY

By:___s/Jean E. Wilcox_____
       Jean E. Wilcox

       Attorneys for Defendant Patty Hansen,
       Coconino County Elections Administrator
       and Candace Owens, Coconino County
       Recorder

DATED this 18th day of April , 2008.

APACHE COUNTY

By:___s/Criss E. Candelaria_____
       Criss E. Candelaria
       Bradley Carlyon

       Attorneys for Defendant Penny Pew,
       Apache County Elections Director and
       LeNora Johnson, Apache County Recorder

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251–3693

683363

5

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2008, a complete, duplicate copy of this document was forwarded directly to Judge Roslyn O. Silver by First Class Mail, at the following addresses:

Hon. Roslyn O. Silver
United States District Court, Suite 624
401 W. Washington Street, SPC 59
Phoenix, Arizona 85003

                     s/ Judith M. Dworkin

I hereby certify that on April 18, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, if any:

Daniel R. Ortega, Jr.
Roush McCracken Guerrero Miller & Ortega
650 N. 3rd Avenue
Phoenix, Arizona 85003
Email: danny@rmgmoinjurylaw.com

Nina Perales
Mexican American Legal Defense and Education Fund
110 Broadway, Ste. 300
San Antonio, Texas 78205
Email: nperales@maldef.org

Attorneys for Plaintiffs

David B. Rosenbaum
Thomas L. Hudson
Sara S. Greene
Osborn Maledon, P.A.
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012
Email: drosenbaum@omlaw.com
Email: thudson@omlaw.com
Email: sgreene@omlaw.com

David J. Bodney
Karen J. Hartman-Tellez
Steptoe & Johnson LLP
Collier Center
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004-2382
Email: dbodney@steptoe.com
Email: khartman@steptoe.com

683363

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
Jon Greenbaum
Benjamin Blustein
1401 New York Avenue, Suite 400
Washington, D.C. 20005
Email: jgreenbaum@lawyerscommittee.org
ADMITTED PRO HAC VICE

ACLU Southern Regional Office
Neil Bradley
2600 Marquis One Tower
245 Peachtree Center Avenue
Atlanta, GA 30303
Email: nbradley@aclu.org
ADMITTED PRO HAC VICE

PEOPLE FOR THE AMERICAN WAY
FOUNDATION
Elliot M. Mincberg
2000 M Street, NW, Suite 400
Washington, D.C. 20036
Email: emincberg@pfaw.org
ADMITTED PRO HAC VICE

AARP FOUNDATION LITIGATION
Daniel B. Kohrman
601 E Street, N.W., Suite A4-240
Washington, D.C. 20049
Email: dkohrman@aarp.org
ADMITTED PRO HAC VICE

THE INTER TRIBAL COUNCIL OF
ARIZONA, INC.
Joe P. Sparks
Susan B. Montgomery
Sparks, Tehan & Ryley P.C.
7503 First Street
Scottsdale, AZ 85251

David J. Becker
People for the American Way Foundation
2000 M Street, NW, Suite 400
Washington, D.C. 20036
Email: dbecker@pfaw.org
PRO HAC VICE APPLICATION PENDING

Attorneys for Plaintiffs The Inter Tribal Council of Arizona, Inc., et al.

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

683363

1  Mary O'Grady
   Carrie J. Brennan
2  Assistant Attorney General
   Office of the Attorney General
3  1275 W. Washington
   Phoenix, Arizona 85007
4  Email: mary.ogrady@azag.gov
   Email: Carrie.Brennan@azag.gov
5
   Barbara A. Bailey
6  Assistant Attorney General
   Office of the Attorney General
7  1275 West Washington
   Phoenix, Arizona 85007
8  Email: Barbara.Bailey@azag.gov

9  Attorneys for Defendants State of Arizona, and
   Secretary of State Jan Brewer
10
   M. Colleen Connor
11 MCAO Division of County Counsel
   222 N. Central Avenue, Ste. 1100
12 Phoenix, Arizona 85003
   Email: connorc@mcao.maricopa.gov
13
   Dennis I. Wilenchik
14 Kathleen Rapp
   Wilenchik and Bartness, P.C.
15 The Wilenchik & Bartness Building
   2810 North Third Street
16 Phoenix, Arizona 85004
   Email: diw@wb-law.com
17 Email: kathleenr@wb-law.com

18 Attorneys for County Defendants

19 Criss E. Candelaria
   Bradley Carlyon
20 Apache County Attorney's Office
   P.O. Box 637
21 St. Johns, Arizona 85936
   Email: bcarlyon@apachelaw.net
22 Attorneys for Apache County

23 Melvin R. Bowers, Jr.
   Lance B. Payette
24 Navajo County Attorney's Office
   P.O. Box 668
25 Holbrook, Arizona 86025
   Email: lance.payette@co.navajo.az.us
26 Attorneys for Navajo County

27

28
   683363

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

8

Barry Klopfer
Navajo County Department of Justice
P.O. Box 2010
Window Rock, Arizona 86515
Telephone: 928-871-6275
Fax: (928) 871-7570
Email: barrydoj@hotmail.com
Attorneys for Navajo County

Jean E. Wilcox
Coconino County Attorney's Office
110 East Cherry Ave.
Flagstaff, AZ 86001
Email: jwilcox@coconino.az.gov
Attorney for Coconino County


s/ Judith M. Dworkin

SACKS TIERNEY P.A., ATTORNEYS
4250 NORTH DRINKWATER BOULEVARD
FOURTH FLOOR
SCOTTSDALE, ARIZONA 85251-3693

683363

# Exhibit 15

## 2492/2243 Reminders

Kori Lorick <KLorick@azsos.gov>

Fri 12/30/2022 8:10 AM

Cc: Colleen Conner   CConner@azsos.gov ;Keely Varvel   kvarvel@azsos.gov ;Amy Chan <achan@azsos.gov>

Bcc: Yolanda Morales <ymorales@azsos.gov>;Russ Smith <rsmith@azsos.gov>;Angel Aguilar <aaguilar2@santacruzcountyaz.gov>;Angela Gatchell <agatchell@co.apache.az.us>;Beverly Bullington BBullington@cochise.az.gov ;Charlotte Williams (cwilliams@gilacountyaz.gov) <cwilliams@gilacountyaz.gov>;Dannee Roan <droan@co.apache.az.us>;Donna Casner <dcasner@coconino.az.gov>;Donna Diaz <donna.diaz@pinal.gov>;Donna Hurstrom <Donna.Hurstrom@navajocountyaz.gov>;Erma Allen <AllenE@mohave.gov>;Geneva Jackson gjackson@co.apache.az.us ;Guadalupe Chavez   Guadalupe.Chavez@yumacountyaz.gov ;Gwyn Villescas <gvillescas@graham.az.gov>;Heather Lopez <hlopez@cochise.az.gov>;Hilary Hiser <Hilary.Hiser@recorder.pima.gov>;Holly Robinson <holly.robinson@pinal.gov>;Janine Petty <jpetty@risc.maricopa.gov>;Joann Munoz <Joann.Munoz@yumacountyaz.gov>;Jose Lerma jose.lerma@navajocountyaz.gov

📎 1 attachments (73 KB)

Updated December 2022 Legi lative Policy Draft docx

All-

It's been several weeks since we last discussed implementation of HB 2492 and HB 2243, both of which go into effect January 1, 2023. If you'll recall, we met several times throughout the year to review implementation and the resulting impacts to the VR system as well as voter registration procedures. Several questions remained as to whether we could implement requirements that would conflict with the NVRA, federal settlements, and court cases.

Having thoroughly analyzed the changes that both bills require, the Secretary of State's Office believes that there is no way to implement certain requirements without conflicting with federal law. Given the Supremacy Clause in the United States Constitution, U.S. Const. art. VI, cl. 2, federal law should prevail in these instances, so our office will not be implementing those provisions.

For your reference, I'm including the policy document that we discussed at prior meetings. I've noted which provisions we interpret as conflicting with federal law, including:

- Documentary Proof of Residency for the federal form

- Place of Birth requirement

- Citizenship Checkbox requirement if an applicant otherwise provides DPOC, or DPOC can be acquired based on the provided information

- Documentary Proof of Citizenship for federal elections

I'm including detailed notes in the attached document that we have previously reviewed together. Please consult your county attorney for legal advice on this matter  I've cc'd the new administration on this email, so they can continue working with you on these issues.

Thank you,
Kori

AZSOS-000001

1/2

AZSOS-000002

# Exhibit 16

**VRAC Legislative Policy Updates**

This document serves as a policy guide to legislative updates made in 2022 that impact voter registration. Please reference the 2022 Election Law Updates for a full list of legislative updates.

**Timeline**

- The General Effective date for most legislation is September 24, 2022.
- Because H.B. 2243 makes amendments to A.R.S. 16-165 <u>on top of</u> the amendments enacted by H.B. 2492, it is not possible to reverse engineer what the changes would be if the H.B. 2492 changes are not in effect, and the Secretary believes it is not possible to operationalize H.B. 2243's amendments to A.R.S. 16-165 until H.B. 2492 is in effect. H.B. 2492 has a delayed effective date of January 1, 2023. See S.B. 1638.
- The Early Ballot Tracking system as required by S.B. 1411 does not need to be in place until January 1, 2024. In the meantime, please refer voters to my.arizona.vote, which provides this service for the 13 counties and refers Pima/Maricopa voters to their websites.

**Policy Updates**

*S.B. 1260 Cross-county voter registration cancellations*

- **Takeaway**: No major development or change is needed. Our current systems ensure that a voter's record is merged when they register in a new county.
  - o **Update following 1260 litigation**: Add statement to VR form so that voter knows their registration in a new county will cancel their registration in their former county.
- **Statutory changes**:

  - • A.R.S. § 16-165(A)(10): requires the county recorder to cancel a voter's registration when the county recorder receives confirmation from another county recorder that the voter has registered to vote in that other county.
    - o A.R.S. § 16-165 (B): "If the county recorder receives credible information that a person has registered to vote in a different county, the county recorder shall confirm the person's voter registration with that other county and, on confirmation, shall cancel the person's registration pursuant to" A.R.S. § 16-165(A)(10).
  - • A.R.S. § 16-544(Q): requires the county recorder to remove a voter from the AEVL when the county recorder receives confirmation from another county that the person registered to vote in the other county.
    - o A.R.S. § 16-544(R): "If the county recorder receives credible information that a person has registered to vote in a different county, the country recorder shall confirm the person's voter registration with that other county and, on confirmation, shall remove that person from the county's [AEVL] pursuant to" A.R.S. § 16-544(Q).

- **Action Items**: The voter registration system already accomplishes the intent of this statute; voters will be merged, and the non-surviving record will not be active. Update VR form.
- **Potential Areas for Improvement:** The State should periodically take the Internal Duplicate Report from ERIC as an audit on our systems.

---

### *S.B. 1460 (List Maintenance, ACP)*

---

- **Takeaway**: S.B. 1460 contains two voter registration implications (among other things). First, it allows counties to use reports from services like ERIC that identify a change of address as a first notice in the NVRA process. Second, it modifies voter registration procedures for ACP secure voters.
- **Statutory Changes**:
    o   A.R.S. § 16-166(E): allows county recorders to use the information provided by an electronic voter registration information center to identify registered voters whose addresses may have changed and move the voter to inactive status if they fail to respond to a notice within 35 days.

    o   A.R.S. § 41-166(D): When a person with an existing voter registration record becomes an Address Confidentiality Program (ACP) participant, the SOS must secure the participant's voter registration record and notify the county recorder of the participant's:
        - Secured status;
        - Current residence address; and
        - Substitute address for the county recorder to revise the participant's voter registration record.
    An ACP participant who is not already registered to vote may register to vote using the substitute address and must provide the election official with the participant's actual residence address for precinct designation purposes.

    o   A.R.S. § 41-166(E): the ACP substitute address shall not be used as an actual residence address for voter registration.

- **Action items**:
    o   *List maintenance*: Given the inconsistency in the cross-state report we last received from ERIC, it's not recommended that this report be used as a first notice until further confirmation from ERIC about how they match and refine the data. Because the legislative change is permissive, we can work on figuring out the data issue after the General Election and decide if the Counties want to take this report again. There is a current VRAC paper associated with processing this report, which could be modified to reflect the update.
    o   *ACP*:
        ▪   For ACP registrants with an existing voting record:
            - ACP will secure the existing voter record upon acceptance of a complete application
                o   What happens to records that are secured but
                o   What happens if residential address has changed?
                o   Ballot returned to county but no explanation; sticky note about what county a voter went to?

- ACP will provide a letter to the County notifying them of the registrant's secure status, residential address, and secure address via a secure fileshare. If ACP receives a secure voter registration packet, they will also provide this to the county to update the person's residential address (if needed).
    - Can counties include documentation in the record?
  - If the residential address in the notice (not the secure packet) is different from what is in the voter record, the County should send an official election mailing to the registrant's secure mailing address asking the registrant to update their voter registration via the ACP's secure voter registration form. This situation may arise if the voter does not return the secure voter registration packet and has provided a different residential address to ACP than what the county has on file.
    - For ACP registrants without an existing record:
      - ACP will provide them with a secure voter registration packet, and if they complete it, ACP will mail it to the County to register the person as an ACP secure voter.
- **Potential Areas of Improvement:**
  - Future legislative change allowing the counties to update the residential address based on the ACP application?
  - Work with ERIC to improve the quality of data in the cross state and NCOA reports.

### S.B. 1477 (List Maintenance – Felony Records)

- **Takeaway:** The SOS regularly receives felon and incapacitated records from the superior courts (as well as felon records from the federal government). This statute formalizes that process, so no development should be needed.

- **Statutory Changes:**

  - A.R.S. § 16-123: requires the clerk of the superior court to transmit a record of felony convictions in that county in the preceding month to the SOS.
    - The record shall include only the name of the person convicted, date of birth, social security number, usual legal residence (if available), and father's name or mother's maiden name (if available).
    - The SOS "shall use the record for the sole purpose of canceling the names of convicted felons from the statewide voter registration database and shall notify the appropriate county recorder, [who] shall cancel the voter registration of the convicted felon."
- **Action Items:** None. The SOS imports this file into AVID already, and the system runs the matching criteria as outlined in the EPM. Hard matches are automatically cancelled, and soft matches will go to the county's dashboard.

- A "hard match" occurs when the first three letters of the first and last name, DOB, and SSN4 match an existing registrant record. In this case, the registrant's record is automatically placed in "canceled" status with the reason code of "felony – automatic resolution" or "declared incapacitated – automatic resolution" (or functional equivalent).
- A "soft match" occurs when the first three letters of the first and last name and DOB match an existing registrant record (or there is a "hard match" against more than one existing record in the database). In this case, the system will flag the record for individual resolution by the applicable County Recorder. If the County Recorder finds a "true match," the record may be placed in "canceled" status with the reason code "felony" or "declared incapacitated" (or functional equivalent). The County Recorder must send a letter to the registrant confirming any cancellation based on a felony conviction or finding of mental incapacitation.

- **Potential Areas of Improvement**: None identified.

---

### H.B. 2243 (List maintenance – Non-citizen; Out-of-State)

---

**Takeaway:** Part of this legislation does not go into effect until January 1, 2023. The part that goes into effect as of September 24 requires a change to the voter registration form (which will be updated but counties can continue to use the forms you have in stock at least for the remainder of this year). The rest of the legislation requires several policy and development items. There is ongoing litigation and a Preliminary Injunction has been requested.

**Statutory Changes (Green goes into effect in September):**

- **VR Form:** A.R.S § 16-152(A)(24), the state voter registration form must include the statement "if a registrant permanently moves to another state after registering in this state, the registrant's voter registration will be cancelled."

- **Causes for Cancellation**
  - A.R.S. § 16-165(A)(9): the county recorder shall cancel a voter registration when the county recorder:
    - (a) Receives a form pursuant to §16-165(E) "on which the person has confirmed that the person is not a resident of this state." (This would follow the notice from ADOT of an out-of-state address)
    - (b) "Receives a summary report from the jury commissioner or manager pursuant to [§ 21-314] indicating that the person has stated that the person is not a resident of the county."
      - Before canceling the registration pursuant to this subdivision, "the county recorder shall send the person notice by forwardable mail and a postage prepaid preaddressed return form requesting the person confirm by signing under penalty of perjury that the

person is a resident of the county and is not knowingly registered to vote in another county or another state."

- "The notice shall inform the person that failure to return the form within 35 days will result in the person's voter registration being canceled. If the person fails to return the notice within 35 days, the county recorder shall cancel the person's registration."

o A.R.S. § 16-165(A)(10): the county recorder shall cancel a voter registration "when the county recorder obtains information pursuant to this section and confirms that the person registered is not a United States citizen, including when the county receives a summary report from the jury commissioner or manager pursuant to § 21-314 indicating that a person who is registered to vote has stated that the person is not a United States citizen."

  ▪ Before cancelling a registration pursuant to this paragraph, the county recorder shall send the person notice by forwardable mail that the person's registration will be canceled in 35 days unless the person provides satisfactory DPOC. The notice must include a list of DPOC the person may provide and a postage prepaid preaddressed return envelope.

  ▪ If the person doesn't provide DPOC within 35 days, the county recorder shall cancel the registration and notify the county attorney and AG for possible investigation.

- **ADOT Out-of-State License List**

  o A.R.S. § 16-165(F): requires ADOT to furnish (monthly, and without charge) a list to the SOS of persons who ADOT has been notified have been issued a driver license or the equivalent of an Arizona nonoperating identification license in another state.

  o Within 10 days of receiving the list, the SOS must provide to the appropriate county recorder a list of registered voters in that county who have been issued a driver license or equivalent from another state.

  o The county recorder shall "promptly send notice by forwardable mail" to each person on the list along with "a postage prepaid preaddressed return form requesting the person sign under penalty of perjury that the person is a resident of this state and not knowingly registered to vote in another state or confirm that the person is not a resident of this state."

    ▪ "The notice must inform the person that failure to return the form within 90 days will result in the person's voter registration being placed in **inactive** status. . . . If the person fails to return the form within 90 days, the [CR] shall place the person's [] registration in inactive status."

- **ADOT/VR Database Comparison (SOS)**

  o A.R.S. § 16-165(G): requires the SOS to: (1) compare the statewide VRDB to the ADOT driver license database each month; and (2) notify the appropriate county recorder "if a person who is registered to vote in that county has changed the person's residence address or is not a United States citizen."

- **Database Comparison (County)**

  o A.R.S. § 16-165(H): "To the extent practicable, each month the county recorder shall compare the county's voter registration database to the social security administration database."

  o A.R.S. § 16-165(I): To the extent practicable, each month the county recorder shall compare (1) "persons who are registered to vote in that county and who the

county recorder has reason to believe are not United States citizens," and (2) persons who are registered to vote without DPOC, with the SAVE database maintained by USCIS in order to verify the citizenship status of the persons registered.

- A.R.S. § 16-165(J): For persons registered to vote without DPOC, "the county recorder shall compare the electronic verification of vital events system maintained by a national association for public health statistics and information systems, <u>if accessible</u>, with the information on the person's voter registration file."

- A.R.S. § 16-165(K): "<u>To the extent practicable</u>, the county recorder shall review relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registrations pursuant to this section."

- **Notice of Cancellation**
  - A.R.S § 16-165(L): "After canceling a registration pursuant to this section, the county recorder shall send a notice by forwardable mail informing the person that the person's registration has been canceled, the reason for cancellation, the qualifications of electors pursuant to § 16-101 and instructions on registering to vote if the person is qualified."

- **SOS Report to Legislature:**
  - Adds A.R.S. § 16-165(M), which requires the SOS to report the following information to the Legislature at the end of each quarter:
    - (1) The number of deaths reported to the SOS by ADHS, the number of cancellation notices "issued by the [SOS] to the county recorders as a result of those reports," and the number of registrations canceled as a result of those notices.
    - (2) The number of persons reported to the SOS as having been issued a driver license or equivalent in another state, the number of notices sent pursuant to § 16-165(E), and the number of registrations placed in inactive status and canceled as a result of those notices.
    - (3) The number of persons who have stated on a jury questionnaire that the person is not a U.S. citizen, the number of notices sent, and number of registrations canceled as a result of the notices.
    - (4) The number of persons who have stated on a jury questionnaire that the person is not a resident of the county, the number of notices sent, and number of registrations canceled as a result of the notices.
    - (5) The number of registrations on the inactive voter list that have been canceled pursuant to § 16-165(A)(7).

- **Juror Questionnaire:**
  - A.R.S. § 21-314(B): specifies that juror questionnaires "shall inform the person that disqualification from jury duty as a result of responding to the juror questionnaire that the person is not a resident or is not a United States citizen will result in the person's voter registration being canceled."
  - A.R.S. § 21-314(F): requires the jury commissioner or jury manager to forward to the SOS and county recorder a summary report derived from jury questionnaire data containing information that indicates that the person is not a citizen or does not reside in the county.
    - The report must only contain information necessary for to accurately identify the person in the voter registration database

**Action Items:**

1. **VR form:** The SOS will incorporate this phrase into the template and circulate to all counties. Counties should use their existing forms at least through the beginning of next year.
   o **Done.**

2. **Causes for Cancellation:**

**ADOT Process (Out of State license list)**

- ADOT will provide the SOS with a monthly file the first Tuesday of each month as a .txt. The file will contain: Full name, Dob, state issued ID number, SSN4, and date of ADOT cancellation (records will only be captured once).
- SOS is working with ADOT on getting this file.

   **AVID/VR Process**

- We will need an AVID enhancement for this import. The SOS has 10 days upon receipt of the monthly data to import it into AVID. All matches will go to a queue for the County to review and send a notice if a hard match exists.
  - Create a template notice and add a 90-day hook to move the record to "inactive" if the registrant does not respond.
  - Notice only goes to hard matches or true matches. The County does not need to do anything for records that they cannot determine are a match.
  - Notice sent by forwardable mail. Notice must include a postage prepaid preaddressed return form requesting the person confirm by signing under penalty of perjury that the person is a resident of this state and is not knowingly registered to vote in another state or confirm that the person is not a resident of this state. The notice shall inform the person that failure to return the form within ninety days will result in the person's registration being placed in inactive status.
  - If the form is returned by the voter confirming the voter has moved, then cancel the voter. If it is returned confirming the voter resides in Arizona at the address on file, then the voter remains active. If no return, after 90-days, the voter becomes inactive.

**Juror Questionnaire Process (County residency and citizenship)**

- Court will provide a summary report to the SOS and relevant County. The SOS will work to determine how frequently we should expect these reports and content.
- The report will be in a .csv file.

   **AVID/VR Process**

- Development is needed to import this record into AVID.
- Any match, hard or soft, will populate in the county's queue for review. Hard and true matches who do not have DPOC on file or previously documented must be sent a notice.
  - Create notice template in AVID with a 35-day hook. If the person fails to respond in 35 days, then the registration will be moved to inactive status.

- Notice must be sent by forwardable mail with a postage prepaid, preaddressed return form;
  - For residency questions: the voter must confirm by signing under penalty of perjury that the person is a resident of the county and is not knowingly registered to vote in another county or another state. The notice must inform the voter that their registration will be placed in inactive status if they fail to return the form within 35 days.
  - For citizenship questions: the notice must inform the voter they need to provide satisfactory evidence of U.S. citizenship (16-166) and the notice must include a list of satisfactory documents. The notice should inform the voter that their registration will be placed in inactive status in 35 days and that they will be referred to the county attorney and attorney general.
    - If someone responds after 35 days with satisfactory DPOC, the County should inform the AG/County Attorney if a referral was already made. If the record was already placed in inactive status, then the voter should be returned to active status.
    - If a voter already has satisfactory DPOC on file or has had DPOC confirmed, then county does not need to refer or send notice to the voter if they appear on the list.
- If the person registered does not provide satisfactory evidence within thirty five days, the county recorder must move the voter to inactive status and follow the NVRA timeline for cancelling the voter's registration. The county recorder should notify the county attorney and attorney general for possible investigation.
  - County needs a tracking mechanism for referrals. This could be a report in AVID that the county runs every quarter -> would require AVID development. Counties should discuss at VRAC/Enhancement; this is not urgent development.

**3. ADOT/VR Database Comparison (SOS):**
- The SOS is exploring options with ADOT, but nothing is currently feasible to fulfill this requirement. Their database is too large to do a comparison through the API (for example, we'd need to break it up and run $1/30^{th}$ every night). ETA unknown.

**4. Database Comparison (County):**
- SSA checks will remain in place when someone registers.
- SAVE does not permit us to query the database for purposes other than initial registration. If a county uses it for more than this, Arizona's membership may be revoked. Please keep in mind that SAVE only contains data for individuals who have become U.S. citizens. It will not contain information on every U.S. citizen, so its utility is extremely limited.
- Based on discussions with the counties, no county currently has access to the databases listed in 16-165 subsections J and K.
  - Reasonable cause to believe a voter is not a U.S. citizen must be based on documentation from the voter or from a government organization that the voter is not a U.S. citizen.
  - If any county gains access to the databases listed in this section and determines that someone may not be a U.S. citizen, then the county should send the voter a

letter requesting proof of citizenship pursuant to A.R.S. 16-165(A)(10) and follow the NVRA process for moving a voter to inactive then cancelled status.

**5.** **Notice of Cancellation**
- The County must send a cancelation notice to anyone canceled pursuant to A.R.S. 16-165. Notice must be sent by forwardable mail and inform the person that the person's registration has been canceled, the reason for cancellation, the qualifications of electors pursuant to § 16-101 and instructions on registering to vote if the person is qualified.
- Action item: Is any VR system development needed?

**6.** **SOS Report to Legislature:**
- The SOS must report 5 areas to the legislature at the end of each quarter. AVID dev is needed to pull some of these reports.
- *Deaths*:

    i. The number of deaths reported to the secretary of state by the department of health services. (SOS has this data)
    ii. The number of voter registration cancellation notices issued by the secretary of state to the county recorders as a result of those reports.
        1. (AVID/Interface development: Status Reason- Deceased/AZDHS; SOS would report the records with an effective date of change during the quarter and a corresponding status reason. Any other ideas?)
    iii. The number of registrations canceled as a result of those notices.
        1. The same as above.
- *Out of State:*
    i. # reported by ADOT during the quarter who have an out of state license/ID
    ii. # of notices sent as a result of the monthly report
        1. AVID/inteface development: Is there any way to get a count of notices that the counties have sent?
    iii. # of records that were placed in inactive status as a result of notice.
        1. AVID/interface development: Status reason- Inactive/ADOT and Canceled/ADOT; SOS would report records with an effective date of change during the quarter with this status reason.
- *Jury Questionnaire/Citizenship:*
    i. # stating they aren't a U.S. citizen
        1. SOS will pull this number monthly from the court's report
    ii. # of notices sent
        1. AVID/interface: Is there a way to provide a count of the notices sent?
    iii. # of registrations that were canceled as a result
        1. Counties should use the status reason: Canceled-Juror Questionnaire Citizenship when canceling someone pursuant to this section. This status reason should not be used for anything else.
- *Jury Questionnaire/Residency*
    i. # stating they aren't a resident
        1. SOS will pull this number monthly from the court's report
    ii. # of notices sent
        1. AVID: Is there a way to provide a count of the notices sent?
    iii. # of registrations that were canceled as a result

1. AVID: develop a new status reason, Canceled- Juror Questionnaire Residency
- *Inactive voter list*
    i. # of registrations moved from inactive to canceled status
        1. AVID: SOS could pull a report of voters with status reason Canceled- NVRA with an effective date of change during that quarter.

---

### H.B. 2492 (List Maintenance- Residency/Citizenship)

---

**Takeaway:** H.B. 2492 has a delayed effective date of January 1, 2023 and litigation is ongoing. Significant changes to policy and the voter registration database will be needed.

**Statutory Changes:** Please reference the 2022 legislative update handout.

**Policy Changes:**

## Voter Registration Updates

| VR requirements for current and future registrants | | | |
|---|---|---|---|
| **Current Registrant** | **State Form** | **Federal Form** | **Notes** |
| | No change. New VR requirements do not apply retroactively. | No change. New VR requirements do not apply retroactively. | |
| **Future Registrant** | **State Form** | **Federal Form** | **Notes** |
| | State form must include:<br>- Citizenship checkbox*<br>- DPOR<br>- DPOC (can be DLN/ID#) | Federal form must include currently required information and:<br><br>- Citizenship checkbox* | Exceptions for UOCAVA registrants and temporarily away registrants per 16-103. |

**Place of Birth:** The new legislation required this on the State Form. See A.R.S. 16-121.01(A) and 16-151. This is in conflict with the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B) ("CRA") and cannot be implemented without violating federal law. Therefore, the SOS does not intend to implement this provision.

**Citizenship Checkbox:** Required on both state and federal forms. See A.R.S. 16-121.01(A). However, if an applicant provides DPOC, or DPOC can be acquired based on the provided information, the county recorder should accept the form. The checkbox is immaterial and violates the CRA, by denying the right to register to vote to eligible Arizonans who accidentally omit the checkmark from their voter registration application.

- Process:
  - If either the state or federal form checkbox is missing, then the form should only be rejected if the applicant does not provide DPOC or DPOC cannot be required on the applicant's behalf.
    - Send a letter and new VR form or option to select that the registrant is a U.S. citizen within 10 business days of receiving the form to inform the registrant that they need to check the citizenship box. See 16-134(B).
    - Put the record into Suspense status.
    - If registrant provides an updated form or citizenship checkbox verification by 7:00 p.m. on Election Day, then they will be deemed to have registered as of the date the form was received. See 16-134(B).
  - If the box is checked on the VR form, proceed as normal.
- Action Items:
  - Develop a form that can be sent to registrants who fail to check the box and fail to provide DPOC. The form should request that the registrant confirm they are a U.S. citizen. This can be used in lieu of the voter registration form.

## Documentary Proof of Residency (DPOR)

- DPOR must accompany the state form but does not need to accompany the federal form. Requiring DPOR conflicts with the National Voter Registration Act ("NVRA") and *Arizona v. Inter Tribal Council of Arizona*, 570 U.S. 1, 18 (2013).

| What constitutes Documentary Proof of Residency? | |
|---|---|
| Valid/unexpired AZDL/ID# that the county verifies via MVD check | A.R.S. 16-123 ("A valid and unexpired Arizona driver license or nonoperating identification number that is properly verified by the county recorder satisfies the requirements of this section.")<br><br>If registrant fails to include AZDL/ID#, but MVD check acquires it, then this would satisfy A.R.S 16-123. |
| Copy of valid/unexpired AZDL/ID | A.R.S. 16-123<br>May list P.O. Box as address<br>Residential address does not need to match address listed on VR form since A.R.S 16-123 allows any valid/unexpired AZID to be submitted. |
| Tribal identification card (census card, tribal ID, tribal enrollment card) | A.R.S. 16-123 ("Any of the identifying documents prescribed in section 16-579, subsection a, paragraph 1 constitutes satisfactory proof of location of residence.") |

| | 16-579(A)(1) Pursuant to Gonzalez, a Tribal ID does not require an address be listed. |
| --- | --- |
| Utility bill, bank statement, Arizona insurance card, Arizona vehicle registration, property tax statement, recorder's certification, voter ID card, federal or state issued ID card | A.R.S. 16-123 ("Any of the identifying documents prescribed in section 16-579, subsection a, paragraph 1 constitutes satisfactory proof of location of residence.") 16-579(A)(1) Must contain residential address, not P.O. Box; photo ID not required. A.R.S. 16-123 ("...constitutes confirmation of the address on the applicant's application at the time of registration.") |
| Any other document or piece of mail that is issued by a government, educational institution, or place of business that provides the person's name and address. | A.R.S. 16-123 Examples may include: Rental agreement, college ID, pay stub, health insurance or Medicaid mailing |
| Written confirmation signed by the registrant that they qualify to register pursuant to 16-166(B) (providing an address at a homeless center; USPS General Delivery; Courthouse) | A.R.S. 16-123 |

**Process:**

- For any DPOR other than an AZDL/ID, the County should confirm that the DPOR address matches the address on the voter registration application.
  - Upon confirmation, the DPOR flag should be selected in AVID and a note made in the notes file about the type of DPOR. (Note: this flag does not exist yet; please make a note in the voter file for now).
  - The DPOR document should be noted somewhere on the VR form, saved by the county for the relevant retention period; a copy does not need to be uploaded to AVID.
- If the registrant provides, or the County acquires, an AZDL/ID number, this is sufficient for the DPOR requirement once the County confirms the number via HAVA checks.
  - The County should select the DPOR flag once the HAVA check confirms it is a valid ID.
- If no DPOR is provided, the address doesn't match, or the ID# is not valid, then the County cannot register an applicant (using a state form).
  - Send a letter within 10 business days of receiving the form to inform the registrant that they need to provide DPOR. See 16-134(B).
  - Put the record into Suspense status.
  - If registrant provides DPOR by 7:00 p.m. on Election Day, then they will be deemed to have registered as of the date the form was received. See 16-134(B).

**Action Items:**

- Add instructions to state form about providing DPOR.
- Add DPOR flag in AVID.

## Documentary Proof of Citizenship (DPOC)

| DPOC requirements for current and future registrants | | | |
|---|---|---|---|
| **Current Registrant** | **Full Ballot Voter** | **Fed-Only Voter** | **Notes** |
| | No change. Nothing applies retroactively to full ballot voters who have already satisfied DPOC requirements, including safe-harbor registrants with pre-1996 DLN/ID# (see 16-166(F) and (G). | They do not need to provide DPOC retroactively. However, they will no longer be eligible to receive an early ballot-by-mail. Law is in conflict with NVRA since it restricts voting in presidential contests unless the applicant satisfies the DPOC requirement. | See HB 1638<br><br>Exceptions for UOCAVA |
| **Future Registrant** | **Full Ballot Voter** | **Fed-Only Voter** | **Notes** |
| | Either form is submitted with DPOC or DPOC can be acquired. | Federal form is submitted, and county is unable to verify DPOC/no DPOC is provided. | A state form without DPOC, or where DPOC cannot be acquired, must be rejected.<br><br>Exceptions for UOCAVA Fed-Only voters who will continue to be eligible to vote for president and cast a ballot-by-mail. See 16-127(B) |

**State Form** - must include any of the following (see 16-166(F)):

- Valid/unexpired AZDL/ID number issued after October 1, 1996
  - The equivalent issued by a governmental agency of another U.S. state if the agency indicates on the applicant's identification license that the person provided proof of United States citizenship.
- Photocopy of the applicant's birth certificate
- Photocopy of the applicant's U.S. passport identifying the applicant and the applicant's passport number

AZSOS-000015

- The applicant's U.S. naturalization documents or the number of the certificate of naturalization.
  - If only the number of the certificate of naturalization is provided, the number must be verified with the United States immigration and naturalization service by the county recorder.
- Other documents or methods of proof that are established pursuant to the immigration reform and control act of 1986.
- The applicant's bureau of Indian affairs card number, tribal treaty card number or tribal enrollment number.

**Process:**

- County confirms DPOC is provided or acquires it through current SSA/MVD checks and records in AVID. DPOC copies can be destroyed after two years; do not need to add to voter file. A.R.S. 16-166(J).
  - If DPOC is an AZDL/ID number, the County must confirm this via HAVA checks.
  - If DPOC is a naturalization number, the County must confirm this via SAVE.
  - If DPOC is a tribal ID number, this documentation is presumed valid and no additional confirmation is needed.
  - If no DPOC is provided and DPOC cannot be acquired, the county enters the registration with a status of "Suspense."
    - County must notify registrant within 10 business days of receiving the application that their registration could not be processed until DPOC is provided. Counties can follow the current process outlined in the EPM at page 7 to request DPOC.
    - The registrant has until 7:00 p.m. on Election Day to provide DPOC. See 16-134(B).

**Federal Form** - to register as a full ballot voter, the registrant must provide DPOC (same list as above) or the County must verify DPOC.

**Process:**

- If DPOC is provided, then the County confirms this and notes in AVID. DPOC copies can be destroyed after two years and do not get added to the voter file. Follow the same process as with the state form.
- If DPOC is not provided, the County has 10 days to verify citizenship.
  - The County should run HAVA checks and mark the voter as a full ballot voter if confirmation is received.
  - The County should check the following, if available:
    - SAVE
    - National Association for Public Health Statistics and Information Systems electronic verification of vital events system
    - Any other state, city, town, county or federal database
    - Any other database relating to voter registration
  - If any of these searches verifies the registrant's citizenship, then they should be marked as a full ballot voter. The County should record what search was taken in notes (for anything other than HAVA/MVD checks).

- o If these searches match the registrant with information that the registrant is NOT a citizen, then the County must provide the registration to the County Attorney and Attorney General's Office. The County must notify the registrant that they are not registered.
- o If these searches provide no information, then the registrant should be entered as a Fed-Only voter, who is not eligible to vote by mail or for presidential contests. The County must notify the registrant of their registration status.
- o The County must record its efforts to verify citizenship.



**AVID Development**

1. **2243- Juror Questionnaire, Residency and Citizenship**

**Statutory References**: 16-165(A)(9) and (A)(10); 21-314

**Policy**: The SOS and Counties will receive a report from the court with information about residency and citizenship. The County Recorder (CRO) is responsible for identifying any active or inactive voters on the report who have moved out of county or are listed as not a US citizen. There is no schedule for receiving this file.

- If the voter is listed as having moved to a different county, the CRO must send a notice by forwardable mail to the person's mailing address in their VR record. The notice must contain a postage prepaid, preaddressed return form requesting the person confirm by signing under penalty of perjury that the person is a resident of the county and is not knowingly registered to vote in another county or another state. If the person fails to return the notice within thirty-five days the county recorder should move the registration to inactive status (pursuant to the NVRA timeline and process).

- If the voter is listed as not a US citizen and does not have citizenship previously documented (either on file or via the MVD check), then the CRO will send the person notice by forwardable mail that the person's registration will be canceled in thirty-five days unless the person provides satisfactory evidence of united states citizenship pursuant to section 16-166. If the person registered does not provide satisfactory evidence within thirty-five days, the county recorder should move the registration to inactive status pursuant to NVRA notice requirements and notify the county attorney and attorney general for possible investigation.

**Updates**:

- Non-immediate action item: Given the small amount of data expected in these files, the current plan is for the counties to manually process the file when received. Eventually, the counties should consider whether they want the court's report uploaded into AVID and any hard or soft matches placed in a queue for the counties to action.
  - The report will be a .csv file.
  - Looking at the county and citizenship columns in the file. Either one could result in a match being placed in the queue.
- Current action item: The counties need to be able to send a notice to any true matches who are listed in the report as not residing in that county or not a US citizen and does not have DPOC previously confirmed/on file. Voters should be placed into the following status reasons:
  - Active– County Residency 2243
  - Active– Citizenship 2243
- This notice should attach a 35-day hook that moves the voter's record to inactive status pursuant to the NVRA timeline and process requirements and places the record in the appropriate status/status reason:
  - Inactive– County Residency 2243
  - Inactive– Citizenship 2243
- After the time required by the NVRA, the voter must receive a notice of cancellation including the reason why their record was cancelled. Implement the following status reasons:

- o   Cancelled– County Residency 2243
- o   Cancelled– Citizenship 2243
- Maricopa/Pima interface discussion needs to occur

**Timeframe**: Deploy in Q1 of 2023

Visual Workflow:



2.   **2243- DMV Out of State monthly report**

**Statutory References:** 16-165(F)

**Policy**: ADOT provides the SOS with a monthly data file that includes a list of all people who have received an out-of-state ID. Within 10 days of receipt, the SOS must notify the counties of any voters who are on the list. The CRO must "promptly" send notice by forwardable mail to any active voter on the list, requesting the voter confirm by signing under penalty of perjury that the person is a resident of the state. The voter has 90 days to return the form. If the voter fails to return the form within 90 days, they must be placed in inactive status.

- -   Report details:
  - ADOT will provide the SOS with a monthly file the first Tuesday of each month as a .txt. The file will contain: Full name, Dob, state issued ID number, SSN4, and date of ADOT cancellation (records will only be captured once and not appear again in future reports).
- -   The first report will capture Jan. 1 2023 through Jan. 31 2023.
- -   Expected to receive the first report around February 7, 2023 (First Tuesday of every month)
- -   Based on discussions with Maricopa and Pima, the SOS will send Maricopa and Pima the excel file for them to import into their respective systems.

**Updates**:

- SOS needs to be able to import this file into AVID. Upon import, any hard or soft matches on active voter records should go into a county queue.

- The county needs to send a notice to any true matches- soft matches that are not confirmed as a true match can be removed from the queue.
- Create a template notice and add a 90-day hook to move the record to "inactive" status if the registrant does not respond.
  - Notice sent by forwardable mail. Notice must include a postage prepaid preaddressed return form requesting the person confirm by signing under penalty of perjury that the person is a resident of this state and is not knowingly registered to vote in another state or confirm that the person is not a resident of this state. The notice shall inform the person that failure to return the form within ninety days will result in the person's registration being placed in inactive status.
- If the form is returned confirming the voter has moved, then cancel the voter. If it is returned confirming the voter resides in Arizona at the address on file, then the voter remains active. If no return and after 90-days, the voter becomes inactive and moved to canceled pursuant to the NVRA timeline.
- Status reasons for tracking:
  - Active– MVD 2243
  - Inactive – MVD 2243
  - Canceled – MVD 2243
- Maricopa/Pima interface- MVD will include the county code; SOS will split by county and send file to Maricopa/Pima for their own process.

**Timeline**: Deploy in mid-January for testing and official use in mid-February

Visual Workflow:



**3.** **2243- SOS reports to the legislature**

**Statutory Reference**: 16-165(M)

**Policy**: At the end of each quarter, the SOS must submit reports to the legislature with the following data:

- The number of deaths reported by the department of health services, the number of voter registration cancellation notices issued by the secretary of state to the county recorders as a result of those reports and the number of registrations canceled as a result of those notices.

- o We can feasibly report the number of deaths (pull from the AZDHS report) and the number of records with a status of Canceled- Deceased and with an effective date of change within the quarter. This number may be overinclusive since the counties may use that status reason for any records canceled due to the voter being deceased. We do not send cancellation notices to the counties or to voters, so that number does not exist. Any report should explain that not every person on the AZDHS file is a registered voter, so that number will likely be larger than any number of records canceled. AVID dev might not be needed immediately on this item.
- The number of persons reported to the secretary of state who have been issued a drivers license or the equivalent of an Arizona nonoperating identification license in another state, the number of notices sent pursuant to 16-165(F) and the number of voter registrations that have been placed in inactive status and the number of voter registrations that have been canceled as a result of those notices.
  - o We can provide the first number from the AZDOT reports. AVID development may be needed to gather the number of records that were sent a notice, placed in inactive status, and subsequently canceled.
- The number of persons who have stated on a jury questionnaire that the person is not a United States citizen, the number of notices sent pursuant to 16-165(A)(10) and the number of registrations that have been canceled as a result of those notices.
  - o The first number can be derived from the court's reports. We'll likely need development to track the number of notices sent and the subsequent number of cancellations.
- The number of persons who have stated on a jury questionnaire that the person is not a resident of the county, the number of notices sent pursuant to 16-165(A)(9)(b) and the number of registrations that have been canceled as a result of those notices.
  - o The first number can be derived from the court's reports. We'll likely need development to track the number of notices sent and the subsequent number of cancellations.
- The number of registrations on the inactive voter list that have been canceled pursuant to 16-165(A)(7).
  - o We should confirm what status reason the counties use then pull a report from that and using the effective date of change within the quarter.

**Updates**: See policy notes above.

**1485- AEVL Removal Updates (2021)**

1. **1485- AEVL language updates**

**Statutory Reference:** 16-168, 16-245, 16-411, 16-461, 16-510 and 16-544

**Policy:** Any reference to the Permanent Early Voting List should be updated to the Active Early Voting List. PEVL should become AEVL. This was accomplished in the public-facing Voter Information Portal but should be done in AVID.

**Updates:**

- Any report or reference to PEVL/Permanent Early Voting List should be updated to the Active Early Voting List/AEVL.

2. **1485- AEVL removal and notice updates**

**Statutory Reference:** 16-544

**Policy:**

The statute requires that county recorders remove a voter from the AEVL if the voter fails to vote an early ballot in any election for two consecutive election cycles. "Election" is defined as: (1) "any regular primary or regular general election" with a federal race, or (2) city or town candidate "primary or first election" or second, general or runoff election," but excludes a special taxing district or special district mail ballot election.

Requires the county recorder, on or before January 15 of each odd-numbered year (beginning in 2027), to send a notice to each voter who is on the active early voting list and who did not vote an early ballot in all elections for two consecutive election cycles. The notice shall inform the voter that, to remain on the AEVL, the voter must: (1) Confirm in writing the voter's desire to remain on the AEVL; and (2) Return the completed and signed notice that contains the voter's address and date of birth to the county recorder within 90 days of receipt of the notice.

Requires the county recorder to remove the voter from the AEVL if the voter does not respond to the notice within the 90-day time period.

Under this statute, "election cycle" is defined as:

- "the two-year period beginning on January 1 in the year after a statewide general election," or
- "for cities and towns, the two year period beginning on the first day of the calendar quarter after the calendar quarter in which the city's or town's second, runoff or general election is scheduled and ending on the last day of the calendar quarter in which the city's or town's immediately following second, runoff or general election is scheduled, however that election is designated by the city or town."

**Updates:**

- The issue that we can't currently resolve in the statewide voter registration database is how to obtain data from cities/towns who conduct their own elections and don't provide that information into the statewide database. Without this data, we cannot collect the required information.
- There is a ticket on this item but it might need to be updated. 29920#
- Develop a method for AVID to track whether a voter cast an early ballot (either in mail or in person) in statewide elections (August and November of even years) and town/city elections (may occur 4 times every year).
- Define the timespan as Jan. 1 2023 through Dec. 31 2026.
- Identify qualifying elections.
    - We do not currently have a way to differentiate special district by mail elections or special tax district elections from other election types. How do we obtain info about city/town elections who run independently (ie Tucson)?
    - Identify schedule for city/town elections? Which city/towns do their own (Phoenix/Tucson/Others)?
    - State elections with a federal contest: Aug/Nov 2024 and 2026
- A voter only needs to cast an early ballot once during the four-year timespan.
    - Early ballot in person or by mail is ok.
- On or before January 15, 2027, counties need to be able to pull a report with the active voters who have not cast any early ballots in the last two election cycles for qualifying elections but who are on the Active Early Voter List.
- Develop a notice and code hook for the records who don't respond; remove records from the AEVL after 90 days. Otherwise, the record should remain in active status unless the NVRA process has been followed.

**Timeline**: Depends on what work might need to happen to track voter history for city and town elections.

# Exhibit 17

**From:**       Jennifer Marson
**Sent:**       Thu, 24 Mar 2022 20:58:07 +0000
**To:**         dducey@az.gov
**Cc:**         Daniel Ruiz; kratlief@az.gov; Jake Agron; afoster@az.gov
**Subject:**    HB2492 - Association of Counties Requests Veto
**Attachments:** HB2492 Assoc of Counties Veto Request.pdf
**Importance:** High


A PDF is attached, the body of the letter is also pasted below.



March 24, 2022

The Honorable Doug Ducey
Arizona Governor
Executive Tower
1700 W. Washington
Phoenix, AZ 85007

RE: HB2492 Voter Registration; Verification; Citizenship

Dear Governor Ducey:

The Arizona Association of Counties (AACo) respectfully requests a veto of HB2492 Voter Registration; Verification; Citizenship. The bill alters the parameters associated with proving citizenship for purposes of registering to vote, makes changes to how County Recorders process voter registrations, and modifies how certain voting materials are distributed.

The core debate over HB2492 is its clear unconstitutionality as outlined by the Rules attorneys in both the House and Senate. The bill directly conflicts with the United States Supreme Court decision in *Arizona v. The Inter Tribal Council of Arizona* from 2013 wherein the Court ruled 7-2 against Arizona. The decision in that case, authored by Justice Scalia, is very clear that a completed federal registration form is also a valid registration form even if the applicant does not submit additional information required by the state. Justice Scalia ends the decision with "We hold that 42 U. S. C. §1973gg-4 precludes Arizona from requiring a Federal Form applicant to submit information beyond that required by the form itself."


Should this bill become law it puts County Recorders and Election Officials in the untenable position of trying to comply with state law while at the same time clearly violating the federal National Voter Registration Act. 52 U.S. Code Chapter 205 establishes penalties, including fines, imprisonment, or both for election officials who violate the National Voter Registration Act.

However, beyond the clear unconstitutionality, we believe many other components of HB2492 warrant a veto:

1. Proof of citizenship is being added to the definition of "qualified elector" (16-121) and one without proof of citizenship is not properly registered (16-121.01, 16-127), thus reading these sections together, counties will be required to purge any voter who registered prior to the new requirements passed in 2004 that has not made a change to their voter registration since then.

2. The bill contains neither a delayed effective date nor an emergency clause. Given that the Legislature is not close to sine die, we can reasonably expect a general effective date to be sometime in September. This means that some voters who fit the scenario in #1 and were properly registered for, and potentially voted in the Primary, will be purged before the General and will have to re-register by October 11. A delayed effective could have been added to this bill. We have heard that a delayed effective date may be added to a subsequent bill, but it is likely that a decision from your office on HB2492 will need to be made before that bill clears the Legislature. We believe that deciding on the language in front of you is prudent, while hoping for a trailer bill is not.

3. The bill requires "proof" of residence at the time of registration (16-121.01). This is an unnecessary step, as applicants have provided their address and the proof of residence is established when they vote. Voters move all the time so requiring "proof" at the time of registration is unnecessary.

4. The bill requires that the "place" of an applicant's birth be included (16-121.01). This information is irrelevant to the applicant's desire to be a registered voter, it can't be verified by the county, and it does not verify identification.

5. The bill prohibits a Federal Only voter from receiving a ballot by mail (16-127). We can discern no suitable or logical reason why one group of appropriately registered voters would not have all of the same options for voting available to them that other appropriately registered voters enjoy.

For these reasons, we request you veto HB2492 Voter Registration; Verification; Citizenship.

Respectfully,

Jennifer M. Marson
Executive Director

**Jen Marson**
Executive Director
Arizona Association of Counties
1910 W. Jefferson Street
Phoenix, AZ 85009
T 602 252 6563 x 222
C 602 290 2811
F 602 254 0969

***CONFIDENTIALITY NOTICE***

This email, and any files transmitted with it, is the property of the Arizona Association of Counties and, unless indicated otherwise, is intended only for the individual or entity addressed. This email may contain information considered privileged or confidential and legally exempt from disclosure. If the reader is not the intended recipient, or the recipient's authorized agent, you are hereby advised that copying or dissemination of this communication is prohibited. If you have received this email in error, please notify the sender immediately.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# Exhibit 18

**From:**          Jennifer Marson
**Sent:**          Thu, 24 Mar 2022 16:06:23 +0000
**To:**            Apache - Angela Romero; Cochise - Lisa Marra; Coconino - Eslir Musta; Coconino - Patty Hansen; Coconino - Wendy Kasprzyk-Roberts; Gila - Eric Mariscal; Graham - Hannah Duderstadt; Greenlee - Bianca Figueroa; La Paz - Juliana Bowman; La Paz - Shelly Baker; Maricopa - Scott Jarrett; Maricopa- Rey Valenzuela; Mohave - Allen Tempert; Mohave - Jeffrey Fink; Mohave - Nancy Krahulec; Mohave - Steve Harris; Navajo - Rayleen Richards; Pima - Mary Martinson; Pinal - David Frisk; Pinal - Kim Grable; Alma Schultz; Chris Bierle; Jeannette Martinez; Melinda Meek; Yavapai - Colleen Connor; Yavapai - Lynn Constabile; Yuma - Tiffany Anderson; Apache - Geneva Jackson; Apache - Larry Noble; Cochise-David Stevens; Gila- Sadie Bingham; Graham- Wendy John; Greenlee - Sharie Milheiro; La Paz - Richard Garcia; Maricopa - Aaron Flannery; Maricopa - Darron Moffatt; Maricopa - Stephen Richer; Mohave - Kristi Blair; Navajo - Michael Sample; Pima - Gabriella Cazares-Kelly; Pima - Pamela Franklin; Pima - REC General; Pinal - Virginia Ross; Suzie Sainz; Yavapai - Assistant to Leslie; Yavapai - Karen McCracken; Yavapai - Laurin Custis; Yavapai - Leslie Hoffman; Yuma- Robyn Stallworth Pouquette
**Subject:**       IMPORTANT - Send Veto Request to Gov Ducey re: HB2492
**Importance:**    High


Hello All:
Unfortunately one of the bills we disliked the most has made it through both chambers and will be on the Governor's desk likely later today. Once the Governor receives it he has 5 days (excluding Sundays) to sign or veto. So if it gets to his desk today he has until Wednesday to decide but he does not have to wait that long. **AACo will be submitting a veto request** letter and we ==strongly suggest that individual Recorders or Elections offices do the same==.

Here are some talking points for the bill but please do not just cut/paste them – use your own words and provide examples about how this will specifically impact your office (logistics, costs, time, etc)
-it does not have a delayed effective date. So let's assume we sine die in June… That means a Sept effective date. So some people who were registered/voted in the Primary would be purged in Sept and would have to reregister by Oct 11 (deadline for General) ==(Please note – we have heard that a delayed effective date is likely going to be added to a different bill…but it DOES NOT exist at this point)==

- violates SCOTUS decision in AZ v Intertribal Council from 2013. 7-2 decision with Scalia writing the opinion

- "Proving" residency at registration is weird because it is proven when they vote. People move all the time…residence when they are voting is what matters

- Place of birth is irrelevant (doesn't verify ID) and counties have no way to verify this data anyway

- There is no reason, statutorily or from court decisions, why Fed Only voters shouldn't be able to vote by mail

- Under bill…w/out proof of citizenship (POC)  that voter is "not eligible", & POC is being added to definition of "qualified elector" so…. when we read those two sections together… anyone who registered before POC was required (and has not verified citizenship in some way since then) will be purged.

Here is the bill: https://www.azleg.gov/legtext/55leg/2R/bills/HB2492H.pdf
Here is the fact sheet: https://www.azleg.gov/legtext/55leg/2R/summary/S.2492JUD.pdf

**Important Info:**
1. The letter can be emailed – we usually do an email with the letter in the body of the email and as an attachment
2. Address the email/letter to Governor Ducey but email it to: druiz@az.gov; kratlief@az.gov; jagron@az.gov; afoster@az.gov
3. I would suggest sending the letter by COB on Friday (3/25)
4. Please bcc AACo so we can track how many requests were made

Please let me know if you have any questions,
Jen

**Jen Marson**
Executive Director
*Arizona Association of Counties*
1910 W. Jefferson Street
Phoenix, AZ 85009
T 602 252 6563 x 222
C 602 290 2811
F 602 254 0969

***CONFIDENTIALITY NOTICE***

This email, and any files transmitted with it, is the property of the Arizona Association of Counties and, unless indicated otherwise, is intended only for the individual or entity addressed. This email may contain information considered privileged or confidential and legally exempt from disclosure. If the reader is not the intended recipient, or the recipient's authorized agent, you are hereby advised that copying or dissemination of this communication is prohibited. If you have received this email in error, please notify the sender immediately.

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# Exhibit 19

| | |
|---|---|
| **From:** | Cinthia Garcia <Cinthia.Garcia@recorder.pima.gov> |
| **Sent time:** | 03/25/2022 02:55:24 PM |
| **To:** | druiz@az.gov; kratlief@az.gov; jagron@az.gov; afoster@az.gov |
| **Subject:** | Letter to Gov. Ducey |
| **Attachments:** | LETTERTOGOV3.24.pdf    image003.png |

March 24, 2022

The Honorable Doug Ducey
Arizona Governor
Executive Tower
1700 W. Washington
Phoenix, AZ 85007

RE: HB2492 Voter Registration; Verification; Citizenship

Dear Governor Ducey:

I respectfully request that you veto HB2492 Voter Registration; verification; citizenship.

The bill creates unnecessary barriers for voters wishing to participate in the electoral process, by changing the way County Recorders process voter registrations forms. In addition, it criminalizes Election workers who make a mistake when helping the public. The specter of a felony hanging over our already beleaguered Election staff will only increase stress and make it harder to keep qualified Election workers.

Most importantly, if signed, this new legislation would require County Recorders and other Election Officials to enforce a state law that clearly violates federal law. Enforcing the state law would create a federal violation and enforcing the federal law creates a state felony for Election staff.

The bill's unconstitutionality is clear in that it conflicts with a 2013 Supreme Court ruling that determined that an _affirmation_ of citizenship meets the standards of federal law.

In _Arizona v. Inter Tribal Council of Arizona_, the Court ruled that an Arizona law requiring voters to provide a document for proof of citizenship - driver's license, U.S. passport, birth certificate, naturalization documents, Indian Affairs number or tribal treaty card number - violated federal law. Because the National Voter Registration Act only requires an affirmation of citizenship under the penalty of perjury, federal law prevails.

The Court's opinion emphasized that a completed federal registration form is valid even if the applicant provides no other citizenship information. "We hold that 42 U. S. C. §1973gg-4 precludes Arizona from requiring a Federal Form applicant to submit information beyond that required by the form itself," Justice Scalia wrote for the majority.

Even if you set aside these concerns, other parts of the bill warrant your veto.

- With proof of citizenship required for registering a "qualified elector" (16-121) and those without proof of citizenship are no longer properly registered (16-121.01, 16-127), voters who have not updated their registration information would be purged from the voter rolls. Prop 200 had grandfathered in voters who were already registered at the time it was passed.

- The bill creates again the situation where the form a person uses to register will determine whether that person is actually registered. It allows the Recorder to obtain proof of citizenship only for those who use the Federal form to register. Anyone submitting a State form without proof of citizenship is automatically not registered. This had been eliminated by the consent decree in the LULAC case so that currently all voters are treated the same.

- The bill would probably go into effect in September because it has neither a delayed effective date nor an emergency clause. That means some voters would be eligible to vote in this year's Primary Election then be banned from voting before the General and leave the Recorder's with little time to contact these voters to correct their records

- Proof of residence when registering is also included in the bill. This is unnecessary. Applicants have provided their address and residence is determined when they vote.

- Requiring a birthplace when registering (16-121.01) is irrelevant. There is no way to verify the information and it has no bearing on the ability to vote nor does it verify identity.

- Federal Only voters will no longer receive a ballot by mail. There seems to be no apparent reason why someone

PIMA COUNTY    0822

previously eligible to vote by mail to longer qualifies. According to Federal law, as construed by the Supreme Court they are clearly eligible to vote in Federal elections.

- The cost of defending the lawsuits that are certain to be filed if this becomes law will fall to the Counties and taxpayers. This is not just cost in dollars, but significant time spent during a major election cycle.

Election staffers work diligently to connect potential voters with the necessary documents and procedures to participate in the voting process. There are strict protocols and procedures in place to make sure ineligible voters are kept from the voter rolls.

This bill simply does not support the work that we do. It actually inhibits the work that we do.

For these reasons, I request you veto HB2492 Voter Registration; Verification; Citizenship.


Respectfully,

Gabriella Cázares-Kelly
Pima County Recorder

# Exhibit 20

1  BRIAN M. McINTYRE
   COCHISE COUNTY ATTORNEY
2  By: CHRISTINE J. ROBERTS
   Chief Civil Deputy County Attorney
3  State Bar No. 033718
   By: PAUL CORREA
4  Civil Deputy County Attorney
   State Bar No. 017187
5  P.O. Drawer CA
6  Bisbee, AZ 85603
   (520) 432-8700
7  CVAttymeo@cochise.az.gov
8  *Attorney for Cochise County Recorder*

9

10            **IN THE UNITED STATES DISTRICT COURT**

11              **FOR THE DISTRICT OF ARIZONA**

12

13  Mi Familia Vota,                        )
                                            )        **Case No. CV-22-00509-SRB (Lead)**
14                    Plaintiff,            )
                                            )        **DEFENDANT COCHISE COUNTY**
15                                          )        **RECORDER DAVID STEVENS'**
                                            )        **RESPONSES TO PLAINTIFF'S**
16  vs.                                     )        **FIRST SET OF**
                                            )        **INTERROGATORIES**
17  Adrian Fontes, et.al.,                  )
                                            )
18                    Defendants.           )
19  _____)

20       Defendant, Cochise County Recorder, David Stevens, by and through

21  undersigned counsel, hereby responds to the Plaintiff's First Set of Interrogatories as

22  follows:

23

24                    **<u>PREFATORY STATEMENT</u>**

25       1.      Defendant Cochise County Recorder David Stevens is a nominal, results-

                                    1

only defendant in this matter.  He takes no position on the substantive questions concerning the laws that the Plaintiffs challenge.  He is truly a neutral party, present in this lawsuit only because he is made responsible by statute to implement the challenged laws and will do whatever the district court (or an appellate court) orders.

2. Defendant Stevens' investigation and development of all facts and circumstances relating to this suit are ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Defendant Stevens' right to rely on other facts or documents at trial if Defendant Stevens' nominal, results-only status is challenged.

3. By making the accompanying responses and these objections to Plaintiffs' requests for production, Defendant Stevens does not waive and expressly reserves his right to assert any and all objections as to the admissibility of these responses into evidence in this suit if Defendant Stevens' nominal, results-only status is challenged or in any other proceedings on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Defendant Stevens' makes these responses and objections without necessarily implying that he considers the requests or responses to be relevant or material to the subject matter of this action.

4. As set forth in the Federal Rules of Civil Procedure, Defendant Stevens' will produce responsive documents only to the extent that such documents are in the possession, custody, or control of the Cochise County Recorder.

5.      Defendant Stevens expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections and to assert additional objections or privileges in one or more subsequent supplemental response(s).

## OBJECTIONS

The Defendant, Cochise County Recorder, answers the Plaintiffs' First Set of Interrogatories based on his understanding of what the Interrogatories are asking. Based on that understanding, the Recorder does not believe any objections are appropriate, and sees no need to make the types of standard boilerplate objections that are common in responses to discovery requests.

If Plaintiffs subsequently assert that the Cochise County Recorder's Office has not correctly understood these Interrogatories and/or has not satisfactorily answered them, the Recorder reserves the right to make appropriate objections at that time.

## INTERROGATORIES

**INTERROGATORY NO. 1:** Describe in detail Your plans and any Policies, Procedures, and Training Materials Regarding the actual or prospective implementation of H.B. 2492 in Your County (including but not limited to: how You are or at any time were planning and preparing to implement H.B. 2492; when H.B. 2492 is or was to be implemented; how voters will be or may be designated as a Federal Only Voter, Congress Only Voter, and Full Ballot Voter; and all available resources and databases to verify the citizenship status of voter registration applicants)

3

**ANSWER:** Defendant Cochise County Recorder David Stevens is in the planning stages of determining how to best implement H.B. 2492. Recorder Stevens will follow guidance from the Arizona Secretary of State's Office indicating that certain portions of H.B. 2492 violate federal law and should not be implemented. Recorder Stevens has not yet drafted any system plan changes to modify the current voting record system to meet H.B. 2492's requirements. Absent clear guidance from the Secretary of State's Office and approval on system changes, Recorder Stevens is unable to provide detail description of any plans, policies, procedures, or training materials.

**INTERROGATORY NO. 2:** Describe in detail Your plans and any Policies, Procedures, and Training Materials Regarding the actual or prospective implementation of H.B. 2243 in Your County (including but not limited to: how You are or at any time were planning and preparing to implement H.B. 2243; when H.B. 2243 is or was to be implemented; how voters will be or may be designated as a Federal Only Voter, Congress Only Voter, and Full Ballot Voter; and all available resources and databases to verify the citizenship status of voter registration applicants).

**ANSWER:** Defendant Cochise County Recorder David Stevens is in the planning stages of determining how to best implement H.B. 2243. Recorder Stevens will follow guidance from the Arizona Secretary of State's Office indicating that certain portions of H.B. 2243 violate federal law and should not be implemented. Recorder Stevens has not drafted any initial system plan changes to modify the current voting record system to meet H.B. 2243's requirements. Absent clear guidance from the

Secretary of State's Office and approval on system changes, Recorder Stevens is unable to provide detail description of any plans, policies, procedures or training materials.

**RESPECTFULLY SUBMITTED** this 27th day of January 2023.

BRIAN M. McINTYRE
COCHISE COUNTY ATTORNEY

By: _/s/ Paul Correa_____
    Paul Correa
    Civil Deputy County Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of January 2023, I electronically served the foregoing with Plaintiff's counsel identified below:

**_Attorneys for Plaintiff:_**

Sadik Huseny (pro hac vice)
sadik.huseny@lw.com
Amit Makker (pro hac vice)
amit.makker@lw.com
John Steinbach
john.steinbach@lw.com (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538

Niyati Shah (pro hac vice forthcoming)
nshah@advancingjustice-aajc.org
Terry Ao Minnis (pro hac vice forthcoming)
tminnis@advancingjustice-aajc.org
ASIAN AMERICANS ADVANCING JUSTICE-AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
Andrew M. Federhar (No. 006567)
afederhar@spencerfane.com

5

SPENCER FANE
2415 East Camelback Road, Suite 600
Phoenix, AZ 85016

BRIAN M. McINTYRE
COCHISE COUNTY ATTORNEY

By:  /s/ Paul Correa_____
        Paul Correa
         Civil Deputy County Attorney

# Exhibit 21

**Excluded from filing pursuant to L.R. 7.1(d)**

No. 2:22-cv-1381-SRB, ECF No. 63

# Exhibit 22



July 22, 2022

*Via email and U.S. Mail*
The Honorable Katie Hobbs
Arizona Secretary of State
1700 West Washington Street, Floor 7
Phoenix, Arizona 85007

Re:   **Notice of Arizona's Violations of the National Voter Registration Act Arising from Enactment of House Bill 2492 and House Bill 2243**

Dear Secretary Hobbs:

We write on behalf of Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition ("AZ AANHPI for Equity Coalition") and other similarly situated organizations and individuals, to notify you of violations of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20501 *et seq.*, as a result of the enactment of Arizona House Bill 2492 ("H.B. 2492") and Arizona House Bill 2243 ("H.B. 2243").

As the Chief Elections Officer for Arizona, you are responsible for compliance with the NVRA. *See* A.R.S. § 16-142; 52 U.S.C. § 20509.  We write to you in hope of an amicable resolution of these violations, which are set forth in detail in this letter.  Along those lines, we are available to discuss these issues at your convenience, and welcome hearing from you.  But we must insist upon concrete, demonstrable changes and assurances, and swiftly, to ensure compliance with the NVRA, especially given the imminence of several elections for Federal office.  Absent such changes and assurances, we are prepared to move forward with litigation to protect the rights of Arizona voters.[1]

## I.    Background

Arizona has a long and complex history of applying nonuniform voter registration and voting requirements to different voters.

In 2004, Arizona voters adopted Proposition 200, a ballot initiative purportedly designed to "combat voter fraud by requiring voters to present proof of citizenship when they register to vote and to present identification when they vote on election day."  *Purcell v. Gonzalez*, 549 U.S. 1, 2

---

[1] We are aware that others have written to you over the last several months regarding how H.B. 2492 violates the NVRA; specifically, Living United for Change in Arizona, League of United Latin American Citizens, Arizona Students' Association, ADRC Action, the Democratic National Committee, the Arizona Democratic Party, and Poder Latinx.  As we are aware of no response from Arizona to remedy these violations, and instead the expressed intent to maintain and enforce every aspect of H.B. 2492, we understand that the NVRA's notice provision has already been satisfied as to the passage of that bill.  Nevertheless, we write as well—regarding H.B. 2492 as well as the more recently passed H.B. 2243—in the hopes of an amicable resolution.



(2006). Proposition 200 amended the state's election code to require county recorders to "reject any application for registration that is not accompanied by satisfactory evidence of United States citizenship." A.R.S. § 16-166(F).

In 2013, the U.S. Supreme Court held that this requirement violated the NVRA, which requires states to "accept and use" the standard federal registration form from the U.S. Election Assistance Commission for voter registration (the "Federal Form"), which does not require applicants to provide documentary proof of citizenship ("DPOC"). *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013). The Supreme Court left open whether states could impose different requirements for voters in state and local elections than for federal elections, and on October 7, 2013, then-Attorney General Thomas Horne issued an opinion stating that such a system was required to comply with both state law and the NVRA. Ariz. Att'y Gen. Op. No. I13-011 (Oct. 7, 2013), https://www.azag.gov/sites/default/files/2018-06/I13-011.pdf.

Horne's opinion led to the establishment of Arizona's bifurcated voter registration system, which resulted in further litigation. In 2017, a lawsuit alleged that the state's voter registration policies violated the First and Fourteenth Amendments; specifically, that Arizona treated voter registration applicants differently depending on whether they used Arizona's state voter registration form ("State Form") or the Federal Form. Consent Decree at 1-2, *LULAC v. Reagan*, No. 2:17-cv-04102-DGC (June 18, 2018), ECF No. 37. To resolve that litigation, Arizona entered into a consent decree, which requires (1) Arizona to treat all registrants the same regardless of whether they use the State or Federal Form, registering all voters for federal elections, and (2) state and county officials to check the motor vehicles database for citizenship documentation before limiting voters to federal-only elections. *See id.* at 7-16.

Despite this history, and in defiance of these and other court proceedings, on March 30, 2022, Governor Doug Ducey signed into law H.B. 2492. We set forth several provisions of H.B. 2492 that violate the NVRA by drastically restricting the ability of Arizonans to register to vote and to cast a ballot.

1. Section 4 of H.B. 2492 further amends A.R.S. § 16-121.01 by adding subsections (D) and (E), which address voter registration with the Federal Form. Specifically, subsection (D) states that, if a voter submits a Federal Form without DPOC, then county recorders must verify the citizenship of the applicant by consulting databases from Arizona's Motor Vehicle Division, the Social Security Administration, the United States Citizenship and Immigration Services Systematic Alien Verification for Entitlement Program ("SAVE database") (if practicable), a National Association for Public Health Statistics and Information Systems, and any other state, city, town, county, or federal database. Under subsection (E), there are three potential outcomes of this verification process:

   - If the county recorder matches the applicant with information that verifies that the applicant is a citizen, then the voter will be registered.

   - If the county recorder matches the applicant with information indicating that the



applicant is not a U.S. citizen, then the application will be rejected and forwarded to the county attorney and attorney general for investigation.

- If the county recorder is unable to match the applicant with citizenship information, the county recorder will notify the applicant that their citizenship status could not be verified and that the applicant will not be qualified to vote in a presidential election or by mail with an early ballot in any election until satisfactory DPOC is provided.

2. Sections 4 and 5 of H.B. 2492 also amend A.R.S. § 16-121.01, *inter alia*, by requiring voter registrants to provide their place of birth and documentary proof of residency ("DPOR") when registering to vote.

3. Section 5 of H.B. 2492 amends Arizona law by adding A.R.S. § 16-123, which sets forth what constitutes DPOR to register to vote. Acceptable DPOR includes a valid and unexpired Arizona driver's license that is properly verified by the county recorder and any of the identifying documents listed in A.R.S. § 16-579. Section 5 also adds A.R.S. § 16-127, which states that currently registered voters who have not provided DPOC are not eligible to vote in presidential elections and are not eligible to receive an early ballot by mail.

4. Section 8 of H.B. 2492 amends A.R.S. § 16-165 by adding a reason to remove a voter from the registration list. Specifically, a voter will be removed when a county recorder receives information that the registered voter is not a U.S. citizen.

On July 6, 2022, Governor Ducey signed into law H.B. 2243, despite vetoing a similar bill earlier this year. We set forth a collection of provisions of H.B. 2243 that drastically restrict the ability of Arizonans to vote and violate the NVRA.

- Section 2 of H.B. 2243 amends A.R.S. § 16-165 to require county recorders to *repeatedly* compare properly registered voters who the county recorder may "believe" are not U.S. citizens or who have not provided DPOC against the SAVE database;

- Also as part of the amendments to A.R.S. § 16-165, H.B. 2243 subjects properly registered voters to monthly checks of statewide or county voter registration databases against various governmental databases for repeated proof of citizenship, including the driver license database, the Electronic Verification of Vital Events system maintained by a National Association for Public Health and Statistics and Information Systems Electronic, and any relevant city, town, county, state, and federal databases;

- Whenever the county recorder "obtains" information pursuant to these monthly database comparisons, Section 2 of H.B. 2243 amends A.R.S. § 16-165 (and supersedes Section 8 of H.B. 2492), by stating that a voter will be removed, *inter alia*, when a county recorder



"confirms" such "obtained" information that the registered voter is not a U.S. citizen and the voter does not provide DPOC within 35 days.

We note that neither H.B. 2492 nor H.B. 2243 sets forth processes or standards to ensure that an accurate match is made when requiring officials to conduct matches with governmental databases. Instead, officials are left to their own subjective, arbitrary, and non-uniform opinions on whether a particular voter registrant has accurately matched with information on outdated government databases.

Below we detail, *first*, several requirements of the NVRA, *and next* a description of how H.B. 2492 and H.B. 2243 violate the NVRA.

## II.    Requirements of the National Voter Registration Act

The purpose of the NVRA is to "establish procedures that will increase the number of eligible citizens who register to vote" and "enhance[] the participation of eligible citizens as voters" while protecting election integrity and ensuring accurate voter rolls. 52 U.S.C. § 20501. As such, its various provisions must work in harmony and not at cross purposes.

### A.    Section 5 of the National Voter Registration Act

Section 5 of the NVRA requires that (most) states register voters "simultaneously" when they apply for a state driver's license or ID. 52 U.S.C. § 20504. In doing so, a state "may not require any information that duplicates information required in the driver's license portion of the form" and "may require only the minimum amount of information necessary to prevent duplicate voter registrations[] and enable State election officials to assess the eligibility of the applicant …." 52 U.S.C. § 20504(c)(2). Moreover, Section 5 of the NVRA requires that state officials provide applicants with a statement setting forth each eligibility requirement to register to vote and requires applicants to attest under penalty of perjury to meeting such eligibility requirements. *See* 52 U.S.C. § 20504(c)(2)(C).

### B.    Section 6 of the National Voter Registration Act

The NVRA requires states to establish procedures for registering to vote in federal elections by mail application. 52 U.S.C. § 20503(a)(2). Section 6 of the NVRA requires states to "accept and use" the Federal Form. *Id.* § 20505(a)(1). The Federal Form requires that an applicant attest under penalty of perjury that they meet the eligibility requirements. *Id.* § 20508(b)(2).

As noted above, in 2013, the U.S. Supreme Court held that the NVRA precluded Arizona from requiring applicants who used the Federal Form to submit information beyond that required by the form itself. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15, 18 (2013) (holding that the NVRA's requirement that states "accept and use" the Federal Form "acts as both a ceiling and a floor" for registering to vote in federal elections). Specifically, the Court concluded that a state-imposed requirement of evidence of citizenship not required by the



Federal Form was inconsistent with the NVRA's mandate that states accept and use the Federal Form.  *Id.* at 15.

## C.    Section 8 of the National Voter Registration Act

Section 8 of the NVRA addresses how states administer their systems for registering voters for federal elections and how they maintain voter registration lists for federal elections.  Section 8(b) requires that "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office" be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965." 52 U.S.C. § 20507(b)(1).  The statute's uniformity requirement is violated where a voter-roll maintenance program singles out one group of voters for different treatment.  *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 703 (N.D. Ohio 2006) (finding that pre-registration, training, and affirmation requirements imposed by Ohio law for only a selected class of persons—those who were compensated for registering voters—conflicted with NVRA).  The statute's nondiscrimination requirement is violated when a voter-roll maintenance program targets specified classes of people.  *Id.*

Section 8 of the NVRA also limits the reasons that a state or political subdivision may remove a registered voter from the voter registration rolls.  52 U.S.C. § 20507(a)(3)-(4).  Specifically, a voter can be removed at the voter's request, by reason of criminal conviction or mental incapacity, by the voter's death, or by a change in the residence of the voter.  *Id.*  The statute also establishes that, before any voter is removed, they must be given notice, in writing, and can be removed only if they fail both to respond to the notice and to vote in "2 or more consecutive general elections for Federal office."  *Id.* § 20507(b)(2), (d).

Finally, Section 8 of the NVRA requires states to "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names or ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A).

## III.    Violations of the National Voter Registration Act

### A.    H.B. 2492's Documentary Proof of Citizenship and Documentary Proof of Residency Requirements Violate Section 6 of the NVRA

H.B. 2492's DPOC and DPOR requirements violate Section 6 of the NVRA because the NVRA requires states to "accept and use" the Federal Form, and the Federal Form does not require applicants to provide DPOC or DPOR.  52 U.S.C. § 20505; *id.* § 20508(b)(2).  Moreover, the DPOC requirement runs afoul of the U.S. Supreme Court's ruling in *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013), which rejected Arizona's prior attempt to impose a DPOC requirement on registrants using the Federal Form less than a decade ago.  *Id.* at 18.



Under H.B. 2492, if an eligible voter submits the Federal Form to register to vote without DPOC, H.B. 2492 instructs the county recorder to investigate the applicant's citizenship by consulting various databases. H.B. 2492 § 4 (adding A.R.S. § 16-121.01(D)). If the county recorder matches the applicant with information indicating that they are not a U.S. citizen, then the application is rejected.[2]  *Id.*  Thus, although H.B. 2492 allows for county recorders to *receive* Federal Forms without DPOC, through this verification process on the back end, which can result in an application being rejected, Arizona does not *accept* the Federal Form without DPOC. As a result, H.B. 2492 effectively imposes a DPOC requirement and violates the NVRA and Supreme Court precedent.

Similarly, Section 5 of H.B. 2492 requires all voter registrants, including those using the Federal Form to register, to provide DPOR. *See* H.B. 2492 § 5 (adding A.R.S. § 16-123). However, the Federal Form has no such requirement and thus H.B. 2492's DPOR requirement, which exceeds the Federal Form's minimum requirements, violates the NVRA.

### B.    H.B. 2492's Requirements Violate Section 5 of the NVRA

H.B. 2492 requires applicants for driver's licenses and state IDs to provide DPOC, DPOR, and place of birth in order to register to vote. *See* H.B. 2492 § 2 (amending A.R.S. 16-112) (requiring completion of voter registration that "contains at least the information prescribed by section 16-121.01" which includes DPOC, DPOR, and place of birth). However, Section 5 of the NVRA prohibits states from collecting information that is duplicative of the driver's license application and only allows for information necessary to assess eligibility or to prevent voter roll duplications. *See* 52 U.S.C. § 20504(c)(2). Moreover, Section 5 of the NVRA requires driver's license and state ID applicants to attest under penalty of perjury that they meet the eligibility requirements, including citizenship and residency. *See* 52 U.S.C. § 20504(c)(2)(C). H.B. 2492's DPOC and DPOR requirements are unnecessary to assess eligibility. Similarly, an applicant's place of birth is unnecessary to assess voter eligibility or prevent voter roll duplications. As such, the DPOC, DPOR, and place of birth requirements of H.B. 2492 violate Section 5 of the NVRA.

### C.    H.B. 2492's Documentary Proof of Residence Requirement Violates Section 8 of the NVRA

H.B. 2492 requires DPOR to register to vote and states that a valid Arizona driver's license that is "properly verified" satisfies this requirement. H.B. 2492 § 5 (adding A.R.S. § 16-123). This requirement violates Section 8(b)'s uniformity requirement because it singles out individuals who do not have driver's licenses and treats them differently than those who do have driver's licenses. *Project Vote*, 455 F. Supp. 2d at 703. Specifically, those with driver's licenses will easily satisfy the DPOR requirement, while those without will be required to provide additional

---

[2] Notably, H.B. 2492 sets forth no processes to ensure that an accurate match is made, does not provide an opportunity for the registrant to contest an inaccurate match, nor explain what, at least for H.B. 2492 Section 4, "satisfactory evidence of citizenship" may be provided in the event of an inaccurate match.



documentation.  H.B. 2492 § 5 (adding A.R.S. § 16-123).  Moreover, given that there are no details or standards for how the verification of the driver's licenses is to be conducted, this will result in county recorders conducting the verification process in different ways, violating the NVRA's uniformity principle.

### D.    The Voter Removal Systems of H.B. 2492 and H.B. 2243 Violate Sections 6 and 8 of the NVRA

There are various provisions of H.B. 2492 and H.B. 2243 that remove voters from registration rolls and violate Sections 6 and 8 of the NVRA.

*First*, H.B. 2492 removes certain voters from the presidential election registration rolls. Specifically, voters who use the Federal Form to register to vote, do not provide DPOC, and cannot be matched with "appropriate citizenship information" through the verification process will be removed from voter rolls for presidential elections.  H.B. 2492 § 4 (adding A.R.S. § 16-121.01(E)).[3]  In addition, currently-registered voters who have not provided DPOC will be removed from the presidential election registration rolls.  H.B. 2492 § 5 (adding A.R.S. § 16-127).  These removals violate the NVRA's uniformity requirement by singling out voters who have not provided DPOC and denying them the right to vote in presidential elections.  *Project Vote*, 455 F. Supp. 2d at 703.  Moreover, these removals are not permitted by the NVRA, which only allows for a voter to be removed at the voter's request, by reason of criminal conviction or mental incapacity, by the voter's death, or by a change in the residence of the voter.  52 U.S.C. § 20507(a)(3)-(4).  Finally, these removals also violate the NVRA's nondiscrimination principle because it targets naturalized citizens and communities of color that do not have DPOC readily available and subjects them to matching against databases that are notoriously unreliable and contain outdated data.  Comm. on House Administration, Subcomm. on Elections, *Report on Voting in America: Ensuring Free and Fair Access to the Ballot* 53-55 (July 2021), https://cha.house.gov/sites/democrats.cha.house.gov/files/2021_Voting%20in%20America_v5_web.pdf; *see Project Vote*, 455 F. Supp. 2d at 703; *see Texas League of United Latin American Citizens v. Whitley*, No. SA-19-CA-074-FB, 2019 U.S. Dist. LEXIS 227243, at *7-8 (W.D. Tex. Feb. 27, 2019) (finding process of matching Department of Public Safety driver license records to voter registration records to be "flawed"); *United States v. Florida*, 870 F. Supp. 2d 1346, 1347-48 (N.D. Fla. 2012) (listing "major flaws" with compiling list to identify voters for possible removal from statewide voter registration system based on databases maintained by Florida Department of Highway Safety and Motor Vehicles).  As such, these removals constitute violations of the NVRA.

*Next*, H.B. 2243 mandates that a voter be removed when a county recorder "obtains information pursuant to this section and confirms that the person registered is not a United States citizen." H.B. 2243 § 2 (amending A.R.S. § 16-165).  However, there are no limits as to how the county

---

[3] As noted above, if Arizona believes that it is complying with the NVRA and accepting Federal Form registrations prior to the verification process, then voters must subsequently be removed from the rolls after the verification process, to the extent such voters were ever on the rolls.



recorders will "obtain" such information how they are to "confirm" it, or what information establishes that a voter is not a U.S. citizen. The flaws in such a standardless system are evident, but a scenario likely to occur further exemplifies the issues with the system. Assuming that the county recorder "obtains information" based on one of the monthly database checks or subjects a voter based on the county recorder's "belief" that the voter is not a U.S. citizen, and a registered voter is flagged as not a citizen, even if the voter subsequently provides the county recorder with DPOC, given that the database that initially flagged the voter will not be updated, that voter will be flagged again as not a citizen during the next monthly check.

One of the ways that a county recorder "obtains" such information under H.B. 2243 is if the county recorder "has reason to believe" that a voter is not a citizen and then compares their information to the SAVE database. But there are no details or standards as to what may give rise to a county recorder having "reason to believe" a voter is not a citizen. This vague provision will lead to voters being arbitrarily removed based on the subjective decisions of county recorders across the state, despite affirming under penalty of perjury that they are U.S. citizens. For example, a county recorder may remove a voter based on information in a government database, without having any standards on what constitutes an accurate "match." Such a standardless removal process flies in the face of the NVRA's uniformity principle. Furthermore, as noted above, these databases are notoriously unreliable and contain outdated data, and repeatedly subjecting some voters to additional, standardless, and subjective matching against such government databases also violates the NVRA.[4]

*Lastly*, H.B. 2243 violates Section 8 of the NVRA by systematically removing voters from voter rolls within 90 days of a federal election. As discussed above, Section 2 of H.B. 2243 requires county recorders to cancel an individual's voter registration if they obtain and confirm information that the individual is not a U.S. citizen and that individual does not provide DPOC within 35 days. *See* H.B. 2243 § 2 (amending A.R.S. 16-165). County recorders obtain such information each month from, *inter alia*, the Secretary of State's comparison of registered voters to the driver license database, the comparison of properly registered voters who the county recorder "believes" are not U.S. citizens to the SAVE database, the comparison of properly registered voters who have not provided DPOC to the SAVE database, and the comparison between properly registered voters who do not have DPOC on file to the myriad of other government databases. *See id.* If such voters are matched to records indicating that they may not be U.S. citizens, then H.B. 2243 requires county recorders to send such voters a cancellation notice and cancel their registration if DPOC is not provided within 35 days. *See id.* Because H.B. 2243 requires such voter roll maintenance each month without exception, H.B. 2243 violates Section 8, 52 U.S.C. § 20507(c)(2), which requires a state to complete "not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters."

---

[4] Absent H.B. 2243, H.B. 2492 § 8 mandates that a voter be removed when a county recorder "receives and confirms information that the person registered is not a United States citizen." Such an approach is even more vague and standardless, and likewise violates the NVRA.



*          *          *

We look forward to working with your office to address these concerns and ensure that the state meets its obligations under the NVRA.  As stated, absent resolution of the violations described above, we will take legal action to protect Arizona voters' rights.  To that end, we note that the effective dates for H.B. 2492 and H.B. 2243 differ, and there are different notice periods under the NVRA; it is our understanding that H.B. 2243's amendments to A.R.S. 16-165 will go into effect on September 24, 2022 and will be in effect within 120 days of a federal election.[5]  If you wish to discuss this matter, please contact us at your earliest convenience at the contact information listed below.

Sincerely,

/s/

Sadik Huseny
*sadik.huseny@lw.com*
Amit Makker
*amit.makker@lw.com*
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 395-0600
Facsimile: (415) 395-8095

Niyati Shah
*nshah@advancingjustice-aajc.org*
Terry Ao Minnis
*tminnis@advancingjustice-aajc.org*
ASIAN AMERICANS ADVANCING JUSTICE-AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
Telephone: (202) 815-1098
Facsimile: (202) 296-2318

---

[5] It is our understanding that H.B. 2243's amendments to A.R.S. 16-165 will go into effect on September 24, 2022.  *See, e.g.*, https://www.azleg.gov/alisPDFs/council/TOSA_55th_2nd_Regular.pdf.  Please advise us within five days of the date of this letter if H.B. 2243 will *not* be effective as of September 24, 2022.  Please also advise us at that time what steps the state is taking now in connection with the requirements of H.B. 2243.

# Exhibit 23



The Latino Legal Voice for Civil Rights in America

**National Headquarters**
MALDEF Nonprofit Center
634 S. Spring Street, 12th Fl.
Los Ángeles, CA 90014
*TEL:* 213.629.2512
*Fax:* 213.629.0266

**Atlanta
Program Office**
34 Peachtree Street, NW
Suite 2500
Atlanta, GA 30303
*Tel:* 678.559.1071
*Fax:* 678.559.1079

**Chicago
Regional Office**
11 East Adams Street
Suite 700
Chicago, IL 60603
*TEL:* 312.427.0701
*Fax:* 312.427.0691

**Los Angeles
Regional Office**
634 S. Spring Street,
11th Fl.
Los Angeles, CA 90014
*TEL:* 213.629.2512
*Fax:* 213.629.0266

**Sacramento
Program Office**
1512 4th Street
Sacramento, CA 95814
*Tel:* 916.444.3031
*Fax:* 916.444.7207

**San Antonio
Regional Office**
110 Broadway
Suite 300
San Antonio, TX 78205
*TEL:* 210.224.5476
*Fax:* 210.224.5382

**Washington, D.C.
Regional Office**
1016 16th Street, NW
Suite 100
Washington, DC 20036
*Tel:* 202.293.2828

August 15, 2022

***Via Mail and Electronic Mail***

The Honorable Katie Hobbs
Arizona Secretary of State
1700 W. Washington Street, Floor 7
Phoenix, AZ 85007-2808

**Re: Notice of Non-Compliance with the National Voter Registration Act**

Dear Secretary Hobbs:

On behalf of Promise Arizona and Southwest Voter Registration Education Project, we notify you, in accordance with 52 U.S.C. § 20510(b), that Arizona House Bill 2243 ("H.B. 2243") amending Arizona Revised Statutes ("A.R.S.") Section 16-165), and signed by Governor Douglas Ducey on July 6, 2022, violates Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.  As amended by Section 2 of H.B. 2243, A.R.S. Sec. 16-165(A)(10) provides that "[t]he county recorder shall cancel a registration: […] when the county recorder obtains information pursuant to this section and confirms that the person registered is not a United States citizen."  MALDEF urges you to order county recorders to halt the enforcement of H.B. 2243 immediately.

Section 8 of the NVRA provides that: "[a]ny State program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office—(1) shall be uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965[.]" 52 U.S.C. § 20507(b)(1).

Section 8 of the NVRA further provides that: "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systemically remove the names of ineligible voters from the official lists of eligible voters."  52 U.S.C. § 20507(c)(2)(A).

Sec. 16-165(A)(9), as amended by H.B. 2243, is vague and ambiguous.  Under this section, the county recorder must cancel a registration when the county recorder "receives written information from the person registered that the person has a change of address outside the county" including when the county recorder receives a form from the person confirming that they are not an Arizona resident, or a summary report from the jury commissioner or jury manager that the person

is not an Arizona resident.  This section is unclear as to what form would demonstrate that a person is not a resident of Arizona.  As a result, Sec. 16-165(A)(9) is designed to target U.S. citizens who have registered to vote and have moved into Arizona.

Sec. 16-165(F), as amended by H.B. 2243, is neither uniform nor nondiscriminatory.  Under this section, the Arizona Secretary of State will compare every month "the statewide voter registration database to the driver license database maintained by the Department of Transportation" and afterward "shall notify the appropriate county recorder if a person who is registered to vote in that county has changed the person's residence address or is not a United States citizen."  This section is designed to target: (1) U.S. citizens who have registered to vote and have moved into Arizona, and (2) U.S. citizens who have naturalized since their last driver's license renewal or application.  As a result, Sec. 16-165(F) will subject those groups of voters to onerous verification requirements or removal from the voter rolls.  Because a significant number of U.S. citizens who naturalized in the last 10 years are originally from Latin American countries, this provision and others will affect Latinos disproportionately based on race and national origin.

Sec. 16-165(G), as amended by H.B. 2243, is neither uniform nor nondiscriminatory.  Under this section, the county recorder will, to the extent practicable, compare every month "the county's voter registration database to the Social Security Administration database."  This section is discriminatory because it will disproportionately affect Latinos, many of whom have hyphenated or accented surnames in such databases, which often do not match in other databases.  As a result, Sec. 16-165(G) will subject Latinos to onerous verification requirements.  Also, it is unclear whether county recorders have access to the Social Security Administration database, which may result in a non-uniform process.

Sec. 16-165(H), as amended by H.B. 2243, is neither uniform nor nondiscriminatory.  Under this section, the county recorder will, to the extent practicable, compare every month "persons who are registered to vote in that county and who the county recorder has reason to believe are not United States citizens and persons who are registered to vote without satisfactory evidence of citizenship and persons who are registered to vote without satisfactory evidence of citizenship [...] with the Systematic Alien Verification for Entitlements Program."  Sec. 16-165(H) is designed to target: (1) naturalized U.S. citizens; (2) U.S. citizens born abroad who derived citizenship from U.S. citizen parents; (3) children who became U.S. citizens through a parent's naturalization; and (4) voters with a Spanish surname who are U.S. citizens.  This section is vulnerable to the subjective arbitrary decisions the county recorder, and will subject some U.S. citizens to onerous verification requirements or removal from the voter rolls.  Furthermore, the methodology set forth in Sec. 16-165(H) discriminates based on race and national origin by targeting a disproportionately large number of foreign-born U.S. citizens.

Sec. 16-165(I), as amended by H.B. 2243, is neither uniform nor nondiscriminatory.  Under this section, the county recorder will "compare the Electronic Verification of Vital Events System maintained by a National Association for Public Health Statistics and Information Systems, if accessible, with the information on the person's voter registration file" concerning "persons who are registered to vote without satisfactory evidence of citizenship."  Sec. 16-165(I) is designed to target: (1) U.S. citizens who registered to vote via the Federal Form, which does not require documentary proof of U.S. citizenship, and (2) naturalized U.S. citizens.  This section also discriminates based on race and national origin by targeting a disproportionately large number of foreign-born U.S. citizens.  As a result, Sec. 16-165(I) will subject U.S. citizens to onerous verification requirements or removal from the voter rolls.

Sec. 16-165(J), as amended by H.B. 2243, is neither uniform nor nondiscriminatory. Under this section, the county recorder will, to the extent practicable, review every month "relevant city, town, county, state and federal databases to which the county recorder has access to confirm information obtained that requires cancellation of registration pursuant to this section." Sec. 16-165(J) is designed to target: (1) U.S. citizens who have registered to vote and have moved into Arizona, and (2) U.S. citizens who have naturalized since their last driver's license renewal or application. Subsection (J) does not specify which types of databases a county recorder should review. As a result, Sec. 16-165(J) will subject those two groups of voters to onerous verification requirements or removal from the voter rolls.

Furthermore, the provisions of H.B. 2243 that require the matching of information amongst local, county, state, and federal databases are problematic based on the inherent limitations of databases. It is common for large databases to contain errors, misspellings, inverted names, and omitted information. As such, a single database containing errors would prevent a legitimate match with another database involving the same individual. Similarly, because every database was compiled at a different time and for a different purpose as compared to other databases, every database likely recorded information differently. As a result, it is very difficult for two databases to contain the same information in a manner that would allow your office or a county recorder to conduct a proper match.

*         *         *

As Arizona's chief election official, it is your duty to ensure that Arizona complies with the NVRA and to protect Arizona's citizens from being unlawfully stripped of their right to vote. A.R.S. § 16-142. Specifically, the creation of lists of voters every month and cancellation of voter registration under the amended provisions of A.R.S. § 16-165 will result in removal of names within 90 days of federal elections, in violation of Section 8 of the NVRA. *See* 52 U.S.C. § 20507(c)(2)(A).

This letter serves as notice, in accordance with 52 U.S.C. § 20510(b), of Arizona's ongoing and planned violations of Section 8 of the NVRA. Following your immediate withdrawal of H.B. 2243 and order to county recorders to cease enforcement of its provisions, we are willing to work cooperatively with your office in developing a plan that will quickly bring Arizona into compliance with the NVRA's requirements.

We look forward to receiving your response to this letter. If, however, you fail to take steps to remedy Arizona's violation of the NVRA within 20 days, we shall seek redress from the courts.

Should you have any questions or concerns, please feel free to contact me at the email address below.

Sincerely,

Ernest Herrera
MALDEF Western Regional Counsel
eherrera@maldef.org

# Exhibit 24

**Excluded from filing pursuant to L.R. 7.1(d)**

No. 2:22-cv-1381-SRB, ECF No. 35

# Exhibit 25

**Excluded from filing pursuant to L.R. 7.1(d)**

No. 2:22-cv-1381-SRB, ECF No. 35-2

# Exhibit 26

**Excluded from filing pursuant to L.R. 7.1(d)**

No. 2:22-cv-1381-SRB, ECF No. 32

# Exhibit 27

**Excluded from filing pursuant to L.R. 7.1(d)**

No. 2:22-cv-1381-SRB, ECF No. 53

# Exhibit 28

**Excluded from filing pursuant to L.R. 7.1(d)**

No. 2:22-cv-1602-SRB, ECF No. 46

# Exhibit 29

**Excluded from filing pursuant to L.R. 7.1(d)**

No. 2:22-cv-1602-SRB, ECF No. 1

# Exhibit 30

Case 2:22-cv-00509-SRB  Document 388-4  Filed 06/05/23  Page 103 of 109

MENU ≡

FIND YOUR VOTING INFO ❯

# BALLOT BY MAIL

Voting by mail is a safe and secure process that's easy for you, the voter. Learn how to get on the Active Early Voting List (AEVL) for all eligible elections or request a ballot by mail for a specific election.



Home / How Elections Work / Ballot by Mail (All-Mail)

⚠ Learn why voting by mail is important because of social distancing due to Covid-19.

## ARIZONA'S BALLOT BY MAIL SYSTEM

Ballot by mail has been available in Arizona for over two decades. In the 2020 General Election, approximately 89% of ballots cast were early ballots. As the majority of Arizona voters already choose this method to vote, the infrastructure and security measures are well in place to ensure ballots are safe and secure.

Arizona has an Active Early Voting List (AEVL, and formerly the Permanent Early Voting List (see SB1485, 55th Legislature)). AEVL allows a voter to sign up for a mail ballot to automatically be mailed to them for every election they are eligible to vote in. Voters may also make a one time request for a ballot to be mailed to them. Early voting begins 27 days before the election, so voters can expect to receive their ballot in the mail shortly after.

### REQUESTING YOUR BALLOT

1. If you would like to receive your ballot by mail for the next upcoming election, make your request now.
2. Ballots will be mailed out to voters that are on the Active Early Voting List or have requested a one time early ballot via first class mail.
3. The deadline to request the county mail you a ballot is 11 days before the election (falls on the 2nd Friday preceding the election). We recommend making your request as early as possible.

Ballot by Mail (Mailing) - Citizens Clean Elections Commission

4. USPS advises: Where voters will both receive and send a ballot by mail, voters should submit their ballot request early enough so that it is received by their election officials at least 15 days before Election Day at a minimum, and preferably long before that time.

## RETURNING YOUR BALLOT

1. Arizona law allows voters options on how to return their voted ballot, outside of mailing it through USPS. You can return your voted ballot by:

- Dropping it off at any voting location in your county or;
- Depositing it in any secured ballot drop box in your county.
- See the Google Map below for a list of all ballot drop boxes in Arizona.

2. If you wish to return your ballot through USPS, it is recommended that you return it as soon as possible. The latest date recommended to mail back your ballot is 7 days before the election. Postage is prepaid and does not require a stamp.

3. Clean Elections does not recommend using private carriers to return your voted ballot if you are in state. Voters that are temporarily out of state and not a uniformed or overseas (UOCAVA) voter, should contact their county recorder with questions about using a private carrier to return their voted ballot.

4. UOCAVA voters have the option to receive and return their voted ballot electronically. Click here for more information.

5. If you are unable to mail your voted ballot back 7 days before the election, it is recommended that you drop it off at a polling place or at a ballot box.

6. Track your ballot. Voters can look up the status of their ballot online to confirm if it was received and counted. Maricopa County voters can sign up for text and email notifications.

7. Ballots are non-forwardable. Voters that will be out of town or away from their residence should contact their county recorder immediately so they can mail their ballot to their temporary mailing address.

- This is extremely important for voters out of state, including college students, as mail times could be impacted and the voter will need to allow as much time as possible to receive and return their ballot.

8. ALL VOTED BALLOTS MUST BE RECEIVED NO LATER THAN 7PM ON ELECTION DAY.

- In Arizona, postmarks are not sufficient. The ballot must be received by the County Elections Officials by 7pm on Election Day, whether it is mailed back or dropped off at a voting location or drop box.

Please visit the United States Postal Service's newly launched website about election mail to learn more.

## WHY BALLOT BY MAIL WORKS IN ARIZONA?

How does our current national environment surrounding voting by mail affect Arizona in the upcoming election? We talked to Tammy Patrick, Senior Advisor for the Democracy Fund and national election mail expert, to find out.



## GET STARTED



## THE FIRST STEP IS TO UNDERSTAND THE DIFFERENCE BETWEEN A ONE-TIME EARLY BALLOT REQUEST AND THE ACTIVE EARLY VOTING LIST, SO YOU CAN DECIDE WHAT WORKS BEST FOR YOU.

### One Time Early Ballot Request
Voters can choose to request a ballot by mail for the upcoming election only. Some reasons to do this include if you prefer not to visit the polls due to COVID-19 concerns, if you know you won't be able to vote on Election Day, or if you prefer to have more time with your ballot to study the candidates and issues.

### How to Request a One Time Early Ballot
Just contact your county recorder by phone or email, visit their website, or click the button below. You can also request a one time early ballot for both the primary and general elections in the same request.

REQUEST A BALLOT BY MAIL

### Active Early Voting List
Voters can choose to be placed on the Active Early Voting List. This means that the voter does not have to contact their county ahead of every election to request an early ballot. The county will automatically mail the voter an early ballot for every election they are eligible to vote in. A voter can remove themselves from the AEVL list at

Case 2:22-cv-00509-SRB    Document 388-4    Filed 06/05/23    Page 106 of 109

any time.

### How to Sign Up for AEVL

You can sign up for AEVL is on servicearizona.com and complete a new voter registration form. You will be asked if you want to join AEVL and your existing voter registration record will be updated.

### Removal from AEVL

A voter may be removed from the AEVL if the voter does not cast their mail ballot in at least one election over the course of two consecutive election cycles and fails to respond to an official notice from the county recorder or elections office. For more information on how a voter may be removed from the AEVL, please see SB1485.

Please note, removal from the AEVL is NOT removal from the voter registration rolls. **Failure to vote a mail ballot does not result in the voter's name being removed from the voter registration rolls.**

## PARTICIPATE IN ELECTIONS



## HOW DO I VOTE BY MAIL IN ARIZONA ELECTIONS

After you have made your request for a ballot by mail, the County Recorder will mail you your ballot. Ballots are mailed beginning 27 days before the election. Start checking your mailbox for your official early ballot during this time period.

### How to vote an early ballot?

Step 1. Request your early ballot (either one time request or sign up for AEVL).

Step 2. Retrieve your ballot from your mailbox.

Step 3. Vote your ballot.

- You can find voter education tools from Clean Elections to help you learn about the candidates and the issues.

- Be sure to mark your ballot according to the instructions included in your early ballot package and use the appropriate type of pen.

Step 4. Place your voted ballot inside the early ballot affidavit envelope.

Step 5. SIGN the early ballot affidavit envelope. Your ballot will not be counted unless you do this step.

Step 6. Seal your ballot and return it (see below).

Step 7.Verify your ballot was received and counted (see below).

## MAKE YOUR VOTE COUNT

However you decide to return your early ballot, all ballots must be received by 7:00 p.m. on Election Day.

## HOW TO RETURN AN EARLY BALLOT

**By Mail:**
You should always plan to mail back your ballot at least 7 days prior to election day, to ensure it is received by the county in time. The United States Post Office recommends 7 days for returning ballots by mail, which is first class mail. Postage is pre-paid so all you have to do is drop your signed and sealed ballot envelope in the mail.

**Drop it Off:**
If you don't have enough time to mail your ballot back or prefer to return it in person, you have several options:

1. You can drop your ballot off at any in-person early voting locations, including the County Recorder's Office or Elections Office.

2. Some counties have secured ballot drop boxes. You can drop your ballot off in any ballot drop box in your county.

3. You can drop your ballot off at any voting location in your county on Election Day. No need to wait in line. Just head straight inside the voting location and drop it in the early ballot bin. You can get an I Voted sticker too!

However you decide to return your ballot, just remember to SIGN IT and that the county RECEIVES it by 7:00 p.m. on Election Day.

## WHAT IS A BALLOT DROP BOX?

A ballot drop box is a secured bin provided by County Election Officials where voters can return their voted ballot. They are located in a secure location, such as inside or in front of a federal, state, local, or tribal government building. The Election Procedures Manual details the security measures required for ballot drop boxes. Click here to read more (page 60 of the manual).

Ballots **must** be dropped off at a location **within** a voter's registered county!





NOTICE: Drop boxes are established by the county and are subject to change.

## IS VOTING BY MAIL SECURE?

Case 2:22-cv-00509-SRB   Document 388-4   Filed 06/05/23   Page 108 of 109
Ballot by Mail (All-Mail) | Citizens Clean Elections Commission



The infrastructure of the voting by mail system is already well established in Arizona. Approximately 80% of Arizona voters chose to vote by mail.

It's important to note that a voter's identity is confirmed before their ballot is counted, whether it's an early ballot or a ballot cast at the polls. When you vote by mail, your signature on the early ballot affidavit is compared to the signature on file with your voter registration record. **Voters must sign this envelope in order for their ballot to be counted.** County election staff receive professional training to verify the signature on the affidavit envelope matches the signature on the voters' registration record. This is done to ensure the integrity of the early voting process.

If the signature is a match, the ballot proceeds to the Citizens Boards who then prepare the unopened ballots for tabulation. The Citizens Boards are made up of two board members of different political party affiliations. They confirm that the County Recorder verified the voter's signature and then they remove the ballot from the envelope, taking special care to ensure the privacy of the voters' ballot. The ballots are then transmitted to the tabulation room.

If the county is unable to verify the signature, the county will attempt to contact the voter. Voters have until 5:00 p.m. on the 5th business day after the primary or general election to confirm/correct their signature.

## HOW CAN I CONFIRM MY BALLOT WAS COUNTED?

Voters can verify their ballot was counted at arizona.vote.

Maricopa County voters can track their ballot here: https://recorder.maricopa.gov/Elections/BeBallotReady/ and sign up for text and email alerts of their ballot status at: https://recorder.maricopa.gov/subscriptions/

Navajo county voters can track their ballot here: https://navajocountyvotes.ballottrax.net/voter/

Pima county voters can track their ballot here: https://www.recorder.pima.gov/VoterStats/BallotInfo

**The Impact On Voting Due to COVID-19**

The coronavirus has greatly impacted how communities are able to conduct many aspects of everyday life, from doing business to providing important services. Voting is crucial to our nation's electoral process and voters have options on how to cast their ballot. If you decide voting by mail is the best choice for you this year, we encourage you to request your mail ballot today!

**VOTING BY MAIL**

Ballot by Mail (All-Mail)

**VOTING IN PERSON**

Early Voting

Polling Place

Vote Center

ID at the Polls

**TYPES OF ELECTIONS**

Presidential Preference

Primary Election

General Election

**POLITICAL AFFILIATION**

Political Parties

Independents

**ELECTION SECURITY**

Election Security Overview

# LEARN MORE

## UPCOMING ELECTIONS

Find out who is participating.

LEARN MORE

## WHAT'S ON THE BALLOT?

Find out more about the ballot measures.

VIEW PROPS



## GET VOTING REMINDERS

Sign up to hear about upcoming elections, get voting reminders, and more.

SIGN UP

|            |                        |
|------------|------------------------|
| ABOUT      | CONTACT US             |
| MOBILE APP | PRESS ROOM             |
| CALENDAR   | PUBLIC RECORDS REQUEST |

   

Copyright 2017 Citizens Clean Elections Commission. All rights reserved. Privacy Policy

