KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

ELISE C. BODDIE
Principal Deputy Assistant Attorney General
Civil Rights Division

T. CHRISTIAN HERREN, JR. (AL Bar No. ASB6671R63T)
RICHARD A. DELLHEIM (NY Bar No. 2564177)
EMILY R. BRAILEY (DC Bar No. 1684650)
JENNIFER J. YUN (DC Bar No. 1600953)
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4CON – Room 8.1815
950 Pennsylvania Avenue, NW
Washington, DC 20530

Tel.: (202) 353-5724 / Fax: (202) 307-3961
Email: Chris.Herren@usdoj.gov
Richard.Dellheim@usdoj.gov
Emily.Brailey@usdoj.gov
Jennifer.Yun@usdoj.gov
*Attorneys for the United States*

GARY M. RESTAINO
United States Attorney
District of Arizona

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mi Familia Vota, et. al.,<br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>Adrian Fontes, et. al.,<br><br><br>　　　　　　　Defendants.<br><br><br>Living United for Change in Arizona, et al.,<br>　　　　　　　Plaintiffs, | No. 2:22-cv-00509-SRB (Lead Case)<br>No. 2:22-cv-01124-SRB (Consolidated)<br><br>United States' Partial Motion for Summary Judgment and Opposition to Defendants' Motions for Partial Summary Judgment<br><br>Oral Argument Requested |

1        v.

2 Adrian Fontes,

3                Defendant,

4 and

5 State of Arizona, et al.,
             Defendants.

6

7 Poder Latinx, et al.,
             Plaintiffs,

8 v.

9 Adrian Fontes, et al.

10              Defendants.

11

12 United States of America,
             Plaintiff,

13        v.

14 State of Arizona, et al.,
             Defendants.

15

16 Democratic National Committee, et al.
             Plaintiffs,

17

18        v.

19 Adrian Fontes, et al.,
             Defendants,

20      and

21 Republican National Committee,
             Defendant-Intervenor.

22

1

Arizona Asian American Native Hawaiian
2  and Pacific Islander for Equity Coalition,
                              Plaintiff,

3

        v.
4

Adrian Fontes, et al.,
5                              Defendants.

6

Promise Arizona, et al.,
7                              Plaintiffs,

8

        v.
9

Adrian Fontes, et al.,
                              Defendants.
10

11  Tohono O'odham Nation, et al.,

12          v.

13  Kris Mayes, et al.,
                              Defendants.
14

15

16

17

18

19

20

21

22

# TABLE OF CONTENTS

I.      Introduction ...................................................................................................... 1

II.     Background ...................................................................................................... 2

    A.      HB 2492's Documentary Proof of Citizenship ("DPOC") Requirements. .......... 3

    B.      HB 2492's Citizenship Checkbox and Birthplace Requirements. ........................ 4

    C.      The Court's Order Denying State Defendants' Motions to Dismiss. ................... 4

III.    Legal Standard ................................................................................................. 5

IV.     Argument ......................................................................................................... 6

    A.      The NVRA Preempts HB 2492's DPOC Requirements for Registrants Using the
    Federal Form. ............................................................................................................ 6

        1.   Congress Can Regulate Presidential Elections. ................................................. 7

        2.   Congress Passed the NVRA Under its Authority to Regulate
        Federal Elections. ............................................................................................... 11

        3.   The Electors Clauses and the Tenth Amendment Are Irrelevant Here. ........... 12

        4.   The United States' Challenges to HB 2492's Mail Voting Provisions Cannot
        Be Resolved on Summary Judgment. ................................................................ 15

    B.      Summary Judgment is Unwarranted for the United States' Claim Under the
    Materiality Provision of the Civil Rights Act. ........................................................ 16

        1.   The State Defendants' Summary Judgment Motion as to HB 2492's
        Citizenship Checkbox Requirement Should be Denied Because the United States
        Lacks Information Essential to Opposing that Motion. ..................................... 17

        2.   Unavailable Facts Regarding HB 2492's Birthplace Requirement Preclude
        Summary Judgment. .......................................................................................... 21

        3.   Summary Judgment Is Also Unwarranted for the United States' Claim That
        HB 2492's DPOC Requirement for Registered Federal-Only Voters Violates the
        Materiality Provision. ........................................................................................ 23

V.      Conclusion ..................................................................................................... 25

i

1
2
3

**TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ..................................................................................... 14

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................................................................................... 18

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013) ..................................................................................*passim*

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
576 U.S. 787 (2015) ....................................................................................... 7

*Armendariz v. Padilla*,
No. CV 15-01890-PHX-SRB (MHB), 2017 WL 7410994 (D. Ariz. Mar. 17, 2017) ........ 5

*Ass'n of Cmty. Orgs. for Reform Now v. Edgar*,
880 F. Supp. 1215 (N.D. Ill. 1995) .................................................................... 11

*Ass'n of Cmty. Orgs. for Reform Now v. Miller*,
912 F. Supp. 976 (W.D. Mich. 1995) .................................................................. 11

*Ass'n of Cmty. Orgs. for Reform Now v. Ridge*,
Nos. Civ. A. 94-7671 & 95-382, 1995 WL 136913 (E.D. Pa. Mar. 30, 1995) ............... 11

*Bowyer v. Ducey*,
506 F. Supp. 3d 699 (D. Ariz. 2020) .................................................................. 13

*Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*,
323 F.3d 767 (9th Cir. 2003) ..................................................................... 17, 20

*Burroughs v. United States*,
290 U.S. 534 (1934) ........................................................................ 7, 8, 10, 14

*Celotex Corp. v. Catrett*,

477 U.S. 317, 322–23 (1986) ........................................................................... 5

*Chiafalo v. Washington*,
140 S. Ct. 2316 (2020) .................................................................. 9, 10, 13, 14

*Condon v. Reno*,
913 F. Supp. 946 (D.S.C. 1995) ............................................................ 11, 12

*Cook v. Gralike*,
531 U.S. 510 (2001) ......................................................................................... 14

*Diaz v. Cobb*,
435 F.Supp.2d 1206 (S.D. Fla. 2006)..................................................... 20, 21, 22

*Fish v. Kobach*,
840 F.3d 710 (10th Cir. 2016) ......................................................................... 7

*Fla. State Conf. of NAACP v. Browning*,
522 F.3d 1153 (11th Cir. 2008) ...................................................................... 19

*Jacobson v. U.S. Dep't of Homeland Sec.*,
882 F.3d 878 (9th Cir. 2018) ........................................................................... 23

*League of Women Voters of United States v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ........................................................................... 11

*Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. United States*,
240 F.2d 387 (9th Cir. 1956) ......................................................................... 18

*Martin v. Crittenden*,
347 F.Supp.3d 1302 (N.D. Ga. 2018) ....................................................... 18, 19

*McPherson v. Blacker*,
146 U.S. 1 (1892) ............................................................................................. 9

*Oregon v. Mitchell*,
400 U.S. 112 (1970) ................................................................................. 7, 8, 9

*Reeves v. Sanderson Plumbing Prods. Inc.*,
530 U.S. 133 (2000) ......................................................................................... 5

iii

*Sec. & Exch. Comm'n v. Montano*,
No. 6:18-CV-1606-GAP-GJK, 2020 WL 5534671 (M.D. Fla. July 31, 2020) ............... 16

*South Carolina v. Katzenbach*,
383 U.S. 301 (1966) ........................................................................................ 12

*United States v. Arizona*,
No. 2:22-cv-01124-SRB (D. Ariz. July 5, 2022) ............................................. 16

*United States v. Classic*,
313 U.S. 299 (1941) ................................................................................ 7, 9, 10

*U.S. Term Limits, Inc. v. Thornton*,
514 U.S. 779 (1995) ........................................................................... 8, 10, 14

*Virginia v. United States*,
No. 3:95-cv-357, 1995 WL 928433 (E.D. Va. Oct. 18, 1995)........................... 11

*Voting Rights Coal. v. Wilson*,
60 F.3d 1411 (9th Cir. 1995)........................................................................ 7, 11

*Wash. Ass'n of Churches v. Reed*,
492 F.Supp.2d 1264 (W.D. Wash. 2006) ........................................................ 18

*Wichita Falls Off. Ass'n v. Banc One Corp.*,
978 F.2d 915 (5th Cir. 1992)........................................................................ 20

*Wilson v. United States*,
878 F. Supp. 1324 (N.D. Cal. 1995)................................................................ 11

**Statutes**

52 U.S.C. § 10101 ............................................................................................ 1

52 U.S.C. § 20501 .................................................................................. 3, 12, 16

52 U.S.C. § 20505 ........................................................................................ 7, 15

52 U.S.C. § 21083 ........................................................................................ 24

Ariz. Const. art. VII.............................................................................. 13, 18, 24

iv

Ariz. Rev. Stat. § 16-101 .................................................................................. 18

Ariz. Rev. Stat. § 16-121.01 ............................................................................... 4

Ariz. Rev. Stat. § 16-127 ............................................................................... 4, 15

Ariz. Rev. Stat § 16-152 ............................................................................... 4, 17

Ariz. Rev. Stat. § 16-166 ........................................................................... 15, 17

Ariz. Rev. Stat. § 16-212 ............................................................................. 9, 13

Ariz. Rev. Stat. § 16-341 ................................................................................. 13

Ariz. Rev. Stat. § 16-344 ................................................................................. 13

Ariz. Rev. Stat. § 16-541 ................................................................................. 16

U.S. Const. amend. XIV ............................................................................... 7, 14

U.S. Const. amend. XV .................................................................................... 7

U.S. Const. amend. XXIV ............................................................................ 9, 14

U.S. Const. art. 1, § 4 ....................................................................................... 7

U.S. Const. art. I, § 8

U.S. Const. art II, §1 ....................................................................................... 13

**Other Authorities**

1 Story § 627 ................................................................................................. 14

H.R. Rep. No. 103-9 (1993), 1993 U.S.C.C.A.N. 105, 106 ............................... 11

S. Rep. No. 103-6 (1993) ............................................................................ 11, 12

Staff of Subcomm. on Civ. & Const. Rts. of the H. Comm. on the Judiciary, 98th Cong., 2d Sess., *After the Voting Rights Act: Registration Barriers* (Comm. Print 1984) (H.R. Ser. No. 18) ...................................................................................................... 12

*Voter Registration: Hearing Before the Subcomm. On Elections of the H. Comm. on H. Admin.*, 101st Cong., 1st Sess. (1989) ........................................................... 11

**Rules**

Fed. R. Civ. P. 56 ..................................................................................... *passim*

v

1    The United States respectfully submits this memorandum in support of its motion

2  for partial summary judgment on its claim arising under Section 6 of the National Voter

3  Registration Act and in opposition to the motions for partial summary judgment by the

4  State of Arizona and the Arizona Attorney General ("State Defendants") and Defendant-

5  Intervenors, ECF Nos. 364, 367.

6    **I.    Introduction**

7    The Court instructed the parties to move for summary judgment only on claims

8  that involve "legal issues [and] do not require discovery," March 23, 2023 Sched. Conf.

9  Tr. at 36:20-22, ECF No. 340.  The United States' claim under Section 6 of the National

10 Voter Registration Act ("NVRA") meets those criteria.  As State Defendants now

11 concede, Arizona must "accept and use" the federal voter registration form ("Federal

12 Form") without requiring documentary proof of the registrant's citizenship as a

13 prerequisite to vote in federal elections, including those for President.  Defendant-

14 Intervenors' contrary arguments fail.  Congress is fully empowered to legislate as to

15 presidential elections.  Accordingly, the NVRA's command that states "accept and use"

16 the Federal Form preempts HB 2492's documentary proof of citizenship requirement for

17 registrants seeking to vote in presidential elections.  Because no material facts are

18 disputed, the United States' motion for partial summary judgment on its NVRA claim

19 should be granted.

20    The United States' second claim, brought under Section 101 of the Civil Rights

21 Act ("Materiality Provision"), 52 U.S.C. § 10101(a)(2)(B), cannot be resolved on

22 summary judgment at this time.  The State Defendants have moved for summary

1

1    judgment as to that claim.  ECF No. 364.  But their motion raises material fact questions

2    as to 1) the purported utility of attempting to use birthplace to confirm voter identity, and

3    the State's past, current, and expected procedures for doing so, and 2) whether and how

4    Arizona's counties have used, do use, or expect to use the citizenship checkbox on

5    Arizona's voter registration form to determine citizenship.  Discovery has commenced as

6    to these and other questions that go to the heart of the United States' Materiality

7    Provision claim.  The United States is currently seeking and analyzing information

8    essential to opposing the State Defendants' motion—information that the State

9    Defendants and County Defendants alone can provide.  Accordingly, State Defendants'

10   motion for partial summary judgment on the United States' Materiality Provision claim is

11   at best premature.  The Court should deny the State Defendants' motion and allow

12   Plaintiffs to take discovery under Fed. R. Civ. P. 56(d).  The Court should also deny, or at

13   least defer ruling on, the State Defendants' motion for partial summary judgment as to

14   the NVRA's impact on HB 2492's mail voting restrictions.  Since the United States'

15   Materiality Provision claim also challenges those same mail voting restrictions,

16   delineating the NVRA's application to them at this time will not resolve the ultimate

17   question of whether they may be implemented under federal law.

18       **II.   Background**

19       Arizona House Bill ("HB") 2492 is an omnibus election law that in part restricts

20   eligible U.S. citizens' ability to register and vote.  HB 2492 creates new voter registration

21   requirements for prospective voters in Arizona, whether they register to vote using the

22   Federal Form or Arizona's voter registration form ("State Form").  The law also restricts

2

the kinds of federal elections in which voters who registered using the Federal Form ("federal-only voters") can cast ballots.  The law went into effect on January 1, 2023.

**A. HB 2492's Documentary Proof of Citizenship ("DPOC") Requirements.**

Arizona passed HB 2492 in the wake of a failed prior attempt to impose DPOC requirements on Federal Form registrants.  In 2004, Arizona adopted Proposition 200, which imposed a DPOC requirement for all voter registration applicants.  Litigation over whether Proposition 200's DPOC requirement violated the NVRA ended up in the Supreme Court.  *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 6–7 (2013) ("ITCA").  The Court concluded that the DPOC requirement violated Section 6 of the NVRA because states must "accept and use" the Federal Form as sufficient to register to vote in federal elections.  *Id.* at 15.  Arizona must thus ensure that eligible applicants are registered if a valid Federal Form is timely submitted.  It may not reject a completed Federal Form because an applicant omitted additional information—such as DPOC—that state law requires for registration.  *Id.* at 11–13.  The Court held that Arizona's DPOC requirements for the Federal Form frustrated the NVRA's purpose of creating a simple means to register to vote in federal elections and increasing voter registration among eligible citizens.  *Id.* at 13; *see also* 52 U.S.C.A. § 20501(b).

Despite *ITCA* and bedrock authority establishing Congress's power to regulate all federal elections, Arizona enacted HB 2492 in 2022.  State Defs. Statement of Facts at ¶ 1, ECF No. 365.  HB 2492 again imposes DPOC requirements on some federal-only voters.  The law requires election officials to confirm the citizenship status of voter registration applicants by cross-checking those applicants against several databases.  *Id.* §

3

16-121.01(D).  If officials are unable to verify an applicant's citizenship status, they must notify the applicant, who must then provide DPOC.  *Id*. § 16-121.01(E).  Applicants who fail to provide DPOC are denied the right to vote in presidential elections and by mail in congressional elections.  *Id*.

HB 2492 also affects Arizona voters who are already registered to vote in federal elections.  *Id*. at § 16-127(A).  The law requires these voters to provide DPOC to vote in presidential elections and to vote by mail in congressional elections even though the voters have already successfully registered to vote with the Federal Form.  *See id*.

**B.  HB 2492's Citizenship Checkbox and Birthplace Requirements.**

HB 2492 also impacts prospective voters who register to vote using the State Form.  Ariz. Rev. Stat. § 16-121.01(A), (C).  The State Form requires applicants to attest to their citizenship by checking a box confirming the applicant is a U.S. Citizen ("citizenship checkbox").  Election officials must reject applications without the checkbox mark—*even if* the applicant has provided DPOC.  The law similarly requires election officials to reject any State Forms that do not include the applicant's state or country of birth ("birthplace").  *Id.* § 16-121.01(A) (referencing *id.* § 16-152(A)(7)).

**C.  The Court's Order Denying State Defendants' Motions to Dismiss.**

In its February 16, 2023, Order denying State Defendants' motion to dismiss, this Court found that the United States had properly stated its claims.  ECF No. 304.  Regarding the United States' NVRA claim, the Court found it plausible that *ITCA* preempts HB 2492's DPOC requirement for applicants who use the Federal Form to register to vote.  *Id.* at 29-30.  Neither the State Defendants' arguments nor the United

4

1    States' response turned on facts—the issue in the motions to dismiss was whether

2    Congress has authority to regulate presidential elections.  The Court's Order denying the

3    motions to dismiss similarly relied only on these legal arguments.  *Id.*

4         As to the United States' Materiality Provision claim, the Court found it plausible

5    that HB 2492 requires duplicate and immaterial information from registrants.  *Id.* at 32.

6    The Court held that the State Defendants failed to establish as a matter of law that

7    birthplace and the citizenship checkbox were material—rather than merely relevant—or

8    that the State's prior methods used to confirm citizenship were unusable.  *Id.*[1]

9    **III.    Legal Standard**

10        The Court must grant summary judgment if the movant "shows that there is no

11   genuine dispute as to any material fact and the movant is entitled to judgment as a matter

12   of law."  *Armendariz v. Padilla*, No. CV 15-01890-PHX-SRB (MHB), 2017 WL

13   7410994, at *1 (D. Ariz. Mar. 17, 2017) (citing Fed. R. Civ. P. 56(a) and *Celotex Corp. v.*

14   *Catrett*, 477 U.S. 317, 322–23 (1986)), *aff'd sub nom. Armendariz v. Auricchio*, 700 F.

15   App'x 730 (9th Cir. 2017).  The movant must "present[] the basis for its motion and

16   identify[] those portions of the record . . . that it believes demonstrate the absence of a

17   ───────────────

18   [1] Defendants subsequently changed their position as to the United States' NVRA claim.
     By letter dated April 17, 2023, Hayleigh S. Crawford, the then-Deputy Solicitor General
19   for the State of Arizona, wrote to counsel for all parties to state that "Attorney General
     Mayes does not intend to continue asserting as a defense to Plaintiffs' claims that
20   Congress lacks the power to regulate presidential elections. That defense is foreclosed by
     binding authority. . . .Accordingly, the State acknowledges that to the extent H.B. 2492
21   conditions acceptance of the federal mail voter registration form for presidential election
     registration on documentary proof of citizenship, it is preempted by the federal
22   requirement that States 'accept and use' the federal form."  U.S. Statement of Facts ¶ 7,
     Ex. B.

1   genuine issue of material fact." *Id.* "If the movant fails to carry its initial burden of

2   production, the nonmovant need not produce anything." *Id.* If the moving party "meets

3   its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence

4   of a factual dispute and that the fact in contention is material, i.e., a fact that might affect

5   the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the

6   evidence is such that a reasonable jury could return a verdict for the nonmovant." *Id*.

7   In reviewing the evidence, courts "draw all reasonable inferences in favor of the

8   nonmoving party, and it may not make credibility determinations or weigh the evidence."

9   *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

10   **IV.   Argument**

11       **A. The NVRA Preempts HB 2492's DPOC Requirements for Registrants**
       **Using the Federal Form.**

12        The State Defendants and the United States agree that Section 6 of the NVRA

13   preempts HB 2492's DPOC requirement for federal-only voter registration applicants as

14   a matter of law.  State Defs. Mot. at 4, ECF No. 364; Secretary of State Answer at 3, ECF

15   No. 122; U.S. Resp. Mot. Dismiss at 5-11, ECF No. 152.[2]  As long as applicants in

16   Arizona attest under oath that they are citizens and meet remaining Federal Form

17   requirements, the NVRA requires Arizona election officials to accept and use that Form.

18   *ITCA*, 570 U.S. at 9–13 (holding that the NVRA mandates that states accept the Federal

19   Form "*as sufficient* for the requirement it is meant to satisfy") (emphasis in original); *see*

20

_____

21   [2] The United States addressed the authority establishing Congress's power to regulate
presidential elections in its Response to Defendants' Motion to Dismiss, ECF No. 152.  It

22   incorporates in full its legal arguments from that pleading here.

1  52 U.S.C. § 20505(a)(1).  Defendant-Intervenors assert, however, that the NVRA does

2  not apply to presidential elections, and that HB 2492's DPOC requirement is therefore

3  valid.  Def. Int. Mot. at 2–8, ECF No. 367; Joinder by Def. Int. Ariz. Legis. 1-2, ECF No.

4  369.  They are wrong.

5      **1. Congress Can Regulate Presidential Elections.**

6      Courts have long recognized Congress's authority to regulate presidential

7  elections.  *See* U.S. Resp. Mot. Dismiss at 7–8 (collecting cases); *Burroughs v. United*

8  *States*, 290 U.S. 534 (1934);  *see also United States v. Classic*, 313 U.S. 299, 320 (1941)

9  (the Necessary and Proper Clause empowers Congress to choose the "means by which its

10  constitutional powers are to be carried into execution"); *Fish v. Kobach*, 840 F.3d 710,

11  719 n.7 (10th Cir. 2016) ("[B]oth the Supreme Court and our sister courts have rejected

12  the proposition that Congress has no power to regulate presidential elections"); *Voting*

13  *Rights Coal. v. Wilson*, 60 F.3d 1411, 1414 (9th Cir. 1995) ("The broad power given to

14  Congress over congressional elections has been extended to presidential elections"), *cert.*

15  *denied*, 516 U.S. 1093 (1996).

16      That authority flows from Congress's broader constitutional authority to regulate

17  all federal elections.  U.S. Const. art. 1, § 4 (Elections Clause); *id.* art. I, § 8 (Necessary

18  and Proper Clause); *id.* amend. XIV; *id.* amend. XV; *see also* U.S. Resp. to Mot. Dismiss

19  at 6–9; *Oregon v. Mitchell*, 400 U.S. 112, 124 n.7 (1970) (Black, J.) ("This power arises

20  from the nature of our constitutional system of government and from the Necessary and

21  Proper Clause."); *ITCA*, 570 U.S. at 9, 14; *Ariz. State Legislature v. Ariz. Indep.*

22  *Redistricting Comm'n*, 576 U.S. 787, 814–15 (2015) ("The dominant purpose of the

7

1   Elections Clause, the historical record bears out, was to empower Congress to override

2   state election rules . . . .").  Indeed, the Framers intended Congress to have preemptory

3   power over all federal election regulations to preserve the national government.  *See*

4   *ITCA*, 570 U.S. at 8 (quoting The Federalist No. 59, at 362–63 (A. Hamilton) (Clinton

5   Rossiter ed., 1961)) ("'[E]very government ought to contain in itself the means of its own

6   preservation,' and 'an exclusive power of regulating elections for the national

7   government, in the hands of the State legislatures, would leave the existence of the Union

8   entirely at their mercy.  They could at any moment annihilate it by neglecting to provide

9   for the choice of persons to administer its affairs.'"); *U.S. Term Limits, Inc. v. Thornton*,

10  514 U.S. 779, 808 (1995).

11       Defendant-Intervenors mischaracterize *Oregon v. Mitchell*, 400 U.S. 112 (1970)

12  and *Burroughs v. United States*, 290 U.S. 534 (1934); both cases reinforce Congress's

13  power to regulate presidential elections.  In *Oregon v. Mitchell*, the Court concluded that

14  Congress was authorized to lower the voting age to 18 in federal elections, upheld the

15  Voting Rights Act's literacy-test prohibitions, and held that Congress can set residency

16  requirements and provide for absentee balloting in elections for presidential and vice-

17  presidential electors.  400 U.S. at 117–18.  Justice Black determined that Congress could

18  lower the voting age and ban residency requirements for presidential elections under its

19  inherent federal authority to regulate presidential elections as well as its broad Elections

20  Clause powers.  *Id*. at 122–24.  The concurring Justices relied on the Reconstruction

21  Amendments.  *See id.* at 135 (Douglas, J., concurring in part and dissenting in part); *id.* at

22  229–30 (Brennan, J., concurring in part and dissenting in part).  All told, eight Justices

8

1 upheld Congress's ban on residency requirements *in presidential elections*. *Id*. at 210;

2 *see also id.* at 286–87 (Stewart, J., concurring in part and dissenting in part) ("Quite

3 clearly, then, Congress has acted to protect a constitutional privilege that finds its

4 protection in the Federal Government and is national in character.").  Thus, whether

5 through Congress's inherent authority, the Elections Clause, or the Reconstruction

6 Amendments—all of which undergird the NVRA—*Oregon v. Mitchell* recognizes

7 Congress's broad powers to regulate federal elections and maintain a national

8 government.  *Id*. at 134 (Black, J.).

9   Defendant-Intervenor's criticism of Justice Black for his purported failure to

10 perceive the "the textual differences between the Elections Clause and the Electors

11 Clause" fails.  Def. Int. Mot. at 6.  The Framers drafted the Elections Clause when only

12 some states held popular elections.  Now all do.[3]  *See McPherson v. Blacker*, 146 U.S. 1,

13 28 (1892) (tracing the history of popular elections); *cf. Chiafalo v. Washington*, 140 S.

14 Ct. 2316, 2321–22 (2020); *Classic*, 313 U.S. at 315–16; U.S. Const. amend. XXIV

15 (addressing the "right of *citizens of the United States* to vote in any primary or other

16 election *for President or Vice President*, for electors for President or Vice President, or

17 for Senator or Representative in Congress") (emphasis added).

18

19 [3] During oral argument on the Defendants' Motion to Dismiss, Defendant-Intervenors represented that Arizona voters cast votes for presidential electors and not for presidential

20 candidates.  Mot. to Dismiss Hearing Tr. at 22:4-8, ECF No. 196.  But Arizona law requires that presidential electors cast their vote for the candidate that wins the popular

21 vote in the State.  In all material respects, therefore, Arizona's presidential elections are identical to its congressional elections, the winners of which are decided by the popular

22 vote.  Ariz. Rev. Stat. § 16-212(B).

1    Defendant-Intervenors offer nothing to justify disrupting the "long settled and

2    established practice" that those who vote in congressional elections are also entitled to

3    vote in presidential elections.  *See Chiafalo*, 140 S. Ct. at 2326.  This longstanding

4    tradition should hold "great weight in a proper interpretation of constitutional

5    provisions."  *Id*.  Defendant-Intervenors would discard that tradition and with it the

6    Framers' intent to protect the national government and ensure that all eligible citizens can

7    cast a ballot for their federal representatives.  *ITCA*, 570 U.S. at 8; *cf. U.S. Term Limits,

8    Inc.*, 514 U.S. at 803–05; *Classic*, 313 U.S. at 316 ("If we remember that 'it is a

9    Constitution we are expounding,' we cannot rightly prefer, of the possible meanings of its

10   words, that which will defeat rather than effectuate the Constitutional purpose.").  HB

11   2492's attempt to divest qualified voters of their right to vote in presidential elections

12   should be rejected.

13   Defendant-Intervenors' use of *Burroughs* also misses the mark.  They argue that

14   *Burroughs* "had nothing to do with the appointment of presidential electors."  Def. Int.

15   Mot. at 6.  *But neither does this case*.  The United States' NVRA claim asserts that

16   Arizona violates federal law by requiring Federal Form users to submit more than what

17   federal law requires to be registered for federal elections.  Compl. ¶¶ 63–65.  Like the law

18   at issue in *Burroughs*, the NVRA does not "interfere with the power of a state to appoint

19   electors or the manner in which their appointment shall be made."  *Burroughs*, 290 U.S.

20   at 289–90.  Indeed, no party questions how Arizona appoints its 11 presidential electors;

21   that issue is not before this Court.  *Infra* at Part IV.A.3.  *Burroughs* is therefore directly

22   on point here because it affirms Congress's power to regulate presidential elections.

### 2.  Congress Passed the NVRA Under its Authority to Regulate Federal Elections.

Because Congress can regulate all federal elections, it was empowered to pass the NVRA.  Congress passed the statute, in part, using its authority to regulate federal elections under the Elections Clause.[4]  Congress also cited its authority to legislate under the Reconstruction Amendments.  *See* U.S. Resp. to Mot. Dismiss at 10 (collecting cites); H.R. Rep. No. 103-9, at 2, 36 (1993), 1993 U.S.C.C.A.N. 105, 106 (noting that despite the Voting Rights Act, restrictive registration practices affected voter turnout generally, and Black voter turnout specifically); S. Rep. No. 103-6, at 3 (1993) ("This Act seeks to remove the barriers to voter registration and participation under Congress' power to enforce the equal protection guarantees of the 14th Amendment to the Constitution."); *Voter Registration: Hearing Before the Subcomm. On Elections of the H. Comm. on H. Admin.*, 101st Cong., 1st Sess., at 242–44 (1989) (statements of Frank R. Parker and Rep. Swift).[5]

---

[4] *See, e.g., ITCA*, 570 U.S. at 8–9; *League of Women Voters of United States v. Newby*, 838 F.3d 1, 5 (D.C. Cir. 2016); *Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Miller*, 912 F. Supp. 976 (W.D. Mich. 1995), *aff'd*, 129 F.3d 833 (6th Cir. 1996); *ACORN v. Edgar*, 880 F. Supp. 1215 (N.D. Ill. 1995), *aff'd in relevant part*, 56 F.3d 791 (7th Cir. 1995); *Wilson v. United States*, 878 F. Supp. 1324 (N.D. Cal. 1995), *aff'd sub nom. Voting Rights Coal. v. Wilson*, 60 F.3d 1411 (9th Cir. 1995), *cert. denied*, 516 U.S. 1093 (1996); *see also Condon v. Reno*, 913 F. Supp. 946, 963 (D.S.C. 1995); *Virginia v. United States*, No. 3:95-cv-357, 1995 WL 928433 (E.D. Va. Oct. 18, 1995); *ACORN v. Ridge*, Nos. Civ. A. 94-7671 & 95-382, 1995 WL 136913 (E.D. Pa. Mar. 30, 1995).

[5] Congress is not required to meet the "congruence and proportionality" standard outlined by Defendant-Intervenors to legislate under Section 2 of the Fifteenth Amendment.  *See South Carolina v. Katzenbach*, 383 U.S. 301, 324–27 (1966) (holding that the Fifteenth

1    Congress passed the NVRA to combat "discriminatory and unfair registration

2   laws" that "disproportionately harm voter participation by various groups, including

3   racial minorities."  52 U.S.C. § 20501(a)(3); *see also, e.g.*, Staff of Subcomm. on Civ. &

4   Const. Rts. of the H. Comm. on the Judiciary, 98th Cong., 2d Sess., *After the Voting*

5   *Rights Act: Registration Barriers* (Comm. Print 1984) (H.R. Ser. No. 18, at 2-5); S. Rep.

6   No. 103-6, at 3–4, 17–18 (1993); *see also Condon*, 913 F. Supp. at 962–63.  Courts agree.

7   *See* U.S. Resp. to Mot. Dismiss, at 9-10 (collecting cases).

8        **3.  The Electors Clauses and the Tenth Amendment Are Irrelevant Here.**

9        Defendant-Intervenors rely on the Constitution's Electors Clauses and the Tenth

10   Amendment to argue that states—and not Congress—have the authority to regulate

11   presidential elections.  But the Constitution's Electors Clauses regulate presidential

12   electors only; these Clauses are therefore not relevant to this NVRA challenge.  And

13   states do not have reserved powers under the Tenth Amendment related to presidential

14   elections.

15        Defendant-Intervenors appear to conflate the meaning and purpose of "Electors"

16   as used in the Constitution's Electors Clauses with "presidential elections."  *See*

17   *generally* Def. Int. Mot. at 3–6.  Article II requires States to appoint "a Number of

18   Electors, equal to the whole Number of Senators and Representatives to which the State

19   _____

20   Amendment is self-executing).  And if Congress passed the NVRA under the Fourteenth
Amendment, it has met the standard.  The historical and legislative record establishes
persistent patterns of discrimination in voter registration practices, necessitating

21   Congressional action to pass uniform voter registration processes for federal elections.
U.S. Resp. to Mot. Dismiss, at 9–11.

22

1   may be entitled in the Congress." U.S. Const. art. II, §1, cl. 2. Congress then determines

2   the time of choosing presidential "Electors" and the day on which the electors "shall give

3   their vote." U.S. Const. art. II, §1, cl. 4. Both Clauses refer only to presidential electors,

4   which in Arizona are the 11 electors appointed by "[t]he chairman of the state committee

5   of a political party that is qualified for representation on an official party ballot at the

6   primary election and accorded a column on the general election ballot." Ariz. Rev. Stat.

7   § 16-344; *id.* § 16-341; *cf. Chiafalo*, 140 S. Ct. at 2324 (reiterating that the Electors

8   Clause gives states authority to appoint electors, who differ from the state's individual

9   voters); *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 710 (D. Ariz. 2020) (finding that

10   presidential electors "fulfill a ministerial function, which is extremely limited in scope

11   and duration, and that they have no discretion to deviate at all from the duties imposed by

12   the statute"); Ariz. Rev. Stat. § 16-212(B) (presidential electors must cast their vote for

13   the candidate who received the highest number of individual votes).

14       The NVRA does not regulate the country's 538 presidential "Electors"; it

15   regulates voter registration for the country's *individual voters*. The Electors Clauses are

16   thus irrelevant to this case because they do not regulate individual voters in Arizona. *Cf.*

17   *Chiafalo*, 140 S. Ct. at 2324; Ariz. Const. art. VII, § 1 (referring to "elections by the

18   people").

19       Congress has authority to regulate presidential elections. *Supra* at 9; United States

20   Resp. Mot. Dismiss at 8–9. The Supreme Court has squarely rejected Defendant-

21   Intervenors argument that, because the Constitution does not expressly assign to

22   Congress the power to regulate the "places and manner" of presidential elections, this

1   power resides with the states.  Def. Int. Mot. at 4; *Burroughs*, 290 U.S. at 544-45; *see*

2   *also Anderson v. Celebrezze*, 460 U.S. 780, 795 (1983).  Defendant-Intervenors' Tenth

3   Amendment arguments, Def. Int. Mot. at 3-4, are similarly inapt.  The power to regulate

4   presidential elections "is not within the 'original powers' of the States, and thus is not

5   reserved to the States by the Tenth Amendment."  *See Cook v. Gralike*, 531 U.S. 510, 522

6   (2001) (states have no residual authority to regulate federal elections); *U.S. Term Limits,*

7   *Inc.*, 514 U.S. at 800, 805 (holding that "the power to regulate the incidents of the federal

8   system is not a reserved power of the States, but rather is delegated by the Constitution");

9   1 Story § 627 ("It is no original prerogative of state power to appoint a representative, a

10  senator, or president for the union").  Defendant-Intervenors have "neither text nor

11  history on [their] side" to argue that the Tenth Amendment confers to Arizona the

12  exclusive authority to regulate voter registration in presidential elections.  *Chiafalo*, 140

13  S. Ct. at 2328.  The power to regulate federal elections, including presidential elections,

14  "spring[s] out of the existence of the national government, which the constitution does

15  not delegate to [the states]. . . .  No state can say, that it has reserved, what it never

16  possessed."  *U.S. Term Limits, Inc.*, 514 U.S. at 802.  The very notion of a national

17  federal government was a sea change from the pre-existing Articles of Confederation; in

18  the new national government, the Framers envisioned that representatives—above all, the

19  President—owed allegiance to the people *of the Nation*, not to the people of a State.  *Id.*

20  at 803–04.  Therefore, states have no residual Tenth Amendment authority to regulate

21  presidential elections.

22

14

1    Defendant-Intervenors' theories as to why Arizona alone—and not Congress—has

2    authority to regulate presidential elections in the State should be rejected.

3    **4.   The United States' Challenges to HB 2492's Mail Voting Provisions
          Cannot Be Resolved on Summary Judgment.**

4        The State Defendants and Defendant-Intervenors argue that the NVRA does not

5    preempt Arizona's laws regulating mail voting.  State Defs. Mot. at 4; Def. Int. Mot. at 8–

6    9.  Federal-only voters properly established their citizenship status by using the Federal

7    Form to successfully register to vote in federal elections.  *ITCA*, 570 U.S. at 9–13; 52

8    U.S.C. § 20505(a)(1).  HB 2492 requires these voters to prove their citizenship status

9    again to vote in those elections by mail, a method of voting that was otherwise available

10   to all eligible voters prior to HB 2492's enactment.  *See* Ariz. Rev. Stat. § 16-127(A)(2)

11   (requiring federal-only voters to provide DPOC in accordance with Section 16-166 to

12   vote by mail in federal elections); Ariz. Rev. Stat. § 16-166 (including the requirements

13   necessary to establish "satisfactory evidence of citizenship" for purposes of voter

14   registration); Ariz. Rev. Stat. § 16-541A ("Any qualified elector may vote by early

15   ballot.").  HB 2492's requirement that registered federal-only voters also satisfy

16   Arizona's DPOC *voter registration* requirements—which exceed those required by the

17   Federal Form—endruns Section 6 of the NVRA.  52 U.S.C. § 20501(b) (a core purpose

18   of the NVRA is to "enhance[] the participation of eligible citizens as voters in elections

19   for Federal office.").

20       In any event, the Court should not determine the lawfulness of HB 2492's mail

21   voting prohibitions on summary judgment.  The United States properly alleged that HB

22

15

1   2492's mail voting restrictions violate the Materiality Provision, U.S. Compl. ¶ 69,

2   *United States v. Arizona*, No. 2:22-cv-01124-SRB (D. Ariz. July 5, 2022) (ECF No. 1),

3   and needs the opportunity to adduce sufficient facts during discovery to establish that

4   violation.  *See infra* at Part IV.B.3., Brailey Decl. ¶¶ 14, 15.  Accordingly, the Court need

5   not delineate the NVRA's effect on HB 2492's restrictions on mail voting because the

6   State Defendants' ultimate ability to enforce those restrictions will remain unresolved

7   until the Court determines the United States' Materiality Provision claim.  *See, e.g.*, *Sec.

8   & Exch. Comm'n v. Montano*, No. 6:18-CV-1606-GAP-GJK, 2020 WL 5534671, at *4

9   (M.D. Fla. July 31, 2020), *report and recommendation adopted*, 2020 WL 5887648

10  (M.D. Fla. Oct. 5, 2020) ("When a proposed partial summary judgment does not advance

11  ultimate resolution of a case, the motion may be denied on that basis[.]"); *id.* (finding that

12  "partial summary judgment may be denied where it does not result in judicial

13  efficiency").

14      **B.  Summary Judgment is Unwarranted for the United States' Claim Under the Materiality Provision of the Civil Rights Act.**

15         The State Defendants' summary judgment motion as to the United States'

16  Materiality Provision claim raises material facts unavailable to the United States at this

17  time.  Because discovery as to those facts is essential to the United States' ability to

18  oppose that motion, and because the State Defendants and County Defendants solely

19  possess those facts, this Court should deny the State Defendants' summary judgment

20  motion on that claim pursuant to Fed. R. Civ. P. 56(d).  *See, e.g.*, *Burlington N. Santa Fe

21  R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Rsrv.*, 323 F.3d 767, 773 (9th Cir.

22

1   2003) (noting that when "a summary judgment motion is filed so early in the litigation,

2   before a party has had any realistic opportunity to pursue discovery relating to its theory

3   of the case," the district court should grant requests by non-movants to take discovery

4   prior to considering the motion for summary judgment).

    **1. The State Defendants' Summary Judgment Motion as to HB 2492's**
5         **Citizenship Checkbox Requirement Should be Denied Because the United**
6         **States Lacks Information Essential to Opposing that Motion.**

7         Eligible Arizonans who register to vote with the State Form must provide DPOC,

8   which Arizona law recognizes as satisfactory proof of citizenship.  *See* Ariz. Rev. Stat.

9   § 16-166(F) (DPOC is "satisfactory evidence of citizenship."); *see also* Ariz. Rev. Stat.

10  § 16-152(A)(23) (requiring DPOC to accompany the State Form).  Under HB 2492, the

11  State Form requires applicants who provide DPOC to also affirm their citizenship by

12  checking the citizenship box.  If a voter fails to complete the citizenship checkbox, their

13  voter registration application is rejected even though election officials can confirm the

14  applicant's citizenship from the DPOC.

15        The State asserts that HB 2492's citizenship checkbox requirement complies with

16  the Materiality Provision because: (1) the requirement to check a box attesting to one's

17  citizenship status is material because it helps confirm a voter's citizenship status, and (2)

18  even if the checkbox requirement seeks duplicative information, that does not mean that

19  it seeks immaterial information.  State Defs. Mot. at 12–13.  Both arguments fail, and the

20  first argument raises material fact questions that foreclose summary judgment.

21        First, whether the State Form's mandatory citizenship checkbox provides election

22  officials with information distinct from the DPOC that the voter already provided is a

1   question of material fact.  A voting requirement is material under the Materiality

2   Provision if it goes to determining a voter's substantive qualifications to vote.  *See, e.g.*,

3   *Martin v. Crittenden*, 347 F.Supp.3d 1302, 1308 (N.D. Ga. 2018); *Wash. Ass'n of*

4   *Churches v. Reed*, 492 F.Supp.2d 1264, 1270 (W.D. Wash. 2006).  In Arizona, these

5   qualifications are limited to age, citizenship, residency, ability to write one's name or

6   make one's mark, and lack of criminal convictions or adjudications deeming one

7   incapacitated.  Ariz. Const. art. VII, § 2, cl. A; Ariz. Rev. Stat. § 16-101.  Moreover, a

8   voting requirement must be more than just relevant to be "material."  *E.g.*, *Int'l Bhd. of*

9   *Teamsters v. United States*, 240 F.2d 387, 390 (9th Cir. 1956) (distinguishing between

10  "relevant" and "material" for purposes of IRS subpoena, and requiring agents to satisfy

11  the Court that what they seek "may be actually needed"); *see also Anderson v. Liberty*

12  *Lobby, Inc.*, 477 U.S. 242, 248 (1986) (defining "material fact" for the purposes of

13  summary judgment motions as facts that "might affect the outcome" of the case); U.S.

14  Resp. Mot. Dismiss at 17 (collecting cases).

15      Here, the crux of the United States' Materiality Claim is whether the citizenship

16  checkbox requirement is actually used to *determine* a voter's citizenship status—a matter

17  of disputed fact—and not whether citizenship itself is a qualification.  The parties do not

18  dispute the latter proposition.  State Defs. Mot. at 12.  The quintessential example of

19  practices the Materiality Provision sought to eradicate—requiring voters to cite the exact

20  number of months and days in their age, *see Fla. State Conf. of NAACP v. Browning*, 522

21  F.3d 1153, 1173 (11th Cir. 2008)—illustrates this distinction: a voter's age in months and

22  days was nominally relevant to and duplicative of establishing the voter's age, the latter

18

of which is a substantive voter qualification.  A voter's age in months and days, however, was not material because age could already be established with other information in the application.  The requirement therefore did not ensure that eligible voters were registered to vote; instead, it resulted in eligible voters having their registration applications rejected based on immaterial information.  *See Martin*, 347 F.Supp.3d at 1308–09 (finding provision of birth year on a ballot envelope immaterial where a voter's age was already confirmed).[6]

The State insists that the checkbox "still serve[s] a useful role" in determining a voter's qualifications.  State Defs. Mot. at 12.  However, that is a material fact question the subject of live discovery requests.  Brailey Decl. ¶¶ 14, 15, Exs. B, C (outstanding discovery requests seeking this information); Scheduling Order at ¶¶ 4, 5 (ECF No. 338).  Leaving aside important legal distinctions between what is "useful" in commercial activities like signing mortgage documents, State Defs. Mot. at 12, and in preserving the fundamental right to vote, the State's argument raises material fact questions as to the role and "usefulness" of the checkbox in determining a voter's qualifications.  The State presents no record evidence supporting its assertions.  But the United States cannot rebut those assertions because it is currently seeking information essential for doing so and engaging with an expert to analyze that information.  And information relating to that "useful[ness]" is possessed solely by the State Defendants and County Defendants.  The

---

[6] The State's comparison of the State Form and the Federal Form's checkbox requirements, State Defs. Mot. at 11, is inapt for the same reason: the Federal Form does not require applicants to provide DPOC *in addition* to checking the citizenship box.

19

1  Court should therefore deny summary judgment, or in the alternative, defer ruling on the

2  motion until the parties have completed discovery.  Fed. R. Civ. P. 56(d); *see also*

3  *Burlington N.*, 323 F.3d at 773–74 (finding that "lightning-quick summary judgment

4  motions can impede informed resolution of fact-specific disputes" and that Rule 56(d)

5  relief for more discovery should be granted "almost as a matter of course"

6  (quoting *Wichita Falls Off. Ass'n v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir.

7  1992))).

8        Second, there is no support for the State's claim that it may freely seek duplicative

9  citizenship evidence when the failure to provide that evidence results in

10  disenfranchisement.  The State's sole citation is to *Diaz v. Cobb*, 435 F.Supp.2d 1206

11  (S.D. Fla. 2006), that, if anything, *supports* the United States' Materiality Provision

12  claim.  *Diaz* analyzed whether Florida's voter registration form violated the Materiality

13  Provision where applicants were required to both check boxes confirming they met each

14  eligibility requirement to vote and also sign a general oath indicating they are eligible to

15  vote and truthfully completed the form.  435 F.Supp.2d at 1211-12.  Specifically, the

16  *Diaz* plaintiffs sued because they failed to check the boxes confirming their mental

17  capacity on Florida's form, and the failure to check these boxes resulted in their rejection.

18  *Id*. at 1208.  The Florida district court held that checking a *specific* box is not duplicative

19  of signing a *generalized* oath, in part because the checkboxes verified each required voter

20

21

22

1  qualification while the oath was a general affirmation of eligibility.[7]  *Id.* at 1211.

2  Importantly, Florida did not *also* require prospective voters to provide documentary proof

3  of any of the qualifications listed in the check boxes.

4         *Diaz* does not stand for the proposition that duplicative requirements for the same

5  voter eligibility information are lawful.  The case merely held that Florida could verify

6  specific voter eligibility information in the form of checkboxes, and also require a

7  generalized oath.  Similarly, Arizona may seek proof of voter eligibility through

8  checkboxes on the State Form and may require applicants to sign the form.  Arizona may

9  not, however, reject a form with an incomplete checkbox when the voter also provided—

10  and the State thus has full knowledge of—that *same information* by way of DPOC.  *See*

11  *Diaz*, 435 F.Supp.2d at 1212.

12         **2.  Unavailable Facts Regarding HB 2492's Birthplace Requirement Preclude
            Summary Judgment.**

13         The State's contention that birthplace is material to confirming a voter registration

14  applicant's identity, State Defs. Mot. at 14, is a disputed question of fact that requires the

15  parties to build an evidentiary record.  The State has presented this novel argument with

16

---

17  [7] In *Diaz*, the general oath read:

18         I do solemnly swear (or affirm) that I will protect and defend
       the Constitution of the United States and the Constitution of

19       the State of Florida, that I am qualified to register as an elector
       under the Constitution and laws of the State of Florida, and that
       all information provided in this application is true.

20  435 F.Supp.2d at 1212.  The mental capacity checkbox at issue read:

21       I affirm that I have not been adjudicated mentally incapacitated
       with respect to voting or, if I have, my competency has been
       restored.

22  *Id*. at 1215.

21

1    no factual record to rebut or confirm, and discovery is necessary to ascertain whether

2    election officials actually use birthplace to identify or confirm the identity of a voter, and,

3    if so, how they do that.  Brailey Decl. ¶¶ 14, 15, Exs. B, C (outstanding discovery

4    requests seeking this information).  The record thus far shows that prospective voters

5    using the State Form are required to provide their legal names, residence and mailing

6    addresses, and date of birth; registrants may also provide an identification number, such

7    as the last four digits of their Social Security Number ("SSN"), a license number, tribal

8    identification number, A-number, naturalization certificate number, or citizenship

9    certification number.  *See* Arizona Voter Registration Form, ECF No. 365-1, Exhibit D.

10   But no factual record has been established as to how many people provide these unique

11   identification numbers.  Brailey Decl. ¶¶ 14, 15; *see also* Scheduling Order at ¶¶ 4, 5

12   (deadline for fact discovery is July 14 and expert discovery is September 28).

13       The State posits that providing birthplace "can help confirm the voter's identity,"

14   State Defs. Mot. at 14, but it provides no facts in support.  It does not explain what

15   birthplace data election officials might possess to compare a new voter registrant's

16   information against.  Nor does it point to any undisputed facts on how, for example, two

17   people who have identical names, birth dates, and residential addresses would be

18   distinguished based on a state or country of birth.  *Id*.  No expert analysis or witness

19   testimony has been put forth to establish whether or how birthplace could ever be used to

20   confirm a voter's identity.  These are unsupported assertions that the United States cannot

21   test or rebut without discovery.  And again, information relating to the role that birthplace

22   plays, and the manner in which election officials use or will use birthplace to establish a

1  voter's identity, is possessed solely by the State Defendants and County Defendants.

2  Without factual and expert discovery, the State Defendants' motion cannot be

3  appropriately resolved at this stage.  Brailey Decl. ¶¶ 14, 15, Exs. B, C (outstanding

4  discovery requests seeking this information); *see also* Scheduling Order at ¶¶ 4, 5 (ECF

5  No. 338); Fed. R. Civ. P. 56(d); *Jacobson v. U.S. Dep't of Homeland Sec.*, 882 F.3d 878,

6  883–84 (9th Cir. 2018) (vacating summary judgment because plaintiffs were entitled to

7  seek discovery that calls into question defendant's stated rationale).

8      The State Defendants' comparison to passport applications is inapposite.  State

9  Defs. Mot. at 14.  Congress barred states from rejecting voting materials based on errors

10 or omissions not material to establishing a voter's qualifications because voting is a

11 fundamental right at the core of our form of government; no similar law applies to

12 passport applications.  The State also notes that four states "appear" to require birthplace

13 on their state-specific voter registration forms, inferring that this supports Arizona's

14 birthplace requirement.  *Id*.  But the United States does not challenge Arizona's ability to

15 seek an applicant's birthplace on the State Form, something the State has done for many

16 years; what the United States challenges is HB 2492's command that applications

17 missing a birthplace be rejected.  U.S. Compl. ¶¶ 11, 67.  Accordingly, summary

18 judgment is inappropriate as to this claim because material fact questions exist.

19  **3.  Summary Judgment Is Also Unwarranted for the United States' Claim**
20  **That HB 2492's DPOC Requirement for Registered Federal-Only Voters**
    **Violates the Materiality Provision.**

21  HB 2492 requires registered federal-only voters to provide additional proof of

22 citizenship to vote in presidential elections or by mail in congressional elections.  These

23

1   voters already attested to their citizenship when they registered to vote using the Federal

2   Form, which is sufficient to prove citizenship under Federal Law.  52 U.S.C.

3   § 21083(b)(4)(A) (requiring citizenship attestation for the Federal Form); Election

4   Assistance Comm'n, Mem. of Decision at 29–31, Docket No. EAC-2013-0004 (Jan. 17,

5   2014), https://perma.cc/8EX8-P58G (finding that sworn statements—like the attestation

6   in the Federal Form—carry the force of law and Arizona already accepts sworn

7   statements as sufficient for other election-related purposes).

8         The State Defendants argue that DPOC is material to determining a voter's

9   eligibility "because U.S. citizenship is a requirement for voting in Arizona."  State Defs.

10  Mot. at 13.  As a threshold matter, the State conflates voter qualifications with

11  enforcement of those qualifications.  Citizenship is a voter qualification, Ariz. Const. art.

12  VII, § 2; DPOC is a way to enforce that qualification, *ITCA*, 570 U.S. at 6.  Simply

13  stating that "U.S. citizenship is a requirement for voting in Arizona," State Defs. Mot. at

14  13, therefore does not answer the factual question of whether DPOC is material to

15  establishing citizenship status for a voter who previously proved their citizenship when

16  registering to vote.

17        The arbitrary distinction between federal-only voters who wish to vote in

18  presidential elections and those who wish to vote in congressional elections suggests that

19  the DPOC requirement cannot be material to determining voter eligibility when voter

20  eligibility for presidential and congressional elections is the same.  The United States is

21  currently seeking discovery on these factual questions, specifically on how exactly State

22  and local election officials plan to use HB 2492's requirements to establish voters'

24

1   qualifications.  Because the information sought is essential to opposing the State

2   Defendants' motion, the State's motion for summary judgment on this claim should be

3   denied.  Fed. R. Civ. P. 56(d).[8]

4      **V.**    **Conclusion**

5       For the foregoing reasons, the United States respectfully requests that the Court

6   grant its Motion for Partial Summary Judgment on its NVRA claim and deny the State

7   Defendants' and Defendant-Intervenors' Motions for Partial Summary Judgment on the

8   United States' Materiality Provision claim (ECF Nos. 364, 367).  The Court should also

9   deny, or at least defer consideration of, the State Defendants' partial summary judgment

10   motion as to the NVRA's application to HB 2492's mail voting restrictions.

11

12   Date:       June 5, 2023

13                            Respectfully submitted,

14   GARY M. RESTAINO          KRISTEN CLARKE
      United States Attorney        Assistant Attorney General

15   District of Arizona           Civil Rights Division

16                           ELISE C. BODDIE
                            Principal Deputy Assistant Attorney General

17                           Civil Rights Division

18                           */s/ Emily R. Brailey*
                            T. CHRISTIAN HERREN, JR.

19                           RICHARD A. DELLHEIM
                            EMILY R. BRAILEY

20

21   [8] As this Court already found, Private Plaintiffs may also sue to enforce the Materiality
    Provision.  *See* Order on Motions to Dismiss at 32–33 (ECF No. 304); *see also* United

22   States' Brief in Support of Plaintiff-Appellee at 8–14, *Vote.org v. Paxton*, No. 22-50536
    (5th Cir. Nov. 2, 2022), https://perma.cc/8G6W-NSGB.

JENNIFER J. YUN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4CON – Room 8.1815
950 Pennsylvania Avenue, NW
Washington, DC 20530

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2023, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will send notification of this filing to counsel

of record.

*/s/ Emily R. Brailey*
Emily R. Brailey
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(202) 353-5724
Emily.Brailey@usdoj.gov