**CAMPAIGN LEGAL CENTER**
Danielle Lang*
Jonathan Diaz*
Molly Danahy*
Hayden Johnson*
Nicole Hansen*
1101 14th St NW Suite 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegal.org
jdiaz@campaignlegal.org
mdanahy@campaignlegal.org
hjohnson@campaignlegal.org
nhansen@campaignlegal.org
* *Admitted* pro hac vice

**BARTON MENDEZ SOTO PLLC**
James E. Barton II, AZ Bar No. 023888
401 W. Baseline Rd. Suite 205
Tempe, AZ 85283
(480) 418-0668
james@bartonmendezsoto.com

*Attorneys for LUCHA Plaintiffs; additional counsel listed in signature block.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mɪ Fᴀᴍɪʟɪᴀ Vᴏᴛᴀ, et al.<br><br>        Plaintiffs,<br><br>       v.<br><br>Aᴅʀɪᴀɴ Fᴏɴᴛᴇs, in his official capacity as Arizona Secretary of State, et al.,<br><br>        Defendants,<br><br>    and<br><br>Speaker of the House Ben Toma and Senate President Warren Petersen,<br><br>        Intervenor-Defendants. | Case No. 22-00509-PHX-SRB (Lead)<br><br>**LUCHA PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>No. CV-22-00519-PHX-SRB<br>No. CV-22-01003-PHX-SRB<br>No. CV-22-01124-PHX-SRB<br>No. CV-22-01369-PHX-SRB<br>No. CV-22-01381-PHX-SRB<br>No. CV-22-01602-PHX-SRB<br>No. CV-22-01901-PHX-SRB |

LIVING UNITED FOR CHANGE IN ARIZONA, et al.,

        Plaintiffs,

    v.

ADRIAN FONTES, in his official capacity as Arizona Secretary of State, et al.,

        Defendant,

    and

STATE OF ARIZONA, et al.,

        Intervenor-Defendants,

    and

Speaker of the House Ben Toma and Senate President Warren Petersen,

Intervenor-Defendants.

---

PODER LATINX, et al.,

        Plaintiffs,

    v.

ADRIAN FONTES, in his official capacity as Arizona Secretary of State, et al.,

        Defendants,

    and

Speaker of the House Ben Toma and Senate President Warren Petersen,

Intervenor-Defendants.

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

STATE OF ARIZONA, et al.,

        Defendants,

    and

Speaker of the House Ben Toma and Senate President Warren Petersen,

Intervenor-Defendants.

---

DEMOCRATIC NATIONAL COMMITTEE, et al.,

Plaintiffs,

v.

ADRIAN FONTES, in his official capacity as
Arizona Secretary of State, et al.,

Defendants,

and

REPUBLICAN NATIONAL COMMITTEE,

Intervenor-Defendant,

and

Speaker of the House Ben Toma and Senate
President Warren Petersen,

Intervenor-Defendants.

ARIZONA ASIAN AMERICAN NATIVE HAWAIIAN
AND PACIFIC ISLANDER FOR EQUITY COALITION,

Plaintiff,

v.

ADRIAN FONTES, in his official capacity as
Arizona Secretary of State, et al.,

Defendants,

and

Speaker of the House Ben Toma and Senate
President Warren Petersen,

Intervenor-Defendants.

PROMISE ARIZONA, et al.,

Plaintiffs,

v.

ADRIAN FONTES, in his official capacity as
Arizona Secretary of State, et al.,

Defendants,

and

Speaker of the House Ben Toma and Senate
President Warren Petersen,

Intervenor-Defendants.

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ...................................................................................... ii

3   INTRODUCTION .................................................................................................... 1

4   STANDARD ............................................................................................................. 3

5   ARGUMENT ............................................................................................................ 3

6   I.   Defendants Are Not Entitled To Summary Judgment On Plaintiffs' Civil Rights Act
         Materiality Provision Claims ...................................................................... 3

              a)  The State's Motion is Premature ......................................................... 5

              b)  Mi Familia Vota Plaintiffs' Motion Is Also Premature .................... 7

              c)  Defendants Are Not Entitled to Summary Judgment On The Materiality Of
                  The Citizenship Checkmark Requirement Under The Civil Rights Act ............ 8

              d)  Defendants Are Not Entitled To Summary Judgment On The Materiality Of
                  Place Of Birth Under The Civil Rights Act ........................................ 11

    II.  Defendant-Intervenors Are Not Entitled To Summary Judgment On LUCHA
         Plaintiffs' Claims Under Section 8 Of The NVRA ........................................ 13

    CONCLUSION ........................................................................................................ 15

    CERTIFICATE OF SERVICE ................................................................................ 17

i

# TABLE OF AUTHORITIES

**Case**                                                                           **Page**

*Carolina v. JPMorgan Chase Bank NA*, No. CV-19-05882-PHX-DWL,
   2021 WL 5396066 (D. Ariz. Nov. 17, 2021) ....................................................... 6

*Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) ........................................... 6

*Fish v. Schwab*, 957 F.3d 1105 (10th Cir. 2020) ....................................................... 14

*Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153 (11th Cir. 2008) .......... 5

*La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512 (W.D. Tex. 2022)................ 9, 10

*League of Women Voters of Arkansas v. Thurston*, No. 5:20-CV-05174,
   2021 WL 5312640 (W.D. Ark. Nov. 15, 2021) ..................................................... 7, 10

Martin v. Crittenden, 347 F. Supp. 3d 1302 (N.D. Ga. 2018) ................................... 10

*Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022) ......................................................... 7

*Ritter v. Migliori*, 143 S. Ct. 297 (2022) ................................................................. 7

*Rookaird v. BNSF Railway Company*, 908 F.3d 451 (9th Cir. 2018)................................. 3

*Samson v. Wells Fargo Bank, N.A.*, 777 F. App'x 881 (9th Cir. 2019)............................ 12

*Schwier v. Cox*, 340 F.3d 1284 (11th Cir. 2003) ................................................... 4, 5

*Texas Partners v. Conrock Co.*, 685 F.2d 1116 (9th Cir. 1982) ..................................... 7

*United States v. Martin*, 612 F. App'x 449 (9th Cir. 2015)......................................... 6

*Vote.org v. Georgia State Election Bd.*, No. 1:22-CV-01734-JPB, 2023 WL 2432011
   (N.D. Ga. Mar. 9, 2023) ................................................................................. 6

**Constitutional Provisions**

Ariz. Const. art. VII § 2 ....................................................................................... 4

**Regulations, Rules & Statutes**

Fed. R. Civ. P. 56(d) .......................................................................................... 7

Ala. Code § 17-3-52............................................................................................ 12

Ala. Code § 17-3-54............................................................................................ 12

Ariz. Stat. § 16-101 ............................................................................................. 4

A.R.S. § 16-121.01............................................................................................ 8, 11

A.R.S. § 16-121.01(C) ........................................................................................ 13

A.R.S. § 16-123................................................................................................. 13

52 U.S.C. § 10101(a)(2)(B) ................................................................................... 4

52 U.S.C. § 20505(a)(2)....................................................................................... 14

52 U.S.C. § 20506.............................................................................................. 14

52 U.S.C. § 20507(a)(1)....................................................................................... 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Defendants Attorney General Mayes and the State's (hereinafter "the State") motion for summary judgment "requests specific legal rulings . . . but does not attempt to explain how each ruling applies to each plaintiff's claims." Doc. 364 at 7. For clarity, LUCHA Plaintiffs[1] provide the following explanation of how the State's requested rulings, and the Defendant-Intervenors' related motions, apply to their claims and indicate their opposition and/or cross-motion where applicable.[2]

   *Requested Rulings on NVRA Claims:[3]*

• **Section 6: Requirement that states "accept and use" federal mail registration form.**

   • *Proof of Citizenship Requirements for Federal Form Applicants:* This claim is ripe for resolution on summary judgment. LUCHA Plaintiffs oppose the State's motion as to the mail voting restriction and cross-move for summary judgment on this claim for the reasons stated in the Democratic National Committee Plaintiffs' brief.

   • *Proof of Residence for Federal Form Applicants*: This claim is ripe for resolution on summary judgment. LUCHA Plaintiffs do not oppose the State's requested ruling and cross-move for summary judgment on this claim for the reasons stated in the Tohono O'odham Nation Plaintiffs' brief.

• **Section 8: Requirement that states' voter registration programs be "uniform" and "non-discriminatory":** This claim is not ripe for summary judgment because it requires

---

[1] LUCHA Plaintiffs refers to all Plaintiffs in Case No. 2:22-cv-00519. Throughout this brief, LUCHA Plaintiffs refer to each Plaintiff group for each individual case within this consolidated brief by the first named Plaintiff in that case (e.g., the Poder Latinx Plaintiffs for Case No. 2:22-cv-01003).

[2] No party seeks summary judgment on LUCHA Plaintiffs' claims in Counts I, II, III, VI, or their claims within Count V under Section 6 and Section 7 of the NVRA governing voter registration at motor vehicle authorities and public assistance agencies. *See, e.g.*, LUCHA Pls. First Am. Compl., Doc. 67 at 59-69.

[3] The State's requested rulings on Consolidated Plaintiffs' claims under Section 8 of the NVRA related to the limits on grounds for cancelling voter registration and the requirement that states complete any systematic program for cancelling registrations ninety days before election do not apply to any claims in LUCHA Plaintiffs' amended complaint.

1

factual development. LUCHA Plaintiffs oppose the State's motion for the reasons stated in the Poder Latinx Plaintiffs' brief.

- **Section 8: NVRA's Requirement that States "Ensure" Any Eligible Applicant Is Registered to Vote:** Defendant-Intervenors seek summary judgment on LUCHA Plaintiffs' and Mi Familia Vota Plaintiffs' claim[4] that HB 2492 violates Section 8's command that election officials "ensure" that all timely eligible applicants are registered to vote. As this claim applies to Federal Form applicants, LUCHA Plaintiffs oppose Defendant-Intervenors' motion and cross-move on this claim for the reasons stated in the Mi Familia Vota Plaintiffs' brief. As this claim applies to all other applicants, this claim is not ripe for summary judgment because it requires factual development. LUCHA Plaintiffs oppose Defendant-Intervenors' motion for the reasons stated herein.

### Requested Rulings on Materiality Provision Claims:[5]

- **Private Right of Action**: LUCHA Plaintiffs oppose Defendant-Intervenor's motion on this issue for the reasons stated in the Mi Familia Vota Plaintiffs' brief. To the extent this Court believes resolution of this issue is necessary at this stage, *see infra* note 6, LUCHA Plaintiffs also join Mi Familia Vota Plaintiffs' cross-motion *on this issue only*.

- **Checking a box to affirm citizenship:** This claim is not ripe for summary judgment because it requires factual development. LUCHA Plaintiffs oppose both the State's and Mi Familia Vota Plaintiffs' motions for summary judgment on this claim for the reasons stated herein.

- **Listing state or country of birth:** This claim is not ripe for summary judgment because it requires factual development. LUCHA Plaintiffs oppose both the State's and Mi Familia Vota Plaintiffs' motions for summary judgment on this claim for the reasons stated herein.

---

[4] Defendant-Intervenors wrongly identify only the Mi Familia Vota and Voto Latino Plaintiffs as bringing this claim. *See* Doc. 367 at 14. LUCHA Plaintiffs have also alleged a violation of this provision of the NVRA. *See* Doc. 67 at ¶ 355.

[5] The State's requested ruling on the materiality of documentary proof of citizenship under the Civil Rights Act does not apply to any claim in LUCHA Plaintiffs' amended complaint.

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

***Requested Rulings on Proof of Location of Residence (DPOR) Requirements*:**

      The State's requested rulings on the proof of location of residence requirements do not ask this Court to fully resolve any claim in LUCHA Plaintiffs' complaint but rather to issue rulings on the interpretation of the proof of location of residence requirement. LUCHA Plaintiffs join Tohono O'odham Nation Plaintiffs on this issue and, with their proposed revisions to the requested rulings for clarity, do not oppose the State's Motion on these requests and cross-move on the revised requested rulings.

**STANDARD**

      Summary judgment may be granted only "if [a] movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co*., 908 F.3d 451, 459 (9th Cir. 2018).

**ARGUMENT**

**I.  DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CIVIL RIGHTS ACT MATERIALITY PROVISION CLAIMS.[6]**

      The State's summary judgment arguments concerning Plaintiffs' claims under the Materiality Provision of the Civil Rights Act are premature, factually underdeveloped, and legally incorrect.[7]

      Under the Civil Rights Act:

---

[6] For the reasons stated in Mi Familia Vota Plaintiffs' brief, LUCHA Plaintiffs and other non-U.S. Plaintiffs have a private right of action to enforce the Civil Rights Act. *See also* Doc. 150 (MFV Pls.' Opp'n to State's Consolidated Mot. to Dismiss). As the State recognizes, this Court need not decide this issue to deny summary judgment because the United States is among the Plaintiffs opposing the State's motion on the Materiality Provision claims. Doc. 364 at 16, n.16.

[7] Defendant-Intervenors join the State's Motion concerning the Materiality Provision claims but, other than the issue of a private right of action, raise no additional arguments in support of summary judgment. Doc. 367; Doc. 369. The State seeks requested rulings on three pending Materiality Provisions claims as to (1) the citizenship Checkbox Requirement; (2) DPOC; and (3) the Birthplace Requirement. LUCHA Plaintiffs did not challenge the DPOC requirement under the Materiality Provision and therefore only address the citizenship Checkbox Requirement and Birthplace Requirement.

3

> No person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

The State does not contest that the denial of a voter registration application because of a voter's omission of either place of birth or a mark in the citizenship checkbox will lead to the denial of the right to vote, nor that the voter registration application falls squarely within the Materiality Provision's scope. The State's sole argument is that these omissions are "material" in determining whether individuals are qualified to vote under Arizona law. The Court should deny the State's motion and allow these claims to proceed to trial because (1) the motion is based on unsupported factual assertions about the materiality of place of birth or the citizenship checkbox (in cases where voter registration applicants have provided Documentary Proof of Citizenship (DPOC)) that are controverted by the existing record, and (2) the materiality of these requirements to assessing a voter registration applicant's eligibility raises factual questions that cannot be resolved on the present incomplete record.

The Materiality Provision "prohibits states from disqualifying potential voters based on their failure to provide information not relevant to determining their eligibility to vote." *Schwier v. Cox*, 340 F.3d 1284, 1287 (11th Cir. 2003). Arizona's voter qualifications require that a person be eighteen years old, a current U.S. citizen, and a current resident of Arizona. *See* Ariz. Const. art. VII § 2.[8] Therefore, in order to prevail on its motion, the State must establish that there is *no genuine dispute of material fact* as to whether the citizenship Checkbox Requirement (as applied to individuals who have provided DPOC) or birthplace

---

[8] In addition, otherwise eligible voters may be disqualified if they are incapacitated or if they have been convicted of a felony and not been restored to civil rights. *Id.* HB 2492 also purports to make provision of DPOC a qualification to vote. Ariz. Rev. Stat. Ann, § 16-101. LUCHA Plaintiffs challenge this requirement. *See, e.g.*, Doc. 67 at 61, 69. However, for purposes of assessing the State's motion on their Materiality Provision claims, this Court need not address the validity of the DPOC qualification.

4

requirement are material to an election official's assessment of those qualifications. The State cannot meet its burden.

As the Eleventh Circuit has explained, the Materiality Provision is core to a series of federal laws intended to prohibit states from engaging in a variety of disenfranchising tactics, particularly with respect to voter registration, unrelated to a voter's proper qualifications:

> Statutes enacted in 1870, 1871, 1957, and 1960 had all been unsuccessful attempts to counteract state and local government tactics of using, among other things, burdensome registration requirements to disenfranchise African-Americans. . . . This latest addition to federal law was "necessary to sweep away such tactics as disqualifying an applicant who failed to list the exact number of months and days in his age." Such trivial information served no purpose other than as a means of inducing voter-generated errors that could be used to justify rejecting applicants.

*Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008) (citing *Condon v. Reno,* 913 F. Supp. 946, 949–50 (D.S.C. 1995)) (internal citation removed). Like the similar laws that prompted the Materiality Provision, HB 2492's redundant and irrelevant citizenship checkmark and birthplace requirements for voter registration serve no material purpose in assessing an applicant's qualifications and therefore violate federal law.

### a. THE STATE'S MOTION IS PREMATURE.

Unlike most summary judgment motions filed after the close of fact discovery, the Court set a schedule in this case to allow for early summary judgment motions prior to the close of discovery on "discrete legal issues" that do not require a complete factual record. *See* Plaintiffs' Controverting Statement of Facts ("Pls. Controverting SOF"), Doc. 389 at 9, Section II ¶ 3; Doc. 389-2, Ex. 31 (Mar. 3, 2023 Tr.) at 41. In doing so, the Court was clear that these summary judgment motions, filed well before the close of discovery, should not ask this Court to resolve factual questions. *See* Doc. 389-2, Ex. 31 (Mar. 3, 2023 Tr.) at 45, 48.

The State's motion ignores the Court's directive. The Materiality Provision "prohibits states from disqualifying potential voters based on their failure to provide information not relevant to determining their eligibility to vote." *Schwier*, 340 F.3d at 1287. Whether an omission of a checkmark in the citizenship checkbox or place of birth is material to an election

official's ability to determine eligibility necessarily requires factual development for resolution.[9] In other contexts, the Ninth Circuit has recognized that whether something is "material" is a question of fact to be resolved through evidence. *See, e.g.*, *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015) ("Materiality . . . is generally a question of fact[.]" (internal citations omitted)); *United States v. Martin*, 612 F. App'x 449, 450 (9th Cir. 2015) ("Materiality is a question of fact[.]" (citing *United States v. Gaudin*, 515 U.S. 506, 514 (1995))). Accordingly, "[m]ateriality depends on the context and is a question of fact that cannot be mechanically resolved." *Carolina v. JPMorgan Chase Bank NA*, No. CV-19-05882-PHX-DWL, 2021 WL 5396066, at *13 (D. Ariz. Nov. 17, 2021).

This is particularly true given the reasons the State posits, and the purported facts it puts forward, for the materiality of the registration form omissions at issue in this case.[10] The State claims that the checkbox is "useful" to confirming citizenship. Doc. 364 at 12. But a factual record is necessary to determine whether it is indeed "useful" to the election officials tasked with that responsibility. Likewise, the State claims that place of birth can help officials confirm a voter's identity—both in allegedly disambiguating among potential voters and uncovering impersonation. Doc. 364 at 14. Only with a factual record can this Court ascertain whether this is a use that election officials could or would make of place of birth information.

Courts addressing such claims routinely recognize the need for a factual record to assess whether a State's alleged uses for challenged requirements are reflected by the reality of daily election administration. *See, e.g.*, *Vote.org v. Georgia State Election Bd.*, No. 1:22-CV-01734-JPB, 2023 WL 2432011, at *7-8 (N.D. Ga. Mar. 9, 2023) (denying motion to dismiss citing factual allegations that election officials previously accepted applications without an ink signature but noting that "[u]ltimately, discovery may yield evidence

---

[9] Indeed, Plaintiffs' counsel raised the materiality of qualifications to vote as an issue that would require factual development and would not be ripe for this early summary judgment briefing during the March 23 hearing. *See* Doc. 389-2, Ex. 31 (Mar. 3, 2023 Tr.) at 48.

[10] For example, in support of its motion, the State seeks to rely on a U.S. Department of State Manual and other voter registration forms, purportedly to show that other states and agencies make use of place of birth information. Doc. 365 at ¶¶ 11-13. This is precisely the type of factual issue unripe for resolution at this stage of the proceedings.

demonstrating the materiality" of the ink signature requirement); *League of Women Voters of Arkansas v. Thurston*, No. 5:20-CV-05174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021) ("Discovery may yield evidence demonstrating the materiality of requiring this information to be provided on multiple forms, but at this stage of litigation . . . the motion to dismiss these claims will be denied."). As the Third Circuit noted, for example, record evidence that election officials accepted absentee ballots with "obviously incorrect dates" of when the voter submitted the ballot was a key fact for concluding that election officials' rejection of absentee ballots omitting the dates violated the Materiality Provision. *Migliori v. Cohen*, 36 F.4th 153, 162-63 (3d Cir. 2022), *vacated as moot in Ritter v. Migliori*, 143 S. Ct. 297 (2022).

Thus, all Plaintiffs should be afforded a full opportunity to develop the requisite factual record—a record that LUCHA Plaintiffs expect to establish the immateriality of the omissions at issue here and refute the State's unsupported assertions—before this Court renders judgment on their claims. *See* Fed. R. Civ. P. 56(d); *Texas Partners v. Conrock Co.*, 685 F.2d 1116, 1119 (9th Cir. 1982) (reversing summary judgment when district court did not "afford[] Plaintiffs-Appellants the opportunity to proceed with discovery" and Plaintiffs did not have "reasonable access to potentially favorable information prior to the granting of summary judgment").

### b. MI FAMILIA VOTA PLAINTIFFS' MOTION IS ALSO PREMATURE.

For the same reasons described above in Section I.a, Mi Familia Vota Plaintiffs' motion for summary judgment on their Materiality Provision claims is likewise premature and should be denied. [11] LUCHA Plaintiffs reserve the right to file a more specific opposition to Mi Familia Vota Plaintiffs' cross-motion for summary judgment on the Materiality Provisions on July 5 according to this Court's schedule for such oppositions. *See* Doc. 362.

---

[11] Even in the case of summary judgment in their favor, LUCHA Plaintiffs have a strong interest in developing a full factual record for purposes of any appeal.

7

1

2

### c. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE MATERIALITY OF THE CITIZENSHIP CHECKMARK REQUIREMENT UNDER THE CIVIL RIGHTS ACT.

3

4

5

6

7

8

9

Under the Checkmark Requirement, an election official must reject an otherwise valid voter registration application if the applicant does not mark "yes" in the citizenship checkbox on the application, *even if* the election official is in possession of documentary proof of the applicant's U.S. citizenship, i.e., a copy of a birth certificate or passport. A.R.S. § 16-121.01. Because material disputes of fact remain as to the materiality of a voter's omission of the Checkmark Requirement to election officials' ability to assess a voter's qualifications, the Court should deny the State's motion.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The State's argument that the Checkmark Requirement does not run afoul of the Materiality Provision relies on its unsupported assertion that even if the citizenship checkmark is "duplicative," it nonetheless "serve[s] a useful role by seeking [the voter's citizenship status] in a different way." Doc. 364 at 17. But this assertion—that the separate checkbox is "useful" to election officials in assessing qualifications—is unsupported by *any* record evidence. *Id.*; *see also* Doc. 365 (stating no facts in support).[12]  Even though discovery is ongoing, the record so far already belies this assertion. The Secretary of State, as Chief Election Official, has *admitted* that "the Checkmark Requirement is immaterial to an applicant's eligibility to vote where the applicant has otherwise attested to their U.S. citizenship under penalty of perjury or provide DPOC under Arizona law." Pls. Controverting SOF, Doc. 389 at 9, Section II ¶ 4; Doc. 124 at ¶¶ 66-67, 197. The Secretary has further advised counties: "[I]f an applicant provides DPOC, or DPOC can be acquired based on the provided information, the county recorder should accept the form. The checkbox is immaterial and violates the CRA, by denying the right to register to vote to eligible Arizonans who accidentally omit the checkmark from

25

26

27

28

---

[12] Rather than providing any material and uncontroverted facts to support this assertion, the State makes a vague analogy to surveys or mortgage documents that may contain duplicative questions or requirements. Doc. 364 at 12. The existence of duplicative requests or requirements in other contexts says nothing about whether duplicative demands are lawful under the Materiality Provision, what purpose those duplicative requests might serve in those contexts, or how such purposes might—or might not—translate to the voter registration context.

8

their voter registration application." Pls. Controverting SOF, Doc. 389 at 10, Section II ¶ 5; Doc. 388-4 at 52, Ex. 16 (Memo from K. Lorick to County Recorders) at AZSOS-000012.

Substantial discovery is ongoing that LUCHA Plaintiffs contend will further confirm that, where election officials have in their possession documentary evidence of U.S. citizenship for a voter, the checkmark adds nothing "useful" to their assessment of the voter's eligibility requirements.[13] Pls. Controverting SOF, Doc. 389 at 10, Section II ¶ 6; Doc. 389-2, Ex. 32 at 6 (Interrogatories to Secretary Fontes); Ex. 33 at 9 (RFPs to Secretary Fontes); Ex. 34 at 7-8 (Interrogatories to County Recorders); Ex. 35 at 9-10 (RFPs to County Recorders). LUCHA Plaintiffs expect that such discovery will show that election officials have accepted without incident voter registration forms that omit the checkmark when officials otherwise have proof of U.S. citizenship for the applicant;[14] the reliability of the proof of U.S. citizenship in election officials' possession for purposes of establishing U.S. citizenship; and the lack of any noncitizen voting fraud that the Checkmark Requirement would prevent. Plaintiffs' Materiality Provision claims should not be resolved, against *or* in favor of Plaintiffs, until that record is fully developed.

---

[13] As of this filing, no depositions have taken place in this matter. Pls. Controverting SOF, Doc. 389 at 12, Section II ¶ 12; Doc. 389-1 (Decl. of Hayden Johnson) at ¶ 11. Plaintiffs expect to depose a representative(s) of the Secretary of State and Attorney General, county recorders and others. These depositions will allow Plaintiffs to both establish the lack of "usefulness" of the Checkmark Requirement to election officials and probe the State's rationale for asserting otherwise in the face of election officials' expert testimony on matters of voter registration. The same is true for the Birthplace Requirement.

[14] That the checkmark "has long existed in both forms," Doc. 364 at 17, says nothing about whether it is material in cases where election officials have other reliable proof of an applicant's U.S. citizenship. More relevant is that election officials have previously treated the checkmark as immaterial and duplicative where they have access to registrants' documentary proof of citizenship. LUCHA Plaintiffs should have the opportunity to develop that record here. *See La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 542 (W.D. Tex. 2022) (citing allegations that defendants were able to verify a voter's identify with other means prior to enactment of a challenged requirement as relevant to whether the requirement is "unnecessary and therefore not material"); *Vote.org,* 2023 WL 2432011, at *7 (citing plaintiffs' factual allegations that election officials "previously accepted applications with no hand-written signature from voters who applied using [Georgia's] online portal" in support of Materiality Provision challenge to wet signature requirement).

Finally, this Court has already rejected the State's assertion that purely duplicative requirements for registration are nonetheless always "material" so long as they relate to a voter qualification. *See* Doc. 304 at 32 ("The United States has plausibly alleged that H.B. 2492 requires duplicative information from registrants that is 'unnecessary and therefore not material to determining an individual's qualifications to vote' under Arizona law.").

This is consistent with the mine run of decisions in other courts. *See, e.g.*, *La Union del Pueblo Entero*, 604 F.Supp. 3d at 542; *League of Women Voters of Ark.*, 2021 WL 5312640, at \*4 ("[W]here State law requires absentee voters to provide [material] information several times and, as Plaintiffs allege, they have correctly provided that information at least once, but absentee voters' ballots are nonetheless rejected on the basis of a mismatch or omission in one of the multiple documents they have provided, they have plausibly alleged a denial of the right to vote on the basis of immaterial errors or omissions."). For example, in *Martin v. Crittenden*, the Court concluded that the rejection of absentee ballots for omission of birth year likely violated the Materiality Provision in part because "elections officials have already confirmed such voters' eligibility through the absentee ballot application process." 347 F. Supp. 3d 1302, 1309 (N.D. Ga. 2018). Like in these cases, the Checkmark Requirement is redundant, and a voter's omission is immaterial where election officials otherwise have access to sufficient proof of U.S. citizenship.

The State's only contrary authority, *Diaz v. Cobb*, 435 F. Supp. 2d 1206 (S.D. Fla. 2006), is a single out-of-circuit district court opinion at odds with the weight of persuasive authority. It is also inapposite. The only question in *Diaz* was whether checkboxes that required *specific* affirmations of eligibility requirements were immaterial because of a more general oath affirming eligibility on the voter registration form. *Id.* at 1212-13. Here, however, the question is whether the State can deny voter registration to applicants who fail to check a citizenship box when they have provided affirmative documentary proof of their citizenship. The alleged "usefulness" of the checkbox in this context is far afield from the facts in *Diaz*.

### d. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE MATERIALITY OF PLACE OF BIRTH UNDER THE CIVIL RIGHTS ACT.

Under the Birthplace Requirement, election officials must reject a voter registration application if the applicant does not provide her place of birth. A.R.S. § 16-121.01. But the Secretary of State has admitted that "[a] voter's birthplace is *wholly immaterial* to their qualifications to vote" and "[a] person's place of birth has *no bearing* whether they are eighteen, currently a citizen of the United States, or a resident of Arizona and the specific jurisdiction in which they are registering" Pls. Controverting SOF, Doc. 389 at 10, Section II ¶ 7 (emphases added); Doc. 124 ¶ 56. This admission is sufficient to raise a genuine dispute of material fact as to the State's unsupported assertion that the Birthplace Requirement will "help confirm the voter's identity." Doc. 364 at 14.[15]

In the face of this admission, the State puts forward no evidence that election officials could or would use place of birth for the purposes of confirming a prospective voter's identity.[16] And Arizona's decades-long history of treating this information as voluntary,[17] and likely collected for nothing more than statistical purposes, belies the State's claim that this information is needed to confirm a prospective voter's identity. *See supra* fn. 14. Moreover, the State's bare assertion that the Birthplace Requirement will "help confirm the voter's identity" is further undermined by the State's shifting rationales for the requirement between here and the Motion to Dismiss stage. *See* Doc. 127 at 28 (arguing that "birthplace . . . is material to eligibility because it helps define what sort of proof can serve to demonstrate citizenship"). Such "shifting rationales" may "support[] an inference of pretext" that is best

---

[15] The State's acknowledgment that "the materiality of a voter's place of birth is less obvious," Doc. 364 at 19, seems to concede that this is not an issue outside serious dispute and thus not readily susceptible to summary judgment.

[16] While the Arizona state voter registration form has previously contained a space for registrants to optionally choose to submit information concerning their place of birth, the State fails to show that Arizona election officials have ever used responses to this permissive inquiry for any voter registration or voter identification purpose.

[17] Other states similarly collect this information on a voluntary basis for statistical or demographic purposes. *See* Pls. Controverting SOF, Doc. 389 at 11, Section II ¶ 9-10; Defs.' Ex. I, Doc. 365-1 at 140; Doc. 389-2, Ex. 36.

11

explored through evidence and resolved at trial rather than summary judgment. *Samson v. Wells Fargo Bank, N.A.*, 777 F. App'x 881, 884 (9th Cir. 2019).

Against an admission from the State's chief election official that this information is immaterial, the State offers only a U.S. State Department Manual that asserts that place of birth "distinguishes [an] individual from other persons with similar names and/or dates of birth and helps identify claimants attempts to use another person's identity." Doc. 364 at 14.[18] But the problems with this "evidence" are myriad, particularly at this stage of the case. On its face, an assertion that the U.S. State Department uses place of birth to establish identity says nothing about how Arizona election officials could (or more likely, could not) use such information. In issuing passports, the U.S. State Department faces distinct challenges arising, for example, from the size of the population it serves and the many potential fraudulent uses of a passport. Moreover, as a federal agency, it has access to vastly different data and resources compared to Arizona election officials.

---

[18] The State also asserts that "four states other than Arizona *appear* to require it," Doc. 364 at 14 (emphasis added) (citing Defs.' Ex. I). But the State's purported "evidence" suggests otherwise. *See* Pls. Controverting SOF, Doc. 389 at 11, Section II ¶ 11. In each of the four states the State cites for the proposition, there is no statute plainly requiring place of birth for registration. *Id.* To the extent Defendants rely solely on the instruction on Alabama's form that applicants should "fill in all boxes on this form," Defs.' Ex. I. at 1, or the statement on Nevada's form that "[a]ll fields are required unless marked Optional," Defs.' Ex. I at 10, that does not establish that those states require place of birth to register an applicant. To the contrary, Alabama law expressly provides that "no applicant shall be required to answer any question, written or oral, not related to his or her qualifications to register." Ala. Code § 17-3-52; *see also id.* § 17-3-54 (stating that an application "may be refused registration" only if the applicant "fails to establish by evidence … that he or she is qualified to register"). And Alabama's forms include spaces for sex and race, but it is unlikely that information is required to register to vote. Similarly, Vermont and Tennessee's online voter registration forms likely do not require place of birth. *See* Pls. Controverting SOF, Doc. 389 at 12, Section II ¶ 11; Doc. 389-2, Ex. 37-38. Further, looking beyond the statutes and forms themselves, the State has not established that any of those four cited states, in practice, reject voter registration applications when that information is omitted, nor does it establish for what uses state election officials use that information in those states. Plaintiffs are entitled to the opportunity to probe these questions through discovery before resolution of this claim. *See* Pls. Controverting SOF, Doc. 389 at 10, Section II ¶ 8; Doc. 389-2, Ex. 32-35.

But rather than take the State's unsupported word for it, these contentions should be resolved on a complete record. Since the State raised this rationale for the first time in its motion, Plaintiffs have not had any opportunity to investigate how and why the U.S. State Department allegedly uses place of birth to help establish an individual's identity nor uncover whether election officials could, would, or need to replicate such efforts. Discovery will allow Plaintiffs to uncover this information. *See* Pls. Controverting SOF, Doc. 389 at 10, Section II ¶ 8; Doc. 389-2, Ex. 32-35. This Court should not resolve this claim on summary judgment until Plaintiffs are permitted to build a full record refuting the State's newly asserted "identity confirmation" rationale for the Birthplace Requirement.

## II.    DEFENDANT-INTERVENORS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON LUCHA PLAINTIFFS' CLAIMS UNDER SECTION 8 OF THE NVRA.

Defendant-Intervenors seek summary judgment on LUCHA Plaintiffs' claim that HB 2492 violates Section 8's command that election officials "ensure" that all timely eligible applicants are registered to vote. Doc. 367 at 14. As this claim applies to Federal Form applicants, LUCHA Plaintiffs oppose Defendant-Intervenors' motion and cross-move on this claim for the reasons stated in the Mi Familia Vota Plaintiffs' brief.

As this claim applies to all other applicants covered by the protections of the National Voter Registration Act—namely, applicants who register using the State Form or register at public assistance agencies—this claim is not ripe for summary judgment because it requires factual development. Section 8 requires that each State "ensure that any eligible applicant is registered to vote" if their "valid voter registration form" is received "not later than the lesser of 30 days, or the period provided by State law, before the date of the election." 52 U.S.C. § 20507(a)(1). Yet, for all voter registration applicants except Federal Form applicants, county recorders "shall reject any application for registration that is not accompanied by satisfactory evidence of citizenship." A.R.S. § 16-121.01(C). HB 2492 similarly mandates all voter registrations to be accompanied by documentary proof of location of residence. A.R.S. § 16-123. Therefore, the operative question under Section 8 is whether voter registration forms are

"valid" if they lack DPOC or DPOR. If so, HB 24942's mandate that they be rejected violates Section 8 of the NVRA, which requires that states "ensure" that they are registered to vote.

The NVRA protects applicants using the State Form to register for federal elections. While Section 6 of the NVRA allows states to develop and use their own state mail voter registration form for registration in federal elections, 52 U.S.C. § 20505(a)(2), those state mail voter registration forms must meet the requirements of Section 9. Section 9 imposes certain requirements on state mail voter registration forms—including an attestation of voter eligibility and signature under penalty of perjury—but also sharply restricts the additional information states can require from those seeking to register to vote in federal elections. A state mail voter registration "may require only such identifying information . . . and other information . . . as is necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration." 52 U.S.C. § 20508(b)(1); *Fish v. Kobach*, 840 F.3d 710, 737-38 (10th Cir. 2016) (construing Section 5 of the NVRA but holding that the requirements of Section 5 and Section 9 are "analogous").

Thus, if DPOC or DPOR is not "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration," then Arizona's demand that this documentation accompany the State Form is impermissible and its rejection of otherwise valid State Forms absent this documentation violates Section 8. Because whether such records are "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration" is a factual question, this issue is not ripe for summary judgment at this early stage. *See Fish v. Schwab*, 957 F.3d 1105 (10th Cir. 2020) (affirming district court's holding, after trial, that Kansas's DPOC requirement exceeded the "minimum amount of information necessary" standard for motor vehicle agency registrations).

Similarly, the NVRA protects applicants who register to vote at certain NVRA-mandated public assistance agencies. 52 U.S.C. § 20506. Section 7 of the NVRA requires that NVRA-mandated public assistance agencies either distribute the Federal Form or "the office's own form if it is equivalent" to the Federal Form. Outstanding discovery will establish what

14

forms Arizona's mandated public assistance agencies use to comply with their voter registration obligations and how those forms are processed. *See, e.g.*, Doc. 389-2, Ex. 32 at 6 (Interrogatory No. 7) and Ex. 33 at 10 (RFP No. 7). Such factual development is necessary for this Court to fully adjudicate LUCHA Plaintiffs' claims under Section 8(a) of the NVRA as applied to public assistance agency applicants.

**CONCLUSION**

For the foregoing reasons, LUCHA Plaintiffs ask this Court to (1) grant its cross-motion for summary judgment on its claims under Section 6 of the NVRA and Section 8(a) of the NVRA as applied to Federal Form Applicant, (2) enter the requested rulings interpreting the DPOR requirements as outlined in the Tohono O'odham Plaintiffs' brief, (3) hold that non-U.S. Plaintiffs have a private right of action to pursue claims under the Materiality Provision of the Civil Rights Act, and (4) deny the State's and Defendant-Intervenors' remaining motions for partial summary judgment as to LUCHA Plaintiffs' claims pursuant to Section 8 of the NVRA and the Materiality Provision of the Civil Rights Act.

Respectfully submitted,

June 5, 2023:

/s/ Danielle Lang

**BARTON MENDEZ SOTO**
James Barton (AZ Bar No. 023888)
401 W. Baseline Road
Suite 205
Tempe, AZ 85283
480-418-0668
james@bartonmendezsoto.com

**DEPARTMENT OF JUSTICE**
**SAN CARLOS APACHE TRIBE**
Alexander B. Ritchie
(AZ Bar No. 019579)
Attorney General
Chase A. Velasquez*
NM Bar No. 019148
Assistant Attorney General
Post Office Box 40
16 San Carlos Ave.

**CAMPAIGN LEGAL CENTER**
Danielle Lang*
Jonathan Diaz*
Molly Danahy*
Hayden Johnson*
Nicole Hansen*
1101 14th St. NW, Suite 400
Washington, D.C. 20005
(202) 736-2200
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org
hjohnson@campaignlegalcenter.org
nhansen@campaignlegalcenter.org

**MAYER BROWN LLP**
Lee H. Rubin* (CA# 141331)
Two Palo Alto Square, Suite 300
3000 El Camino Real

San Carlos, AZ 85550
Alex.Ritchie@scat-nsn.gov
Chase.Velasquez@scat-nsn.gov

**FREE SPEECH FOR PEOPLE**
Courtney Hostetler* (MA# 683307)
John Bonifaz* (MA# 562478)
Ben Clements* (MA# 555082)
Ronald Fein* (MA# 657930)
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
chostetler@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org
rfein@freespeechforpeople.org

Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Gary A. Isaac* (IL# 6192407)
Daniel T. Fenske* (IL# 6296360)
Jed W. Glickstein* (IL# 6315387)
William J. McElhaney, III*
(IL# 6336357)
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
dfenske@mayerbrown.com
gisaac@mayerbrown.com
jglickstein@mayerbrown.com

Rachel J. Lamorte* (NY# 5380019)
1999 K Street NW
Washington, DC 20006
(202) 362-3000
rlamorte@mayerbrown.com

*Attorneys for Living United for Change in Arizona, League of United Latin American Citizens, Arizona Students' Association, ADRC Action, Inter Tribal Council of Arizona, Inc., San Carlos Apache Tribe, and Arizona Coalition for Change*

*Admitted Pro Hac Vice

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

On this 5th day of June, 2023, I caused the foregoing to be filed and served electronically via the Court's CM/ECF system upon counsel of record.

<u>*/s/* Danielle Lang</u>
Danielle Lang