Ernest Herrera*
Erika Cervantes*
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
eherrera@maldef.org
ecervantes@maldef.org

*Admitted Pro Hac Vice*

Daniel R. Ortega Jr
Ariz. Bar No. 005015
Ortega Law Firm
361 East Coronado Road, Suite 101
Phoenix, AZ 85004-1525
Telephone: (602) 386-4455
Email: danny@ortegalaw.com

*Attorneys for Promise Arizona Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mi Familia Vota, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., <br><br> Defendants. <br><br> AND CONSOLIDATED CASES. | Case No. CV-22-00509-PHX-SRB (Lead) <br><br> **PROMISE ARIZONA AND SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT'S OPPOSITION TO DEFENDANTS ATTORNEY GENERAL KRISTEN K. MAYES AND STATE OF ARIZONA'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> No. CV-22-00519-PHX-SRB <br> No. CV-22-01003-PHX-SRB <br> No. CV-22-01124-PHX-SRB <br> No. CV-22-01369-PHX-SRB <br> No. CV-22-01381-PHX-SRB <br> No. CV-22-01602-PHX-SRB <br> No. CV-22-01901-PHX-SRB |

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………………………1

ARGUMENT………………………………………………………………………......………..2

    I.    SUMMARY JUDGMENT STANDARD……………...…………...2

    II.    THE CHALLENGED SECTIONS ARE VOID FOR VAGUENESS...3

        A. THE CHALLENGED SECTIONS FAIL TO PROVIDE AN ORDINARY VOTER NOTICE OF THE TYPE OF INFORMATION THAT WOULD TRIGGER A COUNTY RECORDER'S SUBJECTIVE JUDGMENT………………………...4

        B. THE CHALLENGED SECTIONS ENCOURAGE ARBITRARY AND DISCRIMINATORY ENFORCEMENT……………………8

        C. THE CHALLENGED SECTIONS FAIL TO GUARD SUFFICIENTLY AGAINST THE ARBITRARY DEPRIVATION OF THE RIGHT TO VOTE…………………….…..………..……10

    III.    PROMISE ARIZONA AND SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT HAVE ORGANIZATIONAL STANDING…………………….…………12

CONCLUSION……………………………………………………………………………...14

# TABLE OF AUTHORITIES

**Cases**

*Babbitt v. United Farm Workers Nat. Union*,
   442 U.S. 289 (1979)......................................................................................................13

*Big Bear Super Market No. 3 v. I.N.S.*,
   913 F.2d 754 (9th Cir. 1990)...........................................................................................8

*Castle v. Schriro*,
   2009 WL 3419648 (D. Ariz. Oct. 22, 2009)..................................................................11

*Chicago v. Morales*,
   527 U.S. 41 (1999).................................................................................................10, 12

*Commonwealth of Pennsylvania v. State of West Virginia*,
   262 U.S. 553 (1923)......................................................................................................13

*Craft v. National Park Service*,
   34 F.3d 918 (9th Cir. 1994)............................................................................................11

*Devereaux v. Abbey*,
   263 F.3d 1070 (9th Cir. 2001).........................................................................................2

*East Bay Sanctuary Covenant v. Biden*,
   993 F.3d 640 (9th Cir. 2021).........................................................................................12

*F.C.C. v. Fox Television Stations, Inc.*,
   567 U.S. 239 (2012)........................................................................................................4

*Forbes v. Napolitano*,
   236 F.3d 1009 (9th Cir. 2000)............................................................................4, 5, 6, 8

*Fuller v. Idaho Department of Corrections*,
   865 F.3d 1154 (9th Cir. 2017).........................................................................................3

*Giacco v. Pennsylvania*,
   382 U.S. 399 (1966)........................................................................................................4

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972)......................................................................................................3, 8

*Hoffman v. Estates*,
    455 U.S. 489 (1982)............................................................................................8, 10, 11

*Hunt v. City of Los Angeles*,
    638 F.3d 703 (9th Cir. 2011)..........................................................................................4

*Hunt v. Cromartie*,
    526 U.S. 541 (1999).......................................................................................................3

*International Society for Protection of Mustangs*,
    2022 WL 3588223 (D. Ariz. July 28, 2022)................................................................12

*Kolender v. Lawson*,
    461 U.S. 352 (1983).................................................................................................8, 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).....................................................................................................12

*Papachristou v. City of Jacksonville*,
    405 U.S. 156 (1972)...............................................................................................4, 8, 9

*Scafidi v. Las Vegas Metropolitan Police Department*,
    966 F.3d 960 (9th Cir. 2020).........................................................................................2

*Steffel v. Thompson*,
    415 U.S. 452 (1974).....................................................................................................13

*United States v. Salerno*,
    481 U.S. 739 (1987).....................................................................................................10

*Valle de Sol Inc. v Whiting*,
    732 F.3d 1006 (9th Cir. 2013).......................................................................................4

*Winters v. New York*,
    333 U.S. 507 (1948).......................................................................................................8

*Zetwick v. Cty. Of Yolo*,
850 F.3d 436 (9th Cir. 2017)....................3

**Statutes**

A.R.S. § 16-165....................2

A.R.S. § 16-165(I)....................Passim

A.R.S. § 16-165(A)(10)....................Passim

**Rules**

Fed. R. Civ. P. 56(a)....................2

## INTRODUCTION

Plaintiffs Promise Arizona and Southwest Voter Registration Education Project respectfully oppose Section III of Defendants Attorney General Kristin K. Mayes and State of Arizona's Motion for Partial Summary Judgment ("AG MSJ") as joined by RNC and Legislative Intervenors. *See* Dkts. 364; 367, FN1; 369.[1]

On May 25, 2022, the Arizona State Legislature ("Legislature") passed House Bill 2617 ("H.B. 2617"). The proposed legislation required county recorders to verify a person's information against state and federal databases to confirm their citizenship status. Most notably, H.B. 2617 also required county recorders to cancel a registration when the recorder received and confirmed information that the person registered was not a United States citizen. Because H.B. 2617 failed to provide the "necessary safeguards" to "protect the vote of any Arizonian who is eligible and lawfully registered," Arizona Governor Douglas Ducey vetoed the bill on May 27, 2022. *See* Governor Douglas A. Ducey Letter re House Bill 2617 (May 27, 2022), https://www.azleg.gov/govlettr/55leg/2r/hb2617.pdf.

Following the veto of H.B. 2617, the Legislature presented an amended version of H.B. 2243 ("H.B. 2243"), which included identical language from H.B. 2617. The new provisions were allegedly meant to address Governor Ducey's due process concerns. Like H.B. 2617, the amended version of H.B. 2243 encourages the targeting and purging of non-citizens from the voter rolls. Regardless of its detrimental effects on minority voters, Governor Ducey signed H.B. 2243 into law on July 6, 2022. *See* Plaintiffs Promise

---

[1] Plaintiffs Promise Arizona and Southwest Voter Registration Education Project also join Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition's Response to Defendants' Motions for Partial Summary Judgment and Cross-motion for Partial Summary Judgment.

Arizona and Southwest Voter Registration Education Project's Statement of Facts ("SOF") ¶ 1 & Ex. A.

H.B. 2243 is dangerous to Arizona voters. Read naturally, H.B. 2243, more specifically, A.R.S. § 16-165(A)(10) and (I), grants county recorders not only the power to decide who is a United States citizen, but which voters will be subsequently subject to the systematic alien verification for entitlements program ("SAVE program"), a voter purge, and criminal investigation. The amount of discretion given to county recorders under these provisions must be addressed as they run afoul of the vagueness doctrine, thus violating the Fourteenth Amendment of the U.S. Constitution. For the reasons stated below, the AG's requested ruling that "[t]he Voting laws are not constitutionally vague" should be denied. [2]

**ARGUMENT**

**I.     SUMMARY JUDGMENT STANDARD**

Defendants Attorney General Kristin K. Mayes and State of Arizona's Motion for Partial Summary Judgment should be denied. Summary judgment is only appropriate where, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Scafidi v. Las Vegas Metropolitan Police Department*, 966 F.3d 960, 962 (9th Cir. 2020) (citing *Devereaux v. Abbey,* 263 F.3d 1070, 1074 (9th Cir. 2001)). "[I]n ruling on a motion for summary judgment, the

---

[2] House Bill 2243 ("H.B. 2243") includes amendments to A.R.S. § 16-165. While Plaintiffs refer throughout to H.B. 2243 violating the vagueness doctrine for ease of reference, it is provisions of A.R.S. § 16-165 which violate the vagueness doctrine.

2

nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). All that is required to "defeat summary judgment is simply evidence such that a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor." *Fuller v. Idaho Department of Corrections*, 865 F.3d 1154, 1161 (9th Cir. 2017) (quoting *Zetwick v. Cty. Of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017)). Despite the State's arguments to the contrary, there is sufficient evidence to allow a fact-finder to find in Plaintiffs' favor on each essential element of their vagueness claim. Accordingly, the State's motion should be denied.³

**II.  THE CHALLENGED SECTIONS ARE VOID FOR VAGUENESS.**

The State of Arizona's H.B. 2243 is unconstitutionally vague. As the Supreme Court stated in *Grayned*, "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Vague laws are prohibited in our society because they "may trap the innocent by not providing fair warning" and "impermissibly delegate . . . basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Id.* at 108-09.

---

³ Moreover, Defendants' Motion for Partial Summary Judgment should be denied as it is premature. In setting the case management schedule, this Court specifically requested that parties bring forward dispositive motions that can be resolved as a matter of law. Transcript of Proceedings, Scheduling Conference, 48, March 23, 2023. ("All I care about is it's issues that I can decide as a matter of law and are not dependent upon any discovery or statement of the facts.").Defendants' arguments implicate facts that are the subject of ongoing discovery. *See* discussion infra Sections II-III. For these reasons, Defendants' motion for partial summary judgment should be denied.

Accordingly, a statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited;" *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); or if it encourages arbitrary or discriminatory enforcement. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). A.R.S. § 16-165(A)(10) and (I) fail on both counts and must be struck down.

### A. THE CHALLENGED SECTIONS FAIL TO PROVIDE AN ORDINARY VOTER NOTICE OF THE TYPE OF INFORMATION THAT WOULD TRIGGER A COUNTY RECORDER'S SUBJECTIVE JUDGMENT.

"The due process clause of the Fourteenth Amendment guarantees individuals the right to fair notice of whether their conduct is prohibited by law." *Forbes v. Napolitano*, 236 F.3d 1009, 1011 (9th Cir. 2000). When faced with a statute, "individuals must be given a reasonable opportunity to discern whether their conduct is proscribed so they can choose whether or not to comply with the law." *Id.* (citing *Giacco v. Pennsylvania*, 382 U.S. 399, 402-03 (1966)). When criminal sanctions are implicated, "a more demanding standard of scrutiny applies." *Valle de Sol Inc. v Whiting*, 732 F.3d 1006, 1019 (9th Cir. 2013) (quoting *Hunt v. City of Los Angeles*, 638 F.3d 703, 712 (9th Cir. 2011)).

Under A.R.S. § 16-165(I), county recorders are required to compare persons registered to vote and whom the recorders have "reason to believe are not United States citizens" with the SAVE program on a monthly basis. *See* A.R.S. § 16-165(I). According to H.B. 2243, the outcome of a SAVE comparison can serve as the basis for subsequent purge from the voter rolls and criminal penalty. *See* A.R.S. § 16-165(A)(10). To frame this provision in another way, in order to avoid the punishment of being compared with the SAVE program, and subsequently, voter registration cancellation and criminal

investigation, the voter is *prohibited* from giving county recorders *any* reason to believe that they are not a United States citizen. *See* A.R.S. § 16-165(I); *see also* A.R.S. § 16-165(A)(10). A.R.S. § 16-165(I) raises an important question: when would a voter run afoul of this subjective prohibition? Simply put, there is no way to know.

Laws must be "intelligible, defining a 'core' of proscribed conduct that allows people to understand whether their actions will result in adverse consequences." *Forbes*, 236 F.3d at 1011 (emphasis added). For example, in *Forbes*, an Arizona statute criminalized any medical "experimentation" or "investigation" involving fetal tissue from induced abortions unless necessary to perform "routine pathological examination" or to diagnose the maternal or fetal condition that prompted the abortion. *Id.* at 1010. The Ninth Circuit determined that the law was void for vagueness because the undefined terms "experimentation", "investigation," and "routine" were so ambiguous that the statute did not "establish any 'core' of unquestionably prohibited activities." *Id.* at 1012.

Like *Forbes*, A.R.S. § 16-165(I) fails to establish any "core." *Id.* The element of "reason to believe [that persons] are not United States citizens" is ambiguous and lacks any definition to focus the application of this provision. *Id.; see also* Case No. 2:22-CV-01602, Dkt. 46 ¶ 71, ("The Secretary also admits that HB 2243 does not specify what information would give county recorders 'reason to believe' that a person is not a United State citizen . . ."). Without any guidance explaining this element's reach, county recorders in their subjective judgment may decide which types of voter information from different databases and systems they can use to compare voters to the SAVE program and subject them to registration cancellation and criminal liability. Before providing personal

information and being potentially subject to these life-changing consequences, voters should at least have adequate notice of the type of information that could trigger a county recorder's subjective judgment. The lack of notice and standards for enforcement arising from the ambiguity of the phrase "reason to believe [that persons] are not United States citizens" renders A.R.S. § 16-165(I) unconstitutionally vague. *Id.* at 1013.

A.R.S. § 16-165(A)(10) runs into the exact same vagueness issues as A.R.S § 16-165(I). Under A.R.S. § 16-165(A)(10), the voter registration cancellation processes and investigation referrals begin once a county recorder "confirms", i.e. *believes*, that a registered voter is not a U.S. citizen. *See* A.R.S. § 16-165(A)(10); *see also* AG MSJ at 15. Like A.R.S § 16-165(I), H.B. 2243 does not specify what information would "confirm" that a registered voter is not a United States citizen. *See* Case No. 2:22-CV-01602, Dkt. 46 ¶ 66. ("The Secretary also admits that HB 2243 does not otherwise specify. . . what 'information' establishes that a registered voter 'is not a United States citizen'. . ."). Thus, under A.R.S. § 16-165(A)(10), to be safe from a purge and criminal investigation, a voter is once again *prohibited* from giving county recorders *any* indication that they are not a United States citizen. Like A.R.S. § 16-165(I), the provision provides no definitions, examples, guidelines, or standards to better understand its limits. Instead, voters are left guessing as to what type of voluntary information would subject them to the voter registration cancellation process and criminal liability. For these reasons, A.R.S. § 16-165(A)(10) must be considered vague.

To further illustrate the absurdity that arises from the ambiguity of A.R.S. § 16-165(A)(10), Plaintiffs offer the following hypothetical: when implementing H.B. 2243, at

6

some point, a county recorder may want to verify a native-born U.S. citizen's immigration status through the SAVE program. *See* A.R.S. § 16-165(I). To verify one's immigration status through the program, the county recorder would need to submit the voter's first name, last name, date of birth, *and* a numeric identifier associated with an immigration or naturalization document or data point. *See* SOF ¶¶ 7-8. However, native-born U.S. citizens do not have such numeric identifiers. Therefore, native-born U.S. citizens can never be properly verified under the SAVE program. In this scenario, however, the lack of a numeric identifier and inability to verify one's immigration status through the SAVE program could be enough to commence the cancellation of a native-born U.S. citizen's voter registration as those circumstances could be sufficient information to "confirm"—mistakenly—that they are "not a United States citizen" under A.R.S. § 16-165(A)(10). *See* A.R.S. § 16-165(A)(10).

The need for clarity of these provisions is crucial because H.B. 2243 not only affects newly registered voters, but lifelong voters as well. In regard to the latter group, these voters have already provided their personal information to register to vote. Despite the number of years that they have been a registered voter in Arizona, H.B. 2243, as written, permits county recorders to use their past information to subjectively determine which lifelong voter will be subject to purge and criminal liability. *See* A.R.S. § 16-165(A)(10). As argued above, before providing the state any data, all voters—including lifelong voters—are entitled to be notified of the type of personal information that can potentially risk their vote and livelihood.

In addition, since criminal liability is implicated in both A.R.S. § 16-165(A)(10) and (I), the need for their definiteness is that much greater. *See* A.R.S. § 16-165(A)(10) ("

7

the county recorder shall. . .notify the county attorney and attorney general for possible investigation"); *see also Hoffman v. Estates*, 455 U.S. 489, 498-99 (1982) ("The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."); *Kolender v. Lawson*, 461 U.S. 352, n.8 (1983)(". . .where a statute imposes criminal penalties, the standard of certainty is higher")(citing *Winters v. New York*, 333 U.S. 507, 515 (1948)); *Big Bear Super Market No. 3 v. I.N.S.*, 913 F.2d 754, 757 (9th Cir. 1990) ("A greater degree of ambiguity will be tolerated in statutes which. . .impose civil, as opposed to criminal penalties.").

To summarize, the challenged sections are exactly the type of laws that have "*no* core." *Forbes*, 236 F.3d at 1012. A.R.S. § 16-165(I) and A.R.S. § 16-165(A)(10) fail to provide the ordinary voter notice as to the type of information that would trigger a county recorder's subjective judgment, which would then lead a voter to registration cancellation and prosecution. These sections are incomprehensible to a person of ordinary intelligence and are therefore void for vagueness.

### B. THE CHALLENGED SECTIONS ENCOURAGE ARBITRARY AND DISCRIMINATORY ENFORCEMENT.

A statute is unconstitutionally vague if it encourages arbitrary or discriminatory enforcement. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972). "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

H.B. 2243 requires county recorders—*and only county recorders*—to compare

registered voters to the SAVE program if they have "reason to believe" that they are not United States citizens. *See* A.R.S. § 16-165(I). As previously established, there are no standards governing when a county recorder would have such a belief. *See* A.R.S. § 16-165(I); *see also* Case No. 2:22-CV-01602, Dkt. 46 ¶ 71. Further, H.B. 2243 provides that the voter registration cancellation processes (and subsequent investigation referrals) commence once a county recorder—*and only a county recorder*—confirms that a voter is not a U.S. citizen. *See* A.R.S. § 16-165(A)(10); *see also* AG MSJ at 15. Because H.B. 2243 does not specify what information would establish that a registered voter is "not a United States citizen", the processes under A.R.S. § 16-165(A)(10) can be prompted by the county recorders for *any* reason, including from results stemming from SAVE comparisons as provided by A.R.S. § 16-165(I). *See also* Case No. 2:22-CV-01602, Dkt. 46 ¶ 66. Here, A.R.S. § 16-165(A)(10) and (I), on their face, give complete and sole discretion to county recorders in deciding the fate of thousands upon thousands of Arizona voters.

By not providing any "standards governing the exercise of discretion", laws like A.R.S. § 16-165(A)(10) and (I) transform into a "convenient tool for harsh and discriminatory enforcement by local. . .officials . . . against particular groups." *Papachristou v. City of Jacksonville*, 405 U.S. at 170. Here, this particularly rings true in this matter. Under the current statutory scheme, county recorders not only have the power to decide who is a U.S. citizen, but whether the accused will be subject to their information being compared to the SAVE program, disfranchisement, and prosecution. Accordingly, the challenged sections must be rendered vague because the provisions

allow county recorders to pursue their personal predilections and punish those voting groups who do not fit their model of a "United States citizen." Without any standards governing these subjective provisions, its effects will surely harm minority voters, especially Latino voters and naturalized citizens. For these reasons, A.R.S. § 16-165(A)(10) and (I) must be considered vague.

### C. THE CHALLENGED SECTIONS FAIL TO GUARD SUFFICIENTLY AGAINST THE ARBITRARY DEPRIVATION OF THE RIGHT TO VOTE.

Defendants argue that because no speech rights are implicated, Plaintiffs cannot prevail in their vagueness challenge as the statute is not "vague in all its applications." *See* AG MSJ at 15. Defendants' assertion is misplaced as the challenged sections implicate the fundamental right to vote. Defendants' argument stems from the *Salerno*/*Village of Hoffman Estates* standard. In the context of a facial vagueness challenge that is outside the domain of the First Amendment, the *Salerno*/*Village of Hoffman Estates* principle burdens the challenger in forcing them to demonstrate that a statute is vague in all its applications, i.e., all circumstances. *See United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Village of Hoffman Estates v. Flipside, Hoffman, Inc.,* 455 U.S. 489, 494-95 (1982).

However, Supreme Court precedent has established that the *Salerno*/*Village of Hoffman Estates* standard does not apply when other constitutionally-protected rights are involved. For instance, in *Morales*, the Supreme Court struck down an anti-loitering ordinance, that did not implicate the First Amendment but the freedom of movement, on vagueness grounds. In its opinion, the Court did not consider whether any set of circumstances existed in which the statute would be valid. *See Chicago v. Morales*, 527 U.S. 41 (1999). In *Kolender*, the Supreme Court also upheld a vagueness challenge

against a statute requiring persons who loiter or wander on the streets to provide a "credible and reliable" identification. Like *Morales*, the Court did not require the challenger to prove the law invalid in every conceivable application and was concerned that the statute implicated both First Amendment liberties *and* the freedom of movement. *See Kolender v. Lawson*, 461 U.S. 352 (1983). Here, the *Salerno/Village of Hoffman Estates* standard should not apply because both A.R.S. § 16-165(A)(10) and (I) implicate another constitutionally protected right—the right to vote.

This opposition focuses on two vague voter registration-related provisions, A.R.S. § 16-165(A)(10) and (I). As argued above, these sections give unfettered discretion to all county recorders in not only deciding who is a United States citizen, but who would be subsequently subject to the SAVE program, criminal investigation, and most importantly, disenfranchisement. In short, under the current statutory scheme, one's right to vote arguably boils down to county recorders and their subjectivity. Because the right to vote is implicated, the *Salerno/Village of Hoffman Estates* standard should not deter this Court in holding that A.R.S. § 16-165(A)(10) and (I) are unequivocally vague.

Assuming that the *Salerno/Village of Hoffman Estates* standard applies, Plaintiffs should still prevail because the Supreme Court, the Ninth Circuit, and this Court acknowledge the importance of preserving fundamental rights in the vagueness context. *See Hoffman Estates v. Flipside*, 455 U.S. 489, 499 (1982); *see also Craft v. National Park Service*, 34 F.3d 918, 922 (9th Cir. 1994)("perhaps the most important factor affecting the clarity that the Constitution demands of a law is whether it threatens to inhibit the exercise of constitutionally protected right."); *Castle v. Schriro*, 2009 WL

3419648, at *4 (D. Ariz. Oct. 22, 2009) ("Where a statute is not found to be impermissibly vague in all of its applications, 'it may be impermissibly vague because it fails to establish standards. . .that are sufficient to guard against the arbitrary deprivation of *liberty interests.*'")(citing *Chicago v. Morales*, 527 U.S. 41, 55 (1999)).

### III. PROMISE ARIZONA AND SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT HAVE ORGANIZATIONAL STANDING.

Further, Defendants assert that Promise Arizona and Southwest Voter Registration Education Project lack standing because Plaintiffs cannot show "an actual or imminent injury." *See* AG MSJ at 15. Defendants' argument is inapposite. Similar to individuals, organizations establish standing when "(1) they have suffered an injury-in-fact, meaning an injury that is 'concrete and particularized' and 'actual and imminent,' (2) the alleged injury is 'fairly traceable' to the defendants' conduct, and (3) it is 'more than speculative' that the injury is judicially redressable." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 662-63 (9th Cir. 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

With respect to the injury requirement, an organizational plaintiff may demonstrate that the organization *itself* was injured in fact. "In the Ninth Circuit, this requires the organization to demonstrate (1) frustration of its organizational mission and (2) diversion of its resources in response to that frustration of purpose." *International Society for Protection of Mustangs*, 2022 WL 3588223, at *2 (D. Ariz. July 28, 2022)(citing *E. Bay Sanctuary Covenant*, 993 F.3d at 663). In other words, an organization has standing and suffers an injury when it uses its limited resources to counteract policies that impair its ability to fulfill its organizational mission.

In addition, "[a] plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). However, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Id. (*quoting *Commonwealth of Pennsylvania v. State of West Virginia*, 262 U.S. 553, 593 (1923)). "When contesting the constitutionality of a . . . statute, 'it is not necessary that [the plaintiff] first expose himself to actual . . .prosecution to be entitled to challenge [the] statute that he claims deters the exercise of his constitutional rights.'" *Id.*  (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)). Under these principles, Promise Arizona and Southwest Voter Registration Education Project both have injury-in-fact and standing.

The mission of both Promise Arizona and Southwest Voter Registration Education Project is to improve "the participation of Latino and other minority communities. . .in the democratic process." SOF ¶¶ 15, 21; Ex. D & Ex. E.  Here, H.B. 2243 directly undermines Plaintiffs' organizational mission because the statute grants county recorders broad discretion to pick and choose which voters will be able to take part in Arizona's democratic process. As argued above, H.B. 2243's subjective provisions will most likely harm Latino voters, the targeted demographic of Plaintiffs' mission. *See* discussion *supra* Section II(B).

If implemented, Plaintiffs will have to devote their money, time, and resources to identify and combat the effects of H.B. 2243 through conducting community outreach, organizing educational campaigns, preparing English and Spanish materials, hiring and

training staff, and helping re-register those who are going to be purged under H.B. 2243. SOF ¶¶ 17-18, 24; Ex. D & Ex. E. Accordingly, Plaintiffs' mission is frustrated by H.B. 2243 and Plaintiffs will be forced to divert its limited resources to combat the adverse effects of H.B. 2243. As such, Plaintiffs have shown an injury to establish standing. Plaintiffs also have demonstrated causation that their injury is traceable to the challenged action of the Defendants, and that their injury can be redressed by a favorable judicial decision. Therefore, Plaintiffs have organizational standing.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the AG's requested ruling in Section III of its motion for partial summary judgment.

Dated: June 5th, 2023                    Respectfully submitted,

By: /s/ Erika Cervantes
    Erika Cervantes*
    Ernest Herrera*
    MEXICAN AMERICAN LEGAL
    DEFENSE AND EDUCATIONAL FUND
    634 S. Spring St., 11th floor
    Los Angeles, CA 90014
    Telephone: (213) 629-2512
    Facsimile: (213) 629-0266
    Email: ecervantes@maldef.org
    Email: eherrera@maldef.org

*Admitted Pro Hac Vice*

Daniel R. Ortega Jr.
Ortega Law Firm
361 East Coronado Road, Suite 101
Phoenix, AZ 85004-1525
Telephone: (602) 386-445
Email: danny@ortegalaw.com

*Attorneys for Plaintiffs*
*Promise Arizona and Southwest Voter*
*Registration Education Project*

14

**CERTIFICATE OF SERVICE**

On this 5th day of June, 2023, I caused the foregoing to be filed and served electronically via the Court's CM/ECF system upon counsel of record.

                                              */s/* Erika Cervantes
                                              Erika Cervantes