LATHAM & WATKINS LLP
   Sadik Huseny (pro hac vice)
      *sadik.huseny@lw.com*
   Amit Makker (pro hac vice)
      *amit.makker@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600

ASIAN AMERICANS ADVANCING JUSTICE-AAJC
   Niyati Shah (pro hac vice)
      *nshah@advancingjustice-aajc.org*
   Terry Ao Minnis (pro hac vice)
      *tminnis@advancingjustice-aajc.org*
1620 L Street NW, Suite 1050
Washington, DC 20036
Telephone: (202) 296-2300

*Additional Counsel Listed on Signature Page*

*Attorneys for Plaintiff Arizona Asian
American Native Hawaiian and Pacific
Islander for Equity Coalition*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State, et al.,<br><br>       Defendants,<br>       and<br>Speaker of the House Ben Toma and Senate President Warren Petersen,<br><br>       Intervenor-Defendants. | Case No. 2:22-cv-00509-SRB (Lead)<br><br>**ARIZONA ASIAN AMERICAN NATIVE HAWAIIAN AND PACIFIC ISLANDER FOR EQUITY COALITION'S RESPONSE TO DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Oral Argument Requested.<br><br>No. CV-22-00519-PHX-SRB<br>No. CV-22-01003-PHX-SRB<br>No. CV-22-01124-PHX-SRB<br>No. CV-22-01369-PHX-SRB<br>No. CV-22-01381-PHX-SRB<br>No. CV-22-01602-PHX-SRB<br>No. CV-22-01901-PHX-SRB |

Living United For Change In Arizona, et al.,

                Plaintiffs,

      v.

Adrian Fontes, in his official capacity as
Arizona Secretary of State, et al.,

               Defendant,

      and

State of Arizona, et al.,

            Intervenor-Defendants,

      and

Speaker of the House Ben Toma and Senate
President Warren Petersen,

            Intervenor-Defendants.

---

Poder Latinx,

               Plaintiff,

      v.

Adrian Fontes, in his official capacity as
Arizona Secretary of State, et al.,

              Defendants,

      and

Speaker of the House Ben Toma and Senate
President Warren Petersen,
Intervenor-Defendants.

---

United States of America,

               Plaintiff,

      v.

State of Arizona, et al.,

              Defendants,

      and

Speaker of the House Ben Toma and Senate
President Warren Petersen,
Intervenor-Defendants.

---

Democratic National Committee, et al.,

              Plaintiffs,

      v.

Adrian Fontes, in his official capacity as
Arizona Secretary of State, et al.,

              Defendants,

      and

Republican National Committee,

            Intervenor-Defendant,

      and

1   Speaker of the House Ben Toma and Senate
2   President Warren Petersen,
    Intervenor-Defendants.

3   Arizona Asian American Native Hawaiian
4   And Pacific Islander For Equity Coalition,
                    Plaintiff,
5            v.
6   Adrian Fontes, in his official capacity as
    Arizona Secretary of State, et al.,
7                   Defendants,
            and
8   Speaker of the House Ben Toma and Senate
9   President Warren Petersen,
    Intervenor-Defendants.

10  Promise Arizona, et al.,
11                  Plaintiffs,
             v.
12  Adrian Fontes, in his official capacity as
    Arizona Secretary of State, et al.,
13                  Defendants,
            and
14  Speaker of the House Ben Toma and Senate
15  President Warren Petersen,
    Intervenor-Defendants.
16

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND ..................................................................................... 2

III.  SUMMARY JUDGMENT STANDARD .................................................. 3

IV.   H.B. 2243 VIOLATES THE NVRA 90-DAY PROVISION ...................... 3

      a.    The NVRA's 90-Day Provision Applies to H.B. 2243 ................................ 4

      b.    H.B. 2243 Implements A Systematic Removal Program ............................. 5

V.    PLAINTIFFS CROSS MOVE FOR DECLARATORY RELIEF UNDER
      THE 90-DAY PROVISION ...................................................................... 7

VI.   THE COURT SHOULD DENY SECTIONS I.C AND I.D OF THE
      STATE'S MOTION FOR SUMMARY JUDGMENT ................................ 8

      a.    The State Has Failed to Establish That H.B. 2243 Is Exempted From
            the NVRA's 90-Day Provision ............................................................. 8

      b.    H.B. 2243 Is Not Exempted By The General Removal Provision in
            Section 8 of the NVRA ....................................................................... 10

VII.  CONCLUSION ..................................................................................... 13

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Andrus v. Glover Constr. Co.*,
    446 U.S. 608 (1980) .................................................................................................... 8

*Arcia v. Fla. Sec'y of State*,
    772 F.3d 1335 (11th Cir. 2014) .......................................................................... *passim*

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ...................................................................................................... 11

*Bell v. Marinko*,
    367 F.3d 588 (6th Cir. 2004) ............................................................................. 11, 12

*C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*,
    213 F.3d 474 (9th Cir. 2000) ...................................................................................... 3

*Forward v. Ben Hill Cnty. Bd. of Elections*,
    509 F. Supp. 3d 1348 (M.D. Ga. 2020) ...................................................................... 5

*Intel Corp v. Hartford Acc. & Indem. Co.*,
    952 F.2d 1551 (9th Cir. 1991) .................................................................................... 3

*N. Carolina State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*,
    No. 1:16CV1274, 2018 WL 3748172 (M.D.N.C. Aug. 7, 2018) ........................ 5, 6, 7

*Patel v. United States*,
    No. CV-20-01864-PHX-DLR, 2021 WL 2454048 (D. Ariz. June 16, 2021) .............. 9

*Ripplinger v. Collins*,
    868 F.2d 1043 (9th Cir. 1989) .................................................................................... 7

*State Comp. Fund v. Symington*,
    848 P.2d 273 (Ariz. 1993)............................................................................................ 7

*State v. Watson*,
    120 Ariz. 441, 586 P.2d 1253 (1978) ......................................................................... 7

*U.S. Student Ass'n Found. v. Land*,
    546 F.3d 373 (6th Cir. 2008) ............................................................................. 10, 12

*United States v. Florida*,
    870 F. Supp. 2d 1346 (N.D. Fla. 2012) ................................................................. 8, 12

*United States v. Gonzalez,*
  520 U.S. 1 (1997) ................................................................................. 4

## STATUTES

A.R.S.
  § 16-165 ......................................................................................... 1, 4, 5
  § 16-165(I) ............................................................................................. 4
  § 16-165(A)(10) ............................................................................. 4, 6, 12
  § 16-165(F) ............................................................................................ 7
  § 16-165(G) ........................................................................................... 4
  § 16-165(G)-(K) ..................................................................................... 5
  § 16-165(H) ........................................................................................... 4
  § 16-168(J) ............................................................................................ 9
  §§ 16-590 – 16-594 .............................................................................. 11

52 U.S.C.
  § 20501(a)(3) ........................................................................................ 3
  § 20501(b)(1)-(4) ................................................................................... 3
  § 20507(a)(2) ....................................................................................... 10
  § 20507(a)(3) ....................................................................................... 13
  § 20507(a)(3)-(4) ............................................................................... 8, 10
  § 20507(c)(2)(A) ............................................................................. 1, 3, 4, 9
  § 20510(b)(2) ......................................................................................... 7

National Voting Rights Act § 8 ...................................................... 1, 3, 9, 13

## RULES

Fed. R .Civ. P. 56(a) ...................................................................... 3, 8

## OTHER AUTHORITIES

Governor Douglas A. Ducey Letter re House Bill 2617 (May 27, 2022),
  https://www.azleg.gov/govlettr/55leg/2r/hb2617.pdf ....................... 2

House Bill 2243 ................................................................................. 1

House Bill 2492 ................................................................................. 3

House Bill 2617 ................................................................................. 2

Webster's Third New International Dictionary 97 (1976) ...................... 4

## I.   INTRODUCTION

Plaintiff Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition ("Equity Coalition"), joined by Plaintiff Promise Arizona, Southwest Voter Registration and Education Project ("Plaintiffs") respectfully cross-move for partial summary judgment that House Bill 2243 violates Section 8 of the National Voting Rights Act ("NVRA") by implementing a systematic voter purge scheme within 90 days of a federal election.[1]  Plaintiffs also respectfully oppose §§ I.C and I.D of Defendants Attorney General Kristin K. Mayes and State of Arizona's Motion for Partial Summary Judgment ("State MSJ") as joined by both intervenors.[2]  *See* ECF Nos. 364; 367 at 1 n.1; 369.

The Arizona State Legislature passed H.B. 2243 in two days flat, and on the last day of the legislative session—dropping an even harsher version of a previously vetoed bill into the shell of another.  H.B. 2243 creates a framework whereby anyone can, without evidence, accuse a voter of not being a U.S. citizen; whereby county recorders and the Secretary of State are commanded to engage in a systematic, monthly inquiry of citizenship status via a mélange of various databases that the Secretary of State admits are "inaccurate" and "unreliable" for determining citizenship status; and whereby accused voters are sent cancellation notices, purged from the rolls, and then referred for criminal investigation—unless they are able to provide documentary proof of citizenship within 35 days.  There are no provisions in H.B. 2243 that allow county recorders to pause or defer the monthly database checks, or the sending of notices that precipitate the cancellation of voter registration 35 days later.

---

[1] House Bill 2243 ("H.B. 2243") includes amendments to A.R.S. § 16-165.  While Plaintiffs refer throughout to H.B. 2243 violating the NVRA for ease of reference, it is provisions of A.R.S. § 16-165 which violate the NVRA, including those amendments made by H.B. 2492.

[2] Plaintiff Equity Coalition joins the other plaintiffs' summary-judgment oppositions and cross-motions to the extent they bear on any claim or claims in Equity Coalition's complaint, with the exception of plaintiff Mi Familia Vota's affirmative cross-motion regarding the Materiality Provision of the Civil Rights Act.

The NVRA unequivocally prohibits systematic removal of voters within 90 days of a primary or general election for Federal office.  *See* 52 U.S.C. § 20507(c)(2)(A) (the "90-Day Provision").  H.B. 2243 violates this unequivocal prohibition and, thus, violates the NVRA.  Summary judgment, including declaratory relief, is appropriate because H.B. 2243 violates the NVRA's 90-Day Provision as a matter of law.  The Attorney General's ("State") arguments to the contrary fail to demonstrate that H.B. 2243's purge scheme is exempt from the 90-Day Provision.  Its argument that H.B. 2243's purge scheme falls outside the NVRA because the NVRA protects only "eligible" voters fares no better because Arizona itself has determined that these voters are "eligible" and there is nothing in the record or in the subjective, standardless scheme set forth in H.B. 2243 to suggest that they are not.  For these reasons, the Court should grant Plaintiffs' Motion and deny the State's.

## II.    BACKGROUND

On May 25, 2022, the Arizona State Legislature ("Legislature") passed House Bill 2617 ("H.B. 2617").  H.B. 2617 required that county recorders attempt to determine a person's citizenship status by checking various state and federal databases.  For registered voters who county recorders subjectively determined lacked U.S. citizenship, the recorders were to send a notice requiring the voter provide satisfactory proof of citizenship within 90 days, otherwise their registration would be canceled.  On May 27, 2022, Arizona Governor Douglas Ducey vetoed H.B. 2617 because it failed to provide the "necessary safeguards" to "protect the vote of any Arizonian who is eligible and lawfully registered."  Governor Douglas A. Ducey Letter re House Bill 2617 (May 27, 2022), https://www.azleg.gov/govlettr/55leg/2r/hb2617.pdf.

Earlier in the session, on January 18, 2022, the Legislature introduced H.B. 2243, which originally contained none of the provisions challenged in this case.  Following the veto of H.B. 2617, however, the Legislature amended H.B. 2243—two days before the end of the legislative session—to include a modified version of H.B. 2617.  Like H.B. 2617,

1    the amended H.B. 2243 mandated *monthly* database comparisons of the voter rolls to purge,

2    *inter alia*, registered voters suspected to not be U.S. citizens.  Unlike H.B. 2617, under

3    H.B. 2243, if a county recorder purportedly "confirms" that a registered voter is not a U.S.

4    citizen, the accused has a mere *35 days*—as compared to 90 days under H.B. 2617—to

5    respond with "satisfactory" DPOC or their registration is canceled.  Despite its similarities

6    to H.B. 2617, and harsher treatment of accused non-citizens, Governor Ducey signed H.B.

7    2243 into law on July 6, 2022.

## III.  SUMMARY JUDGMENT STANDARD

9        Summary judgment may be granted to a moving party who demonstrates "that there

10    is no genuine dispute as to any material fact and the movant is entitled to judgment as a

11    matter of law."  Fed. R .Civ. P. 56(a).  If the movant would bear the burden of proof at

12    trial, that party satisfies its initial burden by producing evidence that would entitle it to a

13    directed verdict if uncontroverted at trial.  *See C.A.R. Transp. Brokerage Co. v. Darden*

14    *Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000).  Thereafter, the burden shifts to the

15    non-moving party to designate facts "tending to support its claim or defense."  *Intel Corp.*

16    *v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

## IV.  H.B. 2243 VIOLATES THE NVRA 90-DAY PROVISION[3]

18        In 1993, Congress enacted the NVRA as a bulwark against "discriminatory and

19    unfair [voter] registration laws" that "disproportionately harm voter participation by

20    various groups, including racial minorities."  52 U.S.C. § 20501(a)(3).  Its goals include

21    "increas[ing] the number of eligible citizens who register to vote," "mak[ing] it possible

22    for Federal, State, and local governments to implement [the NVRA] in a manner that

23    enhances the participation of eligible citizens," "protect[ing] the integrity of the electoral

---

[3] Section 8 of House Bill 2492 ("H.B. 2492") added 16-165(A)(10) as a ground when a county recorder shall cancel a registration: "When the county recorder receives and confirms information that the person registered is not a United States citizen."  H.B. 2243 amends, and entirely supersedes, this language in H.B. 2492.  Should H.B. 2243 be struck down and Section 8 of H.B. 2492 reinstated, H.B. 2492 would also violate the NVRA for at least all the same reasons set forth in Sections IV and VI.

process," and "ensur[ing] that accurate and current voter registration rolls are maintained." *Id.* § 20501(b)(1)–(4). Among the provisions meant to achieve those goals, the 90-Day Provision, which appears in Section 8 of the NVRA provides that "[a] State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(c)(2)(A). H.B. 2243 is exactly the type of voter removal program the NVRA prohibits.

### a. The NVRA's 90-Day Provision Applies to H.B. 2243

By its terms, H.B. 2243 will be enforced and implemented within 90 days of federal elections. H.B. 2243 requires county recorders to consult prescribed databases *every* month or use information based on the Arizona Secretary of State's *monthly* consultation of databases without exception. *See, e.g.*, A.R.S. § 16-165(G); *see also* A.R.S. §§ 16-165(H), (I). The law then requires the recorders to cancel any suspected non-citizen's voter registration 35 days after sending notice that the voter must produce documentary proof of citizenship. *See* A.R.S. § 16-165(A)(10). County recorders have no discretion to pause or defer the monthly database checks, and no discretion to pause the sending of notices that precipitate the cancellation of voter registration 35 days later. *See* Non-U.S. Plaintiffs' Statement of Material Facts ("Plaintiffs' Statement of Facts") ¶¶ 46, 48, 50. As a result, Arizona voters are susceptible to being automatically removed from the voter rolls at *any* time, including within 90 days of federal elections. The State's summary judgment motion does not state otherwise. *See* State MSJ at 8–10.

The 90-Day Provision of the NVRA applies to "*any* program the purpose of which is" the removal of names of ineligible voters from the voter rolls—precisely what H.B. 2243 does. *See* 52 U.S.C. § 20507(c)(2)(A) (emphasis added); Case No. 2:22-cv-01602-SRB, ECF 46 (Secretary of State Answer to Promise Complaint) ¶¶ 78, 157 ("[T]he Secretary affirmatively alleges that, in her view as the Chief Election Officer for the State of Arizona, the NVRA's 90-day prohibition on systematic cancellation of voters

1    would apply to cancellations pursuant to the provisions of A.R.S. § 16-165 as amended by

2    HB 2243[.]"); *see also* Plaintiffs' Statement of Facts ¶ 58.   The Supreme Court has

3    observed that the word "any" is a broad term.  *See United States v. Gonzalez*, 520 U.S. 1,

4    5 (1997) ("[T]he word 'any' has an expansive meaning, that is, 'one or some

5    indiscriminately of whatever kind." (quoting Webster's Third New International

6    Dictionary 97 (1976))); *see also Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1344 (11th

7    Cir. 2014).   Furthermore, "Congress [did] not add any language limiting the breadth" of

8    the term "any" in the 90-Day Provision.  *See Arcia*, 772 F.3d at 1344.  The absence of

9    language defining the word "any" in the NVRA suggests that "any program" means all

10   state programs under this provision, including H.B. 2243's systematic purge scheme.  *See*

11   *id.* ("The fact that the provision now before us applies to 'any program' strongly suggests

12   that Congress intended the 90 Day Provision to encompass programs of any kind, including

13   a program like Secretary Detzner's to remove non-citizens.").   The NVRA's 90-Day

14   Provision therefore governs the provisions of A.R.S. § 16-165 as amended by H.B. 2243.

### b.  H.B. 2243 Implements A Systematic Removal Program

16          H.B. 2243 runs afoul of the NVRA by "systematically" removing voters from the

17   voter rolls within 90 days of federal elections.   The State does not dispute that H.B. 2243

18   implements a systematic removal program.  *See State MSJ at 8–10.  Nor could it.

19          *First*, courts have held that data-matching programs involving comparisons of the

20   voter registration database to other official databases and data sources, as H.B. 2243 does,

21   are "systematic" programs under the NVRA.  *See Arcia*, 772 F.3d at 1344 (holding program

22   that "used a mass computerized data-matching process to compare the voter rolls with other

23   state and federal databases, followed by the mailing of notices" was "systematic"); *see also*

24   *N. Carolina State Conf. of NAACP v. Bipartisan Bd. of Elections & Ethics Enf't*, No.

25   1:16CV1274, 2018 WL 3748172, at *6–7 (M.D.N.C. Aug. 7, 2018) (canceling voter

26   registrations on basis of return of undeliverable mailings is systematic removal); *Forward*

27   *v. Ben Hill Cnty. Bd. of Elections*, 509 F. Supp. 3d 1348, 1352, 1354–55 (M.D. Ga. 2020)

28

1   (use of data from the United States Postal Service's National Change of Address database

2   was systematic).  Performing mass data-matching to identify purported non-citizens on the

3   voter rolls is susceptible to "unintentional mistakes in the … data-matching process."

4   *Arcia*, 772 F.3d at 1341.

5          H.B. 2243's voter registration removal regime is systematic because it implements

6   a data-matching program to identify suspected non-citizens to remove from the voter rolls.

7   Under H.B. 2243, removals are determined by database comparisons that either the

8   Secretary of State or the county recorder conducts using, among others, SAVE and the

9   Department of Transportation driver license database.  *See* A.R.S. § 16-165(G)–(K); *see*

10  *also Arcia*, 772 F.3d at 1344 ("[I]t is telling that the database … used before the general

11  election—SAVE—stands for *Systematic* Alien Verification for Entitlements." (emphasis

12  in original)).  As described above, based on information from the monthly data-matching,

13  county recorders are required to send notices and remove voters from the voters rolls in 35

14  days unless the recorders receive "satisfactory" proof of citizenship.  *See* A.R.S. §

15  16-165(A)(10).   Accordingly, H.B. 2243's voter registration removal regime is a

16  systematic data-matching removal program.

17          ***Second***, county recorders' ability to remove hundreds or thousands of voters based

18  on a single piece of generic evidence also evinces the "systematic" nature of H.B. 2243's

19  voter registration removal program.  *See, e.g.*, *N.C. State Conf. of the NAACP*, 2018 WL

20  3748172, at *7–8 ("*en masse* cancellation of voter registrations" and removals based on

21  "generic evidence" are systematic).  Under H.B. 2243, a county recorder can remove scores

22  of voters who appear in a single database comparison—*i.e.*, a single point of data generated

23  as part of a monthly database comparison can result in the removal of many voters.  County

24  recorders are required to cast an indiscriminate net that can misidentify hundreds or

25  thousands of voters as noncitizens.  Indeed, there are no minimum standards that county

26  recorders must adhere to when determining what constitutes an accurate match of records.

27

28

1  And there is no requirement for further investigation before cancellation notices are then

2  sent to such voters.  This is the paradigm of a systematic removal program.

3      **Third**, the limited notice period and burden-shifting removal process that county

4  recorders must follow after obtaining information from the monthly data comparisons

5  confirms that H.B. 2243 is a systematic removal program.  Under H.B. 2243, "once a prima

6  facie case [is] established on the basis of this generic evidence, the burden shift[s] to the

7  challenged voters to prove their eligibility to vote within just days or weeks before the fall

8  election."  *Id.* at *7.  Shifting the burden to registered voters to prove their citizenship after

9  mere database comparisons is the sort of purge first, ask questions later, regime that fails

10  to safeguard the franchise as the NVRA intends.  *See id.* at *9; *see also Arcia*, 772 F.3d at

11  1346.[4]

12      For the foregoing reasons, H.B. 2243's voter registration removal program is

13  "systematic" under the NVRA.

14  **V.    PLAINTIFFS CROSS MOVE FOR DECLARATORY RELIEF UNDER**

15      **THE 90-DAY PROVISION**

16      The NVRA provides declaratory relief when state law violates the NVRA's

17  provisions, *see* 52 U.S.C. § 20510(b)(2), including for violations of the 90-Day Provision.

18  *See, e.g.*, *Arcia*, 772 F.3d at 1348 (remanding with instructions to enter an order declaring

19  that Secretary's actions violated the 90-Day Provision of the NVRA); *N.C. State Conf. of*

20  *NAACP*, 2018 WL 3748172 at *10–13 (declaring that voter challenges and cancellations

21  violated the 90-Day Provision and enjoining defendants from removing voters from the

22  rolls without individualized inquiries in the 90 days preceding a federal election).  Thus,

23

24

---

25  [4] Tellingly, this process differs from that under which the county recorder may treat a registered voter who has received a driver license in a state other than Arizona.  There, after receiving information of the voter obtaining such a non-Arizona license or equivalent

26  to an Arizona license in another state, the county recorder may only place the voter in inactive status—as opposed to canceling the registration—after sending a notice to the

27  voter and giving *90 days* for the voter to respond.  *See* A.R.S. § 16-165(F).  So H.B. 2243's purge scheme stands out as "systematic" even when compared to other parts of the same

28  statute.

the appropriate remedy is a declaration that H.B. 2243 violates the 90-Day Provision of the NVRA.[5]

*       *       *

For the foregoing reasons, Plaintiffs are entitled to summary judgment in their favor. H.B. 2243 violates the NVRA.

## VI.    THE COURT SHOULD DENY SECTIONS I.C AND I.D OF THE STATE'S MOTION FOR SUMMARY JUDGMENT

Regardless of whether the Court grants summary judgment in Plaintiffs' favor, the Court (at a minimum) should deny the State's request for partial summary judgment to the 90-Day Provision and the General Removal Provision set forth in 52 U.S.C. § 20507(a)(3)–(4).  *See* State MSJ §§ I.C, I.D.  Summary judgment may only be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R .Civ. P. 56(a).  The State fails to satisfy its burden as to H.B. 2243's violation of the 90-Day Provision or the General Removal Provision of the NVRA.

### a.  The State Has Failed to Establish That H.B. 2243 Is Exempted From the NVRA's 90-Day Provision

In Section I.D of its summary judgment motion, the State admits that the NVRA's 90-Day Provision applies to "any program" regarding systematic removal of ineligible voters and also does not contest that H.B. 2443 establishes such a systematic program.  *See* State MSJ at 8–9.  While the State lists out the exceptions to the 90-day quiet period, it

---

[5] H.B. 2243's lack of a severability clause, as compared to H.B. 2492, evinces the Legislature's intent to have the entire set of statutory provisions rise and fall together.  *See, e.g.*, *State Comp. Fund v. Symington*, 848 P.2d 273, 280 (Ariz. 1993) (en banc) (severability depends on legislature's intent).  Severability also requires "the valid portion of an enactment must be independent of the invalid portion and must form a complete act within itself."  *Ripplinger v. Collins*, 868 F.2d 1043, 1056–57 (9th Cir. 1989) (quoting *State v. Watson*, 120 Ariz. 441, 445, 586 P.2d 1253, 1257 (1978)).  Here, the amendments in Section 2 of H.B. 2243 operate together as a voter purge scheme and are not independent of each other.  Thus, the whole of Section 2 of H.B. 2243 should be declared violative of the NVRA.

does not explain how any of the exceptions are applicable to H.B. 2243.  *See* State MSJ at 9.  Instead, the State argues that the NVRA should be interpreted to incorporate another exception, which is not found in the text of the statute, for mass, systematic removals based on suspect citizenship determinations.  The State's interpretation contradicts a basic principle of statutory interpretation, whereby when specific exceptions are enumerated, "additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent."  *Andrus v. Glover Constr. Co*., 446 U.S. 608, 616–17, (1980).  Additionally, the court in *Arcia* rejected this very argument, explaining that Congress's omission of an explicit exception to the 90-day period for removals based on citizenship meant Congress intended such removals to be prohibited.  772 F.3d at 1345.

The State's argument that 90-Day Provision should not apply to H.B. 2243 primarily relies on *United States v. Florida*, 870 F. Supp. 2d 1346, 1349–50 (N.D. Fla. 2012).  But the State's reliance on *Florida* is misplaced.  The *Florida* decision was subsequently considered—and its reasoning rejected—by the Eleventh Circuit in *Arcia*, which the State does not even mention.  In *Arcia*, the court explicitly determined that the removals based on citizenship were not exempted from 90-Day Provision.  772 F.3d at 1345.  The court further noted that 90-Day Provision was designed by Congress "to carefully balance [the] four competing purposes in the NVRA."  *Id.* at 1346.  The State misinterprets Plaintiffs' position to be that ineligible voters can never be removed within 90 days of election.  *See* MSJ at 9.  On the contrary, Plaintiffs' position is simply that Congress struck a balance when it required that registered voters cannot be systematically removed so close to an election, where the harms of such a program likely outweigh the benefits by incorrectly removing eligible voters who do not have enough time to rectify any errors.  The 90-Day Provision of the NVRA was enacted to protect against the exact type of systematic removal program that H.B. 2243 creates.  For the forgoing reasons, the State's requested ruling that "[t]he Voting Laws do not violate 52 U.S.C. § 20507(c)(2)(a)" should be denied.

Regarding the State's requested alternative ruling, H.B. 2243's plain language provides no hook for the Court to "simply interpret the Voting Laws as including the 90-day quiet period"—the State asks the Court to simply rewrite the law, which is not the province of courts.   State MSJ at 10; *cf. Patel v. United States*, No. CV-20-01864-PHX-DLR, 2021 WL 2454048, at *2 (D. Ariz. June 16, 2021) (rejecting a party's request to ignore a condition within a statute because "[i]t is not the Court's role to rewrite statutes to achieve what it believes to be the legislature's objective").  The State's only other support for its alternative ruling is that A.R.S. § 16-168(J) "show[s] an intent to harmonize with the NVRA."  State MSJ at 10.  But that provision directs only the Secretary of State's actions with respect to maintenance of the voter registration database, and the Secretary of State has admitted that it has no means of binding other officials, including the county recorders, who are the ones that must implement H.B. 2243's purge scheme. *See* ECF 189 (Secretary of State Answer to Poder-Latinx Am. Complaint) ¶ 23; Case No. 2:22-cv-01602-SRB, ECF 46 (Secretary of State Answer to Promise Complaint) ¶¶ 78, 157; *see also* Plaintiffs' Statement of Facts ¶ 58.  In short, H.B. 2243 mandates that the county recorder systematically purge voters every month, without exception.

### b.  H.B. 2243 Is Not Exempted By The General Removal Provision in Section 8 of the NVRA

Separate from the 90-day quiet period, the NVRA's General Removal Provision bars eligible "registrants" from being removed at any time, except for "at the request of the registrant," "criminal conviction or mental incapacity," "the death of a registrant," or "a change in the residence of the registrant."  52 U.S.C. § 20507(a)(3)–(4).  None of these exceptions apply here—the State does not dispute that.  *See* State MSJ at 6–8.  The State instead argues that this section "does not prohibit Arizona from cancelling registrations of voters who do not meet such requirements" because the NVRA "protects only eligible voters from unauthorized removal," and non-citizens are not "eligible voters."  *Id.* at 7.

1    This interpretation is not supported by the statutory text of the NVRA.  Nor does it

2    take into account that eligibility is determined when election officials receive a voter

3    registration application and that applicants must be informed about the disposition of their

4    voter registration application under the NVRA.  *See* 52 U.S.C. § 20507(a)(2).  Thus, only

5    after election officials determine that a voter is eligible to vote do they get on voter rolls as

6    a "registrant."   And the NVRA limits the methods that a state may use to remove a

7    "registrant" from its voting rolls because "[o]nce the state takes the step of identifying

8    individuals as active voters, those individuals clearly become 'registrants' protected by the

9    NVRA" and the NVRA "is meant to ensure that *eligible* voters are not disenfranchised by

10   improper removal."  *U.S. Student Ass'n Found. v. Land*, 546 F.3d 373, 381 (6th Cir. 2008)

11   (emphasis added).  Congress's system accords with common sense: the proper time and

12   place for a state to determine a person's *eligibility* is when they apply, not after their voter

13   registration application has been accepted and they are added to voter rolls.  And because

14   the state has the opportunity to deny an applicant based on ineligibility during the

15   registration process, a contrary result would not "effectively grant, and then protect, the

16   franchise of persons not eligible to vote," as the State argues.  State MSJ at 8 (citation

17   omitted).  That is especially so where, as here, there is no proof that Arizona registered any

18   non-citizens, and H.B. 2243's remove-first-and-ask-questions-later purge scheme is built

19   off subjective suspicions and databases ill-suited to actually confirm citizenship status.[6]

20   Moreover, the State's argument merely serves to illustrate the risks attendant in

21   systematic removals, which the NVRA prohibits within 90 days of a federal election, as

22   compared to individual determinations.  An individual registrant suspected to be ineligible

23   could potentially be challenged and removed with proper evidence pursuant to existing

24   Arizona laws that remain untouched by the NVRA.  *See, e.g.*, A.R.S. §§ 16-590–16-594.

25

26

---

27   [6] For this reason, the State's specter of "constitutional concerns" is not applicable.  State MSJ at 8 n.14 (citing *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 16–17 (2013)).   The State points to no evidence establishing that there *are* non-citizens

28   "registrants" on the rolls that the NVRA would prevent it from removing.

There is no record or reason to believe that properly registered voters at risk of disenfranchisement under H.B. 2243 are in fact non-citizens. But under H.B. 2243's regime to determine an eligible voter's citizenship, H.B. 2243 requires county recorders to consult databases that the Secretary of State has repeatedly admitted are "potentially outdated and unreliable" for this purpose, *see, e.g.*, ECF No. 189 ¶ 51; Case No. 2:22-CV-01381, ECF No. 63 (Secretary of State Answer to Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition) ¶¶ 6, 12, 19, 73, 86, 96, 98; and contain "inaccurate [citizenship] data," *see, e.g.*, ECF No. 189 ¶¶ 9, 44, 52, 91, 93, 111, 127; *see also* Plaintiffs' Statement of Facts ¶¶ 48–50. The very real fact questions about voters' citizenship status and how successful the removal scheme will be in identifying truly ineligible voters make summary judgment inappropriate here.

And *ipso facto* distinguishing this case from *Bell v. Marinko*, 367 F.3d 588, 591–92 (6th Cir. 2004), the primary authority the State cites. In *Bell*, the Sixth Circuit held that removals of ineligible voters did not violate the NVRA following investigations *and hearings* in which the defendants' ineligibility was individually determined. *See* 367 F.3d at 590–92. The Sixth Circuit itself recognized this in *Land* where it emphasized that the removals in *Bell* were permissible during the NVRA's 90-day quiet period because they were held only "after a hearing on the issue" and therefore did not run the same risk of removing eligible voters from the rolls through systematic programs. 546 F.3d at 386. The record before the *Bell* court was materially different from the one the Court faces here, because H.B. 2243 mandates systematic removals without individual hearings to confirm that voters are ineligible. *See generally* A.R.S. § 16-165(A)(10). Whereas in *Bell* "the Board investigated and examined the residence of each appellant through challenge hearings," 367 F.3d at 592, H.B. 2243 "carries a risk of disenfranchising a large group of qualified voters" who have never been "found" to be ineligible to vote, *Land*, 546 F.3d at 388 (distinguishing *Bell* on the grounds that "the only determination made as to the voters here is that they are eligible, a determination the clerk receiving the application makes

before forwarding the applicant an original voter ID card").  Here, there is a question of fact as to whether any currently (or future) registered Arizona voters were improperly registered in the first place.

The State also relies on *Florida*, but that case is no better for the reasons explained *supra* at VI.a.  Additionally, the Eleventh Circuit expressed skepticism in its later *Arcia* decision that Congress implied an unwritten exception into the NVRA's definition of "registrants" for purges aimed at identifying non-citizens.  *See* 772 F.3d at 1347. Furthermore, *Florida* recognized that a systematic removal program similar to H.B. 2243's was incapable of definitively identifying non-citizens.  870 F. Supp. 2d at 1350 ("The record indicates that the Secretary's program identified many properly registered citizens as potential noncitizens.").  The State ignores this and asserts, without any basis in fact, that H.B. 2243 results in the removal of "voters found not to be U.S. citizens."  State MSJ at 8.  As explained above, the facts show that H.B. 2243 is flawed and will likely lead to removal of properly registered citizens—which plainly would violate the NVRA.  There are numerous factual questions—ignored by the State—about how H.B. 2243 could possibly, definitively, identify non-citizens in the first place.  For the foregoing reasons, the State's requested ruling that "[t]he Voting Laws do not violate 52 U.S.C. § 20507(a)(3) or (4)" should be denied.

## VII.   CONCLUSION

Plaintiffs respectfully request that the Court issue a declaration that H.B. 2243 (and H.B. 2492 § 8) is invalid under the 90-Day Provision of the NVRA and grant their motion for partial summary judgment.  Plaintiffs also respectfully request that the Court deny the State's requested rulings in §§ I.C and I.D of its motion for partial summary judgment.

1  Dated:  June 5, 2023

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

By  */s/ Amit Makker*
LATHAM & WATKINS LLP
Sadik Huseny (*pro hac vice*)
Amit Makker (*pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

ASIAN AMERICANS ADVANCING
JUSTICE-AAJC
Niyati Shah (*pro hac vice*)
Terry Ao Minnis (*pro hac vice*)
1620 L Street NW, Suite 1050
Washington, DC 20036
Telephone: (202) 296-2300
Facsimile: (202) 296-2318

SPENCER FANE
Andrew M. Federhar (No. 006567)
2415 East Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 333-5430
Facsimile: (602) 333-5431

*Attorneys for Plaintiff Arizona Asian*
*American Native Hawaiian And Pacific*
*Islander For Equity Coalition*

14

1

2

3

4

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 5th day of June, 2023, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

5

6

*/s/ Amit Makker*
Amit Makker

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28