Marc E. Elias*
Elisabeth C. Frost*
Christopher D. Dodge*
Mollie DiBrell*
Alexander F. Atkins*
Daniela Lorenzo*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Phone: (202) 968-4513
Facsimile: (202) 968-4498
melias@elias.law
efrost@elias.law
cdodge@elias.law
mdibrell@elias.law
aatkins@elias.law
dlorenzo@elias.law

Roy Herrera (Bar No. 032901)
Daniel A. Arellano (Bar No. 032304)
Jillian L. Andrews (Bar No. 034611)
**HERRERA ARELLANO LLP**
530 East McDowell Road
Suite 107-150
Phoenix, Arizona 85004-1500
Phone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com
jillian@ha-firm.com

*Attorneys for Plaintiffs Mi Familia
Vota and Voto Latino*
*Admitted Pro Hac Vice*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al., | Case No. 2:22-cv-00509-SRB (Lead) |
| Plaintiffs, | |
| v. | **MFV PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT** |
| Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., | |
| Defendants. | |
| | **ORAL ARGUMENT REQUESTED** |
| AND CONSOLIDATED CASES. | No. CV-22-00519-PHX-SRB |
| | No. CV-22-01003-PHX-SRB |
| | No. CV-22-01124-PHX-SRB |
| | No. CV-22-01369-PHX-SRB |
| | No. CV-22-01381-PHX-SRB |
| | No. CV-22-01602-PHX-SRB |
| | No. CV-22-01901-PHX-SRB |

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 1

I.   H.B. 2492's Birthplace, Citizenship Checkbox, and Federal-Form DPOC
     Requirements Violate the Materiality Provision of the Civil Rights Act. ................ 1

   A.  The Materiality Provision prohibits rejecting registration applications for failing
       to provide information immaterial to voting qualifications. ............................ 1

   B.  The Birthplace Requirement serves no purpose and is immaterial to voter
       qualification. ................................................................................... 2

   C.  The Citizenship Checkbox Requirement is redundant and immaterial to voter
       qualification. ................................................................................... 6

   D.  The Federal-Form DPOC Requirement is duplicative and immaterial to voter
       qualification. ................................................................................... 8

II.  Plaintiffs other than the United States may enforce the Materiality Provision. ....... 10

   A.  The Materiality Provision confers rights enforceable via § 1983. ................... 10

      1.   The Materiality Provision's language is analogous to other rights-
           conferring statutes. ................................................................... 11

      2.   Legislative history confirms Congress created a private right. ............... 12

      3.   The Attorney General's enforcement authority does not supplant private
           enforcement of the Materiality Provision. ....................................... 13

   B.  The Materiality Provision may also be enforced directly under the Civil Rights
       Act. ............................................................................................... 14

III. H.B. 2492 violates Section 8 of the NVRA, which requires that applicants who
     submit a timely and valid Federal Form are registered for federal elections. ........ 15

CONCLUSION ..................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001)......................................................................................... 14

*Allen v. State Bd. of Elections*,
393 U.S. 544 (1969)......................................................................................... 13

*Anderson v. Ghaly*,
930 F.3d 1066 (9th Cir. 2019) ......................................................................... 11

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
570 U.S. 1 (2013)......................................................................................... 9, 17

*Ball v. Rodgers*,
492 F.3d 1094 (9th Cir. 2007) ......................................................................... 11

*Brown v. Baskin*,
78 F. Supp. 933 (D.S.C. 1948)......................................................................... 12

*Cannon v. Univ. of Chi.*,
441 U.S. 677 (1979)......................................................................................... 11

*Chapman v. King*,
154 F.2d 460 (5th Cir. 1946) ........................................................................... 12

*City of Rancho Palos Verdes v. Abrams*,
544 U.S. 113 (2005)......................................................................................... 13

*Davis v. Commonwealth Election Comm'n*,
No. 1-14-CV-00002, 2014 WL 2111065 (D. N. Mar. I. May 20, 2014),
*aff'd*, 844 F.3d 1087 (9th Cir. 2016)........................................................... 12, 14

*Diaz v. Cobb*,
435 F. Supp. 2d 1206 (S.D. Fla. 2006) ............................................................ 7, 8

*Fitzgerald v. Barnstable Sch. Comm.*,
555 U.S. 246 (2009) ........................................................................................ 13

MFV Pls.' Cross-Motion for Part. SJ and Opp. to Defs.' Cross-Motions for Part. SJ

*Ford v. Tenn. S.*,
  2006 WL 8435145 (W.D. Tenn. Feb. 1, 2006)............................................................. 5

*Fortson v. Morris*,
  385 U.S. 231 (1966)....................................................................................................... 8

*Gonzaga Univ. v. Doe*,
  536 U.S. 273 (2002)....................................................................................... 10, 11, 13

*Gonzalez v. Arizona*,
  2007 WL 9724581 (D. Ariz. Aug. 28, 2007)............................................................... 9

*Good v. Roy*,
  459 F. Supp. 403 (D. Kan. 1978)................................................................................ 14

*Grammer v. John J. Kame Reg'l Ctrs.-Glen Hazel*,
  570 F.3d 520 (3d Cir. 2009) ....................................................................................... 11

*Hart v. Massanari*,
  266 F.3d 1155 (9th Cir. 2001) ...................................................................................... 2

*La Union del Pueblo Entero v. Abbott*,
  604 F. Supp. 3d 512 (W.D. Tex. 2022) ....................................................................... 6

*League of Women Voters of Ark. v. Thurston*,
  2021 WL 5312640 (W.D. Ark. Nov. 15, 2021)............................................................ 6

*Martin v. Crittenden*,
  347 F. Supp. 3d 1302 (N.D. Ga. 2018)............................................................. 3, 4, 5, 7

*Migliori v. Cohen*,
  36 F.4th 153 (3d Cir.), *cert. granted, judgment vacated sub nom. Ritter
  v. Migliori*, 143 S. Ct. 297 (2022)........................................................................ *passim*

*Morse v. Republican Party of Va.*,
  517 U.S. 186 (1996)............................................................................................. 13, 14

*Ne. Ohio Coal. for the Homeless v. Husted*,
  837 F.3d 612 (6th Cir. 2016) .............................................................................. 13, 14

*Schwier v. Cox*,
  340 F.3d 1284 (11th Cir. 2003) ............................................................................ *passim*

- iii -

*Schwier v. Cox*,
    412 F. Supp. 2d 1266 (N.D. Ga. 2005), *aff'd*, 439 F.3d 1285 (11th Cir. 2006) ............................................................................................................. 4

*Smith v. Allwright*,
    321 U.S. 649 (1944)............................................................................................ 12

*Tex. Democratic Party v. Hughs*,
    474 F. Supp. 3d 849 (W.D. Tex. 2020), *rev'd and remanded on other grounds*, 860 F. App'x 874 (5th Cir. 2021).................................................... 15

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
    535 U.S. 635 (2002)............................................................................................ 14

*Wash. Ass'n of Churches v. Reed*,
    492 F. Supp. 2d 1264 (W.D. Wash. 2006)................................................. 4, 6

*Watson v. Weeks*,
    436 F.3d 1152 (9th Cir. 2006) .................................................................. 11, 12

*Willing v. Lake Orion Cmty. Schs. Bd. of Trs.*,
    924 F. Supp. 815 (E.D. Mich. 1996)............................................................. 14

**Statutes**

A.R.S. § 16-101 ....................................................................................................... 2

A.R.S. § 16-121.01(A) .................................................................................... 2, 6, 7

A.R.S. § 16-121.01(D) ......................................................................................... 16

A.R.S. § 16-121.01(D)-(E) .................................................................................. 15

A.R.S. § 16-121.01(E) .......................................................................................... 16

A.R.S. § 16-127 ....................................................................................................... 8

A.R.S. § 16-142 ....................................................................................................... 4

A.R.S. § 16-166(F) .............................................................................................. 3, 6

8 U.S.C. § 1401 ....................................................................................................... 3

20 U.S.C. § 1681(a) ............................................................................................... 11

MFV Pls.' Cross-Motion for Part. SJ and Opp. to Defs.' Cross-Motions for Part. SJ

42 U.S.C. § 2000d ................................................................................................ 11

52 U.S.C. § 10101(a)(2)(B) .............................................................. 1, 2, 10, 12

52 U.S.C. § 10101(a)(3) ...................................................................................... 2

52 U.S.C. § 10101(d) .................................................................................. 10, 13

52 U.S.C. § 10101(e) ........................................................................................... 2

52 U.S.C. § 20507(a)(1) ............................................................................. 15, 16

52 U.S.C. § 20507(a)(1)(A) ............................................................................. 16

52 U.S.C. § 20507(a)(1)(B) ............................................................................. 16

52 U.S.C. § 20507(a)(1)(C) ............................................................................. 16

52 U.S.C. § 20507(a)(1)(D) ............................................................................. 16

52 U.S.C. § 20508(b)(2) .................................................................................... 15

Act. Civil Rights Act of 1957, Pub. L. No. 85-315, § 131 71 Stat. 634, 637
    (1957) ............................................................................................................ 12

Ala. Code § 17-4-60(c) ........................................................................................ 5

Vt. Stat. tit. 17, § 2145(a) ................................................................................... 5

**Other Authorities**

Ariz. Const. art VII, § 2 ...................................................................................... 2

1
2
3
4
5
6
7

Mi Familia Vota and Voto Latino (collectively "MFV") oppose the partial summary judgment motions from the State and Attorney General, ECF No. 364 ("State Mot."), and RNC, ECF No. 367 ("RNC Mot."), in which the legislative intervenors join, ECF No. 369. MFV moves for summary judgment on its claims under (1) the Materiality Provision, MFV SAC, ECF No. 65 ¶¶ 100-106 (Count V), (2) NVRA Section 8(a), MFV SAC ¶ 96 (Count IV), and (3) NVRA Section 6, MFV SAC ¶ 97 (Count IV).[1] The Court should deny Defendants summary judgment and find in favor of MFV on each of these claims.

8
9

**ARGUMENT**

**I.   H.B. 2492's Birthplace, Citizenship Checkbox, and Federal-Form DPOC Requirements Violate the Materiality Provision of the Civil Rights Act.**

10
11
12
13
14
15
16

H.B. 2492's Birthplace, Citizen Checkbox, and Federal-Form DPOC Requirements violate the Materiality Provision because they make voter registration contingent upon applicants supplying irrelevant or duplicative information that is unnecessary to finding them qualified to vote under Arizona law. Defendants fail to identify any evidence supporting their bald claim that these new requirements are "material" to this inquiry, and the undisputed record evidence establishes they are not. The Court should enter summary judgment in MFV's favor on their Materiality Provision challenges to these provisions.

17
18
19

**A.   The Materiality Provision prohibits rejecting registration applications for failing to provide information immaterial to voting qualifications.**

20
21
22
23
24
25

The Materiality Provision states: "No person acting under color of law shall[] . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). Congress enacted the Materiality Provision "to ensure qualified voters were not disenfranchised by meaningless requirements that prevented eligible voters from casting their ballots but had

26
27
28

---

[1] On this last claim, MFV joins and incorporates by reference § I of DNC's cross-motion for summary judgment ("DNC Mot.").

1    nothing to do with determining one's qualifications to vote." *Migliori v. Cohen*, 36 F.4th

2    153, 164 (3d Cir.), *cert. granted, judgment vacated sub nom. Ritter v. Migliori*, 143 S. Ct.

3    297 (2022).[2] Rejecting a registration application for an immaterial error or omission

4    violates the Materiality Provision as much as rejecting a ballot: "the word 'vote' includes

5    all action necessary to make a vote effective including, but not limited to, registration or

6    other action required by State law prerequisite to voting, casting a ballot, and having such

7    ballot counted[.]" 52 U.S.C. § 10101(e); *see also id.* § 10101(a)(3); *Schwier v. Cox*, 340

8    F.3d 1284, 1294 (11th Cir. 2003) (explaining Materiality Provision "was intended to

9    address the practice of requiring unnecessary information for voter registration").

10    Whether a person is "qualified under State law to vote" depends on a state's

11    statutory and constitutional qualifications for voting. *See Schwier*, 340 F.3d at 1297. In

12    Arizona, a person is qualified to vote if they are: (1) a citizen; (2) a resident of Arizona and

13    of their registered county for 29 days before an election; (3) at least 18 years old before the

14    next general election; (4) able to write their name and make a mark on a ballot, unless

15    prevented by a physical disability; (5) not legally incapacitated; and (6) not convicted of

16    treason or a felony, unless their civil rights are restored. A.R.S. § 16-101; Ariz. Const. art

17    VII, § 2. The challenged requirements do exactly what the Materiality Provision prohibits,

18    layering on needless or repetitive fields that simply act to disqualify would-be voters based

19    on errors or omissions on their registration form that are immaterial to determining whether

20    they meet these qualifications. *See* 52 U.S.C. § 10101(a)(2)(B).

21    **B.    The Birthplace Requirement serves no purpose and is immaterial to voter qualification.**

22    The Birthplace Requirement prohibits county recorders from registering a person

23    who submits a State Form application to vote—including in federal elections—if they do

24    not provide their birthplace in the application. *See* H.B. 2492, § 4 (amending A.R.S. § 16-

---

[2] The Supreme Court vacated *Migliori* consistent with its practice when a matter becomes moot before the Court can rule on it. The Third Circuit's decision "continues to have persuasive force." *Hart v. Massanari*, 266 F.3d 1155, 1159 (9th Cir. 2001).

121.01(A)). Because birthplace is not material to determining a person's qualifications to vote under Arizona law, this requirement violates the Materiality Provision and cannot be sustained. *Cf. Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308 (N.D. Ga. 2018) (holding "an elector's year of birth is not material to determining the[ir] eligibility" to vote).

The moving Defendants—who notably do not include the Secretary or any of the County Recorders—do not argue that birthplace is material to the question of citizenship, and for good reason. Americans born abroad may obtain citizenship through one or both of their parents. *See* 8 U.S.C. § 1401. And, every year, hundreds of thousands of people become naturalized citizens. Between 2012 and 2021 more than 7.4 million new Americans were welcomed into the citizenry through naturalization, including over 132,600 people in Arizona.[3] Many more become citizens every day—in 2022 alone, over one million new citizens were naturalized.[4] In other words, a person's birthplace is not a shorthand for their citizenship and movants wisely do not contend otherwise.

Nevertheless, the moving Defendants argue that birthplace is material in "one sense" because it "can help confirm the voter's identity." State Mot. 14. There are many problems with this argument, including that the Materiality Provision asks whether information is *material* to determining voter qualifications, not whether it could, in theory, be helpful. This argument also ignores that State Form applicants affected by the Birthplace Requirement already must provide "satisfactory evidence of United States citizenship" to register. A.R.S. § 16-166(F). Nowhere do the moving Defendants explain how birthplace can be "helpful" in confirming a person's identity when that person has satisfactorily proven they are a citizen with documentation. Courts have found far more direct means of confirming identity, age, or other qualifications to be *immaterial*—including a driver's

---

[3] U.S. Citizenship & Immigration Services ("USCIS"), *Naturalizations* (U.S. Naturalizations 2021 Data Tables, fyi2021_table22), *available at* https://www.dhs.gov/immigration-statistics/naturalizations.

[4] USCIS, *Fiscal year 2022 Progress Report* at 3, *available at* https://www.uscis.gov/sites/default/files/document/reports/OPA_ProgressReport.pdf.

license that matches state records, *Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1266, 1270 (W.D. Wash. 2006); a social security number, *Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005), *aff'd*, 439 F.3d 1285 (11th Cir. 2006); and a birth year written on a returned ballot envelope, *Martin*, 347 F. Supp. 3d at 1308-09. If these other requirements could not survive challenge, neither can the Birthplace Requirement.

Moreover, the State's speculation that birthplace "can help confirm the voter's identity," is unsupported by *any* relevant evidence. And the actual undisputed evidence from Arizona's election officials is that birthplace is *not helpful* in confirming an applicant's identity—much less *material* to that determination. The Secretary of State, Arizona's "chief state election officer," A.R.S. § 16-142, has repeatedly confirmed that, "[w]hether a prospective voter, through error or omission, fails to list their birthplace is *not* material to Arizona determining whether they are qualified to vote under State law." Non-U.S. Pls.' Consol. Statement of Material Facts ("SOF") ¶ 35, ECF No. 388 (Sec'y Ans. to MFV SAC ¶ 103, ECF No. 123 (emphasis added)); *see also id.* (Sec'y Ans. to USA Compl. ¶¶ 51-56, ECF No. 122; Sec'y Ans. to LUCHA FAC ¶¶ 8, 61, ECF No. 124).[5] None of the County Recorder Defendants dispute this. Joint 26(f) Rep. 21, ECF No. 281. Indeed, the county-level evidence that has been produced uniformly shows that an applicant's birthplace is *not* material to determining their eligibility to vote. For example, the Arizona Association of Counties emphasized, in a request sent to Governor Ducey asking that he veto the bill, that the Birthplace Requirement requested "information [that is] *irrelevant* to the applicant's desire to be a registered voter," noting also that this information "can't be verified by the county, and it *does not verify identification*." SOF ¶ 40, Ex. 17 (SCCR000105 (emphases added)); *see also* SOF ¶ 41, Ex. 18 (SCCR000111 (making similar point in internal email)).[6] Defendant Pima County Recorder made the same point

---

[5] Internal documents confirm the Secretary's view that the Birthplace Requirement "is in conflict with" the Materiality Provision. SOF ¶ 38, Ex. 16 (AZSOS-000012).

[6] The Arizona Association of Counties "represents all of the county officials and the governments they serve." *About Us*, https://www.azcounties.org/27/About-Us.

in a similar letter to the Governor. SOF ¶ 42, Ex. 19 (PIMA_COUNTY_0822).

Defendants ignore all of this directly relevant (and decisive) evidence, relying instead on U.S. State Department policies used in determining passport eligibility and a suggestion that four other states "appear" to require birthplace. State Mot. 14. None of this is relevant to the materiality of the Birthplace Requirement *for voter registration in Arizona*. Indeed, at no point do movants even assert, never mind show, that any Arizona election official actually uses (or even *could* use) birthplace to confirm voter identity—or for *any* purpose. And the record uniformly shows they do not and cannot.[7]

Finally, the State concedes that the State Form has contained a field for birthplace for at least 40 years, but Arizona has never rejected applications for failing to provide birthplace information—until H.B. 2492. State Mot. 13-14; *see also* SOF ¶ 36 (Att'y Gen. & State Ans. to LUCHA FAC ¶ 57, ECF No. 328; Sec'y Ans. to LUCHA FAC ¶ 57). This four-decade-long practice of asking for—but not requiring—birthplace directly undercuts the State's new unsupported claim that the information is useful (or necessary) to determining voter qualification. *See Migliori*, 36 F.4th at 164 (holding omission of dates on ballot envelopes immaterial in part because state accepted materials with wrong dates); *Ford v. Tenn. S.*, 2006 WL 8435145, at *10-11 (W.D. Tenn. Feb. 1, 2006) (requirement that voters sign applications and poll books immaterial where state previously treated failure to sign as immaterial); *Martin*, 347 F. Supp. 3d at 1309 (finding argument birth year was material undercut by "fact that other Georgia counties do not require absentee voters to furnish such information *at all*"); *see also* SOF ¶ 35 (Sec'y Ans. to LUCHA FAC ¶ 197

---

[7] In addition to being irrelevant—and thus not giving rise to any *material* factual dispute—the State's guess about how things "appear" in other states is simply wrong. *See* Non-U.S. Pls.' Controverting Statement of Facts ("CSOF") Resp. to State's SOF ¶ 13, ECF No. 389. These other states do not share Arizona's bifurcated registration system, *see* SOF ¶ 23, and citizens in those states may register for *all* elections simply by using the Federal Form— which does not require birthplace. CSOF, Additional Facts ¶ 11. Both Alabama and Vermont, for example, expressly permit use of federally-prescribed registration forms, *see* Ala. Code § 17-4-60(c); Vt. Stat. tit. 17, § 2145(a), and nothing in Nevada or Tennessee law cabins the Federal Form's use, as H.B. 2492 does here.

1     (admitting Birthplace Requirement does not serve any "rational or strong interest")).

2         On this record, the Court should find that the Birthplace Requirement violates the

3 Materiality Provision. *See Migliori*, 36 F.4th at 164 (finding challenged requirement

4 immaterial where parties seeking to defend it "offered no compelling reasons for how these

5 dates . . . help determine one's age, citizenship, residency, or felony status"); *cf. Wash.*

6 *Ass'n of Churches*, 492 F. Supp. 2d at 1270-71 (finding likelihood of success on the merits

7 where defendants failed to demonstrate how the information was material).

8         **C.**     **The Citizenship Checkbox Requirement is redundant and immaterial**
                **to voter qualification.**

9

10         The Citizenship Checkbox Requirement is a superfluous impediment to voting that

11 violates the Materiality Provision because it precludes the County Recorder Defendants

12 from accepting Federal or State Form registrations if an applicant fails to check a box

13 confirming their citizenship. *See* H.B. 2492, § 4 (amending A.R.S. § 16-121.01(A)). It does

14 this even though the Federal Form *already requires* applicants to attest to their citizenship

15 under penalty of perjury and threat of deportation. *See* State SOF, Ex. C (ECF No. 365);

16 RNC SOF, Ex. C (ECF No. 368). Incredibly, under this redundant regime, county recorders

17 must reject State-Form registrations even from applicants who have already provided

18 documentation showing "*satisfactory evidence of United States citizenship,*" A.R.S. § 16-
166(F), if they fail to *also* mark the checkbox.

19

20         Thus, the Citizenship Checkbox Requirement makes an applicant's voting rights

21 contingent on repetitively confirming a fact they have already sworn to under serious legal

22 sanction (the Federal Form) or satisfactorily proven as a matter of law with DPOC (the

23 State Form). This violates the Materiality Provision. *See League of Women Voters of Ark.*

24 *v. Thurston*, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021) (finding immateriality

25 "where State law requires absentee voters to provide some [] information several times and

26 . . . they have correctly provided that information at least once"); *La Union del Pueblo*

27 *Entero v. Abbott*, 604 F. Supp. 3d 512, 542 (W.D. Tex. 2022) (holding "information that is

28 unnecessary [is] not material"); *Martin*, 347 F. Supp. 3d at 1309 (similar).

Arizona's chief election officer affirmatively "admits that . . . H.B. 2492 conflicts with the Materiality Provision," SOF ¶ 35 (Sec'y Ans. to MFV SAC ¶ 102), because it "may deny qualified individuals the right to vote by requiring" the rejection of voter applications for failure to check the citizenship box, "even if the voter has submitted DPOC or attested to their citizenship," *id.* (Sec'y Ans. to USA Compl. ¶ 61); *see also id.* (Sec'y Ans. to LUCHA Compl. ¶ 67). The Secretary's internal documents reiterate that the Citizenship Checkbox Requirement "is immaterial," and "den[ies] the right to register to vote to eligible Arizonans who accidentally omit the checkmark from their voter registration application." SOF ¶ 39, Ex. 16 (AZSOS-000012). The County Recorder Defendants—tasked with reviewing and rejecting registrations that do not comply with the Requirement, A.R.S. § 16-121.01(A)—do not dispute this. Joint 26(f) Rep. 21, ECF No. 281; *see also, e.g.*, SOF ¶ 43, Ex. 20 (Cochise Cnty. Recorder's Resp. to Interrogs. at 4).

In seeking summary judgment, the moving Defendants rely on nothing more than their bald claim that the Citizenship Checkbox Requirement is material. *See* State Mot. 11-13; RNC Mot. 1. They do not identify a single piece of evidence that supports this contention, and the record uniformly disproves it. In addition to the Secretary's admission that the requirement is *not* material to determining voter qualification, the State concedes the checkbox has existed on the Federal Form since 2002 and the State Form since 2003, but that at no point in the ensuing 20-plus years have Arizonans had their applications *rejected* merely because of failure to mark the checkbox—until H.B. 2492. *Id.* Arizona's longstanding practice of requesting but, not *requiring*, completion of the Citizenship Checkbox undercuts its new position. *See supra* at 5-6.

In relying on *Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1213 (S.D. Fla. 2006), to argue that the Materiality Provision does not apply to "duplicative" requirements, the State ignores what that decision says. In *Diaz*, the separate "oath contain[ing] a general affirmation of eligibility" did *not* specifically address citizenship and, *for that reason*, the court concluded the citizenship checkbox requirement at issue there was *not* duplicative of

the oath. *Id.* at 1212-13. The court explicitly stated it was *not* reaching the issue of whether "an applicant's failure to re-answer a question" is material to determining eligibility. *Id.* at 1213 (finding the issue "hypothetical" in that case). In contrast, Arizona's Citizenship Checkbox Requirement seeks *repetitive information*, prohibiting county recorders from accepting a registration form even when an applicant has signed an oath affirming their citizenship (Federal Form) or provided satisfactory DPOC under state law (State Form).

Finally, the State argues that seeking the same information "in a different way" is "useful." State Mot. 12. Once again, it makes this argument without any evidentiary support, pointing instead to different contexts—mortgage documents and surveys—as examples where redundancy may be useful. *Id.* The relevance of those examples is dubious; they are not governed by the Materiality Provision and do not implicate "the most sacred and most important instrument of democracy and freedom." *Fortson v. Morris*, 385 U.S. 231, 250 (1966) (Fortas J., dissenting). In any event, the fact remains that, here, the State fails to show that Arizona's election officials use the checkbox for *any* purpose when an applicant has already affirmed or proven citizenship and the record demonstrates the requirement is immaterial. Summary judgment should be entered for MFV.

### D.     The Federal-Form DPOC Requirement is duplicative and immaterial to voter qualification.

MFV also challenges the Federal-Form DPOC Requirement, under which an applicant who has complied with that form's requirements, but "who has not provided satisfactory evidence of citizenship . . . is not eligible to vote in presidential elections" and "is not eligible to receive an early ballot by mail." H.B. 2492 § 5 (enacting A.R.S. § 16-127). Requiring DPOC is redundant for applicants who registered or will register using the *Federal Form*, which requires applicants to expressly affirm their citizenship under penalty of perjury and threat of deportation.[8] For reasons already discussed, this violates the Materiality Provision. *See supra* at 6-8; *cf. Arizona v. Inter Tribal Council of Ariz., Inc.*,

---

[8] The Federal-Form DPOC Requirement applies both prospectively and to registrants who *already registered* using the Federal Form. *See* MFV SAC ¶¶ 104-105.

570 U.S. 1, 15 (2013) ("*ITCA*") (holding NVRA "forbids States to demand that an applicant submit additional information beyond that required by the Federal Form").[9]

Nonetheless, the State argues that DPOC is material simply because U.S. citizenship is a requirement for voting in Arizona. State Mot. 13. But this circular argument ignores the redundancy of the requirement and the purpose of the Materiality Provision, which was enacted precisely to "address[] the practice of requiring unnecessary information for voter registration." *Schwier*, 340 F.3d at 1294. The State cites *Gonzalez v. Arizona*, 2007 WL 9724581, at *2 (D. Ariz. Aug. 28, 2007), in support, State Mot. 13, but that unaffirmed decision did not address whether an entirely duplicative requirement is material. And its cursory analysis—like the State's—did not cite any authority or evidence to support its holding. The Federal-Form DPOC Requirement does nothing more than impose an additional step to trip up eligible voters, and Defendants present no evidence to support their claim that it is actually material to determining a voter's qualification. MFV should be granted summary judgment on this issue as well.

*     *     *

In sum, these requirements violate the Materiality Provision as a matter of law because they deny would-be voters the right to vote for failure to provide irrelevant or duplicative information that is immaterial to their qualification to vote under Arizona law. Nothing in the State's motion, or in any other filing, presents *disputed* or *material* issues of fact on these claims, and MFV is thus entitled to judgment on Count V of its complaint.[10]

---

[9] As explained in § I(A) of DNC's cross-motion for summary judgment, requiring Federal Form registrants to submit DPOC also violates the NVRA. If the Court grants judgment on that claim, it need not reach the issue of whether the Federal-Form DPOC Requirement further violates the Materiality Provision.

[10] As explained, MFV believes no dispute of material fact exists regarding the immateriality of these requirements and summary judgment in its favor is thus proper at this juncture. As reflected by their separate brief, several plaintiff groups believe summary judgment is premature and that material questions of fact remain on these issues. Because only MFV moves on these claims at this stage, granting this motion would permit the remaining plaintiffs to continue litigating their Materiality Provision claims, including the

**II.     Plaintiffs other than the United States may enforce the Materiality Provision.**

RNC separately argues that, aside from the United States, Plaintiffs lack any cause of action to enforce the Materiality Provision. RNC Mot. 11-15. That is wrong as a matter of law and the Court should grant summary judgment on this question as well. As both the Eleventh and Third Circuits have concluded in carefully reasoned opinions, Congress drafted the Materiality Provision to confer federal rights that may be enforced under § 1983, and further to create a private remedy that permits direct enforcement under the Civil Rights Act itself. Moreover, as RNC acknowledges, the United States also brings Materiality Provision claims and RNC does not dispute its right to do so. *Id.* at 12-13.

**A.     The Materiality Provision confers rights enforceable via § 1983.**

Parties can enforce federal laws via § 1983 when Congress intends for those laws to create a federal right, and a statute demonstrates such intent when "its text [is] phrased in terms of the persons benefited." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). The plain language of the Materiality Provision does exactly that. The statute protects "the *right of any individual to vote* in any election" by prohibiting denial of that right based on immaterial registration requirements. 52 U.S.C. § 10101(a)(2)(B) (emphasis added). Thus, the "focus" of its text is "the protection of each individual's right to vote," *Schwier*, 340 F.3d at 1296, and it "places all citizens qualified to vote at the center of its import[.]" *Migliori*, 36 F.4th at 159 (cleaned up). Section 10101(d), which authorizes suits in federal court "without regard to whether the party aggrieved shall have exhausted" any remedies provided by law, confirms that the statute contemplates claims by non-US litigants. *Id.* at 160; *Schwier*, 340 F.3d at 1296 (explaining this language was intended to "remove[] procedural roadblocks to suits" by private litigants). And it is well settled that "[o]nce the

United States, which raises the claim against the State itself, a defendant not named by MFV. On the other hand, should the Court agree that there remain material facts in dispute that preclude summary judgment, it would require denial of both MFV's motion and the moving Defendants' motions on any claims brought under the Materiality Provision.

plaintiff demonstrates that the statute confers rights on a particular class of persons, the right is presumptively enforceable by § 1983." *Gonzaga*, 536 U.S. at 274 (citation omitted).

### 1. The Materiality Provision's language is analogous to other rights-conferring statutes.

The Materiality Provision's text parallels rights-conferring language from other statutes that courts have found confer an enforceable private right. *Gonzaga*, 536 U.S. at 284. For example, Title IX commands that "No person in the United States shall, on the basis of sex . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance," 20 U.S.C. § 1681(a) (emphases added); *Cannon v. Univ. of Chi.*, 441 U.S. 677, 699 (1979) (concluding Title IX confers enforceable private right). Similarly, Title VI provides that "No person in the United States shall, on the ground of race, color, or national origin . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d (emphases added); *Cannon*, 441 U.S. at 699 (concluding Title VI confers enforceable private right). The Materiality Provision adopts a similar "No person . . . shall" formulation which, like Titles IX and VI, targets "the denial of rights to individuals." *Schwier*, 340 F.3d at 1291, 1296.

It makes no difference that the subject of the provision is the "person" barred from violating individual rights, as RNC suggests. RNC Mot. 12. The inquiry into the text's "focus" looks not merely to "[t]he subject of the sentence," *Schwier*, 340 F.3d at 1296, but instead to whether "[t]he plain purpose of the[] provision[] is to protect rights afforded to individuals." *Grammer v. John J. Kame Reg'l Ctrs.-Glen Hazel*, 570 F.3d 520, 530 (3d Cir. 2009) (finding it immaterial that a statute was framed in terms of "responsibilities imposed on the state"). The Ninth Circuit has thus *repeatedly* rejected RNC's argument that a statute "phrased as a directive to the state . . . could not create an enforceable right under § 1983." *Anderson v. Ghaly*, 930 F.3d 1066, 1074 (9th Cir. 2019) (holding statute "delineating the requirements that states provide for an appeals process" under Medicaid, "created a right benefiting nursing home residents"); *Ball v. Rodgers*, 492 F.3d 1094, 1117 (9th Cir. 2007) (similar). In *Watson v. Weeks*, 436 F.3d 1152 (9th Cir. 2006), for example, the court found

- 11 -

that Medicaid's statutory command that "[a] State plan . . . must provide for making medical assistance available . . . *to all individuals*" was "unmistakably focused on the specific individuals benefited," despite being framed as a state obligation. *Id.* at 1160. The Materiality Provision's focus on the "*right* of *any individual* to vote" similarly makes clear its purpose is to protect individual rights. 52 U.S.C. § 10101(a)(2)(B) (emphasis added).

## 2.    Legislative history confirms Congress created a private right.

Legislative history confirms what the Materiality Provision's text makes clear. Private plaintiffs routinely enforced provisions of the Civil Rights Act without controversy after its enactment. *See, e.g.*, *Smith v. Allwright*, 321 U.S. 649 (1944); *Chapman v. King*, 154 F.2d 460 (5th Cir. 1946); *Brown v. Baskin*, 78 F. Supp. 933 (D.S.C. 1948). In 1957, Congress passed an amendment titled "To Provide Means of Further Securing and Protecting the Right To Vote," which granted the Attorney General power to enforce the Act. Civil Rights Act of 1957, Pub. L. No. 85-315, § 131 71 Stat. 634, 637 (1957). That title echoed the statutory purpose identified by the Judiciary Committee: to "provide means of *further* securing and protecting the civil rights of persons within the jurisdiction of the United States," recognizing that "section 1983 . . . has been used [by private actors] to enforce . . . section [10101]." H.R. Rep. No. 85-291 (1957) (emphasis added).

The Attorney General confirmed as much, testifying that the 1957 amendment was "not taking away the right of the individual to start his own action . . . . Under the laws amended if this program passes, *private parties will retain the right they have now to sue in their own name.*" 85th Cong. 73, 203, 1; 60-61, 67-73 (1957) (emphasis added). Nothing in the statute's text or history suggests the Attorney General's powers were intended to supplant private enforcement. As the Eleventh Circuit concluded, the Judiciary Committee's report on the amendment "demonstrates an intense focus on protecting the right to vote and does not support the conclusion that Congress meant merely to substitute one form of protection for another." *Schwier*, 340 F.3d at 1295 (citing H.R. Rep. No. 85-291); *see also Davis v. Commonwealth Election Comm'n*, No. 1-14-CV-00002, 2014 WL 2111065, at *10 (D. N. Mar. I. May 20, 2014) (adopting *Schwier's* "well-reasoned" and

"highly persuasive" analysis on this point), *aff'd*, 844 F.3d 1087 (9th Cir. 2016). That the Attorney General may *also* enforce the Materiality Provision is irrelevant. Nothing in the Act makes that grant of enforcement power exclusive. *See Migliori*, 36 F.4th at 160-61 (noting "the Attorney General's enforcement authority is not exclusive").

### 3. The Attorney General's enforcement authority does not supplant private enforcement of the Materiality Provision.

Nor is the Attorney General's enforcement power the sort of "comprehensive enforcement scheme" that rebuts the presumption of enforceability under § 1983. *Gonzaga*, 536 U.S. 284 n.4 (citation omitted). Enforcement of the Act would be "severely hampered" if left solely to the Attorney General. *Allen v. State Bd. of Elections*, 393 U.S. 544, 556 (1969); *Morse v. Republican Party of Va.*, 517 U.S. 186, 230 (1996) (similar). In the "very few instances" where courts have found an enforcement scheme incompatible with private actions, they "placed primary emphasis on the nature and extent of that statute's remedial scheme," which typically encompasses some "administrative exhaustion requirement" or "notice provisions." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 253, 255 (2009) (finding Title IX enforceable through § 1983 despite availability of agency enforcement). In other instances, the statute at issue provided "a more restrictive private remedy for statutory violations." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005).

The Materiality Provision contains neither an exhaustion requirement nor a narrower private remedy. *Migliori*, 36 F.4th at 160, 162. Congress expressly waived any requirement to exhaust "any administrative or other remedies that may be provided by law," making clear that federal courts have "jurisdiction" over "proceedings instituted" under the Materiality Provision. 52 U.S.C. § 10101(d). The statute's express authorization to "file directly in court" without precondition "stand[s] in stark contrast to the 'unusually elaborate,' 'carefully tailored,' and 'restrictive' enforcement schemes" found in statutes deemed to preclude enforcement under § 1983. *Fitzgerald*, 555 U.S. at 255.

These authorities severely undermine the Sixth Circuit's cursory analysis of the Civil Rights Act's enforcement scheme, on which RNC relies. *See Ne. Ohio Coal. for the*

*Homeless v. Husted*, 837 F.3d 612, 630 (6th Cir. 2016) (citing *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000)). *McKay* simply concluded that the Materiality Provision "is enforceable by the Attorney General, not by private citizens," *id.*, but failed to grapple with court decisions that *repeatedly* found private causes of action in statutes that are enforceable by the United States and eschewed *any* analysis of the Materiality Provision's rights-conferring language. *See Davis*, 2014 WL 2111065, at *9 (noting *McKay* and similar decisions "engaged in little or no analysis" of this issue). Those courts of appeal that did engage in such analysis—as required by *Gonzaga*—have uniformly found the provision enforceable. *See Migliori*, 36 F.4th at 160; *Schwier*, 340 F.3d at 1295.[11]

**B.    The Materiality Provision may also be enforced directly under the Civil Rights Act.**

The text, structure, and history of the Civil Rights Act, as well as the circumstances of its enactment, provide "affirmative evidence" that Congress created a private remedy which, in combination with the federal right described above, creates a private cause of action directly under the act. *Alexander v. Sandoval*, 532 U.S. 275, 292 n.8 (2001). For one, the statute establishes jurisdiction for any "proceedings instituted" by a "party aggrieved" to enforce the law. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 (2002) (statute permitting "[a]ny party aggrieved" to "bring an action" "reads like the conferral of a private right of action" (citation omitted)); *Morse*, 517 U.S. at 233. But the circumstances of enactment further reveal Congress's desire to create a private remedy: Private litigants obtained equitable remedies under the Civil Rights Act for decades before Congress provided for enforcement by the Attorney General. *Schwier*, 340 F.3d at 1295.

Congress was aware of this when it amended the statute and made clear that the Attorney General's additional enforcement authority merely supplemented the existing

---

[11] The under-developed analysis in *McKay*, as well as *Willing v. Lake Orion Cmty. Schs. Bd. of Trs.*, 924 F. Supp. 815, 820 (E.D. Mich. 1996), traces back to a 1978 district court decision that in two perfunctory sentences found no private cause of action. *See Schwier*, 340 F.3d at 1294 (tracing *McKay* back to *Good v. Roy*, 459 F. Supp. 403 (D. Kan. 1978)).

rights of private litigants, a view the Attorney General shared. Even "[a]fter the 1957 amendment . . . private plaintiffs continued to bring their own causes of action under other provisions of the Act, including the Materiality Provision of 1964." *Tex. Democratic Party v. Hughs*, 474 F. Supp. 3d 849, 858 (W.D. Tex. 2020) (collecting cases), *rev'd and remanded on other grounds*, 860 F. App'x 874 (5th Cir. 2021). This longstanding history of private enforcement, undisturbed by intervening amendments, confirms the existence of a private remedy—and private cause of action—under the Materiality Provision.

## III.    H.B. 2492 violates Section 8 of the NVRA, which requires that applicants who submit a timely and valid Federal Form are registered for federal elections.

Finally, MFV is entitled to summary judgment on its claim that H.B. 2492 violates Section 8(a) of the NVRA, which requires that every state "*shall* . . . ensure that any eligible applicant is registered to vote" in "elections for Federal office" if the Federal Form or other "valid voter registration form" is submitted or received at least 29 days before an election. 52 U.S.C. § 20507(a)(1) (emphasis added). H.B. 2492 violates this by barring the county recorders from placing an eligible Federal-Form applicant who submits their application 29 days or more before an election on the list of qualified electors for that election if they cannot independently verify the applicant's citizenship in the time before the election. H.B. 2492 § 4 (enacting A.R.S. § 16-121.01(D)-(E)).[12]

A valid Federal-Form application must include the voter's name, address, date of birth, state identification or social security number, if available, as well as "a statement that specifies each eligibility requirement (including citizenship); contains an attestation that the applicant meets each such requirement; [and] requires the signature of the applicant, under penalty of perjury." 52 U.S.C. § 20508(b)(2); State SOF, Ex. C; RNC SOF, Ex. C. A voter is entitled to be registered if their application meets these requirements and is

---

[12] The Court need not reach this claim as it applies to Federal-Form applicants if it finds Plaintiffs entitled to judgment on their Section 6 claims. *See* DNC Mot. § I.  Suspending H.B. 2492's additional citizenship requirements would "ensure that any eligible applicant [using the Federal Form] is registered to vote." 52 U.S.C. § 20507(a)(1).

"submitted to the appropriate State motor vehicle authority," 52 U.S.C. § 20507(a)(1)(A); "postmarked," *id.* § 20507(a)(1)(B); "accepted at the voter registration agency," *id.* § 20507(a)(1)(C); or otherwise "received by the appropriate State election official," *id.* § 20507(a)(1)(D), at least 29 days before an election.

The NVRA permits no exception for further investigating the eligibility of an applicant who timely submits a valid Federal Form, and a county recorder's inability to independently confirm a Federal-Form applicant's affirmation of citizenship provides no basis for failing to register them within the statutorily-required period. To the contrary, the plain language of the statute makes clear that Congress understood registration to be effectuated once an eligible applicant submits a valid Federal Form. *See* 52 U.S.C. § 20507(a)(1); *see also* S. Rep. 103-6 at 30 (noting "registration is complete upon submitting the form to the voting registrar, motor vehicle office, designated agency or office, or on date of postmark, if mailed"); H.R. Rep. 103-9 at 14 (same).

Because H.B. 2492 cannot be reconciled with Section 8's plain language, it is preempted. Section 4 of H.B. 2492 now requires county recorders to "verify the citizenship status" of a Federal-Form applicant who does not provide DPOC "[w]ithin ten days after receiving" their application, even in the 29 days leading up to an election. H.B. 2492 § 4 (enacting A.R.S. § 16-121.01(D)). At the end of this ten-day investigatory period, the applicant "shall be properly registered" *only if* the county recorder affirmatively "matches the applicant with information that verifies" they are a U.S. citizen. *Id.* (enacting A.R.S. § 16-121.01(E)). If the county recorder is unable to complete this match, "the applicant will not be qualified to vote in a presidential election or by mail . . . in any election until satisfactory evidence of citizenship is provided." *Id.* By prohibiting recorders from placing eligible Federal-Form applicants on the list of fully qualified electors whose applications are submitted more than 29 days before a federal election just because the recorder cannot, for whatever reason, verify their affirmation of citizenship with outside information, H.B. 2492 violates Section 8 of the NVRA.

RNC shadowboxes against a claim that MFV does not make. MFV does *not* argue that Federal-Form applicants have "a categorical right to vote . . . regardless of whether [they are] qualified" and does not disagree that "barring *known* noncitizens from voting does not conflict with" the NVRA. RNC Mot. 10 (emphasis added). By its terms, Section 8 applies only to "eligible applicants" and MFV has never argued otherwise.[13] MFV's argument is that Section 8 of the NVRA does not permit Arizona to deny a Federal-Form applicant their right to vote by mail and in presidential elections, *despite* timely submitting a "valid voter registration form," simply because the county recorder cannot extrinsically verify the applicant's affirmation of citizenship before the coming election.[14]

Although RNC purports to move for summary judgment on this claim, it provides no basis for finding that Arizona could properly refuse to put eligible and timely Federal-Form applicants on the list of qualified electors within the 29-day timeframe mandated by the NVRA simply because they are unable to verify their affirmation of citizenship as required by H.B. 2492.[15] MFV is entitled to summary judgment on this claim.

## CONCLUSION

The Court should deny Defendants' motions and grant MFV's cross-motion.

---

[13] A State would violate the NVRA if it rejected an applicant's Federal-Form application based upon unreliable information suggesting the applicant *may* be a non-citizen. States may only reject a valid Federal-Form registration "based on information in their possession *establishing* the applicant's ineligibility." *ITCA*, 570 U.S. at 15 (emphasis added).

[14] An applicant's affirmation of citizenship on the Federal Form establishes citizenship eligibility absent *affirmative* evidence of non-citizenship—the mere *absence* of additional evidence of citizenship is not enough. *See* DNC Mot. § I(A).

[15] To the extent RNC argues that the NVRA does not govern presidential elections, and thus may not prohibit recorders from refusing to register Federal-Form applicants for such elections during the 29-day window, that argument is foreclosed for the reasons provided in DNC's cross-motion. DNC Mot. § I(B)(2); *see also* State Mot. 2-4 (agreeing that "requir[ing] voters to submit documents beyond the federal mail registration form to register for federal elections" violates the NVRA).

Dated: June 5, 2023                    Respectfully submitted,

                                       */s/ Christopher D. Dodge*
                                       Roy Herrera (Bar No. 032901)
                                       Daniel A. Arellano (Bar. No. 032304)
                                       Jillian L. Andrews (Bar No. 034611)
                                       **HERRERA ARELLANO LLP**
                                       530 East McDowell Road
                                       Suite 107-150
                                       Phoenix, Arizona 85004-1500
                                       Phone: (602) 567-4820
                                       roy@ha-firm.com
                                       daniel@ha-firm.com
                                       jillian@ha-firm.com

                                       Marc E. Elias*
                                       Elisabeth C. Frost*
                                       Christopher D. Dodge*
                                       Mollie DiBrell*
                                       Alexander F. Atkins*
                                       Daniela Lorenzo*
                                       **ELIAS LAW GROUP LLP**
                                       250 Massachusetts Ave NW
                                       Suite 400
                                       Washington, DC 20001
                                       Phone: (202) 968-4513
                                       Facsimile: (202) 968-4498
                                       melias@elias.law
                                       efrost@elias.law
                                       cdodge@elias.law
                                       mdibrell@elias.law
                                       aatkins@elias.law
                                       dlorenzo@elias.law

                                       *Attorneys for Plaintiffs Mi Familia Vota and Voto Latino*
                                       *\* Admitted Pro Hac Vice*

1

**CERTIFICATE OF SERVICE**

2          On this day, June 5, 2023, I caused the foregoing to be filed and served electronically

3    via the Court's CM/ECF system upon all counsel of record.

4

5                                          */s/ Christopher D. Dodge*
                                         Christopher D. Dodge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28