VERONICA LUCERO, ESQ.
Davillier Law Group
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
State Bar No. 030292
Vlucero@davillierlawgroup.com
(602) 730-2985

*Lead Counsel for Advocates for Victims of Illegal Alien Crime*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MI FAMILIA VOTA,<br><br>PLAINTIFF,<br><br>v.<br><br>ADRIAN FONTES, IN HIS OFFICIAL CAPACITY AS ARIZONA SECRETARY OF STATES, ET AL.,<br><br>DEFENDANTS.<br>_____<br><br>AND CONSOLIDATED CASES | CASE NO.: 2:22-CV-00509-SRB (LEAD)<br><br><br><br><br><br><br><br><br><br>NO. CV-22-00519-PHX-SRB NO. CV-22-01003-PHX-SRB NO. CV-22-01124-PHX-SRB NO. CV-22-01369-PHX-SRB NO. CV-22-01381-PHX-SRB NO. CV-22-01602-PHX-SRB NO. CV-22-01901-PHX-SRB |

**MEMORANDUM OF LAW AS *AMICUS CURIAE* IN SUPPORT OF ARIZONA'S ELECTION LAWS FROM ADVOCATES FOR VICTIMS OF ILLEGAL ALIEN CRIME**

1

Lorraine G. Woodwark
By /s/ *Lorraine G. Woodwark, Esq.*
Attorneys United for a Secure America
25 Massachusetts Avenue NW, Ste 335
D.C. 20001
(202) 591-0962
(202) 464-3590
LWoodwark@IRLI.org

Veronica Lucero
By */s/Veronica Lucero, Esq.*
Davillier Law Group
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
(602) 730-2985
Vlucero@davillierlawgroup.com

Carson J. Tucker, Esq.
By /s/ *Carson J. Tucker, Esq.*
Lex Fori PLLC
DPT #3020
1250 W. 14 Mile Rd.
Troy, MI 48083-1030
Direct +17348879261
Main +17348879260
Fax +17348879255
www.lexforipllc.com
cjtucker@lexfori.org

Counsel for *Amicus Curiae*
Advocates for Victims of Illegal Alien Crime

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................ 1

ARGUMENT.. ..................................................................................................................... 2

    I. THE RIGHT TO VOTE IS A FUNDAMENTAL RIGHT SECURED ONLY FOR ELIGIBLE U.S. CITIZENS………………………………………..………...........2

    II. ARIZONA'S ELECTION LAW AMENDMENTS PROTECT THE INTEGRITY OF THE ELECTORAL PROCESS ………………………………………….…...8

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 1, 133 S. Ct. 2247, 2249 (2013) ............................................................................................................................ 8

*Baker v. Carr*, 369 U.S. 186, 208; 82 S. Ct. 691; 7 L. Ed. 2d 663 (1962)………..……….3

Docket #364, pp. 14-15 ............................................................................................... 2

*Dunn v. Blumstein*, 405 U.S. 330; 92 S. Ct. 995; 31 L. Ed. 2d 274 (1972) ....................... 5

*Foley v. Connelie*, 435 U.S. 291, 311; 98 S. Ct. 1067; 55 L. Ed. 287 (1978) ........... 2, 5, 10

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 174 (1803) ................................................ 7

*Mathews v. Diaz*, 426 U.S. 67; 96 S. Ct. 1883 (1976) ..................................................... 5

*Myers v. United States*, 272 U.S. 52, 229; 47 S. Ct. 21, 63 (1926) .................................. 7

*Plyler v Doe*, 457 U.S. 202; 102 S. Ct. 2382; 72 L. Ed. 2d 786, 810 (1982) .................... 5

*Reynolds v. Sims*, 377 U.S. 533, 565; 84 S. Ct. 1362, 1383; (1964)……………4, 5, 7, 8, 11

*Sugarman v. Dougall*, 413 U.S. 634, 647; 93 S.Ct. 2842; 37 L. Ed. 2d 853 (1973). 2, 5, 10

*United Pub. Workers v. Mitchell*, 330 U.S. 75, 94-96; 67 S. t. 556 (1947) ...................... 7

*United States v. Classic*, 313 U.S. 299, 314-15; 61 S. Ct. 1031; 85 L. Ed. 1355 (1915).... 3

*United States v. Saylor*, 322 U.S. 385, 389; 64 S. Ct. 1101; 88 L. Ed. 1341 (1944) .......... 3

*Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S. Ct. 1064, 1071, 30 L. Ed. 220, 226 (1886).. 7

**Statutes and Constitutional Provisions**

52 U.S.C. § 20505 ........................................................................................................ 14

A.R.S. § 16-182 (A) ................................................................................................ 13

A.R.S. §§ 16-101 and 16-166 ................................................................................. 14

NVRA .............................................................................................................*passim*

U.S. Const. Amend. 9 ........................................................................................... 6, 7

U.S. Const. Amend. 10 ............................................................................................. 6

U.S. Const. Amend. 14 ............................................................................................. 5

U.S. Const. Amend. 15 ............................................................................................. 5

U.S. Const. Amend. 19 ............................................................................................. 5

U.S. Const. Amend. 24 ............................................................................................. 5

U.S. Const. Amend. 26 ............................................................................................. 5

U.S. Const. Article I, Section 4 ........................................................................... 8, 14

**Other Authorities**

Britannica Dictionary .............................................................................................. 3

I Annual of Congress 439 (Gales and Seaton ed. 1834) ........................................ 6

Story, Commentaries on the Constitution of the United States (5th ed. 1891) ...... 6

**INTRODUCTION**

On March 30, 2022, Arizona's House Bill 2492 (A.R.S. § 16-166) was signed into law requiring Arizonans to provide proof of U.S. citizenship and jurisdictional residency to register and vote in Arizona elections. On January 1, 2023, the amended statutes went into effect. House Bill 2243 (A.R.S. § 16-101(E)) requires the County Recorder to review the voter rolls each month and purge persons the County Recorder believes are not citizens or who are no longer residents, and to comply with the law's other duties, ensuring that only U.S. citizens may register and vote in Arizona elections. These new laws streamlined the former patchwork of Arizona election laws to improve election integrity and to ensure consistency so that all eligible voters are treated equally. Both of these new laws are consistent with the National Voters Registration Act's (NVRA) stated goals both to encourage eligible voters to register as well as mandate election officials to purge ineligible voters from the rolls. Arizona's new laws also comply with the United States Constitution's requirement that only United States citizens may vote in elections.

The United States government and several plaintiff groups sued to override both the United States Constitution's requirements that only U.S. citizens vote in elections and Arizona House Bill 2492, which requires proof of U.S. citizenship to vote in elections, and 2243, which required election offices to purge ineligible voters from their rolls. The non-U.S. citizen plaintiffs are curiously participating in this case even though they are not eligible to vote in U.S. elections. Remarkably, Arizona, through the Attorney General's office, has filed a motion for partial summary judgment asking the Court to decide the issues of law, agreeing that "U.S. citizenship is a basic requirement for voting" and

urging the Court to uphold Arizona's voting laws. Arizona's Motion for Partial Summary Judgment, Docket #364, at 14-15.

## ARGUMENT

### 1. THE RIGHT TO VOTE IS A FUNDAMENTAL RIGHT SECURED ONLY FOR ELIGIBLE U.S. CITIZENS

Requiring proof of citizenship is constitutional. The right to vote is exclusively for U.S. Citizens and described by the United States Supreme Court as "the honorable prerogative which no alien has a constitutional right to enjoy." *Foley v. Connelie*, 435 U.S. 291, 311; 98 S. Ct. 1067; 55 L. Ed. 287 (1978). Therefore, "it is clear that a State may deny aliens the right to vote" and "to participate in the making of policy." *Id.* at 291, 296-97. These principles "lie at the heart of our political institutions." *Id.* at 291 (citing *Sugarman v. Dougall*, 413 U.S. 634, 647; 93 S. Ct. 2842; 37 L. Ed. 2d 853 (1973)). Plaintiffs have overlooked the fact that Arizona's law is complimentary to the National Voter Registration Act of 1993 (NVRA), 42 U.S.C.S. § 1973 et seq., which enshrines into law the Supreme Court's previous statement in *Foley*. Requiring proof of citizenship is constitutional. The NVRA states that its purposes are:

(1) "to establish procedures that will increase the number of *eligible citizens* who register to vote in elections for Federal office;

(2) to make it possible for Federal, State, and local governments to implement this chapter in a manner that enhances the participation of *eligible citizens as voters* in elections for Federal office;

(3) to *protect the integrity of the electoral process*; and

(4) to *ensure that accurate and current voter registration rolls are maintained*." (emphasis added).

The word "citizen" as defined by several dictionaries, including the *Britannica Dictionary*, is a "person who legally belongs to a country and has the rights and protection of that country."[1] Citizenship, therefore, is fundamental to the right to vote and maintaining the Constitution's promise that votes must not be canceled out or nullified by the tabulation of ineligible votes. Non-citizens must be prohibited from voting, as their doing so would dilute votes of U.S. citizens and affect the outcome of elections, which are supposed to be representative of the choice of lawful U.S. citizens. As the Supreme Court has confirmed on multiple occasions, an infringement upon this right occurs where a legal citizen's vote is diluted or nullified. Thus, a citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution, when such impairment resulted from dilution by a false tally, *cf. United States v. Classic*, 313 U.S. 299, 314-15; 61 S. Ct. 1031; 85 L. Ed. 1355 (1915), or by stuffing of the ballot box, *cf. Ex parte Siebold*, 100 U.S. 371, 388; 25 L. Ed. 717 (1879); *United States v. Saylor*, 322 U.S. 385, 389; 64 S. Ct. 1101; 88 L. Ed. 1341 (1944). *See also Baker v. Carr*, 369 U.S. 186, 208; 82 S. Ct. 691; 7 L. Ed. 2d 663 (1962). This nullification of an individual choice occurs whenever any illegitimate vote is cast, whether it be by a non-citizen or by a non-registered or non-existent "voter." *Reynolds v. Sims*, 377 U.S. 533, 565; 84 S. Ct. 1362, 1383; 12 L. Ed. 2d 506 (1964) ("each citizen

---

[1] https://www.britannica.com/dictionary/citizen (last checked May 22, 2023)

3

[has] an equally effective voice in the election… and the Constitution demands, no less.").

Thus, it is no surprise that the NVRA includes the term "eligible citizens" as part of the requirements for voter eligibility, which are that one must be a U.S. citizen, be 18 years or older, meet one's state's residency requirements, and be registered to vote by that state's voter registration deadline. NVRA includes non-citizens in its list of persons not eligible to vote, including lawful permanent residents.[2]

The United States Constitution's requirements that only U.S. citizens vote in elections are reflected in Arizona's House Bill 2492, which requires proof of U.S. citizenship to vote in elections, and Bill 2243, which requires the County Recorder to review the voter rolls each month and purge persons who the County Recorder believes are not citizens, i*d*. § 2(H), and comply with other duties to ensure that only U.S. citizens may register and vote in Arizona elections.

Every state has both the duty and right to prevent non-citizens from voting in local, state, and national elections. U.S. Citizens demand nothing less. In fact, the United States Constitution excludes non-citizens from the privilege, and with good reason. "Regulation of the electoral process receives unusual scrutiny because 'the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights.'" *Mathews v. Diaz*, 426 U.S. 67, 78-79, 96 S. Ct. 1883, 1890-91 (1976) (quoting

---

[2] https://www.usa.gov/who-can-vote (last checked May 22, 2023)

*Reynolds v. Sims*, 377 U.S. 533, 562; 84 S. Ct. 1362; 12 L.Ed.2d 506 (1964)). *See also Dunn v. Blumstein*, 405 U.S. 330, 336; 92 S. Ct. 995; 31 L. Ed. 2d 274 (1972). In other words, the "right to vote is accorded extraordinary treatment because it is, in equal protection terms, an extraordinary right: a citizen cannot hope to achieve any meaningful degree of individual political equality if granted an inferior right of participation in the political process." *Plyler v Doe*, 457 U.S. 202, 233; 102 S. Ct. 2382; 72 L. Ed. 2d 786, 810 (1982). The Constitution protects the privileges and immunities only of citizens, U.S. Const. amend. 14, § 1; Art. IV, § 2, cl. 1, and the right to vote only of citizens. U.S. Const. amend. 15, 19, 24, and 26. *Mathews*, *supra* at 78-79, n. 12, *Foley*, supra at 291, *Sugarman*, *supra* at 647.

Not only does the Constitution protect citizens' right to vote, but nothing in it could ever authorize the executive, legislative or judicial branches of the federal government to force states to allow non-citizens to exercise the same privileges accorded to citizens of the U.S. and of the several states. Moreover, states have a compelling right and interest in preserving the integrity of elections by protecting gainst fraud and assuring citizens of election integrity so that they will exercise their right to vote with vigor and confidence that their representative choice will be honored.

What the NVRA may not do is dictate how each state legislates its election laws. Citizenship and Arizona residency are both a requirement for voter eligibility in all federal, state and local elections in the State of Arizona. County election offices must regularly purge voter rolls of ineligible voters, including non-citizens. Federal statutes, and any associated administrative forms, may not interfere with a state's right to

5

determine its own election laws. Their doing so would violate the Tenth Amendment of the U.S. Constitution. U.S. Const. amend X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively…").

More explicitly, not only does the Constitution protect the states from federal overreach, but it protects the individual rights of citizens from overreach from either federal or state government. Such overreach would occur if the federal government forced a state to allow non-citizens to vote.

To this end, as an added measure of assurance, it is declared that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. It was universally agreed by the Framers that there are additional fundamental rights, protected from government infringement, which exist alongside those specifically mentioned in the first eight amendments. I Annual of Congress 439 (Gales and Seaton ed. 1834). See also II Story, Commentaries on the Constitution of the United States (5th ed. 1891) at 626-626. "The [Ninth Amendment… was proffered to quiet expressed fears that a bill of specifically enumerated rights could not be sufficiently broad to cover all essential rights and that the specific mention of certain rights would be interpreted as a denial that others were protected." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 174 (1803). *See also Myers v. United States*, 272 U.S. 52, 229; 47 S. Ct. 21, 63 (1926).

As "it cannot be presumed that any clause in the constitution is intended to be without effect… effect should be given to all the words it uses." *United Pub. Workers v.*

*Mitchell*, 330 U.S. 75, 94-96; 67 S. t. 556 (1947). And, indeed, a right to political affiliation and political choice has been addressed as protected, at least in part, by the amendment. This includes, of course, the fundamental right to vote. *Id. See also Reynolds*, 377 U.S. at 560.

That the latter is the fundamental and primary right among all other fundamental rights, enumerated or not, is evident in the fact it is self-executing. Infringement upon it cannot occur under the Constitution if the government is, in fact, one that is duly and legally chosen by the People. Any government that asserts a mandate on the basis of fraud or illegality effectuates an instant infringement on the will of the People, and, of necessity, has no legitimacy. More specifically, the Supreme Court has described the privilege to vote as a fundamental constitutional right preservative of all others. *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S. Ct. 1064, 1071, 30 L. Ed. 220, 226 (1886). As the Court later confirmed, an infringement upon this right occurs where a legal citizen's vote is diluted or nullified. This nullification of an individual choice occurs whenever any illegitimate vote is cast, whether it be by a non-citizen, a non-registered voter, or a non-existent "voter." *Reynolds*, *supra* at 565; 84 S. Ct. 1362, 1383' 12 L. Ed.2d 506 (1964).

The NVRA form is an optional federal form narrowly tailored to limit constitutional overreach into a state's legislative authority to draft and amend its own election laws. *See* U.S. Const. Art. I, §4. ("each State by the Legislature thereof…"). Congress never intended the NVRA form to be used as a loophole, by non-citizens, to register and vote in elections. States have full authority to enact election laws to protect election integrity. Nowhere does the NVRA expressly prohibit the states from requiring

valid proof of citizenship, and in fact it could not do so. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 1, 133 S. Ct. 2247, 2249 (2013). Ironically, Section 5 of the NVRA requires that "[t]he voter registration application must state each voter eligibility (including citizenship) …" 52 U.S.C. § 20507(5). The use of the NVRA does not negate or void a citizenship requirement, but it mandates one.

## 2. ARIZONA'S ELECTION LAW AMENDMENTS PROTECT THE INTEGRITY OF THE ELECTORAL PROCESS

Election integrity requires preventing non-citizens or the deceased from voting and multi-voting, and other ineligible individuals from casting votes. While the NVRA pertains to federal elections, permitting voting by ineligible voters in state and local elections can impact federal election voting. The federal government and states are mandated to ensure election laws are followed and consistently so.

Arizona's new laws, effective January 1, 2023, require county election offices to verify voter eligibility and to clean voter registration rolls. Election integrity is of primary importance for U.S. voters to protect against multi-voting and to prevent deceased and ineligible voters from remaining on voter rolls. Prevention and removal of ineligible voters are part of the NVRA requirements:

> "(4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of—
>    (A) the death of the registrant; or
>    (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d);
> (5) inform applicants under sections 20504, 20505, and 20506 of this title of—
>    (A) voter eligibility requirements; and

        (B) penalties provided by law for submission of a false voter registration application; and
        (6) ensure that the identity of the <u>voter registration agency</u> through which any particular voter is registered is not disclosed to the public."

52 U.S.C. § 20505.

A recent Arizona news article aptly highlights the need for proof of citizenship verification as well as purging voter rolls of ineligible voters. In Maricopa county, the article noted that "more than 200 self-acknowledged noncitizens have managed to register to vote in Arizona's Maricopa County and at least nine of them have cast ballots in federal elections…"[3] Since 2015, only 222 registered non-citizens were honest enough to come forward and notify officials of the registration error. This means that, as the fourth largest county, there are possibly hundreds or thousands more ineligible voters on Maricopa's and other county's voter rolls. One of the reasons these individuals came forward may be that "immigrants seeking citizenship often come forward and acknowledge that they are on the rolls because one of the questions on the naturalization form is whether they ever were illegally registered. Lying on that form can quickly earn deportation." The penalties for fraudulent voter registration are a class 6 felony, which would mean automatic removal from the U.S.[4] *See* A.R.S. § 16-182 (A). This means that Arizona's election offices have much work to not only to purge ineligible

---

[3] https://www.washingtontimes.com/news/2023/apr/25/hundreds-noncitizens-ended-voting-rolls-maricopa-c/

[4] A person who knowingly causes, procures or allows himself to be registered as an elector of any county, city, town, district or precinct, knowing that he is not entitled to such registration, or a person who knowingly causes or procures another person to be registered as an elector of any county, city, town, district or precinct, knowing that such other person is not entitled to such registration, or an officer who knowingly enters the name of any person not entitled to registration upon the register or roll of electors, is guilty of a class 6 felony.

voters but to prevent more ineligible voters from registering as is mandated by both the NVRA and Arizona's elections laws.

Election integrity is of primary importance for U.S. Citizen voters to protect against non-citizen voting, multi-voting, and deceased and ineligible voters that must now be removed from voter rolls. Election integrity also increases the number of qualified U.S. citizens who register and vote in elections, something that the NVRA was designed to encourage.

## CONCLUSION

Arizona's enacted election laws are constitutional and must be upheld.

Respectfully submitted this May 22, 2023.

Lorraine G. Woodwark
By /s/ *Lorraine G. Woodwark, Esq.*
Attorneys United for a Secure America
25 Massachusetts Avenue NW, Ste 335
D.C. 20001
(202) 591-0962
(202) 464-3590
LWoodwark@IRLI.org

Carson J. Tucker, Esq.
By /s/ *Carson J. Tucker, Esq.*
Lex Fori PLLC
DPT #3020
1250 W. 14 Mile Rd.
Troy, MI 48083-1030
Direct +17348879261
Main +17348879260
Fax +17348879255
www.lexforipllc.com
cjtucker@lexfori.org

Veronica Lucero
By */s/Veronica Lucero, Esq.*
Davillier Law Group, LLC
4105 North 20th Street, Suite 110
Phoenix, AZ 85016
(602) 730-2985
Vlucero@davillierlawgroup.com

*Counsel for Amicus Curiae Advocates for Victims of Illegal Alien Crime (AVIAC)*

## IDENTITY, INTEREST AND AUTHORITY TO FILE

Amicus curiae Advocates for Victims of Illegal Alien Crime ("AVIAC") is a 26 U.S.C. § 501(c)(3) non-profit organization that was founded in 2017. AVIAC is led by individuals who have lost family members because of crimes committed by undocumented immigrants. AVIAC's mission includes being a source of support for such victims across the country and a resource for policies that will enforce the nation's immigration laws and prevent governmental incentives for illegal immigration.

AVIAC objects to providing non-citizens with the right to vote in any election, whether local, state, or federal as it dilutes the votes of eligible U.S. citizens. Proof of citizenship is fundamental to ensuring that only U.S. citizens vote to protect America's representative democracy. This case concerns the attempt by several Plaintiffs to override the United States Constitution's requirements and Arizona's election laws that only U.S. citizens vote in elections. AVIAC supports the State of Arizona's Election Laws rather than any party in this lawsuit. AVIAC is concerned about incursions on the sovereignty of American citizens by non-citizens voting in local, state and federal elections. Accordingly, AVIAC seeks to ensure that only American citizens are permitted to vote in Arizona's municipal, county, statewide and federal elections.

"The extent, if any, to which an amicus curiae should be permitted to participate in a pending action is solely within the broad discretion of the district court." *Sierra Club v. Fed. Emergency Mgmt. Agency*, 2007 WL 3472851, at *1 (S.D. Tex. Nov. 14, 2007).

Pursuant to F.R.CIV.P. 7 and FED. R. APP. P. 29(a)(4)(E), undersigned counsel certifies that: counsel for AVIAC authored this brief in whole; no counsel for a party authored this brief in any respect; and no person or entity other than amicus, its members, and its counsel contributed monetarily to this brief's preparation or submission.

DATED: May 22, 2023

*/s/ Veronica Lucero*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, amicus curiae AVIAC makes the following disclosures:

1. For non-governmental corporate parties please list all parent corporations: None.

2. For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

DATED: May 22, 2023

*/s/ Veronica Lucero*

**CERTIFICATE OF COMPLIANCE**

1. This brief has been prepared using 13-point, proportionately spaced, serif typeface, in Microsoft Word.

2. This brief complies with Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains less than 3,000 words, excluding material not counted under Rule 32(f).

Dated:  May 22, 2023

*/s/ Veronica Lucero*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2023, I electronically filed the foregoing amicus brief in Support of Arizona's Election Laws with the Clerk using the CM/ECF system, which I understand to have served the parties' counsel who are registered in as CM/ECF users.

*/s/ Veronica Lucero*