**KRIS MAYES**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)
Joshua D. Bendor (No. 031908)
Hayleigh S. Crawford (No. 032326)
Joshua M. Whitaker (No. 032724)
Kathryn E. Boughton (No. 036105)
Timothy E.D. Horley (No. 038021)
Office of the Arizona Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004-1592
(602) 542-3333
Joshua.Bendor@azag.gov
Hayleigh.Crawford@azag.gov
Joshua.Whitaker@azag.gov
Kathryn.Boughton@azag.gov
Timothy.Horley@azag.gov
ACL@azag.gov

*Attorneys for Defendants Attorney General Kris Mayes, ADOT Director Jennifer Toth, and State of Arizona*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., <br><br> Defendants. <br><br> **AND CONSOLIDATED CASES** | No. 2:22-cv-00509-SRB (Lead) <br><br> **DEFENDANTS ATTORNEY GENERAL AND STATE OF ARIZONA'S CONSOLIDATED CONTROVERTING STATEMENT OF FACTS** <br><br> (Before the Hon. Susan R. Bolton) <br><br> No. CV-22-00519-PHX-SRB <br> No. CV-22-01003-PHX-SRB <br> No. CV-22-01124-PHX-SRB <br> No. CV-22-01369-PHX-SRB <br> No. CV-22-01381-PHX-SRB <br> No. CV-22-01602-PHX-SRB <br> No. CV-22-01901-PHX-SRB |

Defendants State of Arizona and Attorney General Kris Mayes (collectively "the State") submit the following Consolidated Controverting Statement of Facts in opposition to Non-U.S. Plaintiffs' Consolidated Statement of Material Facts (Doc. 388) and in opposition to Statement of Facts Supporting United States' Motion for Partial Summary Judgment on its NVRA Claim (Doc. 392, pgs. 1–2).

## I. Responses to Non-U.S. Plaintiffs' Consolidated Statement of Material Facts (Doc. 388)

### *H.B. 2492 / 2243 Legislative History*

1. On March 30, 2022, then-Governor Doug Ducey signed House Bill 2492 ("H.B. 2492") into law. *See* **Exhibit 1** (March 30, 2022 Letter from Governor Ducey to Secretary Hobbs re: House Bill 2492 voter registration; verification; citizenship). A copy of H.B. 2492 (Chaptered Version) is attached hereto as **Exhibit 2**.

**State's Response:** Undisputed.

2. On April 22, 2022, Governor Ducey signed Senate Bill 1638 ("S.B. 1638"), which made a technical amendment to H.B. 2492 and delayed the effective date for all of H.B. 2492's provisions to December 31, 2022. A copy of S.B. 1638 (Chaptered Version) is attached hereto as **Exhibit 3**.

**State's Response:** Undisputed.

3. On June 23, 2022, the Arizona Legislature passed House Bill 2243 ("H.B. 2243"), which was signed into law by Governor Ducey on July 6, 2022. A copy of H.B. 2243 (Chaptered Version) is attached hereto as **Exhibit 4**.

**State's Response:** Undisputed.

4. H.B. 2243 went into effect on September 24, 2022. *See* **Ex. 4**.

**State's Response:** Undisputed.

5. H.B. 2492 went into effect on December 31, 2022. *See* **Ex. 2**; **Ex. 4**.

**State's Response:** Undisputed.

*Arizona Election Officials*

6. Katie Hobbs is the Governor of Arizona. *See* **Ex. 5** (State of Arizona Official Canvass, 2022 General Election) at 2. As Governor, she "supervise[s] the official conduct of all executive and ministerial officers." A.R.S. § 41-101(A)(1).

**State's Response:** Undisputed.

7. Adrian Fontes is the Secretary of State of Arizona. *See* **Ex. 5** at 10. As Secretary, he is Arizona's chief election officer and is responsible for "coordination of" Arizona's responsibilities under the National Voter Registration Act of 1993 ("NVRA"). A.R.S. § 16-142(A)(1).

**State's Response:** Undisputed.

8. Kristin Mayes is the Attorney General of Arizona. *See* **Ex. 5** at 10. As Attorney General, she is the chief legal officer of the state. A.R.S. § 41-492.

**State's Response:** Generally undisputed, except presumably Plaintiffs intended to cite A.R.S. § 41-192.

9. The Arizona Elections Procedures Manual ("EPM"), which is prepared by the Arizona Secretary of State after consultation with county election officials, contains "rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency on the procedures for early voting and voting, and of producing, distributing, collecting, counting, tabulating and storing ballots." A.R.S. § 16-452(a).

**State's Response:** Undisputed.

10. The EPM must be approved by the Governor, Secretary of State, and Attorney General before going into effect. A.R.S. § 16-452(b).

**State's Response:** Undisputed.

11. The EPM is binding on County Recorders; a violation of any rule adopted as part of the EPM is a class 2 misdemeanor. A.R.S. § 16-452(c).

**State's Response:** Undisputed.

12. The 2019 Elections Procedures Manual, as the last EPM approved by the Governor, Secretary of State, and Attorney General, is the currently operative and binding EPM. A copy of the 2019 EPM is attached hereto as **Exhibit 6**.

**State's Response:** Undisputed.

13. A draft 2021 Elections Procedures Manual was submitted to then-Governor Ducey and then-Attorney General Brnovich by then-Secretary of State Hobbs on October 1, 2021. *See* **Ex. 7** (Oct. 1, 2021 Letter from Secretary Hobbs to Governor Ducey and Attorney General Brnovich). The 2021 draft EPM was not approved by Attorney General Brnovich and thus did not take effect. *See* **Ex. 8** (Dec. 22, 2021 Letter from Attorney General Brnovich to Secretary Hobbs).

**State's Response:** Undisputed.

14. The currently operative Election Procedures Manual does not contain any information or guidance on H.B. 2492 or H.B. 2243. *See generally* **Ex. 6**.

**State's Response:** Undisputed.

15. The County Recorders are responsible, within their respective counties, for processing voter registration applications and verifying voter registration applicants' eligibility to vote, including citizenship and residency status. The County Recorders are also responsible for maintenance of voter registration records in their respective counties, including rejection of voter registration applications and removal of voters from the registration list pursuant to certain provisions of H.B. 2492 and 2243. A.R.S. §§ 16-112; 16-121.01; 16-123; 16-128; 16-131; 16-151; 16-161; 16-165; 16-166.

**State's Response:** Undisputed.

*Voter Registration in Arizona*

16. Eligible Arizona residents may register to vote using a voter registration form prescribed by the Arizona Secretary of State pursuant to A.R.S. § 16-162(C) (the "State Form"). A copy of the current Arizona State Voter Registration Form is attached hereto as **Exhibit 9**.

**State's Response:** Generally undisputed, except that in the copy Plaintiffs attached as Exhibit 9, the bottom of the third page (which is where the version date usually is) seems to be cut off. Also, presumably Plaintiffs intended to cite A.R.S. § 16-1<u>5</u>2(C).

17. The current State Form does not reflect H.B. 2492's requirements that all State Form applicants provide documentary proof of location of residence ("DPOR"), documentary proof of citizenship ("DPOC"), and their place of birth. *See* **Ex. 9**. The "State Form" advises applicants that they must provide DPOC to vote a "full ballot" and that, if they do not provide DPOC and their U.S. citizenship cannot be confirmed from the Arizona Motor Vehicle Division or statewide voter registration database, they will be registered to receive a "federal-only" ballot, which has only federal races. **Ex. 9** at 3.

**State's Response:** Generally undisputed, except as noted in response to ¶ 16 above.

18. Eligible Arizona residents may register to vote using the National Mail Voter Registration Form prescribed by the U.S. Election Assistance Commission pursuant to the NVRA (the "Federal Form"). A copy of the Federal Form is attached hereto as **Exhibit 10**.

**State's Response:** Undisputed.

19. The Federal Form does not require the submission of documentary proof of citizenship or documentary proof of location of residence. *See* **Ex. 10**.

**State's Response:** Undisputed.

20. The Federal Form does not request information about place of birth. *See* **Ex. 10**.

**State's Response:** Undisputed.

21. In 2005, Arizona requested that the Election Assistance Commission ("EAC") add its DPOC requirement to Arizona's state-specific instructions on the Federal Form. The EAC did not approve that request and Arizona did not seek judicial review of that agency action. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 6 (2013).

**State's Response:** Undisputed.

22. In 2013, Arizona again requested that the EAC include state-specific instructions on the Federal Form requiring DPOC. *See Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1188 (10th Cir. 2014). In 2014, the EAC denied that request. Arizona, along with Kansas, sought judicial review of that denial. *Id.* at 1188-89. The Tenth Circuit upheld the EAC's agency action, *id.* at 1196, and the Supreme Court denied Arizona's petition for certiorari. *Kobach v. U.S. Election Assistance Comm'n*, 576 U.S. 1055 (2015).

**State's Response:** Undisputed.

23. Since 2013, Arizona has operated a dual voter registration system that requires DPOC for registration to vote in state and local elections but not for federal elections. **Ex. 6** (2019 EPM) at 3 (Ch. 1, Sec. II.A); *see also* A.R.S. §§ 16-121.01; 16-127.

**State's Response:** Undisputed.

24. The 2014 EPM that implemented this dual voter registration system provided that if a voter registration applicant submitted a State Form without DPOC, they were not registered to vote at all. *See* **Ex. 11** at 21 (2014 Arizona Election Procedures Manual). If such an applicant submitted a Federal Form without DPOC, they were registered as a "federal only" voter. *Id.* at 30.

**State's Response:** Generally undisputed, except perhaps Plaintiffs intended to cite other pages of the 2014 EPM.

25. In 2018, after litigation brought by Plaintiffs League of United Latin American Citizens of Arizona ("LULAC") and Arizona Students' Association, the Arizona Secretary of State agreed to, and this Court ordered, a consent decree (the "*LULAC* Consent Decree") mandating that, among other things, voter registration applicants would be treated equally regardless of whether they used the State or Federal Form to register and election officials would register applicants as full ballot voters if their DPOC could be acquired from the Motor Vehicle Division or the statewide voter registration database. A copy of the consent decree is attached hereto as **Exhibit 12**.

**State's Response:** Generally undisputed, except that Plaintiffs' summary of the *LULAC* Consent Decree is a simplification and specific procedures are set forth in the consent decree. *See* Plaintiffs' **Exhibit 12**.

26. The *LULAC* Consent Decree was incorporated into an addendum to the operative EPM, which was distributed to the county recorders, and later incorporated into the 2019 EPM. **Exhibit 6** (2019 EPM) at 6, (Ch. 1, Sec. II.A.2). A copy of the 2019 Addendum to the 2014 Arizona Elections Procedures Manual is attached hereto as **Exhibit 13**.

**State's Response:** Undisputed.

### H.B. 2492 – DPOR Requirement

27. All voter registration applicants in Arizona must attest to their legal residence under penalty of perjury. **Ex. 9** (State Form) § 22; **Ex. 10** (Federal Form) § 9.

**State's Response:** Generally undisputed. The State Form in § 22 states in relevant part: "By signing below, I swear or affirm that the above information is true, that I am a RESIDENT of Arizona . . . ." The Federal Form at § 9 states in relevant part: "I have reviewed my state's instructions and I swear/affirm that . . . I meet the eligibility requirements of my state . . . ."

28. With certain exceptions stipulated to in *Gonzalez v. Arizona*, CV 06 06-1268-PHX-ROS (D. Ariz.) ("*Gonzalez* Stipulation"), voters are already required to provide the documents indicating location of residence identified in A.R.S. § 16-579(A)(1) when they vote in person. A copy of the *Gonzalez* stipulation is attached hereto as **Exhibit 14**.

**State's Response:** Generally undisputed, except to clarify that Plaintiffs' **Exhibit 14** is only one of the stipulation-related documents in the *Gonzalez* case.

29. Pursuant to the *Gonzalez* stipulation, members of federally recognized Indian tribes are entitled to present Tribal identification at the polls that does not include a numbered street address to satisfy the in-person identification requirement of A.R.S. §

16-579(A)(1). Such voters are given a provisional ballot that is counted without additional documentation.

**State's Response:** Generally undisputed, except to clarify that Plaintiffs' **Exhibit 14** is only one of the stipulation-related documents in the *Gonzalez* case.

30. Both the State and Federal Forms allow applicants whose residences do not have a street address to include a description and drawing of their place of residence on their voter application form, rather than a numbered street address. **Ex. 9** (State Form) § 23; **Ex. 10** (Federal Form) § C.

**State's Response:** Undisputed.

31. The DPOR requirement applies to all voter registration applicants, regardless of whether they use the State or Federal Form. A.R.S. § 16-123; Doc. 346 ¶ 62.

**State's Response:** Generally undisputed. Section 16-123 does not expressly distinguish between Federal Form users and State Form users and therefore appears to require DPOR for both.

32. The Federal Form does not require DPOR for the registration of voters in Federal elections. *See* **Ex. 10** (Federal Form).

**State's Response:** Undisputed.

33. According to the Attorney General, on December 30, 2022, Kori Lorick from the Secretary of State's office sent an email containing a chart explaining documents that could constitute proof of location of residence. *See* Doc. 365, ¶ 14.

**State's Response:** Undisputed.

34. The Secretary's chart recognizes that tribal members may demonstrate proof of location of residence through a tribal or state identification card without a traditional street address, with a P.O. Box, or with no address at all, consistent with the *Gonzalez* Stipulation. *See* Doc. 365, ¶ 15; Doc. 365-1, Ex. J.

**State's Response:** Generally undisputed. The State's position on this is summarized in Doc. 365, ¶ 15 and is explained more fully in the Consolidated Summary Judgment Response and Reply Brief that is being contemporaneously filed with this Consolidated Controverting Statement of Facts.

### *H.B. 2492 – Birthplace and Citizenship Checkbox Requirements*

35. The Secretary of State has admitted that a person's birthplace and whether they check a citizenship checkbox are immaterial to verifying a person's qualifications to register and vote. Doc. 124, ¶¶ 8, 61, 67, 197; Doc. 123, ¶¶ 102-03; Doc. 122, ¶¶ 51-56, 61.

**State's Response:** Undisputed that the Secretary of State previously took these positions. The Secretary has clarified that "the Secretary takes no position regarding the ultimate merits of Plaintiffs' claims against the challenged laws." Doc. 281, pg. 10.

36. Prior to the enactment of H.B. 2492, the State Form contained a field for inputting place of birth, but until H.B. 2492's enactment, the omission of such information was not a basis for rejection of a voter registration application. Doc. 124, ¶ 57; Doc. 328, ¶ 57.

**State's Response:** Generally undisputed. To the extent that ¶ 36 is intended to mean that birth place information is immaterial, disputed.

37. On December 30, 2022, former State Elections Director Kori Lorick sent an email to each of Arizona's 15 County Recorders regarding "implementation of H.B. 2492 and H.B. 2243]," which included as an attachment a "policy document" that "noted which provisions" of H.B. 2492 and H.B. 2243 the Secretary of State's Office "interpret[ed] as conflicting with federal law[.]" **Ex. 15** at AZSOS-000001; **Ex. 16**. A copy of the Dec. 30, 2022 Email from Kori Lorick to the County Recorders and its attachments are attached as **Exhibits 15** and **16**.

**State's Response:** Undisputed.

9

38. The referenced policy document states that the Birthplace Requirement "is in conflict with the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B) ('CRA') and cannot be implemented without violating federal law." **Ex. 16** at AZSOS-000012.

**State's Response:** Undisputed.

39. The document also states that the Citizenship Checkbox Requirement "is immaterial and violates the CRA, by denying the right to register to vote to eligible Arizonans who accidentally omit the checkmark from their voter registration application," explaining that "if an applicant provides DPOC, or DPOC can be acquired based on the provided information, the county recorder should accept the form." **Ex. 16** at AZSOS-000012.

**State's Response:** Undisputed.

40. On March 24, 2022, Jennifer M. Marson, the Executive Director of the Arizona Association of Counties, sent a letter to former Governor Ducey requesting a veto of H.B. 2492, stating that "the 'place' of an applicant's birth . . . is irrelevant to the applicant's desire to be a registered voter, it can't be verified by the county, and it does not verify identification." **Ex. 17** at SCCR000105. A copy of the March 24, 2022 Letter from Arizona Association of Counties is attached hereto as **Exhibit 17**.

**State's Response:** Undisputed.

41. Also on March 24, 2022, Ms. Marson sent an email to each of Arizona's 15 County Recorders reporting to them that H.B. 2492, which Ms. Marson described as "one of the bills we disliked the most," had passed both chambers and was headed to the Governor for signature. Ms. Marson reported that the Arizona Association of Counties would be submitting a veto request and included a summary of some of the Association's key concerns with the bill, including that "[p]lace of birth is irrelevant (doesn't verify ID) and counties have no way to verify this data anyway." **Ex. 18** at SCCR000111. A copy of the March 24, 2022 Email from Jennifer Marson is attached hereto as **Exhibit 18**.

**State's Response:** Undisputed.

42. Also on March 24, 2022, Defendant Pima County Recorder Gabriella Cázares-Kelly sent a letter to former Governor Ducey requesting a veto of H.B. 2492, stating: "The bill creates unnecessary barriers for voters wishing to participate in the electoral process, by changing the way County Recorders process voter registrations forms. . . . Requiring a birthplace when registering (16-121.01) is irrelevant. There is no way to verify the information and it has no bearing on the ability to vote nor does it verify identity. . . . This bill simply does not support the work that we do. It actually inhibits the work that we do." **Ex. 19** at PIMA_COUNTY_0822. A copy of the March 24, 2022 Email from Pima County Recorder Gabriella Cázares-Kelly is attached hereto as **Exhibit 19**.

**State's Response:** Undisputed.

43. On January 27, 2023, Defendant Cochise County Recorder David Stevens responded to interrogatories propounded in this litigation by Plaintiff Arizona Asian American Native Hawaiian And Pacific Islander For Equity Coalition, stating: "Recorder Stevens will follow guidance from the Arizona Secretary of State's Office indicating that certain portions of H.B. 2492 violate federal law and should not be implemented." **Ex. 20** at 4. A copy of Cochise County Recorder Stevens' Responses to Interrogatories is attached hereto as **Exhibit 20**.

**State's Response:** Undisputed.

*H.B. 2243 – Citizenship Checks and Cancellation*

44. The Secretary of State admitted that A.R.S. § 16-165(I) "requires a different 'standard, practice, or procedure' for determining a voter's qualifications for voters who a county recorder 'has reason to believe are not United States citizens' than for voters who a county recorder does not have reason to believe are not United States citizens." Doc. 189 ¶ 102.

**State's Response:** Undisputed that the Secretary of State previously took this position. The Secretary has clarified that "the Secretary takes no position regarding the ultimate merits of Plaintiffs' claims against the challenged laws." Doc. 281, pg. 10.

45. The Secretary has admitted that A.R.S. § 16-165(I) directs county recorders to sort voters into two categories: those who will be subjected to the additional SAVE System verification procedures and those who "are not suspected of lacking U.S. citizenship [and] will not be subjected to the investigation and potential cancellations [sic] provisions set forth in H.B. 2243." Doc. 189, ¶¶ 102-03.

**State's Response:** Undisputed that the Secretary of State previously took this position. The Secretary has clarified that "the Secretary takes no position regarding the ultimate merits of Plaintiffs' claims against the challenged laws." Doc. 281, pg. 10.

46. The Secretary of State has admitted that H.B. 2243 "requires that county recorders, to the extent practicable, check the SAVE System each month 'to verify the citizenship status' of any 'persons who are registered to vote in that county and who the county recorder has reason to believe are not United States citizens.'" Doc. 189, ¶ 112.

**State's Response:** Undisputed that the Secretary of State previously took this position. The Secretary has clarified that "the Secretary takes no position regarding the ultimate merits of Plaintiffs' claims against the challenged laws." Doc. 281, pg. 10.

47. The Secretary of State has admitted that H.B. 2243 "does not include any indicia or criteria that would provide a predicate for the county recorder's 'reason to believe' a person is not a United States citizen." Doc. 112 ¶ 41.

**State's Response:** Undisputed that the Secretary of State previously took this position. The Secretary has clarified that "the Secretary takes no position regarding the ultimate merits of Plaintiffs' claims against the challenged laws." Doc. 281, pg. 10.

***H.B. 2243 Databases Are "Potentially Unreliable" and Based On "Inaccurate" Data***[1]

48. The Secretary of State has admitted that H.B. 2243 "requires the Secretary and county recorders to engage in a number of database checks, in most cases monthly and to the extent practicable, to confirm registered voters' residence and/or citizenship

---

[1] This was a heading used by Plaintiffs, not a statement of fact.

status . . . ." **Ex. 21** (Secretary of State Answer filed in Case No. 2:22-cv-01381-SRB, Doc. 63) ¶ 85.

**State's Response:** Undisputed that the Secretary of State previously took this position. The Secretary has clarified that "the Secretary takes no position regarding the ultimate merits of Plaintiffs' claims against the challenged laws." Doc. 281, pg. 10.

49. The Secretary of State has admitted that "H.B. 2243 do[es] not specify what type, set, or combination of 'information' establishes that a registered voter 'is not a United States citizen' or what information is sufficient to match an individual in a database with the registered voter or applicant, and that some United States citizens may be erroneously flagged as non-citizens based on potentially outdated and inaccurate data." Secretary of State Answer to Plaintiffs Poder Latinx and CPLC's Second Amended Complaint, ECF No. 189, ¶ 44.

**State's Response:** Undisputed that the Secretary of State previously took this position. The Secretary has clarified that "the Secretary takes no position regarding the ultimate merits of Plaintiffs' claims against the challenged laws." Doc. 281, pg. 10.

50. The Secretary of State has admitted that under H.B. 2243, "if a county recorder obtains information and confirms that a registered voter is not a United States citizen, which may be based on potentially unreliable and outdated sources, and if, after receiving a notice, the voter does not provide proof of citizenship within 35 days, the recorder must cancel the registration and notify the county attorney and Attorney General for possible investigation." **Ex. 21** ¶ 12.

**State's Response:** Undisputed that the Secretary of State previously took this position. The Secretary has clarified that "the Secretary takes no position regarding the ultimate merits of Plaintiffs' claims against the challenged laws." Doc. 281, pg. 10.

***H.B. 2243 NVRA Notice***

51. On July 22, 2022, Plaintiff Equity Coalition sent formal notice to the Secretary of State, as required under the NVRA, notifying then-Secretary Hobbs of the NVRA violations arising from the enactment of H.B. 2243. A copy of this notice is

attached hereto as **Exhibit 22**; *see also* Doc. 169-2 (Poder Latinx's H.B. 2243 NVRA Notice Letter).

**State's Response:** Generally undisputed. To the extent that ¶ 51 is intended to mean that H.B. 2243 does in fact violate the NVRA in all the ways described in the Equity Coalition's notice, generally disputed.

52. On August 15, 2022, Plaintiffs Promise Arizona and Southwest Registration Education Project also provided written notice to then-Secretary Hobbs of the NVRA violations created by H.B. 2243. A copy of this notice is attached hereto as **Exhibit 23.**

**State's Response:** Generally undisputed. To the extent that ¶ 52 is intended to mean that H.B. 2243 does in fact violate the NVRA in all the ways described in Promise Arizona and Southwest Registration Education Project's notice, disputed.

*Implementation of H.B. 2243*

53. On August 10, 2022, Plaintiff Equity Coalition contacted each of the named county recorder-Defendants, asking whether and when, in connection with the passage of H.B. 2243, the county recorder is (1) currently implementing or planning to shortly implement any changes to their procedures or effectuate any new procedures or actions, and/or (2) planning any such changes/new procedures or actions upon the general effective date of bills passed during the 55th Legislature (September 24, 2022). **Ex. 24** (Steinbach Decl. filed in Case No. 2:22-cv-01381-SRB, Doc. 35) ¶¶ 3-5, 16-17, 19.

**State's Response:** Undisputed.

54. By August 18, 2022, seven county recorders stated that they understood H.B. 2243 to go into effect upon the general effective date of bills passed during the 55th Legislature, September 24, 2022—45 days prior to the November 8, 2022 federal election—and that they would follow the law. **Ex. 24** ¶¶ 6-21. The other eight county recorders did not respond in writing to the request. **Ex. 25** (Ex. 23 to Steinbach Decl. filed in Case No. 2:22-cv-01381-SRB, Doc. 35-2).

**State's Response:** Generally undisputed. As shown in the cited exhibits, several recorders stated that they suspected or anticipated a motion for preliminary injunction would be filed, which if granted would preserve the status quo, and that they would follow a court order. (*See* Case No. 2:22-cv-01381-SRB Doc. 35-2 at 40-42.)

55.   No county recorder ever stated that they would not implement H.B. 2243 in September or October 2022 because doing so was prohibited under the NVRA's 90-day prohibition period. *See generally* **Ex. 24**; **Ex. 25**.

**State's Response:** Generally undisputed. As far as the State can tell, the cited exhibits do not mention recorders' positions on the NVRA 90-day period one way or the other.

56.   On August 25, 2022, Plaintiff Equity Coalition filed a Motion for Preliminary Injunction, attached hereto as **Exhibit 26** (Motion for Preliminary Injunction, Case No. 2:22-cv-01381-SRB, Doc. 32).

**State's Response:** Undisputed.

57.   On September 8, 2022, the parties filed a proposed stipulated order regarding the motion for preliminary injunction (the "Stipulated Order"), attached hereto as **Exhibit 27** (Case No. 2:22-cv-01381-SRB, Doc. 53). At the request of Maricopa County, the recitals of the proposed stipulation made clear the county recorders only consented to be being bound by the Secretary of State's interpretation on the effective date of H.B. 2243's amendments to A.R.S. § 16-165 as set forth in the order, and would not be bound if the Secretary were to later adopt a different interpretation. *Id.* at 2 ("WHEREAS, the County Recorder Defendants agree and will abide by the Secretary of State and the Attorney General's interpretation of the effective date of H.B. 2243's amendments to A.R.S. § 16-165, as set forth above.").

**State's Response:** Undisputed that the Stipulated Order states: "WHEREAS, the County Recorder Defendants agree and will abide by the Secretary of State and the Attorney General's interpretation of the effective date of H.B. 2243's amendments to A.R.S. § 16-165, as set forth above." It is unclear what Plaintiffs mean when they say

1  "the recitals of the proposed stipulation made clear the county recorders only consented to be being bound by the Secretary of State's interpretation on the effective date of H.B. 2243's amendments to A.R.S. § 16-165 as set forth in the order, and would not be bound if the Secretary were to later adopt a different interpretation." To the extent Plaintiffs are suggesting this language appears in the Stipulated Order, disputed.

58. In her October 26, 2022 Answer to Plaintiff Promise Arizona's Complaint, then-Secretary Hobbs stated for the first time that the NVRA's 90-day prohibition on systematic cancellation of voters would apply to cancellations under the provisions of A.R.S. § 16-165 as amended by H.B. 2243, but the Secretary acknowledged that the Secretary "has no currently available means of binding other officials, including the county recorders, the Attorney General, or the new Secretary of State who would be elected in the November 2022 General Election." **Ex. 28** (SOS Answer to Promise Arizona Compl.), Case No. 2:22-cv-01602, Doc. 46 ¶¶ 78, 157; *see also* **Ex. 29**, Promise Arizona Compl., Case No. 2:22-cv-01602, Doc. 1 ¶¶ 78, 157.

**State's Response:** Undisputed that the Secretary of State previously took this position. The Secretary has clarified that "the Secretary takes no position regarding the ultimate merits of Plaintiffs' claims against the challenged laws." Doc. 281, pg. 10.

59. No county recorder has stated in any Answer that he or she is bound by the Secretary of State's interpretation that the NVRA's 90-day prohibition on systematic cancellation of voters would apply to cancellations under the provisions of A.R.S. § 16-165 as amended by H.B. 2243.

**State's Response:** Generally undisputed. The State notes that, for the most part, the recorders stated: "Whether the implementation of H.B. 2243 violates NVRA, and what NVRA requires, are legal questions requiring no response." (*See* Case No. 2:22-cv-01381-SRB, Doc. 75 at 14 ¶¶ 168-74; *id.* at Docs. 76, 78, 79, 80, 81, 82, 84, 85, 86, 87, 88, 90.)

*Voting By Mail*

60. Approximately 89 percent of Arizonans voted by mail in the 2020 general election. *See* **Ex. 30** at 1, (Statement by Arizona Clean Elections Commission that "In the 2020 General Election, approximately 89% of ballots cast were early ballots," available at: https://www.azcleanelections.gov/how-to-vote/early-voting/vote-by-mail).

**State's Response:** Undisputed.

II. **Responses to Statement of Facts Supporting United States' Motion for Partial Summary Judgment on its NVRA Claim (Doc. 392 at 4–5)**

1. In March 2022, Arizona passed House Bill 2492 ("HB 2492"), omnibus voting legislation that changed several of Arizona's voter registration and voting requirements. Ariz. Secretary of State's Answer to the United States' Compl. ¶ 1, ECF No. 122 ("Secretary's Answer"); State Defs. Statement of Facts ¶ 1, ECF No. 365.

**State's Response:** Undisputed.

2. HB 2492 became effective on January 1, 2023. Secretary's Answer ¶ 1.

**State's Response:** Undisputed.

3. Under the National Voter Registration Act ("NVRA"), all states must "accept and use" a mail registration application form devised by the Election Assistance Commission ("Federal Form") to register applicants to vote in all federal elections. 52 U.S.C. § 20505(a)(1).

**State's Response:** Undisputed.

4. HB 2492 requires voter registrants using the Federal Form to supply documentary proof of citizenship ("DPOC") if County Recorders are unable to verify the applicant's citizenship status through specific databases enumerated in HB 2492. Ariz. Rev. Stat. § 16-121.01(E); Arizona's Answer to the United States' Compl. ¶ 31, ECF No. 329 ("State's Answer").

**State's Response:** Generally undisputed. To clarify, under A.R.S. § 16-121.01(D), county recorders are directed to use "all available resources to verify the citizenship status of the applicant" including specific enumerated databases. Under

17

A.R.S. § 16-121.01(E), if a county recorder is "unable to match the applicant with appropriate citizenship information," the county recorder must notify the applicant that the applicant "will not be qualified to vote in a presidential election or by mail with an early ballot in any election until satisfactory evidence of citizenship is provided."

5. If the applicant fails to produce DPOC, then the applicant may not vote in presidential elections or vote by mail in congressional elections. HB 2492 § 4 (adding Ariz. Rev. Stat. § 16-121.01(E)); Secretary's Answer ¶ 39.

**State's Response:** Generally undisputed. See response to ¶ 4 above.

6. The Federal Form does not require Arizona voters to provide DPOC to establish citizenship. Ex. A, Election Assistance Comm'n, Federal Voter Registration Form, OMB Control No. 3265-0015, https://perma.cc/YXG4-U9EV; State Defs. Statement of Facts 4 & Ex. C; Def. Intervenor Statement of Facts ¶ 3 & Ex. C, ECF No. 368.

**State's Response:** Undisputed.

7. In a letter dated April 17, 2023, Hayleigh S. Crawford, the then-Deputy Solicitor General for the State of Arizona, stated that "Attorney General Mayes does not intend to continue asserting as a defense to Plaintiffs' claims that Congress lacks the power to regulate presidential elections. That defense is foreclosed by binding authority. . . . Accordingly, the State acknowledges that to the extent H.B. 2492 conditions acceptance of the federal mail voter registration form for presidential election registration on documentary proof of citizenship, it is preempted by the federal requirement that States 'accept and use' the federal form." Ex. B, Letter from Hayleigh Crawford, Deputy Solicitor Gen., Ariz. Att'y Gen., to Couns. for All Consolidated Parties in *Mi Familia Vota v. Fontes*, No. CV-22-00509-PHX-SRB (April 17, 2023).

**State's Response:** Undisputed.

Case 2:22-cv-00509-SRB   Document 437   Filed 07/05/23   Page 19 of 19

RESPECTFULLY SUBMITTED this 5th day of July, 2023.

**KRIS MAYES**
**ATTORNEY GENERAL**

By: */s/* Joshua M. Whitaker

    Joshua D. Bendor
    Hayleigh S. Crawford
    Joshua M. Whitaker
    Kathryn E. Boughton
    Timothy E.D. Horley

*Attorneys for Defendants Attorney General Kris Mayes, ADOT Director Jennifer Toth, and State of Arizona*