**Scharf-Norton Center for**
**Constitutional Litigation at the**
**GOLDWATER INSTITUTE**
Scott Day Freeman (19784)
John Thorpe (034901)
500 E. Coronado Rd.
Phoenix, Arizona 85004
(602) 462-5000
litigation@goldwaterinstitute.org

*Attorneys for Non-Party*
*Arizona Free Enterprise Club*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MI FAMILIA VOTA, et al., | No.  2:22-cv-00509-SRB (Consolidated) |
| Plaintiffs, | |
| vs. | |
| ADRIAN FONTES, in his official capacity as Arizona Secretary of State, et al., | **MOTION TO QUASH SUBPOENAS** |
| Defendants, | |

Pursuant to Federal Rule of Civil Procedure 45(d)(3)(A), non-party Arizona Free Enterprise Club ("FEC") moves to quash the Subpoena to Produce Documents (Exhibit 1) and the Rule 30(b)(6) Deposition Subpoena (Exhibit 2) (the "Subpoenas") issued by Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition ("AANHPI").

**I.     Introduction**

The Supreme Court has stated time and again that individual legislators' opinions about a statute reveal little or nothing about the law's meaning and validity. *See, e.g.*, *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2350 (2021); *Palmer v.*

1

*Thompson*, 403 U.S. 217, 224–25 (1971). It is thus all the more true that the statements and opinions of *private parties*, several degrees removed from any official government action, have no bearing on the question of whether a state law is consistent with federal law.

Nevertheless, AANHPI is trying to use this Court's power to compel FEC—a private non-profit and a non-party in this litigation—to turn over, and testify about, broad categories of confidential information whose public disclosure would harm core First Amendment interests: financial records, personally identifiable information about donors and other affiliates, and internal deliberations about advocacy strategies and lobbying efforts.

Under binding Ninth Circuit precedent, to obtain compelled disclosure of sensitive political speech materials, AANHPI would need to demonstrate that its subpoena is the least restrictive means of achieving a compelling or substantial interest. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010). But there is no interest, let alone a compelling or substantial one, in obtaining evidence irrelevant to the claims at issue—evidence, moreover, that, even if it were relevant, could be obtained via public records requests or discovery on the parties.

The Subpoenas chill speech by advocacy groups of all stripes by raising the specter of having to reveal their finances and internal communications to the world whenever a lawsuit challenges a law on which they advocated. They also undermine legislatures' deliberative processes by discouraging citizens from petitioning their elected representatives (and discouraging representatives from engaging with citizens), lest doing so put them in the crosshairs of opponents willing to use the discovery process to stifle free speech. Moreover, even apart from their infringement on First Amendment interests, the Subpoenas are overbroad, unduly burdensome, and seek information that is irrelevant to the claims in this case. For all these reasons, the Court should quash the Subpoenas.

## II.     Background

In this lawsuit, numerous plaintiffs are challenging the validity of two Arizona voting laws enacted in 2022:

- House Bill 2492, which requires voting registrants to show proof of citizenship, specifies ways for registrants to prove citizenship, and establishes penalties for registrants who fail to provide such proof; and
- House Bill 2243, which directed election offices to review and update their voting rolls by removing ineligible voters.

The Plaintiffs allege that parts of these bills violate various federal statutory and constitutional provisions. Specifically, they argue that the laws violate and are preempted by various sections of the National Voter Registration Act; they discriminate on the basis of race and national origin; they invite arbitrary and discriminatory enforcement; they unduly burden the right to vote; and they violate Section Two of the Voting Rights Act by denying or abridging citizens' right to vote on account of race or color. *See* Dkt. 304, Order Denying Motion to Dismiss (detailing Plaintiffs' claims).

In addition to Defendants State of Arizona, Governor Katie Hobbs, Secretary of State Adrian Fontes, and all fifteen County Recorders, other defendants have intervened to defend the validity of these laws, including Speaker of the House of Representatives Ben Toma and President of the Senate Warren Petersen. Dkt. 363.

On June 1, 2023, AANHPI served FEC, a non-party to the lawsuit, with a Subpoena to Produce Documents. The Subpoena requested "All Documents and Communications" regarding eight categories of topics:

- Any "discussion, analysis, and/or evidence of non-citizens voting in Arizona elections prior to the passage/attempted passage of" the bills in question;
- "[A]ny Campaign/PAC Contributions or Expenditures made by [FEC] from January 1, 2017 to July 1, 2022";
- FEC's "Legislative Strategies, Lobbying Efforts, and/or Campaign/PAC Contributions or Expenditures Regarding the drafting, introduction and passage/attempted passage of laws related to voting";
- "[I]nterpretation of H.B. 2492, H.B. 2243, and/or H.B. 2617";

- The "impact, legality and/or constitutionality" of the bills in question ("including … all draft or final opinions");
- How the bills in question would impact voter eligibility, voter registration or turnout, or election outcomes in Arizona;
- How County Recorders confirm whether registered voters are citizens or have proof of citizenship for purposes of HB 2243, and how verifying citizenship would impact voter eligibility;
- "[A]ny database referenced by H.B. 2243 and H.B. 2492 … for the purpose of verifying a registered voter's citizenship status."

Exhibit 1.

The Subpoena further sought "all non-identical copies and drafts" of such documents, not only from FEC itself, but also from "any past and/or present members, directors, employees, agents, assigns, or representatives, including but not limited to lobbyists, interns, and contractors; and any past and present benefactors, donors, and board members." *Id.*

On June 29, 2023, AANHPI served FEC with a 30(b)(6) Deposition Subpoena, requiring FEC to produce a knowledgeable witness to testify in eight areas. Exhibit 2. These areas generally track the categories in AANHPI's earlier Subpoena to Produce Documents, but in some instances they are even broader. For example, they encompass all "Advocacy Efforts" and "Legislative Strategies" by FEC "related to elections, voter registration, and voting" during a six-year period, "including but not limited to all attempts to influence Constituent Groups" or public officials." Deposition Notice attached as Exhibit 3 at 8. They also cover FEC's "reasons for advocating for" the bills in question, FEC's "understanding of how" the bills would operate and affect elections, and FEC's "understanding of the legality and/or constitutionality of" the bills. *Id.*

FEC timely objected to both Subpoenas, asserting that the requests were irrelevant, overbroad, unduly burdensome, and violative of FEC's First Amendment associational rights.[1] Exhibit 4. Despite conferring about the Subpoenas and FEC's

---

[1] "[T]imely-served written objections suspend the non-party's obligation to comply with a subpoena commanding production of documents, pending a court order." *A&F Bahamas, LLC v. World Venture Group, Inc.*, No. CV 17-8523 VAP (SS), 2018 WL

4

objections by phone on June 29 and July 6, and additional conferrals by email, FEC and AANHPI have thus far been unable to reach a mutually agreeable resolution.

## III.   Discussion

Federal Rule of Civil Procedure 45(d)(3)(A) sets forth the grounds for quashing a subpoena. Relevant here, "the court… must quash or modify a subpoena" if the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or if the subpoena "subjects a person to undue burden."

As a preliminary matter, the Subpoenas seek information that is irrelevant to this lawsuit. Moreover, the Subpoenas should be quashed because (1) much of the information they seek is privileged under the First Amendment and (2) complying would be unduly burdensome in light of the sensitive information they seek, FEC's circumstances, and the Subpoenas' tenuous connection to the lawsuit.

### A.   The Subpoenas seek information irrelevant to this lawsuit.

AANHPI's 53-page complaint refers to FEC in just three of its 174 paragraphs: it references some tweets and articles from FEC and alleges that FEC "helped craft H.B. 2492, along with numerous other voter laws [during the 2022 legislative] session targeting voters of color." Compl. ¶¶ 15, 49. It also cites public testimony before the Arizona Senate Judiciary Committee by an individual affiliated with FEC, *id.* ¶ 49, and alleges that one of HB 2243's precursors was "pushed by" FEC, *id.* ¶ 57. Apart from these passing references to FEC in AANHPI's complaint, there has been virtually no discussion of FEC or its political advocacy in any other briefing or orders during this lawsuit.

Moreover, AANHPI's complaint *never* references donations, political action committees, internal communications by FEC, or any of the other topics on which the Subpoenas seek information. Neither the Complaint nor any other briefing before this Court indicates how such materials could be relevant to any claim or defense in this

---

5961297, at *4 (C.D. Cal. Oct. 19, 2018) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 45(d)(2)(B).

case. None of this should be surprising, because FEC, its internal communications, and its financial information *have nothing to do with this lawsuit*.

### 1. FEC's internal communications and analysis are irrelevant to this lawsuit.

Both Subpoenas focus heavily on information about communications that took place entirely between private individuals and organizations:

- "[D]iscussion, analysis, and/or evidence of non-citizens voting in Arizona elections" (Request 1);

- Documents and Communications related to [FEC's] Legislative Strategies, Lobbying Efforts, and/or Campaign/PAC Contributions" (Request 3);

- "Documents and Communications Regarding interpretation of H.B. 2492, H.B. 2243, and/or H.B. 2617" (Request 4);

- "Documents and Communications Regarding the potential impact, legality and/or constitutionality of H.B. 2492, H.B. 2243, and/or H.B. 217 (including but not limited to all draft or final opinions in [FEC's] possession, custody or control…" (Request 5);

- "Documents and Communications Regarding how the actual or potential implementation of H.B. 2492, H.B. 2243, and/or H.B. 2617 would impact Arizonans who are eligible to vote or particular demographics or Arizonans who are eligible to vote" (Request 6);

- "Documents and Communications Regarding how County Recorders 'confirm[ing]' a registered voter is not a citizen and/or lacks DPOC… would impact Arizonans who are eligible to vote or particular demographics of Arizonans who are eligible to vote" (Request 7);

- "Documents and Communications Regarding any database referenced by H.B. 2243 and H.B. 2492 … for the purpose of verifying a registered voter's citizenship status" (Request 8);

Exhibit 1.

The Deposition Subpoena goes even further, seeking testimony about mental impressions and subjective opinions of FEC employees, even if those thoughts were never shared. *See* Exhibit 3 at 8 (discussing FEC's "reasons for advocating for" bills and its "understanding of the [bills'] legality and/or constitutionality" and how they might operate).

These requests seek information purely internal to FEC, regarding FEC's own private analysis and interpretation of legal and policy issues. They have no conceivable

relevance to the issues in this lawsuit: namely, whether the challenged laws, as enacted and enforced by the government Defendants (not by FEC), and as construed by this Court (again, not by FEC), violate federal law. The requests are also irrelevant to any allegations of discriminatory motive or intent by the officials who enacted and enforce the laws. Rather, they seek information private to FEC, which no government official ever even saw.

Assuming AANHPI intends to argue that FEC promoted or advocated for H.B. 2243 and H.B. 2492 to advance its own discriminatory purposes (a theory AANHPI has not even pleaded, let alone corroborated with evidence), the Supreme Court has closed the door on that approach. In *Democratic National Committee*, 141 S. Ct. 2321, the Court considered the so-called "cat's paw theory" of discrimination, whereby a discriminatory actor might manipulate legislators into passing a discriminatory law for "sincere, though mistaken, non-race-based" reasons. *Id.* at 2350. The Court held that this theory, while accepted in employment discrimination cases, "has no application to legislative bodies," as the theory is premised "on the agency relationship that exists between an employer and a supervisor." *Id.* No such agency relationship exists, however, between "legislators who vote to adopt a bill" and "the bill's sponsor or proponents." *Id.*

Under our form of government, legislators must exercise independent judgment and represent their constituents. It is not only insulting and undemocratic to suggest that they are mere tools of private entities, but no such legal theory can justify intruding on the free speech and privacy rights of individuals or groups who petition the government for or against the passage of legislation. *See also Thai Meditation Ass'n of Ala., Inc. v. City of Mobile*, 980 F.3d 821, 836 (11th Cir. 2020) ("[W]e won't impute the discriminatory intent of one or a few decisionmakers to the entire group—let alone, as here, of a subordinate *non*-decisionmaker to the final decisionmakers.").

In fact, the Court has repeatedly cautioned against imputing even *a fellow legislator's* discriminatory intent (let alone a private citizen's intent) to other legislators. *See Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2255–56 (2022) ("Even when an argument about legislative motive is backed by statements made by legislators who voted for a law, we have been reluctant to attribute those motives to the legislative body as a whole." (collecting cases) (citations omitted)); *Palmer*, 403 U.S. at 225 ("It is difficult or impossible for any court to determine the 'sole' or 'dominant' motivation behind the choices of a group of legislators."); *United States v. O'Brien*, 391 U.S. 367, 384 (1968) ("What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it.").

For this reason, courts have held that third-party subpoenas that pry into a private organization's internal communications and strategy, like these, have little or no relevance in a constitutional challenge to a law. *Boe v. Marshall*, No. 2:22-cv-184-LCB, 2022 WL 14049505, at *2–3 (M.D. Ala. Oct. 24, 2022) (quashing subpoena seeking advocacy group's records "ranging from draft legislation, to communications with the Alabama Legislature, to polling or public opinion data, to social media postings," as having "little—if any—relevance" to constitutionality of legislation group supported). The mere fact that a private party supports passage of a law does not make the private party answerable in a subsequent constitutional challenge to that law, nor does it make the party a proper target of a subpoena.

                        **2.     FEC's financial information is irrelevant to this lawsuit.**

Requests 2 and 3 of the Document Subpoena seek financial information such as "Documents and Communications Regarding any Campaign/PAC Contributions or Expenditures."[2] Exhibit 1. To the extent this refers to *internal* communications regarding

---

[2] The Deposition Subpoena does not specifically address this issue, but its references to "Campaign/PAC Contributions or Expenditures," as well as "all attempts to influence" public officials, indicate that AANHPI likely intends to question FEC about its financial activities.

FEC's finances and donors, such information has no conceivable bearing on state officials' actions or intent.

To the extent it refers to communications with, or contributions to, *the officials themselves*, it is still irrelevant to those officials' actions or intent, unless AANHPI is seeking to show that those officials were bribed. But such grave allegations of criminal misconduct are completely absent from the pleadings in this case, and unsupported by any evidence. As in other cases where disclosure implicates third parties' privacy interests, AANHPI cannot obtain sensitive financial records from third parties base on "mere speculation that the [records] could house relevant evidence." *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, 2020 WL 7059444, at *5 (N.D. Ill. Dec. 2, 2020).

### B. Compelling FEC to disclose this information would violate the First Amendment.

The Ninth Circuit employs a burden-shifting approach to analyzing First Amendment privilege in the subpoena context. "[T]he opponents of disclosure" must first make "a prima facie case of arguable First Amendment infringement"; the burden then shifts to the subpoena's proponent "to 'demonstrate a sufficient need for the discovery to counterbalance that infringement.'" *In re Anonymous Online Speakers*, 661 F.3d 1168, 1174 (9th Cir. 2011) (citation omitted). Mirroring the "exacting scrutiny" standard, this test is meant to ensure that the discovery is (1) "rationally related to a compelling … interest," and (2) the "'least restrictive means' of obtaining the desired information." *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349–50 (9th Cir. 1988) (citation omitted). But the Subpoenas here cannot pass that test, and both steps of the privilege inquiry favor FEC.

First, the Subpoenas infringe FEC's First Amendment interests by burdening its associational rights. A subpoena burdens associational rights when it seeks sensitive information about political associations that could "result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which

9

objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Perry*, 591 F.3d at 1160 (citation omitted).

In *Perry*, advocacy groups intervened in a lawsuit to defend the constitutionality of Proposition 8, a California ballot initiative that defined marriage as only "between a man and a woman." *Id.* at 1152. In discovery, the plaintiffs sought these groups' "internal campaign communications concerning strategy and messaging," "including draft versions of communications never actually disseminated to the electorate at large." *Id.* at 1153. The district court denied (in relevant part) the groups' motion for a protective order. But the Ninth Circuit issued a writ of mandamus ordering the district court to grant the protective order. *Id.* It explained that compelled disclosure of internal campaign communications could "deter … participation" in such campaigns and could "have a deterrent effect on the free flow of information within campaigns," because it would "chill" the right of a political organization to "exchange ideas and formulate strategy and messages, and to do so in private." *Id.* at 1162.

As in *Perry*, disclosure of FEC's internal strategies, other communications, and information about financial contributions would lead to membership withdrawal and chilled association because it would expose FEC's affiliates to risks of retaliation and harassment. Already, FEC and its employees are frequent targets of menacing phone calls and voicemails, including threats of violence. Decl. of Scot Mussi, attached as Exhibit 5 ¶¶ 14, 15. An FEC employee has even "had her car vandalized while she was parked at the Arizona Capitol, in retaliation for engaging in public communications there on FEC's behalf." *Id.* ¶ 16. Donors and staff members have expressed their fear of being outed or "doxxed," and publicizing sensitive internal communications and other information about lightning-rod issues like election integrity will lead to donors and others disassociating from FEC out of fear for their own safety. *Id.* ¶¶ 12, 13, 17–19.

Publicizing confidential internal deliberations and exposing sensitive communications would also severely undermine FEC's ability to carry out its mission. Along with deterring donors and staff members by exposing them to threats of

retaliation, it would cripple FEC's ability to work with legislators and other advocacy groups, who will be unwilling to engage with FEC if they fear their private conversations will be made public. *Id.* ¶¶ 20–22. In fact, the case for First Amendment infringement is even stronger here than in *Perry*. FEC, unlike the intervenors in *Perry*, is not a party to this case. As noted above, courts are less willing to burden non-parties than litigants with intrusive subpoenas.

Second, AANHPI cannot "demonstrate a sufficient need for the discovery to counterbalance" the heavy burden its Subpoenas impose on FEC's First Amendment rights. *Perry*, 591 F.3d at 1164. To satisfy this standard, "the party seeking the discovery must show that the information sought is *highly relevant* to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Id.* at 1161. "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.*

But AANHPI cannot meet that high standard. As already noted, the Subpoenas seek three categories of information: (1) documents and communications government officials never saw, (2) documents and communications government officials did see, and (3) information about financial contributions to government officials and their campaigns. The first and third categories have no meaningful connection to any of the claims or defenses in this case, because they involve communications that shed no light on what government officials did or intended to do.[3] Indeed, after more than a year of complex litigation and extensive motion practice, neither AANHPI nor any other party has even *tried* to articulate a theory connecting FEC's private communications to the validity of the challenged statutes. As for the second category (documents and

---

[3] Here, too, FEC's case is even stronger than the intervenors' case in *Perry*. While the *Perry* intervenors' public communications and messaging strategy were arguably relevant to the intent and meaning of a ballot initiative, FEC's communications with the general public are completely irrelevant to the validity of a bill passed by the Legislature.

communications government officials *did* see), assuming such documents are relevant, AANHPI should seek them from the officials and government entities that are actually parties to this lawsuit, rather than burdening FEC's fundamental constitutional rights.

### C. Compelling FEC to disclose this information is unduly burdensome.

Even setting aside the constitutional issues, the Court should quash the Subpoenas because they are unduly burdensome to FEC. "[A]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quotation marks and citations omitted). This evaluation includes "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* (quotation marks and citation omitted).

"[N]on-parties are entitled to special consideration when it comes to subpoena requests under Rule 45." *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022). "[W]hile the discovery rules generally seek to avoid undue burdens, that concern is particularly important in the subpoena context precisely because the nonparty targets of the subpoenas do not have a direct stake in the lawsuit," and should therefore not have "to shoulder the same types of discovery burdens as the parties." *Id.* (quotation marks and citation omitted). Courts are therefore "quicker to find that the burden or expense in question is undue and offer protection as needed to alleviate it" when a party subpoenas a non-party. *Id.* (quotation marks and citation omitted); *see also Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) ("Nonparties are 'strangers' to the litigation, and … should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." (alterations adopted and citations omitted)).

The Subpoenas would require FEC, a small organization with only five staff members, to review thousands of documents for relevance and privilege. It would also

mean sharing highly sensitive information about FEC's finances, internal strategy and planning, and donor relations, in circumstances likely to ensure that such information is widely disseminated after being produced. Both Subpoenas, but especially the Deposition Subpoena, would require FEC to compile and review *six years'* worth of information about anything FEC has said or done "related to elections"—an exceptionally broad category.

Considering the tenuous connection between the Subpoenas and the issues in this lawsuit, the financial burden, combined with the imposition on "privacy [and] confidentiality interests," *Jordan*, 921 F.3d at 189 (collecting cases), "greatly outweighs any slight relevance [they] may have." *Boe*, 2022 WL 14049505, at *2.

Even assuming FEC's alleged communications with legislators were relevant to AANHPI's claims, the Subpoenas' requests for this information are directed at the wrong entity. Indeed, the only communications that AANHPI alleges to have occurred between FEC and legislators were public statements to the Senate Judiciary Committee. Compl. ¶¶ 15, 49. These statements are already publicly available on the Arizona Legislature's website. Assuming that any other communications with public officials occurred (and are relevant), they would presumably be subject to public records laws, or could be obtained from parties to this lawsuit—in ways that would be easier, less burdensome, and would create less risk of non-discoverable information being disclosed.[4]

"When an opposing party and a non-party both possess documents, the documents should be sought from the party to the case." *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012); *accord Adams v. Symetra Life Ins. Co.*, No. CV-18-00378-TUC-JGZ (LAB), 2020 WL 6469949, at *5 (D. Ariz. Nov. 3, 2020) ("Courts generally hold that where an opposing party and a nonparty both possess

---

[4] Likewise, campaign contributions are subject to extensive public reporting requirements and are available for public viewing on the Arizona Secretary of State's webpage. *See* Ariz. Sec'y of State, Campaign Finance and Reporting, https://azsos.gov/elections/campaign-finance-reporting (last visited July 12, 2023).

documents, the documents should be sought from the party to the case."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007) (quashing a non-party subpoena where information was "obtainable from a source more direct, convenient, and less burdensome—namely, from Defendants").

Subpoenas are inappropriate when they seek information from non-parties that is "redundant of other information that is already available to the parties." *Ark. State Conference NAACP v. Ark. Bd. of Apportionment*, No. 4:21-cv-01239-LPR, 2022 WL 300917, at *6–7 (E.D. Ark. Jan. 31, 2022) (quashing subpoenas to government officials seeking testimony that is already available in "on-the-record transcripts from Board of Apportionment meetings," and additional "testimony that goes to the underlying motivations of the constitutional officers is either irrelevant or unnecessary at this stage of the case").

Where a plaintiff can "obtain the same information, or comparable information" from a defendant, it is required to "explain why…that would [not] satisfy its needs" before trying to get the evidence from a non-party as in this case. *Jordan*, 921 F.3d at 189. AANHPI has not even attempted this, and it should not be permitted to burden a private non-party with such sweeping and intrusive requests absent good reason.

## IV.     Conclusion

For the foregoing reasons, FEC respectfully requests this Court quash the Subpoenas.

## V.      Certification

Undersigned counsel certifies that after personal consultation and sincere efforts to do so, counsel has been unable to satisfactorily resolve this matter. *See* L.R. Civ. 72(j).

**RESPECTFULLY SUBMITTED** this 12th day of July, 2023 by:

/s/ *Scott Day Freeman*
Scott Day Freeman (19784)
John Thorpe (034901)
**Scharf-Norton Center for Constitutional Litigation at the GOLDWATER INSTITUTE**
*Attorneys for Non-Party*
*Arizona Free Enterprise Club*

### CERTIFICATE OF SERVICE

Document Electronically Filed and Served on all counsel of record by ECF this 12th day of July, 2023.

/s/ *Kris Schlott*
Kris Schlott, Paralegal