Kevin E. O'Malley (Bar No. 006420)
Hannah H. Porter (Bar No. 029842)
Ashley E. Fitzgibbons (Bar No. 036295)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:  (602) 530-8000
Facsimile:  (602) 530-8500
kevin.omalley@gknet.com
hannah.porter@gknet.com
ashley.fitzgibbons@gknet.com
*Attorneys for Intervenor-Defendants Speaker
Toma and President Petersen*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota,<br><br>    Plaintiff,<br><br>v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State, et al.,<br><br>    Defendant.<br><br>AND CONSOLIDATED CASES | No. 2:22-cv-00509-SRB (Lead)<br><br>**INTERVENOR-DEFENDANTS SPEAKER TOMA AND PRESIDENT PETERSEN'S BRIEF RE LEGISLATIVE PRIVILEGE DISCOVERY DISPUTE** |

Pursuant to the Court's July 26, 2023 Order (Doc. 479), Intervenor-Defendants Speaker of the House Ben Toma and Senate President Warren Petersen (the "Speaker" and "President" respectively) hereby submit their brief regarding the legislative privilege.

Contrary to the Consolidated Plaintiffs'[1] claim, the Speaker and President did not implicitly waive their personal legislative privilege by intervening to defend the constitutionality of the challenged bills pursuant to A.R.S. § 12-1841(D). The Speaker and President have not affirmatively introduced or used privileged information to support their defenses. In addition, a 30(b)(6) deposition is inappropriate, unduly burdensome, and barred by the legislative privilege.

**I.    Background of the Dispute.**

On May 17, 2023, the Consolidated Plaintiffs issued requests for production and non-uniform interrogatories to the Speaker and President. Pursuant to the parties' agreement, the Speaker and President produced their initial responses to the discovery requests on June 23, 2023, and produced over 5,000 pages of documents and a privilege log on July 10, 2023. The privilege log was separated into categories for ease of reference: (1) internal legislative emails (137 emails, not counting attachments); (2) emails with third parties (48 emails, not counting attachments); (3) calendar appointments (~ 10,500 entries including all attachments); and (4) attorney-client documents, which are not at issue.[2]

Counsel participated in multiple meet-and-confer discussions both before and after the July 10 production. During those discussions, the Consolidated Plaintiffs asserted that the Speaker and President waived any legislative privilege by affirmatively intervening as parties. To be clear, Consolidated Plaintiffs have not individually challenged any documents in the privilege log, nor have they challenged the scope or applicability of the legislative

---

[1] "Consolidated Plaintiffs" refers to all Plaintiffs other than the United States of America.
[2] On July 26, pursuant to the parties' agreement, the Speaker and President produced over 86,000 pages of documents that had initially been withheld on privilege grounds.

1

privilege to this case. Thus, as described to the Court at the July 25 hearing, the only question presented concerning the legislative privilege is one of waiver.

In addition, in discussions regarding scheduling of depositions, Consolidated Plaintiffs have taken the position that a Rule 30(b)(6) deposition of the Speaker and the President is appropriate. Consolidated Plaintiffs circulated a draft Rule 30(b)(6) Notice of proposed topics for such a deposition, which is attached as **Exhibit 1**.

**II.     Intervention Pursuant to A.R.S. § 12-1841(D) Does Not Waive the Speaker and the President's Individual Legislative Privilege.**

Consolidated Plaintiffs' argument that the Speaker and the President have implicitly waived their individual legislative privileges by intervening in their official capacities pursuant to A.R.S. § 12-1841(D) does not accord with the doctrine of implied waiver and would chill participation by legislative leaders in cases such as this.

**A.     Implied Waiver Would Chill Participation in Lawsuits by Statutorily-Authorized Legislative Leaders.**

Here, the Speaker and President intervened in their official capacities as the officials with authority in their respective legislative chambers to intervene pursuant to A.R.S. § 12-1841(D) after learning that the Attorney General's Office intended to take a different position with respect to some of the defenses raised in support of the challenged bills. *See* Doc. 348 at 2, 6. Essentially, the Speaker and President intervened to offer a different perspective of the State's interests, which the Supreme Court has found not only permissible, but useful.

"[W]hen a State chooses to allocate authority among different officials who do not answer to one another, different interests and perspectives, all important to the administration of state government, may emerge." *Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2201 (2022). "Permitting the participation of lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk of setting

aside duly enacted state law based on an incomplete understanding of relevant state interests. . . . [A] full consideration of the State's practical interests may require the involvement of different voices with different perspectives." *Id.* at 2202-03.

Applying a blanket waiver of legislative privilege any time that the Speaker or President exercised their authority under A.R.S. § 12-1841(D) would necessarily chill participation by legislative leaders in such lawsuits and thus deprive federal courts of a full understanding or consideration of the State's interests.

In a similar situation involving the Democratic National Committee (DNC), Judge Rayes found that the DNC and other plaintiffs had not impliedly waived their First Amendment privilege by filing a lawsuit challenging Arizona's election regime. *Democratic Nat'l Comm. v. Arizona Sec'y of State's Off.*, No. CV-16-01065-PHX-DLR, 2017 WL 3149914 (D. Ariz. July 25, 2017). Judge Rayes noted that requiring the DNC or other civic organizations "to forfeit their First Amendment associational rights in order to challenge suspect voting practices could have a chilling effect on such litigation and on the vindication of voting rights." *Id.* at *4.

Judge Rayes cautioned that if the plaintiffs had relied on privileged information to support their claims, he may have found an implied waiver. But accepting the plaintiffs' assurance that they had not relied upon any privileged information or provided such information to their experts, the court found there was no implicit waiver. *Id.* at *4-5.[3]

The same holds true here for the other side of the "v." The Speaker and President should be allowed to intervene in their official capacities and exercise their statutory authority to defend the constitutionality of bills without forfeiting their individual legislative privilege. To be clear, the Speaker and the President did not hold those offices at the time the bills at issue were passed. They acted in their capacity as normal legislators.

---

[3] The court noted that an intervenor-defendant, the Arizona Republican Party, continued to assert the First Amendment privilege in response to discovery requests. *Id.* at *5.

But under Plaintiffs' implied waiver theory, the Speaker and President's participation in this case in their official capacities would waive their individual legislative privilege. The Court should avoid such an unjust result.

Furthermore, applying the legislative privilege in this case would further the purposes behind the privilege, including encouraging candid communications between legislators and promoting legislative independence. *See Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018) ("The rationale for the privilege—to allow duly elected legislators to discharge their public duties without concern of adverse consequences outside the ballot box—applies equally to federal, state, and local officials."); *Mi Familia Vota v. Hobbs*, No. CV-21-01423-PHX-DWL, 2023 WL 4595824, at *12 (D. Ariz. July 18, 2023) ("It is self-evident that '[o]pen dialogue between lawmakers and their staff would be chilled if their subjective, preliminary opinions and considerations are potentially subject to public disclosure and critique.'") (quoting *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.,* 269 F. Supp. 3d 124, 170 (S.D.N.Y. 2017)).

**B.     The Speaker and President Have Not Used Privileged Information.**

Furthermore, the Speaker and President have not impliedly waived their legislative privilege by putting privileged information at issue in this case.

The doctrine of implied waiver rests on the "fairness principle" "in terms of preventing a party from using the privilege as both a shield and a sword." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Id.* As a result, an implied waiver should be "closely tailored" to the needs of the opposing party and should be "no broader than needed to ensure the fairness of the proceedings before it." *Id.*

Here, the Speaker and President have not asserted a defense based upon privileged materials or information that Plaintiffs cannot defend without access to that same privileged

4

information. To the contrary, the Speaker and President's defense with respect to legislative intent relies solely upon the publicly available legislative history materials from the Arizona Legislature's website. This position was noted both in the Speaker and the President's answers to the interrogatories, as well as correspondence between counsel for the parties.

Consolidated Plaintiffs' NUI No. 1 asked the Speaker and the President to "[i]dentify and describe the purposes of the Challenged Laws." The Speaker and President objected on the grounds of legislative privilege to the extent that this interrogatory sought "to compel the Speaker and the President to discuss their legislative activity." *See* Responses to NUI's, attached as **Exhibit 2**, at 4. The Speaker and President further noted that they could not "waive the privilege for any other individual legislators." *Id.*; *see Favors v. Cuomo,* 285 F.R.D. 187, 211 (E.D.N.Y. 2012) ("[A] legislator cannot assert or waive the privilege on behalf of another legislator.").

Subject to and without waiving their objections, the Speaker and President then outlined their legal position that they are taking as intervenors in their official capacities in this case (as opposed to some type of binding statement on behalf of the entire Arizona Legislature). Exhibit 2, at 4. Specifically, the Speaker and President explained:

> The Speaker and the President can only respond to this interrogatory on their own behalf and not on behalf of the Arizona Legislature as a whole or on behalf of any other legislator. It is the Speaker and the President's position that the Challenged Laws allow for the government to ensure that persons who have registered to vote are eligible to vote, i.e. that they meet the residence and citizenship requirements to vote under Arizona law. It is the Speaker and the President's position that the Challenged Laws were not intended to discriminate against any individual on the basis of race or national origin.

*Id.* at 4-5. The rest of the response then quoted from the publicly available fact sheets describing the challenged laws. *Id.* In response to the request to identify individuals who may have knowledge regarding the interrogatory, the Response stated that members of the

Arizona legislature could have knowledge regarding the interrogatory, "however, the legislative privilege may bar discovery into this topic and the legislative process." *Id.* at 5.

Thus, while the Speaker and the President have taken a legal position that the bills do not unconstitutionally discriminate on the basis of race or national origin, neither the Speaker nor the President intend to personally offer testimony (either oral or via affidavit) regarding their personal motives for voting on the challenged bills. Indeed, the Speaker and the President have not identified any individual legislators as persons with knowledge that they may use to support their defenses. *See* Intervenor-Defendants' Initial Disclosure Statement, attached as **Exhibit 3**.

Undersigned counsel has affirmed in writing to the Consolidated Plaintiffs that the Speaker and the President will not put on testimony from *any legislators* regarding information protected by the legislative privilege. For any avoidance of doubt, the Speaker and the President make the same avowal to the Court: the Speaker and the President will not rely upon any withheld documents, nor will they present testimony from any state legislator (including themselves) regarding his or her consideration of or passage of the challenged bills.

For this reason, the fact that the Speaker and the President have denied Plaintiffs' allegations of discriminatory intent in their answers to Plaintiffs' complaint, did not put privileged information at issue. Rather, they will rely upon publicly available information to defend Plaintiffs' claims regarding motivation.

Theoretically, the Speaker and President could have gone beyond the public record and offered testimony of their personal knowledge and motives with respect to the challenged bills to defend against Plaintiffs' claims. If the Speaker and President had selectively relied upon privileged information outside of the public record while foreclosing Plaintiffs' ability to take discovery into that information, arguably that would be an

improper use of the privilege as a sword and shield, but that has not happened here. Because there has been no unfair use of privileged information, there is no need to imply a waiver.

### C. *Powell v. Ridge* Is Distinguishable.

For these same reasons, Consolidated Plaintiffs' reliance upon *Powell v. Ridge*, 247 F.3d 520, 525 (3d Cir. 2001) is misplaced.

The legislators who intervened in *Powell* did not intervene pursuant to a state statute similar to A.R.S. § 12-1841(D), but instead intervened in a challenge to the state's formula for allocation of federal education monies to assert "their financial and legal interests in the litigation." 247 F.3d at 522. In other words, the intervenors in *Powell* had no statutory authority to intervene and did so in their personal capacities. Furthermore, the intervenors in *Powell* sought to "testify at trial, but not be cross-examined." *Id.* at 525. The Third Circuit held that this novel position was not sufficiently well-founded in case law to provide jurisdiction for an interlocutory appeal. *Id.*

In contrast, as noted above, the Speaker and the President intervened in their official capacities pursuant to A.R.S. § 12-1841(D) to present their views on the State's interests, when they learned that the Attorney General's office was changing its position on some of the issues in this case. And, unlike the intervenor legislators in *Powell*, the Speaker and the President do not seek to testify at trial or otherwise put on evidence of their individual motives with respect to the challenged bills. Because the Speaker and the President are not testifying on privileged topics yet seeking to avoid cross-examination, *Powell* is not on point.

## III. A 30(b)(6) Deposition Is Not Appropriate and Barred By the Privilege.

Consolidated Plaintiffs' draft deposition notice, which seeks individual testimony from the Speaker and President as well as a 30(b)(6) representative from the House and the Senate to testify on a wide variety of topics, is inappropriate and unworkable.

The proposed topics can be summarized as following:

- The Legislature's concerns, considerations, motives or objectives in passing the bills (Topics 2, 5, 9);
- Evidence presented to or considered by the Legislature regarding the bills' effects, legality of the bills, or non-citizens voting (Topics 3, 4, 5, 8);
- Communications with other legislators or individuals outside the legislature regarding the bills (Topics 6, 7); and
- The process of drafting, amending, and passage of the bills (Topic 1).

All of these topics seek information regarding legislative activities, and thus are covered by the legislative privilege. *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 670 (D. Ariz. 2016). The Supreme Court has warned that even in "extraordinary instances" where legislative history may be "highly relevant," testimony from legislative members concerning legislative intent "frequently will be barred by privilege." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977). Despite not contesting the applicability of the legislative privilege to this case, Consolidated Plaintiffs appear to ignore the fact that putting forth an individual to testify on these topics would effectively force a waiver of every single legislator's individual legislative privilege.

In any event, the Speaker and President are not entities subject to Rule 30(b)(6). Recognizing this, Consolidated Plaintiffs claim that the Senate and the House are the true intervenor-defendants. But even the Consolidated Plaintiffs' Response to the Speaker and President's motion to intervene identified "Representative Ben Toma, Speaker of the Arizona House of Representatives, and Senator Warren Petersen, President of the Arizona Senate" as the "Movants." Doc. 354, p. 2. Regardless, A.R.S. § 12-1841(D) authorizes the Speaker of the House and the Senate President to intervene, not the House and the Senate.

Moreover, the notice of deposition would allow Plaintiffs to exceed the agreed-upon deposition limits. Pursuant to the Court's July 11, 2023 Order, Plaintiffs can take ten non-County Recorder fact depositions, which includes "single-day depositions of the two Legislative Intervenor-Defendants." Yet, the proposed notice combines a 30(b)(1) deposition for the Speaker and President's individual testimony with 30(b)(6) depositions

8

of the House and Senate. *See* Exh. 1. Thus, Plaintiffs' proposal would allow Plaintiffs to take 12 non-County Recorder fact depositions, not 10.

Even beyond these issues, a 30(b)(6) deposition on the topics proposed by the Consolidated Plaintiffs is unworkable in terms of preparing and identifying a single witness who can present binding testimony on behalf of the Fifty-Fifth Legislature, Second Regular Session of the Arizona Legislature, which consists of 90 individual members (some of whom are no longer serving as legislators).

In order to adequately prepare for a 30(b)(6) deposition on these topics, the House and the Senate would have to search emails from every member of the Fifty-Fifth Legislature, Second Regular Session for communications regarding the bills (including with individual constituents) and for any evidence or opinions provided to the individual legislators. The Consolidated Plaintiffs' search terms on just the Speaker and President's emails produced approximately 17,000 hits. Assuming those are averages, together, the Senate and House representatives may need to review 765,000 emails to prepare for the deposition. This step alone is unduly burdensome and disproportional.

Then, after reviewing the documents, the representatives would have to interview all 90 members regarding their privileged written and oral communications and their individual reasons for their vote on the challenged bills. The 30(b)(6) witness must then somehow distill that information down into a single unifying answer that can bind the House and Senate regarding the Legislature's overall intent in passing the bills.

It is questionable whether this could even be done. Unlike a government agency with a single, head elected official who makes final policy decisions on behalf of the agency, the legislature's passage of legislation is by majority rule. And each individual legislator may have a unique reason for his or her vote. For these reasons, the language of the bill itself and the public legislative history are the best methods to determine the collective legislative intent. *Cf. Va. Uranium, Inc. v. Warren*, ___ U.S. ___, 139 S. Ct. 1894, 1907-08 (2019)

9

(plurality opinion) ("Trying to discern what motivates legislators individually and collectively invites speculation and risks overlooking the reality that individual Members of Congress often pursue multiple and competing purposes, many of which are compromised to secure a law's passage and few of which are fully realized in the final product.").

**IV.  Conclusion.**

The Speaker and President respectfully request the Court find that there has been no implied waiver of the legislative privilege and that a 30(b)(6) deposition of the House and Senate on the topics proposed by Consolidated Plaintiffs is barred by the legislative privilege and is unduly burdensome.

RESPECTFULLY SUBMITTED this 2nd day of August, 2023.

GALLAGHER & KENNEDY, P.A.

By: */s/ Hannah H. Porter*
Kevin E. O'Malley
Hannah H. Porter
Ashley E. Fitzgibbons
2575 East Camelback Road
Phoenix, Arizona 85016-9225
*Attorneys for Intervenor-Defendants Toma and Petersen*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2023, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System for filing and for transmittal of a Notice of Electronic Filing.

*/s/D. Ochoa*