Papetti Samuels Weiss McKirgan LLP
Bruce Samuels (State Bar No. 015996)
bsamuels@pswmlaw.com
Jennifer Lee-Cota (State Bar No. 033190)
jleecota@pswmlaw.com
16430 North Scottsdale Road, Suite 290
Scottsdale, AZ 85254
+1 480 800 3530

Wilmer Cutler Pickering Hale and Dorr LLP
Seth P. Waxman (*pro hac vice*)
seth.waxman@wilmerhale.com
Daniel S. Volchok (*pro hac vice*)
daniel.volchok@wilmerhale.com
Christopher E. Babbitt (*pro hac vice*)
christopher.babbitt@wilmerhale.com
2100 Pennsylvania Avenue N.W.
Washington D.C. 20037
+1 202 663 6000 (telephone)
+1 202 663 6363 (facsimile)

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al.<br><br>    Plaintiffs,<br><br>    v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State, et al.,<br><br>    Defendants,<br><br>    and<br><br>Speaker of the House Ben Toma and Senate President Warren Petersen,<br><br>    Intervenor-Defendants. | Case No. 22-00509-PHX-SRB (Lead)<br><br>**CONSOLIDATED NON-U.S. PLAINTIFFS' MOTION TO COMPEL DISCOVERY AS TO INTERVENOR-DEFENDANTS SPEAKER BEN TOMA AND PRESIDENT WARREN PETERSEN**<br><br>No. CV-22-00519-PHX-SRB<br>No. CV-22-01003-PHX-SRB<br>No. CV-22-01124-PHX-SRB<br>No. CV-22-01369-PHX-SRB<br>No. CV-22-01381-PHX-SRB<br>No. CV-22-01602-PHX-SRB<br>No. CV-22-01901-PHX-SRB |

| | |
|---|---|
| 1 | Living United for Change in Arizona, et al., |
| 2 | Plaintiffs, |
| 3 | v. |
| 4 | Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., |
| 5 | Defendant, |
| 6 | and |
| 7 | State of Arizona, et al., |
| 8 | Intervenor-Defendants, and |
| 9 | Speaker of the House Ben Toma and Senate President Warren Petersen, |
| 10 | |
| 11 | Intervenor-Defendants. |
| 12 | Poder Latinx, et al., |
| 13 | Plaintiff, v. |
| 14 | Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., |
| 15 | |
| 16 | Defendants, and |
| 17 | Speaker of the House Ben Toma and Senate President Warren Petersen, |
| 18 | |
| 19 | Intervenor-Defendants. |
| 20 | United States of America, |
| 21 | Plaintiff, |
| 22 | v. |
| 23 | State of Arizona, et al., |
| 24 | Defendants, and |
| 25 | Speaker of the House Ben Toma and Senate President Warren Petersen, |
| 26 | |
| 27 | Intervenor-Defendants. |
| 28 | |

| | |
|---|---|
| 1 | Democratic National Committee, et al., |
| 2 |     Plaintiffs, |
| 3 |   v. |
| 4 | Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., |
| 5 |     Defendants, |
| 6 |   and |
| 7 | Republican National Committee, |
|  |     Intervenor-Defendant, |
| 8 |   and |
| 9 | Speaker of the House Ben Toma and Senate President Warren Petersen, |
| 10 | |
| 11 |     Intervenor-Defendants. |
| 12 | Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition, |
| 13 |     Plaintiff, |
| 14 |   v. |
| 15 | Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., |
| 16 |     Defendants, |
| 17 |   and |
| 18 | Speaker of the House Ben Toma and Senate President Warren Petersen, |
| 19 |     Intervenor-Defendants. |
| 20 | Promise Arizona, et al., |
| 21 |     Plaintiffs, |
| 22 |   v. |
| 23 | Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., |
| 24 |     Defendants, |
| 25 |   and |
| 26 | Speaker of the House Ben Toma and Senate President Warren Petersen, |
| 27 |     Intervenor-Defendants. |
| 28 | |

1    None of the plaintiffs in any of these eight consolidated cases named Arizona House Speaker Ben Toma, Arizona Senate President Warren Petersen, or any other member of the legislature as a defendant. Rather, Speaker Toma and President Petersen voluntarily inserted themselves into the case. They did so, moreover, not as amici seeking to argue discrete legal issues. Instead, they chose to become full parties in the case, by intervening. They did so without limiting the scope of their intervention, and making clear they were intervening "in their official capacities, *and on behalf of their respective legislative chambers*." ECF 348 at 4 (emphasis added). Asserting that "[t]he Speaker and President, on behalf of their chambers, *represent a unique perspective* that is important to a full understanding of the State's interests," *id.* at 10-11 (emphasis added), they said their purpose in intervening was "to *fully defend* the laws passed by the legislature." *Id.* at 11 (emphasis added).

Consistent with this clearly expressed intent to participate in the case as full-fledged defendants, Speaker Toma and President Petersen filed answers (*see* ECF 348-1)—in which they denied that the challenged laws impose any undue burden on the right to vote, have any discriminatory impact or intent, or otherwise violate federal law. Further confirming their intent to address core factual disputes in the case, the legislators' interrogatory responses assert that "[i]t is the Speaker and the President's position that the Challenged Laws were *not intended* to discriminate against any individual on the basis of race or national origin." Ex. A at 5, Intervenor-Defs. Speaker of the H. Ben Toma and Sen. Pres. Warren Petersen's Answers to Consol. Pls. First Set of Interrogs. (emphasis added).[1]

At the same time, however, the legislators have refused to allow plaintiffs to take discovery into these central factual disputes, i.e., the challenged laws' intent and effect. In particular, the legislators have broadly invoked legislative privilege to withhold (1) responsive communications with third-party interest groups involved in crafting the challenged laws, (2) emails from their business or campaign accounts, and (3) communications among legislators and their staff. They also have made clear they would

---

[1] Exhibit references are to those attached to the Declaration of Christopher E. Babbitt.

invoke privilege to refuse to answer deposition questions regarding the enactment of the challenged laws, and they have objected to designating anyone to testify on behalf of their respective chambers under Federal Rule of Civil Procedure 30(b)(6).

The legislators cannot have it both ways. They cannot intervene as parties to "fully defend the laws," ECF 348 at 11, while resisting discovery into the very grounds on which they seek to do so. Nor may they wield the legislature's "unique perspective" as a sword, *id.*, while raising privilege and other objections as a shield to refuse to designate someone to testify on that institutional perspective under oath. Plaintiffs therefore ask the Court to (1) hold that the legislative privilege has been waived or is otherwise overcome, and (2) order the legislators to produce documents improperly withheld and to designate one or more witnesses to testify at 30(b)(6) depositions on behalf of their respective chambers.[2]

## BACKGROUND

Plaintiffs here challenge two Arizona laws, H.B. 2243 and H.B. 2492, under various federal statutes and constitutional provisions. The cases were filed against Arizona and its attorney general and secretary of state shortly after the laws were enacted. But after eight months of litigation, Speaker Toma and President Petersen moved to intervene as defendants. ECF 348. As noted, they did so "on behalf of their respective legislative chambers" to provide "a unique perspective" in the case. *Id.* at 4, 11. They invoked House and Senate rules granting them litigation authority as the presiding officers of their respective chambers, as well as their statutory authority under A.R.S. §12-1841.D. *See* ECF 348 at 4.

After the Court granted intervention, ECF 363, plaintiffs propounded four interrogatories and four requests for production of documents on the legislators, ECF 371. After the legislators objected, ECF 412, counsel for the parties negotiated acceptable parameters for the document requests and repeatedly conferred to narrow their disagreements. The legislators have now responded to the interrogatories and produced

---

[2] This brief is filed for the consolidated plaintiffs other than the United States, which has not sought discovery from the legislators.

- 2 -

documents from the public domain and mass standard-form communications with constituents. But they have withheld on privilege grounds three categories of documents: (1) 48 communications with third-party interest groups involved in the passage of the challenged laws—the Free Enterprise Club, the Conservative Political Action Committee, and Heritage Action; (2) 134 communications among legislators and legislative staff; and (3) 10,497 calendar entries. *See* Ex. B, Legislative Privilege Log.[3]

As for depositions, the legislators' counsel indicated that the legislators would assert legislative privilege to avoid answering Rule 30(b)(1) deposition questions regarding the legislative process underlying the challenged laws. In addition, they object to any 30(b)(6) deposition at all, as they "do not agree with [the] premise that the Speaker and the President intervened on behalf of their respective chambers." Ex. C, Letter from Babbitt to Porter; Ex. E, Email Exchange. They further question whether it would be practical for them to designate someone to speak on the legislature's behalf on topics identified in the discussion draft of the Rule 30(b)(6) deposition notice. Ex. F, Draft 30(b)(6) Notice. Both issues, i.e., the availability of the privilege and the nature of the depositions, remain unresolved.[4]

## LEGAL STANDARD

"The party asserting an evidentiary privilege has the burden to demonstrate that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424, 1426 (9th Cir. 1988). The legislative privilege is "qualified," not absolute, "and must therefore depend on a balancing of the legitimate interests on both sides." *In re Grand Jury*,

---

[3] The privilege log indicates that mass communications with constituents are being withheld; the parties have since agreed that the legislators would produce those stock email exchanges provided that plaintiffs do not assert that the production amounts to a privilege waiver. The legislators have also withheld communications with legislative counsel as protected by the attorney-client privilege; plaintiffs do not challenge that privilege claim.

[4] The parties have agreed to single-day depositions of the legislative intervenors, subject to resolution of their disagreement over whether they should proceed only under Rule 30(b)(1) or also under Rule 30(b)(6). Plaintiffs thus do not seek *additional* depositions (or days), only resolution of how the agreed-upon depositions should proceed.

821 F.2d 946, 957 (3d Cir. 1987). Thus, as Judge Lanza recently explained: "To determine whether the legislative privilege precludes disclosure, a court must balance the interests of the party seeking the evidence against the interests of the individual claiming the privilege. When doing so, courts often consider the following factors: (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of government in the litigation; and (v) the purposes of the privilege." *Mi Familia Vota v. Hobbs*, ___ F.Supp.3d ___, 2023 WL 4595824, at *8 (D. Ariz. July 18, 2023) (citing *Puente Arizona v. Arpaio*, 314 F.R.D. 664, 672 (D. Ariz. May 5, 2016)) (citation and footnote omitted).

## ARGUMENT

### I. THE LEGISLATIVE PRIVILEGE DOES NOT SHIELD THE LEGISLATORS FROM DISCOVERY WHERE THEY HAVE INTERVENED AS PARTIES

The legislators voluntarily injected themselves into this litigation, and did so not just as amici but as full parties. Under A.R.S. §12-1841.D (the statute the legislators cite as the basis for their intervention), they had three choices: "[T]he speaker of the house of representatives or the president of the senate, in the party's discretion, may [1] intervene as a party, [2] may file briefs in the matter or [3] may choose not to participate in a proceeding." The legislators chose option 1. In their words, they did so to "fully defend the laws passed by the legislature" and to "represent a unique perspective that is important to a full understanding of the State's interests." ECF 348 at 11. Having elected to wield the sword of their unique legislative perspective in defense of the laws, they may not avoid discovery into the very grounds on which they seek to defeat plaintiffs' case.

That conclusion is compelled not only by basic notions of fairness, but also by either of two lines of case law. First, courts have held that intervention alone waives the legislative privilege that the legislators here invoke. Alternatively, under the five-factor balancing test that Judge Lanza recently employed in a case involving *non-party* discovery from the legislature, the legislators' intervention tips the balance heavily in favor of disclosure.

- 4 -

### A. The Legislators' Intervention Waived The Privilege

The leading case on waiver in this setting is *Powell v. Ridge*, 247 F.3d 520 (3d Cir. 2001). There, organizations sued Pennsylvania's governor and various state officials alleging that the state's system of funding public education had a racially discriminatory effect, in violation of federal law. Leaders of the Pennsylvania legislature moved to intervene, making the same argument made here—i.e., they intervened so they could "articulate to the Court the unique perspective of the legislative branch of the Pennsylvania government." *Id.* at 522. Once in the case, however, the legislators objected to plaintiffs' discovery on privilege grounds and sought to appeal the district court's order compelling production of documents. The Third Circuit dismissed for lack of appellate jurisdiction, leaving the district court's order in place. The court reasoned that there was no basis in law for the legislators' assertion of privilege where they had intervened as parties:

> Unlike the reluctant participants in the cases upon which they rely, the Legislative Leaders voluntarily installed themselves as defendants. And, unlike the reluctant participants in those cases, the Leaders wish to remain as defendants and participate as long as the case is around…This is simply not a case of legislators caught up in litigation in which they do not wish to be involved. Rather, these are self-made defendants who seek to turn what has … been the shield of legislative immunity into a sword.

247 F.3d at 525.

A three-judge district court reached the same conclusion in *Singleton v. Merrill*, 576 F.Supp.3d 931 (N.D. Ala. 2021), which involved challenges to Alabama's congressional-redistricting plan. State legislators who intervened again made the very arguments made here—i.e., that they were "uniquely positioned" to defend the plan by virtue of their role on the Alabama legislature's reapportionment committee. *Id.* at 934. And just like Speaker Toma and President Petersen, they filed answers denying any discriminatory intent by the legislature. *See id.* at 937. When they moved for a protective order to prevent their depositions and written discovery, the district court denied the motion, allowing the discovery because the legislators had waived the privilege through their litigation conduct:

- 5 -

> The Legislators here have the same sword/shield problem [as in *Powell*]. The Legislators seek to use their unique position as [the plan]'s principal drafters as a sword to defend the law on its merits, but intermittently seek to retreat behind the shield of legislative privilege when it suits them.

*Id.* at 940.

During the meet-and-confer process here, the legislators' counsel tried to distinguish this line of authority on the ground that Speaker Toma and President Petersen "do not intend to put forward any affidavits or live testimony of any legislator … relating to the passage of the bills," Ex. D at 2, Letter from Porter to Babbitt. But they have carefully reserved the right to do so, *see id.* at 2 n.1 ("I noted on the call that there is a small chance that this could change…"). In any event, the legislators have: filed answers denying all of plaintiffs' relevant allegations, *see* ECF 348-1; asserted in interrogatory responses that "the Challenged Laws were *not intended* to discriminate against any individual on the basis of race or national origin," Ex. A at 5 (emphasis added); joined in the summary judgment motions filed by the other defendants, *see* ECF 369; and will presumably join any pre-trial, trial, post-trial, and appellate briefing that suits their interest in defeating plaintiffs' claims.

The cases the legislators have cited (in their objections and during the meet-and-confer process) are inapposite, as *none* involved discovery disputes following voluntary intervention by legislators. Some involved subpoenas to legislators who were not involved in a case at all. *See Puente Arizona*, 314 F.R.D. at 668, 671; *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 526 (9th Cir. 1983); *Jackson Mun. Airport Auth. v. Harkins*, 67 F.4th 678, 682 (5th Cir. 2023); *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 232 (5th Cir. 2023); *In re N.D. Legis. Assemb.*, 70 F.4th 460, 463 (8th Cir. 2023); *League of Women Voters of Fla., Inc. v. Lee*, 340 F.R.D. 446-452 (N.D. Fla. 2021). Others did not involve discovery. *See S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1253-1254 (4th Cir. 1989); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 254-255 (1977).

Accordingly, consistent with the holdings and reasoning of *Powell* and *Singleton*, the Court should hold that the legislators waived the legislative privilege by intervening in this litigation to participate as parties in full defense of the challenged laws.

### B. If Not Waived, The Privilege Is Overcome Here

Even if there is no waiver, the qualified legislative privilege has been overcome here. As noted, courts evaluate whether the privilege has been overcome by considering the following factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the seriousness of the litigation and the issues involved; (iv) the role of government in the litigation; and (v) the purposes of the privilege." *Mi Familia Vota*, 2023 WL 4595824, at *8. All five factors favor disclosure here.

***Relevance.*** As this Court has recognized in prior constitutional challenges to Arizona legislation, materials related to the legislative process are highly relevant to establishing whether the legislature acted with a discriminatory intent or purpose. *See Sol v. Whiting*, 2013 WL 12098752, at *3 (D. Ariz. Dec. 11, 2013) (Bolton, J.). Ordering the production of such documents, the Court reasoned that communications between legislators and their third-party advisors "are likely to contain admissible evidence or lead to the discovery of admissible evidence of those legislators' intent in drafting and supporting [the legislation] as 'contemporary statements by members of the decisionmaking body.'" *Id.* (quoting *Vill. of Arlington Heights*, 429 U.S. at 268). Judge Lanza also found the first factor favored disclosure, reasoning that "[w]hat motivated the Arizona legislature to enact [the challenged law] is at the heart of this litigation." *Mi Familia Vota*, 2023 WL 4595824, at *10. Indeed, the relevance is so clear that the legislators are not even asserting relevance as a basis for resisting production. *See* Ex. C at 2 (confirming that legislators are "not withholding" documents on grounds of relevance or other non-privilege objections).

***Other evidence.*** As noted, the legislators repeatedly touted their "unique" interests and perspective as a basis for intervention. ECF 348 at 2, 11, 13. By definition, "unique" information cannot be obtained elsewhere, which by itself should end the inquiry. While

- 7 -

1  Judge Lanza found that the second factor favored the *non-party* legislators—reasoning that
2  "direct evidence of discriminatory intent is not required for Plaintiffs to prevail on their
3  claims," *Mi Familia Vota*, 2023 WL 4595824, at *11—he was evidently concerned about
4  opening the floodgates to non-party discovery of state legislators, observing that it was
5  unclear "how the facts of [that] case distinguish it from every other case involving alleged
6  discriminatory intent," *id*.  That concern is not present here, as legislators generally do not
7  inject themselves as parties into litigation against other state officials.

8      ***Seriousness of the litigation.***  There can be no dispute over the seriousness of the
9  issues in this litigation.  As Judge Lanza noted, "[t]he federal interest in protecting voting
10 rights is a serious one," and "the right to be free from discrimination on the basis of race is a
11 vital constitutional right," *Mi Familia Vota*, 2023 WL 4595824, at *10.  Indeed, the
12 legislators in that case rightly conceded that the third factor favors disclosure.  *See* ECF 369.

13     ***Role of government.***  Judge Lanza found the fourth factor to be neutral, observing
14 that courts have differed in its application.  Some courts, he explained, have concluded the
15 factor is simply "inapt in the legislative privilege context," *Mi Familia Vota*, 2023 WL
16 4595824, at *12 (citing *League of Women Voters of Fla.*, 340 F.R.D. at 457).  Others have
17 found that it favors disclosure where the plaintiffs' allegations "rais[e] serious charges about
18 the fairness and impartiality of some of the central institutions of our state government" or
19 where "legislative immunity is not under threat," *Mi Familia Vota*, 2023 WL 4595824, at
20 *12, considerations that likewise favor disclosure here.  Still other courts have found the
21 factor to weigh against disclosure where state officials sought to protect the legislative
22 process from "unwarranted intrusion" or to "uphold the validity of the challenged
23 legislation." *Id.* (citing *Puente Arizona*, 314 F.R.D. at 672).  Here, unlike *Puente Arizona*
24 (which involved a non-party subpoena), there is no "unwarranted intrusion," as the
25 legislators voluntarily intervened as full-party defendants.  And this is not a routine case, in
26 which state officials seek to "uphold the validity of … challenged legislation" as a matter of
27 law:  the legislators intervened to defend the laws on the facts, asserting that the challenged
28

- 8 -

1  laws "were not intended to discriminate against any individual on the basis of race or
2  national origin." Ex. A at 5.  Accordingly, the fourth factor likewise favors disclosure.

***Purpose of the privilege.***  Plaintiffs recognize that legislative privilege serves important purposes, including the interest in "protect[ing] confidential communications between lawmakers and their staff," *Mi Familia Vota*, 2023 WL 4595824, at *12, and encouraging "the fullest liberty of speech" in legislative debate, *Lee v. City of L.A.*, 908 F.3d 1175, 1186 (9th Cir. 2018).  But the legislators' interest in protecting the confidentiality of their communications or the substance of their debates should yield where they have put such matters directly at issue through their intervention and affirmative participation in the defense of this case.  Thus, the fifth factor also weighs in favor of disclosure.

In short, while the case before Judge Lanza—involving *non-party* discovery from legislators—presented a "close call" under the five-factor test, *Mi Familia Vota*, 2023 WL 4595824, at *13, this one does not.  The legislators' intervention distinguishes this case from *Mi Familia Vota* with respect to the two factors that favored non-disclosure there. Accordingly, if the Court does not deem the privilege waived, it should rule that the privilege has been overcome, and order the legislators to produce the withheld material and answer questions at their depositions, whether they are deposed under 30(b)(1) or 30(b)(6).[5]

## II. DEPOSITIONS UNDER RULE 30(b)(6) ARE APPROPRIATE WHERE LEGISLATORS HAVE INTERVENED "ON BEHALF OF THEIR RESPECTIVE CHAMBERS"

Speaker Toma and President Petersen intervened "on behalf of their respective legislative chambers, which together comprise the Fifty-Sixth Legislature of Arizona." ECF 348 at 4.  Yet they now object to producing any deponents to testify on behalf of *either* their respective chambers *or* the legislature as a whole.  That is untenable.  By invoking the institutional weight of the legislature in support of their positions, they have necessitated

---

[5] If the Court does not rule that the privilege has been waived or overcome categorically, it should conduct an *in camera* review of the withheld documents, as was done in *Mi Familia Vota*, and order a production of those that bear most directly on plaintiffs' claims.

- 9 -

deposition testimony with respect to the legislature as an entity.

Such discovery is subject to Rule 30(b)(6), which permits the deposition of a "governmental agency, or other entity" on specific topics provided by the deposing party, and obligates the deponent organization to designate one or more persons to testify on its behalf. Fed. R. Civ. P. 30(b)(6). The rule was intended to provide "added facility for discovery" and curb "bandying," or individual witnesses disclaiming knowledge of facts known by the organization. *Id*. (advisory notes accompanying 1970 amendment). That is precisely what Speaker Toma and President Petersen have positioned themselves to do—limiting their discovery responses to their personal knowledge, disclaiming any response on behalf of the legislature, and leaving open the possibility that other "members of the Fifty-Fifth Legislature … may have [relevant] knowledge." Ex. A at 5-6; *see also id.* at 6-7 (limiting interrogatory responses by asserting that they seek information "outside the scope of the Speaker and President's knowledge"). The Court should not permit such gamesmanship and should order the legislators to designate one or more 30(b)(6) witnesses for deposition on behalf of their respective chambers.[6]

Alternatively, the Court should bar the legislators from offering evidence and arguments on behalf of the Arizona Legislature regarding the challenged laws. Such an order—which would allow the legislators to participate in this case as individuals, but not on behalf of the legislature as a whole—would minimize the unfairness to plaintiffs.

## CONCLUSION

The Court should hold that the legislative intervenor-defendants waived the legislative privilege by intervening in this litigation, or that the privilege has been overcome, and that they (or their designees) must provide Rule 30(b)(6) testimony on the designated topics.

---

[6] During the meet-and-confer process, counsel for the legislators also objected that it would be difficult for them to prepare a 30(b)(6) designee because relevant information is not centralized within the legislature. But that is of no moment, as such difficulties are inherent in *any* organizational deposition, where information must be gathered from multiple sources. *See Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.*, 251 F.R.D. 534, 539-540 (D. Nev. 2008) (citing *United States v. Taylor*, 166 F.R.D. 356, 360-361 (M.D.N.C. 1996)).

Dated this 2nd day of August, 2023.

                Respectfully submitted,
                PAPETTI SAMUELS WEISS MCKIRGAN LLP

                /s/Bruce Samuels
                Bruce Samuels

                WILMER CUTLER PICKERING
                   HALE AND DORR LLP
                Seth P. Waxman (*pro hac vice*)
                Daniel S. Volchok (*pro hac vice*)
                Christopher E. Babbitt (*pro hac vice*)

**CERTIFICATION**

I have personally conferred with counsel for the legislative intervenor-defendants, and together we engaged in a sincere and good-faith—but unsuccessful—effort to resolve the dispute that underlies the foregoing motion.

Dated this 2nd day of August, 2023        /s/Christopher E. Babbitt
                                          Christopher E. Babbitt

**CERTIFICATE OF SERVICE**

On the 2nd day of August, 2023, I caused the foregoing to be filed and served electronically via the Court's CM/ECF system upon counsel of record.

/s/Bruce Samuels
Bruce Samuels