# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al., | No. CV-22-00509-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Adrian Fontes, et al., | |
| Defendants. | |

In April 2023, the Speaker of the Arizona House of Representatives Ben Toma and President of the Arizona Senate Warren Petersen (collectively, the "Legislators") moved and were granted leave to intervene as defendants in this case. (Doc. 348, Mot. to Intervene; Doc. 363, 04/26/2023 Order.) The Legislators then invoked legislative privilege in response to Plaintiffs' discovery requests. (*See, e.g.*, Doc. 500-1, Ex. D.) Non-US Plaintiffs sought to compel discovery. (Doc. 502, Hr'g. Tr. at 87:7–88:9.) The Court ordered the parties to submit simultaneous briefs on the issue of whether the legislative privilege applies, which the parties filed on August 2, 2023. (Doc. 499, Defs.' Br.; Doc. 500, Pls.' Br.; Hr'g. Tr. at 87:7–88:20.)

## I. PROCEDURAL HISTORY

The history of this litigation is set out in the Court's previous Orders. (*E.g.*, Doc. 304, 02/15/2023 Order.) Plaintiffs claim that two recently enacted laws, H.B. 2243 and H.B. 2492 (the "Voting Laws"), are unlawful because they violate multiple federal laws and provisions of the Constitution. (*E.g.*, Doc. 67, LUCHA Compl. ¶¶ 329–35; Doc. 1,

22-cv-1381, AAANHPI Compl. ¶¶ 143–50.) No Plaintiff named the Legislators as defendants. (Pls.' Br. at 1.) However, under Arizona law, both the Speaker and President are "entitled to be heard" "[i]n any proceeding in which a state statute . . . is alleged to be unconstitutional." A.R.S. § 12-1841(A). The Speaker and the President may in their discretion either (1) intervene as a party, (2) file briefs in the lawsuit, or (3) choose not to participate in the lawsuit. *Id.* § 12-1841(D). The Legislators moved to intervene "in their official capacities, and on behalf of their respective legislative chambers." (Mot. to Intervene at 4.) Plaintiffs assert that the Legislators have since invoked the legislative privilege to "refuse to answer deposition questions regarding the enactment of the [Voting Laws], and . . . have objected to designating anyone to testify on behalf of their respective chambers under [Rule] 30(b)(6)" despite intervening to defend the Voting Laws on the merits. (Pls.' Br. at 1–3.)

## II. LEGAL STANDARD & ANALYSIS

Legislative immunity grants state legislators "protection from criminal, civil, or evidentiary process that interferes with their 'legitimate legislative activity.'" *Puente Ariz. v. Arpaio*, 314 F.R.D. 664, 669 (D. Ariz. 2016) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)); *Sup. Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980) (explaining that the legislative immunity of state legislators is "similar in origin and rationale" to that of Congresspeople). The legislative privilege, a corollary to legislative immunity, is a qualified privilege that shields legislators from compulsory evidentiary process. *Mi Familia Vota v. Hobbs*, -- F. Supp. 3d --, 2023 WL 4595824, at *4 (D. Ariz. July 18, 2023); *see United States v. Gillock*, 445 U.S. 360, 370–73 (1980) (limiting the scope of the legislative privilege for state legislators "where important federal interests are at stake, as in the enforcement of federal criminal statutes"). The legislative privilege is personal to each legislator. *Puente Ariz.*, 314 F.R.D. at 671.

### A. The Legislators Waived the Legislative Privilege

Plaintiffs argue that the Legislators have waived their legislative privilege by voluntarily intervening in this lawsuit and putting their intent at issue. (Pls.' Br. at 5–7.)

Plaintiffs direct the Court to *Powell v. Ridge*, in which plaintiffs sued the Pennsylvania governor and state officials claiming that the public education funding system was racially discriminatory. 247 F.3d 520, 522 (3d Cir. 2001). Leaders of the state legislature intervened in the lawsuit, "citing their financial and legal interests in the litigation and the need to 'articulate to the Court the unique perspective of the legislative branch of the Pennsylvania government.'" *Id.* at 522–23. The legislators "explicitly concurred" in the other defendants' motion to dismiss but asserted the legislative privilege after the plaintiffs sought discovery. *Id.* at 523. The district court compelled discovery, after which the legislators appealed. *Id.* In dismissing the legislators' interlocutory appeal for lack of jurisdiction, the Third Circuit explained that the legislators "stray[ed] far beyond the bounds of traditional legislative immunity" by fashioning a "privilege which would allow them to continue to actively participate in [the] litigation by submitting briefs, motions, and discovery requests of their own, yet allow them to refuse to comply with, and most likely, appeal from every adverse order." *Id.* at 525.

The Legislators argue that *Powell* is distinguishable because the intervening defendants "had no statutory authority to intervene," whereas the Legislators "intervened in their official capacities pursuant to A.R.S. § 12-1841(D) to present their views on the State's interests." (Defs.' Br. at 7.) This argument would allow the Arizona Legislature to exercise its self-created right to intervene yet shield its leaders from ever waiving the legislative privilege. Like the defendants in *Powell*, the Legislators "are not seeking immunity from this suit," but instead seek to "actively participate in this litigation" yet avoid the burden of discovery regarding their legislative activities. *Powell*, 247 F.3d at 525. Plaintiffs did not seek discovery from the Legislators until the Legislators sought to "fully defend the laws passed by the legislature." (Mot. to Intervene at 4, 11.) The Legislators also specifically put their own motives for passing the Voting Laws at issue when denying Plaintiffs' allegations that the Arizona Legislature enacted the Voting Laws with discriminatory intent. (Pls.' Br. at 6; *see, e.g.*, Doc. 348-1, Ex. A, Ans. to AAANHPI Compl. at 16–18 ¶¶ 131, 147–50, (denying allegations that the Voting Laws are

intentionally discriminatory); Doc. 348-1, Ex. A, Ans. to LUCHA Compl. at 98 ¶¶ 337–38 (same).)

The Legislators contend that they have not waived the privilege because their defense relies "solely upon the publicly available legislative history materials" instead of any privileged information or the testimony of any legislator "regarding his or her consideration of or passage of" the Voting Laws. (Defs.' Br. at 4–6.) The Legislators cite *Democratic National Committee v. Arizona Secretary of State's Office*, which considered whether political party and civic organization plaintiffs waived their First Amendment privilege by challenging state election laws. No. CV-16-01065-PHX-DLR, 2017 WL 3149914, at *4 (D. Ariz. July 25, 2017). In finding that the plaintiffs had not waived the privilege, the court noted that the plaintiffs used only publicly available information to support their claims and that "[t]he privileged information that the State Defendants [sought] evidently include[d] a substantial amount of proprietary predictive modeling and strategic communications, none of which *go to the heart of the case* or to the State Defendants' defense." *Id.* at *4–5 (emphasis added).

The Court is not persuaded by the Legislators' argument. Though the Legislators "avow[] to the Court" that they will not rely on privileged information in support of their defense, the information sought in discovery does in fact "go to the heart" of Plaintiffs claims and the constitutionality of the Voting Laws. *Id.* at 5; (Defs.' Br. at 6; *see* Plfs.' Br. at 6.) "Motive is often most easily discovered by examining the unguarded acts and statements of those who would otherwise attempt to conceal evidence of discriminatory intent." *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1071 (D. Ariz. 2014) (quoting *Cano v. Davis*, 193 F. Supp. 2d 1177, 1181–82 (C.D. Cal. 2002) (Reinhardt, J., concurring in part and dissenting in part)). And contrary to the Legislators' argument, the Court is not "[a]pplying a blanket waiver of legislative privilege" whenever Arizona's legislative leaders intervene under § 12-1841(D), but instead finds that the Speaker and President each waived their privilege by intervening to "fully defend" the Voting Laws and putting their motives at issue. (*See* Defs.' Br. at 3.)

The Legislators assert that finding waiver would undermine the purpose of allowing for legislative participation in federal lawsuits, specifically, that "[p]ermitting the participation of lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk of setting aside duly enacted state law based on an incomplete understanding of relevant state interests." (*Id.* at 2–3 (quoting *Berger v. N.C. State Conf. of the NAACP*, 142 S. Ct. 2191, 2202 (2022)). However, the *Berger* Court analyzed only whether legislative leaders possessed a legitimate interest to intervene in the lawsuit under Rule 24; the legislative privilege was not at issue. 142 S. Ct. at 2201–03 ("[F]ederal courts should rarely question that a State's interests will be practically impaired or impeded if its duly authorized representatives are excluded from participating in federal litigation challenging state law."). But the legislative privilege's animating purpose is "to allow duly elected legislators to discharge their public duties without concern of adverse consequences outside the ballot box," and "minimize[e] the distraction of diverting their time, energy, and attention from their legislative tasks to defend the litigation." *Lee v. City of Los Angeles*, 908 F.3d 1175, 1187 (9th Cir. 2018) (citation and internal quotation marks omitted) (cleaned up); *Kay v. City of Rancho Palos Verdes*, No. CV 02–03922 MMM RZ, 2003 WL 25294710, at *11 (C.D. Cal. Oct. 10, 2003) (indicating that the "underlying policy goal" of the privilege is to "protect[] legislators from interference with their legislative duties" (citation omitted)). "[T]he only reasonable inference from the Legislators' litigation conduct is that they have decided to forego that 'protection' in pursuit of an opportunity to defend in court their decisions as legislators . . . ." *Singleton v. Merrill*, 576 F. Supp. 3d 931, 941 (N.D. Ala. 2021) (cleaned up) (observing that the intervening legislator defendants "put in issue the very facts that they now assert their immunity covers").

The Court finds that the Legislators have waived their legislative privilege.[1] The Legislators must produce communications sent or received by either the Speaker or the

---

[1] Because the Court finds that the Speaker and President have waived the legislative privilege, it need not consider Plaintiffs' argument that the balance of factors favor overcoming the privilege. (*See* Pls.' Br. at 7–9.)

- 5 -

President which have been withheld on legislative privilege grounds. Plaintiffs may also depose the Legislators about their personal perspectives of the Voting Laws' legislative process. (*See* Pls.' Br. at 2–3.) However, "[t]he legislative privilege 'is a personal one,'" and the Speaker or President could not waive the privilege for their fellow legislators. *Puente Ariz.*, 314 F.R.D. at 671 (quoting *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 298 (D. Md. 1992)). To the extent Plaintiffs seek information held by other members of the Arizona Legislature, it remains protected by the legislative privilege.

### B.  Plaintiffs May Not Depose the Arizona Legislature as an Entity

Federal Rule of Civil Procedure 30(b)(6) permits a party to depose a "public or private corporation, a partnership, an association, a governmental agency, or other entity," which then "must designate one or more officers, directors, or managing agents . . . to testify on its behalf." Plaintiffs seek to depose the Arizona House of Representatives and the Arizona Senate and assert that the Speaker and the President "have necessitated deposition testimony with respect to the legislature as an entity" by intervening "on behalf of their respective legislative chambers." (Pls.' Br. at 9–10.) Specifically, Plaintiffs seek to depose the Arizona Legislature about (1) the Legislature's "drafting, introduction, amendment, passage, and enactment" of the Voting Laws, (2) the Legislature's objectives, motives, and information considered when drafting and passing the Voting Laws, and (3) individual legislators' communications with other legislators or third parties. (*See* Doc. 499-1, Ex. 1, at 5–7.) The Legislators counter that Plaintiffs seek information protected by the legislative privilege and that a 30(b)(6) deposition is "unworkable in terms of preparing and identifying a single witness who can present binding testimony on behalf of the" Arizona Legislature. (Defs.' Br. at 8.)

The Court agrees with the Legislators that a 30(b)(6) deposition of the Arizona Legislature "would effectively force a waiver of every single legislator's individual legislative privilege. (Defs.' Br. at 8.) In *Alliance for Global Justice v. District of Columbia*, plaintiffs sought to compel the District of Columbia to produce a Rule 30(b)(6)

deponent to testify about the District Council's "collective knowledge" of its investigation into the District's "policing of mass demonstrations." 437 F. Supp. 2d 32, 34–35 (D.D.C. 2006). The District asserted that the Council's investigative activities were protected by the District's speech and debate statute.[2] *Id.* at 36. In declining to compel the District to produce a Rule 30(b)(6) deponent, the court explained:

> [T]he [District's] speech and debate statute shields from discovery the Council's knowledge and views of the report and of District policies. Plaintiffs are seeking testimony relating to a Council investigation, which was conducted as part of the Council's deliberative and legislative process. They also appear to be seeking testimony about the Council's understanding and interpretation of its own statutes. Both areas of testimony clearly fall within the "legislative sphere" and are shielded by the District's speech and debate statute. Therefore, to the extent that plaintiffs are arguing that the "collective knowledge" of the District includes the knowledge of and views of the Council, plaintiffs are not entitled to such testimony. *The fact that plaintiffs seek to obtain the Council's knowledge and views via a Rule 30(b)(6) deponent and disclaim any intention of directly questioning any Council member or staff is irrelevant.* By its very nature, a Rule 30(b)(6) deposition notice requires the responding party to prepare a designated representative [to testify] . . . on matters reasonably known by the responding entity. *That preparation would require the very type of intrusion into the Council's legislative activities that the speech and debate statute was intended to prevent.*

*Id.* at 37 (emphasis added).

Here, Plaintiffs similarly seek to compel the Arizona Legislature to designate (a) deponent(s) who "can testify as to the collective knowledge" of the Legislature.[3] (*See* Pls.'

---

[2] Though the court in *Alliance for Global Justice* considered the Council's evidentiary privilege in the context of the District's speech and debate statute, this does not change this Court's analysis. Legislative immunity for state legislators derives from the "interpretation of federal law" and does "not depend on the presence of a speech or debate clause in the constitution of any State." *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 404 (1979) (citing *Tenney*, 341 U.S. at 377); *Consumers Union of U.S., Inc.*, 446 U.S. at 732 (1980). And the logic underscoring legislative immunity "supports extending the corollary legislative privilege" to state legislators as well. *Lee*, 908 F.3d at 1187; *see Mi Familia Vota*, 2023 WL 4595824, at *7 (explaining that "both the legislative privilege and legislative immunity 'involve the core question whether a lawmaker may be made to answer—either in terms of questions or in terms of defending from prosecution'" (quoting *La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 237 (5th Cir. 2023))).

[3] The parties dispute whether the appropriate defendants are the Speaker and the President or the Arizona House of Representatives and the Arizona Senate. (Doc. 500-1, Ex. C, at 45–46; Doc. 500-1, Ex. D, at 50.) The Court need not decide who is the appropriate defendant, as the legislative privilege shields the Arizona Legislature's legislative activities regardless. *See All. for Glob. Justice*, 437 F. Supp. 2d at 37 ("Regardless of who is the defendant, the speech and debate statute shields from discovery the Council's knowledge . . . .").

1  Br. at 9–10 (asserting that the Legislators "have necessitated deposition testimony with
2  respect to the legislature as an entity").) And Plaintiffs' proposed deposition topics concern
3  "legitimate legislative activities" that fall within the scope of the legislative privilege.
4  *Tenney*, 341 U.S. at 376; *see Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th
5  Cir. 1983) ("Obtaining information pertinent to potential legislation or investigation is one
6  of the things generally done in a session of the House, concerning matters within the
7  legitimate legislative sphere." (internal citations and quotation marks omitted)); *Puente
8  Ariz.*, 314 F.R.D. at 670–71 (finding the legislative privilege protects "a legislator's
9  communications that bear on potential legislation" (citation and internal quotation marks
10 omitted)); *Mi Familia Vota*, 2023 WL 4595824, at *8 (same); (Doc. 499-1, Ex. 1, at 5–7
11 (listing deposition topics).) The Court denies Plaintiffs' request to compel the Arizona
12 House of Representatives and Senate to prepare a 30(b)(6) deponent to testify as to these
13 topics because doing so would intrude upon the protections afforded by the legislative
14 privilege. *All. for Glob. Justice*, 437 F. Supp. 2d at 37; *Puente Ariz.* 314 F.R.D. at 671
15 (analyzing the Arizona Legislature's waiver of the legislative privilege as an entity); *see
16 also Marylanders for Fair Representation*, 144 F.R.D. at 299 (finding Maryland
17 legislators' preparation and consideration of a legislative redistricting plan fell "within the
18 sphere of legitimate legislative activity" and "*any* inquiry into the *Maryland Legislature's
19 consideration* of [the plan] . . . [was] entirely barred" (second emphasis added)).
20      Plaintiffs alternatively ask the Court to prevent the Legislators from presenting
21 arguments on behalf of the Arizona Legislature and require the Legislators to instead
22 participate as defendants in their individual capacities. (Pls.' Br. at 10.) But the Speaker
23 and the President are authorized to defend Arizona's statutes and the Court declines to limit
24 their right to represent the Arizona Legislature's interests. A.R.S. § 12-1841(D); *N.C. State
25 Conf. of the NAACP*, 142 S. Ct. at 2201 (explaining that "[s]tates possess 'a legitimate
26 interest in the continued enforcement of their own statutes,'" which may "be practically
27 impaired or impeded if [their] duly authorized *representatives* are excluded from
28 participating in federal litigation challenging state law" (quoting *Cameron v. EMW*

*Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1011 (2022)) (cleaned up) (emphasis added)).

### III. CONCLUSION

The Speaker and the President have waived their legislative privilege as to information about their motives for the Voting Laws. The Speaker and President must produce communications that they have sent or received relating to the Voting Laws' legislative process and have withheld on legislative privilege grounds. They may also be deposed about their personal involvement in the Voting Laws' legislative process. Plaintiffs may not however conduct a 30(b)(6) deposition of the Arizona Legislature.

**IT IS ORDERED** granting in part and denying in part Plaintiffs' Motion to Compel (Doc. 500).

**IT IS FURTHER ORDERED** that the Speaker and the President must produce communications relating to the Voting Laws legislative process that they have sent or received and have withheld on legislative privilege grounds.

Dated this 14th day of September, 2023.

_____
Susan R. Bolton
United States District Judge