Kevin E. O'Malley (Bar No. 006420)
Hannah H. Porter (Bar No. 029842)
Ashley E. Fitzgibbons (Bar No. 036295)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:     (602) 530-8500
kevin.omalley@gknet.com
hannah.porter@gknet.com
ashley.fitzgibbons@gknet.com
*Attorneys for Intervenor-Defendants Speaker
Toma and President Petersen*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, | No. 2:22-cv-00509-SRB (Lead) |
| Plaintiff, | **INTERVENOR-DEFENDANTS SPEAKER TOMA AND PRESIDENT PETERSEN'S MOTION TO STAY PENDING APPEAL** |
| v. | **[Expedited Relief Requested]** |
| Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., | |
| Defendant. | |
| AND CONSOLIDATED CASES | |

Pursuant to Rule 8(a)(1)(A) of the Federal Rules of Appellate Procedure, Intervenor-Defendants Speaker of the House Ben Toma and Senate President Warren Petersen (collectively, the "Legislators") respectfully ask the Court to stay its September 14, 2023 Order (Doc. 535) compelling the production of certain communications and authorizing Plaintiffs to depose the Legislators about their personal involvement in the legislative process leading to the passage of HB 2243 and HB 2492 (the "Voting Laws"), pending the Legislators' petition to the Ninth Circuit for a writ of mandamus. A stay pending review of the September 14 Order by the Ninth Circuit should be entered because, among other

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
(602) 530-8000

1  reasons, this Court clearly erred in finding a waiver of the legislative privilege, and—other

2  than as disclosed in the already-available records—Toma and Petersen's personal

3  involvement in the legislative process leading to the Voting Laws is not relevant to any

4  issue in the case.

5      Counsel have met and conferred regarding this Motion. The non-U.S. Plaintiffs

6  oppose a stay of the Court's ruling and do not consent to this Motion.

7                                    **ARGUMENT**

8      The Legislators intend to petition the Ninth Circuit for a writ of mandamus directing

9  this Court to protect them from any discovery that would vitiate the legislative privilege. In

10  considering whether to grant a stay pending appeal, "a court considers four factors: (1)

11  whether the stay applicant has made a strong showing that he is likely to succeed on the

12  merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

13  issuance of the stay will substantially injure the other parties interested in the proceeding;

14  and (4) where the public interest lies." *Nken v. Holder,* 556 U.S. 418, 426 (2009) (internal

15  quotation omitted).

16      These four factors favor Toma and Petersen. The eight complaints the Non-U.S.

17  Plaintiffs filed don't name any individual legislators as defendants, don't mention Toma at

18  all and mention Petersen only once, in passing, and don't base their claims on the personal

19  motives of the individual legislators who voted for the Voting Laws. This is hardly

20  surprising, since federal courts have for many years disallowed inquiry into the motives of

21  individual legislators in approving laws. *E.g. Soon Hing v. Crowley,* 113 U.S. 703, 710-11

22  (1885) ("The diverse character of such motives . . . precludes all such inquiries as

23  impracticable and futile"). And the Legislators' mere intervention in this case does not

24  somehow put their personal motives for voting in favor of the Voting Laws at issue or waive

25  the legislative privilege. Their defense of the constitutionality of the Voting Laws has been

26  and will continue to be limited to legal arguments based on existing, publicly available facts

and documents. Unlike the legislators involved in *Powell v. Ridge,* 247 F.3d 520 (3rd Cir. 2001), Toma and Petersen have responded to appropriate document discovery and will not offer either their own testimony or the testimony of any other legislators to prove proper motive or any other issue.

We further discuss each of the four factors below.

## I.    The Legislators Are Likely To Prevail On Appeal.

Toma and Petersen are likely to prevail on appeal for at least the following three reasons.

### A.    The legislative privilege clearly applies to the discovery and testimony sought by the Plaintiffs.

There is no dispute that the discovery Plaintiffs seek falls within the scope of the legislative privilege. Legislative privilege applies where legislators or their aides were "acting in the sphere of legitimate legislative activity." *Tenney v. Brandhove,* 341 U.S. 367, 376 (1951); *see also Puente Arizona v. Arpaio*, 314 F.R.D. 664, 670 (D. Ariz. 2016). That's the case here as to Toma and Petersen's involvement in the legislative process that led to enactment of the Voting Laws. And the "privilege 'protects against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'" *In re North Dakota Legislative Assembly,* 70 F.4th 460 (8th Cir. 2023) (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972)).

In the *North Dakota* case, the Eighth Circuit held that the legislative privilege protected documents and testimony from state legislators and their aides, and thus granted mandamus relief. Although the district court, relying on dicta from *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252 (1977), reasoned that redistricting legislation presented a "particularly appropriate circumstance for qualifying the state legislative privilege because judicial inquiry into legislative intent" was "specifically contemplated" as part of the "core issue," the Eighth Circuit disagreed. 70 F.

4th at 464. In doing so, the court cited the Supreme Court's observation in *Village of Arlington Heights* that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government," and are "usually to be avoided." *Id.* Moreover, the Eighth Circuit said, even where "intent" is an element of a claim, "statements by individual legislators are an insufficient basis from which to infer the intent of a legislative body as a whole." 70 F.4th at 465 (citing *United States v. O'Brien,* 391 U.S. 367, 383-84 (1968)).

Here, too, legislative privilege bars the further discovery Plaintiffs are seeking.

**B.     The Court erred as a matter of law in finding that the Legislators waived the legislative privilege.**

"Waiver is the voluntary relinquishment of a known right." *Cornell, Howland, Hayes & Merryfield, Inc. v. Cont'l Cas. Co.*, 465 F.2d 22, 24 (9th Cir. 1972). The Court found that Toma and Petersen waived the legislative privilege by "voluntarily intervening in this lawsuit and putting their intent at issue." Doc. 535 at 2:27-28. Surely, though, merely intervening *as of right* under A.R.S. § 12-1841 to defend the constitutionality of a state statute can't be punished by finding an ipso facto waiver of the privilege, and we're not aware of any case that so states. Notably, the Arizona Attorney General has the same legal authority under A.R.S. § 12-1841. Yet no one suggests that the Attorney General would waive her executive deliberative process privilege by intervening to defend the constitutionality of a statute.

The Court's ruling raises significant separation of powers and federalism concerns. As the United States Supreme Court recently emphasized, "where a State chooses to divide its sovereign authority among different officials and authorize their participation in a suit challenging state law, a full consideration of the State's practical interests may require the involvement of different voices with different perspectives." *Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 2201 (2022). "Permitting the participation of lawfully authorized state agents promotes informed federal-court decisionmaking and avoids the risk

3

1  of setting aside duly enacted state law based on an incomplete understanding of relevant

2  state interests." *Id.* at 2202.

3      Moreover, the statement that Toma and Petersen put "*their* intent at issue" simply by

4  "denying [in their answers to the complaints] Plaintiffs' allegations that the *Arizona*

5  *Legislature* enacted the Voting Laws with discriminatory intent" (Doc. 535 at 3:24-27

6  (emphasis added)) is logically invalid and misapprehends the very nature of legislation. For

7  example, HB 2243 was passed by the Arizona Senate on a vote of 16-12; only one of those

8  votes belonged to Petersen. The Arizona House passed HB 2243 on a vote of 31-27; again,

9  only one of those votes belonged to Toma. The Legislators' defense of the Voting Laws'

10  constitutionality relies entirely upon public information, not anything covered by the

11  legislative privilege.

12      Furthermore, neither Toma nor Petersen are competent to testify about another

13  legislator's motives, and Fed. R. Evid. 602 limits their testimony to their "personal

14  knowledge of the matter." Indeed, any attempt by them to testify about other legislators'

15  motives would run afoul of *those* legislators' privileges, which the Court held Toma and

16  Petersen could not waive. *See* Doc. 535 at 6:3-4. And the Plaintiffs have not sought

17  information regarding motives from any of the other members who voted in favor of the

18  Voting Laws.

19      As the Supreme Court has more than once warned, "it is extremely difficult for a

20  court to ascertain the motivation, or collection of different motivations, that lie behind a

21  legislative enactment." *Palmer v. Thompson,* 403 U.S. 217, 224 (1971). And in the words

22  of the Ninth Circuit, the court "prevents inquiry into the motives of legislators because it

23  recognizes that such inquiries are a hazardous task," since "[i]ndividual legislators may vote

24  for a particular statute for a variety of reasons." *City of Las Vegas v. Foley,* 747 F.2d 1294,

25  1297 (9th Cir. 1984) (exercising mandamus and directing that a private party was not

26  entitled to depose city officials to determine their subjective motives for enacting a zoning

ordinance). Simply put, it is "not consonant with our scheme of government for a court to inquire into the motives of legislators." *Tenney,* 341 U.S. at 377.

The Order also relied on *Powell v. Ridge,* 247 F.3d 520 (3d Cir. 2001), to find a waiver, but that case didn't involve a waiver of privilege at all; the *Powell* court simply found that the "purported privilege" those legislators were claiming was not a recognized privilege at all. 247 F.3d at 526. Instead, the legislators there had tried to "build from scratch a privilege" which would allow them "to seek discovery but not to respond to it; take depositions but not be deposed; and testify at trial, but not be cross-examined." *Id.* at 525. By contrast, Toma and Petersen assert only the traditional legislative privilege, and they do not seek to offer testimony at trial or take their own discovery.

Further, *Powell* did not involve legislative leaders' intervention in an official capacity pursuant to state statute. The legislators in *Powell* intervened in their *personal* capacities and had no statutory authority to intervene. Thus, unlike this case, those legislators sought to pursue their *personal* "financial and legal interests in the litigation." *Id.* at 522. They were not acting as representatives of the State or defending the constitutionality of state laws pursuant to state statute.

Here, the Speaker and the President only intervened in their official capacities— pursuant to A.R.S. § 12-1841(D)—to present their perspective of the State's interests in the constitutionality of the Voting Laws. They did so only when they learned that the Attorney General's office did not intend to continue to defend some aspects of the Voting Laws. They have not, as in *Powell,* sought to turn "the shield of legislative immunity into a sword." 247 F.3d at 525. Indeed, the Legislators' intervention did not harm the plaintiffs any more than had the Legislators merely submitted briefs, as they were also entitled to do under A.R.S. § 12-1841. But the Legislators needed to intervene—not simply submit briefs—to ensure that the State's interests, from the perspective of the Legislature, could be defended in any

appeal should the Attorney General's office decide not to do so.

Because the Legislators have not used privileged information in their defense, there is no "sword and shield" problem, a prerequisite for implied waiver. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (holding that implied waiver prevents the use of privilege information "as both a sword and a shield"). The "overarching consideration" in an implied waiver analysis "is whether allowing the privilege to protect against disclosure of the information would be manifestly unfair to the opposing party." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (quotation omitted). Accordingly, an objective defense that does not introduce subjective privileged information does not implicitly waive the privilege. *See id.* (affirming decision that no implied waiver of attorney-client privilege existed where party proved reasonableness of the settlement amount "on objective terms apart from the advice of counsel").

Rather than examining if the Legislators have affirmatively used privileged information (they have not), the Order focuses on the relevancy of the information sought in discovery. Doc. 535 at 17-19. But that is not the proper inquiry. Because the Legislators are relying only on the publicly available legislative history that can be used by any of the parties to this case, Plaintiffs are in the same position as they were prior to the Legislators' intervention.

Furthermore, finding a waiver in this case undermines the public policy behind A.R.S. § 12-1841(D). Speaker Toma and President Petersen, as well as other legislative leaders, will hesitate to participate in cases attacking the constitutionality of state laws if doing so will result in an automatic waiver of the legislative privilege.

To hold that the Speaker and the President, who are the only officers from the Legislature authorized to intervene pursuant to Arizona law, have now waived their legislative privilege—even though they do not rely upon their individual motives to defend

the questioned laws—is contrary to the doctrine of implied waiver.

### C.   The Legislators' intent is not relevant to this case.

Moreover, the Court's ruling erred in holding that the Legislators' personal motives are critical to this case. If a waiver is imposed, it must be "closely tailored" "to the needs of the opposing party in litigating the claim in question." *Bittaker*, 331 F.3d at 720. In other words, "the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Id.* Yet, the Court's ruling orders the production of irrelevant privileged information.

Even when the legislature's motive is pertinent in a case, "it is the motivation of the entire legislature, not the motivation of a handful of voluble members, that is relevant." *S.C. Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1262 (4th Cir. 1989). Plainly, the Court cannot infer from the individual motivations of Messrs. Toma and Petersen what the motivation of the entire legislature was, nor would it be valid to impute their motives to the legislature as a whole. As a noted commentator has underscored:

> Attribution of the statements of some members of the decisionmaking body to the others cannot properly be justified on a theory of adoption by silence or the fiction of delegated authority to speak.

Paul Brest, *Palmer v. Thompson: An Approach to the Problem of Unconstitutional Legislative Motive,* The Supreme Court Review, Vol. 1971, p. 124 (1971).

Individual legislators vote to adopt a bill for many reasons. Few of the legislators will have been involved in the drafting of the bill, and they may not even be well-acquainted with all of its provisions. Here, for example, 1,613 bills were introduced during the 55th Legislature, Second Regular Session. And 392 bills were approved and transmitted to the governor. Legislators may vote for a bill in deference to their party leaders, or as a trade off for getting other legislators to support a bill in which they have a particular interest.

For these and many other reasons, federal courts have held since the 1810 Supreme Court case of *Fletcher v. Peck*, 6 Cranch 87, 130, 3 L.Ed. 162, that it was "not consonant

with our scheme of government for a court to inquire into the motives of legislators….” *Tenney,* 341 U.S. at 377. That principle has “remained unquestioned.” *Id.* Thus, in 1971, Justice Black, writing for a divided court in *Palmer v. Thompson,* 403 U.S. 217, 224 (1971), stated that “no case in this Court has held that a legislative act may violate equal protection solely because of the motivations of the men who voted for it.” And although dicta in *Village of Arlington Heights,* 429 U.S. at 268, suggested there may be “some extraordinary instances” where “members might be called to the stand at trial to testify concerning the purpose” of an official action, even then the testimony would “frequently” be barred by privilege.

In fact, though, we are not aware of any case that has found the intention of the legislature by virtue of testimony of one or more legislators. To the contrary, the Supreme Court and lesser courts have continued to counsel against trying to discern a legislature’s purpose based on the testimony of individual members. Indeed, only a few years ago the Supreme Court had occasion to reiterate that counsel. In *Va. Uranium, Inc. v. Warren*, ___ U.S. ___, 139 S. Ct. 1894, 1907-08 (2019) (plurality opinion), the Court said:

> Trying to discern what motivates legislators individually and collectively invites speculation and risks overlooking the reality that individual Members of Congress often pursue multiple and competing purposes, many of which are compromised to secure a law’s passage and few of which are *fully realized in the final product*.

(Emphasis added.)

The Ninth Circuit has followed this counsel. As noted in *City of Las Vegas v. Foley,* 747 F.2d 1294, 1297 (9th Cir. 1984), the court “prevents inquiry into the motives of legislators because it recognizes that such inquiries are a hazardous task,” since “individual legislators may vote for a particular statute for a variety of reasons.” *Cf. In re Kelly,* 841 F.2d 908, 912 n.3 (9th Cir. 1988) (“To the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent . . . Stray comments by individual legislators . . . cannot be attributed to the full body

1  that voted on the bill. The opposite inference is far more likely.") (internal citations
2  omitted).

3     Putting aside that individual members' communications are rarely relevant to
4  determining legislative intent, the non-U.S. Plaintiffs have not shown that Toma and
5  Petersen individually are critical witnesses in this case, or that they have more relevant
6  information than the other 88 members of the 55th Legislature, Second Regular Session. It
7  appears that the only reason plaintiffs seek documents from Toma and Petersen is because
8  of their intervention, as opposed to their actions with respect to the challenged bills.

9     When the Voting Laws were adopted, Toma and Petersen were not the Speaker and
10  President of their respective chambers. Tellingly, across the 8 different complaints filed by
11  Plaintiffs, there is only one mention of Petersen. The Promise Arizona Complaint alleges
12  that he stated during a floor session "that H.B. 2243 is an amended version of H.B. 2617
13  with additional notice, but that it was 'otherwise identical' to H.B. 2617." [Case 2:22-cv-
14  01602-SRB, Doc. 1 ¶ 40.] There are no mentions of Toma in any complaint.

15     Moreover, the privilege log submitted by the Speaker and President confirms the
16  limited relevance of the withheld documents. Most of the emails concern legislative
17  agendas, caucus notes, and bill alerts. *See* Doc. 500-1 at 21-30. There are also emails from
18  groups outside of the legislature indicating that group's position in favor or against the bills.
19  *See id.* at 32-39.

20     In sum, Plaintiffs have not shown that Petersen's and Toma's individual motives are
21  critical to their claims.

22  **II.  The Ruling Imposes Irreparable Harm on the Legislative Leaders.**

23     If the Court's ruling is not stayed, the Legislators will have to produce privileged
24  information and each sit for a full-day deposition. It is well-established that the disclosure
25  of privileged information constitutes irreparable harm. *See Hernandez v. Tanninen,* 604
26  F.3d 1095, 1101 (9th Cir. 2010) (noting the "irreparable harm a party likely will suffer if

erroneously required to disclose privileged materials or communications") (quoting *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Arizona*, 881 F.2d 1486, 1491 (9th Cir. 1989)); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 175 (4th Cir. 2019) ("an adverse party's review of privileged materials seriously injures the privilege holder"); *In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir. 1997) ( "forced disclosure of privileged material may bring about irreparable harm").

**III.   A Stay Will Not Harm Plaintiffs.**

Plaintiffs will not be harmed by the stay because they are not entitled to the privileged information, nor is it relevant to their case, as explained above. Moreover, Plaintiffs have ample available evidence to support their case. As noted in the Legislators' brief opposing the motion to compel, they have produced approximately 91,000 pages of documents to Plaintiffs, which include final agendas, emails from constituents advocating for legislators to take a certain position on a bill, and short responses from the Speaker or President indicating their stance on the bill. Doc. 499 at 1. Plaintiffs also have access to the publicly available legislative history documents, including minutes, agendas, fact sheets and summaries, and videos from legislative hearings. Thus, Plaintiffs already have the typical materials that courts rely upon to determine legislative intent.

Finally, the Legislators intend to seek emergency relief from the Ninth Circuit via a petition for writ of mandamus so that this issue can be resolved in advance of the bench trial scheduled to begin on November 6.

**IV.   Public Interest.**

Here, the purposes behind the legislative privilege support a stay pending appeal. Even though the federal common law privilege for state legislators is qualified, the Supreme Court has "repeatedly stressed that 'judicial inquiries into legislative or executive motivation represent a substantial intrusion' such that calling a decision maker as a witness 'is therefore usually to be avoided.'" *Lee v. City of Los Angeles,* 908 F.3d 1175, 1188 (9th

Cir. 2018) (quoting *Vill. of Arlington Heights*, 429 U.S. at 268 n.18). "Applying this precedent, [the Ninth Circuit has] concluded that plaintiffs are generally barred from deposing local legislators, even in extraordinary circumstances." *Id.* (quotation omitted). Requiring legislators to "produce communications touching upon the legislative process would constitute the precise sort of interference that the state legislative privilege was designed to prevent." *Mi Familia Vota v. Hobbs*, No. CV-21-01423-PHX-DWL, 2023 WL 4595824, at *12 (D. Ariz. July 18, 2023) (citations omitted). The chilling effect of public disclosure of communications regarding the legislative process is "self-evident" and would impede the Legislators' "ability to discharge their public duties with 'firmness and success,' 'without concern of adverse consequences outside the ballot box.'" *See id.* (quoting *Lee*, 908 F.3d at 1186-87).

## CONCLUSION

The Legislators respectfully request that the Court grant this Motion to Stay pending ruling from the Ninth Circuit. In the alternative, should the Court deny this Motion, the Legislators respectfully request that the Court issue an order staying the Order for 10 days to allow time for the Ninth Circuit to consider an emergency motion to stay in conjunction with the Legislators' petition for writ of mandamus.

A proposed order is submitted herewith.

RESPECTFULLY SUBMITTED this 22nd day of September, 2023.

1

2

GALLAGHER & KENNEDY, P.A.

3

4

By:*/s/ Hannah H. Porter*
   Kevin E. O'Malley

5
   Hannah H. Porter

6
   Ashley E. Fitzgibbons
   2575 East Camelback Road

7
   Phoenix, Arizona 85016-9225
   *Attorneys for Intervenor-Defendants*

8
   *Toma and Petersen*

9

10

## CERTIFICATE OF SERVICE

11
          I hereby certify that on September 22, 2023, I electronically transmitted a PDF

12
version of this document to the Clerk of Court, using the CM/ECF System for filing and

13
for transmittal of a Notice of Electronic Filing.

14

15
                                              */s/D. Ochoa*

16

17

18

19

20

21

22

23

24

25

26