Marc E. Elias*
Elisabeth C. Frost*
Christopher D. Dodge*
Mollie DiBrell*
Alexander F. Atkins*
Daniela Lorenzo*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Phone: (202) 968-4513
Facsimile: (202) 968-4498
melias@elias.law
efrost@elias.law
cdodge@elias.law
mdibrell@elias.law
aatkins@elias.law
dlorenzo@elias.law

Roy Herrera (Bar No. 032901)
Daniel A. Arellano (Bar No. 032304)
Jillian L. Andrews (Bar No. 034611)
**HERRERA ARELLANO LLP**
530 East McDowell Road
Suite 107-150
Phoenix, Arizona 85004-1500
Phone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com
jillian@ha-firm.com

*Attorneys for Plaintiffs Mi Familia Vota and Voto Latino*
*\*Admitted Pro Hac Vice*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al., | Case No. 2:22-cv-00509-SRB (lead) |
| Plaintiffs, | |
| v. | **NON-U.S. PLAINTIFFS' MOTION IN LIMINE REGARDING EVIDENCE OF THE STATE'S INTERESTS** |
| Adrian Fontes, et al., | |
| Defendants. | |
| AND CONSOLIDATED CASES. | No. CV-22-00519-PHX-SRB<br>No. CV-22-01003-PHX-SRB<br>No. CV-22-01124-PHX-SRB<br>No. CV-22-01369-PHX-SRB<br>No. CV-22-01381-PHX-SRB<br>No. CV-22-01602-PHX-SRB<br>No. CV-22-01901-PHX-SRB |

Under the *Anderson-Burdick* test applicable to several of Plaintiffs' constitutional claims, the Court must consider (1) whether the burden imposed by each challenged law is justified by a sufficiently weighty state interest in that specific law, and (2) whether it actually advances that interest. Here, Plaintiffs made extensive efforts to obtain discovery on the theories of state interest that Defendants intend to argue justify the challenged laws.[1] The Attorney General, on behalf of her office and the State of Arizona, repeatedly deflected or rebuffed those efforts, suggesting they were not responsible for identifying such interests, broadly objecting to 30(b)(6) topics that would elicit testimony on any factual basis for those interests or whether the challenged laws will advance those interests, and failing to provide knowledgeable deponents to testify on the same. Instead, the Attorney General pointed to the Secretary of State and County Recorders as parties knowledgeable on this topic. The Secretary readily acknowledges that H.B. 2492 and H.B. 2243 *do not* further any legitimate state interests, and the County Recorders' position is consistent with the Secretary's.

Non-U.S. Plaintiffs file this motion *in limine* to prohibit Defendants from offering argument or evidence at trial regarding any alleged state interests not previously disclosed during discovery, or offering evidence at trial supporting any previously-disclosed state interest that was not disclosed during discovery. In addition, in the absence of their own witnesses' inability to offer justification for these laws, Defendants' questioning in depositions suggests that the lawyers will attempt to insert their own made-up hypotheticals

---

[1] Plaintiffs named the Secretary, the Attorney General, and each of the 15 County Recorders as Defendants. *See, e.g.*, MFV SAC, ECF No. 65. The U.S. also sued the State of Arizona itself, and the Attorney General's Office has entered its appearance to represent both the Attorney General and the State of Arizona. *See, e.g.*, Notice of Appearance, ECF 305. The Secretary and County Recorders are not affirmatively defending the challenged laws. As a result, the active defending parties—referred to in this brief as "Defendants"— are the Attorney General, the State of Arizona, and the intervening parties, which consist of the Republican National Committee ("RNC"), Arizona Speaker Ben Toma, and Senate President Warren Petersen ("Legislator Defendants").

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

to attempt to justify the burdens imposed by these laws. These include Defendants' hypothesizing that persons are giving up or having their citizenship revoked and then registering to vote in Arizona, despite no evidence this is a real (or even realistic) scenario. And it includes the suggestion that the challenged laws are responsive to alleged issues in the submission of voter registration forms by third-party voter registration organizations.

If in fact there was evidence to support Defendants' arguments that any of the challenged laws can be justified by these interests, or that any further those interests, it should have been provided in response to Plaintiffs' discovery requests in advance of trial. Defendants should not now be permitted to introduce new "state" interests, offer new evidence in purported support of the same, nor substitute their own rank speculation for the extensive record as to the State Defendants' actual views of the utility (or lack thereof) of the challenged laws. To that end, Defense Exhibit 58 (Hiser 86) should also be excluded.

**I.** ***Anderson-Burdick* requires analysis of the state's precise interests in the law at issue, whether it actually advances those interests, and any concrete bases for those interests.**

As the Court has already recognized, "*Anderson-Burdick* claims are particularly fact-sensitive." ECF No. 304 at 23. Precisely because of their fact-sensitive nature, the Ninth Circuit has reversed *Anderson-Burdick* decisions decided at the motion to dismiss stage, where the plaintiffs had not yet had "the benefit of a complete evidentiary record regarding . . . the interests of the State" in the challenged laws. *Soltysik v. Padilla*, 910 F.3d 438, 449 (9th Cir. 2018). This conclusion is mandated by the test itself, under which the plaintiffs first show that the challenged laws impose a burden on the right to vote, which then triggers the defendants' burden to "put forward . . . justifications for the burden imposed." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

In considering whether the state's purported interests are sufficient to survive constitutional scrutiny, the Court "must consider the '*precise interests put forward by the State* . . . for the burden imposed by [the challenged laws]' to ensure those interests do, *in fact*, justify" such a burden. *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1190 (9th Cir.

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

2021) (quoting *Anderson*, 460 U.S. at 789, 103 S. Ct. 1564) (emphases added). Defendants may not rest on state interests that are "legitimate in the abstract" but lack any "concrete evidence that 'those interests make it necessary to burden the plaintiff's rights.'" *Fish v. Schwab*, 957 F.3d 1105, 1132 (10th Cir. 2020) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)); *see also Obama for Am. V. Husted*, 697 F.3d 423, 433-34 (6th Cir. 2012) (holding voting regulation was not justified by "vague interest[s]" when the state had submitted "no evidence" to justify its invocation of the interests); *cf. N.C. Democratic Party v. Berger*, 717 F. App'x 304, 307 (4th Cir. 2018) (Motz, J., concurring) (expressing doubt that "post-hoc rationales offered by two legislators can satisfy the *Anderson-Burdick* standard, which instructs us to consider '*the state's* important regulatory interests' in support of a given regulation." (quoting *Anderson*, 460 U.S. at 788)).

**II.** **The parties with factual information about whether the laws advance or further state interests either evaded discovery into this question or agree with Plaintiffs that the laws do not actually advance any meaningful state interest.**

Repeatedly, Plaintiffs were denied meaningful responses to these inquiries about the state interest from the Defendants in discovery or testimony.

Plaintiffs sought discovery from the Attorney General regarding the state interest theories advanced by her office and the State, and noticed a 30(b)(6) deposition of her office to inquire into "[a]ny state interests . . . furthered by the Challenged Laws and how the Challenged Laws further those interests." Ex. A, Pls.' Am. Notice of 30(b)(6) Dep. of AG, Topic 7.

In Plaintiffs' very first interrogatory they asked the Attorney General to:

Identify all state interests that you believe are furthered by the Challenged Laws and all evidence that either supports or undermines the contention that the Challenged Laws further those interests, including any evidence of voter fraud committed by non-citizens or non-residents in Arizona since January 1, 2016. Your answer should specify which alleged state interest(s) support each challenged provision of the Challenged Laws and the connection between the alleged state interests and challenged provisions. Your answer should also identify by name any witnesses who have or are likely to have knowledge or information related to the importance of the state interests

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

identified in this answer and how the Challenged Laws are likely to interact with those interests.

Ex. B, 2023.05.12 Pls.' ROGs to AG, ROG No. 1. In response, the Attorney General largely passed the buck, stating first that "[i]dentifying interests served by legislation is generally the role of the Legislature . . . not the role of the Attorney General." Ex. C, 2023.06.19 AG Resp. to Pls.' ROGs at 5.

Nevertheless, perhaps recognizing that, as an active party defending the laws, the Attorney General would have to identify some state interest to justify them, it also stated that, "[g]enerally speaking," the challenged laws "serve" two purported interests: (1) "the State's interests in ensuring that voter registration is limited to individuals who are eligible to vote," stating that the challenged laws are "concerned" with limiting registration to citizens and Arizona residents, *id.* at 5; and (2) "the State's interests in ensuring that members of the public trust election results," speculating that "[s]ome members of the public *may* feel doubt about election results, rightly or wrong," and that the "Challenged Laws *may* help alleviate such doubt," *id.* (emphases added).

The Attorney General disclaimed any knowledge as to whether the challenged laws might actually further these interests, stating that questions regarding how the laws "are likely to interact with" the identified state interests "would be better directed to an office involved in voter registration, such as the Secretary of State's office or County Recorder offices" with respect to the first, and "to members of the public or to the Legislature" for the second. *Id.* at 10.[2]

When Plaintiffs sought more information in a 30(b)(6) deposition, the Attorney General at first attempted to avoid producing a witness to answer questions on this issue

---

[2] In addition, despite Plaintiffs' request that the Attorney General "specify which alleged state interest(s) support *each challenged provision* of the Challenged Laws and the connection between the alleged state interest and challenged provisions," Ex. B, Pls.' ROGs to the AG, No. 1 (emphasis added)), the Attorney General responded in generalities, treating the challenged laws as a monolith, making no effort to discern between them, much less explain how any actually further such interests.

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

entirely. *See* Ex. D, 2023.08.14 Email from J. Bendor to C. Dodge et al. (objecting to Topic 7—"Any state interests You believe are furthered by the Challenged Laws and how the Challenged Laws further those interests"—as improper, arguing (1) the state interest "is made in the first instance by the legislature [and] is not a subject for deposition testimony," and (2) the state interests identified by the Attorney General's office as "the basis for [their] positions in this litigation . . . are protected by the attorney-client privilege, the work product doctrine, and executive privilege, and . . . not appropriate for fact witness testimony").

After extensive discussions, the Attorney General ultimately identified Todd Lawson—a prosecutor in the Attorney General's office—as "the presumptive designee" on this topic, Ex. E, 2023.08.28 Email from J. Whitaker to D. Arellano et al., but during the deposition, Mr. Lawson continually testified that he could not speak to any state interests advanced by the challenged laws, and counsel for the Attorney General and State continually objected to questions on this topic. Thus, when Mr. Lawson was asked whether he was "able to testify today to how HB 2492 and HB 2243 help to ensure that voter registration is limited to those eligible to vote" his counsel objected, claiming the question called for a legal conclusion and was outside the scope of the 30(b)(6) deposition topics. Ex. F, AG Tr. 258:16-21. Mr. Lawson responded, echoing counsel, by saying "I am not a legislator. I don't know what other – what else they were thinking at the time they brought – they brought this into law." *Id.* at 258:22-24. Similarly, when Mr. Lawson was asked about the basis for the response to Interrogatory No. 1, in which the Attorney General asserted that the laws "ensur[e] that members of the public trust election results," Ex. C, AG Resp. to Pls.' ROGs at 5, Mr. Lawson testified, "To the extent that I am not a legislator, I can think that that was probably what motivated them, but again, I – beyond that, I can't speak to the specifics." Ex. F, AG Tr. 262:13-18. When Mr. Lawson was asked, "Are you able to explain how the challenged laws promote public trust in elections?" his counsel again objected, claiming the question called for a legal conclusion and was outside the

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

scope, and Mr. Lawson responded "I am not." *Id.* at 262:19-23. Mr. Lawson did however agree that the Attorney General's claim that the challenged laws "may help alleviate [public] doubt" about election results was "speculative." *Id.* at 264:13-25.[3]

At the same time that the Attorney General refused (or was unable) to provide any testimony or evidence that would support an argument that the challenged laws may be justified based on a sufficiently weighty state interest, the parties that the Attorney General admitted were better situated to provide this evidence either also avoided discovery or *confirmed that the laws do not further* any legitimate state interest.

Indeed, none of the officers responsible for administering elections in Arizona are arguing in this case that the laws survive legal scrutiny—despite being named as Defendants. This includes the Secretary—Arizona's chief elections official—who agrees with Plaintiffs that the challenged laws do not further any legitimate state interest. *See, e.g.*, ECF No. 189, ¶ 8 ("[T]he Secretary admits that HB 2492 and HB 2243 . . . do not advance any legitimate regulatory interest in ensuring free, fair, and secure elections, furthering the orderly and efficient administration of elections, or preventing fraud in elections."); *see also* ECF No. 124 ¶ 197 ("[T]he Secretary admits that . . . there is *no rational or strong interest* served by the DPOC Requirement, Birthplace Requirement, Checkmark Requirement, or the mandated use of potentially outdated and incorrect citizenship data to purge eligible voters from the rolls." (emphasis added)). The County Recorders' testimony, too, repeatedly confirmed that the challenged laws do not actually advance the state interests that the Defendants argue justify them. *See, e.g.*, Ex. G, Yavapai Tr. at 100:6-16 (testifying that the office "cannot use birthplace information to determine whether an applicant is qualified to vote"); Ex. H, Graham Tr. at 98:19-25 (testifying that the Graham County Recorder cannot confirm the accuracy of birthplace provided by a voter registrant

---

[3] Mr. Lawson also agreed that the State had not identified any other state interests advanced or promoted by the Challenged Laws other than the two identified in its interrogatory responses. Ex. F, AG Tr. 268:1-9, 15-16, 268:25-269:5.

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

or "verify an applicant's citizenship using their place of birth"); *id.* at 30:14-31:13 (testifying that the Graham County Recorder opposed the challenged laws because they would "disenfranchise some" individuals); Ex. I, Pima Tr. 255:20-25 (testifying that they could think of "no" "reason why a voter submitting a state form instead of a federal form would be any less qualified to vote in federal elections"). Finally, the Legislator Defendants, let alone the Legislature, have largely refused to provide document and deposition discovery on the basis of privilege. *See* ECF No. 566, Consolidated Non-U.S. Pls.' Mot. In Limine as to Intervening Legislator Defs. When Plaintiffs asked the Legislator Defendants to "[i]dentify and describe the purposes of the Challenged Laws," they provided no more information than the Attorney General, responding that the laws "allow for the government to ensure that persons who have registered to vote are eligible to vote, i.e. that they meet the residence and citizenship requirements to vote under Arizona law." Ex. J, 2023.06.23 Defs. Toma & Petersen's Answers to Pls.' ROGs at 4-5, ROG No. 1.[4]

## III. Defendants' arguments and evidence on state interest should be limited to what it disclosed in discovery.

Defendants should only be allowed to present arguments on the state interest advanced by the challenged laws to the extent such material was disclosed during discovery. "Rule 37(c)(1) 'forbid[s] the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.'" *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012). The failure of the Attorney General—the only named Defendant and Arizona executive official actively defending the law on behalf of the State—to disclose evidence regarding the state interest advanced by the challenged laws was not "substantially justified" or "harmless," so they must be prohibited from presenting any non-disclosed evidence at trial. Fed. R. Civ. P. 37(c)(1). Quite to the contrary, the Attorney General's meritless objections that Plaintiffs' questions about state interest called

---

[4] Notably, the Legislator Intervenor-Defendants *did not* identify ensuring public trust in election results as a purpose of the challenged laws. *See id.*

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

for legal conclusions fundamentally misunderstand the "fact-sensitive" nature of the *Anderson-Burdick* framework, ECF No. 304 at 203, which requires this Court to determine whether the "precise interests put forward by the state . . . *in fact*" justify a burden imposed on voters, *Hobbs,* 18 F.4th at 1190 (emphasis added). These objections denied the Plaintiffs' ability to test the Attorney General's vaguely asserted state interests in discovery. This was particularly clear in the 30(b)(6) deposition, where the Attorney General's witness repeatedly declined to offer meaningful responses to Plaintiffs' questions about what, if any, facts supported the state interests identified by the Attorney General. Having taken the position that it was not their duty to identify and factually support the 'precise interests put forward by the State' in support of the law, Ex. C, AG's Resp. to Pls.' ROGs at 5, 9, 10, Defendants should be bound to their discovery responses and deposition testimony and not allowed to provide new, alternative state interests at trial to justify the challenged laws.

This includes any attempt to justify the laws based on speculative or abstract hypotheticals to support state interest arguments. It appears, however, that this is the approach that Defendants plan to take at trial. During depositions, counsel from the Attorney General's office and the RNC posed hypotheticals to witnesses suggesting the challenged laws could be justified to protect against the scenario in which a person who had either renounced their U.S. citizenship or had it revoked, subsequently tried to register to vote based on outdated DPOC—despite a total lack of evidence that this implausible scenario has ever occurred in Arizona. *See, e.g.*, Ex. K, Secretary of State (Connor) Tr. 272:15-21 (RNC questioning); *see also id.* 282:12-14 (Attorney General questioning); Ex. H, Graham Tr. 107:16-108:13 (Attorney General questioning); Ex. L, Coconino Tr. 131:6-17, 133:9-20, 134:11-25) (RNC questioning). Even the RNC's counsel acknowledged that "not many" individuals renounce their citizenship, Ex. L, Coconino Tr. 133:21, and that he was only asking whether "it is theoretically possible," *id*. at 134:12. And the Coconino County Recorder representative rightly answered that such a scenario is "not a probability."

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

*Id.* at 134:25. Indeed, not a single County Recorder testified to having heard of such a scenario. *Id.* at 133:18-23 (testifying that "I've never seen it happen personally"); Ex. H, Graham Tr. at 107:23-108:9 (testifying that "I've never had that happen.").

Similarly, based on unsupported and undisclosed hearsay, counsel for the Attorney General and RNC have also repeatedly asked County Recorders about whether third-party voter registration organizations intentionally submit invalid voter registration forms. For example, counsel for the RNC asked the Secretary's 30(b)(6) representative if she was familiar with the following situation:

> Q. We've heard some testimony from some of the county recorders that occasionally, they'll have voter registration drives where an outside group will bring in a bunch of voter registration forms and, on inspection, it seems that some of those forms are not honest or authentic.

Ex. K, Secretary of State (Connor) Tr. 278:3-7. In responding, the Secretary's 30(b)(6) representative stated that it was "all just anecdotal information that I heard." *Id.* at 279:9-10. Nevertheless, counsel for the Attorney General has similarly pursued this entirely speculative line of questioning, asking the Pima County Recorder's 30(b)(6) representative about an email indicating that Plaintiff Mi Familia Vota ("MFV") had submitted some voter registration forms that had incorrect driver's license data. Defense Ex. 58 (Hiser 86).[5] The email author, an outreach coordinator, *theorized*—without any apparent actual basis in fact—that "maybe [MFV] is doing this in response to HB2492, (sic) where proof of citizenship needs to be presented or the form cannot be accepted or processed." Defense Ex. 58 (Hiser 86). And the County Recorder's answer only affirmed that all of this— including the idea that this was intentional and not a mere error—was complete and utter speculation, stating: "I think she was making an assumption. I don't know if her assumption was correct." Ex. I, Pima Tr. 294:6-8.

---

[5] This exhibit appears on the Defendants' exhibit list. Plaintiffs have objected to it as hearsay, not relevant, prejudicial, and improper opinion.

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

1   This speculative hearsay within hearsay is highly prejudicial, and Defendants should
2   not be able to point to it as a justification for the challenged laws—not least of all because
3   nothing in the legislative record suggests the challenged laws were enacted to address
4   errors in the submission of voter registration forms by third-party voter registration groups.
5   The questions posed by Defendants to County Recorders about inaccurate third-party voter
6   registration forms cannot supply meaningful proof of state interest—such a regulatory
7   purpose was not disclosed in the Attorney General's discovery responses; was not
8   identified as a purpose of the law by the legislature; and is supported in the record
9   exclusively by speculation and hearsay posed to the County Recorders. Defendants should
10  accordingly be prohibited from relying upon such a theory at trial, and Defense Exhibit 58
11  (Hiser Dep. Ex. 58), as well as any deposition testimony on it, specifically be excluded for
12  these reasons.

13       Finally, the State has continually stated that the state interest advanced by the
14  Challenged Laws is a public policy issue and the prerogative of the Arizona State
15  Legislature. Accordingly, Defendants should not be allowed to raise arguments about the
16  state interest based on facts that (1) were not before the Legislature when passing the
17  Challenged Laws and (2) are not available to Plaintiffs.

18       Plaintiffs respectfully request that the Court grant its motion *in limine* and preclude
19  Defendants from raising state interest arguments and evidence that they refused to disclose
20  during discovery.

21
22  Dated: October 16, 2023                          Respectfully submitted,

23                                                    _Christopher D. Dodge_____
24                                                    Roy Herrera (Bar No. 032901)
                                                      Daniel A. Arellano (Bar. No. 032304)
25                                                    Jillian L. Andrews (Bar No. 034611)
                                                      **HERRERA ARELLANO LLP**
26                                                    530 East McDowell Road
                                                      Suite 107-150
27                                                    Phoenix, Arizona 85004-1500
28                                                    Phone: (602) 567-4820

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

roy@ha-firm.com
daniel@ha-firm.com
jillian@ha-firm.com

Marc E. Elias*
Elisabeth C. Frost*
Christopher D. Dodge*
Mollie DiBrell*
Alexander F. Atkins*
Daniela Lorenzo*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Phone: (202) 968-4513
Facsimile: (202) 968-4498
melias@elias.law
efrost@elias.law
cdodge@elias.law
mdibrell@elias.law
aatkins@elias.law
dlorenzo@elias.law

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS

1

## **CERTIFICATE OF CONFERRAL**

2    I hereby affirm that, in compliance with Local Civil Rule 7.2(l), I conferred with

3  counsel for the Attorney General, Secretary of State, Republican National Committee, and

4  Speaker Toma and President Petersen on this motion. The Secretary of State takes no

5  position on the motion; the remaining Defendants indicate that they oppose the motion.

6                                                    */s/ Christopher D. Dodge*

7                                                    Christopher D. Dodge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NON-U.S. PLS.' MOT. IN LIMINE RE: EVIDENCE OF THE STATE'S INTERESTS