Papetti Samuels Weiss McKirgan LLP
Bruce Samuels (State Bar No. 015996)
bsamuels@pswmlaw.com
Jennifer Lee-Cota (State Bar No. 033190)
jleecota@pswmlaw.com
16430 North Scottsdale Road, Suite 290
Scottsdale, AZ 85254
+1 480 800 3530

Wilmer Cutler Pickering Hale and Dorr LLP
Seth P. Waxman (*pro hac vice*)
seth.waxman@wilmerhale.com
Daniel S. Volchok (*pro hac vice*)
daniel.volchok@wilmerhale.com
Christopher E. Babbitt (*pro hac vice*)
christopher.babbitt@wilmerhale.com
Britany Riley-Swanbeck (*pro hac vice*)
britany.riley-swanbeck@wilmerhale.com
2100 Pennsylvania Avenue N.W.
Washington D.C. 20037
+1 202 663 6000 (telephone)
+1 202 663 6363 (facsimile)

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al.<br><br>   Plaintiffs,<br><br>  v.<br><br>Adrian Fontes, in his official capacity as Arizona Secretary of State, et al.,<br><br>   Defendants, | Case No. 22-00509-PHX-SRB (Lead)<br><br>**DNC-ADP Trial Brief**<br><br>No. CV-22-00519-PHX-SRB<br>No. CV-22-01003-PHX-SRB<br>No. CV-22-01124-PHX-SRB<br>No. CV-22-01369-PHX-SRB<br>No. CV-22-01381-PHX-SRB<br>No. CV-22-01602-PHX-SRB<br>No. CV-22-01901-PHX-SRB |
| **AND CONSOLIDATED CASES.** | |

**INTRODUCTION**

Although the Supreme Court has long held that voting "'is a fundamental matter in a free and democratic society,'" and that the right to vote is "'preservative of other basic civil and political rights,'" *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 667 (1966) (quoting *Reynolds v. Sims*, 377 U.S. 533, 561-562 (1964)), Arizona has spent most of the last twenty years erecting barriers to Arizonans' exercise of that right.  One of those barriers is a requirement that people provide documentary proof of U.S. citizenship (DPOC) to register to vote.  Over the years, various courts, including the U.S. Supreme Court, have rejected that requirement.  For example, in *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013), the Supreme Court held that federal law barred Arizona from requiring people who register using the so-called "federal form" to provide DPOC, which the form does not demand, *see id.* at 20.  The U.S. Election Assistance Commission then rejected Arizona's request to allow the state to require DPOC of those who register using the federal form.  *See Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1188 (10th Cir. 2014).  And in 2018, the then-Arizona Secretary of State entered into a consent decree requiring that Arizona not treat registrants differently based on their use of the federal versus state form, to resolve a lawsuit challenging the state's unlawful discrimination against those who used the state form.  *See* ECF 388, Ex. 12.  Undeterred, the Arizona Legislature has continued seeking to burden Arizonans' fundamental right to vote.

One recent vehicle for imposing those burdens is Arizona House Bill 2492 (H.B. 2492), which the legislature enacted last year.  Under that law, Arizonans who do not provide satisfactory DPOC when they register to vote are barred from voting in any election by mail—the way that the vast majority of Arizonans (roughly 85%) cast their ballot—and are also barred from voting in presidential elections at all (i.e., by mail or in person).  H.B. 2492 further directs county recorders to create a blacklist of federal-only voters whom county recorders determine (through a review of unreliable databases) are not U.S. citizens, so that those voters can be subjected to investigation, prosecution, and removal from the voter rolls.

1    The Democratic National Committee (DNC) and the Arizona Democratic Party

2  (ADP) brought this challenge to H.B.2492 on behalf of themselves and millions of their

3  supporters throughout Arizona.  In response to the parties' motions for partial summary

4  judgment (including one filed by the DNC and ADP), this Court held that key provisions of

5  H.B. 2492—including the requirement to provide DPOC in order to vote by mail or in

6  presidential elections—violate the National Voter Registration Act.  ECF 534.  This brief

7  now addresses two points to be proven at trial: first, that the DNC and ADP each have both

8  organizational and representational standing as to each of their claims, and second, that H.B.

9  2492 violates the U.S. Constitution's bar on the imposition of undue burdens to the right to

10  vote.

11    As to the former, the evidence will show that H.B. 2492 harms the DNC and ADP

12  directly (i.e., as organizations) as well as each organization's members.  As to the latter,

13  plaintiffs will prove that H.B. 2492 violates the First and Fourteenth Amendments because it

14  would severely burden the right to vote without any legitimate or relevant justification—

15  much less a compelling one.  *See Anderson v. Celebrezze*, 460 U.S. 780, 788-789 (1983);

16  *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  By its terms, H.B. 2492 bars federal-only

17  voters from voting in presidential elections—a per se severe burden on the right to vote—and

18  deprives Arizonans of the ability to cast a mail-in ballot, a safe and accessible method of

19  voting that, as noted, approximately 85% of Arizonans use.  Beyond H.B. 2492's immediate

20  effects on participation in upcoming elections, the evidence will show that the burdens the

21  law imposes will undermine many voters' establishment of long-term voting habits, and thus

22  their voting in future elections.  And defendants, the evidence will demonstrate, have utterly

23  failed to advance any legitimate state interest that remotely warrants these severe burdens.

24  For example, their central claim—about preventing or deterring voter fraud—is manifestly

25  insufficient because the evidence will show that voting by non-U.S. citizens in Arizona is not

26  widespread (if it has happened at all).

27    For the reasons provided herein, and based on the evidence plaintiffs will present at

28  trial, the Court should declare that H.B. 2492's DPOC provisions unconstitutionally burden

1  the right to vote and accordingly should enjoin defendants from (1) denying federal-only

2  voters access to vote by mail or in presidential elections, and (2) subjecting voters to

3  investigation or prosecution under the flawed system established by H.B. 2492.[1]

4                              **ARGUMENT**

5  **I.    THE DNC AND ADP EACH HAVE STANDING TO BRING ALL OF THEIR CLAIMS**

6         Earlier in this litigation, defendants challenged the DNC's and ADP's standing to

7  press the claims in their complaint.  That challenge lacks merit.

8         Under binding precedent, if any one plaintiff in this consolidated litigation has

9  standing on any particular claim (including standing to pursue injunctive relief), this Court

10  need not consider whether other plaintiffs also have standing on that claim.  *See Bowsher v.*

11  *Synar*, 478 U.S. 714, 721 (1986); *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189

12  n.7 (2008) (op. of Stevens, J.); ECF 304 at 16-17.  All parties agree that the United States has

13  standing on its claim (which the DNC and ADP also raise) that H.B. 2492 violates the

14  materiality provision of the Civil Rights Act.  *See* ECF 196, Hr'g Tr. 6:22-7:3.  As to the

15  DNC's and ADP's remaining claims (and in fact as to the CRA claim as well), the two

16  organizations each have both representational standing to sue to vindicate the interests of

17  their members and organizational standing to assert their own interests.  *See Nat'l Council of*

18  *La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015) (discussing two types of

19  standing).

20         **A.    Organizational Standing**

21         A party has organizational standing where the organization is itself harmed by the

22  challenged conduct—for example where the "defendant's behavior has frustrated [the

23  organization's] mission and caused it to divert resources in response to that frustration of

24  purpose." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 663 (9th Cir. 2021).  Courts

25

26  ───────────────

27  [1] To avoid duplicative pretrial briefing, the DNC and ADP submit this trial memorandum
only to address the claim that H.B. 2492 violates the First and Fourteenth Amendments by
imposing an undue burden on the right to vote, and to address the DNC's and ADP's
28  standing as plaintiffs.  The DNC and ADP also join the trial memoranda filed by other
plaintiffs insofar as they pertain to the DNC's and ADP's other claims.

have held that political parties have organizational standing in cases that (like this one) challenge election laws.  For example, in *Crawford v. Marion County Election Board*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008), the Seventh Circuit held that state and county Democratic party organizations were injured by a voting law that compelled the parties to "devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote," *id.* at 951; *see also One Wisc. Inst., Inc. v. Thomsen*, 198 F.Supp.3d 896, 909 (W.D. Wis. 2016) (organizations had standing to challenge new voting laws by establishing that the organizations diverted "money, staff time, and other resources away from their other priorities to educate voters about the new laws").

The testimony of Ramsey Reid, DNC's States Director, and Morgan Dick, ADP's Executive Director, will show that the DNC and ADP each have organizational standing as to all of their claims here.  More specifically, their testimony will show that the DNC's and ADP's missions are to elect Democratic candidates to local, state, and federal public office, including the U.S. presidency.  As part of those missions, the organizations work to ensure that supporters of Democratic candidates can vote.  Encouraging supporters to vote by mail and in presidential elections is a key part of implementing that strategy.

These witnesses' testimony will further show that H.B. 2492 frustrates the DNC's and ADP's missions, both directly, by making it harder for people who would likely vote for Democratic candidates to register and cast a ballot, and indirectly, by causing the organizations to divert resources away from directly supporting the election of Democratic candidates toward educating voters about the law and otherwise mitigating its adverse effects.  Implementation of the law would require additional diversions of resources to help voters comply with the burdens the law imposes.  And because those efforts would inevitably not be 100% successful, the law would prevent voters who have not provided satisfactory DPOC from voting by mail (in any election) and in presidential elections (by mail or in person).  Moreover, the evidence will show that the voter-maintenance provisions of H.B. 2492 (which require county recorders to cancel registrations when the county

1    recorder "obtains information" and "confirms" that the person registered to vote is not a

2    United States citizen, Arizona Revised Statutes §16-165(A)(10)), would result in qualified

3    Democratic voters being erroneously removed from the rolls entirely, as the verification

4    system underlying the analysis is unreliable.  (H.B. 2243 further modified Arizona's voter-

5    maintenance system under Arizona Revised Statutes §16-165(A)(10); even though H.B.

6    2492's version of this provision is not the current one, both are challenged because enjoining

7    only H.B. 2243's version would cause a reversion to H.B. 2492's.)  Finally, the evidence will

8    show that implementation of H.B. 2492 would create additional confusion and fear among

9    Democratic voters (and others)—fear about being subjected to baseless investigation and

10   prosecution.  All of these outcomes would harm the DNC's and ADP's chances of electing

11   Democrats.  They have organizational standing to protect against these harms.

12        **B.    Representational Standing**

13        The evidence will show that the DNC and ADP likewise each have representational

14   standing as to all of their claims (although, to be clear, an organization need have only one

15   form of standing as to a claim).  A membership organization (which the DNC and ADP each

16   are) may sue on behalf of its members when (1) the members would have standing "to sue in

17   their own right," (2) the interest it seeks to protect are "germane to the organization's

18   purpose," and (3) "neither the claim asserted nor the relief requested requires the

19   participation of individual members in the lawsuit."  *Friends of the Earth, Inc. v. Laidlaw*

20   *Envt'l (TOC) Servs., Inc.*, 528 U.S. 167, 181 (2000).

21        As discussed, H.B. 2492 would, if implemented, make it harder for voters—many of

22   them Democrats and/or members of the DNC and/or ADP—to register and vote, and would

23   expose people (including those already registered) to investigation and potential prosecution.

24   Members of the DNC and/or ADP whose right to vote would be burdened by these

25   provisions could themselves sue to challenge the law.  And as the DNC's and ADP's

26   evidence will establish, those members' right to vote is germane to the DNC's and ADP's

27   purpose to elect Democrats, because those votes would very likely be for Democratic

28

candidates.  Finally, the DNC's and ADP's claims and requests for relief do not require members' individual participation.

All this is why courts have held that political parties have standing in similar circumstances, i.e., have standing to assert the rights of members who may face burdens on their right to vote.  *See, e.g.*, *Crawford*, 472 F.3d at 951; *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 573-574 (6th Cir. 2004) (per curiam); *Democratic Nat'l Comm. v. Reagan*, 329 F.Supp.3d 824, 841 (D. Ariz.), *aff'd*, 904 F.3d 686 (9th Cir. 2018); *Fla. Democratic Party v. Scott*, 215 F.Supp.3d 1250, 1254 (N.D. Fla. 2016); *Democratic Party of Ga., Inc. v. Crittenden*, 347 F.Supp.3d 1324, 1338 (N.D. Ga. 2018).  The same conclusion is warranted here.

## II.   H.B. 2492 UNDULY BURDENS THE RIGHT TO VOTE, IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

State laws that burden the right to vote violate the First and Fourteenth Amendments unless relevant and legitimate state interests of sufficient weight justify the burdens.  *See Anderson*, 460 U.S. at 788; *Burdick*, 504 U.S. at 434.  The more severely a law burdens the right to vote, the more strictly the law must be scrutinized.  *Burdick*, 504 U.S. at 434; *Ariz. Libertarian Party v. Reagan*, 798 F.3d 723, 729-730 (9th Cir. 2015).  Even slight burdens must be justified by valid state interests—and where a law's burden on the right to vote is "severe," the law "is subject to strict scrutiny," meaning the law can be upheld only if it is "narrowly tailored to advance a compelling state interest."  *Burdick*, 504 U.S. at 433-434, 441.

As set forth in the parties' stipulated facts and the non-U.S. plaintiffs' forthcoming proposed findings of fact, the evidence will show that H.B. 2492's requirement to provide DPOC, and the consequences the law imposes for not doing so, severely burden the right to vote, with no relevant and legitimate state interest—much less a compelling and narrowly tailored one—to justify those burdens.

1
2
3
4

**A.    H.B. 2492's Requirement To Cancel Or Suspend The Registration Of Those Who Do Not Provide Satisfactory DPOC Burdens The Right To Vote, Directly Blocking Some People From Voting And Deterring Others From Doing So**

5    Even before H.B. 2492's enactment, Arizona's bifurcated voter-registration regime

6 burdened the right to vote by allowing "full voters" (i.e., those who have provided

7 satisfactory DPOC) to vote in state elections while prohibiting "federal-only" voters (i.e.,

8 those voters who have not provided satisfactory DPOC) from voting in state elections.  As

9 plaintiffs' evidence will show, thousands of eligible Arizonans have had their registrations

10 canceled, suspended, or placed in "federal-only" status under the pre-H.B. 2492 regime,

11 solely because they have not met the state's DPOC requirement.  And as plaintiffs' evidence

12 will also demonstrate, if H.B. 2492 is implemented, this harm would increase; many more

13 Arizonans who have not met the DPOC requirement would be at risk of having their

14 registrations canceled, suspended, or delayed, which would almost certainly cause them to

15 vote less often—both in the short-term and the long-term.  All of this (both the direct burden

16 on the right to vote by canceling or suspending registrations, and the indirect effect of

17 inducing those who are canceled or suspended to vote less often) would severely burden the

18 right to vote.

19    Plaintiffs' expert Dr. Traci Burch will testify more specifically that the costs to

20 comply with H.B. 2492's DPOC requirements will deter some eligible individuals from

21 registering and casting a ballot, because the costs of registering and voting would outweigh

22 any perceived benefits.  Some voters, for example, would not have access to required DPOC

23 documents and would not be able to afford them, while some people who can afford the

24 documents would not be able to obtain them in time to register to vote (or to cure their

25 registrations) for a given election.  Others could face language barriers to understanding

26 instructions or requirements in notice letters sent by county recorders—which are only sent

27 in English and/or Spanish—that would deter registration and thus voting.  They might also

28 face language barriers to obtaining and providing DPOC that would similarly hinder or deter

registration and voting.  And still other voters would be deterred by the chilling effect spawned by fear of surveillance, investigation, prosecution, and deportation. That chill would be exacerbated by H.B. 2492's requirement that voters list birthplace on their voter registration forms, a requirement seemingly tailormade to further enable the targeting of non-native U.S. citizens.  For certain populations, especially those of lower socioeconomic status, even small increases in these costs would preclude them from voting entirely because the increased costs make the decision to do so irrational.

**B.      H.B. 2492's Complete Bar On Voting In Presidential Elections For Those Who Do Not Provide Satisfactory DPOC Is A Severe Burden**

Plaintiffs' evidence will show that H.B. 2492's exclusion of "federal-only" voters from voting in presidential elections would severely burden those voters' right to vote.  First, by its terms, H.B. 2492 would prevent eligible voters from being allowed to vote for president *at all* (whether by mail or in person).  That is unquestionably a severe burden. Second, as plaintiffs' experts will explain, people barred from voting in presidential elections are less likely to vote *at all* in presidential-election years.  That, in turn, would make those voters less likely to develop voting habits that contribute to voting in other elections.

**C.      H.B. 2492's Prohibition On Voting By Mail In Any Election For Those Who Do Not Provide Satisfactory DPOC Is An Extremely Significant Burden**

H.B. 2492's exclusion of "federal-only" voters from voting by mail in any election would also significantly burden the right to vote.  As noted, the vast majority of Arizonans (approximately 85%) vote by mail—which state law has allowed, excuse-free, for more than 20 years.  *See* ECF 123, ¶4; ECF 388, Ex. 30 at 1; Arizona Clean Elections Commission, "The Security of Voting by Mail," https://www.azcleanelections.gov/election-security/the-security-of-voting-by-mail.  Voters use mail balloting because it is safer and more convenient than voting in person.  For example, as some of the county-recorder defendants acknowledged in depositions, voting by mail means that a voter does not have to arrange transportation to their polling location or attempt to vote in-person around work hours.  *See*

1  Greenlee County Tr. 44:6-45:17; Pima County Tr. 247:6-249:11; Yavapai County Tr.
2  106:24-108:16.  Voters who are not in the state on election day can still cast a ballot.
3  Greenlee County Tr. 45:2-45:5.  And voting by mail allows voters with disabilities to "vote
4  from the comfort and convenience of their home."  Arizona Secretary of State, Voting in
5  Elections, https://azsos.gov/elections/voters/voting-elections (explaining voting options for
6  "Voters with Disabilities"); *see also* Pima County Tr. 249:2-11.  Denying all these benefits
7  to people who do not provide DPOC constitutes a substantial burden.

8        **D.**    **No Sufficiently Weighty State Interest Justifies These Burdens**

9        Given the extremely severe—and multifaceted—burdens that H.B. 2492 imposes on
10  the fundamental right to vote, only the most compelling state interests, and a showing that
11  the law was narrowly tailored to advance those interests, could render the statute
12  constitutional.  *See Burdick*, 504 U.S. at 433-434.  The evidence will show that defendants
13  have not done so.

14        The interest defendants persistently invoke is preventing and deterring voting by non-
15  U.S. citizens.  *E.g.*, ECF 127 at 4-5, 16.  But that is does not remotely suffice because such
16  voting in Arizona is essentially non-existent; indeed, no defendant has offered any evidence
17  that such voting is widespread.  Representatives of the county recorder in Navajo, Mohave,
18  Pima, Gila, Yavapai, Cochise, Coconino, La Paz, Graham, Greenlee, and Yuma counties all
19  testified that they were either unaware of any instances of non-citizens voting in their county
20  or that they could not identify a single such case.  Navajo County Tr. 61:13-19; Mohave
21  County Tr. 128:1-130:4; Pima County Tr. 242:22-243:8; Gila County Tr.75:17-24; Yavapai
22  County Tr. 104:10-17; Coconino County (Hansen) Tr. 37:24-38:6; Cochise County Tr.
23  100:8-11; La Paz County Tr. 86:9-12; Graham County Tr. 66:10-22; Greenlee County Tr.
24  74:24-75:2; Yuma County Tr. 95:4-7.  In fact, the Arizona Secretary of State has admitted in
25  this litigation—through the answer filed by his predecessor, which the current Secretary has
26  not withdrawn—both that "there is no evidence of widespread voting by non-citizens in
27  Arizona elections," and that H.B. 2492's challenged provisions "do not advance any
28  legitimate regulatory interest in ensuring free, fair, and secure elections, furthering the

1   orderly and efficient administration of elections, or preventing fraud in elections."  ECF 121,

2   ¶3.  Similarly, the Arizona Attorney General's office has admitted that it knows of only two

3   cases since January 1, 2016 "involving a charge of voting by a non-citizen," and that in both

4   cases "the non-citizen used the identity of another individual to vote."  Mayes' First

5   Supplemental Response to Consolidated Plaintiffs' First Set of Interrogatories at 3.  Finally,

6   the lead prosecutor in the Attorney General's Election Integrity Unit testified that he was not

7   aware of a *single* prosecution—going all the way back to 2010—for registering to vote or

8   voting as a non-citizen.  Attorney General Tr. at 243:6-244:9; ECF 571, Ex 1. ¶157.  Expert

9   testimony from Dr. Lorraine Minnite will further establish the effective non-existence of

10  non-citizen voting in Arizona.  In short, H.B. 2492's burdens are unnecessary to prevent any

11  pattern of non-citizens voting in Arizona (or to further any other legitimate state interest).

12      Defendants' experts may opine that H.B. 2492's burdens are justified because the

13  statute supposedly improves the *perception* of election integrity and therefore enhances

14  public trust and participation in voting.  But they will offer no evidence for any such

15  speculation, as there is simply no evidence that H.B. 2492 actually advances such an interest.

16  In fact, a representative from the Arizona Attorney General's office agreed that any state

17  interest in restoring faith in elections was speculative.  Attorney General Tr. 264:4-25.

18  Simply put, H.B. 2492 furthers no relevant and legitimate state interest, much less a

19  compelling one.

20  **CONCLUSION**

21      The Court should hold after trial (1) that the DNC and ADP have standing to press

22  each of their claims in this litigation and (2) that H.B. 2492's DPOC requirement unduly

23  burdens Arizonans' right to vote in violation of the First and Fourteenth Amendments.

24

25  Dated this 19th day of October, 2023.

26                          Respectfully submitted,

27                          PAPETTI SAMUELS WEISS MCKIRGAN LLP

28                          /s/ Bruce Samuels
                            Bruce Samuels

WILMER CUTLER PICKERING
   HALE AND DORR LLP
Seth P. Waxman (pro hac vice)
Daniel S. Volchok (pro hac vice)
Christopher E. Babbitt (pro hac vice)
Britany Riley-Swanbeck (pro hac vice)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

On this 19th day of October, 2023, I caused the foregoing to be filed and served electronically via the Court's CM/ECF system upon counsel of record.


/s/ Bruce Samuels
Bruce Samuels