1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Mi Familia Vota, et al.,

Plaintiffs,

v.

Adrian Fontes, et al.,

Defendants.

Case No. 2:22-cv-00509-SRB (lead)

**JOINT PRETRIAL ORDER**

Pursuant to the Scheduling Order previously entered, the following is the Joint Proposed Pretrial Order to be considered at the Final Pretrial Conference set for October 24, 2023, before the Honorable Susan R. Bolton.

## A.   TRIAL COUNSEL FOR THE PARTIES[1]

Provide the name, mailing address, office phone, and fax numbers for trial counsel. Plaintiff(s):

| PLAINTIFF(S) | TRIAL COUNSEL | CONTACT INFORMATION |
|---|---|---|
| Mi Familia Vota<br><br>Voto Latino | Elisabeth C. Frost*<br>Christopher D. Dodge*<br>Mollie DiBrell*<br>Alexander F. Atkins* | <u>Mailing Address:</u><br>ELIAS LAW GROUP LLP<br>250 Massachusetts Ave NW<br>Suite 400<br>Washington, DC 20001<br><br><u>Office phone:</u> (202) 968-4513<br><br><u>Fax:</u> (202) 968-4498 |
| | Daniel A. Arellano<br>Jillian L. Andrews | <u>Mailing Address:</u><br>HERRERA ARELLANO LLP<br>1001 North Central Ave, Suite 404<br>Phoenix, AZ 85004<br><br><u>Office phone:</u> (602) 567-4820<br><br><u>Fax:</u> N/A |

---

[1] Persons designated with an asterisk have been admitted *pro hac vice* in these proceedings. Persons without an asterisk are members of the Arizona bar.

| Living United for Change in Arizona<br><br>League of United Latin American Citizens<br><br>Arizona Students' Association<br><br>ADRC Action<br><br>Inter Tribal Council of Arizona, Inc.<br><br>San Carlos Apache Tribe Arizona Coalition for Change | Danielle Lang*<br>Jonathan Diaz*<br>Molly Danahy*<br>Hayden Johnson*<br>Brent Ferguson* | Mailing Address:<br>CAMPAIGN LEGAL CENTER<br>1101 14th St. NW, Suite 400<br>Washington, D.C. 20005<br><br>Office phone: (202) 736-2200<br><br>Fax: N/A |
| | James E. Barton II | Mailing Address:<br>Barton Mendez Soto PLLC<br>401 W. Baseline Road, Suite 205<br>Tempe, Arizona 85283<br><br>Office phone: 480-550-5165<br><br>Fax: N/A |
| | Lee Rubin*<br>Rachel Lamorte*<br>William J. McElhaney III* | Mailing Address:<br>Mayer Brown LLP<br>71 S. Wacker Dr.<br>Chicago, IL 60607<br><br>Office phone: (312) 782-0600<br><br>Fax: N/A |
| United States | Richard A. Dellheim<br>Emily R. Brailey<br>Jennifer Yun<br>Sejal Jhaveri<br>Margaret Turner | Mailing Address:<br>Attorneys, Voting Section<br>Civil Rights Division<br>U.S. Department of Justice<br>4CON – Room 8.1815<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br><br>Office phone: (202) 353-5724<br><br>Fax: (202) 307-3961 |

| Democratic National Committee<br><br>Arizona Democratic Party | Daniel Volchok*<br>Christopher E. Babbitt* | <u>Mailing Address:</u><br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>2100 Pennsylvania Avenue NW, Washington, DC 20037<br><u>Office phone:</u> (202) 663-6000<br><br><u>Fax:</u> (202) 663-6363 |
|---|---|---|
| | Bruce Samuels | <u>Mailing Address:</u><br>17767 N Scottsdale Rd Suite 200, Scottsdale, AZ 85255<br><br><u>Office phone:</u> (480) 565-2000 |
| Arizona Asian American Native Hawaiian And Pacific Islander For Equity Coalition | Sadik Huseny*<br>Amit Makker*<br>Cat Rizzoni*<br>Evan Omi*<br>Scott Kanchuger*<br>Neethu Putta*<br>Robbie Hemstreet* | <u>Mailing Address:</u><br>LATHAM & WATKINS LLP<br>505 Montgomery Street, Suite 2000<br>San Francisco, CA 94111-6538<br><br><u>Office phone:</u> (415) 395-0600<br><br><u>Fax:</u> (415) 395-8095 |
| | Niyati Shah* | <u>Mailing Address:</u><br>ASIAN AMERICANS ADVANCING JUSTICE-AAJC<br>1620 L Street NW, Suite 1050<br>Washington, DC 20036<br><br><u>Office phone:</u> (202) 815-1098<br><br><u>Fax:</u> (202) 296-2318 |
| | Andrew Federhar | <u>Mailing Address:</u><br>SPENCER FANE<br>2415 East Camelback Road, Suite 600<br>Phoenix, AZ 85016<br><br><br><u>Office phone:</u> (602) 333-5430<br><br><br><u>Fax:</u> (602) 333-5431 |
| Poder Latinx<br><br>Chicanos Por La Causa | John A. Freedman*<br>Jeremy Karpatkin*<br>Erica McCabe*<br>Leah Motzkin* | <u>Mailing Address:</u><br>ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Ave., N.W.<br>Washington, D.C. 20001 |

| | | |
|---|---|---|
| Chicanos Por La Causa Action Fund | | Office phone: (202) 942-5000<br><br>Fax: (202) 942-5999 |
| | Jon Sherman*<br>Michelle Kanter Cohen*<br>Beauregard Patterson* | Mailing Address:<br>FAIR ELECTIONS CENTER<br>1825 K St. NW, Ste. 701<br>Washington, D.C. 20006<br><br>Office phone: (202) 331-0114<br><br>Fax: None |
| | Daniel J. Adelman<br>Nick Ansel | Mailing Address:<br>Arizona Center for Law in the Public Interest<br>352 E. Camelback Rd. #200<br>Phoenix, AZ 85012<br><br>Office phone: (602) 258-8850<br><br><br>Fax: (602) 258-8757 |
| Promise Arizona<br><br>Southwest Voter Registration Education Project | Ernest Herrera*<br>Erika Cervantes* | Mailing Address:<br>MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND<br>634 South Spring Street, 11th Floor<br>Los Angeles, CA 90014<br><br>Office phone: (213) 629-2512<br><br>Fax: (213) 629-0266 |
| | Daniel R. Ortega Jr. | Mailing Address: Ortega Law Firm<br>361 East Coronado Road, Suite 101<br>Phoenix, AZ 85004-1525<br><br>Office phone: (602) 386-4455<br><br>Fax: TK |

| Tohono O'odham Nation[2]<br><br>Gila River Indian Community<br><br>Keanu Stevens<br><br>Alanna Siquieros<br><br>LaDonna Jacket | Allison A. Neswood*<br>Samantha B. Kelty (AZ No. 024100)<br>Michael Carter (AZ No. 028704) | Mailing Address:<br>NATIVE AMERICAN RIGHTS FUND<br>   250 Arapahoe Ave.<br>Boulder, CO 80302<br><br>Office phone: (303) 447-8760<br><br>Fax: (303) 443-7776 |
| --- | --- | --- |

Defendant(s):

| DEFENDANT/S | TRIAL COUNSEL | CONTACT INFORMATION |
| --- | --- | --- |
| State of Arizona and Attorney General Kris Mayes | Joshua M. Whitaker (AZ No. 032724)<br><br>Kathryn E. Boughton (AZ No. 036105)<br><br>Timothy E.D. Horley (AZ No. 038021) | Mailing Address: 2005 N. Central Ave., Phoenix, AZ 85004<br><br>Office phone: (602) 542-3333<br><br>Fax: (602) 542-8308 |
| Republican National Committee | Kory Langhofer (AZ No. 024722)<br><br>Thomas Basile (AZ No. 031150) | Mailing Address: 649 N. Fourth Ave., First Floor<br>Phoenix, Arizona 85003<br><br>Office phone: (602) 382-4078<br><br>Fax: (602) 362-0036 |
|  | Tyler Green*<br>Cameron T. Norris*<br>Gilbert C. Dickey* | Mailing Address: 1600 Wilson Blvd., Ste. 700<br>Arlington, VA 22209<br><br>Office phone: (703) 243-9423 |

---

[2] Trial counsel for Tohono O'odham Plaintiffs plan to attend trial for monitoring purposes only. As a result of the Court's partial summary judgement order, Tohono O'odham Plaintiffs have moved unopposed to withdraw their constitutional challenge to the DPOR requirement. If that motion is accepted, the Tohono O'odham Plaintiffs will have no unresolved claims at the time of trial.

| Speaker Ben Toma and President Warren Petersen | Kevin E. O'Malley (AZ Bar No. 006420)<br><br>Hannah H. Porter (AZ Bar No. 029842) | <u>Mailing Address</u>: 2575 E. Camelback Rd. Suite 1100<br>Phoenix, Arizona 85016-9225<br><br><u>Office phone</u>: (602) 530-8000<br><br><u>Fax</u>: (602) 530-8500 |
| Secretary of State, Adrian Fontes (a nominal party)[3] | Craig A. Morgan (AZ Bar No. 023373)<br><br>Shayna Stuart (AZ Bar No. 034819) | <u>Mailing Address</u>: 2555 E. Camelback Road, Suite 1050,<br>Phoenix, Arizona 85016-4258<br><br><u>Office phone</u>: 602.240.3000<br><br><u>Fax</u>: 602.240.6600 |

## B.   STATEMENT OF JURISDICTION/VENUE

Jurisdiction in this case is based on the Court's subject matter jurisdiction under 28 U.S.C. § 1331, federal question jurisdiction, because Plaintiffs' claims arise under the Constitution or laws of the United States, as well as 28 U.S.C. §§ 1343, 1357, and 1362. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and in this division. Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## C.   NATURE OF ACTION

These consolidated cases challenge certain provisions of Arizona House Bill 2492 ("H.B. 2492") and Arizona House Bill 2243 ("H.B. 2243") that make changes to voter registration requirements, voter list maintenance procedures, and other aspects of voter registration and voting in Arizona. Plaintiffs' claims, which are described in further detail below, arise under the First, Fourteenth, and Fifteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, the National Voter Registration Act of 1993 ("NVRA"), Section 101 of the Civil Rights Act of 1964, and Section 2 of the Voting Rights Act.

---

[3] The Secretary of State is a nominal party.  He participated in lengthy, costly, extensive discovery and took steps to try and ensure this action is adjudicated before the next general election.  But he has not litigated the merits of this action, he has not taken a position on the merits, and he does not anticipate doing so at trial.  His legal counsel, however, will attend trial as appropriate unless the Court grants them leave to be absent.

Plaintiffs do not agree that the Secretary of State is a nominal party in this matter.

### 1. The Challenged Provisions

Specifically, Plaintiffs challenge the following provisions of Arizona law enacted through H.B. 2492 and H.B. 2243 (collectively, the "Challenged Provisions")[4]:

- H.B. 2492 § 1, which amends A.R.S. § 16-101(A)(1), to make providing "satisfactory evidence of citizenship" a qualification to register to vote in Arizona.

- H.B. 2492 § 3, which amends A.R.S. § 16-121(A), to include in the definition of a "qualified elector" the requirement that the individual "has provided satisfactory evidence of citizenship."

- H.B. 2492 § 4, which amends A.R.S. § 16-121.01(A) and adds A.R.S. § 16-121.01(C)-(E), to require that:
  - (a) State-Form voter registration applicants include their place of birth for the applicant to be presumed to be properly registered (the "Birthplace Requirement");
  - (b) State- and Federal-Form voter registration applicants mark the "yes" box next to the question regarding citizenship for the applicant to be presumed to be properly registered and as a condition of being properly registered to vote in any election (the "Checkbox Requirement");
  - (c) County Recorders reject any State-Form voter registration application that is not accompanied by satisfactory evidence of citizenship; and
  - (d) County Recorders "use all available resources to verify the citizenship status of [a] [Federal-Form] applicant" whose application is not accompanied by satisfactory evidence of citizenship, including "at a minimum" by comparing the applicant's information to a variety of listed databases, provided the County has access.
    - i.   In the event the County Recorder matches the applicant to "information that the applicant is not a United States citizen," the County Recorder shall "reject the application, notify the applicant that the application was rejected because the applicant is not a United States citizen, and forward the application to the county attorney and attorney general for investigation."
    - ii.  In the event the County Recorder is unable to match the applicant with "appropriate citizenship information," the County Recorder shall "notify the applicant that the [County Recorder] could not verify that the applicant is a United States citizen and that the applicant will not be qualified to vote in a presidential election or by mail with an early ballot in any election until satisfactory evidence of citizenship is provided."

---

[4] References herein to A.R.S. sections are from the currently-codified versions of the A.R.S. It should be noted that the chaptered version of H.B. 2243 uses different lettering for 16-165 in particular.

- H.B. 2492 § 5, which:
  - (a) adds A.R.S. § 16-123 to require a person who registers to vote to provide documentary proof of the location of their residence (the "DPOR Requirement"); and
  - (b) adds A.R.S. § 16-127, to prohibit any voter who has not provided satisfactory evidence of citizenship from voting in presidential elections, and to prohibit any voter who has not provided satisfactory evidence of citizenship and who is eligible to vote only for federal offices from voting by mail with an early ballot

- H.B. 2492 § 7, which adds A.R.S. § 16-143, to:
  - (a) Require the Secretary of State and County Recorders to provide the Attorney General with a list of all registered voters who have not provided satisfactory evidence of citizenship, and
  - (b) Require the Attorney General to use all available resources to verify the citizenship status of these registered voters, including "at a minimum" by checking a variety of listed databases; prosecute individuals who are found to be non-citizens pursuant to A.R.S. § 16-182; and report all findings relating to citizenship status to the Secretary of State, President of the Senate, and the Speaker of the House.

- H.B. 2492 § 8, which added A.R.S. § 16-165(A)(10) to require the cancellation of a voter's registration "when the county recorder receives and confirms information that the person registered is not a United States citizen."[5]

- H.B. 2243 § 2, which amends A.R.S. § 16-165(A)(9)-(10) and adds A.R.S. §§ 16-165(G), 16-165(H), 16-165(I), 16-165(J) and 16-165(K) to require that:
  - (a) When the County Recorders obtain information pursuant to A.R.S. §§ 16-165 and confirms that a person registered is not a United States citizen, County Recorders send the person notice that their registration will be canceled in 35 days unless they provide satisfactory evidence of citizenship, and if the person does not provide such evidence within 35 days, cancel the registration and notify the county attorney and Attorney General for possible investigation;
  - (b) Each month the Secretary of State shall compare the statewide voter registration database to the driver license database maintained by the Department of Transportation. The Secretary of State shall notify the appropriate county recorder if a person who is registered to vote in that county is not a United States citizen. A.R.S. § 16-165(G);

---

[5] H.B. 2243 further modified A.R.S. § 16-165(A)(10). Even though H.B. 2492's version of this statutory provision is not the currently operative version, both are challenged, lest enjoining solely H.B. 2243's version of A.R.S. § 16-165(A)(10) simply cause a reversion to H.B. 2492's prior version.

    (c) Each month, to the extent practicable, the County Recorders shall compare their county's voter registration database to the Social Security Administration Database.  A.R.S. § 16-165(H);

    (d) Each month, to the extent practicable, the County Recorders shall compare persons who are registered to vote in their county and who the County Recorders have "reason to believe" are not United States citizens and persons who are registered to vote without satisfactory evidence of citizenship, with the USCIS Systematic Alien Verification for Entitlements ("SAVE") program to verify their citizenship status.  A.R.S. § 16-165(I);

    (e) For persons who are registered to vote without satisfactory evidence of citizenship, the County Recorder shall compare the Electronic Verification of Vital Events System maintained by a national association for public health statistics and information systems, if accessible, with the information on the person's voter registration file.  A.R.S. § 16-165(J); and

    (f) To the extent practicable, the County Recorders shall review relevant city, town, county, state, and federal databases to which the County Recorders have access to confirm information obtained that requires the cancellation of a registrant pursuant to A.R.S. § 16-165.

### 2.  The Court's Order on Partial Summary Judgment

In accordance with the Court's instructions, the parties moved for partial summary judgment on claims each side believed could be decided as a matter of law. ECF No. 534 at 6. The Attorney General and the Republican National Committee Intervenors filed motions for summary judgment, joined by Arizona Speaker of the House Ben Toma and Arizona Senate President Warren Petersen ("the Legislative Intervenors"), principally addressing claims brought by Plaintiffs under the NVRA and the Materiality Provision of the Civil Rights Act. ECF Nos. 364, 367, 369. Plaintiffs filed responses in opposition and a limited set of motions and cross-motions, similarly focused on the NVRA and Civil Rights Act claims. ECF Nos. 390, 391, 393, 394, 395, 396, 397, 398, 399.

On September 14, 2023, the Court entered an Order resolving those motions and granting summary judgment on the following claims:

- For Plaintiffs on the claims that Section 6 of the NVRA preempts H.B. 2492, §§ 4 and 5's requirement that Federal-Form applicants submit DPOC in order to be able to vote in Presidential elections or to vote early by mail. ECF No. 534 at 9-15.

- For Plaintiffs on the claims that Section 6 of the NVRA preempts HB 2492 § 5's DPOR Requirement as applied to Federal-Form applicants. *Id.*

- For Plaintiffs on the claims that H.B. 2243, § 2 violates Section 8(c) of the NVRA which prohibits systematic purge provisions in voting laws within 90 days before a federal election.  ECF No. 534 at 15-18.

- For Plaintiffs on the claims that H.B. 2492, § 4 violates the Materiality Provision of the Civil Rights Act by requiring County Recorders to reject an application where a registrant who has already provided DPOC fails to complete the citizenship checkbox. ECF No. 534 at 24-27.

- For Plaintiffs on the claims that the reference in A.R.S. § 16-123 to 16-579(A)(1) are examples, not an exhaustive list, of the documents that can be used to satisfy A.R.S. § 16-123 and that A.R.S. § 16-123 does not require a standard street address. ECF No. 534 at 33.

- For Plaintiffs on the claims that in addition to the documents listed in A.R.S. § 16-579(A)(1), the following documents satisfy A.R.S. § 16-123: (1) A valid unexpired Arizona driver license or nonoperating ID ("AZ-issued ID"), regardless of whether the address on the AZ-issued ID matches the address on the voter registration form and even if it lists only a P.O. Box; (2) Any Tribal identification document, including but not limited to a census card, an identification card issued by a tribal government, or a tribal enrollment card, regardless of whether the Tribal identification document contains a photo, a physical address, a P.O. Box, or no address; and (3) Written confirmation signed by the registrant that they qualify to register pursuant to A.R.S. § 16-121(B).  ECF No. 534 at 33-34.

- For the Attorney General on the claims that H.B. 2492, § 4 violates the Materiality Provision of the Civil Rights Act  by ruling that the Checkbox Requirement does not violate the Materiality Provision as applied to individuals who do not provide DPOC. ECF No. 534 at 27-29.[6]

- For the Attorney General on the claim that H.B. 2243, regarding A.R.S. § 16-165(A)(10) and (I), is void for vagueness. ECF No. 534 at 30-32.

The Court also declared that Arizona must abide by the LULAC Consent Decree and, specifically, must treat State Form and Federal Form applicants equally for purposes of registering for federal elections, namely by registering otherwise eligible State-Form applicants who do not provide DPOC for federal elections. ECF No. 534 at 21-22; *see also*

---

[6] The Court also concluded that it "need not address" Plaintiffs' claim that requiring federal-only voters to provide DPOC to vote in presidential elections and by mail violates the Materiality Provision, given the Court's ruling on Section 6 of the NVRA.  ECF No. 534 at 23 n.14.

*id.* at 22 n.13 (noting that, even absent the LULAC Consent Decree, the same requirement would flow from the Court's NVRA Section 6 analysis).[7]

The Court expressly denied summary judgment to both Plaintiffs and Defendants as to whether County Recorders may reject State-Form applications that do not list the applicant's birthplace under Section 4 of H.B. 2492, finding that there were material issues of fact that precluded summary judgment on this issue. ECF No. 534 at 29.

The Court denied (as moot) the Poder Plaintiffs' motion for summary judgment on their 1964 Civil Rights Act claim under 52 U.S.C. § 10101(a)(2)(A), which prohibits the application of different standards, practices, or procedures to determine voters' qualifications. ECF No. 534 at 20 n.10, 35.

The Court denied Defendants' motion for summary judgment that Section 8(a) of the NVRA prohibits removing non-citizens from voter rolls, stating that it was a factual question whether the purge procedures mandated by Section 2 of H.B. 2243 will likely result in unlawful cancellation of legitimate voter registrants under Section 8(a) of the NVRA. ECF No. 534 at 18–19.[8]

The Court granted in part and denied in part Defendants' motion for summary judgment on Plaintiffs' claim under Section 8(b) of the NVRA. As to the challenged provisions governing new voter registration applications, the motion was granted. The motion was denied as to the balance of the claim alleging non-uniformity and discriminatory impact of the challenged provisions governing list maintenance and voter registration cancellation. ECF No. 534 at 19-21, 34.

### 3. Claims to be Presented at Trial

~~The claims remaining for trial are as follows:~~

- ~~Undue Burden on the Right to Vote challenge to:~~

---

[7] The LULAC Consent Decree also obligates the Secretary of State to check all State Form applications submitted without DPOC to determine whether the MVD has DPOC on file for the applicants, in which case such applicants must be made Full Ballot voters.

*Note: Plaintiffs added this footnote on the evening of the deadline for this filing, so Defendants have not had an opportunity to consider it.*

[8] The Court also concluded that it "need not address" parties' arguments regarding the effect of Section 8(a) on certain provisions in H.B. 2492 regarding DPOC and DPOR, given the Court's ruling on Section 6 of the NVRA.

~~(a) H.B. 2492 §§ 1, 3's DPOC Requirement;~~

~~(b) H.B. 2492 § 4's rejection of State-Form applications lacking DPOC[9] or place of birth;~~

~~(c) H.B. 2492 § 4's citizenship verification, database check, notice, and criminal investigation procedures;~~

~~(d) H.B. 2492 § 5's prohibition on voting in presidential elections or early by mail for registrants who lack DPOC;[10]~~

~~(e) H.B. 2492 § 5's[11] DPOR Requirement in so far as Defendant's implementation of this Court's Section 6 preemption holding results in the acceptance of Federal Form applications without DPOR for federal-only elections but the rejection of State Form applications without DPOR.~~

~~(f) H.B. 2492 § 7's citizenship verification, database check, reporting, investigation, and prosecution procedures;~~

~~(g) H.B. 2492 § 8's voter cancellation procedures based on information regarding citizenship; and~~

~~(h) H.B. 2243 § 2's database check requirements, notice, cancellation, and criminal investigation procedures.~~

- ~~Procedural Due Process challenge to:~~
  - ~~H.B. 2492 § 5's prohibition on voting in presidential elections or early by mail for registrants who lack DPOC;[12]~~

---

[9] Defendants' position is that the Court previously granted relief on alternative grounds with respect to State-Form applications lacking DPOC, thereby obviating the need for trial on that facet of the claim. *See* ECF No. 534 at 9-15, 21-22, 33-34.

[10] Defendants' position is that the Court previously granted relief on alternative grounds with respect to these prohibitions in H.B. 2492 § 5, thereby obviating the need for trial on this claim. *See* ECF No. 534 at 9-15, 21-22, 33-34. Non-U.S. Plaintiffs' position on this issue is reflected in Non-U.S. Plaintiffs' Response to Defendants' Motion for Clarification, ECF No. 556.

[11] Given the District Court's rulings on partial summary judgment as to the DPOR requirement, and the lack of any objection to those rulings from any Defendant, Plaintiffs will limit their presentation of evidence on DPOR to two issues: (1) Plaintiffs' standing to challenge the DPOR requirement, and (2) any differential application of the DPOR requirement between State and Federal Form applicants. Plaintiffs have decided not to pursue alternative claims for relief where they are duplicative of the Court's partial summary judgment order because of Defendants' lack of opposition to the Court's relief on this issue, unlike the other issues remaining in the case.

[12] Defendants' position is that the Court previously granted relief on alternative grounds with respect to these prohibitions in H.B. 2492 § 5, thereby obviating the need for trial on

- o ~~H.B. 2492 § 4's criminal investigation procedures, allegedly without a chance to contest or cure,~~
- o ~~H.B. 2492 § 8's cancellation of a voter's registration, allegedly without an adequate opportunity to contest or cure, and~~
- o ~~H.B. 2243 § 2's cancellation of a voter's registration, allegedly without an adequate opportunity to contest or cure; A.R.S. § 16-165(A)(10).~~

- • ~~Equal Protection challenge to alleged arbitrary and disparate treatment of voter registration applicants and voter registrants under H.B. 2492 and H.B. 2243, specifically:~~
  - o ~~Subjecting State Form applicants to alleged arbitrary and disparate treatment by rejecting State Form applications lacking DPOC,[13] or DPOR;~~
  - o ~~Prohibiting registrants who lack DPOC from voting in presidential elections or early by mail, and requiring additional information to register. A.R.S. §§ 16-121.01(A), 16-127;[14]~~
  - o ~~Subjecting voter registration applicants and voter registrants to alleged arbitrary and disparate treatment pursuant to H.B. 2492 and H.B. 2243, specifically:~~
    - ▪ ~~H.B. 2492 § 4 (enacting A.R.S. § 16-121.01(D)-(E));[15]~~
    - ▪ ~~H.B. 2492 § 7 (enacting A.R.S. § 16-143);~~
    - ▪ ~~H.B. 2492 § 8 (enacting A.R.S. § 16-165(A)(10)); and~~
    - ▪ ~~H.B. 2243 § 2 (amending A.R.S. § 16-165(A)(10) and enacting A.R.S. §§ 16-165(G), 16-165(H), 16-165(I), 16-165(J), 16-165(K)) subjecting voter registration applicants and voter registrants to allegedly discriminatory DPOC requirements, database comparisons, and allegedly wrongful and harassing criminal investigations and prosecutions.~~

---

this claim.  *See* ECF No. 534 at 9-15, 21-22, 33-34. Non-U.S. Plaintiffs' position on this issue is reflected in Non-U.S. Plaintiffs' Response to Defendants' Motion for Clarification, ECF No. 556.

[13] Defendants' position is that the Court previously granted relief on alternative grounds, thereby obviating the need for trial on this claim.  *See* ECF No. 534 at 9-15, 21-22, 33-34. Non-U.S. Plaintiffs' position on this issue is reflected in Non-U.S. Plaintiffs' Response to Defendants' Motion for Clarification, ECF No. 556.

[14] Defendants' position is that the Court previously granted relief on alternative grounds with respect to voting in presidential elections and voting by mail, thereby obviating the need for trial on those facets of the claim.  *See* ECF No. 534 at 9-15, 21-22, 33-34. Non-U.S. Plaintiffs' position on this issue is reflected in Non-U.S. Plaintiffs' Response to Defendants' Motion for Clarification, ECF No. 556.

[15] Defendants' position is that the Court previously granted relief on alternative grounds with respect to the DPOC requirement in these provisions of H.B. 2492 § 4, thereby obviating the need for trial on that facet of the claim.  *See* ECF No. 534 at 9-15, 21-22, 33-34. Non-U.S. Plaintiffs' position on this issue is reflected in Non-U.S. Plaintiffs' Response to Defendants' Motion for Clarification, ECF No. 556.

- ~~Equal Protection challenge to:~~
  - ~~H.B. 2492's Birthplace Requirement and~~
  - ~~H.B. 2492 and H.B. 2243's provisions subjecting voter registration applicants and voter registrants to allegedly discriminatory DPOC requirements,[16] database comparisons, and allegedly wrongful and harassing criminal investigations and prosecutions on the bases of race, national origin, and alienage discrimination.~~

- ~~Fourteenth and Fifteenth Amendment racial and national origin discrimination challenge to allegedly unfettered discretion in voter registration conferred by Ariz. Rev. Stat. § 16-165(I) (the "reason to believe" provision), *as enacted by* H.B. 2243, § 2.~~

- ~~National Voter Registration Act Section 6 challenge to H.B. 2243 § 2's cancellation procedures for voters that registered through the Federal Form but lacked DPOC, in violation of Section 6's requirement that the State of Arizona accept and use the Federal Form.~~

- ~~National Voter Registration Act Section 7 challenge to H.B. 2492's disparate treatment of State and Federal Forms given Section 7's requirement that public assistance agencies provide voter registration services using the Federal Form or "its equivalent."[17]~~

- ~~National Voter Registration Act Sections 6 and 8(a) challenges to the DPOR Requirement in so far as Defendant's implementation of this Court's Section 6 preemption holding results in the acceptance of Federal Form applications without DPOR for federal-only elections but the rejection of State Form applications without DPOR.[18]~~

- ~~National Voter Registration Act 8(b) challenge to discriminatory and non-uniform treatment of registered voters caused by H.B. 2492 and H.B. 2243, specifically:~~

---

[16] Defendants' position is that the Court previously granted relief on alternative grounds with respect to the DPOC requirement, thereby obviating the need for trial on this facet of the claim. *See* ECF No. 534 at 9-15, 21-22, 33-34. Non-U.S. Plaintiffs' position on this issue is reflected in Non-U.S. Plaintiffs' Response to Defendants' Motion for Clarification, ECF No. 556.

[17] Defendants' position is that the Court previously granted relief on alternative grounds with respect to the DPOC requirement, thereby obviating the need for trial on this facet of the claim. *See* ECF No. 534 at 9-15, 21-22, 33-34. Non-U.S. Plaintiffs' position on this issue is reflected in Non-U.S. Plaintiffs' Response to Defendants' Motion for Clarification, ECF No. 556.

[18] *Note: Plaintiffs added this statement of their claim on the evening of the deadline for this filing, so Defendants have not had an opportunity to consider it.* Plaintiffs respond that these additions were made in response to an evolving understanding of the Parties' differing interpretation of this Court's partial summary judgment order and Plaintiffs made counsel for Defendants aware of likely revisions this morning.

- ○ ~~Ariz. Rev. Stat. § 16-143, *as enacted by* H.B. 2492 § 7;~~
- ○ ~~Ariz. Rev. Stat. § 16-165(A)(10), *as enacted by* H.B. 2492 § 8; and~~
- ○ ~~Ariz. Rev. Stat. §§ 16-165(F), 16-165(G), 16-165(H), 16-165(I), 16-165(J), 16-165(K), *as enacted by* 2022 Ariz. Sess. Laws, ch. 370H.B. 2243 § 2.~~

- ~~Materiality Provision (52 U.S.C. § 10101(a)(2)(B)) challenge to H.B. 2492, § 4's Birthplace Requirement. A.R.S. § 16-121.01(A).~~

- ~~52 U.S.C. § 10101(a)(2)(A) challenge to Ariz. Rev. Stat. § 16-165(I) (the "reason to believe" provision), *as enacted by* H.B. 2243, § 2.~~

- ~~Section 2 of the Voting Rights Act claim against all Challenged Provisions.[19]~~

## D.    JURY/NON-JURY

The parties agree to a non-jury bench trial. No party demands a jury trial.

## E.    CONTENTIONS OF THE PARTIES

For each of the claims brought by the Plaintiffs, the elements of each and corresponding burdens of proofs are as follows:[20]

**1. UNDUE BURDEN ON THE RIGHT TO VOTE (First and Fourteenth Amendments' protection of fundamental right to vote)**

**a. Provisions challenged by Plaintiffs under this claim:**
- H.B. 2492 §§ 1, 3, 4, 5, 7, 8
- H.B. 2243 § 2

**b. Elements or standards that must be proved for Plaintiffs to prevail:**
<u>Plaintiffs' Position</u>: This claim is evaluated using the *Anderson-Burdick* test, which requires an initial showing by plaintiffs, after which the burden shifts to defendants:
- First, plaintiffs must show that the challenged provision imposes a burden on the right to vote. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

---

[19] Per footnote 11, *supra*, Plaintiffs do not intend to present evidence with respect to the DPOR requirement beyond the limited issues identified in footnote 11.

[20] Plaintiffs must also demonstrate standing and ripeness. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–62 (1992); *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138–40 (9th Cir. 2000) (en banc).  In addition, Plaintiffs must demonstrate that they satisfy the conditions for equitable remedies of injunctive and declaratory relief, including a sufficient likelihood of future injury.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–13 (1983); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040–44 (9th Cir. 1999) (en banc).

- Once plaintiffs have established that the challenged provision imposes a burden on the right to vote, no matter how slight, the burden shifts to defendants to prove that the state's interests in the specific challenged provisions justify those burdens. *See id.*; *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1187 (9th Cir. 2021).
- The scrutiny that the state must meet in making the showing described in (ii) above is determined by the Court based on its evaluation of plaintiffs' evidence regarding the burden imposed: if the Court finds that the challenged provision imposes a severe burden on the right to vote, the state must meet strict scrutiny and show a compelling interest narrowly tailored to serve that interest. Lesser burdens have to meet less demanding levels of scrutiny. ECF No. 304 at 20. However, in all cases *Anderson-Burdick* imposes a "means-end fit framework," *Pub. Integrity All. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016), such that even where a burden is slight, it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation. *See, e.g.*, *Ariz. Democratic Party*, 18 F.4th at 1187; *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.).

Defendants' Position: Plaintiffs must show that the challenged provision imposes a burden on the right to vote." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). The challenged law is subject to strict scrutiny only if the Court finds that the burden is "severe." "Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify 'reasonable, nondiscriminatory restrictions." *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1187 (9th Cir. 2021). "When a challenged rule imposes only limited burdens on the right to vote, there is no requirement that the rule is the only or the best way to further the proffered interests." *Dudum v. Arntz*, 640 F.3d 1098, 1114 (9th Cir. 2011).

**c. Relief requested:** Declaratory and injunctive relief enjoining Defendants from enforcing the challenged provisions of H.B. 2492 and H.B. 2243; an award of costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law; and such other and further relief as the Court deems just and proper.

## 2. PROCEDURAL DUE PROCESS CLAIMS (Fourteenth Amendment's guarantee of procedural due process)

**a. Provisions challenged by Plaintiffs under this claim:**
- H.B. 2492 §§ 4, 5, 8
- H.B. 2243 § 2

**b. Elements or standards that must be proved for Plaintiffs to prevail:** This claim is also subject to the *Anderson-Burdick* standard, though Plaintiffs allege it specifically with respect to burdens imposed by procedural deficiencies in the challenged laws, which Plaintiffs allege are not supported by a sufficient state interest. ECF No. 304 at 27 (citing *Ariz. Democratic Party*, 18 F.4th at 1195; *Ariz. Democratic Party v. Hobbs*, 976 F.3d 1081, 1086 n.1 (9th Cir. 2020)). *See supra* Section E.1.b.

**c. Relief requested:** Declaratory and injunctive relief enjoining Defendants from enforcing the challenged provision of H.B. 2492 and H.B. 2243; an award of costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law; and such other and further relief as the Court deems just and proper.

**3. DISPARATE TREATMENT OF STATE FORM REGISTRANTS AND FEDERAL-ONLY VOTERS EQUAL PROTECTION CLAIM (Fourteenth Amendment's equal protection guarantee)**

**a. Provisions challenged by Plaintiffs under this claim:**
- H.B. 2492 §§ 1, 3, 4, 5, 7
- H.B. 2243 § 2

**b. Elements or standards that must be proved for Plaintiffs to prevail:**

**c.** Plaintiffs' Position: This claim may also be analyzed under the *Anderson-Burdick* standard. *Obama for Am. v. Husted*, 697 F.3d 423, 430 (6th Cir. 2012) ("When a state regulation is found to treat voters differently in a way that burdens the fundamental right to vote, the *Anderson–Burdick* standard applies."); *see also Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011). *See supra* Section E.1.b. In the Equal Protection context, however, courts also "rely . . . on the analysis in . . . prior election cases resting on the Equal Protection Clause of the Fourteenth Amendment." *Dudum*, 640 F.3d at 1106 n.15 (quoting *Anderson*, 460 U.S. at 787 n.7). Further, the Supreme Court held in *Bush v. Gore* that "arbitrary and disparate treatment" in either the "allocation of the franchise" or "the manner of its exercise" is unlawful. 531 U.S. 98, 104-09 (2000).

Defendants' Position: Defendants believe that this claim should be analyzed under the *Anderson-Burdick* standard, *see supra* Section E.1.b, and that *Bush v. Gore*, 531 U.S. 98 (2000), does not supply an independent or freestanding claim or applicable doctrinal rubric.

**d. Relief requested:** Declaratory and injunctive relief enjoining Defendants from enforcing the challenged provisions of H.B. 2492 and H.B. 2243; an

award of costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law; and such other and further relief as the Court deems just and proper.

**4. ARBITRARY AND DISPARATE TREATMENT CAUSED BY CITIZENSHIP INVESTIGATION PROCEDURES:** (Fourteenth Amendment and *Bush v. Gore*)

    **a. Provisions for which Plaintiffs have alleged these claims:**
- H.B. 2492 §§ 4, 7, 8
- H.B. 2243 § 2

    **Elements or standards that must be proved for Plaintiffs to prevail:** Plaintiffs' Position: Plaintiffs must prove that the challenged provisions above, separately or in combination, are causing and, absent relief, will continue to cause arbitrary and disparate treatment of voter registration applicants and registered voters in Arizona. *See Bush v. Gore*, 531 U.S. 98, 104 (2000) (prohibiting "arbitrary and disparate treatment" in either the "allocation of the franchise" or "the manner of its exercise"); *id*. at 104–09 (concluding that "absence of specific standards" to implement vague "intent of the voter" standard caused "arbitrary and disparate treatment" in violation of Equal Protection Clause); *see also Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 235, 239–42 (6th Cir. 2011) (applying *Bush v. Gore* to conclude "lack of specific standards for reviewing provisional ballots" had resulted in unconstitutionally "arbitrary and uneven exercise of discretion"). This Court considered and rejected Defendants' position in its February 16, 2023 order on the motion to dismiss. *See* ECF No. 304 at 22 n.11 ("[T]he authority Defendants cite for this assertion does not foreclose constitutional claims pled outside of the *Anderson-Burdick* framework.").

    Defendants' Position: Defendants believe that this claim should be analyzed under the *Anderson-Burdick* standard, *see supra* Section E.1.b, and that *Bush v. Gore*, 531 U.S. 98 (2000), does not supply an independent or freestanding claim or applicable doctrinal rubric.

    **b. Relief requested:** Declaratory and injunctive relief against the challenged provisions or, in the alternative, declaratory relief and an injunction against the Secretary of State's Office requiring it to adopt, issue, and communicate guidance to the County Recorders ensuring that the challenged provisions are administered in a non-arbitrary and uniform manner, failing which the Court should order its own. This claim also seeks an award of costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law; and such other and further relief as the Court deems just and proper. This claim seeks relief as to all elections—federal, state, and local.

**5. PROHIBITION ON NATIONAL ORIGIN OR ALIENAGE EQUAL PROTECTION CLAIM:** (Fourteenth Amendment's Prohibition on National Origin or Alienage Discrimination)

    **a. Provisions for which Plaintiffs have alleged these claims:**
- H.B. 2492 §§ 1, 3, 4, 5, and 7
- H.B. 2243 § 2

    **b. Elements or standards that must be proved for Plaintiffs to prevail:**
<u>Plaintiffs' Position</u>: Plaintiffs can demonstrate that the challenged laws violate the Fourteenth Amendment by establishing that they (1) "expressly classif[y]," *Mitchell v. Washington*, 818 F.3d 436, 446 (9th Cir. 2016), based on national origin, and (2) do not serve a narrowly tailored to promote a compelling state interest. *Nunez v. City of San Diego*, 114 F.3d 935, 946 (9th Cir. 1997). Even a benign use of a suspect classification is subject to strict scrutiny if it is a factor in a government decision. *Mitchell v. Washington*, 818 F.3d 436, 445-46 (9th Cir. 2016). Plaintiffs can demonstrate that H.B. 2243, § 2, by establishing that the challenged provisions classify voters who are naturalized U.S. citizens differently than native-born citizens based on their former alienage. *See Faruki v. Rogers*, 349 F. Supp. 723, 729 (D.D.C. 1972) (U.S. citizens classified based on alienage "where the statute differentiates between native-born citizens and those who were once aliens"). In the alternative, if the Court does not find a classification, Plaintiffs can meet their burden by proving the challenged provisions were motivated by discriminatory intent under the factors outlined in *Arlington Heights. See infra* number 6 below.

<u>Defendants' Position</u>:  Because neither H.B. 2492 nor H.B. 2243 "expressly classifies," *Mitchell v. Washington*, 818 F.3d 436, 446 (9th Cir. 2016), persons based on national origin or alienage, Plaintiffs must prove that the challenged provisions were motivated by an intent to discriminate based on national origin or alienage.

    **c. Relief requested:** Declaratory and injunctive relief enjoining Defendants from enforcing the challenged provisions of H.B. 2492 and H.B. 2243; an award of costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law; and such other and further relief as the Court deems just and proper.

**6. INTENTIONAL RACE AND NATIONAL ORIGIN DISCRIMINATION:**
(Fourteenth & Fifteenth Amendments)

    **a. Provisions for which Plaintiffs have alleged these claims:**
- H.B. 2492 §§ 1, 3, 4, 5, 7, and 8
- H.B. 2243 § 2

    **b. Elements or standards that must be proved for Plaintiffs to prevail:**
Plaintiffs' Position: Plaintiffs can demonstrate that the challenged laws violate the Fourteenth and Fifteenth Amendments by establishing that their enactment was motivated by a discriminatory purpose under the totality of the relevant facts, including "(1) the impact of the official action and whether it bears more heavily on one race than another; (2) the historical background of the decision; (3) the specific sequence of events leading to the challenged action; (4) the defendant's departures from normal procedures or substantive conclusions; and (5) the relevant legislative or administrative history." *Arce v. Douglas*, 793 F.3d 968, 977-78 (9th Cir. 2015); *Washington v. Davis*, 426 U.S. 229, 242 (1976). Plaintiffs need not prove that "the discriminatory purpose was the sole purpose of the challenged action, but only that it was a motivating factor." *Arce*, 793 F.3d at 977.

Defendants' Position: Plaintiffs cannot prove discriminatory intent using a "cat's paw" theory to impute an individual bill sponsor or proponent's allegedly improper motive to the legislative body as a whole. *Brnovich v. Democratic Nat'l. Comm.*, 141 S. Ct. 2321, 2350 (2021).

    **c. Relief requested:** Declaratory and injunctive relief enjoining Defendants from enforcing the challenged provisions of H.B. 2492 and H.B. 2243; an award of costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law; and such other and further relief as the Court deems just and proper.

**7. RACIAL AND NATIONAL ORIGIN DISCRIMINATION CLAIM:**
(Fourteenth and Fifteenth Amendment Prohibition on Unfettered Discretion in Voter Registration).

    **a. Provisions for which Plaintiffs have alleged these claims:**
- H.B. 2243 § 2 (enacting A.R.S. § 16-165(I))

    **b. Elements or standards that must be proved for Plaintiffs to prevail:**
Plaintiffs' Position: The Fourteenth Amendment's Equal Protection Clause prohibits racial and national origin discrimination. To guard against this in the voting rights context, one rule that courts have enforced as a preventative measure is prohibiting the vesting of unfettered discretion upon voting registrars. *See Davis v. Schnell*, 81 F. Supp. 872, 878 (S.D. Ala. 1949), *aff'd*

336 U.S. 933 (1949) (holding that local registrars' "arbitrary power" and "unlimited discretion" in administering constitutional understanding test amounted to a denial of equal protection of the law under Fourteenth Amendment); *Hernandez v. State of Tex.*, 347 U.S. 475, 479 (1954) (discrimination on basis of national origin violates Fourteenth Amendment). Additionally, the Fifteenth Amendment prohibits racial discrimination concerning "the right of citizens of the United States to vote." U.S. Const. amend. XV. The same rule has been applied in Fifteenth Amendment cases. *Louisiana v. United States*, 380 U.S. 145, 152-53 (1965) (striking down arbitrary constitutional understanding test for voter registration because laws that are "completely devoid of standards and restraints" and thereby confer unfettered discretion upon registrars *enable* racial discrimination). Racial discrimination "is the *inescapable* effect of a *subjective requirement* . . . barren of standards and safeguards, the administration of which rests in the *uncontrolled discretion* of a registrar." *United States v. Louisiana*, 225 F. Supp. 353, 381 (E.D. La. 1963) (emphases added), *aff'd Louisiana v. United States*, 380 U.S. 145 (1965). Having made no argument on this claim in their motion to dismiss, ECF No. 304 at 26 n.14, Defendants now belatedly seek its de facto dismissal by arguing it must be construed and analyzed as an *Anderson-Burdick* claim. This is incorrect. *Louisiana* was decided under the Fifteenth Amendment, but *Anderson-Burdick* does not implicate the Fifteenth Amendment. In its February 16, 2023 Order on the motion to dismiss, this Court applied *Louisiana*'s standard, not the *Anderson-Burdick* or *Arlington Heights* frameworks. ECF No. 304 at 26 n.14.

Defendants' Position: Defendants do not believe that this theory is cognizable as an independent and freestanding claim under the applicable case law.  To the extent it alleges an undue burden on the right to vote or a denial of procedural due process, it should be analyzed under the *Anderson-Burdick* framework.  *See supra* Section E.1.b.  To the extent it alleges intentional discrimination based on a suspect classification, it should be analyzed under the standards that govern such claims.  *See supra* Section E.5.b and Section E.6.b.

c. **Relief requested:** Declaratory and injunctive relief against A.R.S. § 16-165(I), or, in the alternative, declaratory relief and an injunction against the Secretary of State's Office requiring it to adopt, issue, and communicate guidance to the County Recorders ensuring that A.R.S. § 16-165(I) is administered in a non-arbitrary and uniform manner, failing which the Court should order its own. This claim seeks relief as to all elections—federal, state, and local. This claim also seeks an award of costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law; and such other and further relief as the Court deems just and proper.

**8. MATERIALITY PROVISION CLAIMS (52 U.S.C. § 10101(a)(2)(B))**

    **a. Provisions challenged by Plaintiffs under this claim:**
- H.B. 2492 § 4

    **b. Elements or standards that must be proved for Plaintiffs to prevail:**

    <u>Plaintiffs' Position</u>: Plaintiffs must show that state action denies individuals the right to vote, as defined in the Civil Rights Act, based on errors or omissions on "any record or paper relating to any application [or] registration" that are not material to determining the individual's qualifications to vote under state law.  52 U.S.C. § 10101(a)(2)(B); *see also Migliori v. Cohen*, 36 F.4th 153, 163-64 (3d Cir. 2022); *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308 (N.D. Ga. 2018). Thus, Plaintiffs must show that a prospective registrant's place of birth is not material to determining whether that individual is qualified to vote under state law, and that a failure to provide the birthplace information results in a denial of the right to vote.

    Plaintiffs can satisfy this standard by showing that the required information is "unnecessary and therefore not material to determining a individual's qualifications to vote" under Arizona law. ECF No. 304 at 26 (quoting *La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 542 (W.D. Tex. 2022)); *see also* ECF No. 534 at 25-26 ("Congress intended materiality to require some probability of actually impacting an election official's eligibility determination."); *Migliori*, 36 F.4th at 164 (finding challenged requirement immaterial where parties seeking to defend it "offered no compelling reasons for how these dates . . . help determine one's age, citizenship, residency, or felony status").

    <u>Defendants' Position</u>: Plaintiff can satisfy this standard only by proving that the required information lacks some "probability of actually impacting an election official's . . . determination" of an individual's eligibility to vote under Arizona law.  ECF No. 534 at 26; *see also League of Women Voters of Ark. v. Thurston*, No. 5:20-cv-05174, 2023 WL 6446015, at \*17 (W.D. Ark. Sept. 29, 2023) (explaining that "the Materiality Provision 'does not establish a least-restrictive-alternative test' for the material information required," and "[t]he fact that [state] officials can (and sometimes do) establish voters' identities with less information does not mean that they should be legally required to do so").

    **c. Relief requested:** Declaratory and injunctive relief enjoining Defendants from enforcing the challenged provision of H.B. 2492; an award of costs, expenses, and reasonable attorneys' fees for the non-United States plaintiffs, pursuant to 42 U.S.C. § 1988, and any other applicable law; the United States as a prevailing party is entitled to costs pursuant to 28 U.S.C. § 2412(a), and such other and further relief as the Court deems just and proper.

9. **CIVIL RIGHTS ACT SECTION 10101(a)(2)(A) CLAIM:** (Civil Rights Act Prohibition on Different Standards, Practices, or Procedures in Determining Voter Qualifications).

   a. **Provisions for which Plaintiffs have alleged these claims:**
      - H.B. 2243 § 2 (enacting A.R.S. § 6-165(I))

   b. **Elements or standards that must be proved for Plaintiffs to prevail:** To establish a violation of 52 U.S.C. § 10101(a)(2)(A), Plaintiffs must prove that (a) a person "acting under color of law"; (b) "in determining whether any individual is qualified under State law or laws to vote in any election"; (c) has applied "standards, practices, or procedures"; that are (d) "different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote."

   c. **Relief requested:** Declaratory and injunctive relief against A.R.S. § 16-165(I), or, in the alternative, declaratory relief and an injunction against the Secretary of State's Office requiring it to adopt, issue, and communicate guidance to the County Recorders ensuring that A.R.S. § 16-165(I) is administered in a non-arbitrary and uniform manner, failing which the Court should order its own. This claim seeks relief as to all elections—federal, state, and local. This claim also seeks an award of costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law; and such other and further relief as the Court deems just and proper.

10. **NATIONAL VOTER REGISTRATION ACT SECTION 6 CLAIM:** (NVRA Requirement that States "Accept and Use" the Federal Form).

    a. **Provisions for which Plaintiffs have alleged these claims:**
       - H.B. 2243 § 2

    b. **Elements or standards that must be proved for Plaintiffs to prevail:** Plaintiffs can establish a violation of Section 6 of the NVRA by demonstrating that the challenged law violates the requirement that the State of Arizona accept and use the Federal Form for the registration of voters in elections for Federal office.

    c. **Relief requested:** Declaratory and injunctive relief enjoining Defendants from enforcing the challenged provision of H.B. 2243; an award of costs, expenses, and reasonable attorneys' fees, pursuant to 52 U.S.C. § 20510, and any other applicable law; and such other and further relief as the Court deems just and proper.

11. **NATIONAL VOTER REGISTRATION ACT SECTION 8(b) CLAIM:** (NVRA Requirement of Uniform and Nondiscriminatory List Maintenance Programs).

    a.  **Provisions for which Plaintiffs have alleged these claims:**
- H.B. 2492 §§ 7, 8
- H.B. 2243 § 2

    b.  **Elements or standards that must be proved for Plaintiffs to prevail:**
<u>Plaintiffs' Position</u>: A list maintenance program or activity violates Section 8(b) of the NVRA if it is either non-uniform or discriminatory. Plaintiffs must prove that the challenged provisions above, separately or in combination, result in the use of a non-uniform program or activity in the maintenance of Arizona's voter list. *See Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 703 (N.D. Ohio 2006) (violation of Section 8(b) based on law that treated different classes of registration drive participants differently). One basis for Plaintiffs to prevail includes showing that the challenged citizenship investigation provisions have a non-uniform impact on naturalized citizens as compared with other citizens. *United States v. Florida*, 870 F. Supp. 2d 1346, 1350-51 (N.D. Fla. 2012) (state purge program "probably ran afoul of [NVRA section 8(b)] because its methodology made it likely that newly naturalized citizens were the primary individuals who would have to respond and provide documentation"). A distinct basis for finding a violation under Section 8(b) requires Plaintiffs to prove a discriminatory effect from the challenged provisions above on a group of registered voters, here naturalized registered voters.

<u>Defendants' Position</u>: Defendants do not agree that the cited district court cases or the sentences that follow the citations are applicable here.

    c.  **Relief requested:** Declaratory and injunctive relief against the challenged provisions, an award of costs, expenses, and reasonable attorneys' fees, pursuant to 52 U.S.C. § 20510, and any other applicable law; and such other and further relief as the Court deems just and proper. Or, in the alternative, Poder Latinx Plaintiffs seek declaratory relief and an injunction against the Secretary of State's Office requiring it to adopt, issue, and communicate guidance to the County Recorders ensuring that the challenged provisions are administered in a uniform and non-discriminatory manner, failing which the Court should order its own. This claim seeks relief only as to federal elections.

**12. NATIONAL VOTER REGISTRATION ACT SECTION 7 CLAIM:** (NVRA Mandate that Public Assistance Agencies Use a Form "Equivalent" to the Federal Form):

    **a. Provisions for which Plaintiffs have alleged these claims:**
        • H.B. 2492 § 4

    **b. Elements or standards that must be proved for Plaintiffs to prevail:** Plaintiffs can establish a violation of Section 7 of the NVRA by demonstrating that a State's practices result in public assistance agencies mandated to provide voter registration services failing to distribute either the Federal Form or a voter registration form that is the "equivalent" of the Federal Form.

    **c. Relief requested:** Declaratory and injunctive relief against the Challenged Provision as applied to applications received from public assistance agencies, an award of costs, expenses, and reasonable attorneys' fees, pursuant to 52 U.S.C. § 20510, and any other applicable law; and such other and further relief as the Court deems just and proper.

**13. NATIONAL VOTER REGISTRATION ACT SECTION 6 AND 8(A) CLAIMS REGARDING DPOR:**

    **a. Provisions for which Plaintiffs have alleged these claims:**
        • H.B. 2492 § 5 (DPOR requirement)

    **b. Elements or standards that must be proved for Plaintiffs to prevail:** Plaintiffs can establish a violation of the NVRA's Section 6 by demonstrating that the State uses its own mail voter registration form to register voters for federal elections and that form fails to meet the criteria for the Federal Form, as identified in 52 U.S.C. 20508(b). *See* ECF 534 at 22 fn. 13. Plaintiffs can establish a violation of the NVRA's Section 8(a) by establishing that the State fails to "ensure that any eligible applicant is registered to vote in an election" when they submit a facially valid voter registration form under the NVRA's requirements for voter registration. **Relief requested:** Declaratory and injunctive relief requiring election officials to register otherwise eligible voters as "federal only" voters if they submit a State Form without DPOR, an award of costs, expenses, and reasonable attorneys' fees, pursuant to 52 U.S.C. § 20510, and any other applicable law; and such other and further relief as the Court deems just and proper.[21]

---

[21] *Note: Plaintiffs added this statement of their claim on the evening of the deadline for this filing, so Defendants have not had an opportunity to consider it.* Plaintiffs respond that these additions were made in response to an evolving understanding of the Parties' differing interpretation of this Court's partial summary judgment order and Plaintiffs made counsel for Defendants aware of likely revisions this morning.

**14. VOTING RIGHTS ACT SECTION 2 CLAIM (52 U.S.C. SECTION 10301)** (Prohibition on Vote Denial):

    **a. Provisions for which Plaintiffs have alleged these claims:**
- H.B. 2492 §§ 1, 3, 4, 5, 7, 8
- H.B. 2243 § 2

    **b. Elements or standards that must be proved for Plaintiffs to prevail:** A voting rule violates Section 2 of the Voting Rights Act if it "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color" or language-minority status. 52 U.S.C. § 10301(a). Courts reviewing a Section 2 claim consider "the totality of circumstances" in each case and whether "the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members" of a protected class "in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* § 10301(b). Important factors include but are not limited to: the size of the burden imposed by the rule; "the degree to which the rule departs from what was standard practice when § 2 was amended in 1982;" the disparate impact on members of different racial and ethnic groups; "opportunities provided by a State's entire system of voting;" and the strength of the State's interests in imposing the rule. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2338-39 (2021).

    **c. Relief requested:** Declaratory and injunctive relief enjoining Defendants from enforcing the challenged provisions of H.B. 2492 and H.B. 2243; an award of costs, expenses, and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988, and any other applicable law; and such other and further relief as the Court deems just and proper.

## F. STIPULATIONS AND UNDISPUTED FACTS

Stipulations of fact and law proposed by Plaintiffs and agreed to by the Secretary of State, Attorney General, RNC, and Speaker Toma and President Petersen are attached hereto as **Exhibit 1.** Plaintiffs proposed that each of these Defendants individually indicate which proposed facts they were willing to stipulate to in order to most clearly identify outstanding disputes between the numerous parties attending trial. The Attorney General, Secretary of State, RNC, and Speaker Toma and President Petersen agreed to provide individual responses to Plaintiffs' proposed stipulations but only agreed to include stipulations agreed to by all four Defendants in the JPTO. Plaintiffs agreed to this request

but intend to move *in limine* to admit these individual stipulations in order to streamline trial proceedings by making clear which Defendants dispute which factual issues. *See infra* Section N (Motions in Limine). Similarly, Plaintiffs offered more limited sets of proposed stipulations of fact to the County Recorder Defendants, focusing specifically on facts pertaining to the duties of the County Recorders or facts specific to a given county. Plaintiffs intend to move *in limine* to admit these stipulations as well, again to further clarify the scope of outstanding disputes of fact for trial.

Stipulations of fact proposed by Defendants and agreed to by Plaintiffs are attached hereto as **Exhibit 2.**

## G. PLAINTIFFS' CONTENTIONS OF DISPUTED FACT

**1.** Each Non-U.S. Plaintiff satisfies the requirements for organizational, associational, and/or individual standing for each one of that Plaintiff's claims.

**2.** The Challenged Laws will substantially burden qualified individuals' fundamental right to vote. Arizonans will have their registrations rejected (including because immaterial information is required), cancelled, suspended, limited, or delayed by the Challenged Laws. As a result, eligible Arizona voters will be unable to register and vote or face substantial burdens in doing so.

**3.** The discriminatory treatment of State Form voter registrations—requiring the rejection of State Forms lacking place of birth or documentary proof of citizenship ("DPOC") or documentary proof of location of residency ("DPOR")--substantially burdens eligible Arizonans; the vast majority of Arizonans that register by paper form use the State Form and the State Form is more accessible to Arizonans.

**4.** Excluding "federal-only" voters from voting in presidential elections would reduce voters' likelihood of voting in other elections, both in the immediate future and in the longer term.

**5.** Excluding "federal-only" voters from voting by mail burdens the right to vote because mail voting is significantly more accessible than voting in person for many eligible voters; the vast majority of Arizonans vote by mail, which state law has allowed, excuse-free, for more than 20 years.

**6.** Canceling voters' registrations without an adequate opportunity for the

cancelled voter to contest or cure the basis for cancellation burdens the right to vote by depriving those voters of their previous voting rights without adequate procedures.

7.      Rejecting voter registration applications and forwarding the applications to the County Attorney and Attorney General for investigation without allowing the applicant an opportunity to contest or cure burdens the right to vote by subjecting registrants to potential criminal investigation.

8.      The Challenged Laws' reliance on faulty and stale citizenship data from an undefined set of sources to reject and/or cancel voter registrations substantially burdens eligible Arizona voters and disproportionately burdens naturalized citizen voters.

9.      No sufficiently weighty state interest justifies the burdens imposed by the Challenged Laws, particularly as registration or voting by non-citizens in elections held in Arizona is essentially non-existent.

10.     The Challenged Laws are not meaningfully tailored to serve any legitimate state interest.

11.     Canceling voters' registrations without an adequate opportunity for the cancelled voter to contest or cure burdens the right to vote by depriving those voters of their previous voting rights without adequate procedures.

12.     Rejecting voter registration applications and forwarding the applications to the County Attorney and Attorney General for investigation without allowing the applicant an opportunity to contest or cure burdens the right to vote by subjecting registrants to potential criminal investigation.

13.     No sufficiently weighty state interest justifies the burdens imposed by the Challenged Laws, particularly as voting by non-citizens in elections held in Arizona is essentially non-existent.

14.     If implemented, the Challenged Laws would disproportionately affect racial minorities and naturalized citizens.

15.     If implemented, the Challenged Laws facially classify based on national origin and/or alienage.

16.     If implemented, H.B. 2492 treats similarly situated State-Form applicants differently from Federal-Form applicants, including in violation of the *LULAC* consent

decree.

**17.** If implemented, H.B. 2492 mandates that "Federal-Only" voters be subject to arbitrary restrictions on mail voting and voting in presidential elections not imposed on other voter registration applicants.

**18.** No legitimate state interest justifies such discriminatory or differential treatment, particularly as voting by non-citizens in elections held in Arizona is essentially non-existent.

**19.** The Challenged Laws were enacted with discriminatory intent against voters of color and naturalized citizens, as measured by the factors set forth in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) and *Arce v. Douglas*, 793 F.3d 968, 977-78 (9th Cir. 2015).

**20.** The challenged citizenship investigation procedures in H.B. 2492 §§ 4, 7, and 8 and H.B. 2243 § 2, separately or in combination, cause the arbitrary and disparate treatment of voter registration applicants and registered voters in Arizona.

**21.** Arizona's fifteen County Recorder offices have significantly different views on how to interpret, implement, and enforce the challenged citizenship investigation procedures in H.B. 2492 §§ 4, 7, and 8 and H.B. 2243 § 2.

**22.** The proposed 2023 Arizona Election Procedures Manual, that has been submitted to the Governor and the Attorney General for their approval—which could be adopted at any time and without further revisions—contains no interpretations, definitions, rules, or guidance that will ensure county recorders implement and enforce the challenged citizenship investigation procedures in H.B. 2492 §§ 4, 7, and 8 and H.B. 2243 § 2 in a non-arbitrary and uniform manner statewide.

**23.** Arizona's fifteen County Recorder offices use the SAVE system and USCIS's other naturalized citizenship verification procedures in a non-uniform, inconsistent, and disparate manner.

**24.** Arizona has no law, rule, regulation, or guidance in any current or draft version of the Arizona Election Procedures Manual regarding what county recorders must do when a registered voter is removed from the rolls due to an erroneous voting eligibility determination, but that error is not discovered until after the voter registration deadline has

passed. Accordingly, what to do in such circumstances is left—and will continue to be left—to the subjective judgment calls of fifteen county recorders and their staff.

25.     If implemented, Section 2 of H.B. 2243 would exclude certain voters that make lawful use of the Federal Form to register to vote from voting in presidential elections and by mail in violation of Section 6 of the NVRA.

26.     If implemented, the Challenged Laws will likely result in unlawful cancellation of legitimate voter registrants.

27.     If implemented, Section 8 of H.B. 2492 would allow systematic cancellation of voter registration within 90 days of a Federal Election in violation of Section 8 of the NVRA.

28.     Given this Court's Section 6 preemption ruling regarding DPOR, the implementation of H.B. 2492's remaining DPOR requirement will lead to arbitrary treatment of voters based on their usage of the State Form or Federal Form.

29.     Given that election officials can and must accept Federal Forms without DPOR, the State cannot establish that DPOR is "necessary to enable the appropriate State election official to assess the eligibility of the applicant and to administer voter registration and other parts of the election process."

30.     The public assistance agencies in Arizona mandated to provide voter registration services under Section 7 of the NVRA use the State Form in providing their customers with voter registration services.

31.     Under H.B. 2492, State Forms are not processed in an equivalent fashion to Federal Forms.

32.     If implemented, the Challenged Laws would create discriminatory and non-uniform voter-roll maintenance programs and removals that violate Section 8 of the NVRA.

33.     The challenged laws, separately or in combination, result in the use of a non-uniform program or activity in the maintenance of Arizona's voter list.

34.     The challenged citizenship investigation procedures in H.B. 2492 §§ 7 and 8 and H.B. 2243 § 2, separately or in combination, cause the non-uniform treatment of registered voters as a whole and the non-uniform and discriminatory treatment of

naturalized registered voters in particular.

**35.**     The challenged citizenship investigation provisions, separately or in combination, have a non-uniform impact on naturalized citizens as compared with other citizens.

**36.**     The challenged citizenship investigation provisions, separately or in combination, have a discriminatory effect on naturalized registered voters.

**37.**     DPOC is not material establishing whether someone is eligible to vote in Arizona.

**38.**     Birthplace is not material to determining whether someone is qualified to vote under Arizona law. An individual's place of birth is not determinative of their citizenship status.

**39.**     Completion of the citizenship checkbox on the State or Federal Form is not material to determining whether someone is qualified to vote under Arizona law when election officials have access to documentary proof of citizenship for the applicant.

**40.**     A.R.S. § 16-165(I) (the "reason to believe" provision) requires Arizona's election officials to apply standards, practices, and procedures in determining the voter qualifications of registered voters they suspect lack U.S. citizenship that are different from the standards, practices, and procedures applied to other registered voters within the same county.

**41.**     A.R.S. § 16-165(I) (the "reason to believe" provision) authorizes county recorders and their staff to apply an extra citizenship investigation using the SAVE system to registered voters they suspect lack U.S. citizenship.

**42.**     The Challenged Laws will result in denial and abridgment of numerous Arizonans' right to vote on account of their race, color, or language minority status. Those Arizonans will have their registrations rejected, cancelled, suspended, limited, or delayed by the Challenged Laws, and may face criminal prosecution. The totality of the circumstances show that the political processes leading to nomination or election will not be equally open to members of various protected classes of Arizonans (including Native Americans, Latinos, voters of color, and members of language minority communities) due to the Challenged Laws, in that their members will have less opportunity than others to

participate in the political process and elect representatives of choice.

**43.** The Challenged Laws' additional DPOC procedures and requirements; requirement that applicants list place of birth on their registration forms; discriminatory rejection and removal procedures (including those that rely on outdated, faulty, and discriminatory databases); and provisions threatening naturalized citizens with criminal investigation all create unusual burdens for and disparately impact Native Americans, Latinos, voters of color, and members of language minority communities in Arizona.

**44.** The burdens and disparate impact created by the Challenged Laws are not ameliorated by the opportunities provided by Arizona's voting system as a whole.

**45.** The requirements in the Challenged laws were not standard practice or commonly used in Arizona or the United States when Section Two of the Voting Rights Act was amended in 1982.

**46.** The State of Arizona has no strong or even legitimate interest justifying the discriminatory burdens created by the Challenged Laws.

**H.   DEFENDANTS' CONTENTIONS OF DISPUTED FACT**

**1.** Plaintiffs have not demonstrated an injury in fact that is both (a) concrete and particularized and (b) actual or imminent.

> Alternatively, Plaintiffs have not demonstrated that their injury is caused by the Challenged Provisions.

> Alternatively, Plaintiffs have not demonstrated that it is likely, rather than speculative, that a favorable decision by the Court will redress their injury.

**2.** Plaintiffs have not demonstrated a likelihood of future injury.

**3.** Plaintiffs have not demonstrated that the Challenged Provisions impose an undue burden on the right to vote.

**4.** Plaintiffs have not demonstrated that the Challenged Provisions have resulted in insufficient notice to voters to the extent required by due process.

**5.** Plaintiffs have not demonstrated that the Challenged Provisions discriminate on the basis of a protected status.

**6.** Plaintiffs have not demonstrated that the Challenged Provisions were motivated by an intent to discriminate on the basis of a protected status.

7. Plaintiffs have not demonstrated that the Challenged Provisions have been or will be implemented arbitrarily.

8. Plaintiffs have not demonstrated that the Challenged Provisions are not material to determining an individual's qualifications to vote.

9. Plaintiffs have not demonstrated that the Challenged Provisions impose standards, practices, or procedures in determining whether an individual is qualified to vote, which are different from the standards, practices, or procedures applied to other individuals in the same county, parish, or similar political subdivision who have been found qualified to vote.

10. Plaintiffs have not demonstrated, beyond what the Court has already decided, that the Challenged Provisions require elections officials *not* to accept and use the Federal Form for the registration of voters for federal office.

11. Plaintiffs have not demonstrated that the Challenged Provisions impose non-uniform or discriminatory list maintenance programs or activities.

12. Plaintiffs have not demonstrated that the Challenged Provisions require public assistance agencies to distribute a form that is not the equivalent of the Federal Form.

13. Plaintiffs have not demonstrated that the Challenged Provisions result in a denial or abridgement of the right of any citizen to vote on account of race or color.

**I.    ISSUES OF LAW IN CONTROVERSY**

1. **First and Fourteenth Amendments: Undue Burden on the Right to Vote**

   - Whether H.B. 2492 and H.B. 2243's DPOC Requirement, Birthplace Requirement, database checks, notice procedures, and criminal investigation procedures impose an undue burden on the right to vote.

2. **Fourteenth Amendment: Denial of Procedural Due Process**

   - Whether H.B. 2492's DPOC Requirement, criminal investigation procedures, and cancellation of voter registrations violate the right to due process.

   - Whether H.B. 2243's removal of registered voters from the rolls without an adequate opportunity to contest or cure violates a voter's procedural due process rights.

**3. Fourteenth Amendment: Arbitrary and Disparate Treatment in Violation of Right to Equal Protection**

- Whether H.B. 2492's DPOC Requirement violates the right to equal protection.

  o Whether H.B. 2492's disparate treatment of State and Federal Forms violates the right to equal protection.

  o Whether H.B. 2492's restrictions on mail voting and voting in presidential elections for voters who have not submitted DPOC violate the right to equal protection.

- Whether H.B. 2492 and H.B. 2243's Citizenship Investigation Procedures (found in Sections 4, 7, and 8 of H.B. 2492 and in Section 2 of H.B. 2243) violate the right to equal protection by causing "arbitrary and disparate treatment" of voter registration applicants and registered voters.

**4. Fourteenth and Fifteenth Amendment Discrimination Claims**

- Whether H.B. 2492's DPOC Requirement, Birthplace Requirement, and H.B. 2492 and H.B. 2243's provisions subjecting voter registration applicants and voter registrants to DPOC requirements, database comparisons, and potential criminal investigations and prosecutions violate the prohibition on racial, national origin, and alienage discrimination in the Fourteenth Amendment.

- Whether H.B. 2492's DPOC Requirement, Birthplace Requirement and H.B. 2492 and H.B. 2243's provisions subjecting voter registration applicants and voter registrants to DPOC requirements, database comparisons, and potential criminal investigations and prosecutions violate the prohibition on intentional racial and national origin discrimination under the Fourteenth and Fifteenth Amendment.

- Whether H.B. 2243's "reason to believe" provision, Ariz. Rev. Stat. § 16-165(I), violates the Fourteenth and Fifteenth Amendments' prohibition on discretion in voter registration which enables racial or national origin discrimination.

**5. Civil Rights Act Section 10101(a)(2)(B) Materiality Provision Claim**

- Whether H.B. 2492's Birthplace Requirement is not material to determining a prospective registrant's qualifications to vote under Arizona law and whether rejecting a voter registration form because a prospective registrant omits birthplace information denies the right to vote.

**6. Civil Rights Act Section 10101(a)(2)(A) Claim**

- Whether H.B. 2243's "reason to believe provision," Ariz. Rev. Stat. § 16-165(I), violates the Civil Rights Act's prohibition on using different standards, practices, or procedures in voter qualification determinations.

**7. National Voter Registration Act Section 6 Claim**

- Whether H.B. 2243's Citizenship Investigation Procedures and removal of registered voters from the rolls (found in Section 2) violate the National Voter Registration Act's requirement that the State of Arizona accept and use the Federal Form for registration of voters in elections for Federal Office.

**8. National Voter Registration Act Section 8(b) Claim**

- Whether H.B. 2492 and H.B. 2243's  provisions subjecting voter registration applicants and voter registrants to DPOC requirements, database comparisons, and potential criminal investigations and prosecutions regarding currently registered voters (found in Sections 7 and 8 of H.B. 2492 and in Section 2 of H.B. 2243) violate the National Voter Registration Act's requirement for uniform and nondiscriminatory programs and activities in the maintenance of voter registration rolls.

**9. National Voter Registration Act Section 7 Claims**

- Whether H.B. 2492's mandate that all State Form applications be rejected absent DPOC violates the National Voter Registration Act's requirement that public assistance agencies provide their customers with voter registration services using the Federal Form or its "equivalent, as applied to State Forms submitted from public assistance agencies.

**10. National Voter Registration Act: Sections 6 and 8(a) Challenges to the DPOR Requirement**

- Whether, in so far as Defendants' implementation of this Court's Section 6 preemption holding results in acceptance of Federal Form applications without DPOR for federal-only elections but rejection of the State Form applications without DPOR, that practice violates Section 6 and 8(a) of the NVRA.[22]

**11. Section 2 of the Voting Rights Act**.

- Whether, under the totality of the circumstances, the Challenged Provisions violate Section 2's prohibition on voting procedures that "result[] in a denial or abridgment of the right of an citizen of the United States to vote on account of race or color." 52 U.S.C. 10301.

---

[22] *Note: Plaintiffs added this statement of their claim on the evening of the deadline for this filing, so Defendants have not had an opportunity to consider it.* Plaintiffs respond that these additions were made in response to an evolving understanding of the Parties' differing interpretation of this Court's partial summary judgment order and Plaintiffs made counsel for Defendants aware of likely revisions this morning.

**12. Standing/Ripeness**

- Whether Plaintiffs have demonstrated standing for their claims, and relatedly, whether their claims are ripe. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–62 (1992); *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138–40 (9th Cir. 2000) (en banc).

**13. Private Right of Action to Enforce 52 U.S.C. § 10101(a)(2)**

- To the extent any non-US Plaintiff presents a claim under 52 U.S.C. § 10101(a)(2), whether they have a private right of action to do so. *Cf.* Doc. 534 at 35 (ruling that this issue is "moot"). Plaintiffs' position is that whether a private right of action exists is not an issue for the trial.

**14. Injunctive and Declaratory Relief**

- Whether, even if Plaintiffs have standing, they have satisfied the conditions for the equitable remedies of injunctive and declaratory relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–13 (1983); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040–44 (9th Cir. 1999) (en banc).

**J.     SEPARATE TRIAL OF ISSUES**

The parties agree that there should be no separate trial of issues.

**K.     WITNESSES**

The Plaintiffs' witness list is attached hereto as **Exhibit 3.**

The Defendants' witness list is attached hereto as **Exhibit 4.**

**L.     EXPERTS**

**1.   Plaintiffs' Experts:**

**Dr. Lorraine C. Minnite:**

Dr. Minnite is a political scientist and associate professor in the Department of Public Policy and Administration at Rutgers University-Camden. She received her Bachelor of Arts degree in history from Boston University, and two Masters degrees and a Ph.D. in Political Science from the City University of New York. Dr. Minnite's research focuses on American Politics with a specialization in elections and the political process. Dr. Minnite is the author of *The Myth of Voter Fraud* (Cornell University Press, 2010), which is the first and only peer-reviewed book that has been published on the frequency of voter fraud in American elections. The Election Law Journal described it as "excellent"

and one that "should be read by political scientists, those interested in election administration, and policymakers at the state and federal levels."

Dr. Minnite will testify regarding the incidence of voter fraud in recent U.S. elections, both nationally and in Arizona, and her conclusions that voter fraud is exceedingly rare. Dr. Minnite will also testify about why H.B. 2492 and H.B. 2243 will not reduce the incidence of voter fraud and how the Challenged Provisions are not justified by the scant evidence of non-citizen or non-resident voting in Arizona. Dr. Minnite will also testify about how false allegations of voter and election fraud harm our democratic institutions by undermining the public's confidence in the election system.

**Dr. Michael P. McDonald:**

Dr. Michael P. McDonald is Professor of Political Science at the University of Florida. Dr. McDonald has published peer-reviewed articles specifically on the reliability of voter registration files and matching algorithms as applied to voter registration files, and he is co-author on a book concerning how limitations of computers to accurately store numeric data can lead to erroneous statistical analyses. He has participated as an expert witness in cases involving voter registration and other election administration issues. Dr. McDonald has also worked directly with federal, state, and local election officials in varying capacities, including election administration, absentee ballot management, data protection and management and voter registration. Dr. McDonald will testify regarding the impact of the challenged provisions of HB 2492 and HB 2243 on new and current voter registrants. He will testify about how the database matching procedures enacted by HB 2243 and HB 2492 have multiple potential failure points and are likely to impact individuals who are, in fact, eligible to vote and are, disproportionately, people of color. He will also testify regarding the inconsistent and varying interpretation county recorders have of how these new requirements should be enforced, and the likelihood that these varying interpretations will lead to nonuniform treatment of registrants across Arizona counties. He will also provide analysis of Arizona's registered voters including demographics and information voters provide regarding place of birth.

**Dr. Eitan Hersh:**

Dr. Hersh is a professor in the Department of Political Science at Tufts University

and has published extensively on elections and voting mechanics.  His publications include articles that analyze voting data and voter records that have been published in journals such as the *Quarterly Journal of Political Science*, the *American Political Science Review*, and the *Election Law Journal*.  He has a Ph.D. in political science from Harvard University, an M.A. in Political Science from Harvard University, and a B.A. in Philosophy from Tufts University.  Dr. Hersh has participated as an expert witness in four other voting cases since 2019.

Dr. Hersh will opine that the lack of standardization and accuracy in Arizona's collection of birthplace information renders these data, in their current form, highly unreliable as a way to identify voters.  He will also opine on the utility of birthplace data to identify voters in Arizona based on an empirical analysis of Arizona's statewide voter registration database.

**Dr. Traci Burch**

Dr. Burch is an Associate Professor in the Department of Political Science at Northwestern University and a Research Professor at the American Bar Foundation.  She earned a Ph.D. in Government and Social Policy from Harvard University and an A.B. in Politics from Princeton University.  Dr. Burch's research and writing focuses on U.S. politics, political behavior and inequality, race and ethnic politics, social policy, and criminal justice.  In addition to her award-winning 2013 book entitled *Trading Democracy for Justice: Criminal Convictions and the Decline of Neighborhood Political Participation*, Dr. Burch has authored recent publications appearing in several peer-reviewed journals, including *Political Behavior*, *Law and Society Review*, and *Criminology and Public Policy.*

Dr. Burch will testify regarding the burdens imposed by H.B. 2492 and H.B. 2243.  This will include analysis of the time, effort, expense, and psychological toll imposed by these laws, particularly for individuals of lower socioeconomic status.

**Derek Chang, Ph.D.:**

Derek Chang is an Associate Professor of History and Asian American Studies at Cornell University, where he has taught courses on Asian American history, Asian American Studies, comparative race relations and racial formations, and immigration.  He earned a B.A. in History from Trinity College in 1991, and a Ph.D. in History from Duke

University in 2002, where he trained in the history of the modern United States, with a specialization in the late-nineteenth and early twentieth centuries.  During his time at Cornell University, he has served as a director of the Asian American Studies Program on multiple occasions, most recently, as interim director in the Fall of 2021.  He is currently the Director Undergraduate Studies in the Department of History, and serves as the interim Director of the Public History Initiative.

Dr. Chang's testimony will focus on contextualizing H.B. 2492 and H.B. 2243 within the history of anti-Asian American and Pacific Islander ("AAPI") discrimination in Arizona and the United States from the mid-nineteenth century to the present, showing that the challenged laws are part of a broader history of efforts to limit AAPI voting rights.

**Orville Vernon Burton, Ph.D.:**

Dr. Orville Vernon Burton is the Judge Matthew J. Perry Distinguished Professor of History, and Professor of Global Black Studies, Sociology and Anthropology, and Computer Science at Clemson University. Dr. Burton received his undergraduate degree from Furman University in 1969 and his Ph.D. in American History from Princeton University in 1976. He has been researching and teaching American History, among other subjects, at universities since 1971. He is the author or editor of more than twenty books and nearly three hundred articles, including in numerous renowned history and political science journals.

Dr. Burton will testify regarding Arizona's history of official discrimination that touches the rights of minority voters to participate in the democratic process; the historical patterns of discriminatory results against minority voters and the reality that those voters bear the effects of discrimination in various socio-economic areas that hinder their ability to participate in the political process; the voting restrictions commonly in place in 1982; and the presence of overt or subtle racial appeals in campaigning in Arizona.

**2. Defendants' and Intervenor-Defendants' Experts:**

**Robert Stein, Ph.D.:**

Dr. Robert Stein is the Lena Gohlman Fox Professor of Political Science at Rice University.  He received his Ph.D. in Political Science from the University of Wisconsin-Milwaukee in 1977.  His research focuses on voting behavior and election administration.

His work includes collaborations with several states and local governments in designing and implementing voting systems. He has provided expert testimony in a number of voting rights cases.

Dr. Stein will testify primarily in response to Plaintiffs' proffered expert, Dr. Burch, regarding burdens imposed by H.B. 2492 and H.B. 2243. He will testify that Dr. Burch's conclusions are premature and based on an incomplete review of the relevant literature. He will provide similar testimony in partial response to Plaintiffs' proffered expert, Dr. McDonald, regarding long-term effects of H.B. 2492 and H.B. 2243 on voters. He will testify that Dr. McDonald's conclusion in this regard is speculative.

**Dr. Mark Hoekstra**:

Mark Hoekstra, Ph.D., is a professor of economics at Baylor University. Dr. Hoekstra has published more than 20 papers in peer-reviewed journals, and his work has been featured in a leading graduate-level book on empirical methods used in economics. His research focuses on analyzing assumptions underlying various research designs used to assess the causal impact of policies, including methods used to test for racial and gender bias in different settings. Dr. Hoekstra has served as a testifying or consulting expert in nine proceedings, including election integrity litigation in Texas.

Dr. Hoekstra will testify in rebuttal to Plaintiffs' proffered experts Dr. McDonald, Dr. Minnite, and Dr. Burch. Specifically, he will testify that their evidence cannot prove a causal relationship between the challenged laws and reduced voter registration or voter turnout—and indeed, that a reduction in voter registration or voter turnout is itself speculative, and there is credible research indicating that a margin increase in voter turnout (both overall and among minorities) may result. Dr. Hoekstra will discuss the plaintiffs' reliance on methodologically flawed studies, the plaintiffs' mischaracterization of research, and the plaintiffs' failure to recognize or deal with credible research that undermines or conflicts with their preferred narrative and conclusions. Finally, he will testify that Dr. Minnite dismisses the possibility of non-citizen voting by manipulating definitions and relying on flawed research methods, and ultimately makes unsubstantiated allegations about the legislative motivations for H.B. 2492 and H.B. 2243.

**Dr. Jesse Richman:**

Jesse Richman, Ph.D., is an associate professor of political science and international studies at Old Dominion University.  Dr. Richman has published 25 peer-reviewed articles and two books, including a widely cited study estimating the prevalence of non-citizen registration and voting in the United States, and has served as a testifying or consulting expert in several election-related cases.

Dr. Richman will testify in rebuttal to Dr. McDonald and Dr. Minnite.  Dr. Richman will testify that Dr. McDonald's report contains a series of objective calculation errors and that, coincidentally or not, each buttresses Dr. McDonald's conclusions.  Dr. Richman will further explain that Dr. McDonald fails to acknowledge or discuss important data, variables, and alternative explanations.  In addition, Dr. Richman will testify that Dr. Minnite understates the rate of registration and voting by non-citizens, that "slightly below one percent" of adult non-citizens attempt to register to vote, and that such non-citizen participation can affect the outcome of statewide elections.

**M.   EXHIBITS AND DEPOSITIONS**

The Plaintiffs' exhibit list, including Defendants' anticipated objections, is attached hereto as **Exhibit 5.** The Plaintiffs' deposition designations, in the form of highlighted transcripts, are attached hereto as **Exhibit 6.** Defendants' objections and counter-designations are attached hereto as **Exhibit 7.**

Defendants' exhibit list, including Plaintiffs' anticipated objections, is attached hereto as **Exhibit 8.** Defendants' deposition designations, in the form of highlighted transcripts, are attached hereto as **Exhibit 9.** Plaintiffs' objections and counter-designations are attached hereto as **Exhibit 10.**

**N.   MOTIONS IN LIMINE AND REQUESTED EVIDENTIARY RULINGS**
**Plaintiffs' position**:

Plaintiffs anticipate a motion in limine to bar intervenor-defendants Ben Toma and Warren Petersen from adducing any evidence at trial regarding the Arizona Legislature's intent in passing Arizona House Bill 2492 or 2243 or any evidence regarding the state interests supposedly advanced by either or both of those laws.

Plaintiffs anticipate a motion in limine  to (i) exclude testimony from a proposed

defense witness not previously identified by Defendants in disclosures or discovery, and (ii) exclude certain proposed defense exhibits that were not produced in discovery.

Plaintiffs anticipate a motion in limine to bar Defendants from offering argument or evidence at trial regarding any alleged state interests supporting the challenged law not previously disclosed during discovery, or from offering argument or evidence of any alleged state interest that is hypothetical, unfounded in the record, or based upon material unknown to the Arizona legislature at the time of the challenged laws' enactment.

Plaintiffs anticipate a motion in limine to admit stipulations individually agreed to by the Secretary of State, the Attorney General, the RNC, and/or Speaker Toma and President Petersen, but not agreed to by all Defendants who intend to actively participate at trial, in order identifying outstanding disputes of fact for trial, including with respect to which parties dispute which facts. *See supra* Section F ("Stipulations and Undisputed Facts"). This motion in limine would also include stipulations individually agreed to by the County Recorders.

**Defendants' position:**  At least one Defendant anticipates a motion in limine to exclude documents or testimony reflecting the opinions of individuals or groups concerning the legality of the challenged provisions of H.B. 2492 and H.B. 2243.

At least one Defendant anticipates a motion in limine to exclude testimony from individual legislators regarding his or her personal views or motives in connection with his or her vote on the Voting Laws as irrelevant and inadmissible to prove collective legislative intent.

**O.    PROBABLE LENGTH OF TRIAL**

The parties anticipate a maximum of 10 days for the trial.

**P.    TRIAL DATE**

Trial has been set in this matter to begin on November 6, 2023. ECF No. 485.

**Q.    PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** shall be filed and served by the parties on or before the date set for trial. Subject to this Court's orders, the parties may submit amended or supplemental proposed findings of fact and conclusions of law after trial at a time yet to be decided.

**R.    MISCELLANEOUS**

Set forth any other appropriate matters which will aid in the effective presentation or disposition of the action.

**S.    MODIFICATION OF ORDER**

The Court may modify the **Final Pretrial Order** as it deems just and proper to prevent manifest injustice or for good cause shown at the trial of the action or prior thereto upon good faith application of counsel for either party or motion of the Court.

**THIS JOINT PRETRIAL ORDER IS HEREBY APPROVED ON THIS 31 DAY OF OCTOBER, 2023.**

_____
Susan R. Bolton
United States District Judge

APPROVED AS TO FORM AND CONTENT:

**FOR PLAINTIFFS:**

_Christopher D. Dodge_
Roy Herrera (Bar No. 032901)
Daniel A. Arellano (Bar. No. 032304)
Jillian L. Andrews (Bar No. 034611)
**HERRERA ARELLANO LLP**
530 East McDowell Road
Suite 107-150
Phoenix, Arizona 85004-1500
Phone: (602) 567-4820
roy@ha-firm.com
daniel@ha-firm.com
jillian@ha-firm.com

Marc E. Elias*
Elisabeth C. Frost*
Christopher D. Dodge*

Mollie DiBrell*
Alexander F. Atkins*
Daniela Lorenzo*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW
Suite 400
Washington, DC 20001
Phone: (202) 968-4513
Facsimile: (202) 968-4498
melias@elias.law
efrost@elias.law
cdodge@elias.law
mdibrell@elias.law
aatkins@elias.law
dlorenzo@elias.law

*Attorneys for MFV Plaintiffs*
* Admitted Pro Hac Vice

<u>*Christopher D. Dodge (with permission)*</u>
**CAMPAIGN LEGAL CENTER**
Danielle Lang*
Jonathan Diaz*
Molly Danahy*
Hayden Johnson*
Nicole Hansen*
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
mdanahy@campaignlegalcenter.org
hjohnson@campaignlegalcenter.org
nhansen@campaignlegalcenter.org

**MAYER BROWN LLP**
Lee H. Rubin* (CA# 141331)
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Gary A. Isaac* (IL# 6192407)
Daniel T. Fenske* (IL# 6296360)
Jed W. Glickstein* (IL# 6315387)
William J. McElhaney, III* (IL #6336357)
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
dfenske@mayerbrown.com
gisaac@mayerbrown.com
jglickstein@mayerbrown.com

Rachel J. Lamorte* (NY# 5380019)

1999 K Street NW
Washington, DC 20006
(202) 362-3000
rlamorte@mayerbrown.com

**BARTON MENDEZ SOTO PLLC**
James E. Barton II, AZ Bar No. 023888
401 W. Baseline Rd. Suite 205
Tempe, AZ 85283
(480) 418-0668
james@bartonmendezsoto.com

**DEPARTMENT OF JUSTICE**
**SAN CARLOS APACHE TRIBE**
Alexander B. Ritchie
AZ Bar No. 019579
Attorney General
Chase A. Velasquez*
NM Bar No. 019148
Assistant Attorney General
Post Office Box 40
16 San Carlos Ave.
San Carlos, AZ 85550
Alex.Ritchie@scat-nsn.gov
Chase.Velasquez@scat-nsn.gov

**FREE SPEECH FOR PEOPLE**
Courtney Hostetler* (MA# 683307)
John Bonifaz* (MA# 562478)
Ben Clements* (MA# 555082)
Ronald Fein* (MA# 657930)
1320 Centre Street, Suite 405
Newton, MA 02459
(617) 249-3015
chostetler@freespeechforpeople.org
jbonifaz@freespeechforpeople.org
bclements@freespeechforpeople.org
rfein@freespeechforpeople.org

*Attorneys for LUCHA Plaintiffs*
*\* Admitted pro hac vice*

<u>Christopher D. Dodge (with permission)</u>
Jon Sherman
Michelle Kanter Cohen
**Fair Elections Center**
1825 K St. NW, Ste. 450
Washington, D.C. 20006
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
(202) 331-0114

Jeremy Karpatkin
John A. Freedman
Erica McCabe

**Arnold & Porter Kaye Scholer LLP**
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Jeremy.Karpatkin@arnoldporter.com
John.Freedman@arnoldporter.com
Erica.McCabe@arnoldporter.com
(202) 942-5000

Steven L. Mayer
**Arnold & Porter Kaye Scholer LLP**
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Steve.Mayer@arnoldporter.com
(415) 471-3100

Leah R. Novak
**Arnold & Porter Kaye Scholer LLP**
250 West 55th Street
New York, NY 10019
Leah.Novak@arnoldporter.com
(212) 836-8000

Daniel J. Adelman
**Arizona Center for Law in the Public Interest**
352 E. Camelback Rd., Suite 200
Phoenix, AZ 85012
danny@aclpi.org
(602) 258-8850

*Attorneys for Poder Latinx, Chicanos Por La Causa,
and Chicanos Por La Causa Action Fund*

<u>*Christopher D. Dodge (with permission)*</u>
**Papetti Samuels Weiss McKirgan LLP**
Bruce Samuels (State Bar No. 015996)
bsamuels@pswmlaw.com
Jennifer Lee-Cota (State Bar No. 033190)
jleecota@pswmlaw.com
Scottsdale Quarter
15169 North Scottsdale Road
Suite 205
Scottsdale, AZ 85254
+1 480 800 3530

**Wilmer Cutler Pickering Hale and Dorr LLP**
Seth P. Waxman *(pro hac vice)*
seth.waxman@wilmerhale.com
Daniel S. Volchok *(pro hac vice)*
daniel.volchok@wilmerhale.com
Christopher E. Babbitt *(pro hac vice)*
christopher.babbitt@wilmerhale.com
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
+1 202 663 6000 (telephone)
+1 202 663 6363 (facsimile)

*Attorneys for the Democratic National*
*Committee and Arizona Democratic Party*

<u>*Christopher D. Dodge (with permission)*</u>
**LATHAM & WATKINS LLP**
Sadik Huseny (pro hac vice)
*sadik.huseny@lw.com*
Amit Makker (pro hac vice)
*amit.makker@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

**ASIAN AMERICANS ADVANCING**
**JUSTICE-AAJC**
Niyati Shah (pro hac vice)
*nshah@advancingjustice-aajc.org*
Terry Ao Minnis (pro hac vice)
*tminnis@advancingjustice-aajc.org*
1620 L Street NW, Suite 1050
Washington, DC 20036
Telephone: (202) 296-2300
Facsimile: (202) 296-2318

**SPENCER FANE**
Andrew M. Federhar (No. 006567)
*afederhar@spencerfane.com*
2415 East Camelback Road, Suite 600
Phoenix, AZ 85016
Telephone: (602) 333-5430
Facsimile: (602) 333-5431

*Attorneys for Plaintiff Arizona Asian American Native Hawaiian*
*and Pacific Islander for Equity Coalition*

<u>*Christopher D. Dodge (with permission)*</u>
Ernest Herrera (pro hac vice)
Erika Cervantes (pro hac vice)
**Mexican American Legal Defense and Educational Fund**
634 South Spring Street, 11th Floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Facsimile: (213) 629-0266
Email: eherrera@maldef.org
ecervantes@maldef.org

Daniel R. Ortega Jr.
**Ortega Law Firm**
361 East Coronado Road, Suite 101
Phoenix, AZ 85004-1525
Telephone: (602) 386-4455
Email: danny@ortegalaw.com

*Attorneys for Promise Arizona Plaintiffs*

**OSBORN MALEDON, P.A.**
<u>Christopher D. Dodge (with permission)</u>
David B. Rosenbaum
AZ No. 009819
Joshua J. Messer
AZ No. 035101
2929 North Central Avenue, 21st Floor
Phoenix, Arizona 85012-2793
(602) 640-9000
drosenbaum@omlaw.com
jmesser@omlaw.com

GILA RIVER INDIAN COMMUNITY
Thomas L. Murphy
AZ No. 022953
Javier G. Ramos
AZ No. 017442
Post Office Box 97
Sacaton, Arizona 85147
(520) 562-9760
thomas.murphy@gric.nsn.us
javier.ramos@gric.nsn.us
*Representing Gila River Indian Community Only*

NATIVE AMERICAN RIGHTS FUND
Allison A. Neswood*
CO No. 49846
neswood@narf.org
Michael S. Carter
AZ No. 028704, OK No. 31961
carter@narf.org
Matthew Campbell*
NM No. 138207, CO No. 40808
mcampbell@narf.org
Jacqueline D. DeLeon*
CA No. 288192
jdeleon@narf.org
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80301
(303) 447-8760 (main)

Samantha B. Kelty
AZ No. 024110, TX No. 24085074
kelty@narf.org
NATIVE AMERICAN RIGHTS FUND
950 F Street NW, Suite 1050,
Washington, D.C. 20004
(202) 785-4166 (direct)

Ezra Rosenberg*
DC No. 360927, NJ No. 012671974
Jim Tucker**

AZ No. 019341
Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005
(202) 662-8600 (main)
erosenberg@lawyerscommittee.org
jtucker@lawyerscommittee.org

TOHONO O'ODHAM NATION
Howard M. Shanker (AZ Bar 015547)
Attorney General, Tohono O'odham Nation
Marissa L. Sites (AZ Bar 027390)
Assistant Attorney General, Tohono O'odham Nation
P.O. Box 830
Sells, Arizona  85634
(520) 383-3410
Howard.Shanker@tonation-nsn.gov
Marissa.Sites@tonation-nsn.gov
Harrison.Rice@tonation-nsn.gov
*Representing Tohono O'odham Nation Only*

*Pro Hac Vice Forthcoming*
**Admitted in Arizona and Nevada only.*
*Practice limited to matters before federal courts.*

*Attorneys for Tohono O'odham*
*Nation Plaintiffs*

<u>*Christopher D. Dodge (with permission)*</u>
RICHARD A. DELLHEIM
EMILY R. BRAILEY
SEJAL JHAVERI
MARGARET M. TURNER
JENNIFER J. YUN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4CON – Room 8.1815
950 Pennsylvania Avenue, NW
Washington, DC 20530

*Attorneys for the United States*
**FOR DEFENDANTS:**[23]

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

---

[23] Plaintiffs' counsel received authorization from counsel for the Attorney General, Republican National Committee, and Legislative Intervenors to include their signatures in the Joint Pretrial Order. Plaintiffs' counsel did not receive final authorization to include a signature on behalf of counsel to the Secretary of State—and accordingly does not include that signature in the filing—but understands that Secretary's counsel was aware of and contributed to the last substantive version of the draft Joint Pretrial Order sent by Defendants to Plaintiffs.

By:  /s/ Joshua M. Whitaker
Joshua D. Bendor (No. 031908)
Hayleigh S. Crawford (No. 032326)
Joshua M. Whitaker (No. 032724)
Kathryn E. Boughton (No. 036105)
Timothy E.D. Horley (No. 038021)

*Attorneys for Defendants*
*Attorney General Kris Mayes,*
*ADOT Director Jennifer Toth,*
*and State of Arizona*


**COUNSEL FOR REPUBLICAN**
**NATIONAL COMMITTEE**

By:  /s/ Thomas Basile (with permission)

Kory Langhofer, AZ Bar 024722
Thomas Basile, AZ Bar 031150
Statecraft PLLC
649 N. Fourth Avenue, First Floor
Phoenix, Arizona 85003
(602) 382-4078
kory@statecraftlaw.com
tom@statecraftlaw.com

Tyler Green*
Cameron T. Norris*
James P. McGlone*
Consovoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tyler@consovoymccarthy.com
cam@consovoymccarthy.com
jim@consovoymccarthy.com

*admitted pro hac vice*

*Counsel for Intervenor-Defendant*

*Republican National Committee*

/s/ *Hannah H. Porter*
**GALLAGHER & KENNEDY, P.A.**
Kevin E. O'Malley (Bar No. 006420)
Hannah H. Porter (Bar No. 029842)
Ashley E. Fitzgibbons (Bar No. 036295)
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone: (602) 530-8000
Facsimile: (602) 530-8500
kevin.omalley@gknet.com
hannah.porter@gknet.com
ashley.fitzgibbons@gknet.com

*Attorneys for Intervenor-Defendants*
*Speaker Toma and President Peterse*