Tyler Green*
Cameron T. Norris*
Gilbert C. Dickey*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tyler@consovoymccarthy.com
cam@consovoymccarthy.com
gilbert@consovoymccarthy.com

Kory Langhofer, Ariz. Bar No. 024722
Thomas Basile, Ariz. Bar. No. 031150
STATECRAFT PLLC
649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003
(602) 382-4078
kory@statecraftlaw.com
tom@statecraftlaw.com

*Attorneys for Intervenor-Defendant*

*admitted pro hac vice

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al.,<br>　　　　　Plaintiffs,<br>v.<br><br>Adrian Fontes, et al.,<br><br>　　　　　Defendants.<br><br>─────────────────────<br>**AND CONSOLIDATED CASES** | Case No: 2:22-cv-00509-SRB (Lead)<br><br>**INTERVENOR REPUBLICAN NATIONAL COMMITTEE'S RESPONSE TO PLAINTIFFS' MOTION TO STRIKE UNTIMELY SUPPLEMENTAL EXPERT REPORT AND RELATED DATA, AND TO PARTIALLY EXCUDE TESTIMONY OF DR. JESSE RICHMAN** |

Intervenor Republican National Committee ("RNC") respectfully submits this response in opposition to Plaintiffs' Motion to Strike Untimely Supplemental Expert Report and Related Data, and to Partially Exclude Testimony of Dr. Jesse Richman (Doc. 621).[1]

**INTRODUCTION**

Although the Defendants are entitled to a fair hearing in this Court, the Motion beckons this Court to pre-judge the credibility of a witness. It relies not on evidence and logic, but largely on *ad hominem* attacks, half-truths, and irrelevant allegations—all without undergoing cross-examination or the pushback from a live witness concerning its allegations. And so long as this Court internalizes some degree of skepticism about Prof. Richman before he testifies, the Motion will have been effectively granted, *sub silentio*.

The Motion is decidedly ***not*** the unavoidable last step in an earnest attempt to narrow and resolve the parties' disputes, written with the purpose of informing the Court of materials facts and relevant authorities. It is something else altogether. Consider, for example, the following:

1. **Irrelevant Barbs.** The first page of the Motion scornfully alleges that there was an untimely disclosure ***five years ago, in a different case***. *See* Motion at 1 ("This is not the first time . . . Professor Richman has violated the rules requiring timely submission of expert opinions."). If Federal Rules of Evidence 403 applied here, such introductory words would be stricken; the manifest purpose is to prejudice, not to persuade.

2. **Exceeding Page Limits.** The Motion transgresses the applicable page limit, without seeking leave to do so, *see* LRCiv 7.2(e)(1).

3. **Rushing to File, Without a Response from the Defendants.** The Motion was filed with unnecessary haste—mere hours after disclosing to the defense the

---

[1] As an initial matter, the RNC does not intend to introduce during direct examination the analyses set forth in Paragraphs 52-58, 102-07, 116-17, or 154-60 (to include Tables 3 through 8) of Prof. Richman's original report. The Motion accordingly is moot to that extent.

1

basis for the Motion, and before the defense could discuss the issues with Prof. Richman. The Plaintiffs' insistence on filing immediately—approximately two weeks before Prof. Richman is expected to testify, and without confirming the scope of any disagreement between the parties—gratuitously expands the workload of this Court. That, of course, is not the process contemplated by the "meet and confer" rules.

4. **No Meaningful Effect at Trial.** As the Plaintiffs know or should know, the Motion, even if granted, would not meaningfully change the evidence at trial—but it would prolong proceedings significantly. Because Prof. Richman's most compelling findings are direct observations from public records that are plainly admissible and may even be subject to judicial notice, the Plaintiffs' best case scenario under the Motion is to prevent an efficient oral summary of voluminous public records and, instead, to force this Court to endure a tedious line-by-line review of unwieldy and voluminous public records showing 1,779 seemingly improper voter registrations by non-citizens.

The Court should recognize and eschew the Motion's objective—prejudice, not persuasion—for what it is.

On the merits, the Motion advances three arguments: (1) Prof. Richman's supplemental report, which was prompted by newly provided ADOT data, is untimely and prejudicial; (2) Prof. Richman is unqualified to testify here because his analysis in a previous "battle of the experts," although admissible, was ultimately not persuasive; and (3) Prof. Richman will miscalculate certain statistics. None of these arguments justifies the requested relief. Most of the Motion's arguments are issues for cross-examination or closing arguments. None justifies wholesale exclusion of witness testimony at trial—particularly a bench trial, at which a prejudice-to-probity inquiry is of limited value.

**FACTUAL BACKGROUND**

Prof. Richman and his counterpart on the Plaintiffs' side have at least these five things in common:

1. In their original reports, they both noted certain limitations in the available ADOT data. *See, e.g.*, Def. Ex. 910, Richman Report ¶¶ 45-46; Pl. Ex. 330, McDonald Report at 19–20.

2. As of the dates of their original reports, they had both requested more information from ADOT than they had received. *See* Motion at 3, 5.

3. In their original reports, they both expressly "reserve[d] the right to update [their] report[s] as further information becomes available." *See* Def. Ex. 910, Richman Report ¶ 46; Pl. Ex. 330, McDonald Report at 4 ("I reserve the right to supplement or revise my opinions based on additional or new information."). Richman, however, was ***uniquely*** clear about the issue on which he anticipated possible supplementation. *See* Def. Ex. 910, Richman Report at 13 n.3 ("I have put through inquiries with ADOT to explore in more detail the possibilities discussed on pages 124-127 of the ADOT Jorgensen deposition: whether the issue date is adjusted when a non-citizen or anyone else updates a credential (e.g. by adding a new picture) without obtaining a new credential or renewing the credential. I intend to update my report when ADOT responds.").[2]

4. They both received additional information about ADOT data *after* the deadlines for submitting their initial reports. *See* Def. Ex. 925, Richman Supplemental Report ¶ 2; Pl. Ex. 331 ¶ 3.

5. Pursuant to Fed. R. Civ. P. 26(e), they both supplemented their original report to reflect what they learned from the recently acquired data. Def. Ex. 925, Richman Supplemental Report; Pl. Ex. 331. In Prof. Richman's case, the

---

[2] Notwithstanding this disclosure by Prof. Richman and the Plaintiffs' previous request for similar data, the Motion falsely asserts that "Plaintiffs had no notice that this request had been made" and professes "shock[]" upon learning that ADOT would supplement its production. *See* Motion at 8-9.

3

newly obtained data was fairly discrete—with **only 12 hours** separating Prof. Richman's receipt of the data from the disclosure of his supplemental report. *Compare* Def. Ex. 925, Richman Supplemental Report ¶ 2; *with* Motion at 2.

Moreover, both experts are in good company. The Plaintiffs, mere hours before the Motion was filed, continued to disclose to the Defendants, and announce their intentions to rely at trial on, previously undisclosed data emanating from other public records and agencies. *See* Exhibit A.

What is unique about Prof. Richman, then, is not any request for additional information, the issuance of a supplemental expert report, or even the reliance on recently acquired public records and public agency data at trial—the Plaintiffs blazed each of those trails before Prof. Richman—but the fact that Prof. Richman has identified evidence that is not meaningfully disputed and damages the Plaintiffs' case. Specifically, Prof. Richman is poised to demonstrate the following:

    a. There are 1,779 active voters in Arizona whose citizenship is doubtful, justifying the Arizona State Legislature's efforts to confirm the identity and citizenship of Arizona voters. This finding is based on data received directly from ADOT that apparently has ***not*** been disclosed or reviewed in previous cases, but which has been the subject of exhaustive reviews by expert witnesses on both sides in this case. During the parties' (only) substantive meet-and-confer call on this issue, mere hours before the Motion was hastily filed, Plaintiffs' counsel did not assert that Prof. Richman inaccurately distilled the ADOT data—and the Motion does not allege that the Prof. Richman is mistaken in his description of the database evidence concerning these 1,779 voters.

    b. The incidence of non-citizen registrations in other states, measured in a variety of ways, is roughly equal to the apparent non-citizen registration rate in Arizona as described above. This provides a "sanity check" on the Arizona findings, and

confirms the credibility of Prof. Richman's observations regarding Arizona records.

These findings repel the Plaintiffs' assault on Arizona's voter registration processes. Rather than narrow their case to more promising theories, the Plaintiffs ask this Court to preemptively reject reliable defenses articulated by Prof. Richman.

## ARGUMENT

### I. The Plaintiffs Waived Objections to ADOT's Recent Production of MVD Data.

When the Plaintiffs learned that ADOT would supplement its original database disclosure, the parties held a series of telephone calls to discuss next steps. Mr. Freedman, who ultimately signed the Motion, participated on the first such call and expressed an expectation that the ADOT data would discredit Prof. Richman's original analysis. After some discussion of the timeliness of ADOT's supplemental disclosure, Ms. Lang stated unambiguously that the Plaintiffs were **not** objecting to the production of the data at that time. Later that evening, undersigned counsel emailed the participating attorneys the following:

> I am writing to memorialize the position of the RNC, which I explained on this morning's meet and confer Zoom meeting, as well as this afternoon's conference with Director Jorgenson. The plaintiffs' position re: the new ADOT dat[a] has been roughly "we won't know whether the ADOT data is untimely unless/until we know what's in the data." This characterization is based on the plaintiffs' simultaneous attempts to preserve objections to the data (*see* this morning's email from Mr. Freedman) while maintaining that the data will be used at tried to discredit Prof. Richman's analysis (*see* Mr. Freedman's comments on this morning's Zoom call).
>
> The RNC does not believe such internally contradictory gamesmanship re: discovery is appropriate or legally permissible. The RNC's position is therefore that the plaintiffs must either (a) promptly object to the new ADOT data as untimely, forgoing arguments that Prof. Richman failed to consider the data; or (b) forgo objection to the timeliness of the new data. The fence-sitting position—attempting to preserve any "upside" of the data while simultaneously objecting to its timeliness—is unprincipled.

5

> For the avoidance of doubt, the RNC's position is that it's best to know the answers to the important factual questions in this case, and that the parties should complete their investigation into the facts even if the expedited nature of these proceedings requires working over weekends, etc. Our preference is therefore that we access and examine the new ADOT data to see whether we can learn anything more about the facts in this case. But if the plaintiffs wish to object to the new data (forgoing the argument that Prof. Richman failed to consider it), we may be able to live with that outcome as well. But in any event, the plaintiffs cannot maintain both positions at the same time.

*See* Exhibit B. None of the Plaintiffs objected to production or inspection of the ADOT supplement. A few days later, Ms. Lang confirmed that the Plaintiffs had not objected to ADOT's supplemental disclosure before it was produced:

> . . . I'd like to note that I do not think your email accurately reflects our discussion on Friday or Plaintiffs' position. Nor do I see anything inconsistent with Plaintiffs' allowing production of requested ADOT data while preserving all its objections to untimely requests and reports.

*Id.*

The upshot is that the Plaintiffs tactically chose not to oppose the ADOT supplementation when they expected it to benefit their case—and reversed course only after realizing the data reinforces rather than undermines Prof. Richman's analysis. The Plaintiffs then discovered a profound commitment to rigorous enforcement of disclosure deadlines—but apparently not as applied to the Plaintiffs' own reliance on public agency data that they acquired and disclosed days before trial.

Indeed, if this Court uniformly enforces a rule excluding untimely disclosures, the Plaintiffs will have a vexing problem. They have supplemented an expert report after the disclosure deadline, listed dozens of trial exhibits that were never disclosed in advance except through generic categorical descriptions (*e.g.*, "census data") and, even on the eve of trial, continued to add newly acquired public agency data to their lists of trial exhibits. *See, e.g.*, Exhibit A; Pl. Ex. 331, McDonald Declaration; Pl. Ex. 332, McDonald Report (Revised); Pl. Exs. 569-91.

6

Given their serial reliance on recently acquired public records in the runup to trial, and their tactical decision not to object to the production and examination of ADOT data until they realized the data would not support their case, the Plaintiffs are poorly positioned to object, belatedly, on the basis of a recent disclosure.

## II. Prof. Richman's Supplemental Report Was Substantially Justified and Does Not Prejudice the Plaintiffs

A testifying expert witness not only may but ***must*** supplement his written report in advance of pre-trial disclosures if he learns "that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

Preliminarily, Prof. Richman's second report was a *bona fide* supplement. "Supplementation means 'correcting inaccuracies[ ] or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" *Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1269 (D. Ariz. 2020) (citation omitted); *contrast Copper Sands Homeowners Ass'n. v. Copper Sands Realty, LLC*, No. 2:10-cv-00510, 2013 WL 2460349, at *2 (D. Nev. Jun. 5, 2013) (report not supplemental if it is "'significantly different' from the expert's original report and effectively altered the expert's theories; or . . . attempt[s] to 'deepen' and 'strengthen' the expert's prior reports."). Prof. Richman's supplemental report was confined in its scope to issues he had analyzed in his initial report (with an express caveat that additional information was needed) and predicated entirely on data that he had requested but not obtained at the time he provided his initial report. Indeed, the gravamen of the supplemental report is that Prof. Richman adjusted *downward*—from 2,331 to 1,779— the number of registered voters who, according to ADOT data, had submitted evidence of non-citizenship to ADOT after registering to vote. *See Andrews v. Plains All Am. Pipeline, L.P.*, CV154113PSGJEMX, 2021 WL 8742741, at *9 (C.D. Cal. Nov. 10, 2021)

(deeming reports "properly supplemental" where "they incorporate new information . . . which was unavailable when the parties initially exchanged expert reports").

Even an untimely supplement is permissible if it "substantially justified **or** it is harmless." Fed. R. Civ. P. 37(c)(1) [emphasis added]; *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Prof. Richman's supplement qualifies under both criteria.

### A. The Supplemental Report Is Substantially Justified

Supplementation is warranted when an expert is unable to obtain information necessary to complete or confirm his conclusions before submitting his initial report. *See, e.g., Perez v. First Am. Title Ins. Co.*, 810 F. Supp. 2d 986, 989 (D. Ariz. 2011) (even highly belated supplemental disclosure was substantially justified where the delayed disclosure of data meant that "it could not have been included in [the] earlier expert report"); *Garey v. James S. Farrin, P.C.*, 514 F. Supp. 3d 784, 789 (W.D.N.C. 2021) ("The fact that [expert] could not have provided [supplemental summaries] prior to receiving the new information [from third parties] weighs in favor of finding that the initial omission was justified."). Here, it seemingly is undisputed that Prof. Richman did not have access to the additional ADOT data when he prepared his initial report. *See* Motion at 13; *see also Dowling v. Arpaio*, No. CV-09-01401-PHX-JAT, 2011 WL 5592909, at *1 (D. Ariz. Nov. 17, 2011) (denying defendants' motion to strike, commenting that "[n]otably, Defendants do not argue that this information was somehow available to Plaintiffs before the expert discovery deadline").

### B. Prof. Richman's Supplement Does Not Prejudice the Plaintiffs

Dr. Richman's supplementation of his report does not prejudice the Plaintiffs for several reasons.

*First*, the production is a modest incremental change in the data previously produced by ADOT. Indeed, as noted above, a mere 12 hours elapsed from when Prof. Richman received ADOT's supplemental production, to the disclosure of Prof.

Richman's supplemental report analyzing ADOT's supplemental production. *Compare* Def. Ex. 925, Richman Supplemental Report ¶ 2; *with* Motion at 2. Reviewing the new information does not require extensive time or resources.

*Second*, the Plaintiffs themselves requested the information at issue. *See* Motion at 3.

*Third*, the Plaintiffs have unmatched visibility into Prof. Richman's calculations and analysis of the data. After ADOT supplemented its disclosure, Prof. Richman promptly disclosed his written analysis—and when asked, quickly provided hundreds of files setting forth the detail for every calculation (and intermediate calculation) underlying his opinions. Prof. Richman then sat for a deposition that *exceeded* the seven-hour cap. Without exception, the defense has indulged the Plaintiffs' extraordinary requests for more and more detailed disclosures. *See San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, No. 18cv967-GPC, 2020 WL 8621524, at *9 (S.D. Cal. Jun. 12, 2020) (declining to strike defendant's supplemental expert report where, *inter alia*, plaintiff's expert was able to "immediately" review and assess it).

*Fourth*, the ADOT Director has already participated in an emergency conference with Plaintiffs' counsel to discuss (a) the significance of the supplemental disclosure and (b) the possibility of ADOT disclosing still more data to the Plaintiffs. The Director of ADOT patiently answered all the Plaintiffs' questions, and several days later produced the additional data that he understood the Plaintiffs to desire. Predictably—after receiving what they requested—the Plaintiffs cried prejudice for the third time.

*Fifth*, the defense has offered a litany of accommodations to ensure that ADOT's supplemental disclosure would not prejudice (or indeed, inconvenience) the Plaintiffs. Specifically, the defendants have offered to:

    a. allow the Plaintiffs to prepare a rebuttal report after the disclosure deadline;

    b. present rebuttal testimony remotely;

    c. present rebuttal testimony out-of-order;

9

      d. arrange a direct discussion between Prof. Richman and Prof. McDonald, without attorney mediation; and

      e. support the Plaintiffs' request for any additional ADOT data that might further illuminate the issues in the case.

In light of these concessions, the Plaintiffs' only remaining complaint can be that the data itself, not the delayed disclosure, hurts their case. And as a matter of law, that is not prejudice justifying the suppression of evidence. *See, e.g.*, *Liberty Mut. Fire Ins. Co. v. Bosa Dev. Cal. II, Inc.*, No. 17CV666-AJB, 2019 WL 3554938, at *6 (S.D. Cal. Aug. 5, 2019) (no prejudice where, *inter alia*, opposing party would have opportunity to rebut supplemental report); *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 507 (D. Del. 2005) (supplement harmless where the "additions changed nothing regarding the underlying analysis and only served to make the report more current"); *Malinowski v. The Lichter Grp., LLC*, 165 F. Supp. 3d 328, 337 (D. Md. 2016) (finding no prejudice where, *inter alia*, there was opportunity for additional discovery into basis for belated expert disclosure).

*Sixth* and most importantly, the Plaintiffs appear not to dispute the accuracy of Prof. Richman's analysis of the data. During the parties' only substantive meet and confer call before the Motion was filed, defense counsel pressed the Plaintiffs to identify any portions of Prof. Richman's analysis that were inaccurate. Plaintiffs' counsel tentatively identified during the meet and confer some minor calculations concerning only cancelled, suspended, and inactive voters (concerns that the Motion seems not to allege).

The Plaintiffs apparently intend to argue that the 1,779 voters who appear to be non-citizens might, in fact, be citizens. For example, the Plaintiffs speculate that perhaps a one-way series of data entry errors (wrongly identifying citizens as non-citizens, but never the other way around) could explain everything. That might be the Plaintiffs' best closing argument for how to interpret the facts in this case—but it's not a reason to exclude from trial the contents of ADOT's supplemental disclosure, or Prof. Richman's

(apparently uncontroverted) observations about how the ADOT supplement overlaps with the statewide voter file.

At bottom, the Plaintiffs' objection springs from the unwelcome content and not the timing of the ADOT supplemental disclosure. That's simply not an adequate basis for excluding reliable public records that illuminate the issues in this case.

### III. Because the Facts Here Are Materially Distinct, *Fish* Is Neither Controlling Nor Persuasive.

When "assessing a proffer of expert scientific testimony," this Court may determine "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993); *see also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013) (emphasizing that "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury"). This stricture ensures that the judge can serve as an effective "gatekeeper," "preventing shoddy expert testimony and junk science from reaching the jury." *Murray v. S. Route Maritime SA*, 870 F.3d 915, 923 (9th Cir. 2017). But it has little, if any, utility in a bench trial, where "the district court is able to 'make its reliability determination during, rather than in advance of, trial. Thus, where the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it turns out not to meet the standard of reliability established by Rule 702.'" *United States v. Flores*, 901 F.3d 1150, 1165 (9th Cir. 2018) (citation omitted); *see also B.K. by next friend Tinsley v. Faust*, CV-15-00185-PHX-ROS, 2020 WL 2616033, at *3 (D. Ariz. May 22, 2020) (observing that the "gatekeeping function . . . 'is largely irrelevant in the context of a bench trial'" (citation omitted)). For this reason alone, the Court should deny the Motion and defer its *Daubert* analysis until

it has had an opportunity to hear and evaluate for itself Prof. Richman's findings and opinions.

Even if the Court were to engage in a full *Daubert* analysis at this juncture, the Motion supplies no basis for excluding Prof. Richman's testimony or reports. The Motion relies extensively on the trial court's weighting of competing expert testimony in *Fish v. Kobach*. This argument seeks to convert a fact-intensive analysis in *Fish* into a generally applicable and semi-permanent *ad hominem* attack on the less persuasive expert in that case. This Court should of course consider the *Fish* analysis to the extent the circumstances are the same and its logic is persuasive, but this Court cannot blindly extend to this case a fact-intensive analysis from a different case.

As an initial matter, let's recognize the obvious things about *Fish*. It was:

- a different case,
- with different parties,
- in a different District,
- in a different Circuit Court of Appeals,
- with materially different evidence, and
- most importantly, materially different quantitative methodologies.

Doctrinally, therefore, *Fish* affects this case only to the extent it is materially the same and is persuasive. *See generally Benitez v. Roelfsema*, No. CV-17-04209-PHX-JJT, 2018 WL 1101667, at *2 (D. Ariz. Mar. 1, 2018) (rejecting notion that "out-of-district court opinions 'control' this Court").

The conclusion in *Fish* is unremarkable. Whenever two experts testify on opposite sides on the same issue, the court cannot credit all the expert opinions that are offered. And there is no rule or doctrine barring testimony from an expert witness who failed to persuade a different court of his or her analysis in separate proceedings. *See* Fed. R. Evid. 702, Adv. Comm. Note to 2000 Amendments ("The evidentiary requirement of reliability is lower than the merits standard of correctness." (citation omitted)).

In any event, while disagreeing with Prof. Richman's analysis, even the *Fish* court admitted into evidence his testimony regarding unlawful voting and weighed Prof. Richman's analysis in light of all the other testimony—exactly the opposite of what the Motion urges here. *See Fish v. Kobach*, 304 F. Supp. 3d 1027, 1041 (D. Kan. 2018) (denying motion to exclude Prof. Richman's opinions regarding potential non-citizen registration, explaining that "a logical basis exists for [the] expert's opinion . . . the weaknesses in the underpinnings of the opinion[ ] go to the weight and not the admissibility of the testimony" (citation omitted)).

More broadly, if failing to persuade a court on important legal or factual issues gives rise to a permanent taint on the qualifications of an expert witness, the Plaintiffs' expert witness roster will be gutted. Many of the Plaintiffs' experts have a pedigree of arguing on the losing side of significant cases. If this Court adopts a "once unpersuasive, forever unqualified" rule, this will be a much shorter trial.

### IV. Methodological Critiques

The Motion closes with a non-expert lawyer's critique of an expert witnesses' application of complex statistical methods. But supposed "faults in [an expert's] use of a particular methodology . . . go to the weight, not the admissibility, of his testimony." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)); *see also IceMOS Tech. Corp. v. Omron Corp.*, CV-17-02575-PHX-JAT, 2019 WL 4750129, at *9 (D. Ariz. Sept. 30, 2019) ("Plaintiff's position appears to be that the Court should accept Plaintiff's version of the facts and exclude the testimony of Defendant's experts because, in Plaintiff's view, they did not accord the proper weight to certain facts or that their conclusions are simply incorrect. . . . [T]hat is not the correct analysis. Plaintiff's argument is for trial; it is not an appropriate ground for exclusion of expert testimony on a *Daubert* motion.").

In any event, none of Plaintiffs' methodological cavils supplies a colorable basis for excluding Prof. Richman's testimony with respect to the relevant sections of his report:

1. **ADOT Data**:[3] As discussed above, Prof. Richman's conclusion that 1,779 active registered voters had presented evidence of non-citizenship to ADOT *after* registering to vote is derived directly from ADOT's own data. Plaintiffs' gripes that Prof. Richman failed to adequately consider potential sources of error by ADOT itself (*see* Motion at 18–19) may be fair game on cross-examination, but they are not a basis for exclusion. *See IceMOS Tech.*, 2019 WL 4750129, at *9 n.6 ("[C]riticism of an expert's decision to base an opinion on some facts but not others should be challenged through the traditional means at trial, not through a *Daubert* motion."); *United States ex rel. Jordan v. Northrop Grumman Corp.*, CV 95-2895-ABC, 2003 WL 27366315, at *4 (C.D. Cal. Mar. 10, 2003) (expert's alleged "failure to exclude possible alternative causes . . . is insufficient cause to exclude his testimony on the grounds of unreliability").

2. **Sedgwick County, KS Data**: Even if the *Fish* court's decision not to credit Prof. Richman's analysis of the incidence of potential non-citizen voter registrations in Sedgwick County, Kansas were controlling of the admissibility of such opinions (and it is not), the Plaintiffs' strained analogy to *Fish* is meritless. The court in that case was unpersuaded by Prof. Richman's *extrapolations* from data indicating instances of non-citizen registration in Sedgwick County. *See Fish v. Kobach*, 309 F. Supp. 3d 1048, 1086 (D. Kan. 2018). In this case, Prof. Richman's report merely presents the data itself, and

---

[3] *See* Richman Report §§ 1.3.5 and 2.3.1 (including Tables 2 and 12), and as updated in Prof. Richman's supplemental report.

14

1    "simply applied math, which is certainly reliable." *IceMOS Tech.*, 2019 WL
2    4750129, at *7.  *See* Richman Report § 2.3.2.1.[4]

3    It is not clear what purpose this portion of the Motion serves—a lawyer's personal assurance to the Court that an upcoming witness will make a mistake?—but it decidedly is **_not_** evidence.

6    There is a process for taking and rebutting evidence on factual questions like the proper application of obscure statistical methods. After Prof. Richman testifies on direct examination, Mr. Freedman can cross-examine him. Later, at some point after re-direct, Mr. Freedman can present rebuttal testimony. That is the way evidence works in federal court. *See IceMOS Tech.*, 2019 WL 4750129, at *7 (emphasizing that "cross-examination and the adversarial process is the proper vehicle to make . . . a challenge" to alleged flaws in an expert's application of a methodology). There is no opportunity for lawyers to vouch against a particular application of obscure statistic methods, and thereby preempt testimony on the matter. *See Ballesteros v. United States*, CV-15-00386-TUC-JAS, 2019 WL 13194906, at *3 (D. Ariz. Jan. 8, 2019) ("The Court will be in a better position to assess these expert opinions, and all of the other evidence at issue (expert or otherwise), as it is actually presented throughout the bench trial.").

## CONCLUSION

20   The Motion's first argument—undue prejudice from the timing of ADOT's supplemental disclosure—does not square with (a) the limited size and burden of

---

[4]    The Motion provides no arguments in support of its request for the exclusion of section 2.3.2.2 (data from the North Carolina Board of Elections regarding registrations by non-citizens in the Deferred Action for Childhood Arrivals (DACA) program) or section 2.3.2.3 (a passing citation to reports by the Public Interest Legal Foundation and short discussion of data from Pennsylvania Department of Transportation). The Motion asserts that section 2.3.2.3 is premised on CCES Survey Data (*see* Motion at 21), but offers no support for that claim. It seems the Motion's references to such sections may be a typographical error, owing to the haste with which the Motion was prepared and filed.

reviewing the supplemental data, (b) the Plaintiffs' own reliance on recently acquired/disclosed public records, (c) the Plaintiffs' tactical decision not to object to the new data production until after they learned its contents, (d) the many accommodations offered to the Plaintiffs by both ADOT and the active Defendants, and (e) the absence of a genuine dispute about Prof. Richman's observations concerning the data.

The Motion's second argument—that *Fish* disqualifies Prof. Richman—would stretch an inherently fact-intensive inquiry from a different case to the distinct facts of this case. This Court cannot rely on third-party shortcuts, and must instead take evidence and determine the credibility of testimony in this case on its own.

The Motion's final argument—that Prof. Richman will miscalculate certain statistics—will be tested at trial. The written assurances of a non-expert attorney are simply not a substitute for expert testimony.

For the foregoing reasons, this Court should deny the Motion.

RESPECTFULLY SUBMITTED this 8th day of November, 2023.

By: */s/ Kory Langhofer*

| | |
|---|---|
| Cameron T. Norris* | Kory Langhofer, Ariz. Bar No. 024722 |
| Gilbert C. Dickey* | Thomas Basile, Ariz. Bar. No. 031150 |
| CONSOVOY MCCARTHY PLLC | STATECRAFT PLLC |
| 1600 Wilson Blvd., Ste. 700 | 649 North Fourth Avenue, First Floor |
| Arlington, VA 22209 | Phoenix, Arizona 85003 |
| (703) 243-9423 | (602) 382-4078 |
| cam@consovoymccarthy.com | kory@statecraftlaw.com |
| gilbert@consovoymccarthy.com | tom@statecraftlaw.com |

Tyler Green*
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
tyler@consovoymccarthy.com

*admitted pro hac vice

*Attorneys for Intervenor-Defendant*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of November, 2023, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for Filing, which will send notice of such filing to all registered CM/ECF users.

*/s/ Kory Langhofer*