**KRISTIN K. MAYES**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joshua D. Bendor (No. 031908)
Hayleigh S. Crawford (No. 032326)
Joshua M. Whitaker (No. 032724)
Kathryn E. Boughton (No. 036105)
Office of the Arizona Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
(602) 542-3333
Joshua.Bendor@azag.gov
Hayleigh.Crawford@azag.gov
Joshua.Whitaker@azag.gov
Kathryn.Boughton@azag.gov
ACL@azag.gov

*Attorneys for Defendants*
*Attorney General Kristin K. Mayes,*
*ADOT Director Jennifer Toth*
*and State of Arizona*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mi Familia Vota, et al., | No. 2:22-cv-00509-SRB (Lead) |
| Plaintiffs, | **STATE AND ATTORNEY GENERAL'S RESPONSE TO INTERVENOR-DEFENDANTS' MOTION FOR A PARTIAL STAY OF THE INJUNCTION PENDING APPEAL** |
| v. | |
| Adrian Fontes, in his official capacity as Arizona Secretary of State, et al., | |
| Defendants. | (Before the Hon. Susan R. Bolton) |
| **AND CONSOLIDATED CASES** | No. CV-22-00519-PHX-SRB<br>No. CV-22-01003-PHX-SRB<br>No. CV-22-01124-PHX-SRB<br>No. CV-22-01369-PHX-SRB<br>No. CV-22-01381-PHX-SRB<br>No. CV-22-01602-PHX-SRB<br>No. CV-22-01901-PHX-SRB |

Defendants State of Arizona and Attorney General Kris Mayes (collectively "the State") oppose the Intervenor-Defendants' motion for a partial stay of the Court's permanent injunction. The State makes three observations, explained further below:

1. A stay would serve the State's law-making interests but impair the State's law-administering interests.
2. A stay would be contrary to procedures governing how this case was litigated.
3. It is the Attorney General who represents the State in federal court.

These observations do not bear on whether Intervenor-Defendants have shown likelihood of success on the merits, but instead bear on how a stay would affect the parties and the public. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

## ARGUMENT

### I. A stay would serve the State's law-making interests but impair the State's law-administering interests.

As the Intervenor-Defendants correctly point out, the State has an interest in defending and enforcing its duly enacted laws, so staying an injunction that would otherwise prevent such enforcement would serve this interest. *See* Doc. 730 at 11–12.

But the State also has an interest in smoothly administering its laws, especially for elections. *See, e.g., Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008) (plurality opinion) (recognizing state's "interest in orderly administration" of election process). As Secretary Fontes explains, a partial stay of the Court's permanent injunction at this stage would contravene this interest. *See generally* Doc. 732.

Secretary Fontes' concern about stability is especially apt because the parts of the Court's injunction that the Intervenor-Defendants seek to stay are rooted in the Court's summary judgment ruling, issued back in September 2023. *See* Doc. 730 at 3–9 (citing parts of Doc. 534). That ruling was complex, and election officials have carefully incorporated it in their administration plans. A notable example is the 2023 Elections Procedures Manual ("EPM"), which was published at the end of 2023 and relied on the

Court's summary judgment ruling. *See* Doc. 698 (notice of EPM publication); Doc. 699 at 26, 28, 29, 36 (showing EPM footnotes citing summary judgment ruling).

In this situation, the State's interests are better served by denying a stay and allowing the normal appellate process to play out. The Intervenor-Defendants will have an opportunity to persuade the Ninth Circuit, in due time, to reverse the Court's summary judgment ruling and the resulting permanent injunction. That process would serve the State's law-making interests as well as its law-administering interests.

## II.     A stay would be contrary to procedures governing how this case was litigated.

At the parties' request, the Court fast-tracked this consolidated case. In the eight months after the initial case management order, the parties and the Court conducted extensive fact discovery, summary judgment proceedings, expert discovery, and a two-week bench trial. *See, e.g.*, Doc. 338 (initial case management order); Doc. 479 (order setting trial). The Court set this blistering pace because "both sides ha[d] the same interest in having this case resolved before important election dates in 2024." Transcript of 7/25/23 Hearing, pgs. 91-92; *see* Doc. 502 (notice of filing of transcript).

Consistent with this pace, the Court clarified before trial that the trial would *not* involve claims that might constitute alternative grounds for decisions already made in the summary judgment ruling. Doc. 600 at 1.

As a result of these procedures, the Court succeeded in resolving the case in early 2024.

The stay requested by the Intervenor-Defendants would partially disrupt this resolution. Some efforts made by the parties and the Court would be rendered pointless. Some decisions made by the Court at summary judgment would be withdrawn without consideration of possible alternative grounds.

In contrast, the normal appellate process would allow the Intervenor-Defendants to make their case at the Ninth Circuit without disrupting the existing resolution. That

process would better respect the parties' efforts and the Court's efforts to reach a resolution in early 2024.

### III. It is the Attorney General who represents the State in federal court.

Part of the Intervenor-Defendants' motion is troubling for a different reason. The Legislative Intervenors assert that Arizona law entitles them "to protect and pursue the State's sovereign interests in court." Doc. 730 at 14. This is an overstatement.

Arizona law is clear. Unless otherwise provided by statute, the Attorney General "*shall* . . . [r]epresent this state in *any* action in federal court." A.R.S. § 41-193(A)(3) (emphasis added). This arrangement is not new or controversial. As the U.S. Supreme Court observed decades ago: "Under Arizona law, the State Attorney General represents the State in federal court." *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 51 n.4 (1997) (citing A.R.S. § 41-193(A)(3)).

This is not to say the Legislative Intervenors cannot defend the challenged state laws in this case. The Legislative Intervenors sought to intervene near the beginning of discovery out of concern that the Attorney General would not fully defend parts of state law; no party opposed permissive intervention; and the Court granted intervention. *See* Docs. 348, 354, 355, 363.

In defending state laws in this case, however, the Legislative Intervenors do not speak for the State as a whole. That responsibility belongs solely to the Attorney General.

Neither source of authority cited by the Legislative Intervenors (at 13) suggests otherwise. The first source of authority they cite—A.R.S. § 12-1841—permits the Senate President and House Speaker to intervene as parties or to file briefs in certain proceedings, but does not authorize them to represent the State as a whole. The second source of authority they cite—Ariz. Const. art. II, § 3—does not mention the Senate President or House Speaker, does not mention intervention, and is consistent with Arizona's longstanding decision that the Attorney General represents the State in federal court.

Accordingly, the State's position on the Intervenor-Defendants' request for a stay is contained in this response, not their motion. The State opposes the request.

RESPECTFULLY SUBMITTED this 24th day of May, 2024.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By: */s/ Joshua M. Whitaker*
Joshua D. Bendor (No. 031908)
Hayleigh S. Crawford (No. 032326)
Joshua M. Whitaker (No. 032724)
Kathryn E. Boughton (No. 036105)

*Attorneys for Defendants*
*Attorney General Kristin K. Mayes,*
*ADOT Director Jennifer Toth*
*and State of Arizona*