KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

GARY M. RESTAINO
United States Attorney
District of Arizona

R. TAMAR HAGLER (CA Bar No. 189441)
RICHARD A. DELLHEIM (NY Bar No. 2564177)
SEJAL JHAVERI (NY Bar No. 5396304)
MARGARET M. TURNER (NY Bar No. 5869045)
JENNIFER J. YUN (DC Bar No. 1600953)
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
Tel.: (202) 353-5724 / Fax: (202) 307-3961
Tamar.Hagler@usdoj.gov
Richard.Dellheim@usdoj.gov
Sejal.Jhaveri@usdoj.gov
Margaret.M.Turner@usdoj.gov
Jennifer.Yun@usdoj.gov

*Attorneys for the United States*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

Mi Familia Vota, et al.,
Plaintiffs,

(Consolidated)
v.

Adrian Fontes, et al.,
Defendants.

And associated consolidated matters.

No. 2:22-cv-00509-SRB (Lead Case)
No. 2:22-cv-01124-SRB

United States' Opposition to Intervenor-Defendants' Motion for Partial Stay

The United States respectfully opposes Intervenor-Defendants' Motion for a Partial Stay of the Injunction Pending Appeal ("Stay Mot."), ECF No. 730. Intervenor-Defendants fail to meet their high burden of establishing that a stay is warranted.

On September 14, 2023, the Court entered a partial summary judgment order, finding in part that Section 6 of the National Voter Registration Act of 1993 ("NVRA") preempts H.B. 2492's limitations on federal-only voters voting in presidential elections and by mail. Order on Mot. Summ. J. ("SJ Order") at 9-10, ECF No. 534. On February 29, 2024, after a bench trial, the Court issued findings of fact and conclusions of law, and acknowledged its prior ruling that the NVRA preempts H.B. 2492's Documentary Proof of Citizenship (DPOC) requirement for Federal Form registrants seeking to vote in presidential elections or by mail. ECF No. 709 at 6 n.12. The Court issued its final judgment on May 2, 2024. Final J., ECF No. 720. Now, months after the Court's summary judgment order, more than two weeks after the Court's final judgment, and on the eve of the July primary deadlines, Intervenor-Defendants seek to stay the injunction of H.B. 2492's provisions that prohibit registered voters who have not provided DPOC from (1) voting for President of the United States and (2) voting by mail. *See* Ariz. Rev. Stat. §§ 16-121.01(E), 16-127(A); Final J. at 2.[1] Intervenor-Defendants' stay request merely repeats merits arguments the Court has already considered and rejected, asserts no cognizable form of irreparable harm, and threatens to disrupt the electoral process just weeks before early voting by mail is set to begin. And because state and county officials *never* implemented the enjoined provisions of H.B. 2492, Intervenor-Defendants unjustifiably seek to upend the status quo that preceded even this Court's injunction. The motion for a stay should be rejected.

In determining whether to grant a motion for stay pending appeal, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). The first two factors "are the most critical." *Id.* at

[1] Intervenor-Defendants also challenge the portion of the injunction pertaining to provisions that are inconsistent with the LULUC Consent Decree. Stay Mot. at 1, 9-11. The United States takes no position on this aspect of the Motion.

434. A stay is "an exercise of judicial discretion," and, as movants, Intervenor-Defendants "bear[] the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34. Where, as here, a movant fails to show a strong likelihood of success on the merits, the Ninth's Circuit's sliding-scale approach requires the party seeking the stay to raise "serious questions going to the merits" *and* show that "the balance of hardships tips sharply in the [party's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). Intervenor-Defendants' renewed merits arguments fail to demonstrate a strong likelihood of success, raise no "serious questions" as to the merits, and the balance of hardships favors the non-movants.

**I. Intervenor-Defendants Are Unlikely to Succeed on the Merits.**

Stay applicants must "show a *strong* likelihood of success on the merits." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 824 (9th Cir. 2020). Intervenor-Defendants fail to do so.

**A. The NVRA Preempts H.B. 2492's DPOC Requirements Because Congress May Regulate Presidential Elections.**

Intervenor-Defendants' argument that the NVRA may not regulate presidential elections has been thoroughly considered and rejected by this Court. *Compare* Stay Mot. at 3 *and* RNC Mot. for Summ. J. at 2-8, ECF No. 367 *with* SJ Order at 10; U.S. Mot. for Summ. J. at 7-14, ECF No. 391-1; U.S. Summ. J. Reply at 1-7, ECF No. 476; *see also* State Mot. to Dismiss at 22-23, ECF No. 127; Order on Mot. to Dismiss at 28-29, ECF No. 304. And for good reason—Congress's authority to regulate presidential elections is well established. *See, e.g.*, *Burroughs v. United States*, 290 U.S. 534 (1934); *Buckley v. Valeo*, 424 U.S. 1, 13 n.16 (1976); *United States v. Classic*, 313 U.S. 299, 320 (1941) (the Necessary and Proper Clause empowers Congress to choose the "means by which its constitutional powers are to be carried into execution"). In *Burroughs*, the Supreme Court found that a federal law seeking to protect the integrity of presidential elections "in no sense invades any exclusive state power" to "appoint electors or the manner in which their appointment shall be made." 290 U.S. at 544–45.

Contrary to Intervenor-Defendants' ongoing insistence, *see* RNC Mot. for Summ. J. at 6, Stay Mot. at 5, *Burroughs* held that states lack "exclusive" power to regulate presidential elections because Congress is authorized to pass legislation that "seeks to preserve the purity of presidential and vice presidential elections." 290 U.S. at 544.

The Ninth Circuit similarly recognized Congress's power to regulate all federal elections under the NVRA. *Voting Rts. Coal. v. Wilson*, 60 F.3d 1411, 1414 (9th Cir. 1995) ("The broad power given to Congress over congressional elections has been extended to presidential elections[.]"), *cert. denied*, 516 U.S. 1093 (1996); *see* SJ Order at 11. Intervenor-Defendants again recast *Wilson*'s holding as dicta and disparage as "circular" this Court's analysis of that holding. Stay Mot. at 7. Their arguments miss the mark. This Court appropriately reasoned that the Ninth Circuit's broad view of Congress's authority to regulate all federal elections must have been essential to its decision upholding the NVRA's constitutionality—and thus not dicta—because the NVRA's plain language regulates both congressional and presidential elections. *See* SJ Order at 11.[2] Intervenor-Defendants' arguments must be rejected.

Intervenor-Defendants next recycle their argument that the Electors Clause of the Constitution forecloses congressional authority to regulate presidential elections. *See* Stay Mot. at 4-7; RNC Mot. for Summ. J. at 2-6; SJ Order at 10. That argument must be rejected again as well. The Electors Clause cases Intervenor-Defendants cite simply affirm what the Clause plainly says: that states are empowered to choose a procedural method of appointing presidential electors and to regulate those electors. *See* U.S. Const. art. II, § 1, cl. 2; *McPherson v. Blacker*, 146 U.S. 1, 27 (1892) (describing the Electors Clause as "leav[ing] it to the legislature exclusively to define the *method*" of choosing presidential electors (emphasis added)). Arizona decided the manner of appointing electors when the legislature enacted statutes requiring political

[2] Intervenor-Defendants' other attempts to undercut the strength of this unbroken line of precedent fail for the reasons previously articulated by the United States. *See* U.S. Resp. Mot. to Dismiss at 6-9, ECF. No. 152; U.S. Mot. for Summ. J. at 7-10; U.S. Summ. J. Reply at 5-7.

parties to choose their own slates. *See* Ariz. Rev. Stat. §§ 16-341, 16-344 (outlining the process for appointing Arizona's 11 electors). The popular vote in Arizona dictates how those electors cast their vote on the date prescribed by Congress. *See id.* § 16-212 (outlining the process of Arizona's presidential electors casting their electoral college votes). Nothing in the Electors Clause's text indicates that the manner of *appointing presidential electors* subsumes Congress's authority to determine how federal *elections* are conducted. *See* U.S. Resp. Mot. to Dismiss at 12-13. And no precedent interpreting the Electors Clause supports extending this state authority to voter registration, even if the chosen "manner" of appointing electors is by popular vote. Thus, Intervenor-Defendants' invocation of states' plenary power to select the manner of appointing electors does not efface Congress's broad authority to regulate presidential elections.[3]

**B. H.B. 2492's DPOC Requirement Is a Voter Registration Requirement.**

The Court has also considered and rejected Intervenor-Defendants' argument that the NVRA does not apply to "mechanisms" for voting, such as voting by mail. *Compare* Stay Mot. at 7-9 *and* RNC SJ Mot. at 4, 4 n.2, 8 *with* SJ Order at 14-15. The dispute here concerns whether H.B. 2492's DPOC requirement operates as a *registration requirement* that violates the NVRA, not whether the NVRA applies to any given mail voting requirement in the abstract. H.B. 2492's DPOC mandate that registrants using the Federal Form provide DPOC as a prerequisite to vote in presidential elections or by mail is an explicit registration requirement that the State seeks to graft onto the Federal Form. Put differently, H.B. 2492 does not permit election officials to "accept and use" the Federal Form as is; instead, it imposes additional registration requirements onto that Form to determine whether voters can vote by mail or in presidential elections. *See* 52 U.S.C. § 20505(a)(1). It may not do

[3] Intervenor-Defendants do not address the United States's alternative argument that the NVRA is also a valid exercise of Congress's authority to enforce the Fourteenth and Fifteenth Amendments. *See* U.S. Resp. Mot. to Dismiss at 9-11; U.S. Mot. for Summ. J. at 11-12.

so. *See Arizona v. Inter-Tribal Council of Ariz., Inc.*, 570 U.S. 1, 15 (2013) (holding that "a state-imposed requirement of evidence of citizenship not required by the Federal Form is 'inconsistent with' the NVRA's mandate that States 'accept and use' the Federal Form").

That the NVRA does not explicitly mention the "privilege" of absentee voting is no matter. In practice, H.B. 2492's DPOC requirement creates a two-tier registration system based on whether voters have provided DPOC: those who have provided DPOC are registered to vote for all federal elections and by mail, while those who have not provided DPOC may not vote in presidential elections or vote by mail. Such a two-tier registration system nullifies Section 6's requirement that Arizona "accept and use" the form to register voters for *all* federal elections. *See id.* at 10 (interpreting the word "accept" in Section 6 of the NVRA as "its object is to be accepted *as sufficient* for the requirement it is meant to satisfy," rather than as "to receive the form willingly" (emphasis in original)); 52 U.S.C. § 20505(a)(1).

**II. Intervenor-Defendants Cannot Show Irreparable Harm During the Pendency of Appeal.**

Intervenor-Defendants fail to demonstrate a cognizable injury, much less irreparable harm. "[S]imply showing some possibility of irreparable injury" is insufficient. *Nken*, 556 U.S. at 434 (internal quotation marks omitted). Instead, an applicant for a stay must show that "irreparable injury is likely to occur during the period before the appeal is decided." *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020).

Even assuming Legislative Intervenors had standing to assert the State's sovereign interest—and as the State suggests,[4] they do not—they fail to assert a cognizable form of irreparable harm under these circumstances. The sole injury they assert is the harm inherent to enjoining a state statute. Although a state *may* "suffer a

[4] *See* State Resp. to Stay Mot. at 3, ECF No. 733 (arguing that under Arizona law, the State Attorney General represents Arizona in federal court and noting that "Legislative Intervenors do not speak for the State as a whole").

form of irreparable injury" when a statute is enjoined, *see Maryland v. King*, 567 U.S. 1301, 1303 (2012),[5] the Ninth Circuit has long held that a governing body "cannot suffer harm from an injunction that merely ends an unlawful practice," *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see also Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983) (noting that the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations"). The question of whether H.B. 2492 unlawfully conflicts with federal law "is at the core of this dispute, to be resolved at the merits stage of this case." *Doe #1*, 957 F.3d at 1059.

Legislative Intervenors' invocation of state sovereignty, Stay Mot. at 12, is similarly unavailing. "[T]he harm of such a perceived institutional injury is not 'irreparable,' because the government 'may yet pursue and vindicate its interests in the full course of this litigation.'" *Id.* (quoting *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (per curiam)); *see Texas v. United States*, 787 F.3d 733, 767–68 (5th Cir. 2015) ("[I]t is the resolution of the case on the merits, not whether the injunction is stayed pending appeal, that will affect those principles.").[6]

Other than to its purported sovereign interests, Intervenor-Defendants fail to cite any harm that has occurred and would continue to occur absent a stay. As the Ninth Circuit has emphasized, the "best evidence of harms likely to occur because of the injunction" are "evidence of harms that *did* occur because of the injunction." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020). The stay request describes no such

[5] In *King*, the Supreme Court granted a stay that would have otherwise prevented Maryland from employing a law enforcement tool "used widely throughout the country," and which "ha[d] been upheld by two Courts of Appeals and another state high court." *King*, 567 U.S. at 1303–04.

[6] Intervenor-Defendants also assert that the RNC has "competitive standing" to assert injury based on the injunction. Stay Mot. at 15-16. However, the RNC does not explain why competitive injury—even if sufficient to confer Article III standing—constitutes irreparable harm under the *Nken* factors. *See id.* (citing standing cases). To the extent the RNC relies on the same institutional harms as Legislative Intervenors, they provide no support for the proposition that political parties can assert the State's sovereign interests.

harms, and for good reason: no DPOC requirement had been implemented by the time this Court issued the summary judgment order, *see infra* at 9, no such harm could have occurred *because of* the injunction.

**III. The Requested Stay Would Upend the Status Quo, Invite Unnecessary Chaos, and Injure Arizona Voters Irreparably.**

The remaining *Nken* factors ask whether issuance of the stay will injure other interested parties and where the public interest lies. *See Nken*, 556 U.S. at 426. These factors merge where the government opposes the stay. *Id.* at 435–36; *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011). Here, the public interest is best served by maintaining the status quo while the appeal is pending: If the United States cannot obtain relief for affected Arizona citizens because of the stay, its enforcement interests will be prejudiced, along with the interests of Arizona voters whose right to vote will be wrongfully denied. *See* 52 U.S.C. § 20510 (charging the Attorney General with enforcing the NVRA); *United States v. New York*, 700 F. Supp. 2d 186, 197 (N.D.N.Y. 2010) ("[T]he NVRA provides broad authority to the United States in ensuring compliance with the provisions of the statute.").[7]

Moreover, granting the stay request would introduce chaos to election administration and confuse voters just weeks before early voting by mail begins in Arizona. *See Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). As Arizona Secretary of State Adrian Fontes's stay opposition makes plain, 2024 electoral processes and procedures are well under way as a result of the parties' and the Court's diligent efforts to resolve this litigation in advance of 2024 election-related deadlines. *See* Secretary Fontes Resp. to Stay Mot. at 2-4, ECF No. 732; Secretary Fontes Decl. ¶¶ 7-16, ECF No. 732-1. Arizona's current Elections Procedures Manual ("EPM")—approved by

[7] In fact, the public interest is served by the enforcement of federal statutes that protect constitutional rights, including voting rights. *United States v. Raines*, 362 U.S. 17, 27 (1960) (reversing denial of preliminary injunction in voting rights case and holding that "there is the highest public interest in the due observance of all the constitutional guarantees, including those that bear the most directly on private rights").

Secretary Fontes, Governor Hobbs, and Arizona Attorney General Kris Mayes on December 30, 2023—has the force of law and incorporates this Court's rulings in this case. Secretary Fontes Decl. ¶ 17; *see also* 2023 EPM, ECF No. 699. This means that the EPM provides no procedure for disenfranchising tens of thousands of Arizona's already-registered federal-only voters who have not provided DPOC and who seek to vote by mail or vote in presidential elections. Election officials across Arizona have already implemented, or are in the process of implementing, procedures reliant on the parameters set forth in the EPM, including sending mail ballots to federal-only voters and providing federal-only ballots to federal-only voters. *See* Secretary Fontes Decl. ¶ 17; Am. Bench Trial Order at 8, ECF No. 709 ("The EPM . . . 'ensure[s] election practices are consistent and efficient throughout Arizona'" (citation omitted)). Arizona's congressional primary will occur July 30, 2024, and early voting by mail begins in just over one month, on July 3. Secretary Fontes Decl. ¶¶ 9, 12. The DPOC cure deadline is July 25. *Id.* ¶ 10. Granting a partial stay would thus disrupt ongoing electoral processes at a time when consistency is most important.

The stay request makes no mention of the EPM, nor does it even suggest an orderly way forward for election officials who would be suddenly tasked with implementing provisions of H.B. 2492 statewide for the very first time. *See* Am. Bench Trial Order at 54 (noting that "the Voting Laws have not yet been implemented"); *id.* at 9 (noting that as of the November 2023 trial, the Voter Registration Advisory Committee had not approved any papers to guide county recorders on implementation of Voting Laws). Unable to rely on prior practice, the EPM, or any other uniform guidance, state and county officials would be unmoored and yet subject to significant time constraints. If the Court grants the stay request, Arizona's election officials will be forced to request DPOC from Arizona's tens of thousands of federal-only voters in the midst of the election cycle, process them, and deny voters' right to vote by mail or in the upcoming presidential election if their

DPOC is not received in time. To these concrete and imminent logistical hurdles, Intervenor-Defendants have no answer.

The Court's Order, on the other hand, permits election officials to continue processing voter registration applications and mail ballots as they have been for years. *See Doe #1*, 957 F.3d at 1068 (denying stay pending appeal and holding that "the public interest lies with maintaining the *status quo*" where the current "stable immigration system" has been in use for decades). Under these circumstances, granting the stay request would likely create unnecessary chaos and voter confusion.

Finally, absent injunctive relief, the injury to federal-only voters in Arizona—the denial of the right to vote in presidential elections or by mail—would be great, especially absent a uniform procedure for implementing the enjoined portions of H.B. 2492. Federal-only voters who had expected to receive their mail ballots, including those who had been voting by mail for years, would suddenly find out that they may not vote by mail; they would also be denied their right to vote in the upcoming presidential election. "Denial of the right to participate in an election is by its nature an irreparable injury." *United States v. Berks County*, 277 F. Supp. 2d 570, 578 (E.D. Pa. 2003); *see Harris v. Graddick*, 593 F. Supp. 128, 135 (M.D. Ala. 1984) (explaining that "any illegal impediment to the right to vote, as guaranteed by the U.S. Constitution or statute, would by its nature be an irreparable injury"); *Georgia Coal. for People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1268 (N.D. Ga. 2018) (finding that the administrative and financial burdens on defendant were minimal, especially weighed against "the potential loss of [the] right to vote").

**CONCLUSION**

For these reasons, the United States requests that the Court deny Intervenor-Defendants' motion for a partial stay pending appeal.

Date: May 31, 2024

Respectfully submitted,

GARY M. RESTAINO
United States Attorney
District of Arizona

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

/s/ ***Margaret M. Turner***
R. TAMAR HAGLER
RICHARD A. DELLHEIM
SEJAL JHAVERI
MARGARET M. TURNER
JENNIFER J. YUN
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
4CON – Room 8.1815
950 Pennsylvania Avenue, NW
Washington, DC 20530

**CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to counsel of record.

*Margaret M. Turner*
Margaret M. Turner
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, NW
Washington, DC 20530
(202) 353-5724
Margaret.M.Turner@usdoj.gov