IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mi Familia Vota, et al., | No. CV-22-00509-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Katie Hobbs, et al., | |
| Defendants. | |

Before the Court is the Republican National Committee ("RNC"), Arizona State Senate President Warren Petersen, and Arizona House of Representatives Speaker Ben Toma's (collectively, "Intervenor Defendants") Motion for Partial Stay of Injunction Pending Appeal ("Motion for Stay"). (Doc. 730, ("Mot. for Stay").) Also before the Court is the Arizona Republican Party's ("AZ GOP") Motion to Intervene. (Doc. 721, ("Mot. to Intervene").) For the following reasons, the Court denies both motions.

**I.   BACKGROUND**

The Court held a bench trial on the legality of two election-related bills passed in 2022, H.B. 2492 and H.B. 2243 ("Voting Laws"), and issued its findings of fact and conclusions of law on February 29, 2024. (Doc. 709, 02/29/2024 Amended Order.) On May 2, 2024, the Court issued its final judgment ("Final Judgment"). (Doc. 720, Final Judgment.) That same day, the Arizona Republican Party ("AZ GOP") filed the Motion to Intervene. (*See* Mot. to Intervene.) On May 8, 2024, Intervenor Defendants filed a Notice of Appeal ("Notice of Appeal"). (Doc. 723, Notice of Appeal.) On May 17, 2024,

the Intervenor Defendants filed the Motion for Stay. (*See* Mot. for Stay.)

Both motions have been fully briefed. (*See* Doc. 735, Non-U.S. Pls.' Resp. in Opp'n to Mot. to Intervene ("Pls.' Resp. to Intervention"); Doc. 736, State of Ariz. Resp. to Mot. to Intervene; Doc. 745, ("Intervention Reply"); Doc. 732, Sec'y of State's Resp. to Mot. for Stay ("Sec'y Opp'n to Stay"); Doc. 733, State of Ariz. Resp. in Opp'n to Mot. for Stay ("State's Opp'n to Stay"); Doc. 737, United States Resp. in Opp'n to Mot. for Stay ("U.S. Opp'n to Stay"); Doc. 738, Non-U.S. Pls.' Resp. in Opp'n to Mot. for Stay ("Pls.' Opp'n to Stay"); Doc. 744, ("Waiver of Reply").)

## II. LEGAL STANDARDS & ANALYSIS

### A. Motion for Partial Stay

In its September 14, 2023, Order on the parties' motions for summary judgment, the Court ruled that Section 6 of the National Voter Registration Act, ("NVRA"), 52 U.S.C. § 20505, preempted H.B. 2492's mandate that voters who register with the "Federal Form" must provide documentary proof of citizenship ("DPOC") to vote in presidential elections or to vote by mail. (Doc. 534, 09/14/2023 Order at 9–15); *see* A.R.S. § 16-127(A). The Court also held unenforceable H.B. 2492's mandate that "State Forms" submitted without DPOC be rejected because the LULAC Consent Decree requires county recorders to register these voters for federal elections. (09/14/2023 Order at 21–22, 34); *see* A.R.S. § 16-121.01(C). In its final judgment, the Court enjoined the State of Arizona from implementing these provisions (collectively, the "DPOC Provisions"). (Final Judgment at 2.) Intervenor Defendants move for a partial stay of these portions of the Court's final judgment. (*See* Mot. for Stay.)

Whether to grant or deny a request for a stay is "'an exercise of judicial discretion,' and 'the propriety of its issue is dependent upon the circumstances of the particular case.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926)). The burden of showing the circumstances that justify a stay lie with the proponent of the stay. *Id.* The Court considers the following factors when considering whether to grant a stay: "(1) whether

the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* The first two factors "are the most critical." *Id.*

Under the Ninth Circuit's "sliding scale" approach, the *Nken* factors are balanced such that a stronger showing of one factor may offset a weaker showing of another factor. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020). The Ninth Circuit "recognizes that the issues of likelihood of success and irreparable injury represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Humane Soc'y of U.S. v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008). An applicant need show only "'serious legal questions' going to the merits" when there is a "high degree of irreparable injury." *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1435–36 (9th Cir. 1983)).

### 1. Irreparable Injury

The applicant seeking a stay must show that "the applicant will be irreparably injured absent a stay." *Doe #1 v. Trump*, 957 F.3d 1050, 1060 (9th Cir. 2020) (quoting *Nken*, 556 U.S. at 426). "[A] stay may not issue" if the applicant fails to show irreparable harm. *Id.* (citation omitted). But "[a] stay is not a matter of right, even if irreparable injury might otherwise result." *Nken*, 556 U.S. at 434 (quoting *Virginian Ry. Co.*, 272 U.S. at 672).

President Petersen and Speaker Toma (collectively, the "Legislators")[1] first argue that enjoining the implementation of the DPOC Provisions irreparably harms the State of Arizona's sovereign interests and that they may assert those interests. (Mot. for Stay at 11–13.) The Court disagrees. Under Arizona law, the Attorney General "shall" "[r]epresent [Arizona] in any action in a federal court." A.R.S. § 41-193(A)(3). The Legislators cite A.R.S. § 12-1841, but that statute only entitles the Legislators to be *heard* in any proceeding challenging the constitutionality of a state law. (*See* Mot. for Stay at

---

[1] The Court refers to the Legislators and RNC separately for purposes of analyzing whether they have shown irreparable injury.

- 3 -

1  13.) The Legislators' citation to *Berger v. North Carolina State Conference of the
2  NAACP*, is unpersuasive, as the Supreme Court in that case cited North Carolina law that
3  expressly empowered legislative leaders to act on behalf of North Carolina "as agents of
4  the State" in certain lawsuits. 597 U.S. 179, 193 (2022) (citing N.C. Gen. Stat. §§ 1-
5  72.2(b), 120-32.6(b)). And as Non-U.S. Plaintiffs point out, *Berger* addressed only
6  permissive intervention under Rule 24. *Id.*; (Pls.' Opp'n to Stay at 12.)

7  The Legislators' citation to the Arizona Constitution, which authorizes Arizona
8  "representatives" to pursue "any available legal remedy" to protect against federal
9  overreach, fares no better because as discussed, the Arizona legislature's "available legal
10 remedy" is the right to be heard. (*See* Mot. for Stay at 13 (citing Ariz. Const. art. II, § 3));
11 Ariz. Const. art. IV § 18 ("The legislature shall direct by law in what manner and in what
12 courts suits may be brought against the state."); A.R.S. 12-1841. By contrast, the
13 Attorney General "acts as the 'chief legal officer' of the State" and is vested with the
14 power to "go to the courts for protection of the rights of the people." *State ex rel.
15 Morrison v. Thomas*, 297 P.2d 624, 627–28 (Ariz. 1956) (citing Ariz. Const. art. 5 § 9
16 ("The powers and duties of . . . attorney general . . . shall be as prescribed by law.")). The
17 Court agrees with the State that the Attorney General is responsible for representing the
18 State of Arizona in federal court. (State Resp. to Stay at 3 (citing *Arizonans for Off. Eng.
19 v. Arizona*, 520 U.S. 43, 51 n.4 (1997))).

20 The Legislators next argue that the Court's injunction irreparably harms the
21 Arizona legislature as an institution because the injunction "disrupt[s]" its legislative
22 powers. (Mot. for Stay at 14–15 (citation omitted).) Rehashing their arguments regarding
23 likelihood of success on the merits, discussed below, the Legislators cite the United
24 States Constitution and Arizona Constitution for support that the Arizona legislature, not
25 Congress, is vested with authority to regulate the manner of its elections. (*Id.* at 14.) But
26 the Court agrees with the United States that "whether H.B. 2492 unlawfully conflicts
27 with federal law 'is at the core of this dispute, to be resolved at the merits stage of this
28 case.'" (U.S. Opp'n to Stay at 7 (quoting *Doe #1*, 957 F.3d at 1059)); *c.f. Doe #1*, 957

F.3d at 1059 (explaining that if "the irreparable harm standard is satisfied by the fact of executive action alone, no act of the executive branch asserted to be inconsistent with a legislative enactment could be the subject of a preliminary injunction"). Enjoining the State's implementation of the DPOC Provisions is not "irreparable" because the Legislators "may yet pursue and vindicate [their] interests in the full course of this litigation."[2] *Doe #1*, 957 F.3d at 1059 (quoting *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (per curium), *cert. denied sub nom. Golden v. Washington*, 583 U.S. 974 (2017)). The Legislators have not established that the Court's injunction is likely to result in irreparable harm to the Arizona legislature.

The RNC asserts that it has "competitive standing" because the Court's injunction unfavorably "distorts the competitive environment underpinning the 2024 election." (Mot. for Stay at 15.) As the United States points out, however, the RNC does not explain how competitive injury for purposes of Article III standing per se constitutes irreparable injury for a motion to stay. (U.S. Opp'n to Stay at 7 n.6; *see also* Pls.' Opp'n to Stay at 14.) Intervenor Defendants have not demonstrated that enjoining the implementation of the DPOC Provisions is likely to result in irreparable harm. Though the Court's analysis could stop here, it turns to the remaining *Nken* factors. *See Doe #1*, 957 F.3d at 1060.

### 2. Likelihood of Success on the Merits

#### i. DPOC Requirement for Presidential Elections

The Court previously ruled that the NVRA plainly reflects an intent to regulate all elections for "federal office," which includes "President or Vice President." (09/14/2023 Order at 10 (citing 52 U.S.C. §§ 20507(a), 30101(3)).) And the Court cited a line of precedent recognizing Congress's authority to regulate presidential elections. (*See id.*) Intervenor Defendants contend that "no court" has addressed whether Congress may regulate the "manner" of presidential elections. (Mot. for Stay at 6.) As this Court noted, however, the Supreme Court has specifically considered the scope of Congress's power

---

[2] The Legislators' citation to *Priorities USA v. Nessel*, is unpersuasive, as the Sixth Circuit analyzed only whether the Michigan legislature suffered an injury-in-fact for purposes of standing, not whether this injury was *irreparable*. 978 F.3d 976, 982 (6th Cir. 2020); (*see* Mot. for Stay at 15.)

regarding the appointment of presidential electors:

> The only point of the constitutional objection necessary to be considered is that the power of appointment of presidential electors and the manner of their appointment are expressly committed by section 1, art. 2, of the Constitution to the states, and that the congressional authority is thereby limited to determining 'the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States. *So narrow a view of the powers of Congress in respect of the matter is without warrant.*

(09/24/2023 Order at 10 (quoting *Burroughs v. United States*, 290 U.S. 534, 544 (1934)) (emphasis added).) Though Intervenor Defendants correctly note that in *Buckley v. Valeo,* the Supreme Court upheld campaign finance laws under the General Welfare Clause, the Court, citing *Burroughs*, twice acknowledged Congress's "broad congressional power to legislate in connection with the elections of the President and Vice President." (Mot. for Stay at 5–6); 424 U.S. 1, 13 n.16 (1976); *id.* at 90 ("Congress has power to regulate Presidential elections and primaries."); *see also Voting Rights Coal. V. Wilson*, 60 F.3d 1411, 1414 (9th Cir. 1995). The United States also persuasively argues that the Electors Clause does not *foreclose* Congress from regulating how federal elections are conducted, as the Arizona legislature has exercised its power "to define the method" of choosing the State's presidential electors, which is through the popular vote. (U.S. Opp'n to Stay at 4–5 (quoting *McPherson v. Blacker*, 146 U.S. 1, 27 (1892)).)

Intervenor Defendants have not shown a strong likelihood of success on the merits regarding Congress's authority to presidential elections through the NVRA.[3] *Doe #1*, 957 F.3d at 1062.

### ii. DPOC Requirement for Voting by Mail

Intervenor Defendants next contend that the NVRA does not preempt H.B. 2492's restrictions on mail-in voting because the NVRA does not regulate the "mechanisms for

---

[3] Plaintiffs also argue that, notwithstanding the Electors Clause, Congress alternatively had power to enact the NVRA under the Fourteenth and Fifteenth Amendments, which Intervenors do not discuss in the Motion. (Pls.' Opp'n to Stay at 5–7; U.S. Opp'n to Stay at 5 n.3; *see* Mot. for Stay; Waiver of Reply; *see also* 09/14/2023 Order at 12 n.7 (declining to reach non-U.S. Plaintiffs' Fourteenth and Fifteenth Amendment arguments).) Because the Court finds Intervenor Defendants have not shown a likelihood of success on the merits, the Court need not reach Plaintiffs' alternative argument.

- 6 -

mail voting." (Mot. for Stay at 7–9.) Setting aside Intervenor Defendants' arguments that the NVRA does not directly preempt the DPOC requirement for voting by mail,[4] they make no effort to address the Court's ruling that obstacle preemption bars the State of Arizona's enforcement of the statute. (09/14/2023 Order at 14–15; *see generally* Mot. for Stay.) The Court specifically held that "H.B. 2492's limitation on voting by mail frustrates the purpose of the NVRA, as it impedes Arizona's 'promotion of the right' to vote," and that this presented an obstacle to the NVRA's findings and purpose. (09/14/2023 Order at 14–15 (first quoting 52 U.S.C. 20501(a), then citing *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)); *see also* Pls.' Opp'n to Stay at 8.) Intervenor Defendants have not shown that they are likely to succeed on appeal regarding H.B. 2492's DPOC requirement for voting by mail.

### iii. LULAC Consent Decree

H.B. 2492 requires county recorders to reject State Forms submitted without DPOC. *See* A.R.S. § 16-121.01(C). The LULAC Consent Decree, entered into by the Arizona Secretary of State, requires county recorders "to accept State Form applications submitted without DPOC." (Doc. 388-4, Ex. 12, LULAC Consent Decree at 8.) The Court ruled that the LULAC Consent Decree "resolved" Plaintiffs' claims that H.B. 2492 violated section 8(a) of the NVRA. (09/14/2023 Order at 21.) Intervenor Defendants argue that the Ninth Circuit is unlikely to hold that the LULAC Consent Decree permanently prevents the Arizona legislature from enacting legislation like H.B. 2492. (Mot. for Stay at 9–10.)

Relevant to this case, in 2004 Arizona voters approved Proposition 200, which required voters to submit DPOC to be registered to vote. (*See* 02/29/2024 Amended Order at 3–4.) The LULAC Consent Decree was entered into by the Arizona Secretary of State after several plaintiffs sued the Secretary of State for continuing to reject State

---

[4] Intervenor Defendants contend that "the NVRA is silent about what information States can require of residents who wish to vote by mail" and that voting by mail is a privilege not a right. (Mot. for Stay at 7–9.) The United States counters that "H.B. 2492'S DPOC requirement operates as a registration requirement that violates the NVRA" and that the DPOC requirement impermissibly creates a "two-tier registration system" for federal elections. (U.S. Opp' to Stay at 5–6.)

- 7 -

Forms submitted without DPOC following the Supreme Court's decision in *Inter Tribal Council of Arizona, Inc.*, which held that the NVRA required Arizona to register Federal Form users without DPOC as Federal-Only Voters. 570 U.S. 1, 20 (2013) (confirming that Arizona's State Form "may require information the Federal Form does not"); (*see* LULAC Consent Decree at 1–2; Mot. for Stay at 10 ("Neither the Legislature nor even the State of Arizona was a party to the LULAC Consent Decree.").) The LULAC Consent Decree required the Secretary of State to register State Form users without DPOC for federal elections. (*See* LULAC Consent Decree at 8–12.) The Court finds that Intervenor Defendants have raised at least a serious legal question[5] as to whether the LULAC Consent Decree permanently precludes the implementation of contradictory legislation like H.B. 2492. (*See* Mot. for Stay at 10–11); *League of Residential Neighborhood Advocates v. City of Los Angeles*, 498 F.3d 1052 (9th Cir. 2007).

### 3. Injury to Others and the Public Interest

The final two factors, a stay's impact on both the opposing parties and the interests of the public, "merge" when the government opposes a stay. *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken*, 556 U.S. at 435–36).

Intervenor Defendants are correct that the State of Arizona has "an interest in protecting the integrity, fairness, and efficiency of their ballots and election processes." (Mot. at 16 (quoting *Mi Familia Vota v. Hobbs*, 977 F.3d 948, 954 (9th Cir. 2020)).) But countervailing this interest is the fact that Arizona's 2024 presidential primary election procedures are "well under way." (Sec'y Opp'n to Stay at 3.) According to Secretary of State Adrian Fontes, election officials sent 90-day election notices to voters on May 1, 2024, and the deadline to print sample ballots was on June 20, 2024. (*Id.*); *see* A.R.S. §§ 16-461, -544(D). Early voting runs from July 3, 2024, to July 30, 2024, and voters

---

[5] Citing *Manrique v. Kolc*, Intervenor Defendants argue that they may raise "serious legal questions" going to the merits to support a stay. (Mot. for Stay at 3 (citing 65 F.4th at 1041).) A serious legal question going to the merits is sufficient where an applicant has shown a "high degree" of irreparable harm, and as discussed *supra* Part II(A)(1), Intervenor Defendants made no such showing. 65 F.4th at 1041; *see Humane Society*, 523 F.3d at 991. And notwithstanding any "serious legal questions" these issues present, as discussed below, the balance of hardships and the public interest weigh heavily against entering a stay.

have until only July 25, 2024, to "cure" issues with DPOC. (Sec'y Opp'n to Stay at 3); *see* A.R.S. § 16-542. Entering a stay would send election officials "scrambling to implement and to administer a new procedure [for registering voters without DPOC] at the eleventh hour" of the presidential primary and with no guidance on H.B. 2492 going forward. *Ariz. Democratic Party v. Hobbs*, 976 F.3d 1081, 1086 (9th Cir. 2020); (Pls.' Opp'n to Stay at 15.) It would undermine the State's "interest in orderly administration" of its elections. (U.S. Opp'n to Stay at 9 (explaining how the 2023 EPM lacks procedures for election officials to implement enjoined provisions of H.B. 2492); State's Opp'n to Stay at 1 (quoting *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008)).)

      The Court also notes that the timeliness of Intervenor Defendants' Motion weighs against entering a stay. The Court ruled on the legality of the DPOC Provisions at issue in this Motion on September 14, 2023, on summary judgment. (*See* 09/14/2023 Order.) The Court subsequently informed the parties to this case that the Court would "not consider either evidence or further legal argument" regarding the DPOC Provisions at trial. (Doc. 600, 10/24/2023 Pretrial Conf. Min. Entry at 1.) The Court issued its Findings of Fact and Conclusions of Law on February 29, 2024, settling all remaining claims. (*See* 02/29/2024 Amended Order.) The parties waited until April 30, 2024, to file a proposed judgment in this case. (*See* Doc. 713, 03/22/2024 Order (granting parties' joint motion for entry of judgment and ordering parties to jointly lodge a proposed form of judgment); Doc. 718, 04/23/2024 Order (ordering counsel to file a status report regarding the proposed form of judgment within 7 days of the order); Doc. 719, Proposed Judgment; *see also* Final Judgment.) And Intervenor Defendants still did not file this Motion until May 17, 2024, acknowledging the rapidly "approaching series of election-related deadlines." (Mot. for Stay at 1 (requesting "expedited consideration"); Waiver of Reply at 1.) Intervenor Defendants' delay in filing the Motion weighs against granting a stay that would upend the administration of Arizona's now imminent presidential primary. (U.S. Opp'n to Stay at 8; Pls.' Opp'n to Stay at 14 (both citing *Purcell v. Gonzales*, 549 U.S. 1 (2006), to argue that the Court should take care not to disrupt the State of Arizona's administration

of the presidential primary so close to the election).)[6]

Relatedly, as the United States points out, federal only voters in Arizona have been voting for president and by mail for years. (U.S. Opp'n to Stay at 10 (citing *Doe #1*, 957 F.3d at 1068).) Since 2013, election officials have been required to register individuals who register to vote with the Federal Form and without DPOC for all federal elections. *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 20 (2013). And since the LULAC Consent Decree in 2018, election officials have likewise registered voters who used the State Form without DPOC for all federal elections. (*See* 02/29/2024 Amended Order at 4–5.) The Court agrees that entering a stay will sow confusion for election officials and voters on the eve of election, and likely disenfranchise voters who are currently registered without DPOC in the process. (*See* Sec'y Opp'n to Stay at 4; U.S. Opp'n to Stay at 8–9.) Notwithstanding the Arizona legislature's interests in the State's election processes, issuing a stay would very likely irreparably harm thousands of Federal-Only Voters in Arizona who find themselves unable to vote by mail or for president. (U.S. Opp'n to Stay at 10); *see Latta v. Otter*, 771 F.3d 496, 500 (9th Cir. 2014) (per curiam) (weighing state interest in continuance of a stay against "countless gay and lesbian Idahoans [who] would face irreparable injury were we to permit the stay to continue in effect").[7] The balance of equities and interests of the public weigh heavily against a stay.

---

[6] The Court finds unpersuasive Intervenor Defendants' argument that *Purcell* is inapplicable to this case. (Waiver of Reply at 1.) Specifically, Intervenor Defendants contend that *Purcell's* "admonition against last-minute judicially imposed alterations to a state's election procedures" is inapplicable in this case "[i]f and to the extent that the Court's injunction was erroneously issued." (*Id.* at 2 (citing *Merrill v. Milligan*, 142 S. Ct. 879, 882 (2022) (Mem.) (Kavanaugh, J., concurring)).) The flaw in this argument is that it is *Intervenor Defendants* who seek last-minute alterations to the state's election procedures, as the State of Arizona has known since the Court's summary judgment ruling in September 2023 how it may or may not implement the DPOC Provisions. (*See* 09/14/2023 Order at 33–34); *Ariz. Democratic Party*, 976 F.3d at 1086 (collecting cases staying lower court orders that altered election laws within 2 months of an election).

[7] The Ninth Circuit in *Latta* acknowledged that "there is some authority suggesting that "a *state* suffers irreparable injury whenever an enactment of its people or their representatives is enjoined," but it noted that no Supreme Court opinion "adopts this view." 771 F.3d at 500, 500 n.1 (quoting *Coal. For Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997)). Even so, as the Court described above, Arizona law specifically empowers the Attorney General, not the Arizona legislature, to assert the *State's* interests in court.

After considering the *Nken* factors, the Court denies Intervenor Defendants' Motion for a Partial Stay of Injunction Pending Appeal.

### B. Motion to Intervene

The AZ GOP moves to intervene "solely for the limited purpose of briefing the issues on appeal." (Mot. to Intervene at 4.) Intervenor Defendants filed the Notice of Appeal on May 8, 2024, which became effective after the Court denied certain non-U.S. Plaintiffs' Motion to Vacate on June 25, 2024. (*See* Notice of Appeal; Doc. 750, 06/25/2024 Order); Fed. R. App. P. 4(a)(4)(B) (suspending effectiveness of notice of appeal until the court disposes of the last pending motion listed in Rule 4(a)(4)(A)). The Notice of Appeal divested the Court of jurisdiction to rule on AZ GOP's Motion to Intervene. *See Stiller v. Costco Wholesale Corp.*, No. 3:09-cv-2473-GPC-BGS, 2015 WL 1612001, at *1–2 (S.D. Cal. Apr. 9, 2015) (denying motion to intervene for lack of jurisdiction where notice of appeal was filed after the motion); *United Nat'l Ins. Co.*, 242 F.3d at 1109. The parties agree. (Resp. to Intervention at 4–5; Intervention Reply at 3.) The Court denies the Motion to Intervene. Should AZ GOP desire to intervene, it should file a motion with the Ninth Circuit. *See East Bay Sanctuary Covenant v. Biden*, 102 F.4th 996 (9th Cir. 2024) (considering motion to intervene in case on appeal).

### III. CONCLUSION

The Court denies Intervenor Defendants' Motion for Partial Stay of Injunction Pending Appeal. Intervenor Defendants have not shown a likelihood of irreparable injury or made a showing that they are likely to succeed on the merits of the claims regarding the DPOC Provisions. In addition, the balance of equities and public interest weighs heavily against entering a stay because a stay would disrupt election officials' administration of the presidential primary election. The Court denies the Arizona Republican Party's Motion to Intervene because the Court lacks jurisdiction to decide the Motion.

**IT IS ORDERED** denying Defendants Senate President Warren Petersen, House of Representatives Speaker Ben Toma, and the Republican National Committee's Motion

for a Partial Stay of Injunction Pending Appeal (Doc. 730).

**IT IS FURTHER ORDERED** denying the Arizona Republican Party's Motion to Intervene (Doc. 721).

Dated this 28th day of June, 2024.

_____
Susan R. Bolton
United States District Judge